# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEAGATE TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No. 04-418-SLR |
| | ) | |
| v. | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| CORNICE, INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

**DEFENDANT CORNICE, INC.'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Cornice, Inc. ("Cornice"), by and through its undersigned counsel, hereby responds to the First Amended Complaint (the "Complaint") of plaintiff Seagate Technology LLC ("Seagate") by admitting, denying, alleging, and counterclaiming as follows:

**ANSWER**

**Parties**

**1.**      1.——On information and belief, Cornice admits that Seagate is a Delaware limited liability company with a place of business in California. Except as admitted, Cornice is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1 of the Complaint and therefore denies each and every such allegation.

**2.**      2.——Cornice admits that it is a Delaware corporation having a principal place of business at 1951 South Fordham Street, Suite 105, Longmont, Colorado 80503.

**Jurisdiction and Venue**

**3.**    3.——Cornice admits that this action purports to be an action for patent infringement arising under the laws of the United States, Title 35, United States Code.  Cornice admits that jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338(a).  Cornice denies that it has infringed any valid or enforceable patent.  Except as admitted, Cornice denies the allegations of paragraph 3 of the Complaint.

**4.**    4.——Cornice admits that venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).  Cornice denies that it has infringed any valid or enforceable patent in any judicial district.  Except as admitted, Cornice denies the allegations of paragraph 4 of the Complaint.

**The Patents in Suit**

**5.**    5.——Cornice admits that what purports to be a copy of U.S. Patent No. 5,452,159 ("the '159 Patent"), which is entitled "Magnetic Parking Device for Disk Drive," is appended to the Complaint as Exhibit 1.  Cornice further admits that the '159 Patent, on its face, states that it was issued on September 19, 1995 and lists Frederick M. Stefansky as the inventor, but denies that the patent was "duly and legally issued."  Except as so admitted, Cornice is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5 of the Complaint and therefore denies each and every such allegation.

**6.**    6.——Cornice admits that what purports to be a copy of U.S. Patent No. 5,600,506 ("the '506 Patent"), which is entitled "Apparatus And Method For Determining The Position Of A Transducer Relative To A Disk Surface In A Disk Drive System," is appended to the Complaint as Exhibit 2.  Cornice further admits that the '506

Patent, on its face, states that it was issued on February 4, 1997 and lists Michael Baum and James Touchton as the inventors, but denies that the patent was "duly and legally issued." Except as so admitted, Cornice is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6 of the Complaint and therefore denies each and every such allegation.

**7.**    7.——Cornice admits that what purports to be a copy of U.S. Patent No. 6,146,754 ("the '754 Patent"), which is entitled "Substantially Isotropic Magnetic Recording Medium Comprising A Seedlayer," is appended to the Complaint as Exhibit 3. Cornice further admits that the '754 Patent, on its face, states that it was issued on November 14, 2000 and lists Xing Song, Qixu Chen, Charles Leu, and Rajiv Yadav Ranjan as the inventors, but denies that the patent was "duly and legally issued." Except as so admitted, Cornice is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 7 of the Complaint and therefore denies each and every such allegation.

**8.**    8.——Cornice admits that what purports to be a copy of U.S. Patent No. 6,324,054 ("the '054 Patent"), which is entitled "Wrap Around Shock Absorber For Disc Drives," is appended to the Complaint as Exhibit 4. Cornice further admits that the '054 Patent, on its face, states that it was issued on November 27, 2001 and lists Wai Onn Chee, Joseph Cheng-Tsu Liu, Niroot Jierapipatanakul, Choon Kiat Lim, Michael ~~JooChiang~~**Joo-Chiang** Toh, and Pow-Hing Yong as the inventors, but denies that the patent was "duly and legally issued." Except as so admitted, Cornice is without knowledge or information sufficient to form a belief as to the truth of the

3

remaining allegations in paragraph 8 of the Complaint and therefore denies each and every such allegation.

**9.**    9.——Cornice admits that what purports to be a copy of U.S. Patent No. 6,545,845 ("the '845 Patent"), which is entitled "Actuator Assembly Retaining Clip," is appended to the Complaint as Exhibit 5.  Cornice further admits that the '845 Patent, on its face, states that it was issued on April 8, 2003 and lists Wallis A. Dague and Frederick M. Stefansky as the inventors, but denies that the patent was "duly and legally issued."  Except as so admitted, Cornice is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9 of the Complaint and therefore denies each and every such allegation.

**10.**    10.——Cornice admits that what purports to be a copy of U.S. Patent No. 5,596,461 ("the '461 Patent"), entitled "Space Efficient Housing Configuration For A Disk Drive," is appended to the Complaint as Exhibit 6.  Cornice further admits that the '461 Patent, on its face, states that it was issued on January 21, 1997 and lists F. Mark Stefansky as the inventor, but denies that the patent was "duly and legally issued."  Except as so admitted, Cornice is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10 of the Complaint and therefore denies each and every such allegation.

**11.**    11.——Cornice admits that what purports to be a copy of U.S. Patent No. 6,744,606 ("the '606 Patent"), entitled "Dual Plane Actuator," is appended to the Complaint as Exhibit 7.  Cornice further admits that the '606 Patent, on its face, states that it was issued on June 1, 2004 and lists Joseph HengTung Lau, Terang KongBeng Thia, PohLye Lim, ChorShan Cheng, Andre YewLoon Liem, SiewMing Ng, and Niroot

Jierapipatanakul as the inventors, but denies that the patent was "duly and legally issued." Except as so admitted, Cornice is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11 of the Complaint and therefore denies each and every such allegation.

### COUNT ONE:  U.S. Patent 5,452,159

**12.**    ~~12.~~——Cornice incorporates and re-alleges paragraphs 1-11 of this Answer as if fully set forth herein.

**13.**    ~~13.~~——Cornice denies the allegations in paragraph 13 of the Complaint.

**14.**    ~~14.~~——Cornice denies the allegations in paragraph 14 of the Complaint.

**15.**    ~~15.~~——Cornice denies the allegations in paragraph 15 of the Complaint.

**16.**    ~~16.~~——Cornice denies the allegations in paragraph 16 of the Complaint.

### COUNT TWO:  U.S. Patent 5,600,506

**17.**    ~~17.~~——Cornice incorporates and re-alleges paragraphs 1-11 of this Answer as if fully set forth herein.

**18.**    ~~18.~~——Cornice denies the allegations in paragraph 18 of the Complaint.

**19.**    ~~19.~~——Cornice denies the allegations in paragraph 19 of the Complaint.

20. 20. Cornice denies the allegations in paragraph 20 of the Complaint.

21. 21. Cornice denies the allegations in paragraph 21 of the Complaint.

### COUNT THREE:  U.S. Patent 6,146,754

22. 22. Cornice incorporates and re-alleges paragraphs 1-11 of this Answer as if fully set forth herein.

23. 23. Cornice denies the allegations in paragraph 23 of the Complaint.

24. 24. Cornice denies the allegations in paragraph 24 of the Complaint.

25. 25. Cornice denies the allegations in paragraph 25 of the Complaint.

26. 26. Cornice denies the allegations in paragraph 26 of the Complaint.

### COUNT FOUR:  U.S. Patent 6,324,054

27. 27. Cornice incorporates and re-alleges paragraphs 1-11 of this Answer as if fully set forth herein.

28. 28. Cornice denies the allegations in paragraph 28 of the Complaint.

29. 29. Cornice denies the allegations in paragraph 29 of the Complaint.

**30.**    ~~30.~~——Cornice denies the allegations in paragraph 30 of the Complaint.

**31.**    ~~31.~~——Cornice denies the allegations in paragraph 31 of the Complaint.

### COUNT FIVE:  U.S. Patent 6,545,845

**32.**    ~~32.~~——Cornice incorporates and re-alleges paragraphs 1-11 of this Answer as if fully set forth herein.

**33.**    ~~33.~~——Cornice denies the allegations in paragraph 33 of the Complaint.

**34.**    ~~34.~~——Cornice denies the allegations in paragraph 34 of the Complaint.

**35.**    ~~35.~~——Cornice denies the allegations in paragraph 35 of the Complaint.

**36.**    ~~36.~~——Cornice denies the allegations in paragraph 36 of the Complaint.

### COUNT SIX:  U.S. Patent 5,596,461

**37.**    ~~37.~~——Cornice incorporates and re-alleges paragraphs 1-11 of this Answer as if fully set forth herein.

**38.**    ~~38.~~——Cornice denies the allegations in paragraph 38 of the Complaint.

**39.**    ~~39.~~——Cornice denies the allegations in paragraph 39 of the Complaint.

**40.**    40.——Cornice denies the allegations in paragraph 40 of the Complaint.

**41.**    41.——Cornice denies the allegations in paragraph 41 of the Complaint.

### COUNT SEVEN: U.S. Patent 6,744,606

**42.**    42.——Cornice incorporates and re-alleges paragraphs 1-11 of this Answer as if fully set forth herein.

**43.**    43.——Cornice denies the allegations in paragraph 43 of the Complaint.

**44.**    44.——Cornice denies the allegations in paragraph 44 of the Complaint.

**45.**    45.——Cornice denies the allegations in paragraph 45 of the Complaint.

**46.**    46.——Cornice denies the allegations in paragraph 46 of the Complaint.

### Jury Demand

**47.**    47.——Cornice neither admits nor denies the statements made in connection with Seagate's demand for a jury trial because those allegations require no response.  Cornice also demands a trial by jury of all issues triable as of right by a jury in this Action.

### Request for Relief

**48.**    48.——Cornice denies that Seagate is entitled to judgment in its favor, or any relief whatsoever.

## AFFIRMATIVE DEFENSES

**49.**  49.   nIn addition to the defenses described below, Cornice expressly reserves the right to allege additional defenses as they become known through the course of discovery.

### FIRST DEFENSE — INVALIDITY

**50.**  50.   The '159 Patent, the '461 Patent, the '506 Patent, the '754 Patent, the '054 Patent, the '845 Patent, and the '606 Patent (collectively, the "Seagate Patents-in-Suit") are invalid because they fail to comply with the requirements of 35 U.S.C. § 101 et seqseq., including, without limitation § § §§ 102, 103 and/or 112.

### SECOND DEFENSE — NONINFRINGEMENT

**51.**  51.   Cornice has not directly infringed, indirectly infringed, contributed to or induced infringement of any valid or enforceable claim of the Seagate Patents-in-Suit, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### THIRD DEFENSE — LACHES

**52.**  52.   The relief sought by Seagate is barred in whole or in part by the doctrine of laches.

### FOURTH DEFENSE — PROSECUTION LACHES

**53.**  53.   The claims brought by Seagate are barred in whole or in part by delay in prosecuting the patent applications resulting in the Seagate Patents-in-Suit.

### FIFTH DEFENSE — UNCLEAN HANDS/PATENT MISUSE

**54.** ~~54.~~—The relief sought by Seagate is barred in whole or in part by the doctrine of unclean hands and/or patent misuse.

### SIXTH DEFENSE — PROSECUTION HISTORY ESTOPPEL

**55.** ~~55.~~—By reason of the prosecution before the United States Patent and Trademark Office ("USPTO") leading to the Seagate Patents-in-Suit, and by reason of admissions made by or on behalf of the applicant for these patents, Seagate is estopped from claiming infringement by Cornice of one or more of the claims of such patents.

### SEVENTH DEFENSE — EQUITABLE ESTOPPEL

**56.** ~~56.~~—Seagate is equitably estopped from pursuing claims under the Seagate Patents-in-Suit.

### EIGHTH DEFENSE — INEQUITABLE CONDUCT

**57.** ~~57.~~—On information and belief, the Seagate Patents-in-Suit are unenforceable under the doctrine of inequitable conduct due to repeated breaches of the duty of candor by either the named inventors on such patents and/or others substantively involved in the prosecution of the applications that resulted in such patents.

### The '754 Patent

**58.** ~~58.~~—With respect to the '754 Patent, on information and belief, the named inventors and/or others substantively involved in the prosecution of the applications leading to the '754 Patent were aware of information material to the patentability of the claims of the '754 Patent, which was intentionally withheld from the USPTO with the intention of deceiving the USPTO. On information and belief, the information that was intentionally withheld during prosecution of the '754 Patent includes, but is not limited to:

10

(a)    U.S. Patent No. 5,496,632, entitled "Magnetic Recording Medium And Manufacturing Method Thereof," which issued on March 5, 1996, to Yamaguchi et al.  On information and belief, at least named inventors Qixu Chen and Charles Leu were aware of this prior art, as it was cited in U.S. Patent No. 5,895,712, which names Mr. Chen as an inventor, and U.S. Patent No. 6,010,795, which names Messrs. Chen and Leu as inventors;

(b)    The prior work of named inventor Rajiv Yadav Ranjan's previous employer Komag, Inc. ("Komag"), including but not limited to the subject matter of U.S. Patent No. 5,846,648 (the "'648 Patent") and U.S. Patent Application Serial No. 09/733,860, filed on October 18, 1996 (the "'860 Appln."), which issued as U.S. Patent No. 6,156,404 (individually and collectively, the "Komag Prior Art").  On information and belief, each and every one of the named inventors was aware of the Komag Prior Art.  For example, at least named inventor Mr. Ranjan was aware of the '860 Appln. as it incorporated by reference into the text and specification of his own U.S. Patent No. 5,908,514, which, on information and belief, he filed while still employed by Komag.  On information and belief, named inventor Mr. Ranjan filed the applications leading to the asserted '754 Patent while knowingly including alleged subject matter taken and/or derived from his previous employer that was ultimately the subject of Komag U.S. Patent No. 6,156,404.  In addition, on information and belief, each of the named inventors was aware of the withheld Komag '648 Patent, as it cited prior art on their own other U.S. Patents.  See U.S. Patent Nos. 6,045,931 (filed by Xing Song and Mr. Leu), 6,117,570 (filed by Messrs. Chen, Leu and Ranjan) and 6,139,951 (filed by Messrs. Chen, Song, Leu and ~~Ranj an~~**Ranjan**)~~;~~**; and**

(c) ~~Prior art disclosing "seedlayers" that were made from chromium. In discussing the prior art, the specification of the '754 Patent describes the use of various types of "underlayers" made from nickel and aluminum and "seedlayers" made from magnesium oxide (see Figs. 1-4), but, on information and belief, the named inventors of the '754 Patent failed to disclose that they were aware that prior art "seedlayers" were also made from chromium. On information and belief, at least some of named inventors of the '754 Patent were aware of such prior art, as Seagate had filed a prior patent application directed to magnetic media including chromium "seedlayers," including, without limitation, the application which led to U.S. Patent No. 5,858,566;~~

(d) ~~The prior work of Yoshinobu Okumura and/or Kubota Corporation, including but not limited to U.S. Patent No. 5,700,593, entitled "Metal Thin Film Magnetic Recording Medium And Manufacturing Method Thereof," which issued on December 23, 1997, to Okumura et al. (the "'593 Patent"). On information and belief, named inventors Messrs. Ranjan, Chen, and Leu were aware of this prior art, as the '593 Patent was described in the specification for U.S. Patent No. 6,348,276, which names Messrs. Ranjan, Chen, and Leu as inventors, and was cited in U.S. Patent No. 6,139,950, which names Mr. Ranjan as an inventor; and~~

(e) ~~U.S. Patent No. 4,828,905, entitled "Magnetic Recording Medium," which issued on May 9, 1989, to Wada et al. (the "'905 Patent"). On information and belief, named inventor Mr. Ranjan was aware of this prior art, as the '905 Patent was cited in U.S. Patent No. 6,139,950, which names Mr. Ranjan as an inventor.~~

**(c)** **Prior work of named inventor Qixu Chen**, including but not limited to **article entitled "High Coercivity and Low Noise Media Using Glass**

Substrate," IEEE Transactions on Magnetics, Vol. 30, No. 6, Nov. 1994 pp. 3963-
3965 (the "Conner-Seagate Article").  In November 1994, four years before the
filing of the application that led to the '754 Patent, Conner Disk Division of Conner
Peripherals, published said article.  On information and belief, at least named
inventor Qixu Chen was aware of this prior art, as it was cited in a Journal of
Magnetism and Magnetic Materials article titled "Temperature and seed layer
effects on the magnetics of sputtered glass-ceramic disks," Vol. 155, 1996, pp. 164-
167, which names Mr. Chen as an author.

### The '054 Patent

**59.**     ~~59.~~——With respect to the '054 Patent, on information and belief,
the named inventors and/or others substantively involved in the prosecution of the
applications leading to the '054 Patent were aware of information material to the
patentability of the claims of the '054 Patent, which was intentionally withheld from the
USPTO with the intention of deceiving the USPTO.  On information and belief, the
information that was intentionally withheld during prosecution of the '054 Patent
includes, but is not limited to:

(a)     The prior work of Seagate's competitor Maxtor
Corporation, including but not limited to U.S. Patent No. 5,546,250, entitled "Elastomer
Gasket That Extends Around The Outer Edge Of A Hard Drive," which issued on August
13, 1996 (the "'250 Patent").  On information and belief, individuals substantively
involved in the prosecution of the applications leading to the '054 Patent were aware of
this prior art, as the '250 Patent was cited in U.S. Patent No. 5,666,239, which was
assigned to Seagate Technology, Inc.;

13

(b)    The prior work of Seagate's competitor Integral Technologies, including but not limited to U.S. Patent No. 5,149,048, entitled "Shock Absorbent Mounting Arrangement For Disk Drive Or Other Component," which issued on September 22, 1992 (the "'048 Patent"). On information and belief, individuals substantively involved in the prosecution of the applications leading to the '054 Patent were aware of this prior art, as the '048 Patent was cited in U.S. Patent No. 5,666,239, which was assigned to Seagate Technology, Inc.; and

(c)    U.S. Patent No. 6,243,228, entitled "Information Storage and Retrieval Device," which issued on June 5, 2001, to Yoshida et al. (the "'228 Patent"). On information and belief, individuals substantively involved in the prosecution of the applications leading to the '054 Patent were aware of this prior art, as the '228 Patent was cited in U.S. Patent No. 6,583,965, which was assigned to Seagate Technology, Inc.;

**(d)    U.S. Patent No. 6,002,546, entitled "Magnetic Disk Apparatus with Visco Elastic Shock Dampening," which issued on December 14, 1999, to Yagi et al. (the "'546 Patent"). On information and belief, individuals substantively involved in the prosecution of the applications leading to the '054 Patent were aware of this prior art, as the '546 Patent was cited in U.S. Patent No. 6,522,498, which was assigned to Seagate Technology, Inc.**

### The '461 Patent

**60.**    60.——Based on Seagate's interpretation of the scope of the '461 Patent, on information and belief, the named inventor and/or others substantively involved in the prosecution of the application leading to the '461 Patent were aware of

information material to the patentability of the claims of the '461 Patent, which was intentionally withheld from the USPTO with the intention of deceiving the USPTO. On information and belief, the information that was intentionally withheld during prosecution of the '461 Patent includes, but is not limited to:

(a)    U.S. Patent No. 4,712,146, entitled "Thin And Compact ~~MicroWinchester~~**Micro-Winchester** Head and Disk Assembly," which issued on December 8, 1987, to Moon et al. (the "'146 Patent"). On information and belief, named inventor Mr. Stefansky was aware of this prior art, as the '146 Patent was cited in his own U.S. Patent No. 5,025,335; and

(b)    U.S. Patent No. 4,553,183, entitled "Memory Storage Apparatus Having Improved Housing and Base Plate Arrangement," which issued on November 12, 1985, to Brown et al. (the "'183 Patent"). On information and belief, named inventor Mr. Stefansky was aware of this prior art, as the '183 Patent was cited in his own U.S. Patent Nos. 4,979,062, 5,029,026, and 5,216,662.

### The '606 Patent

**61.**    ~~61.~~——Based on Seagate's interpretation of the scope of the '606 Patent, on information and belief, the named inventors and/or others substantively involved in the prosecution of the applications leading to the '606 Patent were aware of information material to the patentability of the claims of the '606 Patent, which was intentionally withheld from the USPTO with the intention of deceiving the USPTO. On information and belief, the information that was intentionally withheld during prosecution of the applications leading to the '606 Patent includes, but is not limited to, U.S. Patent No. 5,319,509, entitled "Method and Apparatus for Controlling and Analyzing a Data Storage System," which issued on June 7, 1994 to Michelson et al. On

information and belief, at least named inventors Terang KongBeng Thia and Joseph HengTung Lau were aware of this prior art, as it was cited in Seagate's U.S. Patent No. 6,563,661, which names Messrs. Thia and Lau as inventors.

### The '845 Patent

**62.**    62.——Based on Seagate's interpretation of the scope of the '845 Patent, on information and belief, the named inventors and/or others substantively involved in the prosecution of the applications leading to the '845 Patent were aware of information material to the patentability of the claims of the '845 Patent, which was intentionally withheld from the USPTO with the intention of deceiving the USPTO.  On information and belief, the information that was intentionally withheld during prosecution of the '845 Patent includes, but is not limited to:

(a)    U.S. Patent No. 4,712,146, entitled "Thin And Compact MicroWinchester**Micro-Winchester** Head and Disk Assembly," which issued on December 8, 1987, to Moon et al. (the "'146 Patent").  On information and belief, named inventor Mr. Stefansky was aware of this prior art, as the '146 Patent was cited in his own prior U.S. Patent No. 5,025,335;

(b)    U.S. Patent No. 5,216,662, entitled "Latch Mechanism For Disk Drives," which issued on June 1, 1993, to Stefansky et al.  On information and belief, named inventor Mr. Stefansky was aware of this prior art, as he was named as an inventor; and

(c)    U.S. Patent No. 4,918,545, entitled "Disk Clamp for Rigid Disk File Without Radial Load," which issued on April 17, 1990, to Scheffel.  On information and belief, named inventor Mr. Stefansky was aware of this prior art, as it

cited as prior art in at least two of his other U.S. patents, namely, U.S. Patent Nos. 6,567,238 and 6,417,988.

## NINTH DEFENSE – IMMUNITY FROM SUIT

**63.**

**64.**

**65.**

**66.**

**67.**

68.

**TENTH DEFENSE – LICENSE**

69.

**ELEVENTH DEFENSE – PATENT EXHAUSTION/FIRST SALE DOCTRINE**

70.    Seagate's claims are barred in whole or in part under the doctrine of patent exhaustion and/or the first sale doctrine.

**TWELFTH DEFENSE – IMPLIED LICENSE**

71.    Seagate's claims are barred in whole or in part under the doctrine of implied license.

**COUNTERCLAIMS**

On information and belief, Counterclaim Plaintiff Cornice alleges against Counterclaim Defendant Seagate as follows:

## JURISDICTION AND VENUE

<u>72.</u>    <s>63.</s>  The Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), 1367, 2201, and 2202.

<u>73.</u>    <s>64.</s>  Venue is proper in the this district pursuant to 28 U.S.C. § 1391 and because this is where the original Complaint was filed by Seagate.

<u>74.</u>    <s>65.</s>  The counterclaims by Cornice against Seagate include claims for declaratory relief and judgment concerning the Seagate Patents-in-Suit. With respect to these claims, as a result of Seagate's Complaint, an actual and justiciable controversy exists between Cornice and Seagate concerning the scope of protection, invalidity, unenforceability, and noninfringement of the Seagate Patents-in-Suit.

## THE PARTIES

<u>75.</u>    <s>66.</s>  Cornice is a corporation organized and existing under the laws of Delaware, having a principal place of business at 1951 South Fordham Street, Suite 105, Longmont, Colorado 80503.

<u>76.</u>    <s>67.</s>  Seagate alleges that it is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 920 Disc Drive, Scotts Valley, California 95066.

## FACTUAL BACKGROUND

<u>77.</u>    <s>68.</s>  Seagate is one of the largest manufacturers of disk drives in the world. Seagate disk drives account for a significant market share. Seagate and Western Digital Technologies Inc. ("Western Digital") together have a substantial share of the disk drive market.

**78.** ~~69.~~ Cornice is a start-up company that was formed in August 2000 and is attempting to bring innovative new miniaturized storage elements to market.

**79.** ~~70.~~ The storage elements manufactured by Cornice are innovative and based on fundamental departures from the way hard disk drives have traditionally been designed and manufactured. The storage elements manufactured by Cornice are desirable to manufacturers of small devices such as personal digital assistants, digital cameras, and mobile telephones, as well as printers and other devices.

**80.** ~~71.~~ The storage elements manufactured and sold by Cornice represent a future competitive threat to Seagate's dominant market position.

**81.** ~~72.~~ Seagate's response to the presence in the marketplace of the storage elements sold by Cornice was not to compete on the merits with those products, but to attempt to preempt by unfair means the competition represented by Cornice and to eliminate Cornice's storage elements as a choice for consumers.

**82.** ~~73.~~ The unfair means undertaken by Seagate include (i) the bringing of claims of patent infringement against Cornice that are objectively baseless because no reasonable litigant could believe it could prevail in that the patents asserted are invalid and/or not infringed by the products made and sold by Cornice, (ii) seeking and obtaining publicity for its baseless litigation against Cornice, casting doubt on the legitimacy of the products sold by Cornice, and falsely asserting that Cornice would be prevented from selling its products, (iii) using the pendency of this litigation to falsely represent to customers and potential customers that Cornice will be prevented from supplying them with products and that supply contracts should not be entered into with Cornice, (iv) repeating and reasserting its objectively baseless claims against Cornice in

proceedings in the U.S. International Trade Commission ("USITC"), (v) using the pendency of proceedings in the USITC to falsely represent to customers and potential customers that Cornice would be prevented from selling its products and supply contracts should not be entered into with Cornice; and (vi) enlisting the support of Western Digital and perhaps other existing manufacturers of disk drives to conjure up infringement claims of their own to further burden Cornice and enhance Seagate's smear campaign against Cornice.

**83.**    ~~74.~~——Seagate has engaged in these acts for the purpose of injuring or destroying Cornice and therefore preventing the competitive threat represented by Cornice from ever emerging to threaten it.

## CLAIMS FOR RELIEF

## FIRST COUNTERCLAIM — DECLARATORY JUDGMENT

### Noninfringement of the '754 Patent

**84.**    ~~75.~~——Cornice incorporates herein by reference the allegations of paragraphs ~~1-74~~**1-74** of this Answer and Counterclaims.

**85.**    ~~76.~~——Cornice has not directly infringed, indirectly infringed, contributed to or induced infringement of any valid or enforceable claim of the '754 Patent, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### Invalidity of the '754 Patent

**86.**    ~~77.~~——The '754 Patent is invalid, <u>inter alia</u>, for failing to meet the conditions for patentability set out at 35 U.S.C. § 101 et ~~se gseq~~**seq**., including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

21

### Unenforceability of the '754 Patent

**87.** ~~78.~~——The '754 Patent is unenforceable by reason of fraud and/or inequitable conduct committed before the USPTO during and in connection with the prosecution of the application leading to the '754 Patent, as outlined above in paragraph 58, which is hereby incorporated by reference as though fully set forth herein.

## SECOND COUNTERCLAIM — DECLARATORY JUDGMENT

### Noninfringement of the '054 Patent

**88.** ~~79.~~——Cornice incorporates herein by reference the allegations of paragraphs 1-78 of this Answer and Counterclaims.

**89.** ~~80.~~——Cornice has not directly infringed, indirectly infringed, contributed to or induced infringement of any valid or enforceable claim of the '054 Patent, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### Invalidity of the '054 Patent

**90.** ~~81.~~——The '054 Patent is invalid, <u>inter alia</u>, for failing to meet the conditions for patentability set out at 35 U.S.C. § 101 <u>et seq.</u>, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

### Unenforceability of the '054 Patent

**91.** ~~82.~~——The '054 Patent is unenforceable by reason of fraud and/or inequitable conduct committed before the USPTO during and in connection with the prosecution of the application leading to the '054 Patent, as outlined above in paragraph 59, which is hereby incorporated by reference as though fully set forth herein.

## THIRD COUNTERCLAIM — DECLARATORY JUDGMENT

### Noninfringement of the '461 Patent

**92.**    ~~83.~~——Cornice incorporates herein by reference the allegations of paragraphs ~~18~~**21-82** of this Answer and Counterclaims.

**93.**    ~~84.~~——Cornice has not directly infringed, indirectly infringed, contributed to or induced infringement of any valid or enforceable claim of the '461 Patent, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### Invalidity of the '461 Patent

**94.**    ~~85.~~——The '461 Patent is invalid, <u>inter alia</u>, for failing to meet the conditions for patentability set out at 35 U.S.C. § 101 <u>et seq.</u>, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

### Unenforceability of the '461 Patent

**95.**    ~~86.~~——The '461 Patent is unenforceable by reason of fraud and/or inequitable conduct committed before the USPTO during and in connection with the prosecution of the application leading to the '461 Patent, as outlined above in paragraph 60, which is hereby incorporated by reference as though fully set forth herein.

## FOURTH COUNTERCLAIM — DECLARATORY JUDGMENT

### Noninfringement of the '606 Patent

**96.**    ~~87.~~——Cornice incorporates herein by reference the allegations of paragraphs ~~18~~**61-86** of this Answer and Counterclaims.

**97.**    ~~88.~~——Cornice has not directly infringed, indirectly infringed, contributed to or induced infringement of any valid or enforceable claim of the '606 Patent, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### Invalidity of the '606 Patent

**98.** ~~89.~~——The '606 Patent is invalid, <u>inter alia</u>, for failing to meet the conditions for patentability set out at 35 U.S.C. § 101 <u>et seq.</u>, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

### Unenforceability of the '606 Patent

**99.** ~~90.~~——The '606 Patent is unenforceable by reason of fraud and/or inequitable conduct committed before the USPTO during and in connection with the prosecution of the application leading to the '606 Patent, as outlined above in paragraph 61, which is hereby incorporated by reference as though fully set forth herein.

## FIFTH COUNTERCLAIM — DECLARATORY JUDGMENT

### Noninfringement of the '845 Patent

**100.** ~~91.~~——Cornice incorporates herein by reference the allegations of paragraphs ~~190~~**1-90** of this Answer and Counterclaims.

**101.** ~~92.~~——Cornice has not directly infringed, indirectly infringed, contributed to or induced infringement of any valid or enforceable claim of the '845 Patent, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### Invalidity of the '845 Patent

**102.** ~~93.~~——The '845 Patent is invalid, <u>inter alia</u>, for failing to meet the conditions for patentability set out at 35 U.S.C. § 101 <u>et seq.</u>, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

### Unenforceability of the '845 Patent

**103.** ~~94.~~——The '845 Patent is unenforceable by reason of fraud and/or inequitable conduct committed before the USPTO during and in connection with the

prosecution of the application leading to the '845 Patent, as outlined above in paragraph 62, which is hereby incorporated by reference as though fully set forth herein.

## SIXTH COUNTERCLAIM — DECLARATORY JUDGMENT

### Noninfringement of the '159 Patent

**104.** 95.——Cornice incorporates herein by reference the allegations of paragraphs 194**1-94** of this Answer and Counterclaims.

**105.** 96.——Cornice has not directly infringed, indirectly infringed, contributed to or induced infringement of any valid or enforceable claim of the '159 Patent, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### Invalidity of the '159 Patent

**106.** 97.——The '159 Patent is invalid, *inter alia*, for failing to meet the conditions for patentability set out at 35 U.S.C. § 101 *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

## SEVENTH COUNTERCLAIM — DECLARATORY JUDGMENT

### Noninfringement of the '506 Patent

**107.** 98.——Cornice incorporates herein by reference the allegations of paragraphs 197**1-97** of this Answer and Counterclaims.

**108.** 99.——Cornice has not directly infringed, indirectly infringed, contributed to or induced infringement of any valid or enforceable claim of the '506 Patent, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

**Invalidity of the '506 Patent**

**109.**    ~~100.~~ The '506 Patent is invalid, <u>inter alia</u>, for failing to meet the conditions for patentability set out at 35 U.S.C. § 101 ~~et seet~~<u>seq.</u>, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

**EIGHTH COUNTERCLAIM**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS UNDER COLORADO LAW**

**110.**    ~~101.~~ Cornice incorporates herein by reference the allegations of paragraphs ~~1100~~<u>1-100</u> of this Answer and Counterclaims.

**Seagate's Suit on the '754 Patent is Objectively Baseless**

**111.**    ~~102.~~ Seagate's claims with respect to the '754 Patent are objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. For example, no reasonable litigant could realistically expect to be able to establish that the patent is valid and enforceable in light of prior art that Seagate was aware of at the time it filed suit. Seagate was aware that it was asserting an invalid patent at the time it filed suit. The invalidating prior art includes at least the following:

(a) The prior work of StorMedia, Inc. ("StorMedia") and/or Yoshinobu Okumura and his co-workers at StorMedia or its affiliates, including but not limited to StorMedia's U.S. Patent No. 5,789,090, entitled "Metallic Thin-Film Magnetic Recording Media," and the article entitled "Dispersed-Oxide Seedlayer Induced Isotropic Media," by E. Teng et al., IEEE Trans. Mag., Vol. 33, No. 5, Sept. 1997, pp. 2947-49 (individually and collectively, the "StorMedia Work"). Seagate was aware of the StorMedia Work prior to suit. <u>See</u>, ~~M~~<u>e.g.</u>, U.S. Patent No. 6,740,397. In light of this prior art, Seagate's allegation of infringement is objectively baseless and no reasonable

litigant could have realistically expected to establish that the '754 Patent is valid and enforceable over this prior art.

(b)    U.S. Patent No. 6,156,404, entitled "Method Of Making High Performance, Low Noise Isotropic Magnetic Media Including A Chromium Underlayer," issued on December 5, 2000 (the "'404 Patent"). Seagate was aware of this patent prior to suit, as it was cited in Seagate's own U.S. Patent No. 6,403,241, which lists Rajiv Ranjan, Charles Leu and Qixu Chen as named inventors. In addition, as discussed above in paragraph 58, U.S. Patent Application Serial No. 08/733,860 that led to the '404 Patent was incorporated by reference into a previous patent application that Mr. Ranjan filed while he was employed by Komag. See U.S. Patent 5,908,514 at column 6, lines 42-47. In light of this prior art, Seagate's allegation of infringement is objectively baseless and no reasonable litigant could have realistically expected to establish that the '754 Patent is valid and enforceable over this prior art.

(c)    The prior work of HMT Technology Corporation and/or Brij B. Lal, including but not limited to U.S. Patent No. 5,849,386, entitled "Magnetic Recording Medium Having A Prelayer" (the "'386 Patent"). Seagate was aware of this patent prior to suit, as it was cited in Seagate's own U.S. Patent No. 6,709,773, which lists Rajiv Ranjan as a named inventor. In light of this prior art, Seagate's allegation of infringement is objectively baseless and no reasonable litigant could have realistically expected to establish that the '754 Patent is valid and enforceable over this prior art.]

(d)    The invalidating prior art that renders Seagate's suit on the '754 Patent objectively baseless is not limited the '090, '404, and '386404 Patents discussed

above but includes the prior art it intentionally withheld while deceiving the USPTO into issuing the '754 Patent in the first place, as set forth in paragraph 58 above.

**112.** ~~103.~~ Cornice expressly reserves the right to allege additional grounds in support of its claim that Seagate's suit on the '754 Patent is objectively baseless as they become known through the course of discovery.

### Seagate's Suit on the '054 Patent is Objectively Baseless

**113.** ~~104.~~ Seagate's claims with respect to the '054 Patent are objectively baseless in the sense that no reasonable litigant could realistically expect to establish that the accused Cornice products infringe the '054 Patent and that Seagate's patent is valid over prior art that Seagate was aware of at the time it filed suit. For example, no reasonable litigant could realistically expect to establish infringement because the accused products do not include, among other things, the required "shock absorb[ing]" "enclosure" as set forth in the asserted claims of the '054 Patent. Indeed, Seagate's contention that the design of the accused products infringe the '054 Patent is objectively baseless because it ignores and disregards the language of the asserted claims, which define and limit the scope of Seagate's alleged patent rights, and is premised on a characterization of the product that is false, baseless, and frivolous to the extent Seagate asserts infringement.

**114.** ~~105.~~ In addition, putting aside Seagate's baseless claim of infringement, no reasonable litigant could realistically expect to establish that the '054 Patent is valid and enforceable in light of prior art that Seagate was aware of at the time it filed suit. For example, at the time it filed suit, Seagate was aware of U.S. Patent No. 6,243,228, entitled "Information Storage And Retrieval Device" (the "'228 Patent), among other invalidating prior art references. The '228 Patent was cited prior art on a

number of Seagate patents including U.S. Patent No. 6,487,039 and 6,583,965.  In light of the '228 Patent, Seagate's allegation of infringement of the '054 Patent is objectively baseless and no reasonable litigant could have realistically expected to establish that the '054 Patent is valid and enforceable over at least this prior art.

**115.**   106.   Cornice expressly reserves the right to allege additional grounds in support of its claim that Seagate's suit on the '054 Patent is objectively baseless as they become known through the course of discovery.

### Seagate's Suit on the '461 Patent is Objectively Baseless

**116.**   107.   Seagate's claims with respect to the '461 Patent are objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.  For example, no reasonable litigant could realistically expect to be able to establish that the accused Cornice products infringe the '461 Patent.  Seagate's contention that the accused Cornice products infringe the '461 Patent is objectively baseless because it ignores and disregards the language of the asserted claims, which define and limit the scope of Seagate's alleged patent rights, and/or is premised on a characterization of the product that is false, baseless, and frivolous to the extent Seagate asserts infringement.

**117.**   108.   For example, each and every one of the claims of the '461 Patent require a "head stack assembly of a disk stack assembly."  The accused Cornice products are completely missing not only the required "disk stack assembly" but the required "head stack assembly" as well.  Rather, the accused Cornice products include only a single disk, not a "stack" of them.  In addition, the accused Cornice products do not have (and indeed have no need for) a "head stack assembly" because only one side of the disk is used to store magnetic data.  No reasonable litigant could realistically expect

to convince a Court to ignore this claim language or accept Seagate's false, baseless, and frivolous characterization of the accused Cornice products as including a "head stack assembly of a disk stack assembly" to the extent that Seagate asserts infringement.  At the time it filed suit, Seagate was aware that it was asserting a patent that it knew was not infringed.

        **118.**  ~~109.~~—In addition, each and every one of the asserted claims of the '461 Patent require that a printed circuit board ("PCB") is supported by the top surface of the "cover element" of a disk drive housing.  The PCB in the accused Cornice products is attached to the "base," not the "cover," of the storage element housing.  Although in its Complaint filed with the USITC Seagate claims that the base of Cornice's accused product is a ~~socalled~~**so-called** "cover" (and, <u>vice a versa</u>, that the cover of the product is a so-called "base" even though it provides no support whatsoever for the spindle motor, actuator, magnetic media disk, etc.), such contentions are baseless, frivolous, and a sham. A reasonable litigant would know that the scope of the claims of the '461 Patent could not be legitimately extended to encompass the accused Cornice products, particularly in light the prior art.  Accordingly, Seagate's contention of infringement is objectively baseless. Not only does Seagate ignore and disregard the claim language, but it premises its infringement claim on a characterization of the accused products that is false, baseless, and frivolous.  At the time it filed suit, Seagate was aware that it was asserting a patent that it knew could not be infringed by the manner in which Cornice's PCB is incorporated into the accused products.

**119.**    ~~110.~~—Cornice expressly reserves the right to allege additional grounds in support of its claim that Seagate's suit on the '461 Patent is objectively baseless as they become known through the course of discovery.

### Seagate's Suit on the '606 Patent is Objectively Baseless

**120.**    ~~111.~~—Seagate's claims with respect to the '606 Patent are objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.  For example, based on how Seagate is construing the scope of the '606 Patent, no reasonable litigant could realistically expect to be able to establish that the patent is valid and enforceable in light of prior art that Seagate was aware of at the time it filed suit.  At the time it filed suit, Seagate was aware that it was asserting an invalid patent.  Based on how Seagate is construing the scope of the '606 Patent, the invalidating prior art includes at least the following:

(a)    Seagate's own prior work including, but not limited to, the subject matter disclosed in U.S. Patent No. 6,757,124, entitled "Actuator System for a Disc Drive Using a Piezoelectric Assembly" (the "'124 Patent") and U.S. Patent No. 6,687,095, entitled "Rotatable Actuator Arm Having an Integral Strut" (the "'095 Patent").  Both of these patents are assigned on their face to Seagate.  Based on how Seagate is construing the scope of its '606 Patent, Seagate's own prior patents and work, including but not limited to the '124 and '095 Patents, are invalidating prior art.  In light of this prior art, Seagate's allegation of infringement is objectively baseless and no reasonable litigant could have realistically expected to establish that the '606 Patent is valid and enforceable over such art.

(b)    U.S. Patent No. 5,214,552, entitled "Actuator for Moving Recording Head and Method for Producing Same" (the "'552 Patent").  Seagate was

31

aware of this reference at the time its filed suit as it was cited prior art in Seagate's U.S. Patent No. 6,751,068. Based on how Seagate is construing the scope of its '606 Patent, the '552 Patent is invalidating prior art. In light of the '552 Patent, Seagate's allegation of infringement is objectively baseless and no reasonable litigant could have realistically expected to establish that the '606 Patent is valid and enforceable over such art.

**121.** ~~112.~~ Cornice expressly reserves the right to allege additional grounds in support of its claim that Seagate's suit on the '606 Patent is objectively baseless as they become known through the course of discovery.

### Seagate's Suit on the '845 Patent is Objectively Baseless

**122.** ~~113.~~ Seagate's claims with respect to the '845 Patent are objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. For example, no reasonable litigant could realistically expect to be able to establish that the accused Cornice products infringe the '845 Patent. Seagate's contention that the accused Cornice products infringe the '845 Patent is objectively baseless because it ignores and disregards the language of the asserted claims, which define and limit the scope of Seagate's alleged patent rights, and/or is premised on a characterization of the product that is false, baseless, and frivolous to the extent Seagate asserts infringement.

**123.** ~~114.~~ For example, the asserted claims of the '845 Patent require a "retaining clip" to either (1) fasten a bearing cartridge to a particular type of actuator arm or (2) secure a particular type of actuator arm to a bearing cartridge. Indeed, this is the feature that was the focus of attention during prosecution of the patent before the USPTO and on which Seagate argued for alleged patentability over the prior art. Among other things, the accused Cornice products are missing completely the required "retaining

clip." In fact, no such "clip" is used anywhere in the design of the accused Cornice products. Although in its Complaint filed with the USITC Seagate points to a particular threaded means used in the accused Cornice products as allegedly fulfilling the "retaining clip" limitation of the claims (i.e., a threaded nut), such a contention is baseless, frivolous, and a sham. A reasonable litigant would know that the scope of the claims of the '845 Patent could not be legitimately extended to encompass the accused Cornice products' use of a threaded nut. At the time it filed suit, Seagate was aware that it was asserting a patent that it knew was not infringed.

124.  ~~115.~~  Cornice expressly reserves the right to allege additional grounds in support of its claim that Seagate's suit on the '845 Patent is objectively baseless as they become known through the course of discovery.

### Seagate's Suit on the '159 Patent is Objectively Baseless

125.  ~~116.~~  Seagate's claims with respect to the '159 Patent are objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. For example, no reasonable litigant could realistically expect to be able to establish that the accused Cornice products infringe the '159 Patent. Seagate's contention that the accused Cornice products infringe the '159 Patent is objectively baseless because it ignores and disregards the language of the asserted claims, which define and limit the scope of Seagate's alleged patent rights, and/or is premised on a characterization of the product that is false, baseless, and frivolous to the extent Seagate asserts infringement.

126.  ~~117.~~  For example, each and every one of the asserted claims of the '159 Patent require "a transducer for reading information from and writing information to the data storage medium." Among other things, the accused Cornice

products do not include the claimed "transducer" that both "read[s] information from and writ[es] information to the data storage element." Rather, the accused Cornice products have two different transducers, the first of which is dedicated to reading and the other of which is dedicated to writing. A reasonable litigant would know that the scope of the claims of the '159 Patent could not be legitimately extended to encompass the accused Cornice products' use of two different transducers, particularly when the transducer that is used for reading data employs magnetoresistive technology. At the time it filed suit, Seagate was aware that it was asserting a patent that it knew was not infringed.

**127.** ~~118.~~ Cornice expressly reserves the right to allege additional grounds in support of its claim that Seagate's suit on the '159 Patent is objectively baseless as they become known through the course of discovery.

### Seagate's Suit on the '506 Patent is Objectively Baseless

**128.** ~~119.~~ Seagate's claims with respect to the '506 Patent are objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. For example, no reasonable litigant could realistically expect to be able to establish that the patent is valid and enforceable in light of the prior art. In particular, each and every one of the asserted claims recite the numerical limitations "0.75" and "1.5" associated with a "quadrature servo pattern" and "gray scale band," respectively, of a magnetic disk for use in a servo disk drive system. No reasonable litigant could realistically expect to be able to establish that the asserted claims including those numerical limitations are valid over the prior art.

**129.** ~~120.~~ Cornice expressly reserves the right to allege additional grounds in support of its claim that Seagate's suit on the '506 Patent is objectively baseless as they become known through the course of discovery.

34

**Tortious Interference**

**130.** ~~121.~~—Counterclaim Defendant commenced this lawsuit alleging claims of patent infringement when, as discussed above, it knew that the allegations and claims of infringement were false, baseless, and frivolous.

**131.** ~~122.~~—Counterclaim Defendant filed the Complaint in the USITC alleging claims of patent infringement when, as discussed above, it knew that the allegations and claims of infringement were false, baseless, and frivolous.

**132.** ~~123.~~—Counterclaim Defendant commenced this action and filed its Complaint in the USITC for the purpose of attempting to interfere with the business relationships of a competitor.

**133.** ~~124.~~—Counterclaims Defendant's patent infringement suit (a) is objectively baseless in the sense that no reasonable litigant could realistically expect to prevail on its claims, and (b) was commenced for the purpose of improperly interfering with the business relationships of a competitor.

**134.** ~~125.~~—Counterclaim Defendant's conduct of this litigation has intentionally and improperly interfered with Cornice's past, current, and future business opportunities and relationships with clients, customers, and suppliers, and threatens the continuation and very existence of Cornice.

**135.** ~~126.~~—As set forth above, the actions complained of — including Counterclaim Defendant's (a) filing and maintaining this action, (b) filing its complaint in the USITC, (c) publicizing this action to actual and potential business partners and customers, and (d) advising potential business partners and customers that Cornice will

be unable to supply its products because they allegedly infringe the patents in suit — improperly and unlawfully interfere with Cornice's prospective business relations.

**136.** ~~127.~~ Counterclaim Defendant's improper conduct has induced or caused third parties not to enter into or continue contractual or business relations with Cornice. Cornice has had various prospective business relations with third parties that could not be consummated because of Counterclaim Defendant's wrongful conduct, and such relations would have been consummated if not for Counterclaims Defendant's wrongful conduct.

**137.** ~~128.~~ Counterclaim Defendant has interfered with Cornice's business relationships with existing and prospective clients, and new business opportunities, by means that are dishonest, unfair, and improper, and that improper conduct has directly and proximately caused injury and damage to the business and property of Cornice.

**138.** ~~129.~~ Cornice has been damaged and continues to be damaged, in an amount to be determined at trial, by the above-described tortious interference with Cornice's prospective business relations.

**139.** ~~130.~~ Cornice is entitled to compensation for all detriment proximately caused by Counterclaim Defendant's interference, including general and consequential damages with interest, injunctive relief to avoid further irreparable harm, and punitive damages.

## NINTH COUNTERCLAIM

## UNFAIR COMPETITION UNDER COLORADO COMMON LAW

**140.** ~~131.~~ Cornice incorporates herein by reference the allegations of paragraphs ~~1130~~**1-130** of this Answer and Counterclaims.

36

**141.** ~~132.~~ As set forth above, the actions complained of — including Counterclaims Defendant's (a) filing and maintaining this objectively baseless infringement action, (b) filing its complaint in the USITC, (c) publicizing this action to actual and potential business partners and customers, and (d) advising potential business partners and customers that Cornice will be unable to supply its products because they allegedly infringe the patents in suit — constitute unfair competition under Colorado common law.

**142.** ~~133.~~ Counterclaim Defendant's anti-competitive conduct is immoral, unethical, oppressive, and unscrupulous.

**143.** ~~134.~~ Counterclaim Defendant's intentional and anticompetitive conduct has directly and proximately caused injury and damage to the business and property of Cornice, as set forth above.

**144.** ~~135.~~ Cornice has been damaged and continues to be damaged, in an amount to be determined at trial, by the Counterclaim Defendant's unfair competition.

**145.** ~~136.~~ Cornice is entitled to compensation for all detriment proximately caused by Counterclaim Defendant's conduct, including general and consequential damages with interest, injunctive relief to avoid further irreparable harm, and punitive damages.

### TENTH COUNTERCLAIM

### UNFAIR COMPETITION UNDER COLORADO REV. STAT. § 6-1-105

**146.** ~~137.~~ Cornice incorporates herein by reference the allegations of paragraphs ~~1136~~**1-136** of this Answer and Counterclaims.

**147.** ~~138.~~ As set forth above, the actions complained of — including Counterclaims Defendant's (a) filing and maintaining this objectively baseless

infringement action, (b) filing its complaint in the USITC, (c) publicizing this action to actual and potential business partners and customers, and (d) advising potential business partners and customers that Cornice will be unable to supply its products because they allegedly infringe the patents in suit — constitute unfair trade practices under Colo. Rev. Stat. § 6-1105~~1~~-105 in that they disparage the goods, services, property or business of Cornice by false or misleading representations of fact.

**148.** ~~139.~~ Counterclaim Defendant engaged in these deceptive trade practices with the intent to injure Cornice and to destroy or substantially lessen competition from Cornice.

**149.** ~~140.~~ Counterclaim Defendant's conduct has directly and proximately caused injury and damage to the business and property of Cornice, as set forth above.

**150.** ~~141.~~ Cornice has been damaged and continues to be damaged, in an amount to be determined at trial, by the Counterclaim Defendant's unfair trade practices.

**151.** ~~142.~~ Cornice is entitled to compensation for all detriment proximately caused by Counterclaim Defendant's conduct, including general and consequential damages with interest, injunctive relief to avoid further irreparable harm, and punitive damages.

## ELEVENTH COUNTERCLAIM
## BREACH OF CONTRACT UNDER CALIFORNIA LAW

**152.** **Cornice incorporates herein by reference the allegations of paragraphs 1-149 of this Answer and Counterclaims.**

**153.**

**154.**

**155.**

**156.**

**157.**

**158.**

**159.**

**160.**

WHEREFORE, Cornice prays for judgment as follows:

A.     That plaintiff's Complaint and any amendments thereto be dismissed with prejudice, that judgment be entered in favor of Cornice and against plaintiff on ~~plaintiffs~~**plaintiff's** Complaint, and that plaintiff takes nothing by reason of its claims or otherwise;

B.     An Order declaring that the '159 Patent, the '461 Patent, the '506 Patent, the '754 Patent, the '054 Patent, the '845 Patent, and the

'606 Patent are invalid, unenforceable, and not infringed by Cornice;

C.      That this case be declared an exceptional case and plaintiff be required to pay Cornice's attorneys' fees pursuant to 35 U.S.C. § 285 and Cornice's costs of suit;

D.      That Cornice be awarded compensatory, consequential, and incidental damages, with interest;

E.      That plaintiff, its representatives, agents, and assigns, be forever enjoined from further publicizing this objectively baseless action, or of advising potential business partners and/or customers of Cornice regarding Cornice's ability to supply product, or otherwise interfering or unfairly competing with Cornice's business;

F.      That Cornice be awarded enhanced damages as permitted by law; and

G.      That Cornice be awarded such other and further relief as the court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
    *Attorneys for Defendant and*
    *Counterclaim Plaintiff Cornice, Inc.*

~~OF COUNSEL:~~

**Of Counsel:**
Mathew D. Powers
**Vernon M. Winters**
Jason D. Kipnis
**Steven C. Carlson**
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

**David A. Hickerson**
**Joanne M. Guerrera**
**David D. Cross**
**Weil, Gotshal & Manges LLP**
**1501 K St. N.W., Suite 100**
**Washington, D.C. 20005**
**(202) 682-7000**

Russell Wheatley
**Steven Morgan**
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

~~Alan J. Weinschel~~
David C. Radulescu
**Steven J. Rizzi**
Arlene **A.** Hahn
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

~~August 11, 2004~~

**March 25, 2005**

Document comparison done by DeltaView on Friday, March 25, 2005 1:35:20 PM

| Input: | |
|---|---|
| Document 1 | pcdocs://lib01/449631/1 |
| Document 2 | pcdocs://lib01/457311/1 |
| Rendering set | Standard no color |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 116 |
| Deletions | 209 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 0 |
| Format changed | 28 |
| Total changes | 357 |