IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,

        Plaintiff,

    v.

CORNICE, INC.

        Defendant.

C.A. No. 04-418 (SLR)

**REDACTED VERSION**

### SEAGATE TECHNOLOGY LLC's EXPEDITED MOTION FOR ISSUANCE OF LETTER ROGATORY

Pursuant to Federal Rule of Civil Procedure 28(b), Seagate Technology LLC ("Seagate") applies to this Court for issuance of a Letter Rogatory to the Appropriate Judicial Authority of Ontario, Canada, and requests expedited approval of the same. The Letter Rogatory requests the Appropriate Judicial Authority in the affected jurisdiction to issue a subpoena requiring Canadian Imperial Bank of Commerce World Markets, Inc. of Toronto, Ontario ("CIBC-TOR") to produce documents and a representative knowledgeable of the issues in this matter to appear and offer a videotaped deposition at a mutually agreeable location and time.

As discussed below, Seagate has attempted over the past two months to obtain information from CIBC-TOR relevant to Seagate's claims in this action without engaging the courts. Because those efforts have proved unsuccessful to this point, Seagate now brings this motion and respectfully requests this Court issue a Letter Rogatory. Expedited approval of this request is necessary because we have been informed that it typically takes two months to obtain and enforce subpoenas from the Canadian Court upon its receipt of the Letter Rogatory.

## I.    BACKGROUND OF CASE

Seagate sued Defendant Cornice, Inc. ("Cornice") for infringement of seven United States patents relating to hard disk drive technology: U.S. Patent Nos. 5,452,159; 5,600,506; 5,596,461; 6,146,754; 6,324,054; 6,545,845; and 6,744,606. The Cornice products accused of infringing the patents-in-suit are Cornice's "Storage Element" disc drives, which are components used to record and store data in various consumer electronics. The accused products include Cornice's 1.0 Gigabyte ("GB"), 1.5 GB, 2.0 GB, 3.0 GB, and 4.0 GB Storage Elements.

Seagate is seeking damages to compensate for Cornice's infringement of the patents-in-suit, including lost profits, but in no event less than a reasonable royalty, together with interest in costs. Because Seagate contends that Cornice's infringement is willful, Seagate is also seeking enhanced damages and attorneys' fees and costs.

## II.   BACKGROUND OF OBTAINING DISCOVERY FROM CIBC CAPITAL PARTNERS

During fact discovery in this action, Seagate learned that Cornice received a portion of its initial funding from Canadian Imperial Bank of Commerce Capital Partners ("CIBC Capital Partners"), which upon information and belief is responsible for the principal investment activities of both CIBC-TOR and Canadian Imperial Bank of Commerce World Markets, Corp. of New York, New York ("CIBC-NY").[1]

In an effort to obtain discovery concerning CIBC Capital Partners investment in Cornice, Seagate timely served a subpoena on CIBC-NY on June 8, 2005, at 245 Park Avenue, 42nd Floor, New York, New York.[3] The subpoena requested that CIBC-NY produce by June 22, 2005 various documents concerning CIBC Capital Partners'

---

[1] *See* Declaration of Lewis E. Hudnell, III ("Hudnell Decl."), ¶2-4.
[2] *Id.* at ¶ 5-6.
[3] *Id.* at ¶ 9.

investment in Cornice.[4]  The subpoena also requested that CIBC-NY produce by June 24, 2005 a representative knowledgeable to testify about various topics concerning CIBC Capital Partners' investment in Cornice.[5]  Through a letter dated June 27, 2005, CIBC-NY responded to the subpoena by producing only a single document and withholding another document on the basis of attorney client/work product privilege.[6]

On or about June 27, 2005, through a telephone conversation between counsel for Seagate and in-house counsel for CIBC-NY, Michelle A. Murphy, CIBC-NY informed Seagate that any further documentation relating to the subpoena must be obtained from CIBC-TOR.[7]  CIBC-NY informed Seagate that CIBC Capital Partners' investment was primarily handled by CIBC-TOR and that an employee from CIBC-TOR sat on Cornice's board of directors.[8]  CIBC-NY further informed Seagate that Melissa Kennedy, in-house counsel for CIBC-TOR, was the person to contact at CIBC-TOR regarding the subpoena.[9]

Notwithstanding, in its June 27th letter, CIBC-NY offered to produce Mark E. Hastings for deposition.[10]  Through a telephone conversation between counsel for Seagate and Ms. Murphy, CIBC-NY informed Seagate that Mr. Hastings is a managing director in CIBC Capital Partners' Boston office and that he also sat on Cornice's board of directors for a period of time.[11]

On or about June 28, 2005, Seagate contacted CIBC-NY to set a date for Mr. Hastings' deposition.[12]  Ms. Murphy, indicated, however, that CIBC-NY was unable to set a date for Mr. Hastings' deposition because Mr. Hastings was going on vacation until

_____

[4] *Id.*
[5] *Id.*
[6] *Id.* at ¶ 10.
[7] *Id.* at ¶ 11.
[8] *Id.*
[9] *Id.*
[10] *Id.* at ¶ 12-13.
[11] *Id.*
[12] *Id.* at ¶ 14.

July 10, 2005.[13]  Accordingly, the parties agreed to schedule Mr. Hastings' deposition after he returned from vacation on July 10, 2005.[14]

On or about July 11, 2005, Seagate again contacted CIBC-NY to set a date for Mr. Hastings' deposition.[15]  Ms. Murphy indicated, however, that she was unable to set a date for Mr. Hastings' deposition because she was going to be on vacation from July 14, 2005 to July 25, 2005.[16]

On July 25, 2005, Seagate sent a letter to CIBC-NY reiterating Seagate's intent to proceed with the deposition of Mr. Hastings.[17]  Seagate also requested that CIBC-NY produce a privilege log for the document that CIBC-NY is withholding on the basis of privilege.[18]

On July 27, 2005, CIBC-NY sent a letter to Seagate enclosing the requested privilege log.[19]  In that letter, CIBC-NY, however, declined to produce Mr. Hastings for deposition, contending that discovery in the underlying action had concluded and that Mr. Hastings only sat on Cornice's Board of Directors for a short period of time.[20]

Sometime in July, Seagate also contacted Ms. Kennedy at CIBC-TOR to inquire whether CIBC-TOR would voluntarily produce documents responsive to the CIBC-NY subpoena without a Canadian subpoena.[21]  Ms. Kennedy indicated that CIBC-TOR did have relevant documents, however, that CIBC-TOR would only produce those documents in response to a subpoena properly issued by a Canadian court pursuant to a Letter Rogatory.[22]  Ms. Kennedy, however, confirmed that CIBC-TOR was involved in CIBC

---

[13] *Id.*
[14] *Id.*
[15] *Id.* at ¶ 15.
[16] *Id.*
[17] *Id.* at ¶ 16.
[18] *Id.*
[19] *Id.* at ¶ 17.
[20] *Id.* at ¶ 18.
[21] *Id.* at ¶ 19.
[22] *Id.*

Capital Partners' initial investment in Cornice and that one of CIBC-TOR's employees sat on Cornice's board of directors.[23]

Having been unable to this point to obtain the information it needs to support its claims in this case from either CIBC-TOR or CIBC-NY, Seagate has now been forced to seek assistance from the courts to resolve this issue.[24] Specifically, with respect to CIBC-TOR, Seagate has retained Canadian counsel to assist in obtaining a subpoena from a Canadian court.[25] As explained above, Seagate has learned that CIBC-TOR has information, separate and independent from CIBC-NY, that is relevant to Seagate's claims in this lawsuit. Accordingly, Seagate respectfully moves this Court for issuance of a Letter Rogatory requesting the Appropriate Judicial Authority in the affected jurisdiction to issue a subpoena requiring CIBC-TOR to produce documents responsive to the document requests listed in Schedule A of Hudnell Decl. Exhibit 6 and to produce a representative knowledgeable of the deposition topics listed in Schedule B of Hudnell Decl. Exhibit 6 pursuant to Letter Rogatory.

## III.    CIBC-TOR HAS INFORMATION THAT IS HIGHLY RELEVANT TO SEAGATE'S CLAIMS IN THIS CASE.

As noted above, upon information and belief, Cornice received a portion of its initial funding from CIBC Capital Partners, which upon information and belief is responsible for the principle investing activities of both CIBC-NY and CIBC-TOR.[26]

---

[23] *Id.*
[24] In addition to this motion, Seagate has also filed a motion in the Southern District of New York to compel CIBC-NY's compliance with the June 8th subpoena issued by that court.
[25] Hudnell Decl. at ¶ 21.
[26] *Id.* at ¶2-4.
[27] *Id.* at ¶5-6.

According to CIBC-NY, CIBC Capital Partners' initial investment was primarily handled by CIBC-TOR.[28]  Also, according to CIBC-NY, an employee from CIBC-TOR sat on Cornice's board of directors.[29]  CIBC-TOR confirmed that they were involved in CIBC Capital Partners' initial investment in Cornice and that one of their employees sat on Cornice's board of directors.[30]  CIBC-TOR has also indicated that they may have documents responsive to the June 8th subpoena served on CIBC-NY.[31]

Thus, CIBC-TOR has critical information that is highly relevant and directly supports Seagate's claims in this case.  Specifically, CIBC-TOR has documents concerning their decision to invest in Cornice and information that they learned about Cornice and its accused products by virtue of CIBC-TOR's investment in Cornice and during the Cornice board meetings its employees attended.

, it is clear that one of the purposes of CIBC-TOR's presence on Cornice's board was to monitor the financial condition of Cornice.  As such, CIBC-TOR has relevant information concerning the financial condition of Cornice that they may have received from Cornice or that they may have prepared themselves as part of CIBC Capital Partners' decision to invest in Cornice.  Such information presumably includes valuations of Cornice based on Cornice's accused products.  This information directly bears on a range of issues, most notably Seagate's claim for damages.  For example, the value of Cornice is relevant to determining what may be a reasonable royalty should Cornice be found to have infringed any of the patents-in-suit.

Counsel for Seagate has attempted to obtain information concerning CIBC Capital Partners' investment in Cornice by subpoenaing CIBC-NY.[32]  CIBC-NY, however, has produced only a single document in response to the subpoena and is withholding another

---

[28] *Id.* at ¶11.
[29] *Id.*
[30] *Id.* at ¶ 9.
[31] *Id.* at ¶ 19.
[32] *Id.* at ¶19.

6

document on the basis of privilege.[33]  CIBC-NY has also indicated that any further

documentation responsive to the subpoena must be obtained from CIBC-TOR.[34]

Moreover, CIBC-NY has declined to produce a witness for deposition in response to the

subpoena.[35]  CIBC-TOR has also declined to cooperate without a subpoena properly

issued by a Canadian Court.[36]

      For at least these reasons, Seagate requires the assistance of this Court to procure

a Canadian subpoena compelling CIBC-TOR to produce documents responsive to the

document requests listed in Schedule A of Hudnell Decl. Exhibit 6 and to produce a

representative knowledgeable of the deposition topics listed in Schedule B of Hudnell

Decl. Exhibit 6 pursuant to Letter Rogatory.

## IV.    CONCLUSION

      The extent of the information, documents, and corresponding deposition

testimony requested in the Letter Rogatory are both reasonable and relevant to the

pending litigation as the requested documents and testimony bear directly on Seagate's

claims in this case.

      Accordingly, for the reasons set forth above, Seagate respectfully requests that the

attached Letter Rogatory requesting that the Canadian Court subpoena the production of

documents responsive to the document requests listed in Schedule A of Hudnell Decl.

Exhibit 6 in their possession, custody, and control, including a stipulation as to the

authenticity of those documents, and the videotaped deposition of a representative of

CIBC-TOR knowledgeable of the deposition topics listed Schedule B of Hudnell Decl.

Exhibit 6, be issued to the appropriate judicial authority in Ontario, Canada and that this

matter be given expedited approval.  For convenience, Schedules A and B are also

---

[33] *Id.* at ¶10.
[34] *Id.* at ¶ 11.
[35] *Id.* at ¶ 18.
[36] *Id.* at ¶ 19.

provided within the proposed Request for International Judicial Assistance, Exhibit 1 to

this Motion.

Dated:  August 18, 2005            FISH & RICHARDSON P.C.


                                   By:  */s/ Timothy Devlin*
                                        William J. Marsden (#2247)
                                        Timothy Devlin (#4241)
                                        919 N. Market Street, Suite 1100
                                        P.O. Box 1114
                                        Wilmington, DE  19899-1114

                                        Roger S. Borovoy
                                        David M. Barkan
                                        D. Austin Horowitz
                                        500 Arguello Street
                                        Redwood City, CA 94063-1526

                                        Ruffin B. Cordell
                                        Brian R. Nester
                                        Timothy W. Riffe
                                        Christian A. Chu
                                        1425 K Street NW, Suite 1100
                                        Washington, D.C.  20005

                                        Edmond Bannon
                                        Lewis E. Hudnell, III
                                        Citigroup Center – 52nd Floor
                                        153 East 53rd Street
                                        New York, NY 10022-4611

                                   Attorneys for Plaintiff
                                   SEAGATE TECHNOLOGY LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,

                Plaintiff,

     v.

CORNICE, INC.,

                Defendant.

C.A. No. 04-418-SLR

**[PROPOSED] ORDER GRANTING SEAGATE'S EXPEDITED MOTION FOR
ISSUANCE OF LETTER ROGATORY**

On this day came for consideration Seagate's Expedited Motion for Issuance of Letter Rogatory. It appearing that there are witnesses residing within a foreign jurisdiction whose testimony is necessary in order that complete justice be done in this case,

NOW THEREFORE, IT IS HEREBY ORDERED THAT the Motion for Issuance of Letter Rogatory is GRANTED.

Signed this _____ day of _____, 2005.


_____
UNITED STATES DISTRICT JUDGE

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,

          Plaintiff,

      v.

CORNICE, INC.

          Defendant.

C.A. No. 04-418 (SLR)

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

TO:   THE ONTARIO SUPERIOR COURT OF JUSTICE

The United States District for the District of Delaware presents its compliments to the Ontario Supreme Court of Justice and requests international judicial assistance to obtain documents and to obtain the oral examination of a representative of Canadian Imperial Bank of Commerce World Markets, Inc. of Toronto, Ontario ("CIBC-TOR") with knowledge of the matters in issue.  The documents and testimony sought is necessary for trial in this matter and will be adduced at trial, if admissible and appropriate.

     This Court, which is a competent court of law and equity and properly has jurisdiction over this proceeding, has the power to compel the attendance of witnesses and the production of documents by corporations and individuals both within and outside its jurisdiction.  In the proper exercise of its authority, this Court has determined that in the interests of justice and to assure a complete record, CIBC-TOR needs to produce documents and a representative knowledgeable of the matters in issue to be examined under oath.

I.     **Nature of Proceedings**

Seagate Technology, LCC ("Seagate") is plaintiff in a patent infringement lawsuit styled Seagate Technology, LLC v. Cornice, Inc., C.A. No. 04-418 (SLR), now pending in the United States District Court for the District of Delaware (USA). Seagate has sued Cornice for infringement of seven United States patents relating to hard disk drive technology: U.S. Patent Nos. 5,452,159; 5,600,506; 5,596,461; 6,146,754; 6,324,054; 6,545,845; and 6,744,606. The Cornice products accused of infringing the patents-in-suit are Cornice's "Storage Element" disc drives, which are components used to record and store data in various consumer electronics. The accused products include Cornice's 1.0 Gigabyte ("GB"), 1.5 GB, 2.0 GB, 3.0 GB, and 4.0 GB Storage Elements.

Seagate is seeking damages to compensate for Cornice's infringement of the patents-in-suit, including lost profits, but in no event less than a reasonable royalty, together with interest in costs. Because Seagate contends that Cornice's infringement is willful, Seagate is also seeking enhanced damages and attorneys fees and costs.

During fact discovery in this action, Seagate learned that Cornice received a portion of its initial funding from Canadian Imperial Bank of Commerce Capital Partners ("CIBC Capital Partners"), which upon information and belief is responsible for the principal investment activities of both CIBC-TOR and Canadian Imperial Bank of Commerce World Markets, Corp. of New York, New York ("CIBC-NY").

Upon information and belief, CIBC Capital Partners' investment in Cornice was handled by CIBC-TOR. Also, upon information and belief, an employee from CIBC-TOR sat on Cornice's board of directors.

In an effort to obtain information concerning CIBC Capital Partners investment in Cornice, Seagate served a subpoena on CIBC-NY. The subpoena requested that CIBC-NY produce various documents concerning CIBC Capital Partners investment in Cornice.

The subpoena also requested that CIBC-NY produce a representative knowledgeable to testify about various topics concerning CIBC Capital Partner's investment in Cornice.

CIBC-NY has produced only a single document in response to the subpoena and is withholding another document on the basis of privilege. CIBC-NY has indicated, however, that any further documents responsive to the subpoena must be obtained from CIBC-TOR. CIBC-NY has also declined to produce a witness for deposition in response to the subpoena.

CIBC-NY did, however, indicate that CIBC Capital Partner's investment in Cornice was primarily handled by CIBC-TOR and that an employee of CIBC-TOR sat on Cornice's board of directors. Seagate contacted CIBC-TOR and CIBC-TOR confirmed that they were involved in CIBC Capital Partners' investment in Cornice. CIBC-TOR also confirmed that one of their employees sat on Cornice's board of directors. CIBC-TOR further indicated that they may have relevant documents, however, that they would only produce those documents in response to a subpoena properly issued by a Canadian Court pursuant to a Letter Rogatory.

## II.     Evidence Sought

Upon information and belief, CIBC-TOR has relevant documents that are necessary for this Court to determine the issues pending before it.

As noted above,

Thus, CIBC-TOR has critical information that is highly relevant and directly supports Seagate's damages claims in this case. Specifically, CIBC-TOR has documents concerning their decision to invest in Cornice and information that they learned about Cornice and its accused products by virtue of CIBC-TOR investment and during the Cornice board meetings its employee attended. It is believed that the purpose of CIBC-

3

TOR's presence on Cornice's board was to monitor the financial condition of Cornice. As such, CIBC-TOR has relevant information concerning the financial condition of Cornice that they may have received from Cornice or that they might have prepared themselves as part of CIBC Capital Partners' decision to invest in Cornice. Such information presumably includes valuations of Cornice based on Cornice's accused products. This information directly bears on a range of issues, most notably Seagate's claim for damages. For example, the value of Cornice is relevant to determining what may be a reasonable royalty should Cornice be found to have infringed any of the patents-in-suit.

The evidence sought can not be obtained other than through CIBC-TOR and will be useful to this Court in determining the extent of Cornice's liability if Cornice is found to have infringed any of the patents-in-suit. The evidence sought is necessary for trial in this matter and will be adduced at trial, if admissible and appropriate.

The Court therefore requests that:

1.  You order CIBC-TOR to produce on or before September 16, 2005, or at a time to be determined by you, documents responsive to the document requests listed in Schedule A of Exhibit A of this Letter.

2.  You order CIBC-TOR to execute a stipulation as to the authenticity of the documents produced pursuant to paragraph 1 above.

3.  You cause, by your proper and usual process, CIBC-TOR to produce a representative with knowledgeable of the deposition topics listed in Schedule B of Exhibit A of this Letter to appear before some competent officer authorized by you, on or before September 16, 2005, or at a time and/or place to be determined by you, to give testimony under oath by questions and answers upon oral, videotaped deposition, such deposition to continue from day to day until completion and conducted with the Federal Rules of Civil Procedure, the Local Rules of the United States District for the District of Delaware, or as may be permitted by you.

### III.    Reciprocity

This Court expresses its sincere willingness to provide similar assistance to the Ontario Court, if future circumstances so require.

### IV.    Conclusion

This Court, in the spirit of comity and reciprocity, hereby requests international judicial assistance in the form of this Letter Rogatory seeking to compel CIBC-TOR to produce a representative to appear for a videotaped deposition and the production of documents from the same.

Dated this ____ day of _____, 2005.


BY THE COURT.


_____
The Honorable Sue L. Robinson
United States District Court Judge for the
District of Delaware



THE SEAL OF THE COURT:

5

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2005, I electronically filed a **SEAGATE TECHNOLOGY LLC's EXPEDITED MOTION FOR ISSUANCE OF LETTER ROGATORY** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Jack B. Blumenfeld, Esquire          Attorneys for Defendant
MORRIS NICHOLS ARSHT &               Cornice, Inc.
TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

I hereby certify that on August 18, 2005, I have mailed by United States Postal

Service, the document(s) to the following non-registered participants:

Mathew D. Powers                     Attorneys for Defendant
Jason D. Kipnis                      Cornice, Inc.
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065

Russell Wheatley                     Attorneys for Defendant
WEIL, GOTSHAL & MANGES LLP           Cornice, Inc.
700 Louisiana, Suite 1600
Houston, TX  77002

Alan J. Weinschel                    Attorneys for Defendant
David C. Radulescu                   Cornice, Inc.
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153

_____
                */s/ Timothy Devlin*
                Timothy Devlin

## SCHEDULE A
## ATTACHED TO SEAGATE'S SUBPOENA
## TO CIBC WORLD MARKETS CORP.

## DEFINITIONS

1.      "CIBC World Markets Corp.," "you," or "your" means and refers to CIBC World Markets Corp., its divisions, affiliates, parent or controlling companies, all of their subsidiaries, divisions (including CIBC Capital Partners), past and present joint ventures, partnerships, predecessors-in-interest, successors, limited partnerships or other operation entities and, without limitations, all of their officers, directors, employees, representatives, agents, accountants, auditors, experts consultants, attorneys, and other persons under their control or acting on behalf or at the direction of the CIBC World Markets Corp. or any of its related entities.

2.      "Cornice" means Cornice, Inc., including without limitation all of its corporate locations, and all predecessors (including Convergent Systems Solutions), its divisions, affiliates, parent or controlling companies, all of their subsidiaries, divisions, past and present joint ventures, partnerships, successors, limited partnerships or other operation entities and, without limitations, all of their officers, directors, employees, representatives, agents, accountants, auditors, experts consultants, attorneys, and other persons under their control or acting on behalf or at the direction of Cornice or any of its related entities.

3.      "Seagate" means Seagate Technology, LLC, including without limitation all of its corporate locations, and all predecessors, its divisions, affiliates, parent or controlling companies, all of their subsidiaries, divisions, past and present joint ventures, partnerships, successors, limited partnerships or other operation entities and, without limitations, all of their officers, directors, employees, representatives, agents, accountants, auditors, experts consultants, attorneys, and other persons under their control or acting on behalf or at the direction of Seagate or any of its related entities.

4.      "Document" and "documents" are used in the broadest sense possible under Rules 26 and 34(a) of the Federal Rules of Civil Procedure, and shall mean and include any medium upon which information or data is recorded in any form, and include, without limitation, any information or data that is printed, recorded, filmed, stored or reproduced by any mechanical, magnetic or electronic process or means, or written or produced by hand or machine, and

whether the information or data is an original, master, copy or translation thereof. The terms "document" or "documents" also include all copies that are not identical with the original, which includes but is not limited to any document containing comments or notations appearing on the document and not a part of the original text. A draft or non-identical copy (*i.e.*, a document with any marks, alterations, notes, comments or other changes to it, or a translation of a document) is a separate document within the meaning of this term.

5.     The term "communication" (or any variant thereof) means any contact between or among two or more persons and shall include, without limitation, written contact by means such as letters, memoranda, telegrams, telecopies, telexes, e-mail, or any other document; the transmittal of information by any means; any oral contact such as face-to-face meetings or telephone conversations; and any writings memorializing such oral contact.

6.     The "'159 patent" means U.S. Patent No. 5,452,159.

7.     The "'461 patent" means U.S. Patent No. 5,596,461.

8.     The "'506 patent" means U.S. Patent No. 5,600,506.

9.     The "'754 patent" means U.S. Patent No. 6,146,754.

10.    The "'054 patent" means U.S. Patent No. 6,324,054.

11.    The "'845 patent" means U.S. Patent No. 6,545,845.

12.    The "'606 patent" means U.S. Patent No. 6,744,606.

13.    The "Seagate Patents-in-Suit" means, individually and collectively, the '159 patent, the '461 patent, the '506 patent, the '754 patent, the '054 patent, the '845 patent, and the '606 patent.

14.    The terms and phrases "relating," "concerning," "referring or relating to," "refer or relate to," "refers or relates to," or "reflecting" mean and refer to the source document or thing (if any) and any document or thing that contains, records, discusses, involves, concerns, mentions, notes, evidences, memorializes, examines, describes, regards, pertains to, comments upon, reflects, identifies, or refers in any way to the matters set forth.

15.    "Accused Cornice Product" or "Accused Cornice Products" means and includes all of Cornice's disc drives, components thereof, and products containing such components and/or disc drives, whether in prototype or final format.

16.    The term "purchase" includes but is not limited to the following meanings: obtain; acquire; procure; get; get hold of; gain; attain; receive; buy; pay for; or pay money for.

## INSTRUCTIONS

1.    The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case is most appropriate. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

2.    Where a document may be sensed or copied by a computing device, such as a computer, text processor, word processor, or any similar device, you shall produce a machine-readable copy in a form that is readable by a similar computing device. You shall produce the contents of floppy disks, hard disks, optical disks, magnetic tapes, read-only memories, computer networks, and other memory devices of all types.

3.    All documents shall be produced either in the order and in the manner that they are kept in the usual course of business or shall be organized and labeled to correspond with the categories of this subpoena. Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label or other means of identification of such cover or other container shall be attached to the document.

4.    Each document and thing produced in response to these requests shall be produced along with any and/or all attachments and/or enclosures as have ever been attached to and/or enclosed with the document or thing at any time.

5.    If you cannot produce any of these documents in full, produce them to the fullest extent possible, specifying clearly the reasons for the inability to produce the remainder and stating whatever information, knowledge, or belief that you have concerning the unproduced portion.

6.    In you cannot produce all of the requested documents, describe in detail every reason for any failure or inability to produce each of those requested documents.

7.    If you cannot locate documents or things responsive to these requests after the exercise of due diligence, state in detail the particulars of the efforts that you made to locate such documents or things and the reasons for their disappearance or unavailability. If such documents or things exist but are unavailable to you, state to the best of your knowledge, where the

documents or things are located, including the name, address, and telephone number of the custodian.

      8.    If any document covered by these requests is withheld by reason of a claimed privilege, a privilege log is to be furnished at the time that documents are produced, identifying any such document for which the privilege is claimed, together with the following information with respect to any document withheld: author(s); recipient(s); sender(s); indicated or blind copies; title of the document, if any; date; general subject matter; present location of all copies of such document; the basis or bases on which the privilege is claimed; and the request to which such document relates.

      9.    These requests shall apply to all documents in your possession, custody or control at the present time or coming into your possession, custody or control prior to the date of the production.  If you know of the existence of such documents or things requested below, but are unable to produce such documents or things because they are not presently in your possession, custody or control, you shall so state and shall identify such documents and things, and the person who has the possession, custody or control of the documents or things.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

Please produce the following documents pursuant to Fed. R. Civ. P. 45:

      1.    All documents relating to, and including, any proposals, business plans, surveys, presentations, or other communications with Cornice, including, but not limited to, strategic plans, operating plans, marketing plans, financial plans, production plans, sales plans and capital or investment plans referring or relating to the Accused Cornice Products.

      2.    All documents that refer or relate to the estimated or actual market for each of the Accused Cornice Products, including but not limited to historical and projected market size, composition of the market, market projection models, market projections, competition analyses in total or segment of the market for any of the Accused Cornice Products, industry trends, and industry developments.

      3.    All documents referring or relating to Cornice's commercial exploitation of the Accused Cornice Products, including without limitation feasibility studies, marketing plans, marketing forecasts, estimates, projections or reports of market share, periodic research and

development reports, management reports and/or other periodic reports, and documents referring or relating to marketing, manufacturing, sampling, efforts to sell, offers for sale, importation, shipping, and actual sales.

4.    All documents that relate to or constitute advertising or marketing of the Accused Cornice Products, including but not limited to:  all descriptive or promotional materials concerning each of the Accused Products, concept for a product, and products containing same made, offered for sale or sold by or for Cornice, press releases and trade journal articles describing the Accused Cornice Products and products containing same, advertisements, catalogs, materials prepared for use in trade meetings and conventions, package inserts, technical data sheets, specifications, price lists, sales presentations to customers or potential customers and any other publicly disseminated material promoting or describing such products.

5.    All documents relating to, and including, any uses, testing, or evaluations of any Accused Cornice Products, since 2000 to the present.

6.    All documents referring or relating to your, or any other person's, business relationship with, investments in, ownership of, oversight of, or control of Cornice.

7.    All documents referring or relating to any evaluation of or negotiation involving or concerning Cornice, relating to any funding, acquisition, partnership, joint venture, or ownership by another person.

8.    All documents regarding Cornice's management.

9.    All communications (including e-mail), and all documents related to such communications, between you and Cornice, or between you and any of Cornice's officers, employees, agents, accountants or attorneys.

10.    All agreements or contracts (including drafts) involving or relating to Cornice, and any documents related to such agreements or contracts.

11.    All documents from or by Cornice, any of Cornice's officers, employees, agents, accountants or attorneys, that refer or relate to Seagate, Seagate Patents-in-Suit, or any litigation between Seagate and Cornice.

12.    All communications (including e-mail), and all documents related to such communications, between you and Cornice referring or relating to Western Digital, Western Digital Patents, any litigation between Western Digital and Cornice, or any Accused Cornice Products.

13.    All documents relating to Hoya Corporation or SAE Magnetics (H.K.) Ltd.

14.    All documents which identify Cornice's: (a) unit sales; (b) costs; (c) gross revenues; (d) unit price, and/or (e) net and gross margins on the Accused Cornice Products for any month or year since Cornice has sold or offered to sell the Accused Products.

15.    All documents sufficient to show the nature and extent of any interest, financial or otherwise, that Cornice has in any other company or entity.

**SCHEDULE B**
## ATTACHED TO SEAGATE'S SUBPOENA
## TO CIBC WORLD MARKETS CORP.

### DEFINITIONS

All definitions set forth in Schedule A attached to Seagate's Subpoena to CIBC World Markets Corp. are incorporated herein in their entirety.

### INSTRUCTIONS

This subpoena calls for you to designate and make available for the purpose of giving testimony at the deposition the officer(s), director(s), managing agent(s), and/or other person(s) who is (are) most knowledgeable and able to testify about each of the subjects identified below under the heading "Deposition Topics."

### DEPOSITION TOPICS

1.    Your knowledge of Cornice, its business, business plans, operating plans, marketing plans, financial plans, production plans, sales plans and capital or investment plans referring or relating to the Accused Cornice Products.

2.    Your knowledge of the Accused Cornice Products, their design, testing, production, manufacturing, marketing, sampling, efforts to sell, sales, offers for sell, importation, distribution, shipping, and actual sales.

3.    Your knowledge of the market, industry, and potential or actual customers of the Accused Cornice Products.

4.    Your business relationship with, investments in, ownership of, oversight of, or control of Cornice.

5.    Your knowledge of any evaluation of or negotiation involving or concerning Cornice, relating to any funding, acquisition, partnership, joint venture, or ownership by another person.

6.    Your communications (including e-mail), and your knowledge of any documents related to such communications, with Cornice, or between you and any of Cornice's officers, employees, agents, accountants or attorneys.

7.    Your knowledge of any agreements or contracts (including drafts) involving or relating to Cornice, and any documents related to such agreements or contracts.

8.    Your knowledge of Cornice's management and directors.

9.    Your knowledge of Seagate, Seagate Patents-in-Suit, any litigation between Seagate and Cornice.

10.   Your knowledge of Western Digital, Western Digital Patents, any litigation between Western Digital and Cornice, or any Accused Cornice Products.

11.   Your knowledge of Cornice's: (a) unit sales; (b) costs; (c) gross revenues; (d) unit price, and/or (e) net and gross margins on the Accused Cornice Products.

12.   Your knowledge of the nature and extent of any interest, financial or otherwise, that Cornice has in any other company or entity.

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2005, I electronically filed a **REDACTED VERSION OF SEAGATE TECHNOLOGY LLC'S EXPEDITED MOTION FOR ISSUANCE OF LETTER ROGATORY** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Jack B. Blumenfeld, Esquire          Attorneys for Defendant
MORRIS NICHOLS ARSHT &               Cornice, Inc.
TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

I hereby certify that on August 25, 2005, I have mailed by United States Postal Service, the document(s) to the following non-registered participants:

Mathew D. Powers                     Attorneys for Defendant
Jason D. Kipnis                      Cornice, Inc.
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065

Russell Wheatley                     Attorneys for Defendant
WEIL, GOTSHAL & MANGES LLP           Cornice, Inc.
700 Louisiana, Suite 1600
Houston, TX  77002

Alan J. Weinschel                    Attorneys for Defendant
David C. Radulescu                   Cornice, Inc.
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153

                                     /s/ Timothy Devlin
                                     Timothy Devlin