IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,

Plaintiff,

v.

CORNICE, INC.

Defendant.

C.A. No. 04-418 (SLR)

**REDACTED VERSION**

### DECLARATION OF LEWIS E. HUDNELL, III IN SUPPORT OF SEAGATE TECHNOLOGY LLC's EXPEDITED MOTION FOR <u>ISSUANCE OF LETTER ROGATORY</u>

I, Lewis E. Hudnell III, of New York, New York in the United States, being duly sworn, depose and say:

1.      I am a principal with the New York office of the law firm of Fish & Richardson, P.C. and a member of the bars of the State of New York and the State of California. I am one counsel for plaintiff Seagate Technology, Inc. ("Seagate") in this patent infringement lawsuit against Cornice, Inc. ("Cornice"). I respectfully submit this declaration in support of Seagate's Expedited Motion for Issuance of Letter Rogatory for the out-of-state production of documents by and deposition of a representative of Canadian Imperial Bank of Commerce World Markets, Inc. ("CIBC-TOR"), a corporation with its principal place of business in Toronto, Ontario. The evidence sought is necessary for trial in this matter and will be adduced at trial, if admissible and appropriate. This declaration is based on my personal knowledge and a review of pertinent documents.

2.      During fact discovery, Seagate learned that CIBC-TOR likely has information directly relevant to the allegations at issue in the above-captioned matter. Significantly, Seagate learned that Cornice received a portion of its initial funding from Canadian Imperial Bank of Commerce Capital Partners ("CIBC Capital Partners"), which

upon information and belief is responsible for the principle investing activities of both CIBC-TOR and Canadian Imperial Bank of Commerce World Markets, Corp. of New York, New York ("CIBC-NY").

   3. Attached as Exhibit 1 is a true and correct copy of a page from CIBC World Markets Web site discussing CIBC Capital Partners.

   4 Attached as Exhibit 2 is a true and correct copy of a page from CIBC World Market's Website listing some of the investments of CIBC Capital Partners, including CIBC Capital Partners' investment in Cornice.

   5.

   6. Attached as Exhibit 3 is a true and correct copy of a page from Cornice's Web site discussing CIBC Capital Partners' investment in Cornice.

Documentary Evidence Sought from CIBC-TOR

   7. Seagate seeks documents responsive to the requests for production listed in Schedule A of Exhibit 6 to this declaration from CIBC-TOR.  This information is highly relevant and directly supports Seagate's damages claims in this case.

Information Sought from CIBC-TOR

   8. Seagate seeks information concerning the deposition topics listed in Schedule B of Exhibit 6 to this declaration from a representative of CIBC-TOR with knowledge of those topics.  This information is highly relevant and directly supports Seagate's damages claims in this case.

### Need for the Ontario Superior Court of Justice's Assistance in Obtaining Evidence from CIBC-TOR

9. On June 8, 2005, Seagate served a subpoena on CIBC-NY in an effort to obtain information concerning CIBC Capital Partners' investment in Cornice. The subpoena requested that CIBC-NY produce various documents by June 22, 2005 concerning CIBC Capital Partners' investment in Cornice. The subpoena also requested that CIBC-NY produce by June 24, 2005, a representative knowledgeable to testify about various topics concerning CIBC Capital Partners' investment in Cornice. A true and correct copy of the subpoena served on CIBC-NY is attached as Exhibit 4. A true and correct copy of the Proof of Service of the subpoena dated June 8, 2005 is attached as Exhibit 5.

10. On or about June 27, 2005, CIBC sent a letter to Seagate. A true and correct copy of that letter is attached as Exhibit 7. With that letter, CIBC-NY produced only a single document responsive to the subpoena. A true and correct copy of that document is attached as Exhibit 8. CIBC-NY indicated in that letter that they are withholding another document on the basis of privilege.

11. On or about June 27, 2005, through a telephone conversation between counsel for Seagate and in-house counsel for CIBC-NY, Michelle A. Murphy, CIBC-NY informed Seagate that any further documentation relating to the subpoena must be obtained from CIBC-TOR. CIBC-NY informed Seagate that CIBC Capital Partners' investment was primarily handled by CIBC-TOR and that an employee from CIBC-TOR sat on Cornice's board of directors. CIBC-NY further informed Seagate that Melissa Kennedy, in-house counsel for CIBC-TOR, was the person to contact at CIBC-TOR regarding the subpoena.

12. CIBC-NY offered in its June 27th letter to produce Mark E. Hastings, a managing director in their Boston Office, for deposition. Through a telephone conversation between counsel for Seagate and Ms. Murphy, CIBC-NY informed Seagate that Mr. Hastings is a managing director in CIBC Capital Partners and that he also sat on Cornice's board of directors for a period time.

13. Attached as Exhibit 9 is a true and correct copy of a page from CIBC World Markets Website providing background information of the professionals of the venture group for CIBC Capital Partners, including Mark E. Hastings.

14. On or about June 28, 2005, I informed Ms. Murphy over the telephone that Seagate wished to set a date to take Mr. Hastings' deposition. Ms. Murphy informed me that CIBC-NY could not schedule Mr. Hastings' deposition at that time because he would be going on vacation until July 10, 2005. Accordingly, Ms. Murphy and I agreed to schedule Mr. Hastings' deposition for some time after he returned from vacation.

15. On or about July 11, 2005, I again contacted Ms. Murphy via telephone and I reiterated Seagate's desire to take the deposition of Mr. Hastings. Ms. Murphy informed me that CIBC-NY could not schedule Mr. Hastings deposition at that time because she was going to be on vacation from July 14, 2005 to July 25, 2005.

16. On or about July 25, 2005, I sent a letter to Ms. Murphy and again requested that CIBC-NY provide Mr. Hastings for deposition. The letter also requested that CIBC-NY provide a privilege log for the document CIBC-NY was withholding on the basis of privilege. A true and correct copy of the letter sent to CIBC-NY dated July 25, 2005, is attached as Exhibit 10.

17. On or about July 27, 2005, CIBC-NY sent another letter to Seagate. A true and correct copy of that letter is attaches as Exhibit 11. CIBC-NY enclosed a privilege log with their July 27th letter. A true and correct copy of the privilege log is attached as Exhibit 12.

18. In its 27th letter, CIBC-NY declined to produce Mr. Hastings for deposition in response to the subpoena. CIBC-NY contended that discovery in the underlying action had concluded and that Mr. Hastings only sat on Cornice's Board of Directors for a short period of time.

19. Sometime in July, Seagate also contacted Ms. Kennedy at CIBC-TOR to inquire whether CIBC-TOR would voluntarily produce documents responsive to the CIBC-NY subpoena without a Canadian subpoena. Ms. Kennedy indicated that CIBC-TOR did have relevant documents, however, that CIBC-TOR would only produce those documents in response to a subpoena properly issued by a Canadian court pursuant to a Letter Rogatory. Ms. Kennedy, however, confirmed that CIBC-TOR was involved in CIBC Capital Partners' initial investment in Cornice and that one of CIBC-TOR's employees sat on Cornice's board of directors.

20. On or about July 26, 2005, Seagate retained Canadian counsel, Bonnie Roberts of Hennie Blaikie in Toronto, to assist in obtaining a subpoena from a Canadian court.

21. Counsel for Seagate is prepared to travel to a location in Ontario convenient to CIBC-TOR. The proposed deposition will not impose any undue burden or unreasonable hardship on CIBC-TOR.

Dated:  August 18, 2005

By:    Lewis E. Hudnell

Lewis E. Hudnell, III
Fish & Richardson P.C.
Citigroup Center – 52nd Floor
153 East 53rd Street
New York, NY 10022-4611

1



# CIBC World Markets

**Home**

**Products & Services**
  M&A Advisory
  Capital Markets
  CIBC Capital Partners
    Merchant Banking
    Venture Group
    Private Equity Funds
  Commercial Banking

**Industry Expertise**

**Research**

**Conferences**

**Careers**

**Company Info**

Home > Products & Services > CIBC Capital Partners

## CIBC Capital Partners

CIBC Capital Partners was founded in 1989 with responsibility for all
the principal investing activities of CIBC World Markets on a global
basis. CIBC Capital Partners manages numerous investment
portfolios with total committed funds in excess of C$5.4 billion and
investments in over 250 companies and approximately 150 third
party funds. CIBC Capital Partners' investment activities are
conducted primarily through four different groups:

- Merchant Banking Group
- Venture Group
- Private Equity Funds Group
- Strategic Investments

CIBC Capital Partners is also a major investor in and strategic
partner of Trimaran Capital Partners, L.L.C., a leading North
American manager of private equity, collateralized bond obligations
and related invested vehicles.

Through its various operating groups and strategic relationships,
CIBC Capital Partners makes both direct investments and fund
investments across diverse industries, geographies and stages of
development. Since 1989, CIBC Capital Partners has provided
private equity, mezzanine and bridge financing to create, grow and
recapitalize companies in North America, Europe and Australia. At
CIBC Capital Partners, we value our strong relationships with other
prominent financial sponsor and corporate partners and seek to
provide creative, flexible and value-added capital solutions for both
our partners and our portfolio companies. The group also supports
the broader strategic initiatives of the Canadian Imperial Bank of
Commerce through assisting in the structuring, monitoring and
harvesting of strategic bank investments.

**Research Services**

- World Markets
  Research

Terms of use | Unsubscribe from email
Copyright 2004 Canadian Imperial Bank of Commerce. All rights reserved

2

# CIBC
# World Markets

Contact Us  |  Site Map [                    ] [ Search ]

Home > Products & Services > CIBC Capital Partners > Venture Group

**Home**

**Products & Services**
  M&A Advisory
  Capital Markets
  CIBC Capital Partners
    Merchant Banking
    Venture Group
    Private Equity Funds
  Commercial Banking

**Industry Expertise**

**Research**

**Conferences**

**Careers**

**Company Info**

## Venture Group

| Overview | Industries | Professionals | Contact Info |

Enterprise Software | Technology-Enabled Services | Communications
| Healthcare | Other

### Selected Investments - Communications Semiconductors

**Equator Technologies, Inc.**

Headquarters: Campbell, California
Investment Date: 2000

Equator Technologies provides high performance, programmable, power efficient system-on-a-chip processors designed for video streaming and image processing applications across a wide range of consumer and enterprise end markets. Its MAP-CA and BSP-15 media chip products have been designed into products developed by leaders in the consumer electronics, communications and video security/surveillance markets.

**PortalPlayer, Inc.**

Headquarters: Santa Clara, California
Investment Date: 2000
IPO: 2004
NASDAQ: PLAY

PortalPlayer develops advanced systems for digital audio recording and playback, using MP3 and other popular digital compression technologies, tightly integrated with electronic commerce and digital rights management. The Company supplies a complete product platform and supporting infrastructure, semiconductors, firmware and PC-based media management software, enabling customers to bring innovative new devices to market in a timely manner.

**SiGe Semiconductor Inc.**

Headquarters: Ottawa, Ontario
Investment Date: 2000

SiGe Semiconductor is a leading global supplier of analog and mixed-signal integrated circuits for next-generation cable telephony, high-speed optical and Bluetooth and Wi-Fi wireless networks, among other applications. The Company focuses on products that deliver on the unique advantages of silicon germanium technology, providing integrated circuits with superior performance and power efficiency.

### Infrastructure

**Chrysalis – ITS Inc.**

**Research Services**

- World Markets Research

Headquarters: Ottawa, Ontario
Investment Date: 2000
Exit Date: 2003 (acquired by Rainbow Technologies)

Chrysalis-ITS provides hardware security products that add trust
and speed to $e^3$commerce, PKI and VPN applications.

### Kaval Wireless Technologies Inc.

Headquarters: Markham, Ontario
Investment Date: 2000

Kaval provides in-building wireless coverage extension solutions for
commercial, public and industrial facilities that enable users of
wireless devices to access information and services from areas
poorly served or previously unreachable. Its flagship LinkNet
platform is a complete in-building wireless coverage system that
converges all commercial, private, and public safety wireless
services onto a single platform.

### OnePath Networks Inc.

Headquarters: Jerusalem, Israel
Investment Date: 1999

OnePath Networks designs and manufactures broadband optical
access equipment that eliminate bandwidth bottlenecks in Multi-
Dwelling Units (MDUs) by delivering high-speed data
communications and digital/analog video services over single-fibre
delivery systems.

## Hardware

### Cornice Corporation (f/k/a Convergent Systems Solutions)

Headquarters: Longmont, Colorado
Investment Date: 2002

Cornice develops small form factor hard disk drives using a new
low-cost, high-capacity architecture optimized for portable
consumer electronics products such as MP3 players, digital
cameras, PDAs and digital video and audio recorders.

### Silicon Bandwidth, Inc.

Headquarters: Fremont, California
Investment Date: 2001

Silicon Bandwidth develops high-density interconnect technology
and solutions that reduce the cost of design and manufacture of
high-performance components and systems in the communications,
consumer and computer markets. The Company designs, develops
and markets a family of next-generation I/O solutions that solve
bandwidth, thermal, size and cost constraints across the entire
circuit path, within the integrated circuit, throughout the printed
circuit board and across board-to-board applications.

Terms of use | Unsubscribe from email
Copyright 2004 Canadian Imperial Bank of Commerce. All rights reserved

3



## Investors

Cornice was founded in August 2000. Early investors in Cornice include the company's founders, management team, and Texas Instruments. In August 2002, the company received its first venture investment from CIBC Capital Partners, Nokia Ventures, and VantagePoint Venture Partners. Another venture round was raised in January 2003 and included the previous venture companies and Bank Of America and GIC Special Investments. To date, Cornice has raised $81 million.



NEW 4GB Storage Element

The new one-inch Cornice 4GB Storage Element allows consumer electronics manufacturers to offer significantly lower price points for a wide variety of portable devices.

**Quick Links**

4GB Storage Element

Applications

Press Releases

Contact Sales

**BA VENTURE PARTNERS**
Bank of America

**BA Venture Partners**
BA Venture Partners, a venture capital partnership, leads start-up to expansion stage investments in networking, semiconductor, software, medical technology and biotechnology companies. The firm closed BA Venture Partners VI, a $500 million fund, in 2000. BA Venture Partners' sole limited partner is Bank of America.

**BlueRun ventures**

**BlueRun Ventures**
Launched in 1998 as Nokia Venture Partners, BlueRun Ventures is a leading early stage venture capital fund. BlueRun Ventures' proven approach is to invest globally as a single fund in best of breed technologies, and teams with the drive and ability to build leading global companies. BlueRun Ventures is headquartered in Menlo Park, California, with offices in Helsinki, Herzelia (Israel), London, New Delhi, Seoul, Shanghai, Tokyo, and Washington, D.C. For more information, visit http://www.brv.com.

**GIC**

**GIC Special Investments Pte Ltd (GIC SI)**
GIC SI is the private equity investment arm of GIC, a fund management company established in 1981 to manage the foreign reserves of Singapore by investing globally. GIC SI manages an international portfolio of investments comprising venture capital and private equity funds, and direct investments. Reflecting its global orientation, GIC SI operates out of offices in key financial centres around the world and is headquartered in Singapore.

**VANTAGEPOINT VENTURE PARTNERS**

**VantagePoint Venture Partners**
VantagePoint Venture Partners is one of the nation's largest venture capital firms, with $2.5 billion in committed capital in four funds. The Firm is an active multi-stage investor, providing funding and resources for all stages of a company's lifecycle from seed round through late stage and privately negotiated investments in public companies. VantagePoint is based on a

full-service Partner-Team approach that provides entrepreneurs with a blend of technology, venture capital, operations, and corporate-finance expertise. As hands-on investors, the Firm is focused on technology investing in communications, semiconductor, software, and related growth industries.

303.651.7291    info@corniceco.com

Technology     Products     Applications     Partners     News     Company     Contact

4

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

| SOUTHERN | DISTRICT OF | NEW YORK |
|---|---|---|

### SUBPOENA IN A CIVIL CASE

Seagate Technology, LLC

v.

Cornice, Inc.

CASE NUMBER:[1]   Civil Action No. 04-418-SLR
[Pending in the District of Delaware]

TO:    CIBC World Markets Corp.,
       300 Madison Avenue,
       New York, NY 10017-6204
       (212) 667-7000

☐    YOU ARE COMMANDED to appear in the United Stated District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

See Schedule B, attached hereto.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Fish & Richardson P.C.<br>Citigroup Center - 52nd Floor<br>153 East 53rd Street<br>New York, NY 10022-4611 | June 24, 2005<br>10:00 A.M. |

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):

See Schedule A, attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Fish & Richardson P.C.<br>Citigroup Center - 52nd Floor<br>153 East 53rd Street<br>New York, NY 10022-4611 | June 22, 2005<br>10:00 A.M. |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Lewis E. Hudnell* <br> Attorney for Plaintiff SEAGATE TECHNOLOGY LLC | June 8, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Lewis E. Hudnell, III, Esq., Fish & Richardson P.C., Citigroup Center - 52nd Fl., 153 East 53rd St., New York, NY 10022-4611
212-765-5070

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on the next page)

[1]  If action is pending in district other than district of issuance, state district under case number.

**SCHEDULE A**
**ATTACHED TO SEAGATE'S SUBPOENA**
**TO CIBC WORLD MARKETS CORP.**

## DEFINITIONS

1.      "CIBC World Markets Corp.," "you," or "your" means and refers to CIBC World Markets Corp., its divisions, affiliates, parent or controlling companies, all of their subsidiaries, divisions (including CIBC Capital Partners), past and present joint ventures, partnerships, predecessors-in-interest, successors, limited partnerships or other operation entities and, without limitations, all of their officers, directors, employees, representatives, agents, accountants, auditors, experts consultants, attorneys, and other persons under their control or acting on behalf or at the direction of the CIBC World Markets Corp. or any of its related entities.

2.      "Cornice" means Cornice, Inc., including without limitation all of its corporate locations, and all predecessors (including Convergent Systems Solutions), its divisions, affiliates, parent or controlling companies, all of their subsidiaries, divisions, past and present joint ventures, partnerships, successors, limited partnerships or other operation entities and, without limitations, all of their officers, directors, employees, representatives, agents, accountants, auditors, experts consultants, attorneys, and other persons under their control or acting on behalf or at the direction of Cornice or any of its related entities.

3.      "Seagate" means Seagate Technology, LLC, including without limitation all of its corporate locations, and all predecessors, its divisions, affiliates, parent or controlling companies, all of their subsidiaries, divisions, past and present joint ventures, partnerships, successors, limited partnerships or other operation entities and, without limitations, all of their officers, directors, employees, representatives, agents, accountants, auditors, experts consultants, attorneys, and other persons under their control or acting on behalf or at the direction of Seagate or any of its related entities.

4.      "Document" and "documents" are used in the broadest sense possible under Rules 26 and 34(a) of the Federal Rules of Civil Procedure, and shall mean and include any medium upon which information or data is recorded in any form, and include, without limitation, any information or data that is printed, recorded, filmed, stored or reproduced by any mechanical, magnetic or electronic process or means, or written or produced by hand or machine, and

whether the information or data is an original, master, copy or translation thereof. The terms "document" or "documents" also include all copies that are not identical with the original, which includes but is not limited to any document containing comments or notations appearing on the document and not a part of the original text. A draft or non-identical copy (*i.e.*, a document with any marks, alterations, notes, comments or other changes to it, or a translation of a document) is a separate document within the meaning of this term.

5.    The term "communication" (or any variant thereof) means any contact between or among two or more persons and shall include, without limitation, written contact by means such as letters, memoranda, telegrams, telecopies, telexes, e-mail, or any other document; the transmittal of information by any means; any oral contact such as face-to-face meetings or telephone conversations; and any writings memorializing such oral contact.

6.    The "'159 patent" means U.S. Patent No. 5,452,159.

7.    The "'461 patent" means U.S. Patent No. 5,596,461.

8.    The "'506 patent" means U.S. Patent No. 5,600,506.

9.    The "'754 patent" means U.S. Patent No. 6,146,754.

10.    The "'054 patent" means U.S. Patent No. 6,324,054.

11.    The "'845 patent" means U.S. Patent No. 6,545,845.

12.    The "'606 patent" means U.S. Patent No. 6,744,606.

13.    The "Seagate Patents-in-Suit" means, individually and collectively, the '159 patent, the '461 patent, the '506 patent, the '754 patent, the '054 patent, the '845 patent, and the '606 patent.

14.    The terms and phrases "relating," "concerning," "referring or relating to," "refer or relate to," "refers or relates to," or "reflecting" mean and refer to the source document or thing (if any) and any document or thing that contains, records, discusses, involves, concerns, mentions, notes, evidences, memorializes, examines, describes, regards, pertains to, comments upon, reflects, identifies, or refers in any way to the matters set forth.

15.    "Accused Cornice Product" or "Accused Cornice Products" means and includes all of Cornice's disc drives, components thereof, and products containing such components and/or disc drives, whether in prototype or final format.

16.    The term "purchase" includes but is not limited to the following meanings: obtain; acquire; procure; get; get hold of; gain; attain; receive; buy; pay for; or pay money for.

## INSTRUCTIONS

1.      The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case is most appropriate. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

2.      Where a document may be sensed or copied by a computing device, such as a computer, text processor, word processor, or any similar device, you shall produce a machine-readable copy in a form that is readable by a similar computing device. You shall produce the contents of floppy disks, hard disks, optical disks, magnetic tapes, read-only memories, computer networks, and other memory devices of all types.

3.      All documents shall be produced either in the order and in the manner that they are kept in the usual course of business or shall be organized and labeled to correspond with the categories of this subpoena. Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label or other means of identification of such cover or other container shall be attached to the document.

4.      Each document and thing produced in response to these requests shall be produced along with any and/or all attachments and/or enclosures as have ever been attached to and/or enclosed with the document or thing at any time.

5.      If you cannot produce any of these documents in full, produce them to the fullest extent possible, specifying clearly the reasons for the inability to produce the remainder and stating whatever information, knowledge, or belief that you have concerning the unproduced portion.

6.      In you cannot produce all of the requested documents, describe in detail every reason for any failure or inability to produce each of those requested documents.

7.      If you cannot locate documents or things responsive to these requests after the exercise of due diligence, state in detail the particulars of the efforts that you made to locate such documents or things and the reasons for their disappearance or unavailability. If such documents or things exist but are unavailable to you, state to the best of your knowledge, where the

documents or things are located, including the name, address, and telephone number of the custodian.

8.      If any document covered by these requests is withheld by reason of a claimed privilege, a privilege log is to be furnished at the time that documents are produced, identifying any such document for which the privilege is claimed, together with the following information with respect to any document withheld: author(s); recipient(s); sender(s); indicated or blind copies; title of the document, if any; date; general subject matter; present location of all copies of such document; the basis or bases on which the privilege is claimed; and the request to which such document relates.

9.      These requests shall apply to all documents in your possession, custody or control at the present time or coming into your possession, custody or control prior to the date of the production. If you know of the existence of such documents or things requested below, but are unable to produce such documents or things because they are not presently in your possession, custody or control, you shall so state and shall identify such documents and things, and the person who has the possession, custody or control of the documents or things.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

Please produce the following documents pursuant to Fed. R. Civ. P. 45:

1.      All documents relating to, and including, any proposals, business plans, surveys, presentations, or other communications with Cornice, including, but not limited to, strategic plans, operating plans, marketing plans, financial plans, production plans, sales plans and capital or investment plans referring or relating to the Accused Cornice Products.

2.      All documents that refer or relate to the estimated or actual market for each of the Accused Cornice Products, including but not limited to historical and projected market size, composition of the market, market projection models, market projections, competition analyses in total or segment of the market for any of the Accused Cornice Products, industry trends, and industry developments.

3.      All documents referring or relating to Cornice's commercial exploitation of the Accused Cornice Products, including without limitation feasibility studies, marketing plans, marketing forecasts, estimates, projections or reports of market share, periodic research and

development reports, management reports and/or other periodic reports, and documents referring or relating to marketing, manufacturing, sampling, efforts to sell, offers for sale, importation, shipping, and actual sales.

4.     All documents that relate to or constitute advertising or marketing of the Accused Cornice Products, including but not limited to:  all descriptive or promotional materials concerning each of the Accused Products, concept for a product, and products containing same made, offered for sale or sold by or for Cornice, press releases and trade journal articles describing the Accused Cornice Products and products containing same, advertisements, catalogs, materials prepared for use in trade meetings and conventions, package inserts, technical data sheets, specifications, price lists, sales presentations to customers or potential customers and any other publicly disseminated material promoting or describing such products.

5.     All documents relating to, and including, any uses, testing, or evaluations of any Accused Cornice Products, since 2000 to the present.

6.     All documents referring or relating to your, or any other person's, business relationship with, investments in, ownership of, oversight of, or control of Cornice.

7.     All documents referring or relating to any evaluation of or negotiation involving or concerning Cornice, relating to any funding, acquisition, partnership, joint venture, or ownership by another person.

8.     All documents regarding Cornice's management.

9.     All communications (including e-mail), and all documents related to such communications, between you and Cornice, or between you and any of Cornice's officers, employees, agents, accountants or attorneys.

10.     All agreements or contracts (including drafts) involving or relating to Cornice, and any documents related to such agreements or contracts.

11.     All documents from or by Cornice, any of Cornice's officers, employees, agents, accountants or attorneys, that refer or relate to Seagate, Seagate Patents-in-Suit, or any litigation between Seagate and Cornice.

12.     All communications (including e-mail), and all documents related to such communications, between you and Cornice referring or relating to Western Digital, Western Digital Patents, any litigation between Western Digital and Cornice, or any Accused Cornice Products.

13.    All documents relating to Hoya Corporation or SAE Magnetics (H.K.) Ltd.

14.    All documents which identify Cornice's: (a) unit sales; (b) costs; (c) gross revenues; (d) unit price, and/or (e) net and gross margins on the Accused Cornice Products for any month or year since Cornice has sold or offered to sell the Accused Products.

15.    All documents sufficient to show the nature and extent of any interest, financial or otherwise, that Cornice has in any other company or entity.

## SCHEDULE B
## ATTACHED TO SEAGATE'S SUBPOENA
## TO CIBC WORLD MARKETS CORP.

### DEFINITIONS

All definitions set forth in Schedule A attached to Seagate's Subpoena to CIBC World Markets Corp. are incorporated herein in their entirety.

### INSTRUCTIONS

This subpoena calls for you to designate and make available for the purpose of giving testimony at the deposition the officer(s), director(s), managing agent(s), and/or other person(s) who is (are) most knowledgeable and able to testify about each of the subjects identified below under the heading "Deposition Topics."

### DEPOSITION TOPICS

1.  Your knowledge of Cornice, its business, business plans, operating plans, marketing plans, financial plans, production plans, sales plans and capital or investment plans referring or relating to the Accused Cornice Products.

2.  Your knowledge of the Accused Cornice Products, their design, testing, production, manufacturing, marketing, sampling, efforts to sell, sales, offers for sell, importation, distribution, shipping, and actual sales.

3.  Your knowledge of the market, industry, and potential or actual customers of the Accused Cornice Products.

4.  Your business relationship with, investments in, ownership of, oversight of, or control of Cornice.

5.  Your knowledge of any evaluation of or negotiation involving or concerning Cornice, relating to any funding, acquisition, partnership, joint venture, or ownership by another person.

6.  Your communications (including e-mail), and your knowledge of any documents related to such communications, with Cornice, or between you and any of Cornice's officers, employees, agents, accountants or attorneys.

7.  Your knowledge of any agreements or contracts (including drafts) involving or relating to Cornice, and any documents related to such agreements or contracts.

8. Your knowledge of Cornice's management and directors.

9. Your knowledge of Seagate, Seagate Patents-in-Suit, any litigation between Seagate and Cornice.

10. Your knowledge of Western Digital, Western Digital Patents, any litigation between Western Digital and Cornice, or any Accused Cornice Products.

11. Your knowledge of Cornice's: (a) unit sales; (b) costs; (c) gross revenues; (d) unit price, and/or (e) net and gross margins on the Accused Cornice Products.

12. Your knowledge of the nature and extent of any interest, financial or otherwise, that Cornice has in any other company or entity.

5

# DISTRICT___ COURT OF THE UNITED STATES

Trans #: 20052369
File #:
Index #: 04-418-SLR
File:   Court Date:
Mort #:

## SOUTHERN DISTRICT OF NEW YORK

SEAGATE TECHNOLOGY, LLC

**Petitioner (s)**
**Plaintiff (s)**

~ vs ~

CORNICE, INC.

**Defendant (s)**
**Respondent (s)**

FISH & RICHARDSON, P.C.
CITIGROUP CENTER
153 EAST 53RD STREET, 52ND FLOOR
NEW YORK      NY 11230-

**STATE OF NEW YORK: COUNTY OF** _____ SUFFOLK _____ **: SS:**

ROBERT GILLIS _____, BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on _____ June 8 _____, 2005 at _2:35 pm_, at _245 PARK AVENUE, 42ND FLOOR, NEW YORK, NY_

deponent served the within _____ SUBPOENA IN A CIVIL CASE _____ on

CIBC WORLD MARKETS CORP., _____ defendant therein named.

**INDIVIDUAL**

1 ☐

By personally delivering to and leaving with said _____ a true copy thereof,

and that he knew the person so served mentioned and described in said _____

☐ Defendant was identified by self admission and by the photograph furnished.

**CORPORATION**

2 ☒

By delivering to and leaving with _LIZ AYLETT_ at _245 PARK AVENUE, 42ND FLOOR_

_NEW YORK, NY_, and that he knew the person so served to be the _ATTORNEY_

of the corporation, authorized to accept service.

*Service was made in the following manner after your deponent was unable with due diligence to serve the defendant in person:*

**SUITABLE AGE PERSON**

3 ☐

By delivering a true copy thereof to and leaving with _____, a person of suitable

age and discretion at _____, the said premise being

the defendants – respondents ( dwelling place ) ( usual place of abode ) ( place of business ) within the state of New York.

**AFFIXING TO DOOR, ETC.**

4 ☐

By affixing a true copy thereof to the door of the said premises, the same being the defendant's ( dwelling place ) ( usual place of abode )
( place of business ) within the State of New York.

**MAILING**
Use with 3 or 4

5 ☐

Deponent completed service under the last two sections by having a true copy of the _____
deposited in a postpaid, properly addressed envelope in an official depository under the exclusive care and custody of the United States Post
Office in the State of New York, on _____

**PREVIOUS ATTEMPTS**
Use with 4

6 ☐

Deponent had previously attempted to serve the above named defendant/respondent.

A DESCRIPTION OF THE DEFENDANT OR OTHER PERSON SERVED ON BEHALF OF THE DEFENDANT IS AS FOLLOWS:

Approximate age _30_   Approximate weight _130_   Approximate height _5' 7"_   Sex _FEMALE_

Color of skin _WHITE_   Color of Hair _BLACK_   Other _____

☐ Deponent spoke with person served who confirmed non-military status of the defendant. Deponent asked the person spoken to whether the
defendant was presently in the military service of the United States Government or on active duty in the military service in the State of New York
and was informed he was not. Your deponent further says that he knew the person so served to be the person mentioned and described in said
legal papers as defendant/respondent therein. Your deponent is over the age of 18 years and is not a party to this action.

_____

ROBERT GILLIS        1125394

Sworn to before me this _6/8/2005_

_____

Notary Public State of New York
No. 01GI4984594
Qualified in Suffolk County
Commission Expires July 29, 2007

6

### SCHEDULE A
### ATTACHED TO SEAGATE'S SUBPOENA
### TO CIBC WORLD MARKETS CORP.

### DEFINITIONS

1.    "CIBC World Markets Corp.," "you," or "your" means and refers to CIBC World Markets Corp., its divisions, affiliates, parent or controlling companies, all of their subsidiaries, divisions (including CIBC Capital Partners), past and present joint ventures, partnerships, predecessors-in-interest, successors, limited partnerships or other operation entities and, without limitations, all of their officers, directors, employees, representatives, agents, accountants, auditors, experts consultants, attorneys, and other persons under their control or acting on behalf or at the direction of the CIBC World Markets Corp. or any of its related entities.

2.    "Cornice" means Cornice, Inc., including without limitation all of its corporate locations, and all predecessors (including Convergent Systems Solutions), its divisions, affiliates, parent or controlling companies, all of their subsidiaries, divisions, past and present joint ventures, partnerships, successors, limited partnerships or other operation entities and, without limitations, all of their officers, directors, employees, representatives, agents, accountants, auditors, experts consultants, attorneys, and other persons under their control or acting on behalf or at the direction of Cornice or any of its related entities.

3.    "Seagate" means Seagate Technology, LLC, including without limitation all of its corporate locations, and all predecessors, its divisions, affiliates, parent or controlling companies, all of their subsidiaries, divisions, past and present joint ventures, partnerships, successors, limited partnerships or other operation entities and, without limitations, all of their officers, directors, employees, representatives, agents, accountants, auditors, experts consultants, attorneys, and other persons under their control or acting on behalf or at the direction of Seagate or any of its related entities.

4.    "Document" and "documents" are used in the broadest sense possible under Rules 26 and 34(a) of the Federal Rules of Civil Procedure, and shall mean and include any medium upon which information or data is recorded in any form, and include, without limitation, any information or data that is printed, recorded, filmed, stored or reproduced by any mechanical, magnetic or electronic process or means, or written or produced by hand or machine, and

whether the information or data is an original, master, copy or translation thereof. The terms "document" or "documents" also include all copies that are not identical with the original, which includes but is not limited to any document containing comments or notations appearing on the document and not a part of the original text. A draft or non-identical copy (i.e., a document with any marks, alterations, notes, comments or other changes to it, or a translation of a document) is a separate document within the meaning of this term.

5.    The term "communication" (or any variant thereof) means any contact between or among two or more persons and shall include, without limitation, written contact by means such as letters, memoranda, telegrams, telecopies, telexes, e-mail, or any other document; the transmittal of information by any means; any oral contact such as face-to-face meetings or telephone conversations; and any writings memorializing such oral contact.

6.    The "'159 patent" means U.S. Patent No. 5,452,159.

7.    The "'461 patent" means U.S. Patent No. 5,596,461.

8.    The "'506 patent" means U.S. Patent No. 5,600,506.

9.    The "'754 patent" means U.S. Patent No. 6,146,754.

10.   The "'054 patent" means U.S. Patent No. 6,324,054.

11.   The "'845 patent" means U.S. Patent No. 6,545,845.

12.   The "'606 patent" means U.S. Patent No. 6,744,606.

13.   The "Seagate Patents-in-Suit" means, individually and collectively, the '159 patent, the '461 patent, the '506 patent, the '754 patent, the '054 patent, the '845 patent, and the '606 patent.

14.   The terms and phrases "relating," "concerning," "referring or relating to," "refer or relate to," "refers or relates to," or "reflecting" mean and refer to the source document or thing (if any) and any document or thing that contains, records, discusses, involves, concerns, mentions, notes, evidences, memorializes, examines, describes, regards, pertains to, comments upon, reflects, identifies, or refers in any way to the matters set forth.

15.   "Accused Cornice Product" or "Accused Cornice Products" means and includes all of Cornice's disc drives, components thereof, and products containing such components and/or disc drives, whether in prototype or final format.

16.   The term "purchase" includes but is not limited to the following meanings: obtain; acquire; procure; get; get hold of; gain; attain; receive; buy; pay for; or pay money for.

## INSTRUCTIONS

1.     The singular form of a word should be interpreted in the plural as well.  Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case is most appropriate.  The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.  The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

2.     Where a document may be sensed or copied by a computing device, such as a computer, text processor, word processor, or any similar device, you shall produce a machine-readable copy in a form that is readable by a similar computing device.  You shall produce the contents of floppy disks, hard disks, optical disks, magnetic tapes, read-only memories, computer networks, and other memory devices of all types.

3.     All documents shall be produced either in the order and in the manner that they are kept in the usual course of business or shall be organized and labeled to correspond with the categories of this subpoena.  Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label or other means of identification of such cover or other container shall be attached to the document.

4.     Each document and thing produced in response to these requests shall be produced along with any and/or all attachments and/or enclosures as have ever been attached to and/or enclosed with the document or thing at any time.

5.     If you cannot produce any of these documents in full, produce them to the fullest extent possible, specifying clearly the reasons for the inability to produce the remainder and stating whatever information, knowledge, or belief that you have concerning the unproduced portion.

6.     In you cannot produce all of the requested documents, describe in detail every reason for any failure or inability to produce each of those requested documents.

7.     If you cannot locate documents or things responsive to these requests after the exercise of due diligence, state in detail the particulars of the efforts that you made to locate such documents or things and the reasons for their disappearance or unavailability.  If such documents or things exist but are unavailable to you, state to the best of your knowledge, where the

documents or things are located, including the name, address, and telephone number of the custodian.

      8.    If any document covered by these requests is withheld by reason of a claimed privilege, a privilege log is to be furnished at the time that documents are produced, identifying any such document for which the privilege is claimed, together with the following information with respect to any document withheld: author(s); recipient(s); sender(s); indicated or blind copies; title of the document, if any; date; general subject matter; present location of all copies of such document; the basis or bases on which the privilege is claimed; and the request to which such document relates.

      9.    These requests shall apply to all documents in your possession, custody or control at the present time or coming into your possession, custody or control prior to the date of the production. If you know of the existence of such documents or things requested below, but are unable to produce such documents or things because they are not presently in your possession, custody or control, you shall so state and shall identify such documents and things, and the person who has the possession, custody or control of the documents or things.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

Please produce the following documents pursuant to Fed. R. Civ. P. 45:

      1.    All documents relating to, and including, any proposals, business plans, surveys, presentations, or other communications with Cornice, including, but not limited to, strategic plans, operating plans, marketing plans, financial plans, production plans, sales plans and capital or investment plans referring or relating to the Accused Cornice Products.

      2.    All documents that refer or relate to the estimated or actual market for each of the Accused Cornice Products, including but not limited to historical and projected market size, composition of the market, market projection models, market projections, competition analyses in total or segment of the market for any of the Accused Cornice Products, industry trends, and industry developments.

      3.    All documents referring or relating to Cornice's commercial exploitation of the Accused Cornice Products, including without limitation feasibility studies, marketing plans, marketing forecasts, estimates, projections or reports of market share, periodic research and

development reports, management reports and/or other periodic reports, and documents referring or relating to marketing, manufacturing, sampling, efforts to sell, offers for sale, importation, shipping, and actual sales.

4.    All documents that relate to or constitute advertising or marketing of the Accused Cornice Products, including but not limited to: all descriptive or promotional materials concerning each of the Accused Products, concept for a product, and products containing same made, offered for sale or sold by or for Cornice, press releases and trade journal articles describing the Accused Cornice Products and products containing same, advertisements, catalogs, materials prepared for use in trade meetings and conventions, package inserts, technical data sheets, specifications, price lists, sales presentations to customers or potential customers and any other publicly disseminated material promoting or describing such products.

5.    All documents relating to, and including, any uses, testing, or evaluations of any Accused Cornice Products, since 2000 to the present.

6.    All documents referring or relating to your, or any other person's, business relationship with, investments in, ownership of, oversight of, or control of Cornice.

7.    All documents referring or relating to any evaluation of or negotiation involving or concerning Cornice, relating to any funding, acquisition, partnership, joint venture, or ownership by another person.

8.    All documents regarding Cornice's management.

9.    All communications (including e-mail), and all documents related to such communications, between you and Cornice, or between you and any of Cornice's officers, employees, agents, accountants or attorneys.

10.    All agreements or contracts (including drafts) involving or relating to Cornice, and any documents related to such agreements or contracts.

11.    All documents from or by Cornice, any of Cornice's officers, employees, agents, accountants or attorneys, that refer or relate to Seagate, Seagate Patents-in-Suit, or any litigation between Seagate and Cornice.

12.    All communications (including e-mail), and all documents related to such communications, between you and Cornice referring or relating to Western Digital, Western Digital Patents, any litigation between Western Digital and Cornice, or any Accused Cornice Products.

13.    All documents relating to Hoya Corporation or SAE Magnetics (H.K.) Ltd.

14.    All documents which identify Cornice's: (a) unit sales; (b) costs; (c) gross revenues; (d) unit price, and/or (e) net and gross margins on the Accused Cornice Products for any month or year since Cornice has sold or offered to sell the Accused Products.

15.    All documents sufficient to show the nature and extent of any interest, financial or otherwise, that Cornice has in any other company or entity.

**SCHEDULE B**
## ATTACHED TO SEAGATE'S SUBPOENA
## TO CIBC WORLD MARKETS CORP.

### DEFINITIONS

All definitions set forth in Schedule A attached to Seagate's Subpoena to CIBC World Markets Corp. are incorporated herein in their entirety.

### INSTRUCTIONS

This subpoena calls for you to designate and make available for the purpose of giving testimony at the deposition the officer(s), director(s), managing agent(s), and/or other person(s) who is (are) most knowledgeable and able to testify about each of the subjects identified below under the heading "Deposition Topics."

### DEPOSITION TOPICS

1.      Your knowledge of Cornice, its business, business plans, operating plans, marketing plans, financial plans, production plans, sales plans and capital or investment plans referring or relating to the Accused Cornice Products.

2.      Your knowledge of the Accused Cornice Products, their design, testing, production, manufacturing, marketing, sampling, efforts to sell, sales, offers for sell, importation, distribution, shipping, and actual sales.

3.      Your knowledge of the market, industry, and potential or actual customers of the Accused Cornice Products.

4.      Your business relationship with, investments in, ownership of, oversight of, or control of Cornice.

5.      Your knowledge of any evaluation of or negotiation involving or concerning Cornice, relating to any funding, acquisition, partnership, joint venture, or ownership by another person.

6.      Your communications (including e-mail), and your knowledge of any documents related to such communications, with Cornice, or between you and any of Cornice's officers, employees, agents, accountants or attorneys.

7.      Your knowledge of any agreements or contracts (including drafts) involving or relating to Cornice, and any documents related to such agreements or contracts.

8.    Your knowledge of Cornice's management and directors.

9.    Your knowledge of Seagate, Seagate Patents-in-Suit, any litigation between Seagate and Cornice.

10.    Your knowledge of Western Digital, Western Digital Patents, any litigation between Western Digital and Cornice, or any Accused Cornice Products.

11.    Your knowledge of Cornice's: (a) unit sales; (b) costs; (c) gross revenues; (d) unit price, and/or (e) net and gross margins on the Accused Cornice Products.

12.    Your knowledge of the nature and extent of any interest, financial or otherwise, that Cornice has in any other company or entity.

7



**Michelle A. Murphy**
Executive Director
Senior Counsel

CIBC World Markets Corp.
245 Park Avenue
New York, NY 10167

Tel: 917-332-4306
Fax: 917-332-4329
michelle.murphy@us.cibc.com

June 27, 2005

**VIA HAND DELIVERY**
Lewis E. Hudnell, III, Esq.
Fish & Richardson, P.C.
153 East 53rd Street
52nd Floor
New York, New York 10022

RE:   Seagate Technology LLC v Cornice, Inc., C.A. No. 04-418-SLR

Dear Mr. Hudnell:

In response to your subpoena dated June 8, 2005 with regard to the above-referenced matter, enclosed please find the document responsive to your request. Please note that the enclosed document is labeled "CIBC Confidential Restricted" meaning that the document is confidential business information. It is being produced on an attorney-eyes-only basis pursuant to Delaware Local Rule 26.2. There is one other document that may be responsive to your subpoena, however, it is subject to the attorney client/work product privilege. Please let me know if you require Mr. Hastings for deposition testimony. If you have any questions with regard to this matter, please do not hesitate to contact me at (917) 332-4306.

Very truly yours,

Michelle Murphy

Enclosures

8

# REDACTED DOCUMENT

9



Contact Us  |  Site Map  [        ]  [Search]

Home > Products & Services > CIBC Capital Partners > Venture Group

**Home**

**Products & Services**
　M&A Advisory
　Capital Markets
　CIBC Capital Partners
　　Merchant Banking
　　Venture Group
　　Private Equity Funds
　Commercial Banking

**Industry Expertise**

**Research**

**Conferences**

**Careers**

**Company Info**

## Venture Group

[ Overview ] [ Industries ] [ Professionals ] [ Contact Info ]

### Venture Capital Group

| | |
|---|---|
| Thomas J. Cusick | Managing Director, San Francisco |
| Mark Hastings | Managing Director, Boston |
| David Shotland | Managing Director, New York |
| Amanda Clark | Executive Director, Toronto |
| Alexis Boyle | Director, Boston |
| Francisco Salva | Director, San Francisco |
| Paul Choy | Associate, Toronto |
| Thomas M. Reardon | Associate, Boston |

**Research Services**

■  World Markets
　　Research

---

### Thomas J. Cusick
**Managing Director, San Francisco**

Thomas Cusick focuses on investments in enterprise software and technology-enabled services. Prior to joining CIBC Capital Partners, Mr. Cusick was a General Partner with BCI Partners, an $800 million multi-stage venture capital firm focused on investments in software, media, communications and technology-enabled services. In addition, Mr. Cusick has held senior corporate development positions at Accenture and Koll, a successful private equity-backed company that grew through a series of acquisitions. Mr. Cusick has been actively involved with Avere (acquired by Manhattan), FIRM, Inquira, PortalPlayer (IPO), Silicon Energy (acquired by Itron) and Vividence (acquired by Keynote Systems). Mr Cusick currently sits on the Board of Directors of Authoria, Hubspan, Equator Technologies, Silicon Bandwidth and WildTangent. Mr. Cusick holds an MBA from Harvard Business School and a Bachelor of Science, magna cum laude, from the University of Southern California.

Back To Top

---

### Mark E. Hastings
**Managing Director, Boston**

Mark Hastings focuses on venture capital investing in enterprise software. Prior to joining CIBC Capital Partners, Mr. Hastings was a General Partner at BCI Partners, a multi-stage venture capital firm, with $800 million under management, focused on investments in software, communications, technology enabled services, and media. Prior to that Mr. Hastings spent several years at Edison Ventures, an early stage technology venture capital firm as a member of the

investment team providing growth capital to software and communications companies. Present and prior investments include: Adaytum Software (acquired by Cognos), Corillian (Nasdaq: CORI), Data Labs (acquired by Lucent), Fuelquest, RenewData, Seisint (acquired by LexisNexis, member of Reed Elsevier Group plc), Telelogic (TLOG), Tylink (acquired by Sync Research), Viewlocity (acquired by Synquest), Visual Networks (Nasdaq: VNWK) and Yantra (acquired by Sterling Commerce). Mark is a graduate of the Bachelor of Arts in Economics program at Colorado College and holds an MBA from the Wharton School of Business.

Back To Top

### David Shotland
#### Managing Director, New York

David Shotland focuses on venture capital investments in healthcare and life sciences companies.

Mr. Shotland has been a Managing Director of CIBC Capital Partners responsible for venture investing in the Healthcare sector since November 1999. Prior to joining CIBC Capital Partners, Mr. Shotland was a Managing Director in investment banking responsible for private equity transactions at CIBC World Markets Corp., the successor to Oppenheimer & Co., Inc. where he was employed since 1993. Mr. Shotland received his B.A., summa cum laude, from Boston University and a M.B.A. from Columbia Business School. Mr. Shotland is a director of Arriva Pharmeceuticals and Nursefinders.

Back To Top

### Amanda Clark
#### Executive Director, Toronto

Amanda Clark focuses on venture capital investing in enterprise software and technology-enabled services. Companies Ms. Clark has been actively involved with include: B2eMarkets (acquired by Verticalnet), Eontec (acquired by Siebel), HAHT Commerce (acquired by GXS), MCCI, Qumas and THINQ Learning Solutions. Prior to joining CIBC Capital Partners, Ms. Clark received her MBA as an Ivey Scholar from the Richard Ivey School of Business at the University of Western Ontario. Prior to obtaining her MBA, Ms. Clark worked in the Vancouver Investment Banking and Equity Capital Markets groups at CIBC World Markets. Ms. Clark holds a Bachelor of Commerce (Honours) degree from The University of British Columbia and is a Chartered Financial Analyst (CFA).

Back To Top

### Alexis Boyle
#### Director, Boston

Alexis Boyle focuses on venture capital investing in enterprise software. Prior to joining CIBC Capital Partners, Ms. Boyle was at TA Associates, a $5 billion private equity fund focused on growth investments in technology, financial and business services and healthcare. There, Alexis worked primarily with entrepreneurs in the software and services industries, supporting investments in

SoftMed, a healthcare information software company, NetNumina, an e-services business, and Lawson Software, an enterprise resource planning software company. Prior to that, Ms. Boyle was in Investment Banking at Deutsche Banc Alex. Brown working in the Industrial Technology and Basic Industries groups. Ms. Boyle received her B.A., with honors, from Harvard University.

Back To Top

### Francisco Salva
### Director, San Francisco

Francisco Salva joined CIBC Capital Partners in 2001 and focuses on healthcare venture capital investments, primarily in the biotechnology, medical devices and healthcare IT industries. Previously, he served as Director of Private Equity at INVESCO Funds Group, where he was responsible for all private healthcare investments. Mr. Salva began his venture career in the healthcare group of Patricof & Co. Ventures with prior experience as an investment banker in the healthcare M&A group of Wasserstein Perella. Mr. Salva earned his MSc. in Economics from the London School of Economics and graduated magna cum laude with a double A.B. in Business Economics and Philosophy from Brown University.

Back To Top

### Paul Choy
### Associate, Toronto

Since joining CIBC Capital Partners, Mr. Choy has focused on venture capital investing in communications and infrastructure hardware and related software. Prior to joining CIBC Capital Partners, Paul received his MBA from the Joseph L. Rotman School of Management at the University of Toronto. Paul has previously worked at TELUS Corporation in the Network Design and Regulatory Affairs areas and held various technical positions at Nortel Networks, TransCanada PipeLines and ATCO Ltd. Paul also holds a Bachelor of Science (Electrical Engineering, Telecommunications specialization) degree from the University of Alberta.

Back To Top

### Thomas M. Reardon
### Associate, Boston

Tom Reardon concentrates on venture capital investing in enterprise software and technology-enabled services. Prior to joining CIBC Capital Partners, Mr. Reardon was a Co-Founder of Revolution Partners, LCC, a technology-focused investment bank dedicated to M&A and private capital fundraising for small- to medium-sized companies. At RP, Tom took a leadership role in the firm's transactions, in addition to overseeing all of Revolution's internal business operations. He helped transform Revolution Partners into a full-service investment bank with 12 professionals and over $4 million in revenue in under three years' time. Before starting Revolution Partners, Mr. Reardon was at Robertson Stephens & Co., a San Francisco-based investment bank, where he worked on over

20 enterprise software transactions, with a cumulative value of over $1.5 billion. Prior to San Francisco, Tom served in Washington DC as a member of the White House Advance Staff for President Clinton. Mr. Reardon received a B.A. from Harvard College and a MBA from Harvard Business School.

Back To Top

Terms of use | Unsubscribe from email
Copyright 2005 Canadian Imperial Bank of Commerce. All rights reserved

10

# FISH & RICHARDSON P.C.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951



AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Citigroup Center
153 East 53rd Street,
52nd Floor
New York, New York
10022-4611

Telephone
212 765-5070

Facsimile
212 258-2291

Web Site
www.fr.com

**VIA E-MAIL AND REGULAR MAIL**

July 25, 2005

Michelle A. Murphy, Esq.
Executive Director
Senior Counsel
CIBC World Markets Corp.
245 Park Avenue
New York, New York 10167

Re:   Seagate Technology, LLC v. Cornice, Inc.
       USDC-D. Del. - C.A. No. 04-418 (SLR)

Dear Michelle:

I am writing regarding two outstanding issues concerning the June 8th subpoena we served on CIBC World Markets Corp. on behalf of our client Seagate Technology, LLC.

First, with respect to producing a witness for deposition in response to the subpoena, we appreciate the offer in your June 27, 2005 to produce Mark Hastings of your Boston office for deposition. And as I indicated to you over the telephone, we would like to depose Mr. Hastings. In order to accommodate Mr. Hastings' vacation plans, we agreed to schedule this deposition after Mr. Hastings returned from vacation on July 10, 2005. As you know, I contacted you during the week of July 11, 2005 to set a date for Mr. Hastings' deposition. You indicated, however, that you were leaving for vacation and that you would not be returning to the office until today. Accordingly, we now request that you provide a date that Mr. Hastings is available for deposition.

Second, with respect to producing documents in response to the subpoena, you indicated in your June 27th letter that you were withholding a document responsive to the subpoena on the basis of privilege. As such, I requested that you provide us with a privilege log containing the information required by Federal Rule of Civil Procedure 26(b)(5). I have not received this information yet. Accordingly, we again request that you provide a privilege log for the document that you are withholding. Further, please confirm that CIBC World Markets Corp. has otherwise produced all responsive documents.

FISH & RICHARDSON P.C.

Michelle A. Murphy, Esq.
July 25, 2005
Page 2


      Please advise us by the close of business tomorrow Tuesday, July 26 2005 as to your position with respect to each of these issues.


                  Sincerely,


                  Lewis E. Hudnell, III

30241427.doc

11

07/28/2005  11:31    9173324313              CIBC WM                                    PAGE  02/03


CIBC
**World Markets**

**Michelle A. Murphy**
Executive Director
Senior Counsel

CIBC World Markets Corp.
425 Lexington Avenue
New York, NY 10017

Tel: 212-667-8315
Fax: 212-667-8362
michelle.murphy@us.cibc.com

July 27, 2005

**VIA FACSIMILE**
Lewis B. Hudnell, III, Esq.
Fish & Richardson, P.C.
153 East 53rd Street
52nd Floor
New York, New York 10022

RE:    Seagate Technology LLC v Cornice, Inc., C.A. No. 04-418-SLR

Dear Mr. Hudnell:

In response to your letter dated July 25, 2005 with regard to the above-referenced matter, enclosed please find the privilege log with respect to the one document CIBC World Markets Corp. is withholding. We have produced the other responsive document in our possession.

With respect to the requested deposition of Mr. Hastings, it is our understanding that discovery has ended. Also, as we discussed, Mr. Hastings was on the Board of Directors for Cornice for a very short period of time and we produced the document he has in his possession from that relationship. Therefore, we would decline to schedule Mr. Hastings deposition. If you have any questions with regard to this matter, please do not hesitate to contact me at (917) 332-4306.

Very truly yours,

Michelle Murphy

Enclosures

12

## LOG OF CIBC'S DOCUMENTS WITHHELD

Key:  WP= Work product, FRE 408 = Federal Rule of Evidence 408

| | Date | Document Type | Author | Recipient | Descriptions | Attach-ments | Reason for Withholding |
|---|---|---|---|---|---|---|---|
| | Post litigation | Memoranda | M. Hastings | CIBC Merchant Banking Department | Memoranda reflecting client confidential information regarding analysis of Cornice investment, thought processes, mental impressions, legal advice and/or services of counsel | N/A | AC Privilege, WP |

07/28/2005 11:31   9173324313   CIBC WM   PAGE 03/03

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2005, I electronically filed a **REDACTED VERSION OF DECLARATION OF LEWIS E. HUDNELL, III IN SUPPORT OF SEAGATE TECHNOLOGY LLC'S EXPEDITED MOTION FOR ISSUANCE OF LETTER ROGATORY** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

| | |
|---|---|
| Jack B. Blumenfeld, Esquire<br>MORRIS NICHOLS ARSHT &<br>TUNNELL<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347 | Attorneys for Defendant<br>Cornice, Inc. |

I hereby certify that on August 25, 2005, I have mailed by United States Postal Service, the document(s) to the following non-registered participants:

| | |
|---|---|
| Mathew D. Powers<br>Jason D. Kipnis<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065 | Attorneys for Defendant<br>Cornice, Inc. |
| Russell Wheatley<br>WEIL, GOTSHAL & MANGES LLP<br>700 Louisiana, Suite 1600<br>Houston, TX 77002 | Attorneys for Defendant<br>Cornice, Inc. |
| Alan J. Weinschel<br>David C. Radulescu<br>Arlene Hahn<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153 | Attorneys for Defendant<br>Cornice, Inc. |

_____/s/ Timothy Devlin_____
Timothy Devlin