IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEAGATE TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-418-SLR |
| | ) | |
| CORNICE, INC. | ) | **REDACTED VERSION** |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CORNICE, INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT [NO. 3] OF
<u>NONINFRINGEMENT OF U.S. PATENT NO. 5,452,159</u>**

                                                                MORRIS, NICHOLS, ARSHT & TUNNELL
                                                                Jack B. Blumenfeld (#1014)
                                                               Julia Heaney (#3052)
                                                                1201 N. Market St.
                                                               Wilmington, DE  19899
                                                               (302) 658-9200
                                                               jheaney@mnat.com
                             *Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000

Original Filing Date:  November 18, 2005

Redacted Filing Date:  November 28, 2005

i.

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| NATURE AND STAGE OF PROCEEDINGS | 1 |
| SUMMARY OF ARGUMENT | 1 |
| STATEMENT OF FACTS | 2 |
| I.   ASSERTED CLAIMS | 2 |
| II.  DESCRIPTION OF THE ACCUSED PRODUCTS | 2 |
| ARGUMENT | 5 |
| I.   LEGAL PRINCIPLES | 5 |
| II.  THE ACCUSED PRODUCTS DO NOT INFRINGE ANY ASSERTED CLAIM OF THE '159 PATENT | 5 |
|     A. The accused products do not satisfy the "parking device," "parking means," and "park" limitations in each asserted claim | 5 |
|         1. The accused products do not literally meet the "parking device," "parking means," and "park" limitations | 6 |
|         2. The accused products do not meet the "parking device," "parking means," and "park" limitations under the doctrine of equivalents | 7 |
|     B.    Redacted | 8 |
| CONCLUSION | 10 |

ii.

## TABLE OF CITATIONS

Page(s)

<u>Cases</u>

*Dawn Equipment Co. v. Kentucky Farms Inc.*,
    140 F.3d 1009 (Fed. Cir. 1998)    7

*Display Technologies, Inc. v. Paul Flum Ideas, Inc.*,
    282 F.3d 1340 (Fed. Cir. 2002)    6

*Moore U.S.A., Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000)    8

*Novartis Corp. v. Ben Venue*,
    271 F.3d 1043 (Fed. Cir. 2001)    6, 7

*TechSearch, L.L.C. v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002)    6

*Warner-Jenkinson, Co. v. Hilton Davis Chem. Co.*,
    520 U.S 17 (1997)    8

*Zelinski v. Brunswick Corp.*,
    185 F.3d 1311 (Fed. Cir. 1999)    7

1.

## NATURE AND STAGE OF PROCEEDINGS

Seagate Technology LLC ("Seagate") brought this action against Cornice, Inc. ("Cornice") for infringement of seven patents on June 22, 2004. In accordance with the Scheduling Order, fact and expert discovery is now closed. Trial is scheduled to begin on May 1, 2006. This is Cornice's opening brief in support of its motion for summary judgment that Cornice does not infringe the asserted claims of U.S. Patent No. 5,452,159 (the "'159 patent").

## SUMMARY OF ARGUMENT

Seagate has failed to demonstrate a genuine issue of material fact that Cornice's 1.0, 1.5, 2.0, and 3.0 GB (gigabyte) Storage Elements accused of infringement ("accused products") satisfy each limitation of the asserted claims of the '159 patent. First, as to all accused products, the explicit and unambiguous definition of "park" and "parking" set forth in the patent itself precludes infringement of each asserted claim:

> As used in this patent, the terms "park" and "parking" refer to the maintaining the position of the head(s) over a selected portion (usually a "landing zone" at the inside or outside diameter) of the disk (or disks).

'159 Patent, col. 1:56-60.

There is no genuine dispute that the accused products fail to satisfy the "parking device," "parking means" and "park" limitations appearing in every asserted claim of the '159 patent based on this explicit definition.

Second, there is no genuine dispute that the 3.0 GB Storage Element does not infringe the '159 patent,    Redacted

Therefore, the Court should grant summary judgment that Cornice's 1.0, 1.5, 2.0, and 3.0 GB SEs do not infringe the '159 patent as a matter of law. At the very least, the Court should grant partial summary judgment that the 3.0 GB Storage Element does not infringe the '159 patent.

2.

## STATEMENT OF FACTS

### I. ASSERTED CLAIMS

Redacted

Exh. A, Seagate's Supplemental Response to Cornice's First Set of Interrogatories at p. 9. The '159 patent pertains to a "magnetic parking device" for retaining the head "over a selected portion . . . of the disk" to prevent damage to the head or disk during periods of inactivity. '159 Patent, col. 1:56-60.[1] For the Court's convenience, the full text of independent claim 1 appears below, with the terms at issue in this motion boldfaced (claims 2-4 are dependent on claim 1, and thus incorporate all of these limitations).

> 1. A magnetic **parking device** for a disk drive having a data storage medium, a transducer for reading information from and writing information to the data storage medium, and an actuator for selectively positioning the transducer over a path between a first position and a second position with respect to the data storage medium, comprising:
>
> a magnetically permeable capture member provided on the actuator; and
>
> magnetic **parking means** provided adjacent to the actuator for capturing and magnetically retaining said capture member **to park** the transducer, the magnetic parking means comprising a magnetic field containing member and including a magnet providing a magnetic field, the containing member having an air gap positioned opposing the magnetic capture member such that said capture member enters the air gap when the actuator is at the second position of the path of the actuator,
>
> wherein the capture member is in a non-permeated state over a first portion of the path of the actuator, and the capture member switches to a permeated state over a second portion of the actuator path such that the capture member is positioned proximate to the magnetic parking means and in the magnetic field.

### II. DESCRIPTION OF THE ACCUSED PRODUCTS

There is no factual dispute concerning the specific aspects of the accused products pertinent to this motion. More particularly, there is no dispute that, in the accused products the

---

[1] A more detailed discussion of the technical background and subject matter of the '159 patent is included in Cornice, Inc.'s Opening Claim Construction Brief for U.S. Patent No. 5,452,159 at section I ("'159 Claim Construction Brief").

3.

transducer/head is located completely *off* the disk during periods of inactivity. More specifically, the head is placed on a structure referred to as a "ramp" (discussed further below) located to the side of the disk. The following image from Seagate expert Dr. Bogy's expert report illustrates this arrangement, and is representative of the 1.0, 1.5, and 2.0 GB Storage Elements:[2]

Redacted

*See* Exh. C, Bogy Report, Exh. 6 at p. 2.[3] As shown, the accused products include a disk ("data storage medium"), transducer/head, and actuator. It is undisputed that the accused products all include a ramp to the side of the disk, and that during inactivity, the transducer is suspended from that ramp, and does not remain over a selected portion of the disk.          Redacted                    See the

---

[2] The 3.0 GB Storage Element differs significantly in that it uses a "mechanical" latch instead of a "magnetic" latch to retain the transducer/head. As discussed below, "mechanical" latches are clearly outside the scope of the '159 patent,     Redacted

[3] The relevant text and exhibits of the Bogy Export Report have been attached as Exh. C. Portions of the Bogy Report not relevant to this motion have been removed.

4.

topmost and lower left images from Dr. Bogy's report, above. As clearly shown in this figure, Redacted

Redacted

Exh. C, Bogy Report, Exhibit 6 at p. 4 (redacted for clarity) (emphasis added). Accordingly, there is no dispute between the parties that the actuator/head is placed off the disk during periods of inactivity.

This is a fundamental difference between the accused products and the '159 patent. As discussed in Cornice's '159 Claim Construction Brief at sections I.B and I.C, the patent is directed to a "contact-start-stop" method for securing the head during periods of inactivity, which is a different technology than the "dynamic head loading" technique employed by the accused products. Quite simply, in the former, the head lands directly on the disk, while in the latter, the head is placed off the disk. As discussed in the '159 patent, the contact-start-stop method requires a "landing zone" on the disk where the head can safely land (outside of the "data" area). No such landing zone is required when dynamic head loading is used, and there is no dispute that the disks in the accused products lack such a landing zone. Based on the undisputed facts, the following is an illustrative representation of the actuator of the accused products placed on the ramp during inactivity, which is essentially an enlarged view of the actuator and ramp of the accused product shown in Dr. Bogy's report.

5.



## ARGUMENT

### I. LEGAL PRINCIPLES

For a discussion of the applicable legal standards, please see Cornice's Brief in Support of its Motion for Summary Judgment of Noninfringement of U.S. Patent No. 5,600,506.

### II. THE ACCUSED PRODUCTS DO NOT INFRINGE ANY ASSERTED CLAIM OF THE '159 PATENT

#### A. The accused products do not satisfy the "parking device," "parking means," and "park" limitations in each asserted claim

As discussed in Cornice's '159 Claim Construction Brief, Cornice's proposed construction of "park" and "parking" as "maintaining the position of the head(s) over a selected portion of the disk" is based on the explicit definition of these terms in the patent.

6.

Summary judgment of noninfringement of all claims follows directly from this construction. In particular, there is no genuine dispute that the accused products do not meet the "parking device," "parking means," or "park" limitations of each and every claim, either literally or by equivalents.

### 1. The accused products do not literally meet the "parking device," "parking means," and "park" limitations

As discussed above, there is no dispute that during inactivity the actuator/head in the accused products is taken off the disk and suspended from the ramp. Redacted . Exh. C, Bogy Report, Exhibit 6 at p. 4. Thus, there is no genuine dispute that the accused products do not meet the "park" or "parking" limitations in each claim, precluding literal infringement of all claims. Indeed, Redacted Redacted Thus, if the Court adopts Cornice's proposed construction of this term (which is taken directly from the patent itself), summary determination of no literal infringement of each asserted claim of the '159 patent must follow. *E.g., TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("infringement must be shown literally or equivalently for each limitation"; granting summary judgment of noninfringement); *Display Technologies, Inc. v. Paul Flum Ideas, Inc.*, 282 F.3d 1340, 1348 (Fed. Cir. 2002) ("Summary judgment of noninfringement is appropriate in circumstances . . . where a plaintiff has failed to offer evidence creating a genuine issue of material fact."); *Novartis Corp. v. Ben Venue*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) ("Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.").

> 2. **The accused products do not meet the "parking device," "parking means," and "park" limitations under the doctrine of equivalents**

None of the accused products meet the "parking device," "parking means" or "park" limitations under the doctrine of equivalents. As with literal infringement,

Redacted

However, such conclusory opinions on the doctrine of equivalents are insufficient to defeat a motion for summary judgment of noninfringement. *E.g., Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999) (affirming summary judgment of noninfringement under the doctrine of equivalents where only evidence submitted by patentee was a conclusory statement by an expert); *Dawn Equipment Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1017 (Fed. Cir. 1998) (granting judgment as a matter of law of no infringement under the doctrine of equivalents; conclusory expert testimony as to the overall similarity of claim limitation and the alleged corresponding element in the accused product insufficient to establish equivalence).

Thus, summary judgment of no infringement under the doctrine of equivalents is appropriate solely on the basis of Seagate's failure of proof. *E.g., Novartis Corp.*, 271 F.3d at 1046 ("Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking

---

[4] With respect to the doctrine of equivalents, Dr. Bogy's entire opinion consists of:

Redacted

Bogy Report at p. 22.

8.

summary judgment of noninfringement may meet its initial responsibility . . . by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.").

Moreover, no reasonable jury could conclude that the use of the ramp to retain the head off the side of the disk in the accused products is somehow equivalent to the claimed "parking device." "It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Warner-Jenkinson, Co. v. Hilton Davis Chem. Co.*, 520 U.S 17, 29 (1997); *Seafross*, 374 F.3d 1142, 1151 (Fed. Cir. 2004) (affirming summary judgment of noninfringement under the doctrine of equivalents solely on the basis of vitiation). Thus, the absence of a claimed feature cannot be alleged to be equivalent to the presence of that feature. *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) Similarly, a claimed device that requires the head to be positioned "over" the disk cannot be the equivalent of a device that positions the head *off the disk*. To conclude otherwise would completely vitiate the "parking" limitation, contravening the all-limitations rule. *See Warner-Jenkinson*, 520 U.S. at 29. Similarly, the dynamic head loading method employed in the accused products is substantially different from the contact-start-stop technique implicated by the "park" limitations in the claims of the '159 patent. '159 Claim Construction Brief at sections I.B and I.C (discussing the significant differences between the two methods).

**B.**
Redacted

In its interrogatory responses     Redacted

Exh. A, Seagate's Supplemental

Response to Cornice's First Set of Interrogatories at p. 9.[5]     Redacted

---

[5]    The sum-total of Seagate's contention that 3.0 GB Storage Element infringes the '159 patent is:

Redacted

(continued . . .)

Redacted

Exh. B, ITC Bogy Tr. at 230

Redacted

Exh. C, Bogy Report at p. 22 n.2

Redacted

Seagate has never explained the basis for its infringement allegation with respect to the 3.0 GB product.

Seagate's continuing accusation of infringement against a product no objective person could believe infringed has forced Cornice to endure unnecessary litigation costs and inconvenience.

Redacted

This is just one instance of Seagate's conduct designed to harm Cornice's ability to compete in the marketplace.[6]

There was no reasonable basis for Seagate to allege infringement of the '159 patent by the 3.0 GB Storage Element. It is undisputed that the 3.0 GB Storage Element uses a mechanical latch

_____

(. . . continued)

Redacted

---

[6] These, and other grounds, form the basis of Cornice's counterclaims and request for damages.

design rather than a magnetic latch. Exh. C, Bogy Report at p. 22 n.2    Redacted

        This design precludes infringement,    Redacted

Because it is undisputed that the 3.0 GB Storage Element does not infringe the '159 patent, the Court should grant summary judgment of noninfringement.

## CONCLUSION

In view of the foregoing, the Court should grant summary judgment that none of the accused products infringes the '159 patent, either literally or by equivalents. At a minimum, the Court should grant partial summary judgment that the 3.0 GB Storage Element does not infringe the '159 patent, either literally or by equivalents.

        MORRIS, NICHOLS, ARSHT & TUNNELL

        /s/ *Julia Heaney*
        Jack B. Blumenfeld (#1014)
        Julia Heaney (#3052)
        1201 N. Market St.
        P.O. Box 1347
        Wilmington, DE  19899
        (302) 658-9200
        jheaney@mnat.com
          *Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

11.

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Original Filing Date: November 18, 2005

Redacted Filing Date: November 28, 2005

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on November 28, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>William J. Marsden, Jr., Esquire
>Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC  20005

/s/ *Julia Heaney*
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL
jheaney@mnat.com
  *Attorneys for Defendant and*
  *Counterclaim Plaintiff Cornice, Inc.*