IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEAGATE TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-418 (SLR) |
| | ) | |
| v. | ) | **REDACTED VERSION** |
| | ) | |
| CORNICE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CORNICE, INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT [NO. 5] OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,600,506**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Defendant and Counterclaim Plaintiff
Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Original Filing Date: November 18, 2005

Redacted Filing Date: November 28, 2005

i.

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CITATIONS |  | ii |
| NATURE AND STAGE OF THE PROCEEDING |  | 1 |
| SUMMARY OF ARGUMENT |  | 1 |
| STATEMENT OF FACTS |  | 2 |
| I. | THE CLAIM TERMS AT ISSUE | 2 |
|  | A. Quadrature Servo Pattern | 2 |
|  | B. A quadrature servo pattern repeated 0.75*Z times and a Gray Scale Band Comprising 1.5*Z Consecutively Addressed Gray Scale Areas | 2 |
| II. | THE ACCUSED PRODUCTS | 3 |
|  | A. None of the Accused Products Includes a "Quadrature Burst Pattern" As Claimed in the '506 Patent | 3 |
|  | B. The 3.0 GB Storage Element Also Lacks the Numerical Relationships Required by All Claims | 5 |
| ARGUMENT |  | 6 |
| I. | LEGAL PRINCIPLES | 6 |
|  | A. Summary Judgment is Appropriate When There is No Genuine Issue of Material Fact | 6 |
|  | B. The Standards for Literal Infringement | 7 |
|  | C. The Doctrine of Equivalents | 7 |
| II. | THE ACCUSED PRODUCTS DO NOT INFRINGE ANY INDEPENDENT CLAIM OF THE '506 PATENT | 8 |
|  | A. Summary Judgment of Noninfringement With Respect to All Accused Products Follows From the Proper Construction of "Quadrature Servo Pattern" | 9 |
|  | B. The 3.0 GB Storage Element Does Not Infringe Any Claim of the '506 Patent Because it Fails to Meet the "0.75*Z" and "1.5*Z" Limitations of All Claims | 12 |
| III. | CONCLUSION | 21 |

ii.

TABLE OF CITATIONS

Page(s)

Cases

*Abbott Laboratories v. Novopharm Ltd.*,
    323 F.3d 1324 (Fed. Cir. 2003).................................................................... 7

*Amhil Enters., Ltd. v. Wawa, Inc.*,
    81 F.3d 1554 (Fed. Cir. 1996); .................................................................... 7

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*,
    98 F.3d 1563 (Fed. Cir. 1996)...................................................................... 20

*Asyst Techs. v. Emtrack, Inc.*,
    402 F.3d 1188 (Fed. Cir. 2005).................................................................... 12

*Concrete Concepts, Inc. v. Cardinal Industries, Inc.*,
    145 F.3d 1303 (Fed. Cir. 1998).................................................................... 8

*Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*,
    291 F.3d 1317 (Fed Cir. 2002)..................................................................... 7

*Cybor Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998).................................................................... 6

*Dawn Equipment Co. v. Kentucky Farms, Inc.*,
    140 F.3d 1009 ...................................................................................... 18, 19

*DeMarini Sports, Inc v. Worth, Inc.*,
    239 F.3d 1314 (Fed. Cir 2001)..................................................................... 8

*Display Technologies, Inc. v. Paul Flum Ideas, Inc.*,
    60 Fed. Appx. 787 (Fed. Cir. 2002).............................................................. 10

*Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*,
    16 F.3d 394 (Fed. Cir. 1994)....................................................................... 12

*Freedman Seating Co. v. American Seating Co.*,
    420 F.3d 1350 (Fed. Cir. 2005).................................................................... 15

*Genentech, Inc. v. Wellcome Found., Ltd.*,
    29 F.3d 1555 (Fed. Cir. 1994)...................................................................... 14

*Laitram Corp. v. Rexnord, Inc.*,
    939 F.2d 1533 (Fed. Cir. 1991).................................................................... 7

iii.

*Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed.
  Cir. 2000) ................................................................................................... 8, 10, 11

*Nike, Inc. v. Wolverine World Wide, Inc.*,
  43 F.3d 644 (Fed. Cir. 1994) ...................................................................... 6

*Novartis Corp. v. Ben Venue*,
  271 F.3d 1043 (Fed. Cir. 2001) ............................................................ 10, 13

*Sage Products, Inc. v. Devon Indus., Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997) .................................................................. 16

*Schoell v. Regal Marine Indus., Inc.*,
  247 F.3d 1202 (Fed. Cir. 2001) ......................................................... 6, 7, 19

*Seafross v. Pioneer Consolidated Corp.*,
  374 F.3d 1142 (Fed. Cir. 2004) .................................................................... 7

*Southwall Tech., Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995) ..................................................................... 7

*Speedplay v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000), ................................................................ 17

*Tanabe Seiyaku Co., Ltd. v. United States Int'l Trade Comm.*,
  109 F.3d 726 (Fed. Cir. 2002 ) .................................................................. 14

*TechSearch, L.L.C. v. Intel Corp.*,
  286 F.3d 1360 (Fed. Cir. 2002) ................................................................ 7, 9

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  247 F.3d 1316 (Fed. Cir. 2001) (summary judgment proper) ........................... 6

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
  90 F.3d 1558 (Fed. Cir. 1996) .................................................................. 20

*Tronzo v. Biomet, Inc.*,
  156 F.3d 1154 (Fed. Cir. 1998) ................................................................ 19

*Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*,
  212 F.3d 1377 (Fed. Cir. 2000) ................................................................ 16

*Vehicular Technologies Corp. v. Titan Wheel International, Inc.*,
  141 F.3d 1084 (Fed. Cir. 1998) ................................................................ 18

*Wahpeton Canvas Co., Inc. v. Frontier Inc.*,
  870 F.2d 1546 (Fed. Cir. 1989) .................................................................. 7

iv.

*Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical Co.,*
  520 U.S. 17 (1997).................................................................................................... passim

*Wilson Sporting Goods Co. v. David Geoffrey & Assoc.,*
  904 F.2d 677 (Fed. Cir. 1990).......................................................................... 19

*Zelinski v. Brunswick Corp.,*
  185 F.3d 1311 (Fed. Cir.1999)......................................................................... 19

1.

## NATURE AND STAGE OF THE PROCEEDING

Seagate Technology LLC ("Seagate") filed this action on June 22, 2004, asserting that Cornice, Inc. ("Cornice") infringes U.S. Patent Nos. 5,452,159, 5,596,461, 5,600,506, 6,146,754, 6,324,054, and 6,545,845 (the "'159 patent," "'461 patent," "'506 patent," "'754 patent," "'054 patent," and "'845 patent" respectively, or the "patents in suit"). Fact discovery was completed on June 30, 2005 and the parties have served expert reports. Trial is scheduled to begin on May 1, 2006. This is Cornice's opening brief in support of its motion for summary judgment that Cornice does not infringe the asserted claims of the '506 patent.

## SUMMARY OF ARGUMENT

Seagate has accused the 1.0, 1.5, 2.0, and 3.0 GB Storage Elements ("accused products") of infringing some 25 claims of the '506 patent, including all three independent claims. Summary judgment of noninfringement of all claims with respect to all accused products follows directly from the proper construction of the claim term "quadrature burst pattern" as discussed in Cornice's Opening Claim Construction Brief for U.S. Patent No. 5,600,506 ("'506 Claim Construction Brief"). In addition, summary judgment of noninfringement of all claims with respect to the 3.0 GB product is warranted on the independent ground that this product does not meet the precise numerical relationships that define the servo pattern of the '506 patent and its relationship to the data tracks. No facts concerning the pertinent aspects of the accused products are reasonably in dispute. Cornice thus respectfully requests that the Court grant summary judgment of noninfringement - both literal and under the doctrine of equivalents – with respect to all accused products and all asserted claims of the '506 patent.

## STATEMENT OF FACTS

### I.    THE CLAIM TERMS AT ISSUE

Representative claim 1 appears below, with the terms addressed in this motion highlighted. These terms appear in all claims of the '506 patent.

> 1. A system for measuring the distance of a transducer from a reference point on a disk in a sector servo disk drive system comprising:
>
> a disk surface divided into sectors where each sector comprises Z data tracks, a servo band and a gray scale band recorded across all said Z data tracks, said servo band comprising a **quadrature servo pattern** repeated **0.75\*Z** times, said gray scale band comprises **1.5\*Z** consecutively addressed gray scale areas; and
>
> a position generator for generating from said quadrature servo pattern and an address of a gray scale area read by a transducer in said disk drive system a signal indicating a position of said transducer relative to a fixed reference point in said gray scale band on said disk.

### A.    Quadrature Servo Pattern

As discussed in Cornice's Opening Claim Construction Brief for U.S. Patent No. 5,600,506 ("'506 Claim Construction Brief") , properly construed in view of the unambiguous intrinsic record of the patent specification, the term "quadrature servo pattern" requires that a servo burst be centered in data track 0 as well as each and every data track.

REDACTED

Exh. B, Messner Tr. at 223-24.  However, as explained below, there is no dispute that this relationship between the servo burst pattern and the data tracks is lacking in all accused products.

### B.    A quadrature servo pattern repeated 0.75\*Z times and a Gray Scale Band Comprising 1.5\*Z Consecutively Addressed Gray Scale Areas

As discussed in Cornice's '506 Claim Construction Brief, both of these specific numerical relationships -- a quadrature servo pattern repeated .75\*Z  times and a gray scale band comprising 1.5\*Z consecutively addressed gray scale areas -- follow from the widening of the data tracks

3.

relative to the servo pattern, *i.e.*, the Gray code areas and servo bursts, by exactly ½. This single change results in precisely 1.5 as many Gray code areas (or servo tracks) as data tracks, and precisely ¾ as many complete A/B/C/D burst patterns as data tracks. Stated another way, there are precisely 3 servo tracks for each two data tracks, and 3 complete burst patterns for every 4 data tracks, in each case recorded across all the data tracks. These requirements of all claims of the '506 patent are undisputed. As explained below, however, the 3.0 GB product uses 4 servo tracks for every 3 data tracks, and 2 complete burst patterns for every 3 data tracks.

## II.    THE ACCUSED PRODUCTS

### A.    None of the Accused Products Includes a "Quadrature Burst Pattern" As Claimed in the '506 Patent

None of the accused products meets the "quadrature servo pattern" limitation in each claim.

REDACTED         Exh. C, Carlson Decl. at ¶¶ 5, 15-16; Exh. D, Brittner Decl. at ¶¶ 4-5.


Exh. C, Carlson Decl. at ¶¶ 5, 15-16; Exh. D, Brittner Decl. at ¶¶ 4-5.
REDACTED


Exh. C, Carlson Decl. at ¶¶ 6; Exh. D, Brittner Decl. at ¶¶ 4-5.


REDACTED
Exh. C, Carlson Decl. at ¶ 7; Exh. D, Brittner Decl. at ¶¶ 4-5.

Exh. C, Carlson Decl. at ¶ 8; Exh. D, Brittner Decl. at ¶¶ 4-5.

Exh. C, Carlson Decl. at ¶ 8; Exh. D, Brittner Decl. at ¶¶ 4-5.    REDACTED

Exh. C, Carlson Decl. at ¶ 8; Exh. D,

4.

Brittner Decl. at ¶¶ 4-5.
REDACTED
Exh. C, Carlson Decl. at ¶ 9; Exh. D, Brittner Decl. at ¶¶ 4-5.

REDACTED

(Exh. C, Carlson Decl. at ¶¶ 10-12; Exh. D, Brittner Decl. at ¶¶ 4-5):[1]



REDACTED
Exh. C, Carlson Decl. at ¶ 12; Exh. D, Brittner Decl. at ¶¶ 4-5.

REDACTED    Exh. C, Carlson Decl. at ¶ 16; Exh. D, Brittner Decl. at ¶¶ 4-5.

REDACTED

---

[1]    This image was excerpted from U.S. Patent No. 5,587,850 to Ton-that, which describes a servo system for an MR head disk drive.  Exh. H  The labels have been added for clarity.

5.

REDACTED

Exh. C, Carlson Decl. at ¶¶ 5, 8, 13, 15, 16; Exh. D, Brittner Decl. at ¶¶ 4-5.

There is no factual dispute concerning this critical distinction between the '506 patent and the accused products.

Exh. B, Messner Tr. at 53-54

REDACTED                      69-70

## B.    The 3.0 GB Storage Element Also Lacks the Numerical Relationships Required by All Claims

In addition to failing to meet the "quadrature burst pattern" limitation of all claims, the 3.0 GB Storage Element also does not infringe any claim of the '506 patent for the independent reason that it lacks the precise numerical relationships between the servo pattern information (Gray code areas and burst patterns) and data tracks required by all claims. In particular, in the 3.0 GB product there are 4 gray codes or servo tracks for every 3 data tracks (1.333 * Z), and 2 burst patterns for every 3 data tracks (0.667 * Z), in the regions of the disk where the data tracks are located. Exh. D, Brittner Decl. at ¶ 6. This configuration is a marked difference from the specific, numerical limitations of the '506 patent's claims which require 3 gray codes for every two data tracks ("1.5 * Z") and 3 quadrature servo patterns for every 4 data tracks ("0.75 * Z").

REDACTED

Exh. D, Brittner Decl. at ¶ 7.

REDACTED                      Messner

Report at pp. 7-8, Exh. 6B. However, for the foregoing reasons, the doctrine of equivalents is not

6.

available, and the Court should rule as a matter of law that the 3.0 GB product does not infringe the '506 patent.

## ARGUMENT

### I.     LEGAL PRINCIPLES

#### A.     Summary Judgment is Appropriate When There is No Genuine Issue of Material Fact

Summary judgment of noninfringement is appropriate "where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial" *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001) (summary judgment proper); *Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) (summary judgment is "appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law"). Literal infringement is often resolved, as it is here, by a court's construction of disputed claim terms as a matter of law. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1480 (Fed. Cir. 1998) (*en banc*) (Newman, J. and Mayer, C.J., additional views) ("[The claim construction] ruling can be dispositive of the dispute, for the scope of the claim often decides whether there can be literal infringement.").

In addition, the Supreme Court has made clear that the doctrine of equivalents may also be dispensed with on summary judgment. *Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997) ("[I]f prosecution history estoppel would apply or if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve.") (emphasis in original); *see also Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1210 (Fed. Cir. 2001) ("The doctrine of equivalents is not a talisman that entitles a patentee to a jury trial on the basis of suspicion; it is a limited remedy available in special circumstances, the evidence for which is the responsibility of the proponent.").

Given the Supreme Court's guidance in *Warner-Jenkinson* and the Federal Circuit's guidance in *Schoell*, grants of summary judgment of noninfringement – both literal and under the doctrine of equivalents -- are entirely appropriate.[2]

### B.     The Standards for Literal Infringement

Literal infringement of a patent requires that each and every limitation of at least one claim be present in the accused device, *i.e.*, that "the properly construed claim reads on the accused device exactly." *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996); *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). It is well-established that the absence of a even a single claim limitation in an accused product or service precludes infringement. *E.g.*, *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1539 (Fed. Cir. 1991) ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim."). Failure to infringe an independent claim also precludes infringement of any claims that depend therefrom. *Wahpeton Canvas Co., Inc. v. Frontier Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."). Thus, in this case, the issue of infringement may be disposed of by addressing just the three independent claims of the '506 patent (claims 1, 22 and 33).

### C.     The Doctrine of Equivalents

Absent literal infringement, infringement may be found in some rare cases under the judicial "doctrine of equivalents." The "essential inquiry" of the doctrine of equivalents analysis asks whether "the accused product or process contain elements identical or equivalent to each claimed element of the

---

[2]     Examples of recent Federal Circuit decisions affirming grants of summary judgment of noninfringement (both literal and under the doctrine of equivalents) include *Seafross v. Pioneer Consolidated Corp.*, 374 F.3d 1142 (Fed. Cir. 2004); *Abbott Laboratories v. Novopharm Ltd.*, 323 F.3d 1324 (Fed. Cir. 2003); *Phonometrics*, 319 F.3d 1328; *Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317 (Fed Cir. 2002); *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360 (Fed. Cir. 2002).

8.

patented invention." *Warner-Jenkinson Co, Inc.,* 520 U.S. at 40. The purpose of the doctrine of equivalents is to "protect the substance of a patentee's right to exclude by preventing mere colorable differences or slight improvements from escaping infringement." *Chiuminata Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1310 (Fed. Cir. 1998).

If an entire claim element is missing, however, summary judgment of noninfringement should be granted. *See Warner-Jenkinson*, 520 U.S. at 39 n.8 ("[I]f prosecution history estoppel would apply or if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further <u>material</u> issue for the jury to resolve."); *see also id.* at 29 ("It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.").

For example, equivalents cannot be found as a matter of law where doing so would contradict a claim limitation that is not literally met. Thus, a claim requiring a "majority" of something cannot be met by an "equivalent" with only a <u>minority</u>. *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (this would "vitiate the [claim] requirement" and "defy logic"; also holding that absence cannot be equivalent to required presence).

Where, as here, any argument of equivalents would necessarily vitiate or contradict one or more claim limitations, the Court is not even required to make any assessment of the substantiality of the differences between the accused device and the claim. "[T]he question of insubstantiality of the differences is inapplicable if a claim limitation is totally missing from the accused device." *DeMarini Sports, Inc v. Worth, Inc.*, 239 F.3d 1314, 1332 (Fed. Cir 2001) (affirming summary judgment of noninfringement).

## II.     THE ACCUSED PRODUCTS DO NOT INFRINGE ANY INDEPENDENT CLAIM OF THE '506 PATENT

The Court need only consider the single term "quadrature servo pattern" to grant this motion as to all accused products. Even if the Court were to conclude that summary judgment of

9.

noninfringement is not proper based on "quadrature servo pattern," the Court should grant partial summary judgment of noninfringement of all claims of the '506 patent with respect to the 3.0 GB product.

REDACTED

 

A.      **Summary Judgment of Noninfringement With Respect to All Accused Products Follows From the Proper Construction of "Quadrature Servo Pattern"**

1.      **The accused products do not literally meet the "quadrature servo pattern" limitation**

Each claim of the '506 patent requires the use of a specific type of quadrature servo pattern where a burst is centered in data track "0," as well as each and every other data track (repeating every four data tracks). *See* Cornice's Claim Construction Brief for the '506 Patent at Argument, Section I.A..

REDACTED

 

Exh. C, Carlson Decl. at ¶¶ 5, 8, 13, 15, 16; Exh. D, Brittner Decl. at ¶¶ 4-5.

REDACTED

Exh. B, Messner Tr. at 53-54; *see also id.* at 69-70

REDACTED

 

In sum, under Cornice's proposed construction of "quadrature servo pattern" discussed above, Seagate has offered no evidence or expert opinion that this limitation is met. Thus, if the Court adopts Cornice's proposed construction of this term, summary judgment of no literal infringement of each asserted claim of the '506 patent follows. *E.g.*, *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("infringement must be shown literally or equivalently for each limitation; general assertions of facts, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden."); *Display Technologies, Inc. v. Paul Flum Ideas, Inc.*, 60 Fed. Appx. 787, 796 (Fed.

10.

Cir. 2002) ("Summary judgment of noninfringement is appropriate in circumstances . . . where a plaintiff has failed to offer evidence creating a genuine issue of material fact."); *Novartis Corp. v. Ben Venue*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) ("Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.").

### 2. The accused products do not meet the "quadrature servo pattern" limitation under the doctrine of equivalents

Similarly, this is not a case where Seagate can rely on the doctrine of equivalents to avoid summary judgment of noninfringement. Seagate has provided no basis for any contention of infringement under the doctrine of equivalents under Cornice's proposed construction of "quadrature servo pattern."

REDACTED

Exh. B, Messner Tr. at 53

REDACTED    Thus, if the Court adopts Cornice's construction of "quadrature servo pattern," Cornice is entitled to summary judgment of noninfringement – both literal and under the doctrine of equivalents on this ground alone. *E.g.,*, *Novartis Corp.,* 271 F.3d at 1046 ("Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility . . . by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.").

Seagate's failure to allege infringement under the doctrine of equivalents based on Cornice's proposed construction is not surprising, because to find that a quadrature burst pattern which "requires" that a burst "must" be centered in every data track is equivalent to a quadrature servo pattern *without* such a property would both vitiate and contradict the limitation. *See Moore U.S.A., Inc.,* 229 F.3d at 1106. The Supreme Court has cautioned against the use of the doctrine of equivalents to improperly

11.

broaden patent protection by vitiating a claim limitation in this manner. "It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Warner-Jenkinson*, 520 U.S. at 29.

Even apart from Seagate's failure to provide any basis for infringement under the doctrine of equivalents, there is substantial authority for granting summary judgment of noninfringement in analogous cases. For example, in *Cooper Cameron*, the Federal Circuit affirmed summary judgment of noninfringement under the doctrine of equivalents on the basis of vitiation. 291 F.3d at 1322. There, the claims at issue were directed to sub-sea wellheads, and required a "workover port" "between the two plugs." *Id.* The court reasoned that "the workover port in [the] accused device enters the wellhead assembly 'above' the two plugs, which cannot be equivalent to a connection 'between the two plugs.' . . .Were we to ignore Cooper's decision to claim in the [patent in suit] a workover port that connects to the assembly only 'between' the plugs, we would vitiate that limitation and thereby run afoul of the all-limitations rule." *Id.*  Similarly, in *Searfoss*, the Federal Circuit again affirmed summary judgment of noninfringement under the doctrine of equivalents on the basis of vitiation. 374 F.3d at 1151. There, the claims were directed to a movable cover system for a truck bed. *Id.* at 1144. The court agreed with the district court that "[t]o find, as [Searfoss] argue[s], that the 'indirect connection' constitutes an equivalent of the direct connection function described in Claim 3 would, in effect, completely vitiate the connection function." *Id.* at 1151 (alterations in original).

In the instant case, the "quadrature servo pattern" of <u>every</u> claim "requires" that a burst "must" be centered in every data track.   Finding that a pattern which does not meet this requirement is equivalent would completely vitiate the limitation, and run afoul of the all-limitations rule. *See Warner-Jenkinson*, 520 U.S. at 29.

Similarly, a finding of equivalence would impermissibly contradict the limitation. For example, in *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 1008 (2001), the Federal Circuit affirmed summary judgment of non-infringement under the doctrine of equivalents. The patents-in-suit were directed to mailer-type business forms. One claim

12.

required that a sheet be "devoid of adhesive," whereas the accused device included some adhesive. *Id.* at 1114. The court opined that "[t]he presence of a feature in an accused device (here, adhesive) cannot possibly be equivalent to the claimed absence of that feature, and no reasonable factfinder could conclude otherwise." *Id.* at 1115 n. 5. The court found that this argument alone provided sufficient basis to affirm the lower court. *Id.* ("even were we to assume that the doctrine of prosecution history estoppel was inapplicable, we would still affirm [on this basis]"). The instant case presents an analogous situation: the absence of a feature in an accused device                         REDACTED                         cannot possibly be equivalent to the claimed requirement of that feature, and no reasonable factfinder could conclude otherwise. *See id.; c.f. Asyst Techs. v. Emtrack, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (holding that, under the "specific exclusion" principle, "the term 'mounted' can fairly be said to specifically exclude objects that are 'unmounted'"); *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394, 400 (Fed. Cir. 1994) ("In short, the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims.").

Accordingly, the Court should grant Cornice summary judgment of non-infringement – both literal and under the doctrine of equivalents -- of all claims of the '506 patent.

**B.     The 3.0 GB Storage Element Does Not Infringe Any Claim of the '506 Patent Because it Fails to Meet the "0.75*Z" and "1.5*Z" Limitations of All Claims**

Irrespective of the Court's ruling with respect to the "quadrature servo pattern" limitation, the Court should  grant at least partial summary judgment of noninfringement with respect to the 3.0 GB Storage Element.

13.

### 1.    The 3.0 GB Storage Element does not literally infringe any claim of the '506 patent

In the 3.0 GB product there are 4 servo tracks or gray code areas for every 3 data tracks (1.333 * Z), and 4 complete burst patterns for every 6 data tracks (0.666 * Z).[3] Thus, the 3.0 GB product includes far fewer than 0.75 * Z quadrature servo patterns and 1.5 * Z consecutively addressed gray scale areas as required by every claim, thereby precluding literal infringement. In other words, if, for example, there are 10,000 data tracks on the disk, the 3.0 GB product will have about 6,666 complete burst patterns, as opposed to the 7,500 required by the '506 patent, and about 13,333 servo tracks as compared to the 15,000 required by the claim.

REDACTED

Messner Report at pp. 7-8, Exh. 6B. Therefore, at a minimum, the Court should grant partial summary judgment that the 3.0 GB Storage Element does not literally infringe the '506 patent. *E.g., Novartis Corp.,* 271 F.3d at 1046 ("Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility . . . by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.").

### 2.    The 3.0 GB Storage Element does not infringe any claim of the '506 patent under the doctrine of equivalents.

For a number of reasons, the Court should also grant summary judgment of no infringement under the doctrine of equivalents. First, the claims of the '506 patent were drafted very narrowly, claiming precise numerical relationships between the servo information and the data tracks, and

---

[3]

REDACTED

Seagate may not escape the foreseeable consequences of its narrow claims via the doctrine of equivalents. In addition, the specification and claims of the '506 patent make clear that varying the claimed "0.75 * Z" and "1.5 * Z" would make it impossible to practice a required feature of the purported invention – centering a servo burst in each data track. Accordingly, Cornice is entitled to at least partial summary judgment that the 3.0 GB Storage element does not infringe the '506 patent under the doctrine of equivalents.

> **a.     Seagate cannot rely on the doctrine of equivalents to avoid its deliberately narrow claim language.**

The '506 patent contains very narrowly drafted claims. Each claim requires precisely "0.75 * Z" repeating quadrature servo patterns and "1.5 * Z" "gray scale areas." The applicants consciously chose not to claim these relationships in terms of ranges or approximations. This is entirely consistent with the intrinsic record, which leaves no room to deviate from these precise relationships. Every description of the purported invention of the '506 patent, including the Abstract, "Summary of the Invention" ('506 patent, cols.1:65-2:20), each of the 16 different embodiments, and all relevant drawings (Figs. 3, 4A, 4B, 7A, 7B, and 8) included in the "Detailed Description of the Invention" include these precise relationships. The specification nowhere suggests that different relationships are within the scope of the purported invention. Even the Examiner's Statement of Reasons for Allowance recites these specific numerical relationships in describing the "reasons for the indication of allowable subject matter." Exh. F, Notice of Allowance at p. 3.

Because the applicants chose to claim their invention narrowly, the critical public notice function of patent claims precludes Seagate from relying on the doctrine of equivalents to broaden that narrow language in the context of litigation. "[T]he doctrine of equivalents is not available for the attainment in court of a scope of protection which encompasses subject matter deliberately removed from examination by the PTO during prosecution through narrow claiming." *Tanabe Seiyaku Co., Ltd. v. United States Int'l Trade Comm.,* 109 F.3d 726, 732 (Fed. Cir. 2002 ) (*quoting Genentech, Inc. v. Wellcome Found., Ltd.,* 29 F.3d 1555, 1568 n. 41 (Fed. Cir. 1994) (citation omitted)). In *Tanabe*, the

patent was directed to a pharmaceutical, and in the specification and claims, the applicants chose to define the invention in terms of "specific base-solvent combinations, rather than in terms of categories of bases and solvents." *Id.* at 732. A person of skill in the art would have known that the applicant could have used broader (*i.e.*, genus rather than species) language to describe the solvents. *Id.* Regardless, the Federal Circuit held the applicants to their narrow claim language, commenting that "[t]he strictly restricted nature of the claims has much to do with the scope we accord to the doctrine of equivalents." *Id.* (affirming Commission's finding of no infringement under the doctrine of equivalents).

The Federal Circuit ruled similarly earlier this year in *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005). There, the claims were directed to a stowable seat for use in a public transportation vehicle. *Id.* at 1352. The claims required a "support member" that is "slidably mounted" to the "seatbase." *Id.* at 1353. Because the claims were directed to "relatively simple and well-known technologies," and the applicants specifically limited their claims to a "slidably mounted" support member, "[m]embers of the public [are] therefore justified in relying on this specific language in assessing the bounds of the claim." *Id.* at 1362 (relying on *Sage Prods.*, 126 F.3d at 1425).

**b.    The Consequences of Seagate's Narrow Claims Were Foreseeable**

In support of its allegation of infringement under the doctrine of equivalents, Seagate makes the litigation-induced argument that the alleged novelty of the '506 patent lies in the broad, general concept of the

*See, e.g.,* Messner Report, Exh. 6B at

REDACTED

pp. 3-4.

*Id.* As an initial matter, such "disassociation" of gray scale areas and servo tracks was described in the prior art in 1990, some five years before the application for the '506 patent was filed. Exh. G, Track Pitch Independent Servo Pattern, IBM Technical Disclosure Bulletin, Vol. 32, No. 9A, pp. 308-310, February 1990. Indeed, it was IBM,

REDACTED

that first developed this but did not believe it even

warranted a patent, instead choosing to publish the concept in a "defensive" publication to prevent others from patenting it.

Moreover, even assuming, *arguendo*, the named inventors of the '506 patent were the first to conceive of the                    REDACTED                    that is not what they claimed, and the purpose of the doctrine of equivalents is not to allow applicants to avoid the foreseeable effects of their failure to claim as broadly as they could have. *See Sage Products, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997) ("[F]or a patentee who has claimed an invention narrowly, there may not be infringement under the doctrine of equivalents in many cases, even though the patentee might have been able to claim more broadly.") (affirming summary judgment of no infringement under the doctrine of equivalents).

The consequences of limiting all claims of the '506 patent to the single, precise numerical relationships (0.75*Z and 1.5*Z) were obvious. "No subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, obfuscated the significance of this limitation at the time of its incorporation into the claim." *Sage Prods.*, 126 F.3d at 1425. To draft claim language to cover the                    REDACTED                    or perhaps a range of numerical values rather than the precise individual numbers, "would not [have] confront[ed] the need for particularly subtle or ambiguous language to describe inventive features that are complex, or were never described before in scientific discourse." *See Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1384 (Fed. Cir. 2000) (Rader, J., concurring) (affirming summary judgment of noninfringement).

The applicants would therefore have reasonably foreseen the limited nature of  claims covering only a single numerical relationship between the data tracks and servo tracks. As between the patent applicants and the public, the applicants must bear the consequences of any failure to claim as broadly as they allegedly could have. *See id.* (courts should "not employ the doctrine of equivalents to alter the limitations the drafter[s] chose to prosecute in the Patent and Trademark Office.").

17.

        **c.**        **Equivalents are Precluded Because the Cornice Servo Pattern for the 3.0 GB Product Does Not Center a Burst in Each Data Track as Required by the '506 Patent**

A further reason for finding a lack of equivalents as a matter of law is that the numerical relationships used in the 3.0 GB product, i.e, "0.666 * Z" and "1.333 * Z" as opposed to "0.75*Z" and "1.5*Z" respectively, do not result in a servo burst centered in each data track, a fact not in dispute.[4]

As described in more detail in Cornice's Markman brief for the '506 patent, the servo burst pattern of the '506 patent requires a servo burst centered in each and every data track. This follows from the precise alignment of the servo bursts with respect to the data tracks. *See*     REDACTED

Exh A, '506 Patent, figures 3, 4A, 4B, 7A, 7B, 8. However, the wider bursts in the 3.0 GB Storage Element (3/4 the width of the data track v. 2/3 in the '506 patent) preclude this requirement from being met.
     REDACTED
       Exh. B, Messner Tr. at 205.

The '506 patent makes clear to those of skill in the art that this precise alignment is of critical importance to the '506 patent. *See* Exh, A'506 patent, col. 2:17-19; col. 4:11-15; col. 12:27-30 ("Each data track <u>will</u> have a boundary defined by servo bursts located at 1/6 * W, 1/2 * W, and 5/6 * W"; "The position measuring system <u>requires</u> that one of the four servo bursts of the quadrature servo pattern used <u>must</u> be centered in data track 0.") (emphasis added). An accused product that does not satisfy this critical feature cannot be found to infringe under the doctrine of equivalents.

For example, in *Speedplay v. Bebop, Inc.*, 211 F.3d 1245, 1255-56 (Fed. Cir. 2000), the claim limitation alleged to be met by an equivalent recited a "convex surface." Both the detailed description of the patent-in-suit and reissue application therefor required that the claimed "convex surface" provide a "self-alignment function," which was absent from the accused product. *Id.* at 1255-56. On this basis, the Federal Circuit affirmed summary judgment of no infringement under the doctrine of

---

[4]

                    REDACTED

                         Exh. B, Messner Tr. at 205.

18.

equivalents. *Id*; *see also, Dawn Equipment Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1017 (Fed. Cir. 1998) (granting judgment of no infringement under the doctrine of equivalents as a matter of law where accused product did not achieve benefits of the patent).

Similarly, in *Vehicular Technologies Corp. v. Titan Wheel International, Inc.*, 141 F.3d 1084 (Fed. Cir. 1998), the court reversed a preliminary injunction based on a finding of likely infringement by an accused device under the doctrine of equivalents. The specification stressed several functions of the claim limitation that were not present in the accused device, including a "backup" function. *Id.* at 1090-91. The court ruled that statements in the specification or prosecution history about the functions and "role" of a claim limitation can restrict the scope of equivalency. *Id.* at 1092. ("The claims as understood in light of the written description are directed toward structures that perform explicit functions. When considering those functions and the lack of one key function in the accused devices, we conclude that [the patentee] does not have a reasonable likelihood of establishing, on the present record, the insubstantiality of that difference.").

REDACTED

**d.     Seagate's Expert's Conclusory Opinion of Infringement Under the Doctrine of Equivalents Does Not Avoid Summary Judgment**

The sum total of Seagate's expert's opinion as to the alleged infringement by the 3.0 GB product under the doctrine of equivalents is as follows:

REDACTED

REDACTED

Messner Report, Exhibit 6B at p. 3.

REDACTED

Moreover, such a broad statement is also true of the prior art IBM TDB (Exh. G), and provides no basis for his opinion regarding equivalents. *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 684 (Fed. Cir. 1990) ("a patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims"). REDACTED

The law is clear that such conclusory allegations of infringement under the doctrine of equivalents are not sufficient to avoid summary judgment. *Schoell v. Regal Marine Industries, Inc.*, 247 F.3d 1202, 1210 (Fed. Cir. 2001) (patentee's conclusory expert opinion regarding infringement under the doctrine of equivalents was insufficient to avoid summary judgment); *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999) (affirming summary judgment of noninfringement under the doctrine of equivalents because the only evidence submitted by patentee was a conclusory statement by an expert); *Tronzo v. Biomet, Inc,.* 156 F.3d 1154, 1160 (Fed. Cir. 1998) (reversing finding of infringement by equivalents because expert's function-way-result was conclusory); *Dawn Equipment Co. v. Kentucky*

*Farms Inc.*, 140 F.3d 1009, 1017 (Fed. Cir. 1998) (holding that conclusory expert testimony as to the overall similarity of a claim limitation and the alleged corresponding element in the accused product was insufficient to establish equivalence under the doctrine of equivalents); *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567-78 (Fed. Cir. 1996) (same).

REDACTED

        In particular, the function of the specific claimed ratio of 3 servo tracks to 2 data tracks is to provide for the most accurate position information (e.g., '506 patent "Summary of the Invention" at 2:19-20 ("increase the accuracy of the position value determined for the transducer")). The "way" the 3:2 relationship achieves this is by allowing for the placement of a servo burst centered in each data track (e.g., '506 patent at col. 4: 12-15 ("The positioning measuring system requires that one of the four servo bursts of the quadrature servo pattern used must be centered in data track 0")). And the "result" is the placement of a "null" in the center of each data track to allow for optimal positioning along data track centers.        REDACTED

        In contrast, the Cornice 3.0 GB product does not meet at least the "way" and "result" prongs, because neither the REDACTED relationship used allows for placement of a burst centered in each data track, and neither results in a "null" occurring in the center of each data track to achieve optimal positioning.        REDACTED        Thus, no reasonable jury could find equivalence, and judgment as a matter of law on the issue of equivalence is thus mandated on this basis as well. *Warner-Jenkinson,* 520 U.S. at 40 ("An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element."); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1574 (Fed. Cir. 1996) (written description demonstrated that a certain function must be performed by claimed process, and accused process that did not perform that function could not be asserted as an equivalent). Accordingly, for all the foregoing reasons, the Court should grant at least partial summary judgment that the 3.0 GB Storage Element does not infringe the '506 patent either literally or under the

doctrine of equivalents.

### III.    CONCLUSION

For all the foregoing reasons, the Court should rule as a matter of law that none of the accused products infringes any claim of the '506 patent, either literally or under the doctrine of equivalents. Alternatively, the Court should grant partial summary judgment that the 3.0 GB product does not infringe any claim of the '506 patent, either literally or under the doctrine of equivalents. Finally, at a minimum, the Court should grant partial summary judgment that the 3.0 GB product does not literally infringe any claim of the '506 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/  Julia Heaney
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com
*Attorneys for Defendant and Counterclaim Plaintiff
Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000

Redacted Filing Date:  November 28, 2005

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on November 28, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>William J. Marsden, Jr., Esquire
>Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

>William J. Marsden, Jr., Esquire
>Fish & Richardson, P.C.
>919 N. Market Street, Suite 1100
>Wilmington, DE  19801

### BY FEDERAL EXPRESS

>Ruffin B. Cordell, Esquire
>Fish & Richardson, P.C.
>1425 K Street, NW, Suite 1100
>Washington, DC  20005

>/s/ Julia Heaney
>Julia Heaney (#3052)
>MORRIS, NICHOLS, ARSHT & TUNNELL
>jheaney@mnat.com
>*Attorneys for Defendant and*
>*Counterclaim Plaintiff Cornice, Inc.*