IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,     )
    )
    Plaintiff,     )
    )
    v.     )     Civil Action No. 04-418-SLR
    )
CORNICE, INC.     )     **REDACTED VERSION**
    )
    Defendant.     )

**DEFENDANT CORNICE, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT [NO. 6] REGARDING
THE INVALIDITY OF U.S. PATENT NO. 5,600,506**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
    *Attorneys for Defendant and Counterclaim Plaintiff
    Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Original Filing Date: November 18, 2005

Redacted Filing Date: November 28, 2005

TABLE OF CONTENTS

Page

TABLE OF CITATIONS ................................................................................................ iii

NATURE AND STAGE OF THE PROCEEDING ........................................................ 1

SUMMARY OF ARGUMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

I.   THE '506 PATENT ............................................................................................ 3

     A.   The '506 Patent is Directed to the Servo System of a Hard Disk Drive
          Which Controls the Position of the Head ........................................................ 3

     B.   The Purpose of the '506 Patent is to Determine the Precise Position of
          the Head Relative to the Surface of the Disk .................................................. 3

     C.   The '506 Patent Is a Combination of Two "Major Elements" ......................... 4

     D.   The Two "Major Elements" of the '506 Patent Are Not Independent
          Inventions ........................................................................................................ 5

     E.   Claim 22 Lacks the "Transducer" and "Position Generator," and is Not
          Described or Enabled in the '506 Patent .......................................................... 6

II.  SEAGATE FAILED TO PROVIDE DISCOVERY CONCERNING ALLEGED
     COMMERCIAL     SUCCESS     OR     ANY     OTHER     SECONDARY
     CONSIDERATIONS IN RESPONSE TO CORNICE'S         DISCOVERY
     REQUESTS ....................................................................................................... 7

     A.   Seagate Offers No Secondary Considerations Other Than Alleged
          Commercial Success ........................................................................................ 10

ARGUMENT ................................................................................................................. 11

I.   LEGAL STANDARDS ..................................................................................... 11

     A.   Enablement, Written Description, and Indefiniteness Are Amenable to
          Summary Judgment .......................................................................................... 11

     B.   Partial Summary Judgment is Useful in Patent Cases to Streamline the
          Case for Trial ................................................................................................... 12

     C.   Seagate's Failure to Provide Discovery Supports Summary Judgment ........... 13

II.  CLAIM 22 OF THE '506 PATENT IS INVALID UNDER 35 U.S.C. SEC. 112,
     PARAGRAPH 1 ................................................................................................ 13

ii.

TABLE OF CONTENTS (continued)

Page

III.    CLAIM 22 OF THE '506 PATENT IS INVALID UNDER 35 U.S.C. SEC. 112,
        PARAGRAPH 2                                                              18

IV.     SEAGATE SHOULD BE BARRED FROM OFFERING SECONDARY
        CONSIDERATIONS       IN      SUPPORT      OF      THE      ALLEGED
        NONOBVIOUSNESS OF THE CLAIMS OF THE '506 PATENT                          20

        A.    Seagate Documents Contradict Its Commercial Success Contention    21

        B.    Dr. Messner's Opinions Concerning Commercial Success Should be
              Rejected as a Matter of Law Because They are Based on an Incorrect
              Legal Standard for the "Nexus" Requirement                         24

CONCLUSION                                                                       27

iii.

TABLE OF CITATIONS

<u>Cases</u>

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.,*
    1996 WL 621835 (D. Del. 1996)        13

*AK Steel Corp. v. Sollac & Ugine,*
    344 F.3d 1234 (Fed. Cir. 2003)        14

*AK Steel Corporation v. Sollac,*
    344 F.3d 1234 (Fed. Cir. 2003)        12, 16

*Allen Eng'g Corp. v. Bartell Indus., Inc.,*
    299 F.3d 1336 (Fed. Cir. 2002)        19

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)        11

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,*
    776 F.2d 281 (Fed. Cir. 1985)        20

*Cable Electric Products, Inc. v. Genmark, Inc.,*
    770 F.2d 1015 (Fed. Cir. 1985)        24

*Coca-Cola Bottling Company of Elizabethtown, Inc. v. The Coca-Cola*
    *Company,*
    654 F. Supp 1419 (D. Del. 1987)        12

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993)        23

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,*
    2 USPQ.2d 1545 (D. Del. 1987)
    *aff'd in part, rev'd in part, vacated in part and remanded,* 849 F.2d
    1430 (Fed. Cir. 1988)        20

*Elcock v. Kmart Corp.,*
    233 F.3d 734 (3d Cir. 2000)        23

*Freeman v. Minnesota Mining and Manufacturing Co.,*
    675 F.Supp. 877 (D. Del. 1987)        12

*Glaros v. H. H, Robertson Co.,*
    797 F.2d 1564 (Fed. Cir. 1986)        12

*Glatt v. Sisco,*
    136 F. Supp. 936 (D.N.J. 1956)        13

iv.

*Grayzel v. St. Jude Medical,*
    345 F.Supp.2d 466 (D. N.J. 2004)      23, 26

*GTY Indus. v. Genlye Group, Inc.,*
    1995 WL 781701 (C.D. Cal.)      12

*Hammond Packing Co. v. Arkansas,*
    212 U.S. 322 (1909)      13, 23

*In re Baxter Travenol Labs,*
    952 F.2d 388 (Fed. Cir. 1991)      25

*In re Paoli Railroad Yard PCB Litigation,*
    35 F.3d 717 (3rd Cir. 1994)      23

*In re Wright,*
    999 F.2d 1557 (Fed. Cir. 1993)      14

*In re Ziegler,*
    992 F.2d 1197 (Fed. Cir. 1993)      11

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,*
    456 U.S. 694 (1982)      13, 20, 23

*Izumi Products Company v. Koninlijke Phillips Electronics N.V.,*
    315 F. Supp. 2d 589, 601-602 (D. Del. 2004)      24

*Joy Technologies Inc. v. Quigg,*
    732 F. Supp. 227 (D.D.C. 1990)      13

*Kansas Jack, Inc. v. Kuhn,*
    719 F.2d 1144 (Fed. Cir. 1983)      24, 25

*LizardTech Inc. v. Earth Resource Mapping, Inc.,*
    424 F.3d 1336 (Fed. Cir. 2005)      passim

*Lockwood v. American Airlines, Inc.,*
    107 F.3d 1565 (Fed. Cir. 1997)      11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)      11

*Merrill Lynch v. Sorac, Inc.,*
    1991 WL 637106 (D.D.C. 1991)      13, 23

*Morton Int'l, Inc. v. Cardinal Chem Co.,*
    5 F.3d 1464 (Fed. Cir. 1993)      19

v.

*Morton International, Inc. v. Cardinal Chemical Co.*,
    5 F.3d 1464 (Fed. Cir. 1993)                                           11

*O'Reilly v. Morse*,
    56 U.S. (15 How.) 62 (1853)                                           14

*On-Line Tech. v. Bodenseewerk Perkin-Elmer*,
    386 F.3d 1133 (Fed. Cir. 2004)                                     11, 26

*Pentec, Inc. v. Graphic Controls Corp.*,
    776 F.2d 309 (Fed. Cir. 1985)                                         25

*Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*,
    12 F. Supp. 2d 69 (D. Mass.)                                          12

*Personalized Media Communications, LLC v. Int'l Trade Comm'n*,
    161 F.3d 696 (Fed. Cir. 1998)                                         19

*Polaroid Corp. v. Eastman Kodak Co.*,
    641 F. Supp. 828 (D. Mass. 1985),
    *aff'd*, 789 F.2d 1556 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 850
    (1986)                                                                24

*Praxair, Inc. v. ATMI, Inc.*,
    2003 U.S. Dist. LEXIS 26794 (D. Del. Nov. 8, 2003) (03-1158-
    SLR)                                                                  21

*Straumann Co. v. Lifecore Biomedical Inc.*,
    278 F. Supp. 2d 130 (D. Mass. 2003)                                   26

*Tyler v. City of Boston*,
    74 U.S. 327 (1868)                                                    14

*Union Pacific Resources Co. v. Chesapeake Energy Corp.*,
    236 F.3d 684 (Fed. Cir. 2001)                                         12

<u>Statutes</u>

35 U.S.C. § 112                                                     12, 18, 19

Fed. R. Civ. P. 56(c)                                                       11

Fed. R. Civ. P. 56(e)                                                       11

## NATURE AND STAGE OF THE PROCEEDING

Seagate Technology LLC ("Seagate") filed this action on June 22, 2004, asserting that Cornice, Inc. ("Cornice") infringes U.S. Patent Nos. 5,452,159, 5,596,461, 5,600,506, 6,146,754, 6,324,054, 6,545,845 and 6,744,606 (the "'159 patent," "'461 patent," "'506 patent," "'754 patent," "'054 patent," "'845 patent" and "606 patent" respectively, or the "patents in suit"). Fact discovery was completed on June 30, 2005 and the parties have served expert reports. Trial is scheduled to begin on May 1, 2006. This is Cornice's opening brief in support of its motion for summary judgment concerning the invalidity of the '506 patent.

## SUMMARY OF ARGUMENT

Cornice submits this memorandum in support of its motion for partial summary judgment concerning two discrete issues relating to its invalidity defenses with respect to U.S. Patent No. 5,600,506 (the "'506 patent").

First, Cornice seeks a ruling that claim 22 of the '506 patent (and each claim that depends from it) is invalid under 35 U.S.C. section 112, paragraphs 1 and 2 because it fails to meet the written description and enablement requirements, and fails to claim what the applicants regard as their invention. Second, in connection with Cornice's obviousness defense with respect to all asserted claims of the '506 patent, Cornice requests that the Court rule as a matter of law with respect to any "secondary considerations" alleged by Seagate in support of the nonobviousness of any claim of the '506 patent. At a minimum, the Court should preclude Seagate's expert Dr. William Messner from offering any opinions concerning commercial success based on the proven unreliability of such opinions.

To comply with the written description and enablement requirements of Section 112, Paragraph 1 of the Patent Act, the specification of the patent must describe and enable the full scope of the claims. The entirety of the '506 patent describes and enables only a single method for how the magnetic patterns of the claimed "servo band" and "gray scale band" are used to "define radial positions" on the disk: through a transducer that reads the patterns and a "position generator" that generates from

2.

this information the position of the transducer relative to a fixed reference point on the disk. Claim 22, however, generically claims the manner in which the servo band and gray scale band are used to determine position information, reciting only that they "coact to define radial positions," and does not specify the use of a transducer or position generator. The scope of claim 22 thus far exceeds that which is described and enabled in the '506 patent. Thus, claim 22, and the claims that depend from it, are invalid under Section 112, Paragraph 1.

In addition, the entirety of the '506 patent makes clear that the "invention" is directed to the combination of "two major elements" which are interdependent: a disk recorded with specialized magnetic patterns and a "position generator" tailored to process the information in the patterns read from the disk by a transducer, and use it to generate the position of the transducer relative to the surface of the disk. However, claim 22 is directed to only the disk itself, and thus does not claim what the applicants "regard as [their] invention" as required by Section 112, Paragraph 2.

During the discovery period, Cornice sought discovery from Seagate concerning its contentions regarding any so-called "secondary considerations" of nonobviousness. Seagate never provided the requested discovery, and also refused to produce a Rule 30(b)(6) witness on alleged "commercial success," one of the secondary considerations.

REDACTED

For all these reasons, the Court should rule as a matter of law with respect to any secondary considerations alleged by Seagate in support of nonobviousness, and bar Seagate from offering evidence in support of alleged secondary considerations. At a minimum, the Court should bar Seagate's expert from offering opinions concerning alleged commercial success.

For the foregoing reasons, these matters may be readily dealt with as a matter of law, which, at a minimum, will help streamline the issues for trial.

## STATEMENT OF FACTS

### I.    THE '506 PATENT

**A.    The '506 Patent is Directed to the Servo System of a Hard Disk Drive Which Controls the Position of the Head**

Among the seven patents and 68 claims asserted in this action, Seagate alleges infringement of 25 claims of the '506 patent, including all three independent claims: 1, 22, and 33.   As described in greater detail in Cornice's Opening Claim Construction Brief Concerning U.S. Patent No. 5,600,506 ("'506 Claim Construction Brief"), the patent pertains to the servo system for a hard disk drive, which performs the function of precisely positioning the magnetic head or transducer for purposes of reading data from, or writing data to, the disk.

As the patent makes clear, the servo system encompasses a number of hardware and software elements of the hard disk drive that are used to precisely determine the radial position of the head over the disk. *E.g.*, Exh. A, '506 patent, Fig. 1.  Precise positioning of the head is essential to proper functioning of the hard disk drive.  To accomplish this, servo data, *i.e.*, specialized magnetic patterns, are permanently placed on the disk, intelligible only when read by the head and processed using specialized hardware and software.  Using the terminology of the patent, these patterns include a "servo band" and a "gray scale band," each of which is permanently recorded across the entire data-containing surface of the disk.  Exh. A, '506 Patent, col. 3:38-57.  The patent purports to use a novel relationship between this servo information and the data tracks on the disk that include user data such as application programs and files. *E.g.*, Exh. A, '506 Patent, cols. 2:2-6; 4:38-67.

**B.    The Purpose of the '506 Patent is to Determine the Precise Position of the Head Relative to the Surface of the Disk**

In order for the hard disk drive to use the servo data recorded on the disk to determine the position of the head relative to the surface of the disk, the servo system includes a means for reading the data from the disk, and electronics for processing it to derive the position of the head, including which data track it is near and its position relative to the center of the track.  The '506 patent uses the term

4.

"position generator" to describe the portion of the servo system that generates a position signal that indicates the precise location of the head.  Exh. A, '506 Patent, col. 6:30-34.  Significantly, in the system of the '506 patent the servo data on the disk and the electronics that derive the position signal from this data are not independent.  Rather, the electronics must be tailored with algorithms specific to the servo data on the disk and its relationship to the data tracks, as discussed below.

> Claim 1 is illustrative:
> 1. A system for measuring the distance of a transducer from a reference point on a disk in a sector servo disk drive system comprising:
>
> a disk surface divided into sectors where each sector comprises Z data tracks, a servo band and a gray scale band recorded across all said Z data tracks, said servo band comprising a quadrature servo pattern repeated 0.75*Z times, said gray scale band comprises 1.5*Z consecutively addressed gray scale areas; and
>
> a position generator for generating from said quadrature servo pattern and an address of a gray scale area read by a transducer in said disk drive system a signal indicating a position of said transducer relative to a fixed reference point in said gray scale band on said disk.[1]

Claim 1 comports with the purpose of the invention stated repeatedly throughout the patent – to determine "the position of a transducer relative to a disk surface," as described in the title of the '506 patent, the first sentence of the Background of the Invention ('506 Patent, col. 1:30-32), the first sentence of the Summary of the Invention (*id.* at cols. 1:66–2:2), and the first sentence of the Detailed Description of the Invention (*id.* at col. 3:22-25).

## C.    The '506 Patent Is a Combination of Two "Major Elements"

Claim 1 is also consistent with the entirety of the '506 patent, which makes clear that the "invention" includes "two major elements," the disk itself with the servo band, gray scale band, and data tracks recorded on the disk, as well as a "position generator" that "generates the position signal"

---

[1]    Claim 33, the only independent method claim, similarly includes the "transducer" and "position generator" limitations through its inclusion of the steps of "reading by said transducer [the servo data]" and "generating a position signal indicative of a distance of said transducer from said fixed reference point. . ." Exh. A, cols. 23:67-24:8.

indicative of the position of a transducer relative to the surface of the disk from the servo information on the disk. Throughout the entirety of the written description of the '506 Patent, it is abundantly clear that *both* "major elements" are necessary to achieve the purpose of the patent, and *together* comprise the "invention." For example:

- "The system [of the '506 patent] is comprised of two major elements. The first element is a disk. . .The second element is a position generator. . . ." *Id.* at Abstract.

- Summary of the Invention (*id.* at cols. 1:66-2:37), discussing both elements of the "positioning system of the invention."

- "The apparatus is comprised of two major elements, a properly encoded sector magnetic disk and a position generator." *Id.* at col. 3:26-28.

- "It is understood that each data surface of each disk in the disk drive system is a first element." *Id.* at col. 3:30-32.

- "The second element is a position generator that generates a position signal from a quadrature servo pattern of the servo band and a gray scale address read by a transducer. . ." *Id.* at col. 3:32-35.

- "Referring to FIG. 1, the first element is shown as a disk 10. . ." *Id.* at col. 3:36-37

- "As to the second element of the invention, the position generator generates for the transducer a digital position signal. . ." *Id.* at col. 6:30-32.

- "As to the first element of the invention, FIG. 8 shows seven data tracks, data track addresses 0 through 6, the quadrature servo pattern VIII of FIG. 7 . . . and the gray scale band. *Id.* at col. 11:66-12:4.

- "As to the second element of this second embodiment of the invention, the position generator has been modified." *Id.* at col. 14:34-14:35.

### D.    The Two "Major Elements" of the '506 Patent Are Not Independent Inventions

Consistent with this description, nowhere does the patent describe the individual "elements" as independent "inventions" themselves, because standing alone neither can achieve the purpose of the patent. Moreover, the two elements are interdependent, because the "position generator" must be tailored to the specific servo pattern encoded on the disk. ("The position measuring system is sensitive to the quadrature servo pattern used." Exh. A '506 patent, col. 4:11-12). Indeed, in describing the hardware and logic used to implement the position generator, the patent explains how the

6.

implementation differs for each of the 16 different servo patterns that may be used. (*E.g.*, Exh. A, '506 patent; 10:1-5 ("Since the system is sensitive to the servo pattern being used, the outputs of ANDs 114-121 will designate different zones as a function of the servo pattern selected. TABLE 2 lists the zone indicated by the output of ANDs 114-121 being high for each of the eight quadrature servo patterns.")).

Thus, the servo band and gray scale band recorded on the disk are useful only in conjunction with a transducer to read the data and a "position generator" tailored to the specific patterns in these bands so as to generate the position of the transducer relative to the surface of the disk.

### E.     Claim 22 Lacks the "Transducer" and "Position Generator," and is Not Described or Enabled in the '506 Patent

Contrary to the entirety of the written description of the "invention" of the '506 patent, claim 22 omits both the transducer and the "position generator":

> 22. A magnetic disk for use in a sector servo disk drive system, said disk having a plurality of sectors located on a surface of said magnetic disk,
>
> each sector having Z data tracks located between an inner diameter and an outer diameter on said magnetic disk,
>
> a servo band recorded across all said Z data tracks and a gray scale band recorded across all said Z data tracks, said servo band comprising a quadrature servo pattern repeated 0.75*Z times, said gray scale band comprises 1.5*Z consecutively addressed gray scale areas,
>
> where said servo band and said gray scale band coact to define radial positions on said magnetic disk from a fixed reference point in said gray scale band on the surface of said disk.

Significantly, in contrast to the entirety of the '506 patent, including the other two independent claims, claim 22 is not limited to an apparatus where the servo band and the gray scale band are used by the *position generator* to determine the "position of said *transducer* relative to a fixed reference point in said gray scale band on said disk" (claim 1), but generically recites only that the "servo band and said gray scale band *coact* to define radial positions on said magnetic disk from a fixed reference point in said gray scale band on the surface of said disk." In other words, claim 22 is not limited to any specific manner by which the servo band and gray scale band "coact to define radial positions" on the disk.

7.

However, the '506 patent nowhere describes or enables a system or method where the servo band and gray scale band "coact to define radial positions," except in combination with a transducer and position generator as recited in the other two independent claims and throughout the '506 patent.

REDACTED

This failure to describe and enable the full scope of the generically claimed apparatus of claim 22 renders this claim (and the claims that depend from it) invalid under 35 U.S.C., section 112, paragraph 1.

In addition, the clear contradiction between claim 22, directed to only the disk, and the entirety of the patent, which makes clear that the "invention" includes at least the two "major elements" of the disk and the position generator, renders claim 22 invalid for failure to claim the subject matter which the applicant "regards as his invention" in violation of 35 U.S.C. section 112, paragraph 2.

**II.     SEAGATE FAILED TO PROVIDE DISCOVERY CONCERNING ALLEGED COMMERCIAL SUCCESS OR ANY OTHER SECONDARY CONSIDERATIONS IN RESPONSE TO CORNICE'S DISCOVERY REQUESTS**

REDACTED

Exh. C, Cornice's First Set of Interrogatories at p. 8; Exh. D, Cornice's First Set of Document Requests at p. 19.

REDACTED                    Exh. E, Cornice's Third Set of Interrogatories at p. 4.

REDACTED

-

Exh. C, Cornice's First Set of Interrogatories at p. 8.

8.

REDACTED

Exh. E, Cornice's Third Set of Interrogatories at p. 4.

Seagate never provided a response to either interrogatory.[2]

REDACTED

*Id.* Putting aside

whether reliance on Rule 33(d) is even proper in response to this interrogatory,

REDACTED

Exh. F, Seagate's Responses to Cornice's Third Set of Interrogatories

at p. 16.

By June 27, 2005, Cornice had provided Seagate with detailed contentions concerning its obviousness defense to the '506 patent.  Exh G, Cornice's Supplemental Responses to Seagate's First Set of Interrogatories, Response to Interrogatory 11.  Nevertheless, Seagate did not then supplement, nor has it ever supplemented, its responses to these interrogatories.

REDACTED

Exh. S, Messner Rebuttal Report at pp. 27-29.

---

2

REDACTED

Exh. Q, Seagate's Responses

to Cornice's First Set of Interrogatories at p. 36.

Notwithstanding Seagate's failure to provide written discovery on secondary considerations, Cornice also pursued deposition discovery from Seagate concerning its alleged use of the subject matter of the '506 patent, including deposition testimony concerning documents that appeared to contain code for Seagate products (STX 173223-174503) that it alleged implemented the subject matter of the patent.  In particular, Cornice included two topics in its Notice of Deposition Pursuant to Rule 30(b)(6) served May 25, 2005 that directly relate to Seagate's allegations of commercial success:

REDACTED

Exh. H, July 25, 2005

Letter from Hudnell to Zoppo

REDACTED

During June and July 2005, Cornice complied with all of Seagate's requests for depositions of Cornice witnesses, producing four witnesses for individual depositions as well a witness to provide 30(b)(6) testimony.  Thus, Cornice anticipated that Seagate would produce its 30(b)(6) witness some time in August 2005.

When Seagate failed to provide proposed dates, Cornice reiterated its request for a deposition date on August 8, 2005, given that initial expert reports were due on August 18, 2005.  Exh. I, August 8, 2005 Letter from Zoppo to Hudnell.

REDACTED

---
3

REDACTED

Exh. R, Respondent Cornice, Inc.'s Motion To Compel Complainant Seagate Technology, LLC To Respond To Certain Interrogatories, Document Requests, Requests For Admission, And Corporate Deposition Topics.

REDACTED

10.

REDACTED

*See* Exh. J,

September 19, 2005 Letter from Rizzi to Hudnell.

REDACTED

Exh. K, September 27, 2005 letter from Hudnell to Rizzi

REDACTED

Exh. L, October 3, 2005 letter from Rizzi to Hudnell.

REDACTED

Exh. M, October 12, 2005 letter from Hudnell to Rizzi

REDACTED

**A.    Seagate Offers No Secondary Considerations Other Than Alleged Commercial Success**

The only secondary consideration that Seagate contended was applicable, and for which it provided any information whatsoever, is the alleged commercial success of Seagate hard disk drive products that supposedly incorporate the servo system of the '506 patent.

REDACTED

Exh. S, Messner Rebuttal Report at 27-29.

REDACTED
Exh. S, Messner Rebuttal Report at p. 29. In addition, Seagate

has pointed to no evidence of alleged copying in response to Cornice's discovery requests.

## ARGUMENT

### I.     LEGAL STANDARDS

Summary judgment is appropriate where there is no genuine issue as to any material fact.

Fed. R. Civ. P. 56(c); *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1569 (Fed. Cir. 1997). As the

nonmoving party, Seagate must "come forward with 'specific facts showing that there is a genuine issue

for trial'" in order to successfully oppose this motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). In other words, Seagate must come forward

with sufficient evidence for the jury to return a verdict for Seagate. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249 (1986). Conclusory statements of an expert do not create a genuine dispute of material

fact. *E.g., On-Line Tech. v. Bodenseewerk Perkin-Elmer*, 386 F.3d 1133, 1144 (Fed. Cir. 2004).

### A.     Enablement, Written Description, and Indefiniteness Are Amenable to Summary Judgment

Enablement under § 112, ¶ 1 is a question of law, based on underlying facts. *Morton*

*International, Inc. v. Cardinal Chemical Co.*, 5 F.3d 1464, 1469 (Fed. Cir. 1993) ("We review the court's

determination of lack of enablement as a question of law."); *In re Ziegler*, 992 F.2d 1197, 1200 (Fed. Cir.

1993) ("Whether disclosure is enabling is a question of law."). The related written description

requirement of § 112, ¶ 1 is technically a question of fact, but the enablement and written description

requirements "usually rise and fall together" and are amenable to summary adjudication. *See LizardTech*

*Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345-47 (Fed. Cir. 2005) (affirming summary

judgment of failure to meet enablement and written description requirements); *AK Steel Corporation v.*

*Sollac*, 344 F.3d 1234 (Fed. Cir. 2003) (affirming summary judgment of invalidity for failure to meet enablement requirement).

Indefiniteness under § 112, ¶ 2 is a question of law, and is also amenable to summary judgment. *See Union Pacific Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001) ("Whether a claim is invalid under 35 U.S.C. § 112, ¶ 2, for indefiniteness is a question of law.").

### B.    Partial Summary Judgment is Useful in Patent Cases to Streamline the Case for Trial

In addition, this Court also permits motions for partial summary judgment under Rule 56(d), and has acknowledged that in patent cases such motions "save judicial resources and [are] economical for the parties." *Freeman v. Minnesota Mining and Manufacturing Co.*, 675 F.Supp. 877, 891 (D. Del. 1987). As stated in *Coca-Cola Bottling Company of Elizabethtown, Inc. v. The Coca-Cola Company*, 654 F. Supp 1419, 1444 (D. Del. 1987), "An order under Rule 56(d) narrows the issues, enables the parties to recognize more fully their rights and yet permits the court to retain full power to make one complete adjudication on all aspects of the case when the proper time arrives." Even the Federal Circuit has recognized "the usefulness of partial summary judgments in expediting litigation." *Glaros v. H. H, Robertson Co.*, 797 F.2d 1564, 1569 (Fed. Cir. 1986).

The benefits of Rule 56(d) are particularly pertinent here, where Seagate has alleged infringement of seven patents, and twenty-five claims of the '506 patent alone. As to Cornice's motion for summary judgment of invalidity of claim 22, granting the motion would eliminate 5 claims from trial and the need for presentation of certain defenses specific to these claims. Similarly, granting Cornice's request to bar Seagate from introducing evidence of any secondary considerations in support of alleged nonobviousness would greatly simplify the presentation of Cornice's obviousness defense to the jury.

There is ample support in the law for Cornice's request. In addition to granting summary judgment of invalidity on some but not all asserted claims (*e.g., GTY Indus. v. Genlye Group, Inc.*, 1995 WL 781701 (C.D. Cal.)), district courts have considered and granted motions for partial summary judgment on a variety of non-dispositive issues in patent cases. *E.g., Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 12 F. Supp. 2d 69, 75, 87 (D. Mass.) (partial summary judgment that named

13.

inventors are not the correct inventive entity); *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 1996 WL 621835 (D. Del. 1996) (plaintiff not entitled to lost profits damages); *Joy Technologies Inc. v. Quigg*, 732 F. Supp. 227 (D.D.C. 1990) (concerning obviousness, partial summary judgment with respect to the scope and content of the prior art, the differences between the prior art and the claimed invention, and the level of ordinary skill in the art); *Glatt v. Sisco*, 136 F. Supp. 936, 938-39 (D.N.J. 1956) (court ruled which limitations of the asserted claims were in the prior art in connection with anticipation defense).

### C.    Seagate's Failure to Provide Discovery Supports Summary Judgment

Finally, in the context of a motion for summary judgment, it is entirely proper to consider the non-movant's failure to provide discovery concerning the matters for which partial summary judgment is sought. *See Merrill Lynch v. Sorac, Inc.*, 1991 WL 637106 (D.D.C. 1991) ("[T]his court will infer from defendant's failure to produce that no such documents exist. This sanction directly addresses defendants' discovery misconduct insofar as it involves facts relevant to the present motion for partial summary judgment"). Indeed, the Supreme Court has noted a "presumption that the refusal to produce evidence . . . was but an admission of the want of merit in the asserted defense." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (*quoting Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 351 (1909)).

### II.    CLAIM 22 OF THE '506 PATENT IS INVALID UNDER 35 U.S.C. SEC. 112, PARAGRAPH 1

By omitting the transducer and position generator from claim 22, and generically reciting the ability of the servo band and gray scale band to "coact to define radial positions," the applicants claimed far beyond that which is described and enabled in the '506 patent specification, rendering the claim invalid under section 112, paragraph 1.

Paragraph 1 of Section 112 of the Patent Act states as follows:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and

use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

As the Federal Circuit recently noted in *LizardTech, Inc. v. Earth Resource Mapping, Inc,* 424 F.3d 1336 (Fed. Cir. 2005), paragraph 1 of section 112 encompasses "two closely related requirements" of the specification. First, it is well-established that the patent must "enable a person of skill in the art to make and use the full scope of the invention without undue experimentation." *Id.* at 1344-45 (citing *Tyler v. City of Boston,* 74 U.S. 327, 330 (1868)); *AK Steel Corp. v. Sollac & Ugine,* 344 F.3d 1234, 1244 (Fed. Cir. 2003) ("the applicant's specification must enable one of ordinary skill in the art to practice the full scope of the claimed invention"); *see also In re Wright,* 999 F.2d 1557, 1561 (Fed. Cir. 1993) ("the PTO set forth a reasonable basis for finding that the scope of the appealed claims is not enabled by the general description and the single working example in the specification").

Second, the specification "must describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed." *LizardTech,* 424 F.3d at 1345 (citing *O'Reilly v. Morse,* 56 U.S. (15 How.) 62, 112-13 (1853)).

These statutory requirements mandate that the patent specification, at a minimum, recite "how to make and use the invention across the full breadth of the claim." *LizardTech,* 424 F.3d at 1345. Enablement is a question of law, and although it is based on underlying facts, it cannot be reasonably disputed that the '506 patent fails to enable a disk as recited in claim 22, where the servo band and gray scale band "coact to define radial positions" *without* the need for a transducer or position generator. Similarly, although the written description requirement is a question of fact, there can be no reasonable dispute that the '506 patent fails "to demonstrate that the patentee possessed the full scope of the invention recited in" claim 22. *Id.*

REDACTED

Exh. B, ITC Messner Tr. at 101, 114

15.

REDACTED

The recent *LizardTech* case is highly analogous. In *LizardTech*, the Federal Circuit affirmed summary judgment of invalidity for failure to satisfy the requirements of section 112, paragraph 1. 424 F.3d at 1346-47. The patent at issue pertained to a method for compressing digital images using "digital wave transforms" or "DWTs", and in particular a specific technique for overcoming a problem in the prior art, *i.e.*, achieving a "seamless DWT." *Id.* at 1344-45. Only one technique for obtaining a seamless DWT was disclosed in the patent. *Id.* However, unlike other claims, the claim at issue "generically" claimed a method for obtaining a seamless DWT, omitting the steps embodying the specific technique disclosed in the patent. *Id.* at 1345. The court struck down this claim as invalid under section 112, paragraph 1 as a matter of law:

> The trouble with allowing claim 21 to cover all ways of performing DWT-based compression processes that lead to a seamless DWT is that there is no support for such a broad claim in the specification. The specification provides only a single way of creating a seamless DWT, which is by maintaining sums of DWT coefficients. There is no evidence that the specification contemplates a more generic way of creating a seamless array of DWT coefficients.
>
> \*       \*       \*
>
> After reading the patent, a person of skill in the art would not understand how to make a seamless DWT generically and would not understand LizardTech to have invented a method for making a seamless DWT, except by [the specific technique disclosed in the patent].

*Id.* at 1344-45.

The court rejected LizardTech's argument that section 112, paragraph 1 requires only that each individual limitation in the claim be adequately described, noting that such an approach "would lead to sweeping, overbroad claims because it would entitle an inventor to a claim scope far greater than what a person of skill in the art would understand the inventor to possess or what a person of skill in the art would be enabled to make and use." *Id.* at 1346. The court thus concluded that "a patentee cannot always satisfy the requirements of section 112, in supporting expansive claim language, merely by clearly

describing one embodiment of the thing claimed." *Id.* Finally, the Court noted that the fact that the claim was part of the original specification did not affect the analysis, because "nothing in claim 21 or the specification constitutes an adequate and enabling description of all seamless DWTs." *Id.*

*LizardTech* is only the most recent example of well-established precedent regarding the requirements of section 112, paragraph 1. For example, in *AK Steel Corporation v. Sollac*, 344 F.3d 1234 (Fed. Cir. 2003), the claims were directed to aluminum-coated stainless steel. *Id.* at 1236. The claims were construed to cover either a Type 1 or Type 2 aluminum coating, where each "Type" represents a different aluminum alloy composition. *Id.* at 1243-44. The claims also required that the coating wet well. *Id.* at 1244. The court held that the claims were not enabled because while "[t]he specification undoubtedly enables the invention in the latter form, as it clearly describes how to make and use such strips with Type 2 aluminum, and there is no question that the resulting strips are well-wetted" it would not "enable [one of ordinary skill in the art] to make and use a steel strip containing a Type 1 aluminum coating, with the claimed wetting attributes, at the time of the '549 patent's effective filing date in 1986." *Id.* (affirming summary judgment of invalidity for failure to meet enablement requirement).

Similarly, in *In re Wright*, 999 F.2d 1557 (Fed. Cir. 1993), the claims on appeal from the PTO were directed to processes for producing live, non-pathogenic vaccines against pathogenic RNA viruses, vaccines produced by these processes, and methods of using certain of these claimed vaccines to protect living organisms against RNA viruses. *Id.* at 1559. The specification provided a general description of these processes, vaccines, and methods of use, but only a single working example. *Id.* The claims, however, were so broad that they implicitly encompassed vaccines for, *e.g.*, AIDS. *Id.* at 1562. The Federal Circuit held that the full scope of the claims was not enabled because "Wright attempts to claim in many of the appealed claims any and all live, non-pathogenic vaccines, and processes for making such vaccines, which elicit immunoprotective activity in any animal toward any RNA virus. . . .many of the appealed claims [thus] encompass vaccines against AIDS viruses and that, because of the high degree of genetic, antigenic variations in such viruses, no one has yet, years after his invention, developed a generally successful AIDS virus vaccine." *Id.*

The foregoing analysis of *LizardTech* and its predecessors applies with equal force to claim 22 of the '506 patent. Claim 22, although part of the original application for the '506 patent, does not limit *how* the "coaction" between the servo band and gray scale band occurs, and is thus far broader than what the patent describes and enables. The '506 patent describes one and only one technique for obtaining position information from the servo band and gray scale band on the disk: using a transducer to read the information and the "position generator" to process it to derive a position signal indicative of the position of the transducer relative to a fixed reference point. Nothing in the patent remotely suggests that the applicants possessed a system or method where the servo band and gray scale band generically "coact to define radial positions on the disk," or that such generic coaction is enabled by the '506 patent. *See Lizardtech*, 424 F.3d at 1344 ("There is no evidence that the specification contemplates a more generic way of creating a seamless array of DWT coefficients.").

Rather, as discussed above, the entirety of the patent makes clear that the claimed coaction occurs only in the combination of the two "major elements" (the disk and the position generator) that together comprise the alleged invention of the patent and together define the radial positions of the transducer relative to the surface of the disk. After reading the '506 patent, a person of skill in the art would not understand how to cause the servo band and gray scale band to "coact to define radial positions on said magnetic disk from a fixed reference point in said gray scale band on the surface of the disk," and would not understand the applicants to have invented a system or method for such generic coacting, except by using a transducer and "position generator" as described in the patent. *See Lizardtech*, 424 F.3d at 1345 ("After reading the patent, a person of skill in the art would not understand how to make a seamless DWT generically and would not understand LizardTech to have invented a method for making a seamless DWT, except by [the specific technique disclosed in the patent].).

18.

REDACTED

Exh. B, ITC Messner Tr. at 114

In view of the foregoing, there is no reasonable dispute that the '506 patent fails to describe or enable the full scope of the subject matter of claim 22, and that the claim is thus invalid for failure to comply with 35 U.S.C. Sec. 112, paragraph 1.

### III.    CLAIM 22 OF THE '506 PATENT IS INVALID UNDER 35 U.S.C. SEC. 112, PARAGRAPH 2

As discussed above, the purported invention of the '506 patent is a position measuring system for determining the position of a transducer relative to a disk, and consists of at least an encoded magnetic disk and a "position generator."  However, claim 22 recites only a magnetic disk with a certain servo pattern, which renders claim 22 and its dependent claims invalid under 35 U.S.C. § 112, ¶2.

---

[4]             REDACTED
                Exh. B, ITC Messner Tr. at 96.

The law requires that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶2. Failure to satisfy this provision is a question of law. *Personalized Media Communications, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 702 (Fed. Cir. 1998). Violations of section 112, paragraph occur most commonly where the claim terms do not sufficiently apprise those of skill in the art of the metes and bounds of the claim so as to permit the public to determine whether they are infringing. *E.g.*, *Morton Int'l, Inc. v. Cardinal Chem Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993).

However, this provision of the statute is also violated where it would be apparent to one of skill in the art, based on the specification, that the subject matter of a claim is not what the patentees "regarded as their invention." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002). In *Allen*, certain claims were limited to a steering mechanism that allows rotation only in a perpendicular plane. *Id.* The specification, however, was inconsistent, and stated that the mechanism *cannot* rotate in a perpendicular plane. *Id.* Because it was "apparent from a simple comparison of the claims with the specification" that the claims which recited the "incorrect 'perpendicular' limitation" did not claim what the applicant regarded as his invention, the Federal Circuit held them invalid under §112, ¶2. *Id.*

Similarly, given the clear, unequivocal statements in the written description of the patent concerning the two "major elements" that together comprise the "invention," it would be apparent to one of skill in the art that the magnetic disk alone is not what the named inventors "regarded as their invention." The entire specification makes plain that the "position generator" is the second "major element" of the combination invention of the '506 patent.

REDACTED

Exh. N, 12/10/04 Baum Depo. at 35-36.

REDACTED

Exh. N, Baum Tr. at 89-95

20.

REDACTED

Thus, claim 22, and the claims that depend from it, are also invalid for failure to comply with Section 112, Paragraph 2.

IV.  **JUDGMENT AS A MATTER OF LAW IS PROPER WITH RESPECT TO SEAGATE'S ALLEGATIONS REGARDING ALLEGED SECONDARY CONSIDERATIONS IN SUPPORT OF THE NONOBVIOUSNESS OF THE CLAIMS OF THE '506 PATENT**

Although the defendant bears the burden of proof on the issue of obviousness, the patentee bears the burden of coming forward with evidence to rebut a prima facie case of obviousness, including any facts relating to secondary considerations supporting nonobviousness. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 291-92 (Fed. Cir. 1985); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 2 USPQ.2d 1545, 1562 n.15 (D. Del. 1987) *aff'd in part, rev'd in part, vacated in part and remanded*, 849 F.2d 1430 (Fed. Cir. 1988). Here, Seagate's only apparent contention concerning secondary considerations (based on its expert's report) concerns the alleged commercial success of products implementing the servo system of the '506 patent.[5]

As an initial matter, having to date provided no information whatsoever concerning any secondary considerations other than alleged commercial success, Seagate should not be permitted to offer any evidence at trial in support of any such alleged considerations. *E.g.*, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)

Moreover, for a number of reasons discussed in greater detail below, the Court should rule as a matter of law with respect to the opinions concerning commercial success included in Seagate's rebuttal expert report. First, as discussed above, even as to commercial success, Seagate never provided

---

[5]                                                         REDACTED

Exh. S,

Messner Rebuttal Report at p. 29.

21.

Cornice its contentions during discovery, providing them only in its expert's rebuttal expert report well after the close of fact discovery. Nor did Seagate produce a witness to testify on topics pertaining to alleged commercial success, as requested by Cornice. This alone warrants a preclusion order. *Praxair, Inc. v. ATMI, Inc.*, 2003 U.S. Dist. LEXIS 26794, at *16-21 (D. Del. Nov. 8, 2005) (excluding evidence introduced over four months after the close of fact discovery on the ground that the untimely submission would violate the Scheduling Order and unduly prejudice defendant).

REDACTED

As discussed above, Seagate denied Cornice the ability to question any fact witness on those documents.

REDACTED

### A.    Seagate Documents Contradict Its Commercial Success Contention

REDACTED

Exh. S, Messner Rebuttal Report at p. 28.

REDACTED

Exh. N, Baum. Tr. 54-54; Exh. O, Touchton Tr. at 175-76; 246.

REDACTED

Exh. N, Baum Tr. at 185-87; Exh. O, Touchton Tr. at 176-77; 246-47.

22.

REDACTED

Cornice thus sought a Seagate 30(b)(6) witness to testify concerning these documents in the Delaware case:

REDACTED

However, as discussed above, Seagate initially agreed but later refused to produce a witness on these or any other topics, thus denying Cornice the ability to obtain necessary discovery concerning Seagate's commercial success contentions.

REDACTED

Exh. S, Messner Report at pp. 27-28.

REDACTED

Exh. P, Messner Tr. at 208.   Of course, it is too late to do this now.

REDACTED

Exh. P, Messner Tr. at 206-07.

REDACTED

Coupled with Seagate's gamesmanship in failing to provide needed discovery, the Court should rule as a

23.

matter of law with respect to any contentions by Seagate concerning alleged secondary considerations in support of nonobviousness, and bar Seagate from introducing any evidence of commercial success to rebut the obviousness of the claims of the '506 patent. *See Grayzel v. St. Jude Medical*, 345 F.Supp.2d 466, 480-481 (D. N.J. 2004) (rejecting expert's opinion of commercial success because it was conclusory and unsupported by the record); *Merrill Lynch v. Sorac, Inc.*, 1991 WL 637106 (D.D.C. 1991) ("[T]his court will infer from defendant's failure to produce that no such documents exist.  This sanction directly addresses defendants' discovery misconduct insofar as it involves facts relevant to the present motion for partial summary judgment"); *c.f. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) ("presumption that the refusal to produce evidence . . . was but an admission of the want of merit in the asserted defense") (*quoting Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909)).

**B.     Dr. Messner's Opinions Concerning Commercial Success Should be Precluded as Unreliable**

At a minimum, the Court should preclude Dr. Messner from testifying on the issue of commercial success under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) because his opinions do not meet the "reliability" prong of Federal Rule of Evidence 702.  *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (Rule 702 includes "three distinct substantive restrictions on the admission of expert testimony:  qualifications, reliability, and fit.").  The reliability prong requires that the expert have "good grounds" for his belief, and that his opinion not be based on "subjective belief or unsupported speculation." *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 (3rd Cir. 1994).

REDACTED

*See Izumi Products Company v. Koninlijke Phillips Electronics N.V.*, 315 F. Supp. 2d 589, 601-602 (D.

24.

Del. 2004) (Robinson, C.J.)  (barring expert testimony on infringement where expert failed to perform any testing of accused products).

      **C.**    **Dr. Messner's Opinions Concerning Commercial Success Should be Rejected Because They are Based on an Incorrect Legal Standard for the "Nexus" Requirement**

      It is well-established that to show commercial success of the patented subject matter, the patentee must make a clear showing of a nexus between the sales of its own product and the merits of the invention. *E.g., Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed. Cir. 1983).  Commercial success is relevant only if it flows from the merits of the claimed invention.  *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1027 (Fed. Cir. 1985) ("[F]or commercial success of a product embodying a claimed invention to have true relevance to the issue of nonobviousness, that success must be shown to have in some way been due to the nature of the claimed invention, as opposed to other economic and commercial factors unrelated to the technical quality of the patented subject matter. Thus, 'a nexus is required between the merits of the claimed invention and the evidence offered, if that evidence is to be given substantial weight enroute to [a] conclusion on the obviousness issue.'").  Here, the '506 patent pertains to but one aspect of a complex device, which Seagate would likely contend is covered by dozens if not hundreds of patents.  Thus, it is not sufficient to simply establish commercial success of the end product where the patent pertains to only one component within that product.  *See, e.g., Polaroid Corp. v. Eastman Kodak Co.*, 641 F. Supp. 828, 833 (D. Mass. 1985), *aff'd*, 789 F.2d 1556 (Fed. Cir. 1986), *cert. denied,* 479 U.S. 850 (1986) (holding that although the allegedly embodying product had been immensely successful, the evidence is "inadequate to permit me to assign to any one patent credit for the commercial success of the whole.").

      To establish the requisite nexus in this circumstance, absolute sales numbers are not sufficient.  Rather, the patentee must come forth with evidence showing growth in market share, increased profitability, or replacement of earlier sales by others.  *Kansas Jack, Inc.,* 719 F.2d at 1151 ("The evidence of commercial success consisted solely of the number of units sold. There was no evidence of

25.

market share, of growth in market share, of replacing earlier units sold by others or of dollar amounts, and no evidence of nexus between sales and the merits of the invention."); *see also In re Baxter Travenol Labs*, 952 F.2d 388, 392 (Fed. Cir. 1991) ("information solely on numbers of units sold is insufficient to establish commercial success."). Where, as here, Seagate had a substantial market share prior to introduction of the products that allegedly used the patented subject matter, sales figures alone do not evidence commercial success. *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 316 (Fed. Cir. 1985) ("Because [plaintiff] was clearly the market leader well before the introduction of the [embodying product], its sales figures cannot be given controlling weight in determining the effect of commercial success in this case on the question of obviousness.").

Accounting for the legally correct standard for nexus, Dr. Messner's opinion concerning commercial success is entirely superficial and conclusory.


REDACTED


Exh. S, Messner Rebuttal Report at p. 29.

REDACTED


Similarly, given Seagate's substantial market share prior to introduction of the products, it was necessary to consider how Seagate's sales compared to the sales of prior products that were replaced by the products that allegedly implemented the '506 patent. *Kansas Jack, Inc.*, 719 F.2d at 1151.    REDACTED

Exh. N, Baum Tr. at 54, 58; Exh. O, Touchton Tr. at 231.

REDACTED

26.

REDACTED

Exh. P, Messner Tr. at 217-218.

REDACTED

On this basis, summary judgment barring Seagate from offering evidence of alleged commercial success is appropriate and necessary under the circumstances to avoid prejudice to Cornice. Expert opinion that is conclusory or lacks basis in the record or law is insufficient to create a genuine issue of fact. *On-Line Tech. v. Bodenseewerk Perkin-Elmer*, 386 F.3d 1133, 1144 (Fed. Cir. 2004) (holding that an expert's conclusory assertion does not create a genuine dispute of material fact); *Grayzel v. St. Jude Medical*, 345 F.Supp.2d 466, 480-481 (D. N.J. 2004) (rejecting an expert's opinion of commercial success because it was conclusory and lacked support in the record); *Straumann Co. v. Lifecore Biomedical Inc.*, 278 F. Supp. 2d 130, 134-35 (D. Mass. 2003)

27.

(holding that expert testimony based on an improper legal standard is insufficient to defeat summary judgment).

## CONCLUSION

For all the foregoing reasons, the Court should grant Cornice's motion that claim 22 of the '506 patent is invalid under 35 U.S.C. §112, ¶¶ 1 and 2, and should bar Seagate from introducing evidence concerning alleged secondary considerations of nonobviousness. In addition, the Court should preclude Seagate's expert, Dr. Messner, from offering any opinion concerning the alleged commercial success of the subject matter of the '506 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Julia Heaney
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St., P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
*Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Redacted Filing Date: November 28, 2005

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on November 28, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.C.
> 919 N. Market Street, Suite 1100
> Wilmington, DE 19801

### BY FEDERAL EXPRESS

> Ruffin B. Cordell, Esquire
> Fish & Richardson, P.C.
> 1425 K Street, NW, Suite 1100
> Washington, DC 20005

> /s/ Julia Heaney
> Julia Heaney (#3052)
> MORRIS, NICHOLS, ARSHT & TUNNELL
> jheaney@mnat.com
> *Attorneys for Defendant and*
> *Counterclaim Plaintiff Cornice, Inc.*