# EXHIBIT 13

**Confidential Business Information**
**Subject to Protective Order**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SEAGATE TECHNOLOGY LLC, | Civil Action No. 04-418-SLR |
| Plaintiff, | |
| v. | |
| CORNICE, INC., | |
| Defendant. | |

**EXPERT REPORT OF JAMES H. MOREHOUSE, Ph.D.**
**REGARDING INVALIDITY OF U.S. PATENT 6,324,054**

**August 22, 2005**

**TABLE OF CONTENTS**

<div align="right">

**Page**

</div>

I.    INTRODUCTION ........................................................................................... 1

II.   SEAGATE WITHDREW ITS CLAIMS OF INFRINGEMENT REGARDING
      THE '054 PATENT IN THE ITC MATTER ................................................ 1

III.  BACKGROUND AND QUALIFICATIONS ................................................ 1

IV.   MATERIALS CONSIDERED ..................................................................... 4

V.    SUMMARY OF OPINIONS ........................................................................ 4

VI.   TECHNICAL BACKGROUND ................................................................... 5

    A.    Problem Facing The Industry:  Hard Drives Are Damaged When
            Mishandled ........................................................................................ 5

    B.    Problem Facing The Industry:  Minimizing The Size and Cost of Materials ........ 6

    C.    Solutions In The Prior Art For Insulating Hard Drives From Physical
            Shock ................................................................................................ 7

    D.    The Scope Of Prior Art Teachings Concerning Protective Sleeves,
            Mounts, And Coatings ...................................................................... 8

        1.    United States Patent No. 5,149,048 (Issued Sept. 22, 1992) ..................... 8

        2.    U.S. Patent No. 5,546,250 (Issued August 13, 1996) ................................ 9

        3.    U.S. Patent No. 6,002,546 (Filed on December 17, 1996, and
                  Issued on December 14, 1999) ........................................................ 12

        4.    The Integral Shock Jacket ................................................................ 13

VII.  OVERVIEW OF THE '054 PATENT .......................................................... 18

VIII. THE LEVEL OF ORDINARY SKILL IN THE ART .................................. 19

IX.   CONCEPTION DATE .................................................................................. 20

X.    CLAIM CONSTRUCTION ......................................................................... 20

    A.    Enclosure ........................................................................................... 20

    B.    "Enclosure sized to receive a disc drive therein" ............................ 21

    C.    "Shock absorbing material" ............................................................. 22

    D.    "Flexible shock absorbing material" ............................................... 24

    E.    "Critical Region" .............................................................................. 24

    F.    "Non-critical Region" ...................................................................... 26

    G.    "Corner" ............................................................................................ 27

<div align="center">

i

</div>

**TABLE OF CONTENTS**
**(continued)**

Page

H.    Summary '461 Claim Construction Chart ........................................................... 28

XI.    PRIOR ART ANALYSES ................................................................................. 32

A.    Claim 1 ............................................................................................. 35

1.    Morehouse '048 Patent ............................................................. 36

2.    Diel '250 Patent ........................................................................ 39

3.    Yagi '546 Patent ....................................................................... 42

4.    The Integral Shock Jacket ........................................................ 46

B.    Claim 2 ............................................................................................. 49

1.    Morehouse '048 Patent ............................................................. 50

2.    Diel '250 Patent ........................................................................ 51

3.    The Yagi '546 Patent ................................................................ 53

4.    The Integral Shock Jacket ........................................................ 53

C.    Claim 3 ............................................................................................. 55

1.    The Morehouse '048 Patent ...................................................... 55

2.    Diel '250 Patent ........................................................................ 56

3.    The Yagi '546 Patent ................................................................ 57

4.    The Integral Shock Jacket ........................................................ 58

D.    Claim 4 ............................................................................................. 59

1.    The Morehouse '048 Patent ...................................................... 60

2.    Diel '250 Patent ........................................................................ 61

3.    The Yagi '546 Patent ................................................................ 62

4.    The Integral Shock Jacket ........................................................ 62

E.    Claim 15 ........................................................................................... 63

1.    The Morehouse '048 Patent ...................................................... 64

2.    Diel '250 Patent ........................................................................ 67

3.    The Yagi '546 Patent ................................................................ 70

4.    The Integral Shock Jacket ........................................................ 73

F.    Claim 16 ........................................................................................... 76

1.    The Morehouse '048 Patent ...................................................... 77

ii

**TABLE OF CONTENTS**
**(continued)**

Page

  2. The Diel '250 Patent ................................................................. 78

  3. The Yagi '546 Patent ................................................................. 79

  4. The Integral Shock Jacket ......................................................... 80

 G. Claim 17 ........................................................................................ 81

  1. The Morehouse '048 Patent ....................................................... 81

  2. The Diel '250 Patent ................................................................. 82

  3. The Yagi '546 Patent ................................................................. 83

  4. The Integral Shock Jacket ......................................................... 84

 H. Claim 19 ........................................................................................ 85

  1. The Morehouse '048 Patent ....................................................... 85

  2. The Diel '250 Patent ................................................................. 89

  3. The Yagi '546 Patent ................................................................. 92

  4. The Integral Shock Jacket ......................................................... 96

 I. Claim 20 ........................................................................................ 99

  1. The Morehouse '048 Patent ....................................................... 99

  2. The Diel '250 Patent ................................................................. 100

  3. The Yagi '546 Patent ................................................................. 102

  4. The Integral Shock Jacket ......................................................... 103

 J. Claim 21 ........................................................................................ 104

  1. The Morehouse '048 Patent ....................................................... 104

  2. The Diel '250 Patent ................................................................. 106

  3. The Yagi '546 Patent ................................................................. 107

  4. The Integral Shock Jacket ......................................................... 107

 K. Claim 22 ........................................................................................ 109

  1. The Morehouse '048 Patent ....................................................... 109

  2. The Diel '250 Patent ................................................................. 110

  3. The Yagi '546 Patent ................................................................. 111

  4. The Integral Shock Jacket ......................................................... 112

XII. DR. GITIS' REBUTTAL REPORT REGARDING THE '054 PATENT FILED
IN THE ITC MATTER ............................................................................ 112

**TABLE OF CONTENTS**
**(continued)**

Page

A.    Rebuttal to Opinions Concerning the Morehouse '048 Patent ........................... 113

B.    Rebuttal to Opinions Concerning the Diel '250 Patent ..................................... 120

C.    Rebuttal to Opinions Concerning the Yagi '546 Patent.................................... 122

D.    Rebuttal to Opinions Concerning the Integral Shock Jacket ............................ 124

XIII.   OTHER OPINIONS......................................................................................... 125

XI.   RECENT TESTIMONY ....................................................................................... 125

XII.   COMPENSATION.............................................................................................. 125

XIII.   FURTHER COMMENTS..................................................................................... 125

# CONFIDENTIAL DOCUMENT

***These pages have been omitted because they contain confidential information subject to the protective order***

***There is no public version of the document that is available.***

# EXHIBIT 14

# In The Matter Of:

## *CERTAIN DISC DRIVES, COMPONENTS THEREOF, AND PRODUCTS CONTAINING SAME v.*

---

### *JAMES MOREHOUSE, Ph.D.*
### *October 20, 2005*

---

# *LEGALINK MANHATTAN*
### *420 Lexington Avenue - Suite 2108*
### *New York, NY 10170*
### *PH: 212-557-7400 / FAX: 212-692-9171*

**MOREHOUSE, Ph.D., JAMES**

# CONFIDENTIAL DOCUMENT

*These pages have been omitted because they contain confidential information subject to the protective order*

*There is no public version of the document that is available.*

# EXHIBIT 15

COPY

HIGHLY CONFIDENTIAL  ATTORNEYS AND CONSULTANTS ONLY

# MINITRANSCRIPT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CIVIL ACTION NO.  04-418 (SLR)

---

**VIDEOTAPED DEPOSITION OF:**
**DAVID W. NISS, VOLUME II**
**EXAMINATION DATE: JULY 28, 2005**

---

## SEAGATE TECHNOLOGY LLC.,,

### Plaintiff,

### v.

### CORNICE, INC.,

### Defendant.

---

### A P P E A R A N C E S

TIMOTHY W. RIFFE, ESQ.
RUSSELL S. WHEATLEY, ESQ.

# CONFIDENTIAL DOCUMENT

***These pages have been omitted because they contain confidential information subject to the protective order***

***There is no public version of the document that is available.***

# EXHIBIT 16

CONTAINS CONFIDENTIAL BUSINESS INFORMATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,

Plaintiff,

v.

C.A. No. 04-418 (SLR)

CORNICE, INC.,

Defendant.

## EXPERT REPORT OF NORM V. GITIS, PH.D.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION

# CONFIDENTIAL DOCUMENT

***These pages have been omitted because they contain confidential information subject to the protective order***

***There is no public version of the document that is available.***

# EXHIBIT 17

Confidential Business Information
Subject to Protective Order

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEAGATE TECHNOLOGY LLC,<br><br>Plaintiff,<br><br>v.<br><br>CORNICE, INC.,<br><br>Defendant. | Civil Action No. 04–418–SLR |

EXPERT REPORT OF JAMES H. MOREHOUSE, Ph.D.
REGARDING INVALIDITY OF U.S. PATENT 6,545,845

August 22, 2005

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   SEAGATE WITHDREW ITS CLAIMS OF INFRINGEMENT REGARDING
      THE '054 PATENT IN THE ITC MATTER ....................................... 1

III.  BACKGROUND AND QUALIFICATIONS ..................................... 1

IV.   MATERIALS CONSIDERED ........................................................... 4

V.    SUMMARY OF OPINIONS ............................................................ 4

VI.   TECHNICAL BACKGROUND ......................................................... 5

      A.    Problem Facing The Industry:  The Parts Of A Hard Disk Drive Must
            Remain Securely Fastened ....................................................... 5

      B.    An Example Of A Prior Art Actuator Assembly ................................. 7

      C.    The Purported Invention of the '845 Patent ....................................... 9

VII.  LEVEL OF ORDINARY SKILL IN THE ART ..................................... 11

VIII. CONCEPTION DATE ......................................................................... 12

IX.   CLAIM CONSTRUCTIONS ............................................................... 12

      D.    Retaining Clip ........................................................................... 12

            a.    A Person Of Ordinary Skill In The Art Would Not Think That A
                  "Retaining Clip" Is A Nut ................................................... 13

            b.    The Primary Infringement Dispute Is Whether A "Retaining Clip"
                  Is A Nut ............................................................................. 14

            c.    I Disagree With Dr. Gitis' Opinion That The Phrase "Retaining
                  Clip" Is So Broad That It Includes A Threaded Nut .................. 15

            d.    Dr. Gitis Agrees That The Dictionary Definition Of "Clip" Is
                  Inapplicable In Defining "Retaining Clip" ............................. 16

            e.    Dr. Gitis Has Failed To Account For The Prosecution History Of
                  The '845 Patent ................................................................. 17

            f.    Dr. Gitis Has Failed To Take Into Account The Deposition
                  Testimony Of Seagate's Inventors ......................................... 19

            g.    There Is No Support In The Patent Or Prosecution History, Or
                  Elsewhere, For A Multiple-Grooved "Retaining Clip" .............. 22

            h.    The Most Appropriate Definition Of "Retaining Clip" In The
                  Context of The '845 Patent Is A Device Such As A Snap Ring,
                  Retaining Ring Or Clip Ring ................................................ 22

i

# TABLE OF CONTENTS
## (continued)

Page

E.  "Bearing Cartridge" .......................................................................... 24

F.  Summary '845 Claim Construction Chart ........................................... 26

X.  FREDERICK STEFANSKY'S PURPORTED BEST MODE ................... 27

G.  Mr. Stefansky Preferred The Use Of A Bowed Clip ........................... 27

H.  The '845 Patent Does Not Disclose A Bowed Clip ............................. 29

I.  Persons Of Ordinary Skill Would Not Understand Stefansky's Best Mode ....... 30

XI.  COMPARISON OF THE PRIOR ART WITH THE ELEMENTS OF THE CLAIMED INVENTIONS ...................................................................... 33

XII.  AN OVERVIEW OF THE PRIOR ART REFERENCES ........................ 36

J.  U.S. Patent 4,391,035 ("the Van de Bult '035 Patent") .................... 36

K.  U.S. Patent No. 4,150,407 ("Dijkstra '407 Patent") ........................ 37

L.  JP S59-165272 ("Hitachi Patent") ................................................... 38

M.  U.S. Patent 4,805,055 ("Wright '055 Patent") ................................. 39

N.  U.S. Patent 4,713,703 ("Asano '703 Patent") .................................. 41

O.  JP S58-101361 ("Philips Patent") .................................................... 42

P.  U.S. Patent No. 4,544,973 ("the '973 Patent") ................................ 45

XIII.  A CLAIM-BY-CLAIM COMPARISON OF THE '845 PATENT AND THE PRIOR ART ........................................................................................ 47

Q.  Claim 5 .............................................................................................. 47

    i.  The Van de Bult '035 Patent .................................................. 49

    j.  The Dijkstra '407 Patent ........................................................ 51

    k.  The Hitachi Patent .................................................................. 54

    l.  The Wright '055 Patent ........................................................... 55

    m.  The Asano '703 Patent ............................................................ 58

    n.  The Philips Patent ................................................................... 62

    o.  The '973 Patent ....................................................................... 68

R.  Claim 6 .............................................................................................. 74

    p.  The Van de Bult '035 Patent .................................................. 76

    q.  The Dijkstra '407 Patent ........................................................ 76

    r.  The Hitachi Patent .................................................................. 77

**TABLE OF CONTENTS**
(continued)

Page

s.    The Wright '055 Patent ................................................................... 77

t.    The Asano '703 Patent ................................................................... 78

u.    The Philips Patent ......................................................................... 80

v.    The '973 Patent ............................................................................. 81

S.    Claim 7 ....................................................................................................... 83

w.    The Van de Bult '035 Patent ......................................................... 85

x.    The Dijkstra '407 Patent ............................................................... 85

y.    The Hitachi Patent ......................................................................... 86

z.    The Wright '055 Patent ................................................................. 86

aa.   The Asano '703 Patent ................................................................... 87

bb.   The Philips Patent ......................................................................... 88

cc.   The '973 Patent ............................................................................. 89

T.    Claim 9 ....................................................................................................... 90

dd.   The Van de Bult '035 Patent ......................................................... 92

ee.   The Dijkstra '407 Patent ............................................................... 94

ff.   The Hitachi Patent ......................................................................... 97

gg.   The Wright '055 Patent ................................................................. 99

hh.   The Asano '703 Patent ................................................................. 102

ii.   The Philips Patent ....................................................................... 106

jj.   The '973 Patent ........................................................................... 110

U.    Claim 11 ................................................................................................... 114

kk.   The Van de Bult '035 Patent ....................................................... 116

ll.   The Dijkstra '407 Patent ............................................................. 116

mm.   The Hitachi Patent ....................................................................... 117

nn.   The Wright '055 Patent ............................................................... 117

oo.   The Asano '703 Patent ................................................................. 118

pp.   The Philips Patent ....................................................................... 119

qq.   The '973 Patent ........................................................................... 121

iii

**TABLE OF CONTENTS**
**(continued)**

Page

V.     Claim 12 ................................................................................................... 123

       rr.    The Van de Bult '035 Patent ........................................................ 124

       ss.    Dijkstra '407 Patent ................................................................... 126

       tt.    The Hitachi Patent ...................................................................... 129

       uu.    The Wright '055 Patent ............................................................... 131

       vv.    The Asano '703 Patent ................................................................ 134

       ww.    The Philips Patent ...................................................................... 137

       xx.    The '973 Patent .......................................................................... 141

W.    Claim 14 ................................................................................................... 145

       yy.    The Van de Bult '035 Patent ........................................................ 146

       zz.    The Dijkstra '407 Patent ............................................................. 147

       aaa.   The Hitachi Patent ...................................................................... 147

       bbb.   The Wright '055 Patent ............................................................... 148

       ccc.   The Asano '703 Patent ................................................................ 149

       ddd.   The Philips Patent ...................................................................... 150

       eee.   The '973 Patent .......................................................................... 152

X.     Claim 15 ................................................................................................... 153

       fff.   The Van de Bult '035 Patent ........................................................ 155

       ggg.   The Dijkstra '407 Patent ............................................................. 155

       hhh.   The Hitachi Patent ...................................................................... 155

       iii.   The Wright '055 Patent ............................................................... 156

       jjj.   The Asano '703 Patent ................................................................ 156

       kkk.   The Philips Patent ...................................................................... 157

       lll.   The '973 Patent .......................................................................... 158

XIV.  DR. GITIS' REBUTTAL REPORT REGARDING THE '845 PATENT FILED
      IN THE ITC MATTER ................................................................................ 159

iv

**TABLE OF CONTENTS**
(continued)

Page

Y.    General Rebuttal to Dr. Gitis's Statements ........................................................ 159

Z.    Rebuttal to Dr. Gitis's Statements Regarding the Dijkstra '407 Patent............. 161

AA.   Rebuttal to Dr. Gitis's Statements Regarding the Hitachi Patent ...................... 165

BB.   Rebuttal to Dr. Gitis's Statements Regarding the Wright '055 Patent .............. 168

CC.   Rebuttal to Dr. Gitis's Statements Regarding the Asano '703 Patent ............... 171

DD.   Rebuttal to Dr. Gitis's Statements Regarding the Philips Patent....................... 177

XV.    RECENT TESTIMONY .................................................................................... 181

XVI.   COMPENSATION ............................................................................................ 181

XVII.  FURTHER COMMENTS.................................................................................... 181

v

# CONFIDENTIAL DOCUMENT

*These pages have been omitted because they contain confidential information subject to the protective order*

*There is no public version of the document that is available.*

# EXHIBIT 18

Confidential Business Information
Subject to Protective Order

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

SEAGATE TECHNOLOGY LLC,

        Plaintiff,

    v.

CORNICE, INC.

        Defendant.

C.A. No. 04-418 (SLR)

## REBUTTAL EXPERT REPORT OF NORM V. GITIS, PH.D.

Confidential Business Information
Subject to Protective Order

## TABLE OF CONTENTS

I.      QUALIFICATIONS and PROFESSIONAL EXPERIENCE.................................1

II.     INFORMATION CONSIDERED ......................................................1

III.    35 U.S.C. § 102 and § 103 UNDERSTANDINGS.................................2

IV.     SUMMARY OF REBUTTAL OPINIONS ...........................................2

V.      REBUTTAL OPINIONS FOR THE '054 PATENT...............................3

        A.      Conclusions Regarding the '054 Patent................................3

        B.      U.S. Patent No. 5,149,048 to Morehouse et al. ("the '048
                patent")........................................................................4

                1.      Claim 1.................................................................4

                2.      Claim 2.................................................................7

                3.      Claim 3.................................................................7

                4.      Claim 4.................................................................8

                5.      Claim 15...............................................................8

                6.      Claim 16...............................................................8

                7.      Claim 17...............................................................8

                8.      Claim 19...............................................................8

                9.      Claim 20...............................................................8

                10.     Claim 21...............................................................8

                11.     Claim 22...............................................................8

        C.      U.S. Patent No. 5,546,250 to Diel ("the '250 patent") ...............9

                1.      Claim 1.................................................................9

                2.      Claim 2.................................................................10

                3.      Claim 3.................................................................10

                4.      Claim 4.................................................................10

                5.      Claim 15...............................................................10

i

Confidential Business Information
Subject to Protective Order

6.    Claim 16......................................................................................11

7.    Claim 17......................................................................................11

8.    Claim 19......................................................................................11

9.    Claim 20......................................................................................11

10.   Claim 21......................................................................................11

11.   Claim 22......................................................................................11

D.    U.S. Patent No. 6,002,546 to Yagi et al. ("the '546 patent")...................11

1.    Claim 1........................................................................................11

2.    Claim 2........................................................................................12

3.    Claim 3........................................................................................13

4.    Claim 4........................................................................................13

5.    Claim 15......................................................................................13

6.    Claim 16......................................................................................13

7.    Claim 17......................................................................................13

8.    Claim 19......................................................................................13

9.    Claim 20......................................................................................13

10.   Claim 21......................................................................................14

11.   Claim 22......................................................................................14

E.    The Integral Shock Jacket...............................................................14

1.    Claim 1........................................................................................14

2.    Claim 2........................................................................................15

3.    Claim 3........................................................................................15

4.    Claim 4........................................................................................15

5.    Claim 15......................................................................................15

6.    Claim 16......................................................................................15

7.    Claim 17......................................................................................15

8.    Claim 19......................................................................................16

Confidential Business Information
Subject to Protective Order

9.     Claim 20 ................................................................................16

10.    Claim 21 ................................................................................16

11.    Claim 22 ................................................................................16

VI.    REBUTTAL OPINIONS FOR THE '845 PATENT ...........................16

A.    Conclusions Regarding the '845 Patent .................................16

1.    Claim Construction ...........................................................16

2.    Best Mode ........................................................................17

3.    The Asserted Prior Art References ..............................18

a.    U.S. Patent No. 4,391,035 to Van de Bult ("the '035 patent") ...........................................................19

i.    Claim 5 ..............................................................19

ii.    Claim 6 ..............................................................19

iii.    Claim 7 ..............................................................20

iv.    Claim 9 ..............................................................20

v.    Claim 11 ............................................................20

vi.    Claim 12 ............................................................20

vii.    Claim 14 ............................................................20

viii.    Claim 15 ............................................................21

b.    U.S. Patent No. 4,150,407 to Dijkstra ("the '407 patent") ...........................................................21

i.    Claim 5 ..............................................................21

ii.    Claim 6 ..............................................................21

iii.    Claim 7 ..............................................................22

iv.    Claim 9 ..............................................................22

v.    Claim 11 ............................................................22

vi.    Claim 12 ............................................................22

vii.    Claim 14 ............................................................23

viii.    Claim 15 ............................................................23

Confidential Business Information
Subject to Protective Order

c.    S59-165272 ("the Hitachi patent") ...................................23

    i.    Claim 5 ..................................................................23

    ii.    Claim 6 .................................................................24

    iii.    Claim 7 ................................................................24

    iv.    Claim 9 ................................................................24

    v.    Claim 11 ...............................................................24

    vi.    Claim 12 ..............................................................24

    vii.    Claim 14 .............................................................25

    viii.    Claim 15 ............................................................25

d.    U.S. Patent No. 4,805,055 to Wright ("the '055 patent") ............................................................................25

    i.    Claim 5 ..................................................................25

    ii.    Claim 6 .................................................................25

    iii.    Claim 7 ................................................................26

    iv.    Claim 9 ................................................................26

    v.    Claim 11 ...............................................................26

    vi.    Claim 12 ..............................................................26

    vii.    Claim 14 .............................................................26

    viii.    Claim 15 ............................................................27

e.    U.S. Patent No. 4,713,703 to Asano ("the '703 patent") ............................................................................27

    i.    Claim 5 ..................................................................27

    ii.    Claim 6 .................................................................28

    iii.    Claim 7 ................................................................28

    iv.    Claim 9 ................................................................28

    v.    Claim 11 ...............................................................29

    vi.    Claim 12 ..............................................................29

    vii.    Claim 14 .............................................................29

**Confidential Business Information**
**Subject to Protective Order**

viii.    Claim 15........................................................................29

f.    JP S58-101361 ("the Phillips patent")...........................30

i.    Claim 5.................................................................30

ii.    Claim 6.................................................................30

iii.    Claim 7.................................................................31

iv.    Claims 9, 11, 12, 14, and 15 ...............................31

g.    U.S. Patent No. 4,544,973 ("the '973 patent") ...............31

i.    Claim 5.................................................................31

ii.    Claim 6.................................................................32

iii.    Claim 7.................................................................32

iv.    Claims 9, 11, 12, 14, and 15 ...............................32

VII.    CONCLUSION........................................................................33

# CONFIDENTIAL DOCUMENT

***These pages have been omitted because they contain confidential information subject to the protective order***

***There is no public version of the document that is available.***

# EXHIBIT 19

# United States Patent [19]

## Wright

[11] Patent Number: 4,805,055

[45] Date of Patent: Feb. 14, 1989

[54] **WINCHESTER DISC DRIVE ACTUATOR STRUCTURE**

[75] Inventor: Harold T. Wright, San Carlos, Calif.

[73] Assignee: Maxtor, San Jose, Calif.

[21] Appl. No.: 893,955

[22] Filed: Oct. 20, 1986

### Related U.S. Application Data

[62] Division of Ser. No. 444,465, Nov. 24, 1986, abandoned.

[51] Int. Cl.⁴ ............................................. G11B 5/55
[52] U.S. Cl. .............................. 360/106; 360/97.01
[58] Field of Search ................................ 360/97–99, 360/105, 106

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,131,921 | 12/1978 | Gruczelak | 360/106 |
| 4,300,176 | 11/1981 | Gilovich et al. | 360/105 |
| 4,352,133 | 9/1982 | Hager | 360/106 |

#### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 55-70971 | 5/1980 | Japan | 360/106 |
| 55-67975 | 5/1980 | Japan | 360/106 |
| 1440455 | 6/1976 | United Kingdom | 360/106 |

#### OTHER PUBLICATIONS

Swartz, "Motor in spinde gives micro–Winchester room for 140M bytes," Disk Drives, pp. 143–148.
Troke et al., "An Actuator Transit Latch," IBM TDB, pp. 1986–1987, vol. 20, No. 5, Oct. 1977.
Cuzner et al., "Recording and/or Reproducing Head Assembly," IBM TDB, p. 3385, vol. 16, No. 10, Mar. 1974.

Primary Examiner—John H. Wolff
Assistant Examiner—Matthew J. Bussan
Attorney, Agent, or Firm—Blakely, Sokoloff, Taylor & Zafman

[57] **ABSTRACT**

A Winchester disc spindle construction provides a spindle motor coil wound around laminated formed annular plates and having lead wires extending through a central stationary shaft. Surrounding a spindle coil is a cylinder having a pocket for arcuate permanent magnets. The discs are fixed to and rotated by the cylinder. Relatively large bearings support the cylinder concentric with the shaft and give increased strength to the structure, permitting more discs to be supported in equivalent space, as contrasted with prior structures. The arms carrying the read-write heads are mounted on a stack of spaced-apart arms pivotted at a distance from the discs so that the heads move along a shallow arc to reduce skewing of the heads relative to the recording tracks of the discs. To reduce overall size of the drive structure (and permit such shallow arc movement) the arm actuator coil is fixed to the arms with its major axis parallel to the pivot axis, as contrasted with prior structures where the major axis of the coil is transverse to the pivot axis. The arms are statically balanced for improved action. A latch to hold the arms stationary when power is off and over-travel limit means are provided.

17 Claims, 3 Drawing Sheets





*Fig.1*



*Fig.2*



Fig. 3

Fig.4

Fig.6

Fig. 5

Fig. 7

4,805,055

1

# WINCHESTER DISC DRIVE ACTUATOR STRUCTURE

This is a (divisional) of application Ser. No. 444,465 filed 11/24/86, abandoned.

This invention relates to a new and improved "Winchester" disc drive structure.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The invention relates to improvements in the mechanical structure of the spindle which rotates Winchester discs and in the actuator for the arms which carry the read-write heads.

### 2. Description of the Prior Art

Winchester disc drives have been used in the computer industry for many years. The discs have been rotated by a spindle driven by a spindle motor. In most instances, the motor driving the spindle shaft has been located below the shaft, increasing the height of the assembly. In at least one instance, the motor has been incorporated in the spindle hub, but in such a way that the shaft rotates in bearings inside a boss fixed to, or fastened to, the base. This necessitated small bearings between the shaft and the boss. The present invention is an improvement on motor-in-spindle hub construction in that the field coils and magnets are reduced in diameter and relatively large bearings are provided improving the strength of the structure and permitting more discs to be stacked on a spindle of given height.

The heads have been mounted on arms either of a linear movement type or a pivotal movement type, the latter being the field of the present invention. The actuator which moves the head mounting arm has in the past had a coil having its major axis perpendicular to the axis of the pivot. This has considerably increased the overall length of the actuator and decreased the mass of copper which has been incorporated in the structure, correspondingly reducing the motor force.

## SUMMARY OF THE INVENTION

The disc spindle is rotatable about a stationary shaft to which laminated plates and the windings of the spindle coil are fixed. The height of the plates and spindle coil in the direction of the shaft axis is sufficiently small to permit large bearings to be installed on either end of the coil. Surrounding the coil and the bearings is a annular cylinder supported relative to the shaft by the bearings. A pocket is formed in the interior of the cylinder to receive permanent magnets which interact with the motor stator. The discs are supported in a stack on the exterior of the cylinder. By this construction, larger bearings may be used than in conventional mountings and this permits more discs in the stack and yet provides a stable structure.

Winchester discs have recording tracks on both surfaces which are read and written thereon by heads. Linear actuation of such heads has been used in the past, but the mountings and actuation of such mechanisms had inherent disadvantages (particularly static balance) as compared with the present invention. The present invention uses arms which are pivotted about an axis parallel to the axis of the rotation of the discs. The arms are located above, below and intermediate the discs and the intermediate discs had two heads, one reading the underside of one disc and the other reading the upper side of the adjacent disc. The pivot shaft has been lo-

2

cated as far from the discs as practical in order to increase the radius of the arc along which the heads travel, because this reduces the skewing of the head relative to the recording tracks. The coil of the actuator motor in the present invention is parallel to the pivot axis reducing the length of the actuator. The present invention reduces the length of the rear portion of the arms by employing an actuating coil mounted on the ends of the arms remote from the heads characterized by the fact that the coil has its major axis parallel to the pivot axis. Hence the space occupied by the arm actuator is materially reduced. In addition, means is provided on the arms for counterweights which statically balance the arms, thereby reducing or eliminating susceptibility to induced external or internal vibration. Such balancing is not feasible with linear actuators. As also pointed out in the accompanying specification, a latch is provided engageable with one of the arms to hold the arm structure stationary when power is off. Additionally, an overrun limit engages stops on one of the arms to prevent excess movement of the arms in either direction.

Other objects of the present invention will become apparent upon reading the following specification and referring to the accompanying drawings in which similar characters of reference represent corresponding parts in each of the several views:

## BRIEF DESCRIPTION OF THE DRAWINGS

In the drawings:

FIG. 1 is a top plan;

FIG. 2 is a sectional view taken substantially along line 2—2 of FIG. 1;

FIG. 3 is a fragmentary sectional view taken substantially along line 3—3 of FIG. 1;

FIG. 4 is a sectional view taken substantially along line 4—4 of FIG. 2;

FIG. 5 is a sectional view taken substantially along line 5—5 of FIG. 2;

FIG. 6 is a sectional view taken substantially along line 6—6 of FIG. 2;

FIG. 7 is a sectional view taken substantially along line 7—7 of FIG. 6.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

The mechanisms hereinafter described are contained within a housing having a base 21 which is hereinafter described as being on the bottom of the device, it being understood that the eventual mounting of the device in the equipment in which it is installed may result in the base 21 being horizontal, vertical, or in other position. Base 21 has an upstanding, substantially rectangular peripheral flange 22 extending up the entire height of the mechanism and a cover 23, which may be transparent, enclosed the top of the housing. A circuit board 25 containing electrical components may be secured below base 21.

Hub 24 on the bottom of base 21 receives and supports a vertical motor shaft 26 which supports the stator of the spindle drive motor, said stator being formed of a stack of laminated plates 27 formed with circular arc cutouts distributed around the periphery through which the copper wire windings 29 extend, all as well understood in the electric motor art. In the embodiment illustrated, shaft 26 has a hole in one end for at least a portion of its length and a radial hole 30 is provided therein for the terminals of the windings 29 which extend down through the shaft 26 and out through the hub 24. Other

4,805,055

3                                                                 4

means for the winding may be extended from the shaft may be used. These wirings are not shown since they are well understood in the art.

Top bearing 31 is positioned above the windings and bottom bearing 32 below, with spacers 33 interposed between the respective bearings and the windings 29. A feature of the invention is the fact that the motor has a stator fixed to the stationary central shaft rigidly mounted in boss 24, permitting large size bearings 31 and 32 to be used to support the rotor. A seal 34 is placed below the bearing 32 and a pair of belleville washers 36 is placed above the bearing 31, to provide axial pre-load.

Surrounding the stator of the spindle drive motor is a hollow cylinder 37 formed with a circular pocket 38 on its interior intermediate its length. Installed within the pocket 38 are the rotor magnets 39, here shown to be four arcuate ceramic magnets which are bonded in pocket 38. Cap 41 closes off the upper end of the cylinder 37 and functions as a clamp to clamp the discs 43 in place.

On the bottom of cylinder 37 is a peripheral flange 42 against which the lowermost of a plurality of Winchester discs 43 seats. The discs 43 are spaced apart by annular spacers 44 surrounding cylinder 37. As shown in FIG. 2 there are eight discs 43, which is a large number of discs, as contrasted with prior art, for a spindle of the height herein illustrated. It will be understood, however, that the number of discs 43 may be increased or decreased within the purview of the present invention. The increased bearing sizes contrasted with prior structures gives better support of the cylinder 37 permitting more discs 43 to be used than in prior structures. Below cylinder 37 is a commutation magnet 46 and mounted on base 21 below magnet 46 are "Hall Effect" sensors 47.

For each surface for each disc 43, there is a head 51 supported on the outer end of a flexible arm 52. The heads 51 are actuated by means hereinafter explained, to magnetically engage recording tracks on both surfaces of the discs 43, the heads moving between adjacent the outer periphery of the discs to adjacent the spacers 44. Inner positions of the heads 51 are shown in solid lines if FIG. 1 and outer positions are shown in phantom lines.

The uppermost head 51, which engages the recording tracks on the top surface of the uppermost disc 43, is supported by top arm 56. The lowermost head 51, which reads the recording tracks on the bottom surface of lowermost disc 43 is supported by bottom arm 57. There are, for the eight discs shown in FIG. 2, seven intermediate arms 58, each carrying two flexible arms 52, the latter carrying heads 51 which engage the under surface of one disc and the top surface of the next lowermost disc. The arms 56-58 are all mounted for oscillatory movement about pivot shaft 62 which fits into hub 61 on the bottom of base 21. Surrounding pivot shaft 62 is a hollow cylinder 66 with bearings 63 interposed between the shaft 62 and the cylinder 66 and held in place by retainer 64.

Cylinder 66 has a peripheral bottom shoulder 67 against which the bottommost arm 58 rests and a plurality of annular spacers 68 space the arms 56-58 apart in a vertical stack. Spacers 68 have extensions away from shaft 62 which function as counterweights 69. The mass of the counterweights 69 may be varied in order to statically balance the arms 56-58 about the pivot shaft 62. Vertical bolts 71, or other means, passing through

the spacers 68 hold the same in place. The lower ends of bolts 71 may be threaded into appropriate holes in shoulder 67.

Mounted in a corner of the base 21 is a "voice coil" motor 86 which actuates all of the arms 56-58. Fastened to the base 21 is a motor frame 77, consisting of vertical radial member 83 from which projects vertical outer pole 78, intermediate or center pole 79 and inner pole 81, each of which is arcuate in shape, having its inner and outer radii concentric with pivot shaft 62. The poles 78, 79 and 81 are radially spaced apart. The lower edges of poles 79 and 81 are elevated above motor frame 67 to provide clearance for the end of 98 of bottom arm 57. On inside of outer pole opposite 78 is outer magnet 86 and on the outside of inner pole 81 is end magnet 87. The ends of the poles opposite member 83 are closed off by end piece 82, which greatly improves the flux-carrying capability, thereby reducing center pole projected area and wasted coil length. Winding 91 shown in detail in FIG. 3 consists of a vertically elongated coil of wire which straddles the center pole 79. The winding 91 is formed around a mandrel (not shown and removed after manufacture of the coil) and permanently held in position having relatively square top and bottom and elongated sides. The top and bottom of coil 91 are held in caps 92 which fit through appropriate holes in arms 56 and 57 and are located by flanges 93. The passage of electric current through the windings 91 in cooperation with the magnetic flux of the permanent magnets 86, 87 causes the winding 91 to provide force in an arcuate path along the center pole 79 and this, in turn, causes the arms 56-58 to rotate around pivot shaft 62.

The ends 96 of intermediate arms 58 are truncated in arcuate shape to clear pole 81. The inner end 97 of top arm 56 is formed with slot 99 which receives the cap 92, while the inner end 98 of bottom arm 57 is formed with a similar slot 99 to receive the corresponding cap 92 at the bottom of winding 91.

Screwed, or otherwise attached, to base 21 is a resilient over-travel bumper 101. Bottom arm 57 has an extension providing two stop surfaces 102 and 103 which engage the bumper 101 to limit the rotary movement of arm 57, and the other arms as well, so that the heads 51 traverse only the portions of the discs 43 which carry recording tracks.

Latch 106 is provided to hold the arms 56-58 stationary during storage or, preferably, at any time when the power to the device is off. For such purpose a frame 107 is attached to the base 21 carrying an electro-magnetic coil 108. Pivotted to frame 107 is a clapper 109 held in outward position by spring 111. The bottom arm 57 is formed with a notch 113 in which the outer end of the clapper 109 fits when the coil 108 is deenergized, preventing movement of arm 57. When the power is on, the coil 108 is energized retracting the clapper 109 so that it disengages the notch 113, permitting the arms 56-58 to rotate under the influence of the motor 76.

What is claimed is:

1. An improved apparatus for positioning read/write heads with respect to rotating disk media in a disk drive comprising:

an arm assembly including head support means for supporting and positioning read/write heads at a first end of said arm assembly, and actuator support means at a second end of said arm assembly;

pivot means having a pivot axis for pivotally supporting said arm assembly with respect to said disks, said head support means extending from a first side

4,805,055

5

of said pivot means and said actuator support means extending from a second side of said pivot means;

positioning motor means disposed adjacent to said second end of second arm assembly including:

first and second stationary magnet means; said first and second magnet means each comprising an elongated permanent magnet means having a longitudinal axis and at least one arcuate face; said arcuate face having a central axis of curvature parallel to said longitudinal axis of said permanent magnet means; said arcuate face of said first magnet means being convex; said arcuate face of said second magnet means being concave; the radius of curvature of said concave face of said second magnet means being greater than the radius of curvature of said convex face of said first magnet means;

means for supporting said first and second magnet means such that said axes of curvature of said arcuate faces of said first and second magnet means coincide with said pivot axis of said arm assembly such that said arcuate faces of said first and second magnet means are spaced apart from each other along a radius centered at said pivot axis; and

an electromagnetic coil having a cross section with a major axis and a minor axis secured to said actuator support means and disposed between said first and second magnet means such that said major axis is parallel to said pivot axis of said arm assembly; whereby read/write heads are selectably positionable upon the application of selected electromotive force to said coil.

2. The apparatus of claimed in claim 1 wherein said means for supporting said first and second magnet means comprises a substantially "E"-shaped frame having arcuate pole members spaced apart from each other along a radius centered at said pivot axis of said arm assembly projecting from a base member of said frame, including:

an intermediate arcuate pole member;

an inner arcuate pole member which fixedly supports said first magnet means such that said arcuate face of said magnet means faces said intermediate arcuate pole member;

an outer arcuate pole member which fixedly supports said second magnet means such that said arcuate face of said second magnet means faces said intermediate pole member; and

means for affixing said frame in a stationary position with respect to said electromagnetic coil.

3. The apparatus as claimed in claim 2 wherein said substantially "E"-shaped arcuate frame is rigidly affixed to a base of said disk drive.

4. The apparatus as claimed in claim 2 wherein said intermediate pole member is disposed through said electromagnetic coil such that said coil is movable along the arcuate length of at least some portion of said intermediate pole member upon the application of electromotive force to said coil.

5. The apparatus as claimed in claim 2 further comprising a pole member end cap affixed to the ends of said pole members.

6. The apparatus as claimed in claim 1 wherein said electromagnetic coil is substantially rectangular in cross section.

7. The apparatus as claimed in claim 1 wherein said actuator support means comprises an upper arm section and a lower arm section, said sections being vertically

6

separated and rigidly interconnected, each said section having a cut-out portion at the terminus thereof forming a pair of opposing fingers on each said upper and lower arm section for fixedly receiving coil support members to which the transverse ends of said coil are respectively secured.

8. The apparatus as claimed in claim 1 wherein said arm assembly comprises a plurality of spaced apart arms means for supporting and positioning a plurality of associated magnetic heads along the surface of a plurality of rotating spaced apart disks in said disk drive.

9. The apparatus as claimed in claim 8 wherein said arm assembly further comprises counterweight means for balancing said arm assembly with respect to said pivot axis.

10. The apparatus as claimed in claim 9 wherein said counterweight means comprises a plurality of spaced apart counterweight sections interposed and fixedly secured between said plurality of said arm means for statically balancing said arm assembly about said pivot axis, said counter weight sections extending towards said second end of said arm assembly from a plurality of corresponding spacers interposed between said plurality of said arm means adjacent said pivot means.

11. The apparatus as claimed in claim 1 wherein said pivot means comprises a pivot shaft securely mounted substantially perpendicular to base of said disk drive and pivotally engaged with a corresponding pivot aperture defined in said arm assembly between said head support means and said actuator support means.

12. The apparatus as claimed in claim 1 further comprising arm assembly limit means for limiting the rotation of said arm assembly whereby the travel range of said read/write heads is limited to a preselected radial distance across the surface of said disks.

13. The apparatus as claimed in claim 1 further comprising means for latchably constraining said arm assembly with respect to a base of said disk drive, said latch means being rigidly interconnected to said arm assembly and said base of said disk drive upon latchable engagement thereof.

14. An improved actuator motor for selectively positioning a read/write positioning assembly in a disk drive including rotating disk media, read/write heads for traversing the surface thereof and reading and writing information thereto, and a movable positioning arm assembly connected to said read/write heads for locating said heads across the surface of said rotating disk media comprising:

an actuator arm means for interconnection with said positioning arm assembly;

pivot means having a pivot axis for pivotally supporting said actuator arm means and said positioning arm assembly such that said positioning arm assembly projects from a first side of said pivot means and said actuator arm means projects from a second side of said pivot means;

first and second stationary magnet means; said first and second magnet means each comprising an elongated permanent magnet means having a longitudinal axis and a least one arcuate face said arcuate face having an axis of curvature parallel to said longitudinal axis of said permanent magnet means; said arcuate face of said first magnet means being convex; said arcuate face of said second magnet means being concave; the radius of curvature of said concave of face said second magnet means

4,805,055

7

being greater than the radius of curvature of said convex face of said first magnet means;

means for supporting said first and second magnet means such that said axes of curvature of said arcuate faces of said first and second magnet means coincide with said pivot axis of said arm assembly such that said arcuate faces of said first and second magnet means are spaced apart from each other along a radius centered at said pivot axis; and

an electromagnetic coil having a cross section with a major axis and a minor axis secured to said actuator arms means and disposed between said first and second magnet means such that said major axis is substantially parallel to said pivot axis.

15. The apparatus as claimed in claim 14 wherein said means for supporting said first and second magnet means comprises a substantially "e"-shaped arcuate frame having arcuate pole members spaced apart from each other along a radius centered at said pivot axis including:

an intermediate arcuate pole member disposed through said electromagnetic coil such that said coil is movable along the arcuate length of at least some portion of said intermediate pole member;

an inner arcuate pole member which supports said first magnet means such that said arcuate face of said first magnet means faces said intermediate pole member;

8

and an outer arcuate pole member which supports said second magnet means such that said arcuate face of said second magnet means faces said intermediate pole member, whereby said electromagnetic coil is selectively positioned along said intermediate pole member upon the application off a selected motor force to said coil.

16. The apparatus as claimed in claim 15 wherein said electromagnetic coil is substantially rectangular in cross section.

17. A head actuator arm assembly including a first end and a second end, said first end including head support means extending therefrom affixed for supporting read/write heads;

pivot means disposed between said first and said second end of said head actuator arm assembly having a pivot axis for pivotally supporting said arm assembly with respect to said disks;

coil support means extending from said second end of said actuator arm assembly having an electromagnetic coil wound thereon; means including at least one substantially arcuate magnet, the arcuate surface thereof being the primary operative surface of said magnet providing an electromagnetic field in which said electromagnetic coil moves;

whereby said read/write heads are selectably positionable with respect to said rotating disk media upon the application of electromotive force to said coil.

* * * * *

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

**PATENT NO. :** 4,805,055

**DATED :** February 14, 1989

**INVENTOR(S) :** Wright

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below: On the title page:

Item [73]    ', under "Assignee:", after "Maxtor", insert --Corporation--.

Item [62]    , under "Related U.S. Application Data", delete "1986" and insert place thereof --1982--.

In column 1, line 5, delete "(divisional)" and insert in place thereof --divisional--.

In column 1, line 6, delete "11/24/86" and insert in place thereof --11/24/82--.

In column 2, line 55, delete "enclosed" and insert in place thereof --enclosing--.

In column 3, line 44, delete "if" and insert in place thereof --in--.

In column 4, line 13, after the word "end", delete "of".

In column 5, line 33, delete "of" and insert in place thereof "as".

In column 6, line 8, delete "arms" and insert in place thereof "arm".

In column 7, line 18, delete "'e'-shaped" and insert in place thereof --"E"-shaped--.

In column 8, line 6, delete "off" and insert in place thereof --of--.

Signed and Sealed this

Twenty-sixth Day of October, 1993

*Bruce Lehman*

**BRUCE LEHMAN**

Attest:

*Attesting Officer*

*Commissioner of Patents and Trademarks*

# EXHIBIT 20

Application/Control Number: 10/104,698                                                          Page 3
Art Unit: 2652

Claims 1-11 are rejected under 35 U.S.C. 102(e) as being anticipated by Wright (US
4,805,05).

As per claim 1, Wright (US 4,805,05) discloses a disc drive assembly (FIG. 1) having a
base plate (21), at least one disc (43) rotatably mounted on the base plate (21) for rotation about
a spin axis (about shaft (26)), and an actuator assembly (including (56)) mounted adjacent the at
least one disc (43) positioning a plurality of read/write heads (51) over predetermined radial
positions on the at least one disc (43), the actuator assembly comprising: an actuator arm (56)
pivotally supported from the base plate (21) for rotation about an actuator axis parallel to the spin
axis (about shaft (62)), wherein the actuator arm (56) carries the heads (51) at one end thereof
and a generally flat voice coil (91) at an opposite end of the actuator arm (56) and has a central
axial bore (into which sleeve (66)) is inserted) therethrough; a bearing cartridge (including (66))
disposed in the central axial bore; and a retaining clip (64) (see, e.g., COL. 3, lines 57-60 and cf.
FIGS. 1 and 2) engaging a portion of the bearing cartridge (including (66)) to fasten the actuator
arm (56) to the bearing cartridge (including (66)).

As per claims 2, 6, wherein the bearing cartridge (including (66)) has a bottom radial
flange (67) and the actuator (56) is captured between the bottom radial flange (67) and the
retaining clip (64).

As per claim 3, wherein the retaining clip (64) has a "C" shape (see FIG. 1).

As per claims 4, 7, wherein the retaining clip (64) engages a groove at an upper end of
the bearing cartridge (see FIG. 2).

Additionally, as per claim 5, the actuator assembly positioning a transducer (51) over a
rotating data storage disc (43) in the disc drive, the actuator assembly (including (56)) further

STX 000765

# EXHIBIT 21



S/N 10/104,698

<div align="right">

PATENT

Confirmation No. 8292

</div>

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| Applicant: | Wallis A. Dague, et al. | Examiner: | William Joseph Klimowicz |
|---|---|---|---|
| Serial No.: | 10/104,698 | Group Art Unit: | 2652 |
| Filed: | March 22, 2002 | Docket No.: | STL4061.17/40046.24USD3 |
| Title: | ACTUATOR ASSEMBLY RETAINING CLIP | | |

CERTIFICATE UNDER 37 CFR 1.10

'Express Mail' mailing label number: EV073470606US
Date of Deposit: December 23, 2002

I hereby certify that this paper or fee is being deposited with the United States Postal Service 'Express Mail Post Office To Addressee' service under 37 CFR 1.10 on the date indicated above and is addressed to the Commissioner for Patents, Washington, D.C. 20231.

By: _____
Name: Mary C. Notter

<div align="center">

**AMENDMENT**

</div>

RECEIVED

DEC 3 0 2002

Technology Center 2600

Box AF
Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

This amendment is responsive to the final Office Action mailed on October 23, 2002 setting a three month shortened statutory period for response expiring on January 23, 2002. Please amend the application as follows.

**IN THE CLAIMS:**

Please amend claims 12, 14, 15 and 16 to read as set forth below.

12. (Amended)     In a disc drive data storage device having a base plate, a spin motor mounted to the base plate carrying a storage disc rotatably mounted on the spin motor for rotation about an axis, and an actuator assembly mounted on a stationary post having an axis parallel to the disc spin axis adjacent the storage disc, the actuator assembly comprising:

an actuator arm having a pivot portion having a central bore, a distal end supporting a transducer operably positioned over the storage disc, and a proximal end carrying a voice coil; and

a bearing cartridge retained in the central bore of the actuator arm by a generally circular retaining clip engaging the bearing cartridge and securing the actuator arm to the bearing cartridge.



14. (Amended)     The actuator assembly according to claim 12 wherein the bearing cartridge has a bottom flange and a peripheral groove at an upper end receiving the clip to secure the actuator arm to the cartridge between the flange and the retaining clip.

15. (Amended)     The actuator assembly according to claim 14 wherein the bearing cartridge is fastened to the stationary post on the base plate of the disc drive.

16. (Amended)     The actuator assembly according to claim 12 wherein the pivot portion of the actuator arm has a plurality of integral actuator arms extending from the pivot portion.

## REMARKS

The examiner's thorough consideration of the application is appreciated. However, reconsideration and withdrawal of the claim rejections is respectfully requested for the following reasons.

Claims 12-16 stand rejected under 35 USC 112. Claims 12, 14, 15 and 16 have been amended to obviate the rejection under 35 USC 112. Specifically, claims 12, 14 and 15 have been amended to remove specific reference to the inner and outer sleeves of the bearing cartridge. Claim 16 has been amended to clarify that the pivot portion is part of the actuator arm, not part of the bearing cartridge. These amended claims obviate the rejection under 35 USC 112, and thus this rejection should now be withdrawn.

Claims 1-16 stand rejected as anticipated by Wright. The examiner asserts that the retaining clip 64 engages "a portion of the bearing cartridge to fasten the actuator arm 56 to the bearing cartridge", and therefore meets all the limitations of Applicants' independent claim 1. In support of this position, the examiner takes the position that the washer is part of the bearing cartridge.

Applicants respectfully traverse this assertion and the rejection. Wright Figs. 1 and 2 clearly show the retaining ring 64 fastened to the stationary post 62. It is the examiner's position in the Office Action that the bearing cartridge of Wright comprises the cylinder 66, upper and lower bearings 63, and the washer (un-numbered). Assuming this position is correct, the retaining ring 64 holds the bearing cartridge on the post 62. Specifically, the retaining ring 64 engages the washer on the top of the upper bearing 63 to hold the "bearing cartridge" assembly of bearings 63, the washer, and the cylinder 66 on the post 62. The examiner is respectfully requested to note that the actuator arms 56 and spacers 69 are stacked on the flange 67 of the cylinder 66 and captured on the "bearing cartridge" by vertical bolts 71 which thread into the bottom flange 67 of the cylinder 66. Thus the "bearing cartridge" is fastened to the actuator arms by the bolts 71. The retaining clip 64 clearly does not engage "a portion of the bearing cartridge to fasten the actuator arm 56 to the bearing cartridge". The retaining clip 64 engages a portion of the bearing cartridge to fasten the bearing cartridge to the stationary post 62.

In stark contrast, in Applicants' claimed invention, the bearing cartridge (62 and 362) is fastened to the actuator arm (40 and 340) by the clip ring (63 and 363). See Applicants' specification, pages 11, lines 21-25 and page 24, lines 3-7. Applicants' independent claim 1 and

3

claim 12 each specifically recites that the retaining ring **engages a portion of the bearing cartridge to fasten the actuator arm to the bearing cartridge.** Wright does not meet this specific limitation. In Wright, the retaining ring engages a portion of the bearing cartridge to fasten the bearing cartridge to the stationary post. The rejection under 35 USC 102(b) is improper and should be withdrawn.

Claims 1-16 remain pending in the application. These claims are clearly allowable over Wright and thus a Notice of Allowance is earnestly solicited. This response is believed to fully respond to each point raised in the final Office Action. Should the examiner have any remaining questions or concerns, he is encouraged to contact the undersigned attorney by telephone to expeditiously resolve such concerns.

Respectfully submitted,

Seagate Technology LLC
(Assignee of the entire interest)

12/23/02
Date

John R. Wahl, Reg. No. 33,044
Merchant & Gould P.C.
P.O. Box 2903
Minneapolis, MN 55402-0903
(303) 357-1644
(303) 357-1641 (fax)

23552
PATENT TRADEMARK OFFICE

4

# EXHIBIT 22

Second College Edition

The
# American Heritage
## Dictionary

Words that are believed to be registered trademarks
have been checked with authoritative sources. No in-
vestigation has been made of common-law trademark
rights in any word, because such investigation is im-
practicable. Words that are known to have current
registrations are shown with an initial capital and are
also identified as trademarks. The inclusion of any
word in this Dictionary is not, however, an expres-
sion of the Publisher's opinion as to whether or not it
is subject to proprietary rights. Indeed, no definition
in this Dictionary is to be regarded as affecting the
validity of any trademark.

Copyright © 1982, 1985 by Houghton Mifflin Com-
pany. All rights reserved. No part of this work may be
reproduced or transmitted in any form or by any
means, electronic or mechanical, including photo-
copying and recording, or by any information storage
or retrieval system, except as may be expressly per-
mitted by the 1976 Copyright Act or in writing by the
Publisher.

All correspondence and inquiries should be directed to
Reference Division, Houghton Mifflin Company
One Beacon Street, Boston, MA 02108

Library of Congress Cataloging in Publication Data
Main entry under title:
American Heritage dictionary.
   Rev. ed. of: American Heritage dictionary of the
English language. New college ed. c1976.
   1. English language—Dictionaries.   I. Morris,
William, 1913–
PE1625.A54   1982      423      82-9346
ISBN 0-395-32943-4
ISBN 0-395-32944-2 (thumb index)
ISBN 0-395-33959-6 (deluxe edition)

Manufactured in the United States of America

repeatedly. **b.** To bend (a joint). **c.** To bend (a joint) repeatedly. **2.** To contract (a muscle). —*intr.* To bend: *His hands flexed nervously.* —*n.* Chiefly *Brit.* Electric cord. [Lat. *flectere, flex-,* to bend.]

**flex·a·gon** (flĕk'sə-gŏn') *n.* A folded paper construction capable of being flexed along its folds to alternately reveal and conceal its faces. [FLEX + *-agon,* as in *pentagon.*]

**flex·i·ble** (flĕk'sə-bəl) *adj.* **1.** Capable of being bent or flexed; pliable. **2.** Susceptible to influence or persuasion; tractable. **3.** Responsive to change; adaptable: *a flexible schedule.* —**flex'i·bil'i·ty, flex'i·ble·ness** *n.* —**flex'i·bly** *adv.*

*Synonyms: flexible, malleable, ductile, plastic, pliable, pliant, supple, adaptable.* These adjectives are applied to what can readily undergo change or modification. *Flexible* refers to the ability of a thing to be bent, twisted, or turned without breaking, or the ability of persons or things to accommodate to another's wishes, changing conditions, or the like. *Malleable* is applied, literally and figuratively, to capacity for being shaped by or as if by tools. *Ductile* describes the capacity of certain metals to be drawn out or hammered thin, or of certain liquids to be channeled readily. *Plastic* refers to capacity for being molded or modeled after the fashion of plaster or clay. *Pliable* and *pliant* refer to things or materials that can be changed in shape without breaking. Applied to persons, *pliant* indicates readiness to accommodate to change or the wishes of another, and *pliable* may imply tendency to be influenced easily or to be dominated. *Supple* is applied to objects that can bend in many places without damage, or figuratively to what responds readily to change or external influence. *Adaptable* refers to the capacity of persons and things to assume modified form or to change or adjust in other respects in response to new circumstances.

**flex·ile** (flĕk'səl, -sīl') *adj.* Flexible.

**flex·ion** (flĕk'shən) *n.* **1.** Also **flec·tion.** *Anat.* **a.** The act of bending. **b.** The condition of being bent. **2.** A part that is bent. **3.** Inflection (sense 2). [Lat. *flexio,* a bending < *flectere,* to bend.]

**flex·or** (flĕk'sər) *n.* A muscle that acts to flex a joint. [NLat. < Lat. *flexus,* p.part. of *flectere,* to bend.]

**flex·time** (flĕks'tīm') *n.* An arrangement by which employees may set their own work schedules, as starting and finishing hours. [FLEX(IBLE) + TIME.]

**flex·u·ous** (flĕk'shoo-əs) *adj.* Bending or winding alternately from side to side. [Lat. *flexuosus < flexus,* p.part. of *flectere,* to bend.] —**flex'u·ous·ly** *adv.*

**flex·ure** (flĕk'shər) *n.* **1.** A bend, curve, or turn. **2.** The act or an instance of bending or flexing. —**flex'ur·al** *adj.*

**fley** (flā) *tr.v.* **fleyed, fley·ing, fleys.** *Scot.* To frighten. [ME *fleien* < OE *flēgan.*]

**flib·ber·ti·gib·bet** (flĭb'ər-tē-jĭb'ĭt) *n.* A silly, scatterbrained, or garrulous person. [ME *flibbergebet.*]

**flick** (flĭk) *n.* **1.** A light, quick blow, jerk, or touch. **2.** The sound accompanying a flick. **3.** A light splash, dash, or daub. —*v.* **flicked, flick·ing, flicks.** —*tr.* **1.** To touch or hit with a light, quick blow: *flicked him with his hand.* **2.** To cause to move with a light blow; snap: *flicked the light switch on.* **3.** To remove with a light, quick blow: *flicked the lint off her coat.* —*intr.* To twitch or flutter. [Imit.]

**flick** (flĭk) *n. Informal.* A motion picture. [Back-formation < FLICKER[1].]

**flick·er** (flĭk'ər) *v.* **-ered, -er·ing, -ers.** —*intr.* **1.** To move waveringly; flutter: *shadows flickering on the wall.* **2.** To burn unsteadily or fitfully. —*tr.* To cause to flicker. —*n.* **1.** A brief movement; tremor. **2.** An incessant or wavering light. **3.** A brief or slight sensation. **4.** *Slang.* A motion picture. [ME *flikeren* < OE *flicerian.*]

**flick·er** (flĭk'ər) *n.* Any of several large North American woodpeckers of the genus *Colaptes,* having a brownish back and a spotted breast. [Perh. < FLICK.]

**flick·er·tail** (flĭk'ər-tāl') *n.* A ground squirrel, *Citellus richardsonii,* of western North America.

**flied** (flīd) *v.* Past tense and past participle of *fly[1]* (sense 7).

**fli·er** also **fly·er** (flī'ər) *n.* **1.** One that flies, esp. an airplane pilot. **2.** A step in a straight stairway. **3.** *Informal.* A daring venture. **4.** A speculative or circular for mass distribution.

**flight** (flīt) *n.* **1. a.** The motion of an object in or through a medium, esp. through the earth's atmosphere or through space. **b.** An instance of such motion. **c.** The distance covered in such motion. **2. a.** The act or process of flying through the air by means of wings. **b.** The ability to fly. **3. a.** A passage or movement. **4.** A scheduled airline run or trip. **b.** A group, esp. of birds or aircraft, flying together. **5.** A number of aircraft in the U.S. Air Force forming a subdivision of a squadron. **7.** A brilliant and extraordinary effort or display: *a flight of the imagination.* **8.** A series of stairs rising from one landing to another. —*intr.v.* **flight·ed, flight·ing, flights.** To migrate or fly in flocks. [ME < OE *flyht.*]

**flight** (flīt) *n.* The act or an instance of running away. [ME < OE *flyht.*]

**flight at·tend·ant** *n.* An attendant who assists passengers in an airplane.

**flight bag** *n.* A lightweight, flexible piece of luggage with outside pockets.

**flight deck** *n.* **1.** The upper deck of an aircraft carrier, used as a runway. **2.** An elevated compartment in certain aircraft, used by the pilot, copilot, and flight engineer.

**flight engineer** *n.* The crew member responsible for the mechanical performance of an aircraft flight.

**flight feather** *n.* One of the comparatively large, stiff feathers of a bird's wing or tail that are necessary for flight.

**flight·less** (flīt'lĭs) *adj.* Incapable of flying, as certain birds.

**flight surgeon** *n.* An air force medical officer who specializes in aviation medicine.

**flight-test** (flīt'tĕst') *tr.v.* **-test·ed, -test·ing, -tests.** To test (an aircraft, for example) during flight.

**flight·y** (flī'tē) *adj.* **-i·er, -i·est. 1. a.** Given to capricious or unstable behavior. **b.** Marked by irresponsible or silly behavior. **2.** Easily excited; skittish. —**flight'i·ly** *adv.* —**flight'i·ness** *n.*

**flim-flam** (flĭm'flăm') *Informal.* —*n.* **1.** Nonsense; humbug. **2.** A deception; swindle. —*tr.v.* **-flammed, -flam·ming, -flams.** To swindle. [Prob. of Scand. orig.]

**flim·sy** (flĭm'zē) *adj.* **-si·er, -si·est. 1.** Light, thin, and insubstantial: *a flimsy fabric.* **2.** Lacking solidity or strength: *a flimsy table.* **3.** Lacking plausibility; unconvincing: *a flimsy theory.* —*n., pl.* **-sies. 1.** Thin paper usually used to make multiple copies. **2.** Something written on flimsy. [Orig. unknown.] —**flim'si·ly** *adv.* —**flim'si·ness** *n.*

**flinch** (flĭnch) *intr.v.* **flinched, flinch·ing, flinch·es. 1.** To start or wince involuntarily, as from surprise or pain. **2.** To draw away; retreat. —*n.* An act or instance of flinching. [OFr. *flenchir.*] —**flinch'er** *n.* —**flinch'ing·ly** *adv.*

**flin·ders** (flĭn'dərz) *pl.n.* Bits, fragments, or splinters. [ME *flendris,* perh. of Scand. orig.]

**fling** (flĭng) *v.* **flung** (flŭng)**, fling·ing, flings.** —*tr.* **1.** To throw with violence: *flung the dish against the wall.* **2.** To put or send suddenly or unexpectedly: *an army flung into battle.* **3.** To throw (oneself) into some activity with abandon and energy. **4.** To toss aside; discard: *fling propriety away.* —*intr.* To make a fling at it. [ME *flingen,* of Scand. orig.] —*n.* **1.** An act of flinging. **2.** A brief period of indulging one's impulses; spree. **3.** *Informal.* A usually brief attempt or effort: *You take a fling at it.* [ME *flingen,* of Scand. orig.]

**Flink·ite** (flĭng'kīt') *n.* A brownish-green mineral of manganese arsenate. [After Gustaf *Flink* (d. 1931).]

**flint** (flĭnt) *n.* **1.** A very hard, fine-grained quartz that sparks when struck with steel. **2.** A piece of flint used as a tool by primitive man. **3.** A small solid cylinder of a sparkproducing alloy, used in lighters to ignite the fuel. **4.** Something like flint in hardness: *a jaw of flint.* [ME < OE.]

**flint corn** *n.* A variety of corn, *Zea mays indurata,* having small, hard seeds.

**flint disease** *n.* Pneumonoconiosis caused by the prolonged inhalation of stone dust.

**flint glass** *n.* A soft, fusible, lustrous, brilliant lead-oxide optical glass with high refraction and low dispersion.

**flint·head** (flĭnt'hĕd') *n.* The wood ibis.

**flint·lock** (flĭnt'lŏk') *n.* **1.** An obsolete gunlock in which a flint embedded in the hammer produces a spark that ignites the charge. **2.** A firearm having a flintlock.

**flint·y** (flĭn'tē) *adj.* **-i·er, -i·est. 1.** Containing or composed of flint. **2.** Unyielding; stern. —**flint'i·ly** *adv.* —**flint'i·ness** *n.*

**flip** (flĭp) *v.* **flipped, flip·ping, flips.** —*tr.* **1.** To throw with a brisk motion: *flipped me the ball.* **2.** To toss in the air, imparting a spin: *flip a coin.* **3.** To reverse or overturn quickly and effortlessly. —*intr.* **1.** To strike quickly or lightly, as with a snap of the fingers. **2.** To move suddenly or jerkily. **3.** To turn a somersault in the air. **4.** *Slang.* **a.** To go crazy. **b.** To react strongly and esp. enthusiastically: *She flipped over the new car.* —*n.* **A.** An act of flipping, esp.: **a.** A fillip or tap. **b.** A quick, jerky movement. **c.** A somersault. **2.** A mixed drink made with any of various alcoholic beverages and often including beaten eggs. —*adj. Informal.* **1.** Marked by disrespect; impertinent. **2.** Marked by unconcern; indifferent. [Perh. imit.]

**flip chart** *n.* A chart consisting of sheets hinged that can be flipped over to present information

**flip-flop** (flĭp'flŏp') *n.* **1.** The movement of repeated flapping: *the flip-flop of sandals.* **2. a.** A backward somersault or handspring. **b.** A reversal, as of opinion. **4.** *Electronics.* An electronic or mechanical device capable of assuming either of two stable states and used in computers, counting, etc. —*intr.v.* —*tr.v.* —**flip·flop'** *v.* (-flop-), *-ping.* *Informal.*

**flip·pant** (flĭp'ənt) *adj.* **1.** Marked by disrespectful levity; indifference. **2.** Archaic...

**flip·per** (flĭp'ər) *n.* **1.** ...of a seal, adapted for swimming with a flat...

**flip side** *n.* ...forward fro...

**flirt** (flûrt) *v.* ... fully roma... or provok... abruptly o... move quick... jerking mo... —**flirt·a·tion**

**flir·ta·tion** (flûr-tā'shən) *n.* ... valve / w with / y yes / z zebra, size / ... / KH Ger. ich, *Scot.* loch/ N Fr. bon.





fossil
Fossilized fern fronds

flintlock
Late 18th-century
American

G H · I J · K L · M N