IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,    )
                           )
              Plaintiff,   )
                           )
       v.                  )          Civil Action No. 04-418-SLR
                           )
CORNICE, INC.              )          **REDACTED VERSION**
                           )
              Defendant.   )
                           )

## DEFENDANT CORNICE, INC.'S OPENING CLAIM
## CONSTRUCTION BRIEF FOR U.S. PATENT NO. 6,324,054

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com
    *Attorneys for Defendant and Counterclaim Plaintiff*
    *Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000

Original Filing Date:  November 18, 2005

Redacted Filing Date:  November 28, 2005

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS .................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDING ...................................................... 1

SUMMARY OF ARGUMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 2

    I.     TECHNICAL BACKGROUND ........................................................... 2

        A.  Problem Facing The Industry: Hard Drives Are Damaged When Mishandled ............................................................................................. 2

        B.  Problem Facing The Industry:  Minimizing The Size And Cost Of Materials ............................................................................................... 3

        C.  Prior Art Solutions For Insulating Hard Drives From Physical Shock ... 4

    II.    THE '054 PATENT AND CORNICE'S ACCUSED PRODUCT ............. 4

ARGUMENT ..................................................................................................................... 6

    I.     "CRITICAL REGION" AND "NON-CRITICAL REGION" ................. 6

        A.  The Specification Indicates A Region Is "Critical" Based On Its Likelihood Of Receiving a Shock Event ............................................... 7

        B.  The Extrinsic Evidence Is Also Consistent With Cornice's Constructions ... 8

        C.  Seagate's Proposed Constructions Are Contrary To The Evidence ...... 8

        D.  Cornice's Constructions Are Consistent With The Understanding Of One Of Ordinary Skill In The Art ........................................................ 9

    II.    "SHOCK ABSORBING MATERIAL" AND "FLEXIBLE SHOCK ABSORBING MATERIAL" .................................................................. 9

    III.   "ENCLOSURE" AND "ENCLOSURE SIZED TO RECEIVE A DISC DRIVE THEREIN" ........................................................................... 11

        A.  The Specification Supports Cornice's Constructions, And Seagate Offers No Alternative Constructions ....................................................... 11

        B.  Cornice's Constructions Are Consistent With The Understanding Of One Of Ordinary Skill In The Art ........................................................ 12

    IV.   "CORNER" ......................................................................................... 13

CONCLUSION ................................................................................................................ 13

ii.

<u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

<u>Statutes</u>

35 U.S.C. § 102(b)                                          6

## NATURE AND STAGE OF THE PROCEEDING

Seagate Technology LLC ("Seagate") brought this action against Cornice, Inc. ("Cornice") for infringement of seven patents on June 22, 2004. In accordance with the Scheduling Order, the parties are filing a Joint Claim Construction Statement on the seven patents-in-suit today. Cornice is submitting this Opening Claim Construction Brief in support of its constructions of certain claim terms of U.S. Patent No. 6,324,054 ("the '054 patent"), and separate claim construction briefs addressing each of the other six patents-in-suit.

The '054 patent was also at issue in the co-pending ITC Investigation. In that action, the parties exchanged expert reports on invalidity and noninfringement, and Cornice moved for summary judgment in its favor. Four days after receiving Cornice's rebuttal expert report, and before the ITC could rule on Cornice's summary judgment motion, Seagate unilaterally withdrew the '054 patent from the ITC action. Nevertheless, Seagate continues to assert the '054 patent in this action, using the same claim constructions and infringement allegations that it abandoned in the ITC.

## SUMMARY OF ARGUMENT

The parties have proposed competing constructions for two terms from the '054 patent: (1) "critical region," and (2) "non-critical region." Cornice has offered proposed constructions for five additional terms in dispute that Seagate prefers not to be construed by the Court (presumably for the same reasons it dropped this patent from suit in the ITC action): "shock absorbing material," "flexible shock absorbing material," "enclosure," "enclosure sized to receive a disc drive therein," and "corner." Cornice proposes the following constructions for the claim terms at issue:

| Claim Language | Cornice's Proposed Construction |
|---|---|
| "critical region"<br>[cls. 1, 2, 6, 7, 10, 15, 19, 20] | The term "critical region" means "a region of the disk drive that is relatively sensitive to vibration and shock accelerations because most shock loadings during handling and transport are focused there." |
| "non-critical region"<br>[cls. 1, 6, 10, 15, 19] | The term "non-critical region" means "a region of the disk drive that is relatively insensitive to vibration and shock accelerations because it receives less shock loading during handling mishaps." |

| Claim Language | Cornice's Proposed Construction |
|---|---|
| "shock absorbing material"<br><br>[cls. 1, 4, 6, 10, 15, 17, 19, 22] | The term "shock absorbing material" means "a material that is suited for widening a shock pulse and reducing its maximum amplitude." |
| "flexible shock absorbing material"<br>[cls. 15, 17, 19, 22] | The term "flexible shock absorbing material" means "a shock absorbing material that is able to bend without breaking." |
| "enclosure"<br>[cls. 1, 5, 6, 10, 11, 12, 15, 18, 19] | The term "enclosure" means "something that encloses, meaning to shut in all around or to surround." |
| "enclosure sized to receive a disc drive therein"<br><br>[cls. 1, 15, 19] | The phrase "enclosure sized to receive a disc drive therein" means "the enclosure must be sized to contain a disk drive." |
| "corner"<br>[cls. 2, 7, 11, 20] | The term "corner" means "the point or place where lines or surfaces join and form an angle." |

## STATEMENT OF FACTS

## I.   TECHNICAL BACKGROUND

### A.   Problem Facing The Industry: Hard Drives Are Damaged When Mishandled

Computer hard drives are sensitive devices that can be easily damaged if dropped or otherwise handled roughly.  Exhibit A, Expert Report of James H. Morehouse, Ph.D. Regarding Invalidity of U.S. Patent No. 6,324,054 ("Morehouse '054 Invalidty Report"[1]) at ¶ 16.  Several kinds of damage can occur when hard drives are mishandled, including the following:

Slapping of the read/write head against the disk.  Hard drives contain a spinning disk that has vast numbers of extremely tiny tracks that contain data (similar to a conventional phonograph record and player, albeit on a much smaller scale).  *Id.* at ¶ 17.  Hard drives contain a head that moves across the disk and reads the data contained in the tracks, or writes data into the tracks.  *Id.*  If the hard drive is dropped, banged, or otherwise physically mishandled, the head can slap against the disk, which can cause data loss and potentially destroy the drive altogether.  *Id.*

---

[1]    The original Morehouse '054 Invalidity Report is          REDACTED          A copy of that report is being filed as "Exhibit A" to the Appendix To Cornice's Opening Claim Construction Brief For U.S. Patent No. 6,324,054, with unnecessary Exhibits thereto removed as not being relevant to the claim construction issues herein.  Exhibits to the Morehouse '054 Invalidity Report are cited herein as "Exhibit A-__".  For example, the '054 patent is attached as Exhibit 4 to the Morehouse '054 Invalidity Report and cited herein as "Exhibit A-4".

Deformation of bearings.  The disk of the hard drive rotates about a spindle that contains a number of bearings.  *Id.* at ¶ 18.  If the hard drive is physically mishandled, the bearings can deform, causing the disk to wobble as it rotates.  *Id.*  Deformed (or "brinelled") bearings can cause tracking problems in the hard drive, and can cause the drive to become noisy.  *Id.*

The hazards posed by mishandling of drives have become more and more critical with the trend in the industry of making devices portable, and thus more prone to shock events.  *Id.* at ¶ 19.  In laptop computers, portable music players, and other portable computer devices, users routinely mishandle the drives.  *Id.*  The mishandling can occur when the drive is being handled outside the computer (*i.e.*, when it is being shipped, or otherwise swapped out of the computer), and can occur when the hard drive is installed in the computer.  *Id.*  Well before 1998 (the earliest priority date of the '054 patent), people of ordinary skill in the industry had been motivated to develop numerous ways to insulate hard drives from physical shock when mishandled.  *Id.*

**B.      Problem Facing The Industry:  Minimizing The Size And Cost Of Materials**

The computer industry is highly competitive.  *Id.* at ¶ 20.  As such, there are constant demands to minimize the cost of materials being used.  *Id.*  Furthermore, there is constant pressure in the industry to minimize the amount of materials being used, both to minimize the cost of goods, and also to streamline products as driven by demand for more compact goods.  *Id.*

In designing protective devices to insulate hard drives from shock, persons of ordinary skill in the art in 1998 were well aware of the need to make these protective devices as efficiently as possible.  *Id.* at ¶ 21.  To do so, it was important to identify the most vulnerable portions of hard drives, and to ensure that the protective devices were adequate to protect those most critical regions.  *Id.*  Where possible, persons of skill in the art were aware that the designs could be crafted to minimize costs of materials and bulk by using lesser amounts of materials for protecting less sensitive parts of hard disk drives.  *Id.*

4.

The corners of hard drives are especially prone to impact. *Id.* at ¶ 22. This is a basic fact of the geometry of hard drives and other similarly shaped devices. *Id.* If a hard drive falls, it is most likely to land on a corner.[2] *Id.* Therefore, by 1998, persons of ordinary skill in the art were well aware that it was important to pay special attention to protecting the corners of hard drives from shock. *Id.*

### C.    Prior Art Solutions For Insulating Hard Drives From Physical Shock

Well before 1998, the computer industry had developed ways to insulate hard drives from physical shock, generally falling into two categories: "hardening" and "mitigation." *Id.* at ¶ 23.

Hardening. By 1998, one way that the computer industry had attempted to protect hard drives was to "harden" the drives. *Id.* at ¶ 24. "Hardening" hard drives refers to improving the overall architecture of the hard drives to prevent physical shocks from disrupting the drive. *Id.*

Protective Sleeves or Mounts. Well before the '054 patent, the computer industry had also developed ways to prevent physical shocks from entering hard drives. *Id.* at ¶ 25. These devices typically consisted of protective sleeves or mounts that could be slipped over the hard drive during shipping or other handling of the hard drives, or to protect the drives when installed in a computer. *Id.* The purpose of these devices was to insulate the hard drive from shocks and ensure that any force that does reach the hard drive is distributed over a larger area to minimize impact on sensitive portions of hard drives. *Id.* This method of protection is called "mitigation."

## II.    THE '054 PATENT AND CORNICE'S ACCUSED PRODUCT

The '054 Patent issued on November 27, 2001 and is entitled "Wrap Around Shock Absorber for Disc Drives." As discussed more fully herein, the purported invention of the '054 Patent is a

---

[2]    This follows from observing that a standard hard drive enclosure has six faces (hexahedron). For the drive to fall perfectly onto one of those faces, it must be precisely aligned in one of those 6 orientations. Any one of the nearly infinite other orientations will result in the drive impacting a corner, whether it be the intersection of two or three surfaces. Exhibit A, Morehouse '054 Invalidity Report at p. 6, n. 4.

shock absorbing "enclosure" for "encapsulating" a hard disc drive that is thicker at "critical regions" of the drive than at "non-critical regions." *See, e.g.*, '054 Patent, claim 1. Below is a picture of the patent's wrap around shock absorber, both with and without a disk drive inserted:



The Cornice products accused of infringing the '054 patent have no wrap around shock absorber, but instead have discrete pieces of residual gasket material and hard plastic corners, none of which absorb shock or were intended as such:



The parties have offered competing constructions for two claim terms:  (1) "critical region," and (2) "non-critical region."  Cornice has offered proposed constructions for five additional terms in dispute that Seagate prefers not to be construed by the Court (presumably for the same reasons it dropped this patent from suit in the ITC action[3]):  "shock absorbing material," "flexible shock absorbing material," "enclosure," "enclosure sized to receive a disc drive therein," and "corner."

---

[3]    Seagate dropped the patent in the ITC action *after* it received Cornice's expert reports on noninfringement and invalidity and *before* it was required to file its opposition to Cornice's
(continued . . .)

6.

## ARGUMENT

For a discussion of the legal standards for claim construction, please refer to Cornice's

Opening Claim Construction Brief for U.S. Patent No. 6,146,754.

## I.    "CRITICAL REGION" AND "NON-CRITICAL REGION"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "critical region" [cls. 1, 2, 6, 7, 10, 15, 19, 20] | The term "critical region" means "a region of the disk drive that is relatively sensitive to vibration and shock accelerations because most shock loadings during handling and transport are focused there." | A region of the disc drive that is relatively sensitive to vibration and shock accelerations. The region is critical based on whether external vibrations or shock delivered to that region are more likely to result in drive failure or damage, than in non-critical regions. |
| "non-critical region" [cls. 1, 6, 10, 15, 19] | The term "non-critical region" means "a region of the disk drive that is relatively insensitive to vibration and shock accelerations because it receives less shock loading during handling mishaps." | A region of the disc drive that is relatively insensitive to vibration and shock during unpredictable events. |

At the heart of the dispute over these terms is whether a region of the disk drive is

"critical" because it is more likely to receive a shock event (probability-based), or because the drive is

more susceptible to damage when the shock event occurs there (effect-based).  The prior art discloses

numerous shock absorbing jackets like the one disclosed and claimed in the '054 patent.  For example:

---

(. . . continued)

Motion for Summary Determination of Patent Invalidity of U.S. Patent No. 6,324,054 Pursuant to 35 U.S.C. § 102(b).  For additional background on the '054 patent and relevant prior art, see a copy of that motion attached at Exhibit B.



Figure 7 of Exhibit A-6, Morehouse U.S. Patent No. 5,149,048.

Seagate attempts to distinguish these prior art references on the basis that the jacket designs might be the same as what is claimed, but without information about the proclivities of the disk drive contained within those jackets (and in particular, what areas of the drive are "critical regions"), it is ostensibly impossible to determine if, for example, the prior art shows thicker rubber around those regions of the drive. In other words, according to Seagate's construction, the exact same "wrap around shock absorber" either can or cannot infringe, depending on what type of disk drive is placed within it. Cornice disagrees, since as demonstrated below the patent supports a construction of "critical region" based on the likelihood of sustaining an impact, which in the case of a rectangular shape will be the corners of the drive. Therefore under Cornice's construction, Seagate cannot distinguish prior art references that are identical to the claimed shock absorbing apparatus in every way relevant to the asserted claims.

## A.      The Specification Indicates A Region Is "Critical" Based On Its Likelihood Of Receiving a Shock Event

The specification of '054 Patent provides sufficient context to explain the meaning of "critical region." Initially, it tersely defines a "critical region" as those regions "more susceptible to being damaged by external vibrations or shocks." Exhibit A-4, '054 Patent, Col. 4:51-52. Later, the '054 Patent provides additional explanation:

> These corner portions . . . are thicker than the side walls and the top and bottom portions so as to absorb larger shock loads, since *most shock loadings that occur during transport and handling of the system are*

> *focused on the corner portions* of the body 606. These are the typical critical regions in a disc drive. Exhibit A-4, '054 Patent, Col. 6:40-47.

Thus because different areas of the drive can have a greater probability of receiving an impact during handling or transport, those areas are "critical". As such, the '054 patent teaches that these critical regions should receive additional protection, such as thicker shock absorbing material. The patent's discussion of non-critical regions is consistent with Cornice's probability-based construction: "these side, end, top and bottom portions experience less shock loading during unpredictable events such as table drops and corner drops and other handling mishaps and are thus non-critical regions." Exhibit A-4, '054 Patent, Col. 6:50-54. Again, this characterization is sensible because a hard drive is a rigid structure, and thus, shock received in one area is distributed to all areas. Therefore, no particular region of hard drive is less sensitive to a shock event, but some areas of the drive can have a lesser *probability* of receiving an impact during a handling mishap. The '054 patent thus explains that non-critical regions are those regions least likely to a receive a shock loading during transport or handling, and thus require less protection.

**B.     The Extrinsic Evidence Is Also Consistent With Cornice's Constructions**

Mr. Chee, named inventor of the '054 Patent,                 REDACTED


                                    REDACTED
                                                            Exhibit A-15, Chee Tr.
at 73 (emphasis added).                              REDACTED

          REDACTED                        *Id.*

**C.     Seagate's Proposed Constructions Are Contrary To The Evidence**

Seagate's effect-based construction of "critical region" is thus inconsistent with its own specification and inventor's testimony. In particular, Seagate ignores (1) language in the specification which explains that a "critical region" is related to the probability of impact and (2) the reality that disk drives are rigid structures, and that a shock delivered in one region, is transmitted to the entire structure. Moreover, Seagate's construction fails to account for the fact that a shock can be delivered to a given

location from a variety of different directions, each potentially having a different "effect" on the drive. Thus under Seagate's construction, a given region of the drive could be either "critical" or "non-critical" simply based on the testing methodology employed. Notably, the patent nowhere discusses the type of comparative-testing for different regions of the drive that Seagate now claims is essential to determining whether these limitations are satisfied.

### D. Cornice's Constructions Are Consistent With The Understanding Of One Of Ordinary Skill In The Art

Finally, one of ordinary skill in the art in the 1998 timeframe would understand the terms "critical region" and "non-critical region" as used in the claims of the '054 patent to be consistent with Cornice's proposed construction. *See* Exhibit A, Morehouse '054 Invalidity Report" at ¶¶ 70-78; Exhibit C, Rebuttal Expert Report of James H. Morehouse Ph.D. Regarding the Noninfringement of U.S. Patent No. 6,324,054 at ¶¶ 49-53, 55 (Morehouse '054 Rebuttal Report[4]).

## II. "SHOCK ABSORBING MATERIAL" AND "FLEXIBLE SHOCK ABSORBING MATERIAL"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "shock absorbing material" [cls. 1, 4, 6, 10, 15, 17, 19, 22] | The term "shock absorbing material" means "a material that is suited for widening a shock pulse and reducing its maximum amplitude." | None |
| "flexible shock absorbing material" [cls. 15, 17, 19, 22] | The term "flexible shock absorbing material" means "a shock absorbing material that is able to bend without breaking." | None |

Seagate offers no constructions for these terms, and the '054 patent does not explicitly define them, but it does explain the function that the material should provide. "Unlike many conventional shock absorbers, the shock absorbing material 300 is designed to isolate a disc drive from unpredictable

---

[4]    A copy of the Morehouse '054 Rebuttal Report is being filed as "Exhibit C" to the Appendix To Cornice's Opening Claim Construction Brief For U.S. Patent No. 6,324,054, with unnecessary Exhibits thereto removed as not being relevant to the claim construction issues herein.

vibrations and shocks. In particular, the shock absorbing material 300 is designed to pass rigorous shock testing methods, such as the tilt drop test and the table top [sic] test." Exhibit A-4, '054 Patent, Col. 5:6-11. The '054 Patent further explains:

> FIGS. 6 and 7 shows the performance of the shock absorbing material 300 in an exemplary tilt drop test. . . .FIG. 6 shows that the drive with the shock absorbing material 300 has a shock pulse that peaks at 21.914 Gs 506. FIG. 7 shows that the drive without the shock absorbing material 300 has a shock pulse that peaks at 109.8 Gs 508. As observed, the shock absorbing material 300 has the potential of reducing an unpredictable input shock by up to 80% (21.914 Gs 506 vs. 109.8 Gs 508). Furthermore, the shock pulse produced using the shock absorbing material 300 is wider than the shock pulse produced without the use of the shock absorbing material (572 microseconds 510 vs. 183 microseconds 512). As the shock impulse widens, the frequency content is reduced. A reduced frequency content represents a lower probability that stiff structures (e.g., the actuator 216) will be affected during a vibration.

Exhibit A-4, '461 Patent, Col. 5:39-61. For a material to effectively widen a shock pulse with respect to time and reduce its maximum amplitude (also known as "shock mitigation"), it must be sufficiently soft such that an impact causes it to deform. The deformation of the material during impact is the mechanism by which the shock pulse is mitigated. Because compressing the material during impact takes a certain amount of time, the deceleration is spread out over that time, mitigating the shock. Mr. Chee, named inventor of the '054 Patent,                     REDACTED

          REDACTED                     Exhibit A-15, Chee Depo Tr. at 42-43.

Also, "*a* shock absorbing material" must be a single material. The '054 Patent consistently uses the phrase "a shock absorbing material" in the singular, and does not disclose or suggest combining different materials to arrive at a shock absorber apparatus. In fact, in discussing possible shock absorbing materials, the '054 patent suggests using only one type of material at a time. See, e.g., Exhibit A-4, '054 Patent, col. 4:65-66 ("The shock absorbing material 330 may be made of natural or synthetic rubber (or its compounds) or plastic.").

As for "flexible shock absorbing material," the '054 Patent specification does not even use the term "flexible," let alone provide a definition. Thus Cornice contends the claims use the term

"flexible" in its ordinary, common sense. Referring to a dictionary, the ordinary meaning of "flexible" is "able to bend without breaking; not stiff or rigid; easily bent; pliant." Exhibit A-13, Webster's New World College Dictionary (3d ed. 1997). Thus, this limitation should be construed as "a shock absorbing material that is able to bend without breaking."

Finally, one of ordinary skill in the art in the 1998 timeframe would understand the terms "shock absorbing material" and "flexible shock absorbing material" as used in the claims of the '054 patent to be consistent with Cornice's proposed construction. *See* Exhibit A, Morehouse '054 Invalidity Report at ¶¶ 63-66; Exhibit C, Morehouse '054 Rebuttal Report at ¶¶ 31-32, 39-40.

## III.    "ENCLOSURE" AND "ENCLOSURE SIZED TO RECEIVE A DISC DRIVE THEREIN"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "enclosure" [cls. 1, 5, 6, 10, 11, 12, 15, 18, 19] | The term "enclosure" means "something that encloses, meaning to shut in all around or to surround." | None |
| "enclosure sized to receive a disc drive therein"  [cls. 1, 15, 19] | The phrase "enclosure sized to receive a disc drive therein" means "the enclosure must be sized to contain a disk drive." | None |

### A.    The Specification Supports Cornice's Constructions, And Seagate Offers No Alternative Constructions

Cornice's constructions are based on the plain and ordinary meaning of the terms, which one would gather by reading the specification and the claim language. The claim language calls out an enclosure "for encapsulating." Because the claim itself calls out the purpose of the "enclosure," it serves as a guidepost for the proper construction. Indeed, the specification and figures illustrate a disk drive (200) "encapsulated" by shock absorbing jacket (e.g., 300 or 602). The shock absorbing material covers substantially every area of the disk drive, and the only apertures are those necessary to insert the disk drive into the shock absorbing jacket and provide access to the mounting features and connectors. *See* Exhibit A-4, '054 Patent, col. 4:47-49; 6:16-19; 6:61-65; and 6:66-7:6. Given this context, the proper

12.

construction of enclosure is "something that encloses, meaning to shut in all around or to surround."[5] The definition of "enclose" is "to shut in all around; hem in; fence in; surround." Exhibit A-13, Webster's New World College Dictionary, 3d ed., 1997.

As described in the '054 patent, the claimed shock absorbing apparatus is an enclosure for receiving a disk drive. For example, in the Abstract the inventors state that "[t]he shock absorber apparatus for a disc drive is a molded polymeric enclosure adapted to receive and retain a disc drive." Consistent with the specification of the '054 patent, the plain and ordinary meaning of "receive" is to "to have room for; hold; contain." Exhibit A-13, Webster's New World College Dictionary (3d ed. 1997). Indeed, every disclosed embodiment is directed at a shock absorber that is designed to receive and contain a disk drive. *See* Exh. A-4, '054 Patent at Figs. 3-4, 8-14 (illustrating the shock absorbing jacket configured to receive a disk drive in its central cavity).

Testimony from Mr. Chee, a named inventor of the '054 patent,         REDACTED

REDACTED

REDACTED         Exhibit A-15, Chee Tr. at 268 (emphasis added). Because Cornice's constructions are consistent with and supported by the intrinsic evidence, and because Seagate offers no alternative constructions, Cornice's proposed constructions of these terms should be adopted.

### B.    Cornice's Constructions Are Consistent With The Understanding Of One Of Ordinary Skill In The Art

Finally, one of ordinary skill in the art in the 1998 timeframe would understand the terms "enclosure" and "enclosure sized to receive a disc drive therein" as used in the claims of the '054 patent to be consistent with Cornice's proposed construction. *See* Exhibit A, Morehouse '054 Invalidity Report at ¶¶ 55-62; Exhibit C, Morehouse '054 Rebuttal Report at ¶¶ 24-25.

---

[5]     Cornice's proposed construction thus does not require complete, 100% coverage on all sides.

## IV.     "CORNER"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "corner" [cls. 2, 7, 11, 20.] | The term "corner" means "the point or place where lines or surfaces join and form an angle." | None |

Once again, Seagate offers no construction for this term, nor is it defined in the '054 Patent.  Cornice contends that "corner" should be given its plain and ordinary meaning: "the point or place where lines or surfaces join and form an angle."  Exhibit A-13, Webster's New World College Dictionary (3d ed. 1997).  Furthermore, one of ordinary skill in the art in the 1988 timeframe would understand the terms "shock absorbing material" and "flexible shock absorbing material" as used in the claims of the '054 patent to be consistent with Cornice's proposed construction.  *See* Exhibit A, Morehouse '054 Invalidity Report at ¶¶ 79-81.

## CONCLUSION

For the foregoing reasons, the Court should adopt Cornice's proposed constructions for the claim limitations of the '054 patent.

OF COUNSEL:
Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Redacted Filing Date: November 28, 2005

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Julia Heaney
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com
*Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on November 28, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC  20005

/s/ Julia Heaney
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL
jheaney@mnat.com
 Attorneys for Defendant and
 Counterclaim Plaintiff Cornice, Inc.