IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,          )
                                 )
              Plaintiff,         )
                                 )
       v.                        )        Civil Action No. 04-418-SLR
                                 )
CORNICE, INC.                    )        **REDACTED VERSION**
                                 )
              Defendant.         )

**DEFENDANT CORNICE, INC.'S OPENING CLAIM CONSTRUCTION
BRIEF FOR U.S. PATENT NO. 6,744,606**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Defendant and Counterclaim Plaintiff Cornice,
Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Original Filing Date: November 18, 2005

Redacted Filing Date: November 28, 2005

i.

TABLE OF CONTENTS

Page

TABLE OF CITATIONS     iii

NATURE AND STAGE OF THE PROCEEDING     1

SUMMARY OF ARGUMENT     1

STATEMENT OF FACTS     2

I.     TECHNICAL BACKGROUND     2

    A.     Problem In The Industry: Designing Disk Drive Components To Fit Into Small Space-Efficient Disk Drives     2

    B.     The Purported Invention Of The '606 Patent is a "Dual Plane Actuator"     5

    C.     The ITC Construed Several Claim Terms Consistently with Cornice's Proposed Constructions     7

    D.     Overview Of Prior Art: Seagate's "Dual Plane Actuator" Design Is Not New     8

ARGUMENT     10

I.     "SINGLE ARM [SUPPORT] PORTION"     10

    A.     The Specification Demonstrates That The Patent Is Not Limited To Single-Disk, Single-Arm Designs     10

    B.     Seagate's Arguments Do Not Withstand Scrutiny     11

       1.     The "Background Of The Invention" Supports Cornice's Construction     11

       2.     There Is No Evidence That The Specification's References To "Arms" Is A Typographical Error As Seagate Contends     11

       3.     The Examiner's Statement of Reasons Does Not Support Seagate's Construction.     12

       4.     Cornice's Construction Is Consistent With The Understanding Of One Of Ordinary Skill In The Art     13

ii.

<u>TABLE OF CONTENTS</u> (continued)

<u>Page</u>

II.   "STEP PORTION"                                              13

III.  "MEANS FOR POSITIONING THE COIL SUPPORT
      PORTION AND THE ARM PORTION AT DIFFERENT
      DISTANCES FROM THE BASE"                                    14

CONCLUSION                                                        14

iii.

## TABLE OF CITATIONS

Page(s)

Cases

*ACCO Brands, Inc. v. Micro Security Devices, Inc.,*
    346 F.3d 1075 (Fed. Cir. 2003)                                    12

*ASM America, Inc. v. Genus, Inc.,*
    401 F.3d 1340 (Fed. Cir. 2005)                                    .11

*Bell Atlantic Network Services, Inc. v. Covad Communications Group,*
    *Inc.,* 262 F.3d 1258 (Fed. Cir. 2001)                            12

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,*
    849 F.2d 1430 (Fed. Cir. 1988), *cert. denied,* 488 U.S. 986
    (1988)                                                            12

Statutes

35 U.S.C. § 112                                                     2, 14

## NATURE AND STAGE OF THE PROCEEDING

Seagate Technology LLC ("Seagate") brought this action against Cornice, Inc. ("Cornice") for infringement of seven patents on June 22, 2004. In accordance with the Scheduling Order, the parties are filing a Joint Claim Construction Statement on the seven patents-in-suit today. Cornice is submitting this Opening Claim Construction Brief in support of its constructions of four disputed claim terms in U.S. Patent No. 6,744,606 ("the '606 patent"), and separate claim construction briefs addressing each of the other six patents-in-suit.

The '606 patent was also at issue in a co-pending ITC Investigation between the parties which was settled in May 2005. During those proceedings, the ALJ (Judge Harris) construed certain disputed claim terms in connection with Cornice's Motion for Summary Determination of the Invalidity of U.S. Patent No. 6,477,606. After construing those terms, the ALJ then ruled that each of the asserted independent claims and all but two of the asserted dependent claims were anticipated by at least two of the five prior art references that were the subject of the motion.

Seagate then appealed the ALJ's patent invalidity ruling to the full Commission on two grounds. First, Seagate argued that the ALJ was necessarily required to hear live testimony from Seagate's expert before ruling on summary determination (and could not draw his own conclusions as to the scope of the prior art in light of a written declaration submitted by that same expert in opposition to the motion). Second, Seagate argued that the ALJ's claim construction was wrong. The Commission agreed with Seagate on the first ground (which, in effect, required the ALJ to wait for the Hearing in order to invalidate the '606 patent). On the second ground, the Commission    REDACTED

REDACTED                    Seagate continues to assert in this action the same disputed claim constructions that the ALJ already rejected in the prior ITC action, which the Commission also decided not to disturb.

## SUMMARY OF ARGUMENT

The parties have proposed competing constructions for three terms from the asserted

claims (1, 2, 4, 5, 6, 9-15 and 17-20) of the '606 patent: (i) "single arm portion" [cls. 1 and 17] and "single arm support portion" [cl. 11], (ii) "step portion" [cls. 4, 5, 6 and 9], and (iii) "means for positioning the coil support portion and the arm portion at different distances from the base" [cl. 17]. "Single arm portion" and "single arm support portion" were already construed by ITC ALJ in a manner identical to Cornice's proposed constructions.

Cornice proposes the following constructions for the four disputed claim terms:

| Claim Language | Cornice's Proposed Construction |
|---|---|
| "single arm portion"    [cls. 1 and 17]

"single arm support portion" [cl. 11] | The terms "single arm portion" and "single arm support portion" mean that "[o]nly one arm support portion is an integral component of the actuator structure, even though the actuator can also set in motion other arm supports, in ways not covered by the claims, which serve other discs in a multiple-disc, multiple-arm drive." |
| "step portion"

[cls. 4, 5, 6 and 9] | The term "step portion" means "[t]he portion of the actuator that positions the arm support and coil support portions in distinct planes." |
| "means for positioning the coil support portion and the arm portion at different distances from the base"

[cl. 17] | The term "means for positioning the coil support portion and the arm portion at different distances from the base" "does not define structure, and thus is subject to means-plus-function analysis under 35 U.S.C. § 112, ¶ 6. The function of the claimed means is to 'position[] the coil support portion and the arm portion at different distances from the base.' The corresponding structure consists of the step illustrated in Figure 2, reference numeral 305." |

## STATEMENT OF FACTS

### I.    TECHNICAL BACKGROUND

#### A.    Problem In The Industry:  Designing Disk Drive Components To Fit Into Small Space-Efficient Disk Drives

Advances in technology have allowed hard disk drives to become increasingly smaller in size and larger in data storage capacity.  Exh. A, Expert Report of James H. Morehouse, Ph.D. Regarding Invalidity of U.S. Patent No. 6,744,606 ( referred to hereinafter as "Morehouse '606 Invalidity Report"[1])

---

[1]    The original Morehouse '606 Invalidity Report is 167 pages long and includes 28 Exhibits.  A copy of that report is being filed as "Exh. A" to the Appendix to Cornice's Opening Claim Construction Brief For U.S. Patent 6,704,606 with unnecessary Exhibits thereto removed as not being relevant to the claim construction issues herein.  Exhibits to the Morehouse '606 Invalidity

(continued . . .)

at ¶ 19. As the size of the disk drive housing shrinks, so does the space available within the housing for all of the various components of the disk drive. *Id.* This has led manufacturers to try to design smaller, yet functional and efficient disk drive components. *Id.* A disk drive typically has at least the following components:

      1.    **Magnetic Recording Medium/Magnetic Recording Disk.** Hard disk drives contain one or more rotating magnetic recording disks onto which data is stored. Commonly, disk drives contain a stack of multiple disks (*i.e.*, a "disk stack"). *Id.* at ¶ 20.

      2.    **Spindle Motor**. The magnetic recording disks rotate about a spindle. A motor ("the spindle motor") drives the spindle to power the rotation of the disks. *Id.*

      3.    **Actuator.** Slides 2 through 6 attached at Exh. A-5 (taken from the '606 Technology Tutorial in the prior ITC action) illustrate the basic parts of a rotary disc drive "actuator"(Slide 2) which includes a "head suspension arm" (Slide 6) attached to the end of an arm (Slide 5) on one side of the actuator and a "voice coil" (Slide 3) on the opposite side. A "pivot assembly" (Slide 4) allows the actuator to rotate about a pivot. By analogy, an actuator resembles the arm of an old-fashioned phonograph player. In a phonograph player, the phonograph arm extends a needle outwardly over a spinning record in order to position the needle to read music. In a hard disc drive, the actuator "arm" extends a "head" outwardly over a revolving magnetic recording disc (using a "head suspension assembly") in order to position the "head" to read or write data. At one end of the actuator is the "head," which reads data from the disc or writes data onto the disc. At the other end of the actuator is the "voice coil," which generates the magnetic force that that drives the actuator arm to extend over the disc. Morehouse '606 Invalidity Report at ¶ 20. The patent-in-suit recognizes that actuators were commonly employed in disk drives prior to 2001. *See* Exh. A-4, '606 Patent, Col. 1, ln. 36-40. Following is an

---

(. . . continued)

      Report are cited herein as "Exh. A-__". For example, the '606 patent is attached as Exhibit 4 to the Morehouse '606 Invalidity Report and cited herein as "Exh. A-4".

4.

illustration of a prior art actuator design,[2] which shows a disc drive actuator (3) including a single arm

portion that supports a head (5), and a voice coil (17) supported by a coil support portion on the opposite

side of actuator (3):



The basic components of such a disk drive shown above have been substantially the same since at least

the 1980's,[3] and include the magnetic recording disk (1), the actuator arm (3) that rotates about a pivot

(4), a head (5) mounted on one end of the actuator arm and a voice coil (17) mounted on the opposite end

of the arm. Such drives function by writing data to and reading data from the rotating disk (1) by the head

(5). The head (5) passes over the surface of the disk (1) as it spins, and is positioned and held in place by

the actuator arm (3). By pivoting the actuator arm (*see* span "A"), the head (5) can be positioned over any

---

[2]     The figure is taken from a 10-year old prior art reference (TEAC/Minase Japanese Patent Appln. Publ. No. H03-66573, Exh. A-14) discussed in more detail in Morehouse '606 Invalidity Report at ¶¶ 20, 57-60 and 95(a), which Judge Harris previously ruled anticipates claims 1, 2, 4, 6, 9, 10-15, 17 and 19.

[3]     *See, e.g.*, Seagate U.S. Patent No. 5,452,159, Figures 3 & 4 (the "'159 Patent"), which is another one of the seven (7) patents-at-issue in this Action. The original application that led to the '159 Patent was filed in 1988 and describes a disk drive having the same basic features and parts illustrated in Figure 1 above.

"track" on the rotating disk (1). Physical movement of the actuator arm (3) – and hence the head (5) – is effectuated by the voice coil (17). When an electric current is passed through a conductor in a magnetic field, a physical force is generated that can cause movement. The voice coil (17) utilizes this principle of physics to move the actuator arm (3) back and forth across the surface of the disk (1), thus controlling where data is read from and written to the disk by the head (5).

A problem with some prior art actuator designs is that they were bulky. Morehouse '606 Invalidity Report at ¶ 21. Although the overall height of the drive was dictated by the height of the drive stack (and the incremental height of the actuator arm), the region occupied by the voice coil does not necessarily have to be at the same height. *Id.* Rather, space can be economized by dropping the voice coil to a level somewhat lower than that of the actuator arm. *Id.* The '606 patent purports to claim as a novel invention an actuator that has a split (*i.e.*, "dual plane") design, with the actuator arm and the voice coil at different heights. See Exh. A-4, '606 Patent.

**B.      The Purported Invention Of The '606 Patent is a "Dual Plane Actuator"**

As the title "Dual Plane Actuator" implies, the '606 Patent is concerned with a particular type of design for the actuator arm of a disk drive. Specifically, the '606 Patent claims to have "improved" upon a conventional actuator by changing its shape such that it occupies two different planes. According to the Abstract of the patent,

> ... The actuator includes a step portion between the coil and head support portions, which increases its stiffness while permitting the coil support portion and head support portion of the actuator to lie in different planes ...

> Exh. A-4, '606 Patent, Abstract.

The '606 Patent illustrates this "invention" as follows:



Exh. A-4, '606 Patent, Figure 2 (colors added). The '606 Patent teaches and discloses an actuator arm (300), with the arm portion of the actuator (325) (highlighted in blue) that supports the head (not pictures) positioned higher than the voice coil support portion (335) (highlighted in yellow) that supports a voice coil (330) (highlighted in green). A "step" (305) (highlighted in red) separates the two portions. The step may be curved. Exh. A-4, '606 Patent, cls. 5, 18. The aperture (380) fits over a cylinder about which the actuator pivots.

Because the arm and the voice coil lie on different horizontal planes, the patent characterizes this design as a "dual plane" actuator. Exh. A-4, '606 Patent, Title. The patent asserts that this design is advantageous because it economizes space in the hard drive, by dropping the voice coil to a lower level. Exh. A-4, '606 Patent, Abstract ("This allows the actuator to be installed in low-profile drives.").

The claims of the patent are directed to this actuator, or the inclusion of such an actuator in a disk drive. Claim 11 is representative, and recites:

11. A disc drive, comprising:

a base; and

an actuator rotatably mounted to the base, the actuator comprising:

a *coil support portion positioned at a first height above the base*; and

7.

a *single arm support portion positioned at a second height above the base*, the second height being different than the first height.

Exh. A-4, '606 Patent, Claim 11 (emphasis added).  All independent claims of the '606 patent share this basic structure while the dependent claims specify additional requirements, including having the step portion curved (*e.g.,* claim 5).

> C.     **The ITC Construed Several Claim Terms Consistently with Cornice's Proposed Constructions**

In the prior ITC action, the ALJ construed certain disputed claim language and granted-in-part summary determination of invalidity of the '606 patent.  *See* Order No. 6:  Initial Determination Granting In Part and Denying in Part Cornice, Inc.'s Motion No. 516-1 for Summary Determination of the Invalidity of the '606 Patent Pursuant to 35 U.S.C. § 102(b) and (e) ("ITC Order No. 6") (Exh. A-13). As discussed more fully below, the ALJ's claim constructions of the terms "single arm portion," and "single arm support portion," among others, are identical to Cornice's proposed constructions herein.  *See* Section II, *infra.*  In contrast, Seagate's constructions, which were unsuccessfully advanced in the ITC action, fly in the face of Judge Harris' ruling.   In ITC Order No. 6, the ALJ stated, in relevant part, as follows:

REDACTED

...

REDACTED

Exh. A-13, ITC Order No. 6 at 10-13.

### D.     Overview Of Prior Art:  Seagate's "Dual Plane Actuator" Design Is Not New

The claimed invention of the '606 patent is not new.  Indeed, many prior art references disclosed "dual plan actuators," as claimed in the '606 patent, including the following illustrative examples for background:[4]

1.     JP HS-76499 ("Sony/Kubo Reference," Exh. A-16), Figure 1 (summarized in Morehouse '606 Invalidity Report at ¶¶ 64-65):



2.     JP H10-99453 ("Sony/Watanabe Reference," Exh. A-17), Figure 7 (summarized in Morehouse '606 Invalidity Report at ¶¶ 66-68):

---

[4]     For additional background, these and other prior art references are discussed in Cornice's motion for summary determination of patent invalidity filed in the prior ITC action.  *See* Cornice, Inc.'s Motion for Summary Determination of the Invalidity of the '606 Patent Pursuant to 35 U.S.C. §§ 102(b) and (e) (Exh. C).

9.



3.    U.S. Patent No. 6,757,124 B2 ("Seagate '124 Patent," Exh. A-18), Figure 5

(summarized in Morehouse '606 Invalidity Report at ¶¶ 69-71):



FIG.5

4.    U.S. Patent 5,214,552 ("TEAC/Haga Reference," Exh. A-15), Figure 1

(summarized in Morehouse '606 Invalidity Report at ¶¶ 61-63):



## ARGUMENT

For a discussion of the legal standards for claim construction, please refer to Cornice's Opening Claim Construction Brief for U.S. Patent No. 6,146,754.

## I.     "SINGLE ARM [SUPPORT] PORTION"

| Claim Language | Cornice's Proposed Construction (Same As Judge Harris') | Seagate's Proposed Construction (Rejected by Judge Harris) |
|---|---|---|
| "single arm portion" [cls. 1 and 17]<br><br>"single arm support portion" [cl. 11] | The terms "single arm portion" and "single arm support portion" mean that "[o]nly one arm support portion is an integral component of the actuator structure, even though the actuator can also set in motion other arm supports, in ways not covered by the claims, which serve other discs in a multiple-disc, multiple-arm drive." | "single arm portion" means "Only one, not multiple, arms."<br><br>"single arm support portion" means an actuator with "only one, not multiple, arm support portions." |

Here, Cornice's proposed construction is taken from the Order issued by Judge Harris in the ITC proceeding. Exh. A-13, ITC Order. No. 6. On the other hand, Seagate's construction is motivated by its desire to exclude disk drives with multiple actuator arms or arm supports (because numerous prior art references fully disclose the claimed "dual plane" actuator, but Seagate says those references cannot invalidate the '606 patent because they don't use only one "dual plane" actuator but *several*). Seagate's logic and motivations notwithstanding, the intrinsic evidence demonstrates that its proposed construction, already rejected by Judge Harris, is flawed.

### A.     The Specification Demonstrates That The Patent Is Not Limited To Single-Disk, Single-Arm Designs

In the "Detailed Description of the Invention" section of the specification, the '606 patent indicates that Figure 1 shows "an exploded view of one example of a disc drive 100 *in which the present invention is particularly useful*." Exh. A-4, '606 patent, col. 3:27-29 (emphasis added). The specification states in relation to this embodiment that "[t]he disc drive 100 includes *at least one disc* 200." *See* Exh. A-4, '606 patent, col. 3:35 (emphasis added). It further states that "[t]he *disc or discs* 200 include on *their surfaces*" a plurality of concentric data tracks. *See* Exh. A-4, '606 patent, col. 3:36 (emphasis added).

"The *head assemblies* 310 are supported by *flexures* 320, which are attached to *arms* 325 of actuator 300," the specification continues. *See* Exh. A-4, '606 patent col. 3:39-41 (emphasis added). These references in the specification clearly contemplate embodiments of the invention using multiple disks and/or multiple arms, and thus are directly contrary to Seagate's proposed construction.

**B.      Seagate's Arguments Do Not Withstand Scrutiny**

**1.      The "Background Of The Invention" Supports Cornice's Construction**

In the context of the earlier ITC action, Seagate posited that statements in the "Background of the Invention" section supported its argument that the invention applies only to disc drives with a single arm. The "Background of the Invention," as part of the specification and intrinsic evidence, can indeed be relevant to claim construction. *E.g., ASM America, Inc. v. Genus, Inc.,* 401 F.3d 1340, 1346 (Fed. Cir. 2005). The problem with Seagate's position is that the "Background of the Invention" section hurts, not helps, Seagate's cause, because it specifically references the multiple disc configurations that, Seagate now posits, its claims do not address: "advances in storage technology have greatly increased storage capacity or magnetic storage discs. As a result, a single disc is now capable of storing large amounts of data which would have required a stack of several discs in the past. *Some drive manufacturers have begun to produce disc drives having fewer discs, and even a single disc* . . . ." Exh. A-4, '606 Patent, col. 2:16-22 (emphasis supplied). And the specification's description of Figure 1, quoted above, drives home the point: that the claimed invention is alleged to be *particularly useful* in multi-arm, multi-disc disc drives.

**2.      There Is No Evidence That The Specification's References To "Arms" Is A Typographical Error As Seagate Contends**

After Judge Harris ruled that the '606 patent was invalid, Seagate asserted – for the first time – that the specification's reference to "arms" was a "typographical error." There is no evidence that is true. To the contrary, the other intrinsic evidence confirms that "arms" was intended to be plural: "arms" is in the same sentence as "head assemblies" and "flexures." *See* Exh. A-4, '606 patent, col. 3:36-44. Moreover, the "arms" are described in the '606 specification as being attached to "one or more

12.

vertically aligned head assemblies." *See* Exh. A-4, '606 patent, col. 3:40. Thus, the plural usage of

"arms" in conjunction with an entire paragraph dedicated to describing plural structures does not support

Seagate's "typographical error" excuse. Instead, that plural usage supports the inventors' purposeful use

of the plural word "arms," and again exposes the flaws in Seagate's proposed construction.

### 3.    The Examiner's Statement of Reasons Does Not Support Seagate's Construction.

Seagate has also attempted unsuccessfully in the ITC to rely on the PTO Examiner's

reasons for allowing the claims of the '606 Patent as a basis for its constructions of "single arm portion"

and "single arm support portion." However, "the statement of an examiner will not necessarily limit a

claim." *ACCO Brands, Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075, 1078-79 (Fed. Cir. 2003);

*Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1273 (Fed.

Cir. 2001); *see also E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1438 (Fed.

Cir. 1988), *cert. denied*, 488 U.S. 986 (1988).

Judge Harris who previously considered Seagate's argument noted that the

REDACTED

Exh. A-13, Order No. 6 at 12.

(emphasis supplied). The ALJ further stated that

REDACTED

*Id.*, Order

No. 6 at 12-13 (emphasis supplied).

### 4.    Cornice's    Construction    Is    Consistent    With    The Understanding Of One Of Ordinary Skill In The Art

Finally, one of ordinary skill in the art in the 2001 timeframe would understand the terms "single arm portion" and "single arm support portion" as used in the claims of the '606 patent to be consistent with Cornice's proposed construction. *See* Exh. A, Morehouse '606 Invalidity Report at ¶¶ 38-40; Exh. B, Rebuttal Expert Report of James H. Morehouse, Ph.D. Regarding the Noninfringement of U.S. Patent No. 6,744,606 ("Morehouse '606 Rebuttal Report[5]") at ¶¶ 79-80.

## II.    "STEP PORTION"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "step portion" <br><br> [cls. 4, 5, 6 and 9] | The term "step portion" means "[t]he portion of the actuator that positions the arm support and coil support portions in distinct planes." | Part of the actuator that distances the coil support portion and the arm portion. |

Cornice's proposed construction is consistent with the specification of the '606 patent and the understanding of a person of ordinary skill in the art in the 2001 time frame. *See* '606 Patent, Col. 3, ln. 65-66 ("The arm 325 and coil support portion 335 are separated by a 'step' portion 305"); '606 Patent, Col. 3, ln. 3-4 ("The actuator includes a step portion between the coil and head support portions"). *See also* Exh. A, Morehouse '606 Invalidity Report at ¶ 42.  As stated in the specification of the '606 patent:

> In this embodiment of the present invention, however, actuator 300 in fact lies in two planes.  The coil support portion 335 lies at a first elevation, allowing the coil to be positioned between voice coil magnets 340, while actuator arm 325 is positioned at a higher level, allowing it to pass above the upper surface of disc 200.  Another advantage provided by step feature 305 is higher stiffness.

Exh. A-4, '606 Patent, col. 4, lines 24-32. The specification further states:

---

[5]    A copy of the Morehouse '606 Rebuttal Report is being filed as "Exh. B" to the Appendix To Cornice's Opening Claim Construction Brief For U.S. Patent No. 6,744,606, with unnecessary Exhibits thereto removed as not being relevant to the claim construction issues herein.

It is even contemplated that the actuator 300 could lie in more than two planes. Fig. 4 illustrates one embodiment of a disc drive in which the actuator 300 is mounted atop a pivot cartridge 410 via a threaded element and a small aperture 385 in the actuator 300. In this embodiment, the actuator 300 is provided with two step portions 306, 307 which allow the coil support portion 335, the actuator arm 325 and the actuator pivot portion 385 to be located at three different elevations.

Exh. A-4, '606 Patent, col. 4, lines 57-65.

### III.     "MEANS FOR POSITIONING THE COIL SUPPORT PORTION AND THE ARM PORTION AT DIFFERENT DISTANCES FROM THE BASE"

| Claim Language | Cornice's Proposed Construction | Dr. Bogy's Proposed Construction |
|---|---|---|
| "means for positioning the coil support portion and the arm portion at different distances from the base"<br><br>[cl. 17] | This term does not define structure, and thus is subject to means-plus-function analysis under 35 U.S.C. § 112, ¶ 6. The function of the claimed means is to "position[ ] the coil support portion and the arm portion at different distances from the base." The corresponding structure consists of the step illustrated in Figure 2, reference numeral 305. | This is a means plus function element. The function is positioning the coil support portion and the arm portion at different distances from the base. The structure described in the specification for performing this function is the "step" portion and is illustrated, for example, in Fig. 2, by reference numeral 305. |

Although Seagate offered no construction in its List of Proposed Claim Construction Terms exchanged on July 22, 2005 (Exh. A-8 at p. 2), its expert Dr. Bogy eventually did, and his construction is set forth in the chart above. Thus, it appears that Dr. Bogy agrees with Cornice's construction. Assuming Seagate does as well, the term would be undisputed and Cornice's construction should be adopted. As explained by Dr. Morehouse, one of ordinary skill in the art in the August 2001 timeframe would understand the phrase "means for positioning the coil support portion and the arm portion at different distances from the base" as used in the claims of the '606 patent to be consistent with Cornice's proposed construction. *See* Exh. A, Morehouse '606 Invalidity Report at ¶¶ 43-45.

### CONCLUSION

For the foregoing reasons, the Court should adopt Cornice's proposed constructions for the claim limitations of the '606 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/  *Julia Heaney*
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com
*Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000

Original Filing Date:  November 18, 2005

Redacted Filing Date:  November 28, 2005

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on November 28, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.C.
> 919 N. Market Street, Suite 1100
> Wilmington, DE 19801

### BY FEDERAL EXPRESS

> Ruffin B. Cordell, Esquire
> Fish & Richardson, P.C.
> 1425 K Street, NW, Suite 1100
> Washington, DC 20005

> /s/ Julia Heaney
> Julia Heaney (#3052)
> MORRIS, NICHOLS, ARSHT & TUNNELL
> jheaney@mnat.com
> *Attorneys for Defendant and*
> *Counterclaim Plaintiff Cornice, Inc.*