IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEAGATE TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-418-SLR |
| | ) | |
| CORNICE, INC. | ) | **REDACTED VERSION** |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CORNICE, INC.'S OPENING CLAIM CONSTRUCTION BRIEF FOR
U.S. PATENT NO. 6,545,845**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000

Original Filing Date:  November 18, 2005

Redacted Filing Date:  November 28, 2005

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| NATURE AND STAGE OF THE PROCEEDING | 1 |
| SUMMARY OF ARGUMENT | 1 |
| STATEMENT OF FACTS | 2 |
| I. TECHNICAL BACKGROUND | 2 |
|     A. Problem Facing the Industry: The Parts Of A Hard Disk Drive Must Remain Securely Fastened | 2 |
|     B. The Prior Art Used Various Means To Fasten the Actuator Assembly | 4 |
| II. THE '845 PATENT AND CORNICE'S ACCUSED PRODUCT | 6 |
| ARGUMENT | 6 |
| I. "RETAINING CLIP" | 6 |
|     A. What Little Exists In The '845 Specification With Respect To The Putative "Retaining Clip" Invention Supports Cornice's Construction | 7 |
|     B. During Prosecution, Seagate Distinguished Threaded Means (Such As Nuts) From Its Invention | 7 |
|     C. Testimony From Seagate's Own Inventors And Other Witnesses Support Cornice's Construction | 9 |
|     D. Additional Evidence Supporting Cornice's Construction | 11 |
|     E. Seagate's Proposed Construction Does Not Withstand Scrutiny | 12 |
|     F. Cornice's Construction is Consistent with the Understanding of One of Ordinary Skill in the Art | 13 |
| II. "BEARING CARTRIDGE" | 13 |
| CONCLUSION | 15 |

ii.

TABLE OF CITATIONS

Page(s)

Cases

*Ecolab, Inc. v. Envirochem, Inc.*,
    264 F.3d 1358 (Fed. Cir. 2001)                                                                      13

*E-Pass Techs., Inc. v. 3COM Corp.*,
    343 F.3d 1364 (Fed. Cir. 2003)                                                                       9

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.*,
    275 F.3d 1371 (Fed. Cir. 2002)                                                                      14

1.

## NATURE AND STAGE OF THE PROCEEDING

Seagate Technology LLC ("Seagate") brought this action against Cornice, Inc. ("Cornice") for infringement of seven patents on June 22, 2004. In accordance with the Scheduling Order, the parties are filing a Joint Claim Construction Statement on the seven patents-in-suit today. Cornice is submitting this Opening Claim Construction Brief in support of its constructions of certain claim terms of U.S. Patent No. 6,545,845 ("the '845 patent"), and separate claim construction briefs addressing each of the other six patents-in-suit.

The '845 patent was also at issue in the co-pending ITC Investigation. In that action, four days after receiving Cornice's rebuttal expert report on the '845 patent but before the ITC trial, Seagate unilaterally withdrew the '845 patent from the ITC action. Nevertheless, Seagate continues to assert the '845 patent in this action, using the same claim constructions and infringement allegations that it abandoned in the ITC.

## SUMMARY OF ARGUMENT

The parties have proposed competing constructions for one term from the '845 patent: "retaining clip." Seagate has offered no construction for the other term construed by Cornice: "bearing cartridge." Cornice proposes the following constructions for the claim terms at issue:

| Claim Language | Cornice's Proposed Construction |
|---|---|
| "Retaining clip" [cls. 5, 6, 7, 9, 11, 12, 14.] | The term "retaining clip" means "a device such as a snap ring, retaining ring or clip ring." |
| "Bearing cartridge" [cls. 1, 2, 4, 5, 6, 7, 8, 9, 11, 12, 14, 15.] | The term "bearing cartridge" means "an assembly with ball bearings, an inner body, and an outer body, that permits the inner and outer bodies to rotate relative to one another." |

## STATEMENT OF FACTS

I. **TECHNICAL BACKGROUND**

    A.     **Problem Facing the Industry: The Parts Of A Hard Disk Drive Must Remain Securely Fastened**

Hard drives are highly sensitive devices. Exh. A, Expert Report of James H. Morehouse, Ph.D. Regarding Invalidity of U.S. Patent No. 6,545,845 ("Morehouse '845 Invalidity Report"[1]) at ¶ 19. In order to work properly, the delicate components of a disc drive require exacting calibration. *Id.* Exh. A-4, '845 Patent, col. 2, lns. 16-36. It is therefore essential that the parts of the drive remain securely fastened to one another. *Id.* If any parts of the hard drive start to wiggle or otherwise come loose, the hard drives may malfunction or cease to work altogether. *Id.*

Among the many parts in a hard drive is the "actuator assembly," which, by analogy, resembles the arm and needle of an old-fashioned phonograph player. Exh. A, Morehouse '845 Invalidity Report at ¶ 20. In a phonograph player, the phonograph arm extends a needle outwardly over a spinning record in order to position the needle to read music. In a computer hard drive, the "actuator arm" extends a "head" outwardly over a revolving magnetic recording disc in order to position the "head" to read or write data. *Id.* The "arm" that reaches out over the disc is called the "actuator." *Id.* At one end of the actuator is the "head," which reads data from the disc or writes data onto the disc. *Id.* At the other end of the actuator is the "voice coil," which generates the force that that drives the actuator arm to extend over the disc. *Id.* at ¶ 22. A "voice coil" consists of a series of magnets, plates, and a coil. *Id.* As the '845 patent acknowledges, actuator assemblies and voice coils were commonly used as of 1988. Exh. A-4, '845 Patent, Col. 3, ln. 25-30.

---

[1]     The original Morehouse '845 Invalidity Report is     REDACTED    A copy of that report is being filed as "Exh. A" to the Appendix To Cornice's Opening Claim Construction Brief For U.S. Patent No. 6,545,845, with unnecessary Exhibits thereto removed as not being relevant to the claim construction issues herein. Exhibits to the Morehouse '845 Invalidity Report are cited herein as "Exh. A-___". For example, the '845 patent is attached as Exhibit 4 to the Morehouse '845 Invalidity Report and cited herein as "Exh. A-4".

When the voice coil generates sufficient force, the actuator pivots on an axis so that the actuator head can be positioned over any region of the rotating magnetic recording disk. The actuator of a hard disc drive pivots around a "bearing cartridge," which was also well known in 1988. Exh. A, Morehouse '845 Invalidity Report at ¶ 21. As illustrated in the following figures, a bearing cartridge in a disk drive includes, among other things, at least 2 preloaded ball bearings, an inner body and an outer body:

**Bearing Cartridge**

Figure 1 | Figure 2 | Figure 3

Because this configuration, which is illustrated in Figure 2 above, permits the inner and outer bodies to rotate relative to one another, bearing cartridges may be of two types: (1) as shown in Figure 1, the inner body may rotate relative to a stationary outer body, or (2) as shown in Figure 3, the outer body may rotate relative to a stationary inner body. *Id.* The stationary part of the bearing cartridge is typically anchored to a base plate, which allows the other body to rotate. *Id.*

The following figure generally illustrates an actuator assembly (3) with a head (5) at one end and a voice coil (17) at the other end that extends over a rotating magnetic recording disc (1) and rotates around the bearing cartridge pivot (4):

4



Common sense dictates that this actuator assembly must remain tightly fastened. *Id.* at ¶ 24. If the assembly starts to wiggle, it will be impossible to precisely align the head of the actuator over desired regions of data, resulting in failure of the hard disk drive. *Id.* Since well before 1988, the computer industry has tried to find ways to securely fasten the actuator arm to the bearing cartridge. *Id.*

### B. The Prior Art Used Various Means To Fasten the Actuator Assembly

Given the importance of ensuring a tight juncture between the actuator arm and the bearing cartridge, the prior art discloses many such actuator assemblies. *Id.* at ¶ 25. One example of a prior attempt to securely fasten the actuator assembly to the bearing cartridge is U.S. Patent No. 4,391,035 ("the Van de Bult '035 Patent") (Exh. A-6), entitled "Method of Mounting a Magnetic Head Unit on a Movable Carrier," which was published in 1979. The following figure from the Van de Bult '035 Patent illustrates an actuator arm (or "carrying arm") (3) with a magnetic head (7) at one end and a voice coil (or "drive coil") (11) on the other end, and shows that the actuator arm is fastened to the bearing cartridge (or "bearing arrangement") (29) by a threaded nut located on the "hub" (33):

5



FIG.1

The Van de Bult '035 Patent shows that actuator assemblies were known in the art by at least the early 1980s. As Figure 1 illustrates, the Van de Bult '035 Patent discloses an actuator arm (or "carrying arm") (3) with a magnetic head (7) at one end and a voice coil (or "drive coil") (11) on the other end. *See* Exh. A-6, Van de Bult '035 Patent, Col. 3, ln. 36-54, Col. 4, ln. 14-43. The carrying arm (3) in the Van de Bult '035 patent is fastened to the bearing cartridge (or "bearing housing") (38) by means of a threaded "nut" located on a hub (33). *See* Exh. A-6, Van de Bult '035 Patent, Col. 4, ln. 57-65. The following figure in the Van de Bult '035 Patent provides a cross-sectional illustration of these, and other, components of the disclosed actuator system:



FIG.3

This diagram shows the carrying arm (3) secured to the bearing arrangement by means of a threaded nut (36).

As the Van de Bult '035 patent demonstrates, by the early 1980s, the fundamental components of actuator assemblies were publicly disclosed, including the use of a threaded nut to tightly secure the actuator arm to the bearing cartridge.

## II.  THE '845 PATENT AND CORNICE'S ACCUSED PRODUCT

The '845 patent issued on April 8, 2003 and is entitled "Actuator Assembly Retaining Clip." As discussed more fully herein, the purported invention of the '845 Patent is the use of a "retaining clip" rather than a nut to fasten together certain components of a hard disc drive, specifically, the "actuator arm" to the "bearing cartridge." See, e.g., Exh. A-4, '845 Patent, cl. 5. In the Cornice products that are accused of infringing the '845 patent, a nut is used to fasten the actuator arm to the bearing assembly, and Seagate's proposed construction of "retaining clip" is intended to be broad enough to encompass this nut. As demonstrated herein, Seagate's proposed construction is inconsistent with the '845 patent itself, and thus should be rejected.

## ARGUMENT

For a discussion of the legal standards for claim construction, please refer to Cornice's Opening Claim Construction Brief for U.S. Patent No. 6,146,754.

### I.  "RETAINING CLIP"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| retaining clip<br><br>[cls. 5, 6, 7, 9, 11, 12, 14] | The term "retaining clip" means "a device such as a snap ring, retaining ring or clip ring." | A mechanical device for holding or gripping the bearing cartridge to the actuator by engaging a groove(s) on the exterior of the bearing cartridge. |

The '845 patent is directed to the use of a "retaining clip" for holding together the actuator assembly in a hard drive. Indeed, the title of the patent is "Actuator Assembly *Retaining Clip*." Every claim in the patent recites the phrase "retaining clip." For example, claim 5 recites the phrase "a

**retaining clip fastening the bearing cartridge to the actuator arm** in the central pivot portion of the actuator arm." Exh. A-4, '845 Patent, Claim 5 (emphasis added). All other claims use the phrase "retaining clip" in a similar manner. However, rather than using a retaining clip the accused product uses a "nut," and the parties dispute whether a nut can satisfy the "retaining clip" limitation.

      A.      **What Little Exists In The '845 Specification With Respect To The Putative "Retaining Clip" Invention Supports Cornice's Construction**

Figure 4 of the '845 Patent illustrates the retaining clip (63) disclosed in the patent, which is described as a "clip ring." The only embodiment of the retaining clip disclosed by the '845 patent is this clip ring, consistent with Cornice's proposed construction. Indeed, the written description of the patent never uses the term "retaining clip," and almost nothing in the patent discusses the clip ring/retaining clip that is the focus of the claims. Although the '845 patent is 24 columns long and has 23 individual figures, the sum-total of the specification that relates in some way to this issue is reproduced below:

> Actuator arm 40 is attached to bearing cartridge 62 by a clip ring 63. Using clip ring 63 instead of epoxy allows the bearing cartridge 62 to be tested prior to assembly and cleaned independently of the actuator arm 40.

Exh. A-4, '845 Patent, Col. 8, ln. 28-31; *see also* Col. 17, ln. 2-6.

      B.      **During Prosecution, Seagate Distinguished Threaded Means (Such As Nuts) From Its Invention**

When attempting to obtain the '845 patent, Seagate asserted that a "retaining clip" could not include a threaded means such as nuts and bolts. For example, the patent examiner initially rejected all of the proposed claims in the '845 patent application over the U.S. Patent No. 4,805,055, issued to Harold Wright ("Wright '055 Patent") (Exh. A-10), arguing Wright '055 disclosed the claimed "retaining clip." Following is a diagram from the Wright '055 Patent:



Fig. 2

*See* Exh. A-10, Wright '055 Patent, Figure 2 (depicting, among other things, the actuator arms (56 & 58), pivot shaft (62), bearings (63), threaded vertical bolts (71), and a shoulder (67)).

In an effort to overcome the examiner's rejection, Seagate distinguished the way it fastened the actuator arms to the bearing cartridge versus the way that Wright '055 accomplished this task. According to the Seagate at the time, its patent differed from Wright because Wright used a **threaded bolt**, in distinction to their retaining clip:

> The examiner is respectfully requested to note that the actuator arms 56 and spacers 69 are stacked on the flange 67 of the cylinder 66 and captured on the "bearing cartridge" by vertical bolts 71 which thread into the bottom flange 67 of the cylinder 66. Thus, the "bearing cartridge" is fastened to the actuator arms by **the bolts 71**.

*See* Exh. A-7, '845 File History at STX 790

Thus, Seagate specifically asserted that its "retaining clip" invention is <u>not</u> performed by fastening the actuator arms to the bearing cartridge with a threaded bolt. The threaded bolt in Wright secures the actuator arms to the bearing cartridge by being "threaded into appropriate holes in shoulder 67." *See* Exh. A-10, Wright '055 Patent at Col. 4, ln. 2-3. Thus, much like in the accused products, Wright '055 used a bolt threaded into a mating threaded hole to secure the actuator arms to the bearing cartridge.

Also in the course of its dialogue with the Patent Office, Seagate and the examiner both used the claim term "retaining clip" interchangeably with the terms "retaining snap ring," "retaining ring," "snap ring," and "clip ring." *See* Exh. A-7, '845 File History at STX 773 (applicants originally file claim 8 using the word "retaining ring" and later replace the word ring with clip); STX 773 (applicants use the words "snap ring" and "retaining snap ring" to describe a retaining clip); STX 790-791 (applicants use "retaining ring" and "clip ring" to describe a retaining clip). Therefore Cornice's proposed construction is consistent with the use of the term during prosecution of the '845 patent.

### C. Testimony From Seagate's Own Inventors And Other Witnesses Support Cornice's Construction

"[I]nventor testimony is of little probative value for purposes of claim construction." *E-Pass Techs., Inc. v. 3COM Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003). Nonetheless, REDACTED

REDACTED

. For example, Frederick Stefansky, one of the two named inventors, REDACTED

REDACTED

Exh. A-11, Stefansky Depo. Tr. 157: 23-24; 158: 16-17 (emphasis added). Likewise, Mr. Stefansky's named co-inventor, REDACTED

REDACTED

Exh. A-12, Dague Depo Tr. 151: 5-6; 151:17-152:3 (emphasis added).

10

Even Andre Liem, one of the named Seagate inventors on U.S. Patent 6,744,606, REDACTED

REDACTED

Exh. A-13, Liem Depo Tr. 192:22-193:11 (emphasis added).

In addition, the Seagate inventors      REDACTED

)

REDACTED

REDACTED

Exh. A-12, Dague Depo. Tr. 83: 8-10; 12-20 (emphasis added). Likewise, Mr. Stefansky   REDACTED
REDACTED

REDACTED

---
2

REDACTED

REDACTED

Exh. A-11, Stefansky Depo. Tr. 106:12-18; 101:22-102:2 (emphasis added).[3]

### D. Additional Evidence Supporting Cornice's Construction

The most appropriate definition of "retaining clip" in the context of the '845 patent is a device such as a snap ring, retaining ring or clip ring. A person of ordinary skill in the art during the 1987-1988 timeframe would have never regarded a threaded nut as a "retaining clip" within the context of the '845 Patent. At that time, a person of ordinary skill in the art would have regarded a "snap ring" as, "any of various kinds of metal rings that must be forced open to be used and snap back into place to make a snug fit." Exh. A-15, Random House Dictionary, 2d ed., Random House New York (1987); *see also* Exh. A-16, Harold A. Rothbart, Mechanical Designs And Systems Handbook, McGraw-Hill Book Company (1964) at § 27.4, entitled Snap Rings (Retaining Rings) ("Snap rings are used to prevent axial motion of mating concentric parts, *e.g.,* shafts and bearing sleeves. They are made of hardened steel wire and can be round, square, and rectangular in cross section. Snap rings may be used in expansion or in contraction") (COR-ITC056777-79).[4]

---

REDACTED

[3]   *See also* STX 572594 (attached as Exh. A-14) (a Conner Peripherals   REDACTED
      REDACTED

[4]   *See also* McGraw-Hill Encyclopedia of Science and Technology, 6th ed. McGraw-Hill Book Co. (1987) (attached as Exh. A-17) ("A form of spring used principally as a fastener. Piston rings are a form of snap ring used as seals. The ring is elastically deformed, put in place, and allowed to snap back toward its unstressed position in a groove or recess. The snap ring may be used externally to provide a shoulder that retains a wheel or bearing race on a shaft, or it may be used internally to provide a construction that confines a bearing race in the bore of a machine frame. The size of the ring and its recess determines its strength under load. Sufficient clearance and play is needed in the machine so that the ring can be inserted and seated.").

During that same timeframe, a "retaining ring" would have been understood to mean:

> A relatively modern machine part in which the spring function is used as a holding means in the retaining or snap ring. This device is a split ring of square, rectangular, or special cross section. It fits in a groove on a cylindrical surface or in a bore and stays in place by a spring force. A retaining ring prevents or restrains relative axial motion between a shaft or bore and the components on the shaft or in the bore. See *Snap Ring*.

Exh. A-17, McGraw-Hill Encyclopedia of Science and Technology, 6th ed., McGraw-Hill Book Co. (1987).

### E. Seagate's Proposed Construction Does Not Withstand Scrutiny

The purported basis for Seagate's construction, at least as revealed by its expert Dr. Gitis, are select definitions of "retaining" and "clip" from a 1993 version of the American Heritage Dictionary:

> **Retaining**: "2. To keep or hold in a particular place, condition, or position."
>
> **Clip**: "1. Any of various devices for gripping or holding things together; a clasp or fastener."

However, Seagate's proposed construction for "retaining clip" is: "a mechanical device for holding or gripping the bearing cartridge to the actuator *by engaging a groove(s) on the exterior of the bearing cartridge*." Neither of its cited dictionary definitions support the "groove" portion of this construction highlighted above, nor do they specify that such a "groove" must be on the exterior of the bearing cartridge. Although the definition of "retaining *ring*" cited by Cornice above does indicate the use of a groove, it also makes clear that such a retaining ring is held in place "by a spring force" (*i.e.*, elastic deformation of the retaining ring). Once again, a nut does not utilize a spring force to hold it in place, and it is inappropriate for Seagate to cherry pick portions of a definition that suit its needs and discard the remainder.

Seagate's construction also ignores statements made during prosecution of the '845 patent, where Seagate specifically distinguished threaded means from the claimed "retaining clip." Seagate cannot now reclaim what was distinguished during prosecution, and thus its construction is both

improper and unsupported. *See Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1368 (Fed. Cir. 2001) ("[A]ll express representations made by or on behalf of the applicant to the examiner to induce a patent grant limit the interpretation of the claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.") (citations omitted).

### F.  Cornice's Construction is Consistent with the Understanding of One of Ordinary Skill in the Art

Finally, one of ordinary skill in the art in the 1988 timeframe would understand the term "retaining clip" as used in the claims of the '845 patent to be consistent with Cornice's proposed construction. *See* Exh. A, Morehouse '845 Invalidity Report at ¶¶ 38-67; Exh. B, Rebuttal Expert Report of James H. Morehouse, Ph.D. Regarding the Noninfringement of the '845 Patent ("Morehouse '845 Rebuttal") at ¶¶ 9-13.

## II.  "BEARING CARTRIDGE"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| bearing cartridge<br><br>[cls. 1, 2, 4, 5, 6, 7, 8, 9, 11, 12, 14, 15] | The term "bearing cartridge" means "an assembly with ball bearings, an inner body, and an outer body, that permits the inner and outer bodies to rotate relative to one another." | none |

Although Seagate has offered no formal construction, its expert Dr. Gitis has suggested that the inner body of a bearing cartridge is not part of the bearing cartridge, but rather is a separate element called a "pivot" or "pivot shaft." Although it offers no construction and thus no support for its position, Seagate's apparent interpretation nonetheless ignores the structure of these devices and would lead to an inoperable apparatus.

The entire purpose of a bearing cartridge is to allow rotational movement. To that end, it must include two separate bodies – an inner body and an outer body – with ball bearings in between which allow the two to move independently of one another. In the context of disk drives, a bearing cartridge is used to allow the actuator to rotate back and forth across the surface of the disk. To fulfill that

purpose, it is irrelevant whether the outer body is fixed (*i.e.*, mounted to the base) such that the inner body rotates, or the inner body is fixed such that the outer body rotates. Exh. A, Morehouse '845 Report, ¶ 70 *et seq.*

Without both an inner and outer body, the bearing cartridge *cannot function.* When confronted with prior art clearly showing the use of a nut (threaded means) to attach the actuator arm to the bearing cartridge, Seagate's expert Dr. Gitis     REDACTED

REDACTED                                                                                                                      In his report, Dr. Morehouse explains why this is a distinction without a difference. *See, e.g.,* Exh. A, Morehouse '845 Report, ¶ 73. However, for purposes of claim construction it is sufficient to note that Cornice's construction is unrebutted and that Seagate's apparent interpretation, as gleaned through the arguments of its expert, would lead to a device that does not function. *See Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 275 F.3d 1371, 1376 (Fed. Cir. 2002) ("a construction that renders the claimed invention inoperable should be viewed with extreme skepticism") vacated on other grounds by *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 537 U.S. 802 (U.S. 2002).

Finally, one of ordinary skill in the art in the 1988 timeframe would understand the term "bearing cartridge" as used in the claims of the '845 patent to be consistent with Cornice's proposed construction. *See* Exh. A, Morehouse '845 Invalidity Report at ¶¶ 38, 68-73; Exh. B, Morehouse '845 Rebuttal at ¶¶ 14-15.

## CONCLUSION

For the foregoing reasons, the Court should adopt Cornice's proposed constructions for the claim limitations of the '845 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ *Julia Heaney*

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com
   *Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000

Original Filing Date:  November 18, 2005

Redacted Filing Date:  November 28, 2005

**CERTIFICATE OF SERVICE**

I, Julia Heaney, hereby certify that on November 28, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

**BY HAND**

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

**BY FEDERAL EXPRESS**

Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC 20005

/s/ *Julia Heaney*
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL
jheaney@mnat.com
  *Attorneys for Defendant and*
  *Counterclaim Plaintiff Cornice, Inc.*