IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,       )
                              )
            Plaintiff,        )
                              )
      v.                      )        Civil Action No. 04-418-SLR
                              )
CORNICE, INC.                 )        **REDACTED VERSION**
                              )
            Defendant.        )
                              )

## DEFENDANT CORNICE, INC.'S OPENING CLAIM CONSTRUCTION BRIEF FOR U.S. PATENT NO. 5,596,461

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
    *Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Original Filing Date: November 18, 2005

Redacted Filing Date: November 28, 2005

i.

## TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| TABLE OF CITATIONS |  |  | iii |
| NATURE AND STAGE OF THE PROCEEDING |  |  | 1 |
| SUMMARY OF ARGUMENT |  |  | 1 |
| STATEMENT OF FACTS |  |  | 2 |
| I. | TECHNICAL BACKGROUND |  | 2 |
|  | A. | Problem In The Industry: How To Fit Components Of Hard Drives Into Increasingly Smaller Products | 2 |
|  | B. | The Purported Invention Of The '461 Patent Concerns A Contoured Cover For Fitting A Printed Circuit Board | 3 |
|  | C. | The ITC Construed Several Claim Terms Consistently With Cornice's Proposed Constructions | 4 |
| II. | THE '461 PATENT AND CORNICE'S ACCUSED PRODUCT |  | 5 |
| ARGUMENT |  |  | 8 |
| I. | "BASE MEMBER" AND "COVER ELEMENT" |  | 8 |
|  | A. | The Spindle Motor And Head Stack Assembly Must Be Mounted To The "Base Member," Not The "Cover Element" | 9 |
|  |  | 1. Requiring That The Spindle Motor And Head Stack Assembly Be Mounted To The Base Maintains Internal Consistency Of The Claims | 9 |
|  |  | 2. The Specification Supports Cornice's Constructions | 9 |
|  |  | 3. Extrinsic Evidence Supports Cornice's Construction | 11 |
|  | B. | "Base Member" And "Cover Element" Are Not Meaningless And Interchangeable Limitations As Urged By Seagate | 11 |
|  | C. | The International Trade Commission's Decision Regarding The Proper Construction Of "Base Member" Supports Cornice's Construction | 13 |
|  | D. | Cornice's Constructions Are Consistent With The Understanding Of One Of Ordinary Skill In The Art | 13 |
| II. | "HEAD STACK ASSEMBLY" |  | 14 |

ii.

TABLE OF CONTENTS (continued)

Page

A.  The Intrinsic Evidence Demonstrates That A "Head Stack
    Assembly" Must Include A Plurality Of Actuator Arms                14

B.  The ITC Accepted Cornice's Construction                            16

C.  Cornice's Construction Is Consistent With The Understanding Of
    One Of Ordinary Skill In The Art                                   16

III.  "CONTINUOUS, SINGLE PCB SUPPORT SURFACE"                         16

CONCLUSION                                                             19

iii.

## TABLE OF CITATIONS

Page(s)

Cases

*C.R. Bard, Inc. v. United States Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004)                 10

*Cultor Corp. v. A.E. Staley Mfg. Co.*,
    224 F.3d 1328 (Fed. Cir. 2000)            14

*Ecolab, Inc. v. Envirochem, Inc.*,
    264 F.3d 1358 (Fed. Cir. 2001)            18

*Intel Corp. v. Via Tech., Inc.*,
    319 F.3d 1357 (Fed. Cir. 2003)            15

*Kopykake Enterprises, Inc. v. Lucks Co.*,
    264 F.3d 1377 (Fed. Cir. 2001)            14

*Novartis Pharm. Corp. v. Abbott Labs,*,
    375 F.3d 1328 at 1335 (Fed. Cir. 2004)     15

*Phillips v. AWH Corp.*
    415 F.3d. 1303 (Fed. Cir. 2005)           11

*Southwall Tech., Inc., v. Cardinal IG Co.*,
    54 F.3d 1570 at 1583 (Fed. Cir. 1995)      11

Other Authorities

Webster's Ninth New Collegiate Dictionary     11, 15

## NATURE AND STAGE OF THE PROCEEDING

Seagate Technology LLC ("Seagate") brought this action against Cornice, Inc. ("Cornice") for infringement of seven patents on June 22, 2004.  In accordance with the Scheduling Order, the parties are filing a Joint Claim Construction Statement on the seven patents-in-suit today. Cornice is submitting this Opening Claim Construction Brief in support of its constructions of certain claim terms in U.S. Patent No. 5,596,461 ("the '461 patent"), and separate claim construction briefs addressing each of the other six patents-in-suit.

The '461 patent was also at issue in a co-pending ITC Investigation.  In the ITC action, the ALJ (Judge Harris) ruled that Cornice did not infringe U.S. Patent No. 5,596,461 ("the '461 patent") as a matter of law, based on its adoption of several of Cornice's proposed claim constructions as explained herein.  Seagate did not appeal that ruling, and it became a "final determination" of the ITC *before* the parties settled their ITC dispute in May of 2005.  Nevertheless, Seagate continues to assert the '461 patent in this action.

## SUMMARY OF ARGUMENT

Seagate has alleged that the accused product (the 1.0, 1.5, 2.0, and 3.0 gigabyte "Cornice Storage Element" or "Cornice SE") infringes claims 1, 5, 6 and 7 of the '461 patent.  Up until two days ago, the parties had offered conflicting constructions for four limitations that exist in all of the asserted claims:  (1) "base member," (2) "cover element," (3) "head stack assembly," and (4) "continuous, single PCB support surface."  Two days before this brief was due, Seagate indicated for the first time that it intended to modify its proposed constructions of (1) "base member" and (2) "cover element" to closely conform to those advanced by Cornice and those used by the ITC in granting summary judgment that the accused products could not infringe the '461 patent — an adverse ruling that Seagate did not appeal. Despite apparently embracing two constructions fatal to its case, Seagate nonetheless is still pursuing its allegations with respect to this patent.  Because these changes in position came at the 11th hour and in contravention of the Court's scheduling order, a portion of Cornice's argument is by necessity directed to

Seagate's original construction as proffered on July 22, 2005 and asserted by Seagate throughout the period for expert discovery (which closed about four weeks ago).

Cornice's proposed constructions for these four terms are as follows:

| Claim Language | Cornice's Proposed Construction |
|---|---|
| "base member"<br>[cls. 1, 5, 6 and 7] | The bottom portion of the housing for mounting the components of the drive, e.g., the spindle motor and head stack assembly. |
| "cover element"<br>[cls. 1 and 6] | The top portion of the housing opposite the base member, which is received over the spindle motor and head stack assembly. |
| "head stack assembly"<br>[cls. 1, 5, 6 and 7] | A stack of actuator arms (i.e., a plurality), each mounting a head or pair of heads. |
| "continuous, single PCB support surface"<br>[cls. 1 and 6] | A single, uninterrupted surface for mounting a PCB, and not discrete mounting locations for a PCB. |

## STATEMENT OF FACTS

### I.   TECHNICAL BACKGROUND

#### A.   Problem In The Industry:  How To Fit Components Of Hard Drives Into Increasingly Smaller Products

Due to the popularity of portable electronics, there is constant pressure in the computer industry to make computer components smaller.  Exh. A, Expert Report of James H. Morehouse, Ph.D. Regarding Invalidity of U.S. Patent No. 5,596,461 ("Morehouse '461 Invalidity Report") [1] at ¶ 17.  For decades, developers of hard disc drives have used a variety of methods to arrange the various components of hard drives so as to make the drives more compact.  Id.

An important factor that constrains the thickness of hard drives is the height of two components, specifically the spindle motor and the actuator assembly.  Id. at ¶ 27.  This constraint results

---

[1]   The original Morehouse '461 Invalidity Report is                 REDACTED                    A copy of that report is being filed as "Exh. A" to the Appendix To Cornice's Opening Claim Construction Brief For U.S. Patent 5,596,461, with unnecessary Exhibits thereto removed as not being relevant to the claim construction issues herein.  Exhibits to the Morehouse '461 Invalidity Report are cited herein as "Exh. A-__".  For example, the '461 patent is attached as Exhibit 4 to the Morehouse '461 Invalidity Report and cited herein as "Exh. A-4".

from the basic fact that the spindle motor must be anchored to the base member of the hard drive, and the spindle must extend up above the disks. *Id.* Similarly, the head stack assembly must necessarily be taller than the disks to allow the topmost arm to sweep across the top of the upper-most disk in a disk stack assembly. *Id.* This constraint is described in the patent-in-suit as follows:

> Typically, the extremities of the height dimension of each of the spindle motor and the head stack assembly exceed the extremities of the height dimension of the stack of disks. This is because the spindle motor mounts the disk or disks and has a greater height so that it can be mounted to the base plate at one end, and receive a clamp or other mechanical element at the other end, to secure the disk or disks to the spindle motor. In addition, the actuator structure must place an actuator arm/head assembly both above the top most disk surface and below the bottom most disk surface of the stack of disks to permit the reading and writing of data from these surfaces. Thus, the extremities of the spindle motor and head stack assembly dictate the overall height of the disk drive housing.

Exh. A-4, '461 Patent, 2:10-23. Accordingly, it has long been recognized in the prior art that the spindle motor and head stack assembly limit the thinness of hard drives. Exh. A, Morehouse '461 Invalidity Report at ¶ 27.

**B.    The Purported Invention Of The '461 Patent Concerns A Contoured Cover For Fitting A Printed Circuit Board**

The '461 patent purports to claim an invention directed to mounting a printed circuit board in a recess in the <u>cover</u> of a hard drive. As discussed above, the patent purports to overcome the problem posed by the geometry constraints of the spindle motor and the head stack assembly. <u>See</u> Exh. A-4, '461 Patent, 2:7-28. The '461 patent notes that prior art disk drives had employed base plates and cover elements that maintained a constant width between them, to accommodate the extreme heights of the spindle motor and the head stack assembly. *Id.* at 2:24-28 ("In conventional disk drive products, the spacing between the top of the cover and the base plate is maintained at a dimension suitable to fit the entire head disk assembly, over substantially the entire width and length of the disk drive housing."). In what it claims to be a novel invention, the patent discloses using a contoured cover element, having a

raised portion to accommodate the spindle motor and the head stack assembly, as well as another portion

(a "second raised portion"), which is recessed to house the printed circuit board:

> A single PCB is arranged and configured to generally coincide with the surface area defined by the second raised portion. The PCB is mounted to the second raised portion, surrounds the first raised portion and has a height dimension that fits within the difference in height dimensions between the first and second raised portions. ... The first raised portion is configured to accommodate the height dimensions of the spindle motor and head stack assembly and occupies only as much space as required for this purpose.

Exh. A-4, '461 Patent, 3:25-37.  The patent depicts its claimed invention as follows:



Figure 1

Exh. A-4, '461 Patent, Figure 1 (relabeled and partially redacted for legibility).

### C.     The ITC Construed Several Claim Terms Consistently With Cornice's Proposed Constructions

In the prior ITC action, the ALJ construed certain disputed claim terms and granted

Cornice summary determination of noninfringement of the '461 patent.  Exh. A-5, Order No. 8: Initial

Determination Granting Respondent's Motion for Summary Determination of Noninfringement, dated

March 7, 2005.  Seagate did not even appeal that ruling and it became a "final determination" of the ITC

before the parties settled their overall ITC dispute in May of 2005. As discussed more fully below, the ALJ's claim constructions of the terms "base member," "cover element," and "head stack assembly" are fully consistent with Cornice's proposed constructions of such terms herein.

## II.    THE '461 PATENT AND CORNICE'S ACCUSED PRODUCT

The '461 Patent issued January 21, 1997 and is entitled "Space Efficient Housing Configuration For A Disk Drive." The Abstract describes the invention as follows (reproduced in part):

> The cover element is provided with a first raised portion to provide a height dimension within the housing sufficient for topmost portions of a spindle motor and head stack assembly of a disk stack assembly of a disk drive. Remaining portions of the top surface of the cover element providing a continuous, single PCB support surface. ... The spindle motor and head stack assembly are mounted to the base member. The removal of the support posts from the base housing element mounting the spindle motor and head stack assembly, as done in conventional disk drives, frees up space on the base to permit greater flexibility in the placement of mechanical components of the disk drive.

Exh. A-4, Abstract.

In contrast, a representation of the relevant aspects of the Cornice SE is shown below:[2]

---

[2]    This and the other depictions of the accused products included herein are simplified views of the Cornice SEs. For additional background on the accused product (and how they differ from the claimed subject matter of the '461 patent), see Cornice's Motion for Summary Determination of Noninfringement of U.S. Patent No. 5,596,461, filed in the prior ITC action (Exh. B).

6.

REDACTED

REDACTED

*See* Exh. A-4, '461 Patent, Col. 2:37-47.

REDACTED

7.

REDACTED

REDACTED

REDACTED

As demonstrated herein, Seagate's proposed constructions are inconsistent with the '461 patent itself, and thus should be rejected.

## ARGUMENT

For a discussion of the legal standards for claim construction, please refer to Cornice's Opening Claim Construction Brief for U.S. Patent No. 6,146,754.

### I.   "BASE MEMBER" AND "COVER ELEMENT"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction(s) |
|---|---|---|
| "base member" [cls. 1, 5, 6 and 7] | The bottom portion of the housing for mounting the components of the drive, *e.g.*, the spindle motor and head stack assembly. | (1) A first housing element to which the cover element is secured and that is separate and distinct from the cover element. *see* Exh. A-8, *Plaintiff's List of Proposed Claim Constructions, July 22, 2005.*<br><br>(2) Portion of the housing for mounting the components of the drive, *e.g.*, the spindle motor and head stack assembly. *E-mail from plaintiff November 16, 2005.* |
| "cover element" [cls. 1 and 6] | The top portion of the housing opposite the base member, which is received over the spindle motor and head stack assembly. | (1) A second housing element that contains the first raised portion, remaining portions, and provides a surface over which the PCB is placed. *Plaintiff's List of Proposed Claim Constructions, July 22, 2005.*<br>(2) The portion of the housing opposite the base member, which is received over the spindle motor and head stack assembly. *E-mail from plaintiff November 16, 2005.* |

Until two days ago, the dispute over the meanings of the terms "base member" and "cover element" stemmed in part from the fact that the claims of the '461 patent specifically require that a PCB (Printed Circuit Board) be attached to the "cover element," but in the accused product the PCB is attached to the base.  Seagate therefore had tried to eliminate any distinction between "base" and "cover" by replacing them both with the more generic term "housing element."  Two days ago, Seagate proffered new constructions, which closely conform to Cornice's proposed constructions and were used by the ITC to find that the accused products could not infringe the '461 patent as a matter of law.[3]  Regardless of

---

[3]     Additional independent bases were also used by the ITC in concluding that the accused products could not infringe the '461 patent.

whether Seagate changes its position yet again, Cornice will explain why its proposed construction is correct and Seagate's original construction and the rationale behind it were flawed.

A. **The Spindle Motor And Head Stack Assembly Must Be Mounted To The "Base Member," Not The "Cover Element"**

1. **Requiring That The Spindle Motor And Head Stack Assembly Be Mounted To The Base Maintains Internal Consistency Of The Claims**

The language of the claims themselves require that the spindle motor and head stack assembly be mounted to the "base member." The claims specifically and separately recite a "base member" and "cover element," and further specify that the cover element must include "a first raised portion to provide a height dimension within the housing *sufficient for topmost portions of a spindle motor and head stack assembly.*" Exh. A-4, '461 Patent at Cols. 6:53-56, 8:5-9 (emphasis added). Therefore, the cover must be received over the spindle motor and head stack assembly, and the cover element must provide a height dimension *sufficient to accommodate the topmost portions* of the spindle motor and head stack assembly. Were the spindle motor and head stack assembly already attached to the "cover element" (as urged by Seagate), this language of the claims would be meaningless. Thus, clearly the spindle motor and head stack assembly cannot be mounted to the cover, meaning they must be mounted to the base, as urged by Cornice.

2. **The Specification Supports Cornice's Constructions**

The specification of the '461 Patent makes clear that, consistent with its ordinary meaning, "base" is used to describe the bottom portion of the housing to which the various disk drive components are mounted:

- "… **the mounting surface of the base plate**…" Exh. A-4, '461 Patent, Col. 2:7-8 ("Background," emphasis supplied).

- "A printed circuit board (PCB) is mounted on **the side of the base plate opposite to the side mounting the head disk assembly**." Exh. A-4, '461 Patent, Col. 2:37-39 ("Background," emphasis supplied).

- "The **spindle motor and head stack assembly are mounted to a base plate**..." Exh. A-4, '461 Patent, Col. 3:46-47 ("Summary of the Invention," emphasis supplied).

- "[T]he **raised portion 28 of the base plate 26 is shaped to accommodate the mounting of a head stack assembly**... A **spindle motor 34 is mounted to the base plate 26**... A **rotatable shaft 42 is mounted to the base plate 26**... A secured magnet 44 is secured between **two mounting plates 46a, b, which are, in turn, mounted to the base plate**..." Exh. A-4, '461 Patent, Col. 4:10-40 ("Detailed Description," emphasis supplied).

These excerpts do not purport to discuss merely a preferred embodiment, but rather they eliminate any possible argument that "base" as used in the claims should somehow be construed to include a cover. *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 866 (Fed. Cir. 2004) ("the specification demonstrates that [the patentee] clearly defined" claim terms because it repeatedly associated a limitation with a claimed structure, and no embodiment or figure was to the contrary). Indeed, there are *46* occurrences of the term "base" in the '461 Patent, all used consistently with its ordinary meaning.

In fact, the patentee even discussed the advantages of attaching the PCB to the cover rather than the base:

> In accordance with another feature of the present invention, a set of support posts is provided on a cover element of the disk drive housing. The spindle motor and head stack assembly are mounted to a base plate. The removal of the support posts from the base housing element mounting the spindle motor and head stack assembly, as done in conventional disk drives, frees up space on the base to permit greater flexibility in the placement of mechanical components of the disk drive. Col. 3, lines 44-52.

Similarly, the specification of the '461 Patent is clear that the "cover"—consistent with its plain and customary meaning—is the top part of the housing that is "received over" the components mounted to the base: "**A cover** having a top and side portions extending downwardly from the top, is **received over the spindle motor and head stack assembly**..." Exh. A-4, '461 Patent, Col. 1:65-2:1 (emphasis supplied). And the term "cover" appears in the '461 Patent *31* times, each used consistently with its ordinary meaning. The specification also clearly demonstrates that Seagate's proposed "housing element" construction is broader than the individual terms such as "cover," identifying the latter as a mere

subset of the former ("... a housing element, such as a housing cover..." Exh. A-4, '461 Patent, Col. 3, lines 17-18). Therefore, the specification demonstrates that the "cover" and "base" are not merely interchangeable "housing elements" as urged by Seagate, but rather have distinct meanings and, according to the '461 patent, provide various distinctions and benefits when compared to one another.[4]

### 3.     Extrinsic Evidence Supports Cornice's Construction

As *Phillips v. AWH Corp.* made clear, the "adoption of a dictionary definition entirely divorced from the context of the written description" is improper. 415 F.3d. 1303, 1317 (Fed. Cir. 2005). Nonetheless, reference to appropriate dictionary definitions confirms that "base" should be construed in accordance with its plain and ordinary meaning as urged by Cornice:  a "base" is "the bottom of something considered as its support : FOUNDATION" (Exh. A-20, Webster's Ninth New Collegiate Dictionary, at p. 133).  Furthermore, the testimony of the sole named inventor on the '461 Patent is

REDACTED               Mr. Stefanksy testified that               REDACTED

REDACTED

Exh. C, Stefansky Tr. at 132-33.          REDACTED

### B.     "Base Member" And "Cover Element" Are Not Meaningless And Interchangeable Limitations As Urged By Seagate

For its part, Seagate attempts to replace the specific limitations "cover" and "base" with the more generic and *broader* term "housing element."[5]  As discussed above, the entirety of the intrinsic

---

[4]     In addition to the specification, arguments made during prosecution further support Cornice's constructions of "base" and "cover."  *See* Morehouse '461 Invalidity Report at ¶¶ 51-53.  They also show a usage of those terms inconsistent with Seagate's current litigation position, and should be rejected for this reason as well.  *Southwall Tech., Inc. v. Cardinal IG Co.,* 54 F.3d 1570 at 1583 (Fed. Cir. 1995).

[5]     Seagate has added extra verbiage to its proposed constructions in an apparent attempt to obscure the fact that it has taken two different terms with different meanings -- "cover" and "base" -- and

(continued . . .)

record belies Seagate's contention. Not only would Seagate's construction lead to internal inconsistencies in the claims and render the terms "base" and "cover" meaningless, but it would also be inconsistent with its usage in the specification and prosecution history, as well as with the positions it has taken with respect to other asserted patents in this litigation. For example, Seagate is alleging that the exact same accused product infringes U.S. Patent No. 6,744,606 ("the '606 patent"), which requires *inter alia* "an actuator rotatably mounted *to the base.*" Seagate contends that the actuator is part of the "head stack assembly," and thus according to Seagate, the '606 patent requires that the head stack assembly be attached to the *base*. In the context of *that* patent, Seagate identifies the structure that mounts the head stack assembly as the "base." In the context of the '461 patent, it identifies that same structure as the "cover element." Seagate cannot have it both ways.

Also noteworthy is the fact that Seagate's expert, Dr. Bogy, has changed his opinions with respect to the proper meaning of this claim limitation and its application to the accused product. In the earlier ITC litigation between Seagate and Cornice, Dr. Bogy adopted Seagate's construction and offered his opinion that the accused product *literally* satisfied that limitation. Now however, Dr. Bogy has reversed course, arguing that the limitation is not satisfied literally. However, in making this change, Dr. Bogy *makes no changes to his proposed construction*. In other words, using the exact same construction, Dr. Bogy has argued that the claimed "base member" *both is and is not* literally present in

---

(. . . continued)

replaced them both with the same term "housing element." For example, Seagate's construction of "cover element" specifies that a cover must, *by definition*, contain a first raised portion, remaining portions, etc. However, these characteristics of the cover are actually spelled out elsewhere in the claims (claim 1: "...the top surface of the cover element including a first raised portion..."), rendering everything after "second housing element" in Seagate's construction redundant. The fact that the claim itself later specifies that the cover element possess these other features (*e.g.*, a first raised portion) is evidence that those concepts are not inherent to the term "cover element" as Seagate now urges, and thus demonstrates the fallacy of Seagate's proposed construction.

13.

the accused devices.[6]   That Seagate's own expert cannot understand Seagate's construction is further evidence that the construction is flawed.

**C.    The International Trade Commission's Decision Regarding The Proper Construction Of "Base Member" Supports Cornice's Construction**

In the earlier ITC action, the ALJ agreed with the pertinent aspects of Cornice's construction and rejected Seagate's attempt to argue that a "cover" could be a "base" and vice-versa:[7]

REDACTED

Exh. A-5, Order No. 8 at 18.   Although not binding on this Court, the ALJ's decision nevertheless supports Cornice's position with respect to the proper construction of these terms.

**D.    Cornice's Constructions Are Consistent With The Understanding Of One Of Ordinary Skill In The Art**

Finally, one of ordinary skill in the art in the May 1995 timeframe would understand the terms "base member" and "cover element" as used in the claims of the '461 patent to be consistent with Cornice's proposed constructions.   See Exh. A, Morehouse '461 Invalidity Report, ¶¶ 39-54; Exh. D,

---

[6]   One must assume that Dr. Bogy recognized that his position (that the "cover" is the "base" and vice versa) was untenable, but felt that actually changing his construction to reflect his new conclusion would jeopardize his credibility even more.

[7]   The ALJ                                      REDACTED
                            REDACTED
                                                 Exh. A-5, Order No. 8,
p. 15.   Cornice continues to believe and assert herein that the patent and claims assume a particular orientation of the device when discussing the invention (e.g., "side walls depending downwardly," etc.).

Rebuttal Expert Report of James H. Morehouse, Ph.D. Regarding the Noninfringement of U.S. Patent No. 5,596,461 ("Morehouse '461 Rebuttal Report[8]") at ¶¶ 16-17, 43-44.

## II.    "HEAD STACK ASSEMBLY"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "head stack assembly" [cls. 1, 5, 6 and 7] | A stack of actuator arms (*i.e.*, a plurality), each mounting a head or pair of heads. | Assembly including an actuator, its arm, recording head, and an electric coil. The HSA can include one or more actuator arms. |

The dispute over the term "head stack assembly" stems in part from the fact that the accused product has only a single actuator arm and head.

### A.    The Intrinsic Evidence Demonstrates That A "Head Stack Assembly" Must Include A Plurality Of Actuator Arms

The specification of the '461 Patent expressly defines "head stack assembly" to include multiple actuator arms: "A **head stack assembly** comprises a **stack of actuator arms, each mounting a head or pair of heads**." Exh. A-4, '461 Patent, Col. 1:48-50. This definition is unambiguous and dispositive of the dispute – it does not state "one or more arms," as now urged by Seagate, but instead specifies an unqualified "stack of actuator arms" in the plural, and at least one head per arm. The analysis should end here, because the law is clear that an explicit definition of a claim term in the specification controls. *See Kopykake Enterprises, Inc. v. Lucks Co.*, 264 F.3d 1377, 1381 (Fed. Cir. 2001) ("the claim must be construed in accordance with the meaning set forth in the specification"); *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1331 (Fed. Cir. 2000) ("Having explicitly defined this term [in the specification] . . . effected a disclaimer . . . Claims are not correctly construed to cover what was expressly disclaimed"). And although the '461 Patent contemplates using the "head stack assembly" with

---

[8]    A copy of the Morehouse '461 Rebuttal Report is being filed as "Exh. D" to the Appendix To Cornice's Opening Claim Construction Brief For U.S. Patent No. 5,596,461, with unnecessary Exhibits thereto removed as not being relevant to the claim construction issues herein.

a "stack" of disks, it makes clear that the "head stack assembly" may also be used with a single disk by providing an arm on each side of that disk to read and write data on both surfaces. '461 Patent, at Col. 2:17-21.

Other portions of the specification reinforce this construction. In particular, the requirement that the head stack assembly include a plurality of actuator arms is repeated in the Detailed Description: "The principal components of the head stack assembly 36 comprise a stack of actuator arms." Exh. A-4, '461 Patent, Col. 4:19-20. In addition, the specification is careful to distinguish between the "head stack assembly," which is used to refer to a stack of multiple actuator arms and heads, and a "head assembly," which refers to an individual actuator arm/head. ("[T]he actuator structure must place an actuator arm/head assembly both above the top most disk surface and below the bottom most disk surface of the stack of discs." Exh. A-4, '461 Patent, Col. 2:17-20.). The specification goes on to state:

> In accordance with a feature of the present invention, a first raised portion of a housing element, such as a housing cover, is dimensioned to receive the top most portions of the spindle motor and actuator assembly, and includes a region that permits the movement of *the top most actuator arm* relative to a top disk surface.

Exh. A-4, '461 Patent, Col. 3, lines 17-22 (emphasis added). A device obviously must have more than one arm in order for one of those arms to be the "top most."

Finally, the definition of "head stack assembly" in the '461 Patent is entirely consistent with the ordinary meaning of "stack," i.e., "an orderly pile or heap, a large quantity or number." *See* Exh. A-20, Webster's Ninth New Collegiate Dictionary, at 1146.[9]

---

[9]    Seagate may point to certain REDACTED

REDACTED    However, this, like all other extrinsic evidence, cannot be used to vary or contradict the unambiguous definition of the term dictated by the public, intrinsic record of the patent itself. *Novartis Pharm. Corp. v. Abbott Labs*, 375 F.3d 1328 at 1335 (Fed. Cir. 2004) ( "Although extrinsic evidence may be used by the court to help understand the disputed limitation, it may not be used to vary, contradict, expand, or limit the claim language by how it is defined, even by implication, in the specification or file history."); *Intel Corp. v. Via Tech, Inc.,*, 319 F.3d 1357 (Fed. Cir. 2003) ("When an analysis of intrinsic evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic (continued . . .)

Thus, in view of the explicit definition of the term in the '461 Patent, the proper construction for "head stack assembly" requires *a stack of actuator arms (i.e., a plurality), each mounting a head or pair of heads.*

### B.    The ITC Accepted Cornice's Construction

According to the ALJ in the ITC action:

REDACTED

Exh. A-5, Order No. 8, p. 21.  Again, although not dispositive of the issue, such a conclusion from the ALJ is nonetheless probative here.

### C.    Cornice's    Construction    Is    Consistent    With    The Understanding Of One Of Ordinary Skill In The Art

Finally, one of ordinary skill in the art in the May 1995 timeframe would understand the term "head stack assembly" as used in the claims of the '461 patent to be consistent with Cornice's proposed construction.  See Exh. A, Morehouse '461 Invalidity Report, ¶¶ 55-59; Exh. D, Morehouse '461 Rebuttal Report, ¶¶ 22, 23, 45.

### III.    "CONTINUOUS, SINGLE PCB SUPPORT SURFACE"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
| --- | --- | --- |
| "continuous, single PCB support surface"  [cls. 1 and 6] | A single, uninterrupted surface for mounting a PCB, and not discrete mounting locations for a PCB. | A surface that provides support for one and only one, non-segmented printed circuit board. |

---

(. . . continued)
    evidence to contradict the meaning so ascertained.").  Furthermore, that someone else may use the term "head stack assembly" in a manner different than that of the '461 patent is of no moment – claim construction exists because words are subject to multiple interpretations.

The parties do not dispute that this limitation requires the presence of a PCB support surface. However, the accused product lacks a continuous, single PCB support surface and instead the PCB is mounted at discrete locations. Seagate does not dispute that the PCB in the accused product is mounted at discrete locations, but instead argues that "continuous, single" modifies only the adjective "PCB" rather than describing the "PCB support surface." Seagate's position does not withstand scrutiny in light of the intrinsic evidence.

Any perceived ambiguity with respect to whether "continuous, single" modifies "PCB support surface" or just "PCB" was eliminated during prosecution of the '461 patent, as would be recognized by a person of ordinary skill in the art. The patentee was confronted with a rejection based on U.S. Patent No. 5,025,335 ("the '335 patent") (Exh. A-10), entitled "Architecture for 2 ½ Inch Diameter Single Disk Drive," which issued June 18, 1994. Figure 1 from Stefansky '335 is reproduced below (nonessential reference numerals removed for clarity):



In response to the rejection, the patentee made the following statements:

> Additionally, claim 1 requires that the top surface include a "*continuous, single PCB support surface*." However, Stefansky '335 *shows the PCB mounted by way of four discrete mounting brackets*. The Applicant respectfully submits that four discrete mounting brackets would not be understood by one skilled in the art to be the same as a "continuous,

single PCB support surface," as required by the explicit language of
claim 1.

Exh. A-14, Amendment dated May 13, 1996, page 10. The argument above obviously has nothing to do

with the number of PCBs, and Seagate itself admits that Figure 1 of the '335 patent shows only one PCB.

The argument above also makes no mention of the positioning of the PCB (*e.g.*, below the base or above

the cover). Instead, the patentee clearly contrasted a <u>continuous</u> support surface for the PCB with support

for the PCB at only <u>discrete</u> locations, and furthermore indicated his claims only encompassed the

former.[10] The patentee thus explicitly limited the phrase "continuous, single PCB support surface" to

exclude designs that connect the PCB to the support surface at discrete locations, and it would be

improper to construe the phrase inconsistent with that disclaimer.[11] Although Seagate tries to explain

away this disclaimer by pointing to other alleged distinctions between its design and the '335 prior art

patent, the fact remains that the patentee distinguished his claimed "continuous, single" PCB support

surface from "discrete mounting brackets, "and Seagate cannot now reclaim what was surrendered during

prosecution. *See Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1368 (Fed. Cir. 2001) ("[A]ll express

representations made by or on behalf of the applicant to the examiner to induce a patent grant limit the

interpretation of the claims so as to exclude any interpretation that may have been disclaimed or

disavowed during prosecution in order to obtain claim allowance.") (citations omitted).

Furthermore, one of ordinary skill in the art in the May 1995 timeframe would

understand the phrase "continuous, single PCB support surface" as used in the claims of the '461 patent to

be consistent with Cornice's proposed construction. <u>See</u> Exh. A, Morehouse '461 Invalidity Report, ¶¶

60-64; Exh. D, Morehouse '461 Rebuttal Report, ¶¶ 25-26, 48.

---

[10]     Seagate's remaining argument is that what the patentee was really saying was that the "mounting
brackets" were "discrete" from the "top surface." Again, no such distinction was drawn during
prosecution, nor could it be, as the mounts on the '335 patent are not separate from the cover.

[11]     If "continuous, single" modified just the adjective "PCB," as Seagate now argues, then the claims
would be redundant, since a single PCB is by definition continuous, and vice-versa.

## CONCLUSION

For the foregoing reasons, the Court should adopt Cornice's proposed constructions for the claim limitations of the '461 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ *Julia Heaney*
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
   *Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Original Filing Date: November 18, 2005

Redacted Filing Date: November 28, 2005

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on November 28, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC  20005

*/s/ Julia Heaney*
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL
jheaney@mnat.com
*Attorneys for Defendant and
Counterclaim Plaintiff Cornice, Inc.*