IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEAGATE TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-418-SLR |
| | ) | |
| CORNICE, INC. | ) | **REDACTED VERSION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CORNICE'S OPENING BRIEF IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT [NO. 1] OF NON-INFRINGEMENT OF
U.S. PATENT NOS. 6,146,754 AND 5,600,506 PURSUANT TO LICENSE**

        MORRIS, NICHOLS, ARSHT & TUNNELL
        Jack B. Blumenfeld (#1014)
        Julia Heaney (#3052)
        1201 N. Market St.
        Wilmington, DE 19899
        (302) 658-9200
        jheaney@mnat.com
            *Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Original Filing Date: November 18, 2005
Redacted Filing Date: November 28, 2005

i.

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CITATIONS | | ii |
| NATURE AND STAGE OF THE PROCEEDING | | 1 |
| STATEMENT OF FACTS | | 1 |
| I. | CORNICE'S PRODUCTS | 1 |
| II. | SEAGATE GRANTED BROAD RIGHTS TO REDACTED CORPORATION AND REDACTED SUBSIDIARIES | 2 |
| SUMMARY OF ARGUMENT | | 2 |
| ARGUMENT | | 3 |
| I. | LEGAL STANDARD | 3 |
| II. | REDACTED WAS SUBLICENSED AS OF 1995 | 3 |
| III. | REDACTED IS AUTHORIZED TO TRANSFER LICENSED PRODUCTS AND LICENSED COMBINATIONS TO CORNICE | 5 |
| IV. | CORNICE IS IMMUNE FROM SUIT FOR THE SALE OF LICENSED PRODUCTS AND LICENSED COMBINATIONS | 7 |
| V. | "LICENSED PRODUCTS" INCLUDE THE MAGNETIC DISKS THAT ARE THE SUBJECT OF THE '754 AND '506 PATENTS | 7 |
| | A.   Cornice Is Immune From Suit Under The '754 Patent | 8 |
| | B.   Cornice Is Immune From Suit Under The '506 Patent | 9 |
| VI. | "LICENSED COMBINATIONS" INCLUDE THE SERVO SYSTEMS THAT ARE THE SUBJECT OF THE '506 PATENT | 10 |
| VII. | THE DOCTRINE OF PATENT EXHAUSTION ALSO BARS INFRINGEMENT | 13 |
| CONCLUSION | | 14 |

ii.

## TABLE OF CITATIONS

Page(s)

Cases

Bloomer v. Millinger,
    68 U.S. (1 Wall.) 340, 350-51 (1864)      13

Heidelberg Harris, Inc. v. Loebach,
    145 F.3d 1454 (Fed. Cir. 1998)      3

Intel Corp. v. ULSI System Technology, Inc.,
    995 F.2d 1566 (Fed. Cir. 1993)      13

Lisle Corporation v. Edwards,
    777 F.2d 693 (Fed. Cir. 1985)      3

Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.,
    103 Cal.App.4th 30 (Ct. App. 2002)      5

Statutes

35 U.S.C. § 271(a)      3

35 U.S.C. § 271(c)      7, 10, 11

1.

## NATURE AND STAGE OF PROCEEDING

Seagate Technology LLC ("Seagate") brought this action for infringement of seven patents against Cornice, Inc. ("Cornice") on June 22, 2004. On May 20, 2005, Cornice was granted leave to amend its answer and counterclaims to assert, inter alia, an affirmative defense of license,

REDACTED

The cross-license covers the technology claimed by two of the patents in suit: U.S. Patent Nos. 6,156,754 ('754 patent) and 5,600,506 ('506 patent).

REDACTED

The legal doctrine of patent exhaustion also bars infringement.

Cornice's licensing defense has been thoroughly vetted. Both parties retained licensing experts who have twice submitted expert reports and been deposed, first in a now-settled ITC unfair importation investigation, and again in this action. Both parties fully briefed Cornice's licensing defense to the ITC prior to settlement of that matter. The extensive proceedings on Cornice's licensing defense have confirmed that there are no genuine issues of material fact.

## STATEMENT OF FACTS

### I.  CORNICE'S PRODUCTS

Cornice designs and sells miniature hard drives that are used in consumer electronic devices like portable music players. Cornice designs these hard drives in its Longmont, Colorado facility. Cornice's hard drives each contain a tiny (approximately 1" diameter) magnetic disk, which is used to store data on the drive. These disks are embedded with a "servo" pattern, which is a pattern of data on the magnetic disk that helps the read/write head of the disk know where to store or retrieve data on the disk.

REDACTED                                   See Appendix In Support Of Cornice's Motion For Summary Judgment RE Licensing Defense (hereinafter, "Appendix"), Exh. A

[Contract Manufacturing Agreement].  REDACTED

See Appendix, Exh. B, at 457:21-22 [6/23/05 McNeil Depo.].  REDACTED

See Appendix, Exh. A [Contract Manufacturing Agreement] & Exh. C, at 15:14-16:2; 142:8-24 [7/15/05 Holt Depo.]. REDACTED

See Appendix, Exh. A, § 5.4 [Contract Manufacturing Agreement] & Exh. C, at 15:14-16:2 [7/15/05 Holt Depo.]. The completed drives are then shipped around the world.

## II. SEAGATE GRANTED BROAD RIGHTS TO REDACTED CORPORATION AND SUBSIDIARIES
REDACTED

REDACTED  See Appendix, Exh. D ("License")].

REDACTED

See Appendix, Exh. E [1/14/05  . Under the License,

REDACTED

See Appendix, Exh. D, § 2.3 [License]. There is no dispute that the '754 and '506 patents constitute "Licensed Patents." The only patent in suit that is not a Licensed Patent is Seagate's U.S. Patent No. 6,744,606 ("the '606 patent"), because its effective filing date is after December 1, 2000.

## SUMMARY OF ARGUMENT

Cornice cannot infringe the '754 and '506 patents because it is the beneficiary of the cross-license agreement between Seagate REDACTED The magnetic disks and servo systems allegedly covered by the '754 and '506 patents are "Licensed Products" under the License. REDACTED

REDACTED    By the terms of the License, Cornice is immune from suit under the '754 and '506 patents. Furthermore, the authorized transfer of the hard drives from REDACTED Cornice exhausts Seagate's asserted patent rights.

## ARGUMENT

### I.  LEGAL STANDARD

The Court can properly resolve Cornice's licensing defense on summary judgment. "The construction of a license agreement is a question of law." Heidelberg Harris, Inc. v. Loebach, 145 F.3d 1454, 1458 (Fed. Cir. 1998). Similarly, questions of patent exhaustion are legal issues appropriate for resolving on summary judgment. See Lisle Corporation v. Edwards, 777 F.2d 693, 694 (Fed. Cir. 1985).

There can be no patent infringement when a party is authorized to use the claimed technology. See 35 U.S.C. § 271(a) ("[W]hoever **without authority** makes, uses, offers to sell, or sells any patented invention ... infringes the patent.") (emphasis supplied).

The License is to be interpreted under California Law. See Appendix, Exh. D, § 11.1 [License]. The parties agree that the License is to be interpreted within its four corners, without resort to extrinsic evidence. See Appendix, Exh. F, at 79:17-80:1 [10/11/05 Smith Depo.].

### II.  REDACTED WAS SUBLICENSED AS OF 1995

It is beyond reasonable dispute that REDACTED had a sublicense to the REDACTED Seagate cross-license as of November 1, 1995. Seagate acknowledges that this sublicense was in effect as of January 20, 2005. See Appendix, Exh. G, at 405 n.54 [Seagate ITC Prehearing Brief]. On that date, in response to this lawsuit, REDACTED

See Appendix, Exh. E [1/14/05 Letter from REDACTED & Exh. I, 17:5-14 [6/28/05 Depo.]. After Seagate questioned whether this sublicense had been in effect as of 1995, REDACTED provided further written confirmation that, indeed, the sublicense "extended to REDACTED as of November 1, 1995":

4.

REDACTED

See Appendix, Exh. J [6/27/05    REDACTED    ] (emphasis added) & Exh. I, at 18:2-21:15 REDACTED [6/28/05    Depo.].

REDACTED Seagate has no evidence to the contrary.

Legal principles of mutuality of contract confirm that REDACTED was sublicensed as of 1995. Upon executing the cross-license, rights flowed mutually from REDACTED to Seagate, and from Seagate to REDACTED This is because the Licensed Patents include REDACTED subsidiaries. See Appendix, Exh. D, § 1.7 [License] ("'Licensed Patents' shall mean all patents ... under which patents or the applications therefore GRANTOR *or any of its Subsidiaries* now has, or hereafter obtains, the right to grants licenses to GRANTEE...") (emphasis supplied).[1] By executing the License, REDACTED granted a license to Seagate REDACTED See Appendix, Exh. D, § 2.1 [License] ("REDACTED on behalf of itself and its Subsidiaries grants to SEAGATE [rights under the Licensed Patents]"). REDACTED President confirmed that REDACTED had this power to act on behalf of its subsidiaries. See Appendix, Exh. D, § 7.1 [License] REDACTED

---

[1] Section 1.7 of the License provides in pertinent part:
REDACTED
See Appendix, Exh. D, § 1.7 [License].

5.

Seagate's own licensing expert agrees that, as long as REDACTED had the right to act on behalf of its subsidiaries on November 1, 1995 (as was represented by REDACTED President in the License), then principles of contract mutuality dictate that the license to Seagate's patents extended to REDACTED on that date:

REDACTED

See Appendix, Exh. F, at 55:20-56:8 [10/11/05 Deposition of Roger Smith] (objection omitted). Seagate's expert is correct. California law requires mutuality of obligation. See Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc., 103 Cal.App.4th 30, 36 (Ct. App. 2002) ("In essence, mutuality of obligation must exist where the exchange of promises between promisor and promise is meant to represent the contract's consideration.") (citation omitted). Because REDACTED patent rights flowed to Seagate as of November 1, 1995, Seagate's patent rights reciprocally flowed to REDACTED on that date. Thus, it is beyond dispute that, as of November 1, 1995, REDACTED was sublicensed under the Licensed Patents.

### III. REDACTED IS AUTHORIZED TO TRANSFER LICENSED PRODUCTS AND LICENSED COMBINATIONS TO CORNICE

The License defines categories of Licensed Products and Licensed Combinations that REDACTED are authorized to make, use, sell, and otherwise transfer to Cornice. As long as the technology used and transferred by REDACTED constitutes a Licensed Product or Licensed Combination (as will be demonstrated below), then the transfer of this technology to Cornice is fully authorized by Seagate. Specifically, the License grants REDACTED and its subsidiaries the following right:

REDACTED

See Appendix, Exh. D, § 2.3.1 [License].

6.

Seagate denies that the "otherwise transfer" language of the license applies to Cornice's products. As set forth above, it is undisputed that Cornice orders magnetic disks from [REDACTED] in [REDACTED] which ships the bare magnetic disks to [REDACTED] assembles the disks into disk drives, and writes "servo" data onto the disks. See Appendix, Exh. A [Contract Manufacturing Agreement] & Exh. C, at 15:14-16:2; 142:8-24 [7/15/05 Holt Depo.].

[REDACTED] See Appendix, Exh. A, § 5.4 [Contract Manufacturing Agreement] & Exh. C, at 15:14-16:2 [7/15/05 Holt Depo.].

[REDACTED]

Seagate nonetheless denies this conclusion, asserting that the "otherwise transfer" language only applies to products to which [REDACTED] had legal title at the time of transfer. See Appendix, Exh. G, at 408 [Seagate ITC Prehearing Brief]. According to Seagate, because [REDACTED] allegedly did not accept legal title to the bare disks from [REDACTED] then [REDACTED] work in assembling the drives, writing servo data to the drives, and shipping the completed drives to Cornice is unauthorized conduct outside the scope of the License. However, there is <u>zero</u> textual support in the License for Seagate's restrictive interpretation.

[REDACTED]

See Appendix, Exh. K, at 174:3-13 [8/18/05 Hudson Depo.] & Exh. L, §§ 3.1.1 & 3.3.1 [4/1/03 [REDACTED]. Indeed, Black's Law Dictionary defines "transfer" to include a transfer of possession. See Appendix, Exh. M [Black's Law Dictionary] ("**Transfer, v.** To convey or remove from one place, person, etc., to another; pass or hand over from one to another; specifically to change over the possession or control of....."). There is nothing to suggest that the term "transfer" is limited to transfers of legal title.

[REDACTED]

Accordingly, it is beyond dispute that [REDACTED] "transfers" the accused disk drives to Cornice. As long as the technology contained in those disk drives constitutes a Licensed Product or a Licensed Combination (as will be demonstrated below), then the transfer is fully authorized by Seagate.

IV. **CORNICE IS IMMUNE FROM SUIT FOR THE SALE OF LICENSED PRODUCTS AND LICENSED COMBINATIONS**

To the extent the disk drives transferred by REDACTED to Cornice contain Licensed Products and Licensed Combinations, Cornice is free to sell those disk drives to others. The License expressly immunizes from suit customers such as Cornice that purchase Licensed Products and Licensed Combinations from REDACTED for the subsequent resale, importation, transfer, etc., of those products. Seagate granted an immunity from suit to REDACTED customers for such activities, as specified in Paragraph 2.5 of the License:

REDACTED

See Appendix, Exh. D, § 2.5 [License] (bolded emphasis supplied). The carve-out language at the end of Section 2.5 does not apply, because Cornice does not combine the Licensed Products and Licensed Combinations with other apparatus not supplied by REDACTED and its Subsidiaries. Accordingly, Cornice is free to use, lease, sell, offer to sell, import, or transfer the Licensed Products and Licensed Combinations.

V. **"LICENSED PRODUCTS" INCLUDE THE MAGNETIC DISKS THAT ARE THE SUBJECT OF THE '754 AND '506 PATENTS**

The "Licensed Products" covered by the License include the magnetic disks in Cornice's REDACTED disk drives. REDACTED is fully licensed to import, make, use, sell, or otherwise transfer any Magnetic Recording Medium and any Magnetic Disc, defined as follows:

8.

REDACTED

See Appendix, Exh. D, § 1.1-1.2 [License]. The License expressly states that these defined fields of technology constitute "Licensed Products." See Appendix, Exh. D, § 1.8 [License]

REDACTED

(emphasis supplied).

Cornice's disk drives each contain a magnetic disk. There is no dispute that the magnetic disks in Cornice's disk drives meet the definition of the Magnetic Discs covered by the License. See Appendix, Exh. N, at 86:8-12 [4/7/05 Smith Depo.].

### A. Cornice Is Immune From Suit Under The '754 Patent

Seagate's '754 patent purports to cover magnetic disks. Every asserted claim of the '754 patent is directed to a "magnetic recording medium," or a method for its manufacture. See Appendix, Exh. O ['754 Patent].[2] Seagate is barred from suing Cornice under the '754 patent, because Cornice is fully authorized to use and sell the technology claimed by this patent. The logic is irrefutable:

- REDACTED is sublicensed under the License;

- REDACTED is authorized to transfer "Licensed Products" (License § 2.3.1);

- "Licensed Products" include "Magnetic Discs" (License §§ 1.2, 1.8);

- The disks in Cornice's drives constitute "Magnetic Discs";

- REDACTED "transfers" the Licensed Products to Cornice (License § 2.3.1);

- Cornice is immune from suit for the sale of Licensed Products transferred from REDACTED (License § 2.5);

- The '754 patent covers "magnetic recording media," which are Licensed Products.

---

[2] The asserted claims of the '754 patent are claims 1, 6, 7, and 10-13.

Seagate has little to refute this argument. Essentially, Seagate's defense rests on asserting that REDACTED was not sublicensed (despite REDACTED express statement to the contrary), and that REDACTED transfer of disk drives is not covered by the license REDACTED

Because Seagate's arguments are unsupportable, the Court should conclude that Cornice is immune from suit under the '754 patent.

### B. Cornice Is Immune From Suit Under The '506 Patent

Cornice is also immune from suit under the '506 patent because its claims similarly cover Licensed Products. Claims of the '506 patent are directed to a "magnetic disk." See Appendix, Exh. P, Claims 22-32 ['506 Patent].[3] The claimed technology is expressly a Licensed Product. See Appendix, Exh. D, §§ 1.2, 1.8 [License]. As described above, REDACTED is fully authorized to transfer magnetic disks to Cornice, and Cornice is authorized to use and sell these disks. Cornice cannot infringe these claims, because Cornice is fully authorized to use and sell these Licensed Products. The analysis is the same as for the '754 patent -- i.e., REDACTED is sublicensed under the REDACTED and therefore authorized by Seagate to transfer these Licensed Products to Cornice, which is thereby authorized to sell them.

Cornice is immune from suit under all claims of the '506 patent, because the licensed magnetic disk is a material component of all claims of that patent.

REDACTED

See Appendix, Exh. D, § 2.5 [License]. Thus, the immunity is not drawn narrowly to claims that cover only Licensed Products, but also extends more broadly to systems and methods of which the Licensed Product

---

[3] For example, claim 22 recites: "A magnetic disk for use in a sector servo disk drive system, said disk having a plurality of sectors located on a surface of said magnetic disk, each sector having ...." See Appendix, Exh. P, Claim 22 ['506 Patent]. Claims 22 – 32 are directed only to a "magnetic disk."

is a material part. See 35 U.S.C. § 271(c).[4] The magnetic disk is plainly a material component of all claims of the '506 patent, because the "magnetic disk" or "disk" or "disk surface" is recited as the focus of every claim. Moreover, Cornice's customized magnetic disks are not staple items of commerce.[5]

> REDACTED
>
> [6] Therefore, the immunity from suit extends to all asserted claims of the '506 patent.

### VI. "LICENSED COMBINATIONS" INCLUDE THE SERVO SYSTEMS THAT ARE THE SUBJECT OF THE '506 PATENT

As an additional basis for immunity under the '506 patent, Cornice's accused servo systems constitute "Licensed Combinations" that are protected by the License. Section 1.10 of the License defines Licensed Combinations.[7] As explained by Seagate's expert, four criteria must be satisfied in order for a "larger assembly" to constitute a Licensed Combination:

---

[4] Contributory infringement is governed by 35 U.S.C. § 271(c). Omitting the intent clause (as required by the License), this provision reads: "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, ..., and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

[5] See Appendix, Exh. Q, at 179:15-183:7 [10/20/05 Morehouse Depo]. There is no genuine factual dispute that Cornice's disks have no substantial non-infringing uses (accepting as true Seagate's infringement allegations).

[6] See Appendix, Exh. R, ¶ 18 [7/14/04 Seagate's Amended Complaint]
REDACTED
; see also Appendix, Exh. S, ¶ 92 [8/22/05 Expert Report of William Messner]
REDACTED
Appendix, Exh. T, at p.24 [Seagate's Supplemental Response To Cornice's Interrogatory No. 2]
REDACTED

[7]

(continued . . .)

REDACTED

Each of these criteria is met by the servo systems used in Cornice products accused of infringing the '506 patent.

First, the "larger assembly" of Cornice's servo system is allegedly covered by claims of the '506 patent, which is indisputably a Licensed Patent. There is no dispute that the "larger assembly" referred to in this provision is determined by reference to the claim allegedly infringed.[10] For example, Claim 1 of the '506 patent recites the elements of a disk surface and a position generator; accordingly, the "larger assembly" defined by Claim 1 is a disk surface plus a position generator. Seagate's expert agreed

---

(. . . continued)

REDACTED

See Appendix, Exh. D, § 1.10 [License].

[8]   "Other Claims" are defined by Section 1.11 of the License as follows:

REDACTED

[9]   See Appendix, Exh. U, at 14-15 [9/19/05 Smith Expert Report].

[10]  See Appendix, Exh. F, at 118:13-14 [10/11/05 Smith Depo.]    REDACTED

12.

that, assuming the disk is a Licensed Product, that this larger assembly is covered by a claim of a Licensed Patent (namely, the '506 patent).[11]

With regard to the second prong, it is beyond dispute that the Licensed Product in Cornice's servo system (i.e., the magnetic disk embedded with servo data) does not have other viable commercial uses. Even the bare disks from REDACTED are custom made for Cornice, and cannot be interchanged into other manufacturers' disk drives.[12] Moreover, once the disk is encoded with Cornice's unique servo data, the disk is further tailored to Cornice's own specialized requirements.[13] There is no genuine dispute on this point.[14]

Third, as already addressed above, there is no genuine dispute that sale of the licensed magnetic disks for use in the "larger assembly" of the servo system would constitute contributory infringement of the claims of the '506 patent, because the magnetic disk is a material part of the claimed inventions of the '506 patent, and because there are no substantial non-infringing uses of Cornice's disks (as alleged by Seagate).[15]

Fourth, the "larger assemblies" of the claims of the '506 patent are not covered by an "Other Claim." The only "Other Claims" identified by Seagate's expert are the claims of the '754 patent (which as discussed above are fully licensed) and the claims of the '606 patent.[16] The claims of the '606 patent have nothing to do with the servo system at issue in the '506 patent. The claims of the '606 patent

---

[11] See Appendix, Exh. F, at 118:19-119:18 [10/11/05 Smith Depo.].

[12] See Appendix, Exh. Q, at 181:3-17 [10/20/05 Morehouse Depo]
REDACTED

[13] See Appendix, Exh. F, at 121:4-122:4 [10/11/05 Smith Depo.].

[14] See Appendix, Exh. F, at 120:17-121:3 [10/11/05 Smith Depo.].

[15] See supra, at 11-12.

[16] See Appendix, Exh. F, at 114:2-115:6 [10/11/05 Smith Depo.].

concern an actuator arm.[17] The claims of the '506 patent do not involve an actuator arm (e.g., claim 1 of the '506 patent covers a disk surface plus a position generator). There simply is no overlap between the "Other Claims" identified by Seagate and the servo system at issue in the '506 patent.

Thus, it is beyond genuine dispute that the servo systems in Cornice's disks satisfy all four criteria to qualify as Licensed Combinations. This therefore provides another basis for finding that Cornice is immune from suit under the '506 patent. See Appendix, Exh. D, at § 2.5 [License]
REDACTED

### VII. THE DOCTRINE OF PATENT EXHAUSTION ALSO BARS INFRINGEMENT

Aside from the immunity conferred by Section 2.5 of the License, the doctrine of patent exhaustion also precludes infringement of the '754 and '506 patents. Every sale of a disk drive from REDACTED to Cornice is an authorized sale, as explained above. These sales from to Cornice constitute U.S. sales, because the completed disk drives are "sold to" Cornice's headquarters in Longmont, Colorado.[18]

REDACTED

[19] Thus, every disk drive manufactured by for Cornice is the subject of an authorized U.S. sale prior to its re-sale to Cornice's customers. These authorized sales exhaust the '754 and '506 patents as to the accused products. See Intel Corp. v. ULSI System Technology, Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993) (quoting Bloomer v. Millinger, 68 U.S. (1 Wall.) 340 (1864)) ("The law is well settled that an authorized sale of a patented product places that product beyond the reach of the patent.").

---

[17]  See Appendix, Exh. V ['606 Patent].
REDACTED
[18]  See Appendix, Exh. W [Cornice Purchase Order] & Exh.       Invoice].

[19]  See Appendix, Exh. A, at §§ 6.4, 25.0 [Contract Manufacturing Agreement].

14.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Cornice that it does not infringe the '754 and '506 patents, because it is immune from suit under these patents pursuant to the License, and because the '754 and '506 patents are exhausted by an authorized U.S. sale.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Vernon Winters<br>Steven Carlson<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>(650) 802-3000<br><br>Russell Wheatley<br>WEIL, GOTSHAL & MANGES LLP<br>700 Louisiana, Suite 1600<br>Houston, TX 77001<br>(713) 546-5000<br><br>Alan J. Weinschel<br>David C. Radulescu<br>Arlene Hahn<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8000<br><br>Original Filing Date: November 18, 2005<br><br>Redacted Filing Date: November 28, 2005 | MORRIS, NICHOLS, ARSHT & TUNNELL<br><br>/s/ Julia Heaney<br>Jack B. Blumenfeld (#1014)<br>Julia Heaney (#3052)<br>1201 N. Market St.<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jheaney@mnat.com<br>*Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.* |

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on November 28, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>William J. Marsden, Jr., Esquire
>Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

>William J. Marsden, Jr., Esquire
>Fish & Richardson, P.C.
>919 N. Market Street, Suite 1100
>Wilmington, DE 19801

### BY FEDERAL EXPRESS

>Ruffin B. Cordell, Esquire
>Fish & Richardson, P.C.
>1425 K Street, NW, Suite 1100
>Washington, DC 20005

>/s/ *Julia Heaney*
>Julia Heaney (#3052)
>MORRIS, NICHOLS, ARSHT & TUNNELL
>jheaney@mnat.com
>  *Attorneys for Defendant and*
>  *Counterclaim Plaintiff Cornice, Inc.*