IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEAGATE TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-418-SLR |
| | ) | |
| CORNICE, INC. | ) | **REDACTED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CORNICE INC.'S ANSWERING BRIEF IN RESPONSE TO SEAGATE'S
OPENING CLAIM CONSTRUCTION BRIEF FOR U.S. PATENT 5,596,461**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
    *Attorneys for Defendant and Counterclaim Plaintiff
    Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
**Redacted Filing Date: December 22, 2005**
Original Filing Date: December 16, 2005

i.

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CITATIONS | | ii |
| NATURE AND STAGE OF THE PROCEEDING | | 1 |
| SUMMARY OF ARGUMENT | | 1 |
| ARGUMENT | | 2 |
| I. | "BASE MEMBER" AND "COVER ELEMENT" | 3 |
| | A. THE INTRINSIC RECORD REQUIRES THAT THE "BASE MEMBER" BE THE BOTTOM PORTION OF THE HOUSING, AND THAT THE "COVER ELEMENT" BE THE TOP PORTION. | 3 |
| II. | "HEAD STACK ASSEMBLY" | 4 |
| III. | "CONTINUOUS, SINGLE PCB SUPPORT SURFACE" | 5 |
| | A. CORNICE'S CONSTRUCTION MAINTAINS THE INTERNAL CONSISTENCY OF THE CLAIM LANGUAGE | 5 |
| | B. CORNICE'S CONSTRUCTION IS NOT INCONSISTENT WITH THE PRINCIPLES OF ENGLISH GRAMMAR | 6 |
| | C. CORNICE'S CONSTRUCTION IS CONSISTENT WITH THE PURPORTED BENEFITS OF THE INVENTION | 6 |
| | D. CORNICE'S CONSTRUCTION DOES NOT READ OUT THE PREFERRED EMBODIMENT | 7 |
| | E. CORNICE HAS NEVER ARGUED THAT THE "REMAINING PORTIONS" CANNOT HAVE MULTIPLE LEVELS | 8 |
| CONCLUSION | | 8 |

ii.

<u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

<u>Cases</u>

*Apple Computer v. Articulate Sys, Inc.*,
   234 F.3d 14 (Fed. Cir. 2000)       6

1.

## NATURE AND STAGE OF THE PROCEEDING

Seagate Technology LLC ("Seagate") brought this action against Cornice, Inc. ("Cornice") for infringement of seven patents on June 22, 2004. The parties have exchanged opening claim construction briefs. Cornice is submitting this Response to Seagate's opening brief regarding the construction of claim terms appearing in U.S. Patent No. 5,596,461 ("the '461 patent").[1]

The '461 patent was also at issue in a co-pending ITC Investigation. In the ITC action, the ALJ (Judge Harris) ruled that Cornice did not infringe U.S. Patent No. 5,596,461 ("the '461 patent") as a matter of law, based on its adoption of several of Cornice's proposed claim constructions as explained herein. Seagate did not appeal that ruling, and it became a "final determination" of the ITC *before* the parties settled their ITC dispute in May of 2005. Nevertheless, Seagate continues to assert the '461 patent in this action.

## SUMMARY OF ARGUMENT

Seagate has alleged that the accused product (the 1.0, 1.5, 2.0, and 3.0 gigabyte "Cornice Storage Element" or "Cornice SE") infringes claims 1, 5, 6 and 7 of the '461 patent. The parties have offered conflicting constructions for four limitations that exist in all of the asserted claims: (1) "base member," (2) "cover element," (3) "head stack assembly," and (4) "continuous, single PCB support surface." As made clear from its opening brief, Seagate's arguments ignore the intrinsic record, and lack basis in law.

Furthermore, two days before opening briefs were due, Seagate indicated for the first time that it intended to modify its proposed constructions of (1) "base member" and (2) "cover element" to closely conform to those advanced by Cornice and those used by the ITC in granting summary

---

[1]    References to Exhibits A-D are to those attached to Cornice's Opening Claim Construction Brief for the '461 Patent (D.I. 180). Exhibits E-F are attached herewith.

2.

judgment that the accused products could not infringe the '461 patent – an adverse ruling that Seagate did not appeal. In fact, the portion of the construction now belatedly embraced by Seagate was one of the independent bases for the ITC's determination that Cornice cannot infringe the '461 patent as a matter of law.

Cornice believes that the remaining differences between Cornice's and Seagate's constructions of these two terms ("base member" and "cover element") have no bearing on any issues of non-infringement or invalidity, and thus the Court need not settle this dispute. However, Cornice does believe that its construction is the one supported by the intrinsic record. Indeed, the claim language itself provides a spatial orientation of the claimed elements, and the prosecution history refers to the "cover element" as the "top."

With respect to (3) "head stack assembly" and (4) "continuous, single PCB support surface," Seagate's opening brief continues to present constructions inconsistent with the intrinsic record and without basis in law. Without repeating *in toto* its Opening Brief, Cornice will likewise respond to the other pertinent errors of Seagate's argument as warranted.

## ARGUMENT

For a discussion of the legal standards for claim construction, please refer to Cornice's Opening Claim Construction Brief for U.S. Patent No. 6,146,754.

3.

I.    **"BASE MEMBER" AND "COVER ELEMENT"**

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction(s) |
|---|---|---|
| "base member" [cls. 1, 5, 6 and 7] | The bottom portion of the housing for mounting the components of the drive, *e.g.*, the spindle motor and head stack assembly. | (1) A first housing element to which the cover element is secured and that is separate and distinct from the cover element. *see* Exh. A-8, *Plaintiff's List of Proposed Claim Constructions, July 22, 2005.*<br><br>(2) Portion of the housing for mounting the components of the drive, *e.g.*, the spindle motor and head stack assembly.<br>*E-mail from plaintiff November 16, 2005.* |
| "cover element" [cls. 1 and 6] | The top portion of the housing opposite the base member, which is received over the spindle motor and head stack assembly. | (1) A second housing element that contains the first raised portion, remaining portions, and provides a surface over which the PCB is placed.<br>*Plaintiff's List of Proposed Claim Constructions, July 22, 2005.*<br>(2) The portion of the housing opposite the base member, which is received over the spindle motor and head stack assembly.<br>*E-mail from plaintiff November 16, 2005.* |

A.    **THE INTRINSIC RECORD REQUIRES THAT THE "BASE MEMBER" BE THE BOTTOM PORTION OF THE HOUSING, AND THAT THE "COVER ELEMENT" BE THE TOP PORTION.**

Cornice's proposed construction is consistent with the intrinsic record: (1) "base member" is the bottom portion of the housing for mounting the components of the drive, *e.g.*, the spindle motor and head stack assembly and (2) "cover element" is the top portion of the housing opposite the base member, which is received over the spindle motor and head stack assembly.    Since Seagate filed its complaint in June 2004, to until two days before opening briefs were due, Seagate's construction eliminated any distinction between "base" and "cover" by replacing them both with the more generic term "housing element."

Seagate's new construction is practically identical to Cornice's, except it does not require that the "base member" be the "bottom portion of the housing" or that the "cover element" be the "top portion of the housing."    Cornice believes, however, that the Court need not settle this dispute because it

4.

is not relevant to any non-infringement or invalidity issues. Indeed the portion of the construction now belatedly embraced by Seagate was one of the independent bases for the ITC's determination that Cornice cannot infringe the '461 patent as a matter of law.

Notwithstanding, for at least the reasons discussed in its opening brief, Cornice believes that its construction is the one supported by the intrinsic record. Indeed, the Court should preserve the orientation inherent in the claim language. For example, claim 1 recites that the cover is "received *onto* and secured to the base member," has "side walls depending *downwardly*" and "provide[s] a height dimension within the housing sufficient for *topmost* portions of a spindle motor and head stack assembly." D.I. 150, Exh. 3, (hereinafter '461 Patent) at Cl. 1 (emphasis added). Furthermore, the prosecution history identifies the cover as the "top." *See, e.g.*, D.I. 180, Exh. A-14, Amendment dated May 13, 1996 at p. 8 ("Claim 1 (as amended) claims a disc drive housing which includes a top cover element, the top cover element comprising a top surface and sidewalls depending downwardly . . . .") (emphasis added).

II.     **"HEAD STACK ASSEMBLY"**

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "head stack assembly" [cls. 1, 5, 6 and 7] | A stack of actuator arms (*i.e.*, a plurality), each mounting a head or pair of heads. | Assembly including an actuator, its arm, recording head, and an electric coil. The HSA can include one or more actuator arms. |

Here, the dispute between the parties centers on whether a "head stack assembly" requires a plurality of actuator arms (as urged by Cornice), or if it can have just one arm (as urged by Seagate). The ITC considered and rejected Seagate's position, yet Seagate repeats its same failed arguments here in its second bite at the apple. The only new argument is based on a different limitation ("disk stack"), and a mischaracterization of Cornice's position with respect to that term, discussed below.

In its opening brief, Seagate mischaracterizes the basis for Cornice's construction of "head stack assembly" when it states that it "is based on the term 'disk stack' as requiring more than one

5.

disc." D.I. 150 at p. 11 ("Seagate '461 Opening CC Brief"). This simply is not the basis for Cornice's construction. In fact, Cornice does not take the position that a "disk stack" requires more than one disk.

As Seagate points out,                     REDACTED

              REDACTED                                    Further, Cornice admitted the same

thing in its opening claim construction brief for the '461 patent, noting in particular that a "head stack assembly" may be used with a single disk by providing an arm on each side of that disk to read and write data on *both* surfaces. *See* '461 Patent, at Col. 2:17-21 ("the actuator structure must place an actuator arm/head assembly above the top most disk surface and below the bottom most disk surface of the stack of disks to permit the reading and writing of data from these surfaces."). As explained in its opening brief, Cornice's construction "head stack assembly" is based on the entire intrinsic record, and not on any alleged requirements of a "disk stack." *See, e.g.,* '461 Patent, Col. 1:48-50 ("A **head stack assembly** comprises a **stack of actuator arms, each mounting a head or pair of heads**.").

### III.    "CONTINUOUS, SINGLE PCB SUPPORT SURFACE"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "continuous, single PCB support surface" [cls. 1 and 6] | A single, uninterrupted surface for mounting a PCB, and not discrete mounting locations for a PCB. | A surface that provides support for one and only one, non-segmented printed circuit board. |

#### A.    CORNICE'S CONSTRUCTION MAINTAINS THE INTERNAL CONSISTENCY OF THE CLAIM LANGUAGE

The dispute between the parties continues to be whether "continuous, single" modifies "support surface" (Cornice's position) or just "PCB" (Seagate's position). In the ITC order finding that Cornice did not infringe the '461 patent, the ALJ did not construe this term, but favored Cornice's view, noting that "[o]n their face, the claims appear to require a continuous, single support surface for a PCB." D.I 180, Exh. A-5, ) Order No. 8 at p. 22.

The language of the claims requires this construction. If "continuous, single" modified just "PCB," then the word "continuous" would be rendered mere surplusage, since a single PCB is by

6.

definition continuous. Although understandably reluctant to agree, Seagate's own expert        REDACTED

REDACTED

REDACTED                                          To the contrary, a

surface can be single, but not continuous, *e.g.*, it can have multiple heights, not all of which provide

support. A construction such as Seagate's that renders claim language mere surplusage is disfavored.

*Apple Computer v. Articulate Sys, Inc.*, 234 F.3d 14, 25 (Fed. Cir. 2000) ("[We] . . .simply cannot read

the qualifier 'help' out of the definition of 'help' access window.").

### B.    CORNICE'S CONSTRUCTION IS NOT INCONSISTENT WITH THE PRINCIPLES OF ENGLISH GRAMMAR

Seagate argues that the principles of English grammar compel its construction. This

argument is tenuous at best. In short, Seagate relies on a grammar textbook to argue that because the

adjectives "continuous, single" precede "PCB," not "surface," "what is continuous and single is the

PCB." D.I. 150 at p. 12. What Seagate ignores is that in the context of the claim, "PCB" is acting as an

adjective. It, too, is describing what kind of "support surface" is being claimed—a continuous, single

support surface for a PCB. Rather than resorting to textbooks on grammar which are hardly conclusive

in the abstract, Cornice's construction is based on the intrinsic record, *e.g.*, statements in the prosecution

history that distinguished *support surfaces* that were not continuous and single. D.I. 180, Exh. A-14,

page 10 ("The Applicant respectfully submits that four discrete mounting brackets would not be

understood by one skilled in the art to be the same as a 'continuous, single PCB support surface,' as

required by the explicit language of claim 1.").

### C.    CORNICE'S CONSTRUCTION IS CONSISTENT WITH THE PURPORTED BENEFITS OF THE INVENTION

Seagate argues that Cornice's construction is inconsistent with the specification of the

'461 patent which allegedly "teaches the benefit of a single, non-segmented PCB." D.I. 150 at 12-13.

Assuming, *arguendo*, that the specification does teach such a benefit, Cornice's construction is not

7.

inconsistent with it. Cornice's construction does not require multiple PCBs, and in fact, is not directed to the PCB at all. Seagate's argument in this regard is thus not relevant to the dispute.

### D.    CORNICE'S CONSTRUCTION DOES NOT READ OUT THE PREFERRED EMBODIMENT

Seagate next argues that Cornice's construction, which prohibits discrete mounting locations, reads the preferred embodiment out of the claims because "there are two discrete mounting locations for attaching the PCB to the housing in the preferred embodiment." D.I. 150 at 15. Seagate is mistaken. The discrete mounting locations ("openings") 60 do not support the PCB, but rather the connector 54. As is clear in the cross-section of Figure 3 (shown below), the PCB 52 (green) does not extend to the leftmost edge of the disk drive, where openings 60 are disposed (see Figure 1). Only the connector 54 (solid black) is supported by the lower surface 56 (red), and thus the PCB 52 is not supported by openings 60. Instead, as the specification states, the PCB is supported by the second raised portion 50 (blue): "The PCB 52 is shaped to generally coincide with the shape of the second raised portion 50 such that the PCB 52 can be supported on the surface of the second raised portion 50. . . ." '461 Patent, Col. 5:37-40.



Originally filed claim 8 also compels this conclusion. In relevant part, the claim reads: "the connector including openings aligned with at least certain ones of the openings on the base plate and cover element *for mounting the connector directly to the housing.*" D.I. 180, Exh. A-14, '845 Patent Application at p. 15. Similarly, the specification makes clear that the connector is mounted directly to the housing. '461 Patent at col. 6:7-10 (distinguishing "conventional disk drives" that do not securely mount

8.

the connector "directly to the housing as provided by this feature of the present invention"). Therefore, the connector—and not the PCB—is mounted to the discrete locations ("openings"). Cornice's construction is therefore consistent with the preferred embodiment.

### E.    CORNICE HAS NEVER ARGUED THAT THE "REMAINING PORTIONS" CANNOT HAVE MULTIPLE LEVELS

Seagate argues that Cornice's construction, which requires, *inter alia*, a single, uninterrupted surface for mounting a PCB, "contradicts all intrinsic evidence" because the "remaining portions of the preferred embodiment . . . have multiple levels, such as 60, 24 and 56." D.I. 150 at p. 17. This is a red herring—Cornice has never argued that the "remaining portions" cannot have multiple levels. Instead, Cornice's position is that the "continuous, single PCB support surface" must be a single, uninterrupted surface. This is completely consistent with the intrinsic record. For example, the second raised portion 50 of the preferred embodiment is a single, uninterrupted surface for mounting a PCB. *See* '461 Patent, Col. 5:37-41 ("the PCB 52 can be supported on the surface of the second raised portion 50").

### CONCLUSION

For the foregoing reasons, and those in Cornice's opening brief, the Court should adopt Cornice's proposed constructions for the claim limitations of the '461 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Julia Heaney (#3052)
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
*Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

9.

OF COUNSEL:
Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

December 16, 2005
498096

E

**THIS EXHIBIT HAS BEEN REDACTED**

F

**THIS EXHIBIT HAS BEEN REDACTED**

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on December 22, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

**BY HAND:**

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE  19801

**BY FEDERAL EXPRESS:**
Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC  20005

/s/ Julia Heaney
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL
jheaney@mnat.com
*Attorneys for Defendant and
Counterclaim Plaintiff Cornice, Inc.*