IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEAGATE TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-418-SLR |
| | ) | |
| CORNICE, INC. | ) | **REDACTED** |
| | ) | |
| Defendant. | ) | |

**CORNICE INC.'S ANSWERING BRIEF IN OPPOSITION TO
SEAGATE TECHNOLOGY LLC'S MOTION FOR SUMMARY JUDGMENT
ON CORNICE'S LICENSING-RELATED DEFENSES (CORNICE'S NINTH,
TENTH, ELEVENTH AND TWELFTH AFFIRMATIVE DEFENSES) AND
ON CORNICE'S BREACH OF CONTRACT COUNTERCLAIM**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
*Attorneys for Defendant and Counterclaim Plaintiff
Cornice, Inc.*

OF COUNSEL:
Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
**Redacted Filing Date: December 22, 2005**
Original Filing Date: December 16, 2005

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDING ..................................................1

II.   SUMMARY OF ARGUMENT ..........................................................................1

III.  STATEMENT OF FACTS ................................................................................2

IV.   ARGUMENT ....................................................................................................3

    A.    Relevant Legal Principles..........................................................................3

    B.    Seagate's Argument Concerning The '754 And '506 Patents Wrongly
        Focuses On The Entire Cornice Storage Elements ................................................4

        1.    The Magnetic Discs In Cornice's Products Are "Licensed
              Products"..........................................................................................4

              a.    Legal Title To The Discs Is Irrelevant .........................................5

              b.    Seagate's "Intent" Arguments Are Meritless ...............................6

        2.    The Servo Patterns Embedded On Cornice's Disks Further
              Confirm Their Licensed Status ..............................................................7

    C.    Seagate's Analysis Of "Other Viable Commercial Uses" Improperly
        Addresses The Bare Precursor Discs ........................................................8

    D.    There Is No Dispute That Cornice Is Immune From Suit For The Sale Of
        Licensed Products And Licensed Combinations ................................................9

    E.                                          **REDACTED**             .............................10

    F.                                                               ..............11

    G.    Cornice's Claim For Breach Of Contract Is Fully Supported By The
        Evidence ..................................................................................................13

        1.                       **REDACTED**                                  ......13

        2.    Cornice Is A Third Party Beneficiary Of The License ............................13

        3.    Cornice Stated A Claim For Damages ....................................................14

V.    CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

## CASES

<u>Page</u>

<u>Bancomer v. Superior Court</u>,
    44 Cal. App. 4th 1450 (Ct. App. 1996) ........................................................... 14

<u>Braintree Laboratories, Inc. v. Nephro-Tech, Inc.</u>,
    31 F. Supp. 2d 921 (D. Kansas 1998) ............................................................. 9

<u>Carborundum Co. v. Molten Metal Equipment Innovations, Inc.</u>,
    72 F.3d 872 (Fed. Cir. 1995) ...................................................................... 12, 13

<u>Celotex Corp. v. Catrett</u>,
    477 U.S. 317 (1986) ................................................................................... 3

<u>Greene v. New Dana Perfumes Corp.</u>,
    287 B.R. 328 (D. Del. 2002) ....................................................................... 11

<u>Hodosh v. Block Drug Co., Inc.</u>,
    833 F.2d 1575 (Fed. Cir. 1987) ................................................................... 9

<u>Intel Corp. v. ULSI System Technology, Inc.</u>,
    995 F.2d 1566 (Fed. Cir. 1993) ................................................................... 7

<u>Intel v. ITC</u>,
    946 F.2d 821 (Fed. Cir. 1991) .................................................................... 7

<u>Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.</u>,
    103 Cal. App. 4th 30 (Ct. App. 2002) ......................................................... 3

## STATUTES

Cal. Civ. Code § 1559 ............................................................................ 14

Fed. Rule Civ. Pr. 56(c) ......................................................................... 3

# I.

## NATURE AND STAGE OF THE PROCEEDING

This action for patent infringement was filed on June 22, 2004. Seagate Technologies LLC ("Seagate") alleges infringement of seven patents relating to disk drive technology. Seagate separately filed a complaint in the International Trade Commission ("ITC") to bring an unfair importation investigation, which has now settled.

On May 30, 2005, the Court granted Cornice leave to amend its answer.

**REDACTED**                                                                                                    ,

Cornice filed its Ninth (Immunity From Suit), Tenth (License), Eleventh (Patent Exhaustion/First Sale Doctrine), and Twelfth (Implied License) affirmative defenses, and a counterclaim for breach of contract. On November 18, 2005, Cornice moved for summary judgment of non-infringement of two of Seagate's patents in suit (U.S. Patent No. 6,146,754 ('754 patent) and U.S. Patent No. 5,600,506 ('506 patent)) on the basis of its license defense. [D.I. 155].

On November 18, 2005, Seagate filed its motion for summary judgment on Cornice's licensing-related affirmative defenses and breach of contract counterclaim. [D.I. 152]. This is Cornice's answering brief to Seagate's motion for summary judgment.

# II.

## SUMMARY OF ARGUMENT

**REDACTED**

**REDACTED**

## III.

### STATEMENT OF FACTS

Cornice designs and sells miniature hard drives that are used in consumer electronic devices like portable music players. Cornice designs these hard drives in its Longmont, Colorado facility. Cornice's hard drives each contain a tiny (approximately 1" diameter) magnetic disk, which is used to store data on the drive. These disks are embedded with a "servo" pattern, which is a pattern of data on the magnetic disk that helps the read/write head of the disk know where to store or retrieve data on the disk.

**REDACTED**

2

**REDACTED**

## IV.

## ARGUMENT

### A.    Relevant Legal Principles

Summary judgment is inappropriate where the evidence of record contradicts the factual assertions made by the moving party.  Fed. Rule Civ. Pr. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The License is to be interpreted under California Law.  <u>See</u> Devlin Decl. [D.I. 153], Exh. H, § 11.1 [License].  California law requires mutuality of obligation.  <u>See</u> <u>Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.</u>, 103 Cal.App.4th 30, 36 (Ct. App. 2002).  The parties agree that the License is to be interpreted within its four corners,

without resort to extrinsic evidence. See Cornice Answering Appendix, Exh. 7, at 79:17-80:1 [10/11/05 Smith Depo.].

### B. Seagate's Argument Concerning The '754 And '506 Patents Wrongly Focuses On The Entire Cornice Storage Elements

Cornice's licensing-based defenses address two of the patents in suit – the '754 and '506 patents. Cornice's other affirmative defenses (not at issue in this motion) address the remaining patents in suit.[1]

Seagate's argument with respect to the '754 and '506 patents starts with a mischaracterization of Cornice's position. Seagate says that the License does not offer protection for the "completed disc drives" sold by Cornice. Cornice has never contended that the License grants rights to make, sell and transfer entire disc drives. Rather, the License defines fields of technology that are the subject of the license grant. The technology that is the subject of the '754 and '506 patents falls squarely within the fields of technology covered by the License, as explained more fully in Cornice's own brief in support of its motion for summary judgment [D.I. 155]. Cornice's defense is based on the irrefutable conclusion that it is licensed to sell and transfer the magnetic discs covered by the '754 and '506 patents, and the servo systems comprising these discs.

#### 1. The Magnetic Discs In Cornice's Products Are "Licensed Products"

### REDACTED

---

[1] Seagate is attempting to move for summary judgment on the basis that only two of the patents in suit are the focus of Cornice's licensing-related defenses. See Opening Br. at 11-12. Seagate's argument is unfounded. Cornice will demonstrate through its own dispositive motions and at trial that all of the patents in suit are invalid and/or non-infringed. Until the invalidity and noninfringement of these other patents have been adjudicated, there is no basis for granting summary judgment to Seagate.

**REDACTED**

     **a.**       **Legal Title To The Discs Is Irrelevant**

[2]

**REDACTED**

_____

[2]

**REDACTED**

**REDACTED**

    b.       **Seagate's "Intent" Arguments Are Meritless**

**REDACTED**

**REDACTED**

3

Seagate's reliance on <u>Intel v. ITC</u>, 946 F.2d 821 (Fed. Cir. 1991) is misplaced, and ignores that that case has subsequently been limited to its facts by <u>Intel Corp. v. ULSI System Technology, Inc.</u>, 995 F.2d 1566 (Fed. Cir. 1993) ("<u>ULSI</u>"). In <u>ULSI</u>, the dissent made exactly the same arguments now advanced by Seagate – <u>i.e.</u>, that a patent cross-license would allow the cross-licensee to make infringing products for a third party. <u>See</u> <u>id.</u> at 1571 (Plager, J., dissenting). The majority rejected the policy arguments advanced by Intel, and ruled that the wording of the cross-license agreement governed, and should not be contravened based on these extrinsic considerations. <u>Id.</u> at 1569-70. The majority specifically distinguished the earlier <u>Intel</u> case based on the specific provisions of the cross-license at issue in that case, which are not present in the instant matter.

> **2.     The Servo Patterns Embedded On Cornice's Disks Further Confirm Their Licensed Status**

**REDACTED**

───────────────────

3

**REDACTED**

**REDACTED**


C.     **Seagate's Analysis Of "Other Viable Commercial Uses" Improperly Addresses The Bare Precursor Discs**

In an attempt to establish that Cornice's magnetic disks are not covered by the License, Seagate attempts to make up questions of fact as to whether these magnetic disks have other viable commercial uses. The first problem with Seagate's analysis is that, in order to determine whether Cornice is immune from suit under claims of the '754 and '506 patents, it is not necessary to even ask if the magnetic disks have other non-infringing uses. These claims are directed to a magnetic recording medium, which is expressly a "Licensed Product." There is no need to inquire further as to whether there are substantial non-infringing uses. Every asserted claim of the '754 patent is directed to a "magnetic recording medium," or a method for its manufacture. See Devlin Decl. [D.I. 153], Exh. D ['754 Patent]. Similarly, the '506 patent claims "A magnetic disk for use in a sector servo disk drive system, said disk having a plurality of sectors located on a surface of said magnetic disk, each sector having ...." See Devlin Decl. [D.I. 153], Exh. C, Claim 22 ['506 Patent].


**REDACTED**


Moreover, Seagate's analysis of "other viable commercial uses" is fundamentally flawed. Seagate writes that the magnetic disks in Cornice's drives have other viable commercial uses. See D.I. 152 at 18. However, Seagate's analysis wrongly focuses on the bare magnetic disk, rather than the servo-embedded disk, which is the disk that is the subject of the licensed act

8

(i.e., the transfer by SAE) and that is the subject of the accused act of infringement (i.e., the sale of the accused disk drives). The law is clear that, when determining if there are substantial non-infringing uses of a product, the product to look at is the "thing sold," not a precursor to the thing sold. Hodosh v. Block Drug Co., Inc., 833 F.2d 1575, 1580 (Fed. Cir. 1987) (holding that the inquiry of substantial non-infringing uses must focus on the product actually sold, not an ingredient of the final product). Seagate acknowledges that Cornice specially designs the servo patterns for Cornice's own usage. See Devlin Decl. [D.I. 153], Exh. BB, at 59:8-25 [7/28/05 Brittner Depo.]. There is zero evidence that the servo-embedded disks have other commercial uses. At most, Seagate offers attorney argument that other, non-infringing servo patterns could be written onto the bare disks. See D.I. 152 at 18. However, Seagate's argument fails to address the "thing sold," which is the disk having servo patterns that allegedly infringe Seagate's patents.

Seagate must offer more than theoretical uses. Braintree Laboratories, Inc. v. Nephro-Tech, Inc., 31 F.Supp.2d 921, 924 (D. Kansas 1998) ("Taking the statute on its own terms, it is apparent that a mere theoretical capability of sale for a noninfringing use would hardly suffice.") (citation omitted). The proper analysis is to ask whether there are substantial non-infringing uses of the products that are actually sold. The evidence is unrebutted that the commercially transacted disc drives have magnetic discs with servo patterns unique to Cornice. See Devlin Decl. [D.I. 153], Exh. V [9/15/05 Laughlin Report] (remaining silent as to alternate uses for the servo-embedded disks). Moreover, even the bare magnetic discs are specially designed for Cornice, and cannot be used by other manufacturers. See Cornice Answering Appendix, Exh. 8, at 181:3-17 [10/20/05 Morehouse Depo.] (testifying that it is "absolutely out of the question" to try to interchange bare disks among manufacturers). Seagate has not identified a single third party that has either used the accused bare disk, or the disk sold with servo patterns, for any purpose other than in Cornice's disk drives, making Seagate's argument pure theoretical speculation.

9

**D.**     **There Is No Dispute That Cornice Is Immune From Suit For The Sale Of Licensed Products And Licensed Combinations**

**REDACTED**

**E.**

**REDACTED**

10

[4]

**REDACTED**

**F.**

**REDACTED**

---

[4]

**REDACTED**

**REDACTED**

With respect to the first prong, there are no substantial non-infringing uses of the magnetic media and servo systems in Cornice's drives (taking as true Seagate's infringement allegations). As discussed above, the magnetic media and servo systems in Cornice's discs are custom-tailored for Cornice's own disk drives, and cannot be interchanged into other manufacturers' disk drives.

**REDACTED**

12

REDACTED

G.     **Cornice's Claim For Breach Of Contract Is Fully Supported By The Evidence**

      1.

REDACTED

### 2.    Cornice Is A Third Party Beneficiary Of The License

**REDACTED**

### 3.    Cornice Stated A Claim For Damages

Cornice has properly disclosed to Seagate that, as a consequence of being sued on patents under which it is immune, Cornice has suffered damages. Cornice specified that these damages derive from, among other things, injury to reputation; loss of prospective business and investors; diversion of engineering and management resources; and destruction of goodwill. D.I. 152 at 25.

Seagate's insistence that Cornice's claim for damages is not specific enough is misplaced on summary judgment. Cornice has properly stated a claim for damages. Cornice identified the sales that were lost to Seagate's improper tactics, the difficulty it has had in recruiting new employees, and the difficulties it has had in arranging financing in light of this litigation. See Cornice Answering Appendix, Exh. 11 at 59:3-69:4 [11/11/05 Magenis Depo.].

14

Moreover, none of the authorities cited by Seagate allow for the granting of summary judgment in this posture. Cornice has properly stated a claim for breach of contract, and the amount of damages is a matter to be resolved at trial. There is no basis, factually or legally, to grant summary judgment for Seagate.

## V.

## CONCLUSION

For the foregoing reasons, Seagate's motion should be denied.

Dated: December 20, 2005

Respectfully submitted,

_/s/ Jack B. Blumenfeld_
Jack B. Blumenfeld (#1014)
Rodger D. Smith (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
Wilmington, DE 19801
(302) 658-3989
_Attorneys for Plaintiffs_

_Of Counsel:_

CORNICE, INC.

Matthew D. Powers, Esq.
Jason D. Kipnis, Esq.
Steven C. Carlson
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3098
Fax: (650) 802-3100

Russell Wheatley
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, TX 77001

Alan J. Weinschel
David C. Radulescu
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Attorneys for Defendant
CORNICE, INC.

EXHIBIT 1

REDACTED

CORNICE INC.'S ANSWERING BRIEF IN OPPOSITION
TO SEAGATE TECHNOLOGY LLC'S MOTION
FOR SUMMARY JUDGMENT ON CORNICE'S
LICENSING-RELATED DEFENSES
(NINTH, TENTH, ELEVENTH AND TWELFTH
AFFIRMATIVE DEFENSES)
AND ON CORNICE'S BREACH OF CONTRACT
COUNTERCLAIM

# EXHIBIT 2

# REDACTED

**CORNICE INC.'S ANSWERING BRIEF IN OPPOSITION
TO SEAGATE TECHNOLOGY LLC'S MOTION
FOR SUMMARY JUDGMENT ON CORNICE'S
LICENSING-RELATED DEFENSES
(NINTH, TENTH, ELEVENTH AND TWELFTH
AFFIRMATIVE DEFENSES)
AND ON CORNICE'S BREACH OF CONTRACT
COUNTERCLAIM**

# EXHIBIT 3

# REDACTED

**CORNICE INC.'S ANSWERING BRIEF IN OPPOSITION
TO SEAGATE TECHNOLOGY LLC'S MOTION
FOR SUMMARY JUDGMENT ON CORNICE'S
LICENSING-RELATED DEFENSES
(NINTH, TENTH, ELEVENTH AND TWELFTH
AFFIRMATIVE DEFENSES)
AND ON CORNICE'S BREACH OF CONTRACT
COUNTERCLAIM**

# EXHIBIT 4

# REDACTED

**CORNICE INC.'S ANSWERING BRIEF IN OPPOSITION
TO SEAGATE TECHNOLOGY LLC'S MOTION
FOR SUMMARY JUDGMENT ON CORNICE'S
LICENSING-RELATED DEFENSES
(NINTH, TENTH, ELEVENTH AND TWELFTH
AFFIRMATIVE DEFENSES)
AND ON CORNICE'S BREACH OF CONTRACT
COUNTERCLAIM**

EXHIBIT 5

REDACTED

CORNICE INC.'S ANSWERING BRIEF IN OPPOSITION
TO SEAGATE TECHNOLOGY LLC'S MOTION
FOR SUMMARY JUDGMENT ON CORNICE'S
LICENSING-RELATED DEFENSES
(NINTH, TENTH, ELEVENTH AND TWELFTH
AFFIRMATIVE DEFENSES)
AND ON CORNICE'S BREACH OF CONTRACT
COUNTERCLAIM

Exhibit 6

# BLACK'S
# LAW DICTIONARY®

Definitions of the Terms and Phrases of
American and English Jurisprudence,
Ancient and Modern

By

HENRY CAMPBELL BLACK, M. A.

## SIXTH EDITION

### BY

### THE PUBLISHER'S EDITORIAL STAFF

Coauthors

**JOSEPH R. NOLAN**

Associate Justice, Massachusetts Supreme Judicial Court

and

**JACQUELINE M. NOLAN–HALEY**

Associate Clinical Professor,
Fordham University School of Law

Contributing Authors

**M. J. CONNOLLY**
Associate Professor (Linguistics),
College of Arts & Sciences, Boston College

**STEPHEN C. HICKS**
Professor of Law, Suffolk University
Law School, Boston, MA

**MARTINA N. ALIBRANDI**
Certified Public Accountant, Bolton, MA

ST. PAUL, MINN.
WEST PUBLISHING CO.
1990


EXHIBIT
Smith 5

suits and to encourage the determination of the entire controversy among the parties. Thus, the "transaction" test does not require the court to differentiate between opposing legal and equitable claims or between claims in tort and those in contract. Most courts, rather than attempting to define the key terms of Rule 13(a) precisely, have preferred to suggest standards by which the compulsory or permissive nature of specific counterclaims can be determined. Four tests have been suggested: (1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim? (4) Is there any logical relation between the claim and the counterclaim? Old Homestead Co. v. Continental Baking Co., 47 F.R.D. 560, 563. *See* Counterclaim *(Compulsory counterclaim).*

**Cross-claims.** Most courts have held that the above standards used for dealing with the "transaction or occurrence" test for compulsory counterclaims also apply to cross-claims under Fed.R.Civil P. 13(g). Old Homestead Co. v. Continental Baking Co., 47 F.R.D. 560, 563. *See* Cross-claims.

**Transazione** /trænzātsiyôwney/. An Italian term which technically refers to an instrument whereby parties agree to put an end to a dispute by means of mutual concessions and is the equivalent of "transactio" under the Roman law, the principles of which have been carried into the common law and are found in agreements of accord and satisfaction and compromise and settlement.

**Transcript.** That which has been transcribed. A copy of any kind, though commonly the term refers to a copy of the record of a trial, hearing or other proceeding as prepared by a court reporter. A writing made from or after an original. A copy of an original writing or deed and suggests the idea of an original writing. O'Quinn v. Tate, Tex.Civ.App., 187 S.W.2d 241, 243.

An official copy of the record of proceedings in a trial or hearing. Word-for-word typing of everything that was said "on the record" during the trial. The stenographer (court reporter) types this transcription which is paid for by the parties requesting it.

**Transcript of record.** Refers to the printed record as made up in each case of the proceedings and pleadings necessary for the appellate court to review the history of the case.

**Transcriptio pedis finis levati mittendo in cancellarium** /trænskrípsh(iy)ow píydəs fáynəs ləvéytay məténdow in kænsəlériyəm/. A writ which certified the foot of a fine levied before justices in eyre, etc., into the chancery.

**Transcriptio recognitionis factæ coram justiciariis itinerantibus,** etc. /trænskrípsh(iy)ow rəkəgnishiyównəs féktiy kórəm jəstishiyériyəs əytinərǽntəbəs/. An old writ to certify a cognizance taken by justices in eyre.

**Transfer,** v. To convey or remove from one place, person, etc., to another; pass or hand over from one to another; specifically, to change over the possession or control of (as, to transfer a title to land). To sell or give. Chappell v. State, 216 Ind. 666, 25 N.E.2d 999, 1001.

**Transfer,** n. An act of the parties, or of the law, by which the title to property is conveyed from one person to another. The sale and every other method, direct or indirect, of disposing of or parting with property or with an interest therein, or with the possession thereof, or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, payment, pledge, mortgage, lien, encumbrance, gift, security or otherwise. The word is one of general meaning and may include the act of giving property by will. Hayter v. Fern Lake Fishing Club, Tex.Civ.App., 318 S.W.2d 912, 915.

The assignment or conveyance of property, including an instrument or document, that vests in the transferee such rights as the transferor had therein. *See* U.C.C. §§ 3-201(1) & 7-504(1). Transfer is the all-encompassing term used by the Uniform Commercial Code to describe the act which passes an interest in an instrument to another. Scheid v. Shields, 269 Or. 236, 524 P.2d 1208, 1210.

Transfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption. Bankruptcy Code § 101.

*See* Barter; Constructive transfer; Exchange; Gift; Sale; Will.

**Transferable.** A term used in a *quasi* legal sense, to indicate that the character of assignability or negotiability attaches to the particular instrument, or that it may pass from hand to hand, carrying all rights of the original holder. The words "not transferable" are sometimes printed upon a ticket, receipt, or bill of lading, to show that the same will not be good in the hands of any person other than the one to whom first issued.

**Transfer agent.** An organization, usually a bank, that handles transfers of shares for a publicly held corporation. Generally, a transfer agent assures that certificates submitted for transfer are properly endorsed and that there is appropriate documentation of the right to transfer. The transfer agent issues new certificates and oversees the cancellation of the old ones. Transfer agents also usually maintain the record of shareholders for the corporation and mail dividend checks.

**Transferee.** He to whom a transfer is made.

**Transferee liability.** Under certain conditions, if the Internal Revenue Service is unable to collect taxes owed by a transferor of property, it may pursue its claim against the transferee of such property. The transferee's liability for taxes is limited to the extent of the value of the assets transferred. For example, the Internal Revenue Service can force a donee to pay the gift tax

**EXHIBIT 7**

**REDACTED**

**CORNICE INC.'S ANSWERING BRIEF IN OPPOSITION
TO SEAGATE TECHNOLOGY LLC'S MOTION
FOR SUMMARY JUDGMENT ON CORNICE'S
LICENSING-RELATED DEFENSES
(NINTH, TENTH, ELEVENTH AND TWELFTH
AFFIRMATIVE DEFENSES)
AND ON CORNICE'S BREACH OF CONTRACT
COUNTERCLAIM**

**EXHIBIT 8**

**REDACTED**

**CORNICE INC.'S ANSWERING BRIEF IN OPPOSITION
TO SEAGATE TECHNOLOGY LLC'S MOTION
FOR SUMMARY JUDGMENT ON CORNICE'S
LICENSING-RELATED DEFENSES
(NINTH, TENTH, ELEVENTH AND TWELFTH
AFFIRMATIVE DEFENSES)
AND ON CORNICE'S BREACH OF CONTRACT
COUNTERCLAIM**

**EXHIBIT 9**

**REDACTED**

**CORNICE INC.'S ANSWERING BRIEF IN OPPOSITION
TO SEAGATE TECHNOLOGY LLC'S MOTION
FOR SUMMARY JUDGMENT ON CORNICE'S
LICENSING-RELATED DEFENSES
(NINTH, TENTH, ELEVENTH AND TWELFTH
AFFIRMATIVE DEFENSES)
AND ON CORNICE'S BREACH OF CONTRACT
COUNTERCLAIM**

EXHIBIT 10

REDACTED

CORNICE INC.'S ANSWERING BRIEF IN OPPOSITION
TO SEAGATE TECHNOLOGY LLC'S MOTION
FOR SUMMARY JUDGMENT ON CORNICE'S
LICENSING-RELATED DEFENSES
(NINTH, TENTH, ELEVENTH AND TWELFTH
AFFIRMATIVE DEFENSES)
AND ON CORNICE'S BREACH OF CONTRACT
COUNTERCLAIM

**EXHIBIT 11**

**REDACTED**

**CORNICE INC.'S ANSWERING BRIEF IN OPPOSITION
TO SEAGATE TECHNOLOGY LLC'S MOTION
FOR SUMMARY JUDGMENT ON CORNICE'S
LICENSING-RELATED DEFENSES
(NINTH, TENTH, ELEVENTH AND TWELFTH
AFFIRMATIVE DEFENSES)
AND ON CORNICE'S BREACH OF CONTRACT
COUNTERCLAIM**

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on December 22, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE  19801

### BY FEDERAL EXPRESS:

Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC  20005

/s/ *Julia Heaney*
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL
jheaney@mnat.com
*Attorneys for Defendant and
Counterclaim Plaintiff Cornice, Inc.*