IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,          )
                                 )
                  Plaintiff,     )
                                 )
         v.                      )          Civil Action No. 04-418-SLR
                                 )
CORNICE, INC.                    )          **<u>REDACTED</u>**
                                 )
                  Defendant.     )
                                 )

## CORNICE INC.'S ANSWERING BRIEF IN RESPONSE TO SEAGATE'S OPENING CLAIM CONSTRUCTION BRIEF FOR U.S. PATENT 6,744,606

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
  *Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
**Redacted Filing Date: December 22, 2005**
Original Filing Date: December 16, 2005

i.

## TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| NATURE AND STAGE OF THE PROCEEDING | 1 |
| SUMMARY OF ARGUMENT | 1 |
| STATEMENT OF FACTS | 2 |
| ARGUMENT | 2 |
| I. "SINGLE ARM [SUPPORT] PORTION" | 3 |
| II. "STEP PORTION" | 5 |
| III. "MEANS FOR POSITIONING THE COIL SUPPORT PORTION AND THE ARM PORTION AT DIFFERENT DISTANCES FROM THE BASE" | 6 |
| CONCLUSION | 6 |

ii.

TABLE OF CITATIONS

Page(s)

Cases

*Innovad v. Microsoft*,
    260 F.3d 1326 (Fed. Cir. 2001)      1, 3, 4

*W.E. Hall Co. Inc. v. Atlanta Corrugating LLC*,
    370 F.3d 1343 (Fed. Cir. 2004)      4

1.

## NATURE AND STAGE OF THE PROCEEDING

Seagate Technology LLC ("Seagate") brought this action against Cornice, Inc. ("Cornice") for infringement of seven patents on June 22, 2004. The parties have exchanged opening claim construction briefs. Cornice provides this Response to Seagate's opening brief regarding the construction of claim terms appearing in U.S. Patent No. 6,744,606 ("the '606 patent").[1]

## SUMMARY OF ARGUMENT

The parties have proposed competing constructions for three terms from the asserted claims (1, 2, 4, 5, 6, 9-15 and 17-20) of the '606 patent: (i) "single arm portion" [cls. 1 and 17] and "single arm support portion" [cl. 11], (ii) "step portion" [cls. 4, 5, 6 and 9], and (iii) "means for positioning the coil support portion and the arm portion at different distances from the base" [cl. 17]. "Single arm portion" and "single arm support portion" were already construed by the ITC ALJ in a manner identical to Cornice's proposed constructions. As made clear by its opening brief, Seagate's arguments ignore the intrinsic record, and lack basis in law.

For example, with respect to the "single arm" and "single arm support" limitations, Seagate argues that the claims are limited to an actuator having one, and only one, arm. However, the case law that Seagate cites instead supports Cornice's position, holding that a claim requiring a "single, bi-state switch" *"does not preclude [the claimed apparatus] from having other switches." Innovad v. Microsoft*, 260 F.3d 1326, 1333 (Fed. Cir. 2001). Also, Seagate ignores clear statements in the specification that describe multi-arm, multi-disk embodiments. Seagate then argues that because "single arm portion" and "single arm support portion" use different words, they require different constructions. Seagate ignores, however, that the '606 patent uses the terms "arm" and "arm support" interchangeably. Moreover, with respect to the "means for positioning" limitation, Seagate provided no argument even

---

[1]     References to Exhibits A-C are to those attached to Cornice's Opening Claim Construction Brief for the '606 Patent (D.I. 176). Exhibits D-E are attached herewith.

2.

though the term was scheduled to be briefed in the parties' Joint Claim Construction Statement. Without repeating *in toto* its Opening Brief, Cornice will likewise respond to the other pertinent errors of Seagate's argument as warranted.

## STATEMENT OF FACTS

Relevant facts appear in the Argument section.

## ARGUMENT

There are numerous errors in Seagate's Opening Claim Construction Brief for the '606 Patent. In its "Summary of the Argument," Seagate tries to give the impression that the Commission reversed the order of the ITC's administrative law judge finding the '606 patent invalid on the basis of the construction of "single arm." D.I. 148 at p. 1. This is untrue. The Commission specifically stated that it would "*take no position* on the ALJ's claim construction." *See attached* Exh. D, Commission's Order Reversing Order No. 6 at p. 2 (emphasis in original).

To give a false impression of novelty, Seagate comments in the "Technology Overview of the '606 Patent" that disk drives "using just a single disc only recently came technologically and commercially viable." D.I. 148 at p. 7; *see also id.* at p. 4 ("Conventionally and until recently, two, three, or more discs are placed on top of each other separated by ring spacers . . . ."). Seagate is plainly wrong. In its Motion for Summary Determination of Invalidity in the ITC, Cornice provided several examples of single disk-disk drives. D.I. 176, Exh. C., Cornice, Inc.'s Motion for Summary Determination of the Invalidity of the '606 Patent Pursuant to 35 U.S.C. §§ 102(b) and (e).

Then, in a mischaracterization of the '606 patent, Seagate suggests that the '606 patent is limited to a "single disc," "single arm" disk drive. D.I. 148 at pp. 7-8. The specification of the '606 patent belies Seagate's characterization. Indeed, it states that the "the present invention is particularly useful" in a disk drive that includes a "disc or discs." D.I. 148, Exh. 1, (hereinafter the '606 Patent) at col. 3:28-38 (emphasis added). It further states that the actuator includes "arms 325" and "flexures 320." '606 Patent at col. 3:39-41 (emphasis added).

3.

Cornice will now address the disputed claim language *ad seriatim.*

## I.     "SINGLE ARM [SUPPORT] PORTION"

| Claim Language | Cornice's Proposed Construction (Same As Judge Harris') | Seagate's Proposed Construction (Rejected by Judge Harris) |
|---|---|---|
| "single arm portion" [cls. 1 and 17]<br><br>"single arm support portion" [cl. 11] | The terms "single arm portion" and "single arm support portion" mean that "[o]nly one arm support portion is an integral component of the actuator structure, even though the actuator can also set in motion other arm supports, in ways not covered by the claims, which serve other discs in a multiple-disc, multiple-arm drive." | "single arm portion" means "Only one, not multiple, arms."<br><br>"single arm support portion" means an actuator with "only one, not multiple, arm support portions." |

Cornice's proposed construction, which is the construction adopted by the Administrative Law Judge in the earlier ITC action between Seagate and Cornice, is fully supported by the intrinsic evidence as discussed in Cornice's Opening Brief. In response, Seagate cites *Innovad v. Microsoft,* 260 F.3d 1326, 1333 (Fed. Cir. 2001), as supposedly standing for the proposition that the word "single" appearing in the claims precludes the presence of additional actuator arms regardless of the context. However, a closer examination of *Innovad* shows that it supports, not hurts, Cornice's position:

> This language about 'a single, bi-state switch,' however, *does not preclude a dialer unit from having other switches* as long as a single switch activates the signal means to produce dial tones. The claim language explains well the function of the single switch. *This language alone does not preclude other switches for other functions that may not be specified in this claim.* Indeed, by using the transition term 'comprising' at the outset of the claim, the claim drafter signaled that an accused device could have additional elements--such as switches--beyond those expressly recited and still literally fall within the claim terms. AFG Indus. v. Cardinal IG Co., 239 F.3d 1239, 1244-45, 57 USPQ2d 1776, 1780 (Fed.Cir.2001).

*Innovad v. Microsoft,* 260 F.3d 1326, 1333 (Fed. Cir. 2001). This is completely consistent with the construction adopted by the ITC and advanced by Cornice, which does not preclude the possibility that

4.

the actuator can also set in motion other arm supports in ways not covered by the claims.[2]  This also shows why Cornice's proposed construction would not read-out the word "single" as argued by Seagate.

Furthermore, as discussed in Cornice's Opening Brief, in the past Seagate had argued that the '606 patent specification's discussion of "arms" (plural) was a typographical error. *See attached* Exh. E, Seagate Technology LLC's Motion for Leave to File Reply Brief to Cornice's Response to Seagate's Petition for Review of Order No. 6 at p. 7.  Now however Seagate has changed course, admitting that the specification in fact does discuss multi-arm designs (for which it says the claimed invention is "particularly useful," column 3, line 30), but argues that this "particularly useful" multi-arm design was a disclosed but unclaimed embodiment.  Seagate's logic and shifting positions notwithstanding, its argument does not withstand scrutiny for the reasons discussed above in the context of Seagate's own *Innovad* case.

Finally, Seagate argues it is inappropriate for Cornice (and previously the ITC) to offer the same construction for two terms "single arm portion" and "single arm support portion."  "Different terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper." *Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005).  In this case, the patent itself uses the terms interchangeably, and even identifies the exact same feature in the patent drawings as being both a "single arm" and "single arm support" portion of the actuator. *See*, Figure 2, element 325; column 4, line 18; and column 5, line 28.  The claim language itself similarly compels Cornice's construction.  Independent claim 11 recites a "single arm support portion," which dependent claims 13 and 15 refer to as an "arm portion." *Compare* '606 Patent, cl. 11 *with* cls. 13 and 15.  Cornice's construction is therefore proper in view of the law and intrinsic record.

---

[2]    The other authority cited by Seagate is not on point, because among other things in that case the transition language was "consisting essentially of," and thus was more restrictive as to the presence of other elements than the '606 patent transition "comprising." *W.E. Hall Co. Inc. v. Atlanta Corrugating LLC*, 370 F.3d 1343, 1350-51 (Fed. Cir. 2004).

## II.    "STEP PORTION"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "step portion"<br><br>[cls. 4, 5, 6 and 9] | The term "step portion" means "[t]he portion of the actuator that positions the arm support and coil support portions in distinct planes." | Part of the actuator that distances the coil support portion and the arm portion. |

Seagate's only new (and curious) argument is that "An inspection of claim 4 of the '606 patent ... reveals that there is nothing in the claim language that restricts the coil support and arm portions to be positioned in distinct planes." D.I. 148, at p. 15.  However, claim 4 depends from claim 1, and as such incorporates all the limitations of claim 1.  Claim 1 specifies that "the first plane [must be] distinct from the first plane," which Cornice has argued is nonsensical and renders the claim indefinite under 35 U.S.C. § 112.  Until now, Seagate has argued this is yet another "typographical error" in its patent, and that the clause should read "the first plane [must be] distinct from the *second* plane."  Now however, by arguing that claim 4 (and thus claim 1) includes no requirement that the arm portion and coil support portion be in distinct planes, Seagate is apparently abandoning its argument with respect to the putative typographical error.  With that concession, and Seagate's affirmative assertion that its "Dual plane actuator" patent can cover designs that are not "dual plane," claim 1 and all the claims that depend from it are invalid as indefinite, and the proper construction of "step portion" becomes irrelevant.

6.

## III.   "MEANS FOR POSITIONING THE COIL SUPPORT PORTION AND THE ARM PORTION AT DIFFERENT DISTANCES FROM THE BASE"

| Claim Language | Cornice's Proposed Construction | Dr. Bogy's Proposed Construction |
|---|---|---|
| "means for positioning the coil support portion and the arm portion at different distances from the base"<br><br>[cl. 17] | This term does not define structure, and thus is subject to means-plus-function analysis under 35 U.S.C. § 112, ¶ 6. The function of the claimed means is to "position[ ] the coil support portion and the arm portion at different distances from the base." The corresponding structure consists of the step illustrated in Figure 2, reference numeral 305. | This is a means plus function element. The function is positioning the coil support portion and the arm portion at different distances from the base. The structure described in the specification for performing this function is the "step" portion and is illustrated, for example, in Fig. 2, by reference numeral 305. |

Seagate's Opening Brief sets forth no arguments for this claim limitation.  Accordingly, the Court should adopt Cornice's construction.

## CONCLUSION

For the foregoing reasons, and those stated in Cornice's Opening Brief, the Court should adopt the constructions proposed by Cornice for the '606 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Julia Heaney (#3052)
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
*Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

OF COUNSEL:
Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

7.

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

December 16, 2005
498153

D

UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C. 20436

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| CERTAIN DISC DRIVES, COMPONENTS THEREOF, ) | Inv. No. 337-TA-516 |
| AND PRODUCTS CONTAINING SAME ) | |
| ) | |

NOTICE OF COMMISSION DECISION TO REVIEW
AND REVERSE AN INITIAL DETERMINATION GRANTING SUMMARY
DETERMINATION OF THE INVALIDITY OF CLAIMS 1, 2, 4, 6, 9–15, 17, 19, AND 20
OF U.S. PATENT NO. 6,744,606; DENIAL OF MOTION FOR LEAVE TO FILE A
REPLY BRIEF

**AGENCY:**    U.S. International Trade Commission.

**ACTION:**    Notice.

**SUMMARY:** Notice is hereby given that the U.S. International Trade Commission has determined (1) to review and reverse the presiding administrative law judge's ("ALJ's") initial determination ("ID") granting in part respondent's motion for summary determination of the invalidity of certain claims of U.S. Patent No. 6,744,606 and (2) to deny complainant's January 21, 2005, motion for leave to file a reply brief.

**FOR FURTHER INFORMATION CONTACT:** Clara Kuehn, Esq., Office of the General Counsel, U.S. International Trade Commission, 500 E Street, S.W., Washington, D.C. 20436, telephone (202) 205-3012. Copies of the nonconfidential version of the ALJ's ID and all other nonconfidential documents filed in connection with this investigation are or will be available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street, S.W., Washington, D.C. 20436, telephone 202-205-2000. General information concerning the Commission may also be obtained by accessing its Internet server (*http://www.usitc.gov*). The public record for this investigation may be viewed on the Commission's electronic docket (EDIS-ON-LINE) at *http://edis.usitc.gov*. Hearing-impaired persons are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on 202-205-1810.

**SUPPLEMENTARY INFORMATION:**

The Commission instituted this investigation on August 5, 2004, based on a complaint filed on behalf of Seagate Technology, LLC ("Seagate"). 69 *Fed. Reg.* 47460 (Aug. 5, 2004). The complaint, as supplemented, alleged violations of section 337 in the importation into the

United States, sale for importation, and sale within the United States after importation of certain disc drives, components thereof, and products containing same by reason of infringement of certain claims of seven U.S. patents, including claims 1, 2, 4–6, 9–15, 17–19, and 20 of the '606 patent. The notice of investigation named Cornice, Inc. ("Cornice") of Longmont, Colorado as the sole respondent.

On November 12, 2004, respondent Cornice filed a motion for summary determination of invalidity of the asserted claims of the '606 patent on the ground that the asserted claims were anticipated by each of five prior art references. On December 1, 2004, complainant Seagate and the Commission investigative attorney ("IA") filed responses opposing the motion.

On December 28, 2004, the ALJ issued Order No. 6, an ID granting the motion in part and an order denying the motion in part. The ALJ granted summary determination that claims 1, 2, 4, 6, 9, 10, 11, 12, 13, 14, 15, 17, 19, and 20 of the '606 patent are invalid under 35 U.S.C. § 102(b) as anticipated by two prior art references. The ALJ denied the balance of the motion for summary determination.

On January 5, 2005, Seagate filed a petition for review. On January 12, 2005, Cornice filed a response opposing the petition for review. On the same day, the IA filed a response supporting the petition. On January 21, 2005, Seagate filed a motion for leave to file a reply brief to Cornice's response to Seagate's petition for review. The Commission determined to deny the motion.

The Commission determined to review and reverse the ALJ's ID granting summary determination on the ground that, assuming *arguendo* that the ALJ's claim construction is correct, summary determination is inappropriate because there are genuine issues of material fact as to what is disclosed in the two prior art references. *See* Commission rule 210.18(b) (19 C.F.R. 210.18(b)). The Commission determined to *take no position* on the ALJ's claim construction.

The authority for the Commission's determination is contained in section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), and in sections 210.42–.43 of the Commission's Rules of Practice and Procedure (19 C.F.R. §§ 210.42–.43).

By order of the Commission.

Marilyn R. Abbott
Secretary to the Commission

Issued: January 27, 2005

2

UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C. 20436

|  |  |  |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| CERTAIN DISC DRIVES, COMPONENTS THEREOF, | ) | Inv. No. 337-TA-516 |
| AND PRODUCTS CONTAINING SAME | ) | |

## ORDER

The Commission instituted this investigation on August 5, 2004, based on a complaint filed on

behalf of Seagate Technology, LLC ("Seagate"). 69 *Fed. Reg.* 47460 (Aug. 5, 2004). The complaint,

as supplemented, alleged violations of section 337 in the importation into the United States, sale for

importation, and sale within the United States after importation of certain disc drives, components

thereof, and products containing same by reason of infringement of certain claims of seven U.S.

patents, including claims 1, 2, 4–6, 9–15, 17–19, and 20 of the '606 patent. The notice of investigation

named Cornice, Inc. ("Cornice") of Longmont, Colorado as the sole respondent.

On November 12, 2004, respondent Cornice filed a motion for summary determination of

invalidity of the asserted claims of the '606 patent on the ground that the asserted claims were

anticipated by each of five prior art references. On December 1, 2004, complainant Seagate and the

Commission investigative attorney ("IA") filed responses opposing the motion.

On December 28, 2004, the ALJ issued Order No. 6, an ID granting the motion in part and an

order denying the motion in part. *See* Commission rule 210.42(c) (19 C.F.R. § 210.42(c)) (providing

that an ALJ grants a motion for summary determination by initial determination and denies such

TOTAL P.05

motion by order). The ALJ granted summary determination that claims 1, 2, 4, 6, 9, 10, 11, 12, 13, 14, 15, 17, 19, and 20 of the '606 patent are invalid under 35 U.S.C. § 102(b) as anticipated by two prior art references. The ALJ denied the balance of the motion for summary determination.

On January 5, 2005, Seagate filed a petition for review. On January 12, 2005, Cornice filed a response opposing the petition. On the same day, the IA filed a response supporting the petition. On January 21, 2005, Seagate filed a motion for leave to file a reply brief to Cornice's response to Seagate's petition for review. The Commission determined to deny the motion.

The Commission determined to review and reverse the ALJ's ID granting summary determination on the ground that, assuming *arguendo* that the ALJ's claim construction is correct, summary determination is inappropriate because there are genuine issues of material fact as to what is disclosed in the two prior art references. *See* Commission rule 210.18(b) (19 C.F.R. § 210.18(b)). The Commission determined to *take no position* on the ALJ's claim construction.

Accordingly, the Commission hereby **ORDERS THAT:**

1. Seagate's motion for leave to file a reply brief is denied.

2. Pursuant to Commission rules 210.43 and 210.45(c), the ALJ's ID granting summary determination that claims 1, 2, 4, 6, 9, 10, 11, 12, 13, 14, 15, 17, 19, and 20 of the '606 patent are invalid is reversed.

3. The Secretary shall serve a copy of this Order upon each party to the investigation.

By order of the Commission.

Marilyn R. Abbott
Secretary for he Commission

Issued: January 27, 2005

# U.S. International Trade Commission

Office of Unfair Import Investigations
500 E. Street SW Suite 401
Washington, D.C. 20436
Telephone: (202) 205-2560
Facsimile: (202) 205-2158

## FACSIMILE

**Number of Pages (including this page):** ___5_____

**Date:** January 28, 2005

**Investigation:** Certain Disc Drives and Components Thereof, Inv. No. 337-TA-516

**Sender:** Thomas "Monty" Fusco

**Message:** Commission determination re: '606 patent

| Recipient | Party | Fax Number |
|---|---|---|
| Ruffin B. Cordell, Esq.<br>Brian R. Nester, Esq.<br>Timothy W. Riffe, Esq. | Seagate | (202) 783-2331 |
| David C. Radulescu, Esq.<br>Rekha Ramani, Esq.<br>Arlene A. Hahn, Esq. | Cornice | (212) 310-8007 |
|  |  |  |

This message is intended for the use of the individual or entity to which it is addressed.
Inadvertent recipients should please notify us immediately by telephone and return the original
message to us at the letterhead address via the U.S. Postal Service.  Thank you.

E

THE UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C. 20436

Before The Honorable Sidney Harris
Administrative Law Judge

In the Matter of

CERTAIN DISC DRIVES,
COMPONENTS THEREOF, AND
PRODUCTS CONTAINING SAME

Investigation No. 337-TA-516

### COMPLAINANT SEAGATE TECHNOLOGY LLC'S MOTION FOR LEAVE TO FILE REPLY BRIEF TO CORNICE'S RESPONSE TO SEAGATE'S PETITION FOR REVIEW OF ORDER NO. 6

Pursuant to the United States International Trade Commission's Rules of Practice and

Procedure, 19 C.F.R. §§ 210.15 and 210.26, Complainant Seagate Technology LLC ("Seagate")

respectfully moves for leave to file the attached reply to address factual and legal misstatements

contained in Cornice Inc.'s Response to Seagate's Petition for Review of Order No. 6.

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated: January 21, 2005

By: _____
Ruffin B. Cordell
Brian R. Nester
Timothy W. Riffe
Christian A. Chu
Fish & Richardson P.C.
1425 K Street NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 783-5070

Roger S. Borovoy
David M. Barkan
D. Austin Horowitz
Fish & Richardson P.C.
500 Arguello Street
Redwood City, CA 94063-1526

Tel: (650) 839-5070

Timothy Devlin
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114
Tel: (302) 652-5070

Attorneys for Complainant
SEAGATE TECHNOLOGY LLC

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C. 20436

In the Matter of

Certain Disc Drives, Components Thereof, and
Products Containing Same

Inv. No. 337-TA-516

**SEAGATE TECHNOLOGY LLC'S REPLY TO
CORNICE, INC.'S OPPOSITION TO SEAGATE'S PETITION FOR REVIEW OF
ORDER NO. 6:**

COUNSEL FOR COMPLAINANT:

Ruffin B. Cordell
Brian R. Nester
Timothy W. Riffe
Christian A. Chu
Fish & Richardson P.C.
1425 K Street NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 783-5070

Roger S. Borovoy
David M. Barkan
D. Austin Horowitz
Fish & Richardson P.C.
500 Arguello Street
Redwood City, CA 94063-1526
Tel: (650) 839-5070

Timothy Devlin
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114
Tel: (302) 652-5070

Inv. No. 337-TA-516

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   THE ID ERRONEOUSLY CONSTRUED THE CLAIM TERMS "SINGLE ARM
      PORTION" AND "SINGLE ARM SUPPORT PORTION" OF THE CLAIMED
      "ACTUATOR" BY READING OUT THE LIMITATION "SINGLE" .......................... 1

      A.    The ID's construction of "single" is inconsistent with the term's
            ordinary meaning ........................................................................................ 2

      B.    The term "comprising" cannot negate the express limitation
            "single" ........................................................................................................ 2

      C.    The number of other disc drive elements do not justify the
            erroneous construction ................................................................................ 5

      D.    The Patent Examiner's statement during prosecution is
            compelling claim construction evidence ...................................................... 7

      E.    The ID's internally inconsistent claim construction should be
            reviewed ...................................................................................................... 8

III.  THE ID IMPROPERLY INVALIDATED THE APPEALED PATENT CLAIMS AS
      ANTICIPATED, DESPITE THE EXISTENCE OF GENUINE DISPUTES OF
      MATERIAL FACTS REGARDING THE "SINGLE ARM" LIMITATION ................. 9

      A.    There are disputed issues of facts regarding the Teac/Minase
            and Teac/Haga references .......................................................................... 10

            1.    There are genuine issues of material facts regarding the
                  Teac/Minase reference ...................................................................... 10

            2.    There are genuine issues of material facts regarding the
                  Teac/Haga patent ............................................................................ 14

      B.    Dr. Bogy's expert declaration raises genuine issues of material
            facts and precludes summary determination .............................................. 15

IV.   CONCLUSION ................................................................................................ 18

TABLE OF AUTHORITIES

Page(s)

Cases

ACCO Brands, Inc. v. Micro Security Devices, Inc.,
    346 F.3d 1075 (Fed. Cir. 2003), ........................................................................... 8

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ............................................................................................. 10

Apotex USA, Inc. v. Merck & Co.,
    254 F.3d 1031 (Fed. Cir. 2001) ............................................................................ 10

Certain Asian-Style Kamaboko Fish Cakes,
    Inv. No. 337-TA-378, Order No. 15 (May 21, 1996). ......................................... 15

Certain Electronic Products, Including Semiconductor Products,
    Inv. No. 337-TA-381, Comm'n Opn. No. 2 at 9-12 (USITC Oct. 30,
    1996) ..................................................................................................................... 9

Dayco Prods, Inc. v. Total Containment, Inc.,
    329 F.3d 1358 (Fed. Cir. 2003) ............................................................................ 16

Elkay Mfg. Co. v. Ebco Mfg. Co.,
    192 F.3d 973  (Fed. Cir. 1999) .............................................................................. 14

Env'l Instruments, Inc. v. Sutron Corp.,
    877 F.2d 1561 (Fed. Cir. 1989) ............................................................................ 7

Hodosh v. Block Drug Co.,
    786 F.2d 1136 (Fed. Cir. 1986) ............................................................................ 16

Innovad v. Microsoft Corp.
    260 F.3d 1326 (Fed. Cir. 2001) ........................................................................ 3, 4

Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co., Inc.,
    285 F.3d 1046 (Fed. Cir. 2002) ............................................................................ 7

Kustom Signals, Inc. v. Applied Concepts, Inc.,
    264 F.3d 1326 (Fed. Cir. 2001) ............................................................................ 3

McGinley v. Franklin Sports, Inc.,
    262 F.3d 1339 (Fed. Cir. 2001) ............................................................................ 10

Med. Instrumentation & Diagnostics Corp. v. Elekta AB,
    344 F.3d 1205 (Fed. Cir. 2003) ............................................................................ 16

Moba, B.V. v. Diamond Automation, Inc.,
    325 F.3d 1306 (Fed. Cir. 2003) ............................................................................ 9

**TABLE OF AUTHORITIES (cont'd)**

Page(s)

Renishaw PLC v. Marposs Societa' per Azioni,
    158 F.3d 1243 (Fed. Cir. 1998)..........................................................................................4

Spectrum Int'l, Inc. v. Sterilite Corp.,
    164 F.3d 1372, 1379-80 (Fed. Cir. 1998) .........................................................................3

Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.,
    279 F.3d 1357 (Fed. Cir. 2002),........................................................................................3

Under Rule 210.15(c), Complainant Seagate Technology LLC ("Seagate") respectfully submits this Reply to Cornice's Opposition to Seagate's Petition for Commission Review of Order No. 6 (the "ID"), to correct factual and legal misrepresentations in Cornice's Opposition.

## I.    INTRODUCTION

Cornice's Opposition brief is rife with heated and hyperbolic rhetoric, but has little in substance.  On the first issue, Cornice concedes that Seagate's construction of "single" is the ordinary meaning, which controls absent evidence of a manifest intent to deviate from the ordinary meaning.  Yet, Cornice offers no intrinsic evidence showing such a deviation, ignoring even the clear construction offered by the Patent Examiner during prosecution.  Instead, it selectively quotes from the ID to hide the legal error, and harps on the "comprising" transition term even though that term cannot read out the express claim limitation "single."  Cornice then focuses on irrelevant or incongruous words – despite a myriad of contradicting references throughout the patent – to prop up an unsupportable claim construction position.

Most important, Cornice cannot avoid the indisputable point that the ID improperly resolved material factual disputes at the summary determination stage.  Nor can Cornice's distortion of the law regarding the level of details required of an expert report salvage the improvidently granted summary determination.  The ID erred in its claim construction and in making factual findings at this juncture; it should be reversed.

## II.    THE ID ERRONEOUSLY CONSTRUED THE CLAIM TERMS "SINGLE ARM PORTION" AND "SINGLE ARM SUPPORT PORTION" OF THE CLAIMED "ACTUATOR" BY READING OUT THE LIMITATION "SINGLE"

There is no dispute that the ordinary and accustomed meaning of the term "single" is "one only, not double or multiple."  Cornice expressly concedes that point in its opposition brief. [Oppo. at 7.]

Because of the heavy presumption favoring the use of a term's ordinary meaning, precedent permits a departure from that meaning only where there is "an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing

the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1324 (Fed. Cir. 2002). Here, despite its concession, Cornice advances six arguments to support the ID's errors. These arguments, however, fall well short of the requisite "words or expressions of manifest exclusion or restriction."

**A.    The ID's construction of "single" is inconsistent with the term's ordinary meaning**

First, Cornice attempts to convince the Commission, through a selectively cropped quotation of the ID's claim construction, that the Court adopted the ordinary meaning of "single." That is not the case. According to Cornice's editing, the ID construed the disputed claim term as follows: "the claim term 'single arm support portion' is construed for purposes of this summary determination motion to refer to the fact that . . . only one arm support portion is an integral component of the actuator structure . . . .". [Oppo. at 7 (quoting from Order No. 6 at 13) (ellipses in Cornice's opposition).] But the actual text of the ID, including the words omitted by Cornice's use of ellipses, tells a different tale:

> Accordingly, the claim term "single arm support portion" is construed for purposes of this summary determination motion to refer to the fact that <u>while only one arm support portion is an integral component of the actuator structure, which is "particularly useful" in single-disc drives, the actuator can also set in motion other arm supports, in ways not covered by the claims, that serve other discs in a multiple-disc, multiple-arm drive.</u>

Order No. 6 at 13 (underline text corresponding to text omitted by Cornice). As the complete text of the ID indicates, the Court did <u>not</u> construe "single" to mean "one only, not double or multiple." Instead, the ID allows the "single arm" actuator to have and move more than one arm – to have and move "double or multiple" arms. That is directly contrary to the term's ordinary meaning; it is in fact contrary to the very meaning Cornice concedes to be correct.

**B.    The term "comprising" cannot negate the express limitation "single"**

Second, in an argument that directly conflicts with both its concession regarding the ordinary meaning and the construction the ID allegedly adopted, Cornice submits that the

transition term "comprising" permits the actuator to have more arms than the "single arm." [Oppo. at 7-8, 13.] As a matter of logic, either the claimed actuator has one and only one arm (as Cornice concedes), or it does not (as Cornice also argues). Cornice cannot have it both ways.

As a legal matter, Cornice's rewriting of the claim language through the misuse of "comprising" is contrary to precedent. Indeed, "comprising" does not and cannot remove an express limitation, like "single," from the claims. Kustom Signals, Inc. v. Applied Concepts, Inc., 264 F.3d 1326, 1332 (Fed. Cir. 2001) ("The open-ended transition 'comprising' does not free the claim from its own limitations."); Spectrum Int'l, Inc. v. Sterilite Corp., 164 F.3d 1372, 1379-80 (Fed. Cir. 1998) (holding that the term "comprising" cannot restore subject matter otherwise excluded from the claim). Instead, a proper construction must give effect both to the transition term "comprising" and to express limitations like "single," allowing additional unrecited elements but permitting one and only one element corresponding to the limitation qualified by the term "single." That is the approach adopted by the Federal Circuit in Tate Access Floors, Inc. v. Interface Architectural Resources, Inc., 279 F.3d 1357, 1370 (Fed. Cir. 2002), and Innovad v. Microsoft Corp., 260 F.3d 1326, 1333 (Fed. Cir. 2001).

In Tate Access, the disputed claim term used the open-ended transition term "comprising" but recited in the body of the claim the limitation "a single visible decorative layer." Tate Access, 279 F.3d at 1370. Despite the presence of "comprising," the Federal Circuit pointed to the term "a single visible decorative layer" as showing that, "where the patentee meant to constrict the claim to one and only one particular layer, he said so clearly." Id. (emphasis added). Here, although the patentee used "comprising" as a transition term, it clearly indicated its intent to constrict the claim to "one and only one" arm or arm support portion by expressly using the term "single."

Similarly, in Innovad, the claim called for "[a] telephone dialer system, comprising: . . . [f] a single, bi-state switch operable from the exterior of said case for activating said signal means. . . ." Innovad, 260 F.3d at 1329. The invention did not rest in the use of a single "bi-

Inv. No. 337-TA-516

3

state switch;" that was well known in the art and widely used in telephones. Rather, the

innovation was the use of a single "bi-state switch ... for activating said signal means," that

would dial a preprogrammed number under specified circumstances. See id. at 1329-30. Thus,

"single" modified the whole phrase, explaining why the court ruled that "[t]his language about 'a

single, bi-state switch,' however, does not preclude a dialer unit from having other switches as

long as a single switch activates the signal means to produce dial tones." Id. at 1333. Explaining

further, the court stated:

> The claim language explains well the function of the single switch. This language
> alone does not preclude other switches for other functions that may not be
> specified in the claim. Indeed, by using the transition term "comprising" at the
> outset of the claim, the claim drafter signaled that an accused device could have
> additional elements—such as switches—beyond those expressly recited and still
> literally fall within the claim terms.
>    For the reasons stated above, the dialer unit does not have a keypad. The
> term "single, bi-state switch," as well as the specification describing that term, do
> not limit the dialer unit to only one bi-state switch. The claim language does not
> preclude other switches on the exterior of a dialer unit, such as another switch to
> choose a different preprogrammed telephone number. The term "single,"
> however, precludes the use of multiple switches to perform the activating function
> for one phone number. Only a single switch activates the dialing function for a
> preprogrammed number.

Innovad, 260 F.3d at 1333 (internal citation omitted and emphasis added).

    Here, the word "single" qualifies the terms "arm portion" or "arm support portion;"

"single" does not qualify a structure with an expressly stated function. Rather, it constricts the

number of "arm portions" and "arm support portions," because the use of an actuator with a

"single arm" was the innovation that distinguished this patent from the prior art. Considering the

invention and the express claim language as the Innovad court did, there is only one reasonable

conclusion: there can be more than one disc or actuator, but there can be only one arm or arm

support in each actuator. To rule as the ID did and permit "comprising" such free play as to

render an express limitation like "single" mere superplusage would be contrary to settled law and

the notice function of the claims. See Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d

1243, 1250 (Fed. Cir. 1998) ("The construction that stays true to the claim language and most

4

naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").[1]

**C.  The number of other disc drive elements do not justify the erroneous construction**

Third, the specification's discussion of multiple discs, head assemblies, or arms, does not justify a construction directly contrary to the plain text of the claims and the conceded ordinary meaning of "single." [Oppo. at 8-9, 11-12.] As the Petition shows, the claimed disc drive can have multiple discs, head assemblies, flexures, and actuators, as long as each actuator has one and only one arm:



[Petition at 17-18 & Chu Decl. Ex. 12 (U.S. Patent No. 5,343,347 (part of prosecution history of the '606 patent)).] The ID erred in focusing on elements that are not even part of the claims.

To justify this error, Cornice can only rely on a single instance where the patent uses the plural term "arms 325" to describe the disc drives shown in Figure 1 of the patent. [Oppo. at 9 and 11 (citing '606 patent at 3:42).] But Cornice misplaces its reliance, because a cursory

---

[1] Cornice misleadingly asserts that the ID used the ordinary meaning of "single" in denying summary determination with regard to the Sony/Kubo reference. A simple review of the ID shows that the Court understood "single" to mean "integral" rather than "only one." Order No. 6, at 26.

review of the context and the figure described shows that the plural is a typographical error.

Indeed, Figure 1 does <u>not</u> show any "arms 325," or any other arm but the single arm 320:



[Fig. 1 of the '606 patent.]  Instead, the only object labeled "325" in any figures of the '606

patent appears in the preferred embodiment of the claimed single-arm actuator:



Arm 325

[Fig. 2 of the '606 patent.]  The object labeled 325 is none other than the single – one and only

one – arm of the innovative single-arm actuator.  Moreover, when considered as a whole, the

written description strengthens this point.  Except for that one instance of plural, the written

description consistently and repeatedly used – almost twenty times in the two and a half columns

Inv. No. 337-TA-516

6

of the Detailed Description of the Invention – the singular in referring to the "single" actuator arm. [E.g. id. at 3:59-3:62; 5:1-5:8; 5:25-5:29.] Simply put, the plural "arms 325" does not square away with the written description and figures in the '606 patent, and the only reasonable explanation – short of redrawing Figures 1 and 2 and rewriting the entire written description – is that the one instance of plural was a typographical error. That is, "arms 325" should be "arm 325."

Even if it were not a typographical error, that one plural word is simply a disclosed but unclaimed embodiment. Indeed, patent law recognizes the patentee's prerogative to disclose broad subject matters and embodiments without claiming them. See Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co., Inc., 285 F.3d 1046, 1055 (Fed. Cir. 2002) (en banc) ("A patentee who inadvertently fails to claim disclosed subject matter, however, is not left without remedy .... In addition, a patentee can file a separate application claiming the disclosed subject matter under 35 U.S.C. § 120 (2000) (allowing filing as a continuation application if filed before all applications in the chain issue)." (parenthetical in original)). Where the patentee exercises that prerogative, the court will not rely on those disclosed but unclaimed embodiments to construe the claims, determine literal infringement, or capture them as equivalents. See id. at 1053-54 (limiting use of doctrine of equivalents to capture disclosed but unclaimed subject matter); Env'l Instruments, Inc. v. Sutron Corp., 877 F.2d 1561, 1564 (Fed. Cir. 1989) (rejecting argument that practicing disclosed embodiments not expressly claimed should be covered by the claims and declared literally infringed), abrogated on other grounds by Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 234 F.3d 558 (Fed. Cir. 2000) (en banc). Simply put, this one word is irrelevant for purposes of the claim construction issue currently before the Commission.

**D.     The Patent Examiner's statement during prosecution is compelling claim construction evidence**

Fourth, Cornice's attempt to explain away the compelling statement by the Examiner that "single" means "only one" is unpersuasive. [Oppo. at 10, 12.]  The Examiner's statement in his

7

Notice of Allowability is clear evidence of the patentee and the PTO's common understanding of the claim language and its ordinary meaning. That is, "single" means "only one."

To avoid this evidence, Comice recasts the Examiner's statement as merely interpreting "single arm" as an arm integral to the actuator. [Oppo. at 10, 12.] That is unconvincing. Not only does the word "integral" fail to appear in the Examiner's statement, but the Examiner unambiguously stated that the actuator has "a single [only one] arm…." [Chu Decl. Ex. 5 (Feb. 20, 2004 Notice of Allowability) (brackets in original).] If the Examiner intended to redefine "single" as "integral," he would have said so. After all, he was well aware of claim 3's use of "integrally formed," but chose to adhere to the ordinary meaning and the wording of independent claims 1, 11, and 17.[2]

Remarkably, Comice falls back on the position that the Commission should just ignore the Examiner's statement. [Oppo. at 10.] Although "the statement of an examiner will not necessarily limit a claim" where the Examiner's statement deviates from the ordinary meaning, see <u>ACCO Brands, Inc. v. Micro Security Devices, Inc.</u>, 346 F.3d 1075, 1078-79 (Fed. Cir. 2003), that is not the case here. Comice must show a clear disavowal of plain meaning to show that single means multiple. See <u>Teleflex</u>, 299 F.3d at 1324. Instead of deviating from the ordinary meaning, the Examiner's statement is compelling evidence that the PTO and the patentee both understood that "single" should receive its ordinary meaning. And that ordinary meaning should control here, not the "integral" denotation advanced by Comice in this litigation.

**E.    The ID's internally inconsistent claim construction should be reviewed**

Finally, to explain away the ID's inconsistent ruling that the actuator must have a single arm support but still "set into motion other arm supports," Comice contends that the ID's construction "states the unremarkable proposition that, although the claims do not require that the disc drive include multiple arms (or multiple discs), they also do not preclude it." [Oppo. at

---

[2] Comice attempts to minimize the ID's use of "integral," consistently with dependent claim 3, is at best half-hearted. [Oppo. at 12.] The issue is not the scope of claim 3, which Comice argues

11.] That is wrong. The ID expressly referred to the actuator – not the disc drive as Cornice now argues – in requiring that there be a single arm while still allowing for multiple arms: "while only one arm support portion is an integral component of the <u>actuator</u> structure, ... <u>the actuator</u> can also set into motion other arm supports, <u>in ways not covered by the claims</u>, that serve other discs in a multiple-disc, multiple-arm drive." <u>Order No. 6</u> at 13 (emphases added).

In fact, this statement is a key part of the ID because it shows how far off base the claim construction becomes by failing to apply the ordinary meaning of "single." According to the ID's construction, the claimed single-arm actuator is a structure which has "only one arm support," while having "other arm supports" <u>not</u> covered by the scope of the claims. Either the claimed actuator is a device with (i) one arm or (ii) multiple arms; it cannot be both. [3] The ID's internal inconsistent constructions should be reviewed and clarified. <u>See</u> <u>Certain Electronic Products, Including Semiconductor Products</u>, Inv. No. 337-TA-381, Comm'n Opn. No. 2 at 9-12 (USITC Oct. 30, 1996) ("These ambiguities arising from the ALJ's inconsistent reading of the elements of claim 1 on Fair preclude summary determination.").

Consequently, none of Cornice's excuses salvage the errors in the ID's construction of the claim term "single arm." The ID's claim construction should be reviewed and reversed.

## III. THE ID IMPROPERLY INVALIDATED THE APPEALED PATENT CLAIMS AS ANTICIPATED, DESPITE THE EXISTENCE OF GENUINE DISPUTES OF MATERIAL FACTS REGARDING THE "SINGLE ARM" LIMITATION

Regardless of the outcome of the claim construction issue, the Commission should reverse the summary determination, because the Court improperly made factual findings, drew

---

at length. The problem is the ID's deviation from the ordinary meaning of "single" by adopting a meaning consistent only with claim 3 and ignoring the Examiner's clear definition of that term.
[3] Arguably, the ID's construction may envision an actuator structure which has one arm support according to the claims and other additional arm supports "outside of the claims." But such an actuator would be a conventional multi-armed actuator, not the innovative single-arm device. In fact, such a multi-armed actuator would no longer read onto the preferred embodiment shown in Figure 2 (which has only one arm), thus mandating reversal. <u>Moba, B.V. v. Diamond Automation, Inc.</u>, 325 F.3d 1306, 1316 (Fed. Cir. 2003) (holding erroneous a claim construction that did not read on the disclosed preferred embodiment).

9

inferences against the non-movant, and resolved material disputes of facts in the context of summary determination. Cornice's attempt to justify those rulings cannot change that fact.

### A.    There are disputed issues of facts regarding the Teac/Minase and Teac/Haga references

As the moving party seeking a summary determination of anticipation, Cornice bears the burden of showing by clear and convincing evidence that the '606 patent is anticipated and that there is no dispute of material facts precluding summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Apotex USA, Inc. v. Merck & Co., 254 F.3d 1031, 1036 (Fed. Cir. 2001). That it did not do. In response to the factual issues Seagate identified in its Petition, Cornice offers no evidence, preferring to rely on attorney arguments. See McGinley v. Franklin Sports, Inc., 262 F.3d 1339, 1362 (Fed. Cir. 2001) ("Mere attorney argument is no substitute for evidence of record."). Although Cornice's attorney arguments should be disregarded, Seagate nonetheless addresses them below to show that those arguments are without merit.

### 1.    There are genuine issues of material facts regarding the Teac/Minase reference

Cornice insists that the Teac/Minase "undisputably" shows a single-arm actuator, without ever addressing the factual issues raised in Seagate's Petition or showing any "indisputable" facts that evidence a disclosure of a single-arm actuator.

First, Cornice did not deny that, as taught by the Japanese Patent Translation Handbook, Japanese nouns have neither number nor gender. [Oppo. at 15-16.] All that Cornice presents are a few instances where its Japanese translation uses plural nouns. [Id.] But those few instances do not conclusively resolve, especially on summary determination, whether the original Japanese disclosure involves one or more actuator arms. Seagate presented adequate evidence to raise a genuine dispute of material facts. [Oppo. Br. at 28 n.2; Chu Decl. Ex. 9 at 106 (Japanese Patent Translation Handbook).]

Second, when all inferences are drawn in Seagate's favor, the Court should not have resolved the Teac/Minase's silence regarding the number of arms in favor of the moving party.

10

Inv. No. 337-TA-516

[Oppo. at 16-17.] Faced with that argument, Cornice does not present any rebuttal evidence. Instead, it repeats the argument that Figures 1 and 2 show a single-arm actuator, ignoring the contradictory evidence of record. Indeed, Dr. Bogy explained that (1) Figure 1 does not elucidate the number of arms, because the top-down perspective does not permit a conclusive determination of the number of actuator arms and (2) Figure 2 does not show any arms. [Chu Decl. Ex. 10 (Bogy Decl.) ¶¶ 26-28.] Accordingly, there is a genuine dispute of facts regarding the number of actuator arms.

Third, Cornice dismisses the lack of screws as irrelevant to the summary determination. [Oppo. at 17.] To the contrary, the relative position of the various structures to the screws in Figure 1 is a critical piece of evidence showing what structures are and are not depicted in Figure 2. In fact, these screws show that Cornice has misrepresented the teaching of the Teac/Minase references:



In Figure 1 above (reproduced from Cornice's moving papers), Cornice colored in blue the actuator arm that comes _after_ the screws. In the same figure, Structure "3" _precedes_ the screws and the actuator arm. But in Figure 2 above (also reproduced from Cornice's moving papers),

11

Inv. No. 337-TA-516

Cornice colored Structure "3" – a structure wholly different from the blue actuator arm in Figure 1 – in blue. Since Structure "3" in Figure 1 comes <u>before</u> the screws, the fact that Figure 2 ends with Structure "3" means that Figure 2 depicts an incomplete actuator. That is, Figure 2 shows an incomplete actuator with missing screws and no arms. The person of skill in the art cannot tell the number of arms in the Teac/Minase reference, because the disclosed actuator of Figure 2 never shows any arm.

Fourth, Cornice attempts to hide its deception by presenting a misleading "side-by-side comparison." [Oppo. at 17-18.] That "side-by-side comparison," however, compares apples to oranges, simply representing Cornice's liberal interpretation of Figures 1 and 2 rather than the truth. There is no support in the record, the reference itself, or an expert, that the proportions and depictions used by Cornice are accurate. To illustrate how Cornice's play with proportions and improper comparison are misleading, consider another take on the "side-by-side comparison" (below), showing how the screws are no longer apparent in Figure 2 when a different superimposition (especially one bringing the respective structures "3" more in line with each other) is used: [4]

---

[4] The superimposition below compares the actuator of Figure 1 in the Teac/Minase reference (isolated from the disc drive shown in the figure) with Figure 2 of that reference. Because there is no scale dictating the proper dimensions, Cornice offered one possible superimposition of the two Figures, while Seagate offers another equally plausible comparison.

12

Inv. No. 337-TA-516



Thus, Cornice's "side-by-side comparison" cannot be trusted; it is just attorney argument reduced to drawing.

Finally, Cornice's excuses do not change the fact that the ID drew an improper factual inference in concluding that "it is possible from observation of Figure 2 of the reference to see that these portions lie in different planes from one another, or stated differently, lie at different distances from the base." Order No. 6 at 16-17 (emphasis added). [Oppo. 18-19.]  Contrary to Cornice's contention, the ID was not rejecting Seagate's position; it was making a factual determination in a summary determination about what Figure 2 actually teaches. See Order No. 6 at 16-17. Ultimately, the point remains clear and the error problematic: Despite the contrary declaration of Dr. Bogy, the ID drew this factual inference against Seagate as the non-moving party. The ID improperly substitutes the Court's interpretation of what is observable in the drawing for that of one of skill in the art who is familiar with mechanical depiction of disc drive structures. In doing so, the ID played directly into Cornice's misleading coloring of Structure "3" as the actuator arm in Figure 2 and turning a blind eye to the absence of any arm in Figure 2. That error cannot go uncorrected.

13

**2.    There are genuine issues of material facts regarding the Teac/Haga patent**

As with the Teac/Minase patent, Cornice has not addressed the salient errors Seagate identified in its Petition regarding the Teac/Haga device. Those errors were:

- The ID only relied on Figure 1 of the Teac/Haga reference to find that the "arm support portion" is disclosed, ignoring the specification's statement that the actuator arms are not shown.

- The ID ignored the triable issues of facts raised by Dr. Bogy's declaration.

- The ID made a factual finding that the "front-end portion 2a" corresponds to the "arm support portion" of the claims, despite the procedural posture at bar.

- Even though the ID focused only on the alleged disclosure of an "arm support portion," it nonetheless invalidated claims that did not recite an "arm support portion."

Cornice failed to convincingly rebut these points.

First, Cornice never persuasively explains how the ID concluded that the Teac/Haga could clearly and convincingly disclose a single arm when the specification clearly states that an arm is "not shown in FIG. 1." [Oppo. at 19-20.] Cornice's entire excuse boils down to the specification's statement of "an arm." But the article "an" does not equate to "single," i.e., "only one, not double or multiple." See Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 977 (Fed. Cir. 1999) ("While the article "a" or "an" may suggest "one," our cases emphasize that 'a' or 'an' can mean 'one' or 'more than one,' depending on the context in which the article is used."). As Dr. Bogy explained, a skilled artisan reading the Teac/Haga patent would know that this reference discloses nothing more than the conventional multi-arm actuator commonly used in 1991 when that patent was filed. [Bogy Decl. ¶¶ 15-16.]

Second, Cornice merely repeats the ID's assertion that "a front end portion 2a" corresponds to the claimed "arm support portion." [Oppo. at 20-21.] Yet, the Teac/Haga patent never states, discloses, or even suggests that point. To leap from "front end portion 2a" to "arm support portion," the ID inevitably had to improperly infer, that (i) the verb "provide" in the sentence at issue is synonymous to "support," and (ii) structure 2a in Figure 1 is a support for the arm, if the arm were ever shown. Such fact finding or adverse inference against the non-moving

14

party is, however, improper.  See Certain Asian-Style Kamaboko Fish Cakes, Inv. No. 337-TA-378, Order No. 15 at 3 (May 21, 1996).

Third, Cornice utterly fails to address a crucial point:  because the Court's findings focused solely on the "arm support portion," the ID should not have invalidated asserted claims of the '606 patent that do not contain an "arm support" limitation.  Indeed, claims 1-10 and 17-20 require a "single arm portion," not a "single arm support portion."  ['606 patent at 5:45-6:52]  Cornice had no rebuttal for that point, conceding it as it should.  Accordingly, the ID's conclusion should be reversed, at least, with regard to claims 1-10 and 17-20.

Finally, Cornice still insists that the Teac/Haga patent discloses the claimed single-arm actuator, even though the ID never states whether the reference discloses a single arm.  [Oppo. at 21-22.]  The ID focuses exclusively on its improper finding that "[i]t is the 'front end portion 2a' that provide the 'support' of the 'arm,' not the 'arm' itself, and therefore the 'front end portion 2a' qualifies as a 'single arm support portion' as that term is used in the claim."  Order No. 6 at 19 (emphases added).  At bottom, Cornice is falling back on its contention that "an arm" means "single arm," a conclusion that is contrary to precedent and that requires an improper fact finding in this context.

In sum, Cornice's arguments and excuses do not change the problems here:  the ID made factual findings and drew factual inferences from the Teac/Haga reference in deciding a summary determination motion.  That is reversible error.

**B.    Dr. Bogy's expert declaration raises genuine issues of material facts and precludes summary determination**

Cornice does not deny the substance of Dr. Bogy's declaration – that neither the Teac/Minase reference nor the Teac/Haga patent discloses to one of skill in the art the multi-plane, single-arm actuator taught by the '606 patent.  [Oppo. at 22-24.]  Instead, Cornice attacks Dr. Bogy's declaration on three procedural grounds.

First, Cornice claims that it did not need to rebut Dr. Bogy's expert declaration to prevail on summary determination, and that the ID properly granted summary determination.  That is

15

Inv. No. 337-TA-516

directly contrary to controlling precedent. See Dayco Prods. Inc. v. Total Containment, Inc., 329

F.3d 1358, 1368-69 (Fed. Cir. 2003). In Dayco, as in the present case, the non-moving party

submitted a detailed expert declaration explaining how the asserted prior art failed to disclose

certain limitations, while the moving party "submitted no responsive expert declaration." Id. at

1368-69. The district court nonetheless dismissed the non-movant's expert declaration, because

"[t]he reference and the claimed invention are easily understandable without the need for expert

testimony." Id. Relying solely on a drawing in the asserted prior art, the trial court declared the

patent in suit anticipated. Id. at 1369. Such action, the Federal Circuit held, was reversible error.

Id. Not only did the trial court fail to consider the prior art from the vantage of a person of

ordinary skill in the art, it also erred by ignoring the non-movant's expert declaration, failing to

consider and address the factual issues the declaration raised. Id. Likewise here, only Seagate

offered a declaration of an expert in the disc drive field, while Cornice failed to offer any expert

declaration in its moving papers or on rebuttal. Similarly to Dayco, the ID dismissed Dr. Bogy's

explanations, preferring to consider the drawings in the asserted references from its own lay

perspective. See Order No. 6 at 14-20. Given these facts, the conclusion of Dayco is

inescapable and compelling: the ID committed reversible error.

Second, Cornice asserts that Dr. Bogy's explanations are "conclusory" and thus not

worthy of consideration. [Oppo. at 22.] But its assertion is legally and factually misplaced.

Under Federal Circuit precedent, an expert declaration is "conclusory" when it only offers a

statement on the ultimate issue at bar without explanation of the basis for that conclusion. See

Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1221 (Fed. Cir. 2003)

(reversing summary judgment because the expert declaration "did not simply make a conclusory

statement that, in his opinion, the claims were invalid"); Hodosh v. Block Drug Co., 786 F.2d

1136, 1142-43 (Fed. Cir. 1986) ("The substance of Dr. Skhlar's affidavit on behalf of Hodosh

goes far beyond merely denying that ya tong [the allegedly anticipatory Chinese word] means

tooth hypersensitivity and thus is more than adequate to show an evidentiary conflict on the

record with respect to this crucial point, thus precluding summary judgment."). That is not the case here. Dr. Bogy's declaration spans eight pages and 29 paragraphs of detailed discussions of the asserted prior art, explaining specifically which limitation(s) the asserted references fail to disclose to the skilled artisan. [Chu Decl. Ex. 10 (Bogy Decl.).] His declaration did not merely provide a conclusion that the asserted prior art did not anticipate; he actually explicated how the references failed to do so. Given this level of details and explanation, Dr. Bogy is hardly conclusory.

Third, Cornice dismisses Dr. Bogy's declaration as unsupported by the evidence of record. Contrary to Cornice's attorney arguments, Dr. Bogy's declaration regarding the Teac/Minase reference is clearly anchored in the factual record, including Figures 1 and 2 of that reference (reproduced below):



As Dr. Bogy explained, the top-down perspective of Figure 1 is insufficient to determine whether the actuator has one or more arms. [Bogy Decl. ¶ 26.] As to Figure 2, it does not depict any arm because it does not show the actuator's screws of Figure 1, preventing the skilled artisan from determining whether the actuator has only one arm and whether the arm is on a plane different from the coil support. [Id. ¶¶ 27, 29.] This is particularly salient, since the Teac/Minase patent application was filed in 1991 and the '606 patent clearly explains that, until its disclosed innovation, all previous actuators used multiple arms. [Id. ¶ 28; Teac/Minase reference at 1; '606 patent at 1:14-2:40.] For those reasons, Cornice misconstrues the Teac/Minase reference.

17

Similarly, Dr. Bogy's discussion of the Teac/Haga patent is well supported by the record, including the patent's Figure 1 and its statement saying that the actuator arms are not shown:



As Dr. Bogy explained and as confirmed by the '606 patent, when the Teac/Haga was filed in 1991, all actuators in use had multiple arms. [Bogy Decl. ¶ 15; Teac/Haga patent at front cover; '606 patent at 1:14-2:40.] For that reason and because Figure 1 does not depict any arm, the skilled artisan would conclude that the reference discloses nothing but a multi-armed actuator. [Bogy Decl. ¶ 16; Teac/Haga reference at 1:21-1:27 (indicating that Figure 1 does not show any arm).] And since there is no arm shown, one of skill in the art could not determine whether the arm and the coil support are on different planes. [Bogy Decl. ¶ 17; Teac/Haga reference at 1:21-1:27.] In sum, despite Cornice's profession to the contrary, the entire record supports Dr. Bogy's explanations of the Teac/Minase and Teac/Haga references.

## IV.    CONCLUSION

As detailed above and discussed in the Petition, the ID adopted an improper claim construction, which when corrected shows that Cornice's motion was improperly granted. Moreover, significant issues of material facts remain for trial, and the summary determination should have been denied. Accordingly, the Commission should grant this petition for review and reverse the initial determination granting summary determination of anticipation.

18

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated: January 21, 2005

Ruffin B. Cordell
Brian R. Nester
Timothy W. Riffe
Christian A. Chu
Fish & Richardson P.C.
1425 K Street NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 783-5070

Roger S. Borovoy
David M. Barkan
D. Austin Horowitz
Fish & Richardson P.C.
500 Arguello Street
Redwood City, CA 94063-1526
Tel: (650) 839-5070

Timothy Devlin
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114
Tel: (302) 652-5070

Attorneys for Complainant
Seagate Technology LLC

19

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing documents:

- COMPLAINANT SEAGATE TECHNOLOGY LLC'S MOTION FOR LEAVE TO FILE REPLY BRIEF TO CORNICE'S RESPONSE TO SEAGATE'S PETITION FOR REVIEW OF ORDER NO. 6,
- SEAGATE TECHNOLOGY LLC'S REPLY TO CORNICE, INC.'S OPPOSITION TO SEAGATE'S PETITION FOR REVIEW OF ORDER NO. 6,

have been served on this 21st day of January 2005, as indicated, on the following:

| | |
|---|---|
| The Honorable Marilyn R. Abbott<br>Secretary<br>U.S. International Trade Commission<br>500 E Street, S.W. Room 112-A<br>Washington, D.C. 20436 | **Via Hand Delivery**<br><br>**(Original plus six copies)** |
| The Honorable Sidney Harris<br>Administrative Law Judge<br>U.S. International Trade Commission<br>500 E Street, S.W. Room 317-F<br>Washington, D.C. 20436 | **Via Hand Delivery** |
| Thomas S. Fusco<br>Office of Unfair Import Investigations<br>U.S. International Trade Commission<br>500 E Street, S.W. Room 401-O<br>Washington, D.C. 20436<br>Tel. (202) 205-2571<br>Fax (202) 205-2158 | **Via U.S. Mail and E-mail** |
| David A. Hickerson<br>Joanne M. Guerrera<br>Alejandra C. Montenegro<br>Jason Kipnis<br>WEIL, GOTSHAL & MANGES LLP<br>1501 K Street, N.W., Suite 100<br>Washington, DC 20005 | Counsel for Respondent<br>Cornice, Inc.<br><br>**Via U.S. Mail and E-mail** |

David C. Radulescu
Arlene A. Hahn
Alan Weinschel
Barbara Vining
Jenna Victoriano
Steven Glazer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153

Counsel for Respondent
Cornice, Inc.

**Via U.S. Mail and E-mail**

Mathew D. Powers
Jason D. Kipnis
Adrian Percer
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

Counsel for Respondent
Cornice, Inc.

**Via U.S. Mail and E-mail**

Russell Wheatley
Steven Morgan
Leslie Dite
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001

Counsel for Respondent
Cornice, Inc.

**Via U.S. Mail and E-mail**

Adjoa K. Afful

CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on December 16th, 2005, I electronically filed the

foregoing, which will send notification of such filing(s) to the following:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street
Suite 1100
Wilmington, DE 19801
marsden@fr.com

One (1) Electronic Version by Email
and One (1) Hard Copy for Hand Delivery
on Saturday, December 17, 2005

Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC  20005
cordell@fr.com

One (1) Electronic Version by Email
and One (1) Hard Copy by Federal Express
Delivery for Monday, December 19, 2005

/s/  Julia Heaney (#3052)
Julia Heaney (#3052)
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on December 22, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

**BY HAND:**

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE  19801

**BY FEDERAL EXPRESS:**
Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC  20005

/s/ Julia Heaney
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL
jheaney@mnat.com
 *Attorneys for Defendant and*
 *Counterclaim Plaintiff Cornice, Inc.*