IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEAGATE TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-418-SLR |
| | ) | |
| CORNICE, INC. | ) | **REDACTED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT CORNICE, INC.'S ANSWERING BRIEF IN OPPOSITION TO
SEAGATE TECHNOLOGY LLC'S MOTION FOR SUMMARY JUDGMENT
ON CORNICE'S THIRD, FIFTH, AND SEVENTH AFFIRMATIVE DEFENSES**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
    *Attorneys for Defendant and Counterclaim Plaintiff
Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
**Redacted Filing Date: December 22, 2005**
Original Filing Date: December 16, 2005

TABLE OF CONTENTS

Page

I.  NATURE AND STAGE OF THE PROCEEDING.................................................1

II. SUMMARY OF ARGUMENT ...............................................................1

III. STATEMENT OF FACTS ................................................................2

IV. ARGUMENT ..........................................................................3

    A.  Equitable Estoppel.............................................................3

        1.  Legal Principles .........................................................3
        2.  Seagate Led Cornice To Believe It Would Not Sue Cornice For
            Patent Infringement.......................................................4
        3.  Cornice Relied On Seagate's Conduct.......................................7
        4.  Cornice Relied To Its Detriment ..........................................8

    B.  Patent Misuse .................................................................9

        1.  Legal Standard............................................................9
        2.  Seagate Attempted To Coerce An Unfair Commercial Advantage................9

    C.  Laches ........................................................................14

        1.  Legal Principles .........................................................14
        2.  Seagate Unreasonably Delayed In Filing Suit...............................15
        3.  Cornice Suffered Material Prejudice As A Result Of The Delay .............16

V.  CONCLUSION .........................................................................17

# TABLE OF CITATIONS

## CASES

Page

A.C. Aukerman Co. v. R.L. Chaides Construction Co.,
    960 F.2d 1020 (Fed. Cir. 1992) .................................................................3, 6, 15

B. Braun Medical, Inc. v. Abbott Laboratories,
    124 F.3d 1419 (Fed. Cir. 1997) ....................................................................... 9

Tenneco Automotive Operating Co. v. Visteon Corp.,
    375 F. Supp. 2d 375 (D. Del. 2005)................................................................14

Virginia Panel Corp. v. MAC Panel Co.,
    133 F.3d 860 (Fed. Cir. 1997).................................................................9, 12, 13

Zenith Radio Corp. v. Hazeltine Research, Inc.,
    395 U.S. 100 (1969)..........................................................................................14

## STATUTES

35 U.S.C. § 271 ...............................................................................................9, 13, 14

# I.

## NATURE AND STAGE OF THE PROCEEDING

This action for patent infringement was filed on June 22, 2004. Seagate Technologies LLC ("Seagate") alleges infringement of seven patents relating to disk drive technology. Seagate separately filed a complaint in the International Trade Commission ("ITC") to bring an unfair importation investigation, which has now settled.

On May 30, 2005, this Court granted Cornice's motion for leave to amend its answer. Among other defenses, Cornice asserts that Seagate's suit is barred by the equitable defenses of equitable estoppel, patent misuse, and laches. On November 18, 2005, Seagate moved for summary judgment as to these three equitable defenses [D.I. 144]. This is Cornice's answering brief in opposition to Seagate's motion for summary judgment.

# II.

## SUMMARY OF ARGUMENT

Seagate's motion for summary judgment as to Cornice's equitable estoppel defense cannot prevail. Seagate actively inspected Cornice's start-up technology for over a year while it considered a possible acquisition of Cornice. While Cornice developed its technology under Seagate's watchful eyes, Seagate reassured Cornice that it would not sue it for patent infringement. Because Cornice relied on these representations to its detriment, all elements of equitable estoppel are met. At a minimum, questions of fact preclude summary judgment.

Seagate's asserted patents are also unenforceable due to patent misuse. Seagate attempted to force Cornice into taking a license to thousands of unneeded patents in its portfolio, or defending against "minor nuisance litigation" (Seagate's own words) which Seagate warned could be "fatal." Either amounts to the use of patents as leverage for improper purposes beyond mere patent enforcement—conduct that comprises patent misuse and renders Seagate's patents unenforceable. Here too, questions of fact preclude summary judgment.

Finally, Cornice has properly presented a defense of laches, because Seagate unreasonably delayed in bringing suit. Seagate had full access to Cornice's design and

development documents since November 2001, but waited until June 2004 to file suit, after Cornice had dedicated its seed money to developing the very product that Seagate had been inspecting for years.  There is no excuse for Seagate to have delayed nearly three years to file suit, having failed to raise concerns of infringement throughout its access to Cornice's then-ongoing design process.

## III.

## STATEMENT OF FACTS

**REDACTED**

**REDACTED**

When this suit was eventually filed, it was clear that many, if not all of Seagate's allegations were objectively baseless, and designed to impose the very "nuisance litigation" that Seagate had forewarned could be fatal to Cornice. Indeed, even Seagate's experts have admitted that some of Seagate's patents do not cover Cornice products. Seagate nevertheless has the temerity to now use its own interpretation of the "Patent Minefield" presentation as the focal point for this summary judgment motion.

## IV.
## ARGUMENT

**A.    Equitable Estoppel**

**1.    Legal Principles**

Equitable estoppel is, above all, an equitable doctrine. The Court has the power and the discretion to do what is right, and to bar Seagate from pursuing claims of infringement based on its improper conduct. The doctrine of equitable estoppel is a broad one that allows a finding of estoppel in a wide range of situations. <u>A.C. Aukerman Co. v. R.L. Chaides Constr.</u>

Co., 960 F.2d 1020, 1041 (Fed. Cir. 1992) (en banc) ("[E]quitable estoppel is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules."). En banc, the Federal Circuit underscored that "[a]t most, courts have provided general guidelines" for finding estoppel. Id. The following three factual elements "generally are deemed significant" to finding of estoppel:

1)  "The actor [Seagate] … communicates something in a misleading way, either by words, conduct or silence;"

2)  "The other [Cornice] relies upon that communication;" and

3)  "[Cornice] would be harmed materially if [Seagate] is later permitted to assert any claim inconsistent with [Seagate's] earlier conduct.

Id. at 1041.

Seagate's conduct is a classic example of a large company luring a start-up along with promises of protection and then, upon the start-up's refusal to accept a low-ball offer, reversing position and attempting to crush the start-up with a lawsuit. At a bare minimum, there is a genuine question of fact as to whether estoppel applies.

**2.    Seagate Led Cornice To Believe It Would Not Sue Cornice For Patent Infringement**

**REDACTED**

**REDACTED**


Q:

A:                    **REDACTED**

Q:

A:

<u>See</u> Cornice Answering Appendix, Exh. 4 at 130:11-18 [11/11/05 Altinger Depo.].  Seagate's
negotiator testified that it did not even cross his mind that the Patent Minefield presentation was
notifying Cornice of possible infringement of Seagate's portfolio:

Q:                    **REDACTED**

**REDACTED**

A:

<u>See</u> Cornice Answering Appendix, Exh. 4, at 131:17-20 [11/11/05 Altinger Depo.].

To the contrary, the message was intended, and was received, as a representation that Seagate would protect Cornice from third party patentees. <u>See</u> Cornice Answering Appendix, Exh. 8, at 149:20-22 [4/22/05 Magenis Depo.] (

); Exh. 9, at 40:25-41:5 [11/11/05 Magenis Depo.] (

**REDACTED**

); Exh. 1, at 113:4-8 [11/15/05 Watkins Depo.] (

). The absence of a threat, and the continued promises of goodwill, is underscored by the fact that, over four months after the Patent Minefield presentation, Seagate <u>renewed</u> its non-disclosure agreement with Cornice, thereby extending its access to Cornice's confidences. <u>See</u> Cornice Answering Appendix, Exh. 10 [Renewed NDA].

To avoid a finding of estoppel, Seagate now characterizes its presentation as a warning. <u>See</u> D.I. 144 at pp. 4 & 21. However, the facts in this case show otherwise – that Seagate was trying to drive Cornice into the supposed shelter of its patent portfolio. Seagate was in "sell mode," and was actively pitching its IP position as a safe harbor for Cornice. <u>See</u> Cornice Answering Appendix, Exh. 4, at 130:11-24 [11/11/05 Altinger Depo.]. Cornice perceived this sales pitch as a statement that Seagate would not sue it for patent infringement. <u>See</u> Cornice Answering Appendix, Exh. 9, at 50:7-13 [11/11/05 Magenis Depo.] (

**REDACTED**

). Cornice's understanding that Seagate would not sue it for patent infringement is not only an "inference" that can be drawn – it is compelled by the facts in this case. <u>See</u> <u>Aukerman</u>, 960 F.2d at 1042 ("The patentee's conduct must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer."); <u>see also</u> Cornice Answering Appendix, Exh. 9 at 48:2-9

[11/11/05 Magenis Depo.] (

**REDACTED**

.[1]  At a bare
minimum, there is a genuine question of material fact as to whether Seagate led Cornice to infer
that it would not sue Cornice for patent infringement.  Thus, as to the first prong of the equitable
estoppel analysis, summary judgment cannot be granted.

    **3.**    **Cornice Relied On Seagate's Conduct**

        Cornice relied on Seagate's conduct.  Based on Seagate's offers of protection,
Cornice continued to bare its confidences to Seagate, including by renewing its non-disclosure
agreement with Seagate in October 2002.  See Cornice Answering Appendix, Exh. 10 [Renewed
NDA].  Given that Seagate had full access to Cornice's confidential information, and Seagate
had put the concept of patent infringement at issue, Cornice had no choice but to trust that
Seagate would not lure Cornice into a trap of infringement.  Accordingly, Cornice relied on
Seagate's offer of protection and proceeded to spend its seed money developing its disk drive
under the watchful eyes of Seagate:

**REDACTED**

See Cornice Answering Appendix, Exh. 9, at 47:2-48:1 [11/11/05 Magenis Depo.].

---

[1] See also Cornice Answering Appendix, Exh. 9, at 156:1-10 [11/11/05 Magenis Depo.] (

**REDACTED**

).

### 4.    Cornice Relied To Its Detriment

As it turned out, Cornice relied on Seagate's offers to its extreme material detriment. After it was finally sued by Seagate, it was plain that simple design changes could have been made that would have avoided any issue, whatsoever, with respect to Seagate's patents. Indeed, many of these design changes were already in progress, begun independently of the lawsuit. Other design changes were made during the course of the lawsuit, also independently of patent infringement issues, as better approaches became clear. If Seagate had previously raised its concerns about infringement, then these design changes could have been instituted at an early phase in the design of Cornice's products, to avoid even nuisance litigation. However, having relied on Seagate's representations that it would not sue Cornice for patent infringement, these early-stage design changes were not a priority. In particular, these changes that could have been made include: 1) using a different servo pattern;[2] 2) using a non-magnetic latch;[3] and 3) using textured magnetic media.[4]

Having relied on Seagate's representations that it would not sue Cornice, Cornice commercialized the design that Seagate had overseen. Certain of the design elements, however, fell prey to Seagate's infringement claims. As baseless as the claims may be, the mere fact of the litigation has cost Cornice hundreds of millions of dollars in lost sales, has hindered Cornice's ability to obtain funding, and has upended Cornice's ability to recruit new employees. See Cornice Answering Appendix, Exh. 9, at 59:10-69:10; 75:11-76:7; 77:13-78:17; 212:9-24 [11/11/05 Magenis Depo.]. Because Cornice relied on Seagate's representations of non-aggression, Cornice did not have a need to implement these simple design changes prior to the lawsuit being filed. Had these design changes been made earlier, even nuisance litigation could

---

[2] See Cornice Answering Appendix, Exh. 9, at 94:23-96:7 [11/11/05 Magenis Depo.].

[3] See Cornice Answering Appendix Exh. 9, at 91:2-92:13 [11/11/05 Magenis Depo.].

[4] See Cornice Answering Appendix, Exh. 9, at 97:3-99:11 [11/11/05 Magenis Depo.].

have been avoided. Cornice would not have lost the sales and suffered the other bad publicity caused by this lawsuit. At a bare minimum, there is a genuine question of fact as to whether Cornice detrimentally relied on Seagate's conduct, precluding a grant of summary judgment.

**B.    Patent Misuse**

**1.    Legal Standard**

The doctrine of patent misuse is "born from the equitable doctrine of unclean hands." <u>B. Braun Medical, Inc. v. Abbott Laboratories</u>, 124 F.3d 1419, 1426 (Fed. Cir. 1997). The doctrine is a "method of limiting abuse of patent rights separate from the antitrust laws." <u>Id.</u> It is a "fact-intensive" doctrine. <u>Id.</u> The doctrine applies where "the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." <u>Virginia Panel Corp. v. MAC Panel Co.</u>, 133 F.3d 860, 868 (Fed. Cir. 1997) (citation omitted). Although courts and Congress have specified some practices that either constitute per se misuse, or that are specifically condoned, the patent misuse doctrine is ultimately a flexible one, to account for the myriad of schemes by which a patentee may attempt to misuse its patent grants. <u>See id.</u> at 869 (citing 35 U.S.C. § 271(d)). For those practices that are not specifically prohibited or allowed, the Court must apply a "rule of reason" analysis. <u>See id.</u> ("If, on the other hand, the practice has the effect of extending the patentee's statutory rights and does so with an anti-competitive effect, that practice must then be analyzed in accordance with the 'rule of reason.'"). This is a fact-intensive inquiry, by which "the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." <u>Id.</u>

**2.    Seagate Attempted To Coerce An Unfair Commercial Advantage**

**REDACTED**

**REDACTED**

**REDACTED**

 

That this is nuisance litigation at best is also supported by facts in the record. Even Seagate's own experts have conceded that many of Seagate's infringement claims are unsupportable. For example, Seagate continues to pursue its infringement claims against Cornice's 3.0 gigabyte product under its '159 patent, which is directed to a magnetic parking device.[5] However, starting with its 3.0 GB product, Cornice does not even use a magnet in its

---

[5]     See Cornice Answering Appendix, Exh. 14, at 9 [6/21/05 Seagate's Suppl. Response to Cornice's First Set of Interrogatories] (

                                    **REDACTED**          (Continued...)

latch, and Seagate's own expert, Dr. Bogy, admitted months before Seagate's renewed accusations that there can be no infringement of Seagate's '159 patent by Cornice's 3.0 product. See Cornice Answering Appendix, Exh. 13, at 230:5-9 [4/11/05 Bogy Depo.] (

**REDACTED**

). Indeed, in his expert report, Dr. Bogy reiterated that

**REDACTED**

). See Cornice Answering Appendix, Exh. 15, at 22 n.2 [8/22/05 Bogy Expert Report]. Months after its own expert admitted Cornice's 3.0 gigabyte products do not infringe the '159 patent, Seagate has persisted in its accusations of infringement, continuing to impose defense costs on Cornice. Seagate is thereby trying impermissibly to broaden the physical scope of its patent grant with anticompetitive effect. Virginia Panel, 133 F.3d at 868.

Moreover, Seagate persists in its attempt to sweep Cornice's 4.0 products into this litigation in order to further tax Cornice's resources. This Court has ruled three times that Cornice's 4.0 products are outside the scope of this litigation. At a May 11 discovery conference, the Court denied Seagate's request for discovery of Cornice's 4.0 products that were in development, stating that "products not in the market by the discovery cutoff date" would not be part of this case. See D.I. 67, pp. 20-21. Again, at a June 28, 2005 discovery conference, the Court again denied Seagate's attempt to bring the 4.0 GB products into this case, saying that "the bottom line is, if it's not being marketed as a commercial product, I thought I had already ruled that it was not part of this case." See D.I. 111 at p. 14. Then, on August 3, 2005, Seagate sought – for a third time – to take discovery on the 4.0 products. See D.I. 120. In an August 9, 2005

---

(...Continued)

**REDACTED**

).

Order, the Court denied that request, on the basis that "the court is not persuaded ... that any such products are presently in the market as commercial products." See D.I. 123. Nevertheless, when Seagate served expert reports on August 22, 2005, it persisted in asserting infringement by Cornice's 4.0 products. See Cornice Answering Appendix, Exh. 15 at 23 [8/22/05 Bogy Expert Report ]; Exh. 16 at 12-13 [8/22/05 Gitis Expert Report].

Furthermore, the baselessness of Seagate's claims has forced it to take positions that not even its own General Counsel agrees with. Seagate should have withdrawn its suit on the '754 and '506 patents as soon as it became clear that Cornice was immune from suit under the cross-license agreement entered into between Seagate and TDK. See Cornice's Motion For Summary Judgment Pursuant To License [D.I. 155]. To attempt to preserve its claim under these two patents, Seagate is taking the position that the license phrase "otherwise transfer" is limited to transfers of legal title. See Seagate Brief for Summary Judgment RE Licensing [D.I. 152], at 20-21. However, Seagate's own General Counsel disagreed with this position, stating that the phrase "otherwise transfer" means "some transfer of any kind." See Cornice Answering Appendix, Exh. 17, at 174:3-13 [8/18/05 Hudson Depo.]. The obvious purpose of maintaining this position is to maintain the anticompetitive and expensive black cloud over Cornice. Virginia Panel, 133 F.3d at 868.

Seagate's misconduct is not immune from patent misuse through the provisions of 35 U.S.C. § 271(d). That statute provides that:

> No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following:
>
> ...
>
> (3) sought to enforce his patent rights against infringement or contributory infringement."

35 U.S.C. § 271(d).

A fair reading of the April 10, 2003 Hudson letter, and the May 2002 Patent Minefield presentation, is that Seagate was trying to force Cornice to take a license to Seagate's entire patent portfolio, and/or to obtain majority ownership of Cornice – a competitor identified by Seagate itself as innovative[6] -- so as to negate Cornice as a competitive threat. This blunt force use of the Seagate patent portfolio went beyond the simple assertion of patent rights that is anticipated by 35 U.S.C. § 271(d). Attempting to force Cornice to license Seagate's entire patent portfolio regardless of actual use by Cornice is a classic form of patent misuse and is not immunized by the Patent Law. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 135 (1969) ("We hold that conditioning the grant of a patent license upon payment of royalties on products which do not use the teaching of the patent does amount to patent misuse."). Similarly, the coercive use of the patent portfolio to try to force an innovative competitor to sell out also goes beyond mere good faith enforcement of specific patent rights.


**REDACTED**


### C.    Laches

#### 1.    Legal Principles

"Laches is defined as 'the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar.'" Tenneco Automotive Operating Co. v. Visteon

---

[6] Seagate's own employees have repeatedly acknowledged the novel nature of Cornice's technology. See Cornice Answering Appendix, Exh. 8 146:18-147:10; 154:16-23 [11/11/05 Magenis Depo.].

Corp., 375 F.Supp.2d 375, 380 (D. Del. 2005) (Robinson, J.) (citing A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028-29 (Fed. Cir. 1992) (en banc)). The two elements of a laches defense are fact-intensive inquiries. First, it must be shown that "the plaintiff delayed in filing suit for an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant." Id. Secondly, it must be shown that "the defendant suffered material prejudice or injury as a result of the plaintiff's delay." Id. Both these factors are present here.

### 2.    Seagate Unreasonably Delayed In Filing Suit

Seagate states that the first time it could have sued Cornice was on August 1, 2002, the date Cornice filed its incorporation papers (as Convergent Systems Solutions, Inc.). According to Seagate, "[u]ntil then, Cornice did not exist and Seagate could not have brought suit against a non-existent infringer." D.I. 144, at 9. However, Seagate had full access to Cornice's confidential design information as of November 15, 2001, when it started its technical due diligence of the company. See Cornice Answering Appendix, Exh. 18 [Seagate Due Diligence Visit]. Indeed, Cornice's CEO, Kevin Magenis, specifically inquired of Seagate's executives during this time period whether there were any questions of infringement, and they gave no such indication. See Cornice Answering Appendix, Exh. 9, at 156:1-10 [11/11/05 Magenis Depo.]. The mere fact that Cornice did not file incorporation papers until nearly a year later did not somehow prevent Seagate from asserting infringement.

At a minimum, there is a fact question as to whether this delay, in the context of suing a start-up competitor in the fast-paced disk drive industry, is unreasonable. As Seagate writes in its own 10-K statements filed with the SEC, product lifetimes in the disk drive industry are short. See Devlin Decl. [D.I. 145], Exh. 1 [Seagate 10-K]. This delay is especially harmful for a start-up competitor which was exhausting its seed money to develop its first generation products. It is a question of fact, in the context of a start-up company in a fast-paced industry, whether it was unreasonable for Seagate to delay this long in bringing suit. See Aukerman, 960

F.2d at 1032 ("The defense, being personal to the particular party and equitable in nature, must have flexibility in its application."). Because this is a fact-intensive inquiry, the evidence should be fully presented at trial. See id. ("A court must look at all of the particular facts and circumstances of each case and weigh the equities of the parties.").

> **3.     Cornice Suffered Material Prejudice As A Result Of The Delay**

As stated above with respect to equitable estoppel, Cornice has suffered extreme material prejudice as a result of Seagate's delay in pursuing its claims of infringement. Had Seagate raised its infringement concerns earlier, Cornice could have factored these concerns into the early-phase design decisions for its disk drives, to avoid even nuisance litigation. However, Cornice developed its products under the watchful eyes of Seagate, without a hint from them until Cornice's product was nearly released of any problems of patent infringement. Now, the mere fact of this litigation has had severe anticompetitive effects, including by costing Cornice hundreds of millions of dollars in lost sales, hindering Cornice's ability to obtain funding, and upending Cornice's ability to recruit new employees. See Cornice Answering Appendix, Exh. 9, at 59:10-69:10; 75:11-76:7; 77:13-78:17; 212:9-24 [11/11/05 Magenis Depo.]. Much if not all this hardship could have been avoided if Seagate had simply raised its infringement concerns early in the design process, while it had full access to Cornice's technology. However, with Seagate's delay in bringing suit, Cornice has been severely prejudiced. At a minimum, there are questions of fact which preclude summary judgment as to this point. Accordingly, Seagate's motion for summary judgment on Cornice's laches defense must fail.

## V.

## CONCLUSION

For the foregoing reasons, Seagate's motion for summary judgment should be denied.

Dated: December 20, 2005

Respectfully submitted,

_____/s/ Jack B. Blumenfeld_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
Wilmington, DE 19801
(302) 658-3989
*Attorneys for Plaintiffs*

*Of Counsel:*

CORNICE, INC.

Matthew D. Powers, Esq.
Jason D. Kipnis, Esq.
Steven C. Carlson
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3098
Fax: (650) 802-3100

Russell Wheatley
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, TX 77001

Alan J. Weinschel
David C. Radulescu
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Attorneys for Defendant
CORNICE, INC.

## <u>CERTIFICATION</u>

I hereby certify that on **December 20, 2005** a true and correct copy of the above and foregoing **DEFENDANT CORNICE, INC.'S ANSWERING BRIEF IN OPPOSITION TO SEAGATE TECHNOLOGY LLC'S MOTION FOR SUMMARY JUDGMENT ON CORNICE'S THIRD, FIFTH, AND SEVENTH AFFIRMATIVE DEFENSES** Pursuant to License with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

William J. Marsden, Jr., Esquire

Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

| <u>BY HAND</u> | <u>BY FEDERAL EXPRESS</u> |
|---|---|
| William J. Marsden, Jr., Esquire<br>Fish & Richardson, P.C.<br>919 N. Market Street<br>Suite 1100<br>Wilmington, DE 19801 | Roger S. Borovoy, Esquire<br>Fish & Richardson, P.C.<br>500 Arguello Street<br>Redwood City, CA 94063-1526<br><br>Ruffin B. Cordell, Esquire<br>Fish & Richardson, P.C.<br>1425 K Street, NW<br>Suite 1100<br>Washington, DC 20005<br><br>Edmond Bannon<br>Fish & Richardson<br>Citigroup Center<br>153 East 53rd St.<br>New York, NY 10022 |

/s/ _____

Julia Heaney (#3052)

Morris, Nichols, Arsht & Tunnell

jheaney@mnat.com

*Attorneys for Defendant and*
Counterclaim Plaintiff Cornice, Inc.

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on December 22, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

**BY HAND:**

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE  19801

**BY FEDERAL EXPRESS:**
Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC  20005

/s/ *Julia Heaney*
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL
jheaney@mnat.com
  *Attorneys for Defendant and*
  *Counterclaim Plaintiff Cornice, Inc.*