IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEAGATE TECHNOLOGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-418-SLR |
| | ) | |
| CORNICE, INC. | ) | **REDACTED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CORNICE INC.'S ANSWERING BRIEF IN RESPONSE TO SEAGATE'S OPENING CLAIM CONSTRUCTION BRIEF FOR U.S. PATENT 6,324,054

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
    *Attorneys for Defendant and Counterclaim Plaintiff Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000
**Redacted Filing Date:  December 22, 2005**
Original Filing Date:  December 16, 2005

i.

## TABLE OF CONTENTS

                                                                                    Page

TABLE OF CITATIONS                                                                    ii

NATURE AND STAGE OF THE PROCEEDING                                                     1

SUMMARY OF ARGUMENT                                                                    1

STATEMENT OF FACTS                                                                     2

ARGUMENT                                                                               2

I.      "CRITICAL REGION" AND "NON-CRITICAL REGION"                                    2

        A.      Because the specification makes clear that "most shock loadings during
                transport and handling" are focused on the corners, Cornice's
                construction of "critical region" and "non-critical region are supported
                by the intrinsic record.                                               3

        B.      The doctrine of claim differentiation has no bearing on Cornice's
                construction.                                                          4

II.     "SHOCK ABSORBING MATERIAL"                                                     4

        A.      The entirety of Seagate's argument regarding "shock absorbing material"
                is based on overruled case law.                                        5

        B.      Seagate's purported "ordinary meaning" of "shock absorbing material" is
                based on the dictionary definition of a different term that appears
                elsewhere in the claims                                                5

        C.      Seagate's alleged "ordinary meaning" improperly reads limitations out of
                the claims.                                                            6

III.    "FLEXIBLE SHOCK ABSORBING MATERIAL"                                            7

IV.     "ENCLOSURE" AND "ENCLOSURE SIZED TO RECEIVE A DISC DRIVE
        THEREIN"                                                                       8

V.      "CORNER [OF THE DISC DRIVE]"                                                   9

CONCLUSION                                                                            11

ii.

## <u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

<u>Cases</u>

*Apple Computer v. Articulate Sys., Inc.,*
    234 F.3d 14 (Fed. Cir. 2000)      7

*Johnson Wordwide Associates, Inc. v. Zebco Corp.,*
    175 F.3d 985 (Fed. Cir. 1999)      10

*Lantech v. Keip Mach. Co.,*
    32 F.3d 542 (1994)      7

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)      1, 5, 6, 9

*RF Delaware, Inc. v. Pacific Keystone Techs., Inc.,*
    326 F.3d 1255 (Fed. Cir. 2003)      4

1.

## NATURE AND STAGE OF THE PROCEEDING

Seagate Technology LLC ("Seagate") brought this action against Cornice, Inc. ("Cornice") for infringement of seven patents on June 22, 2004. The parties have exchanged opening claim construction briefs. Cornice provides this Response to Seagate's opening brief regarding the construction of claim terms appearing in U.S. Patent No. 6,324,054 ("the '054 patent").

## SUMMARY OF ARGUMENT

The parties have proposed competing constructions for two terms from the '054 patent: (1) "critical region," and (2) "non-critical region." Cornice has offered proposed constructions for five additional terms in dispute that Seagate prefers not to be construed by the Court: "shock absorbing material," "flexible shock absorbing material," "enclosure," "enclosure sized to receive a disc drive therein," and "corner." As made clear in its opening brief, Seagate's arguments ignore the intrinsic record and lack basis in law.

For example, with respect to "critical region" and "non-critical region," Seagate relies on claim differentiation to argue that the Court cannot adopt Cornice's construction. However, aside from being a comparatively weak doctrine of claim construction, Seagate has not shown that the premise for claim differentiation exists, *i.e.,* that Cornice's construction would render two claims identical in scope. Seagate's errors continue in its arguments for "shock absorbing material." First, it relies on case law plainly overruled by the recent *en banc Phillips* decision. Moreover, under Seagate's construction, *any material* qualifies as a "shock absorbing material," thereby reading out the limitation "shock absorbing." And, in an attempt to establish an ordinary meaning of "shock absorbing material" outside the context of the '054 patent, Seagate relies on the dictionary definition of "shock absorber"—*a different term that appears elsewhere in the claims*.

Without repeating *in toto* its Opening Brief, Cornice will likewise respond to the other pertinent errors of Seagate's argument as warranted.

2.

## STATEMENT OF FACTS

Relevant facts are set forth in the Argument section.

## ARGUMENT

For a discussion of the legal standards for claim construction, please refer to Cornice's

Opening Claim Construction Brief for U.S. Patent No. 6,146,754.

## I.    "CRITICAL REGION" AND "NON-CRITICAL REGION"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "critical region" [cls. 1, 2, 6, 7, 10, 15, 19, 20] | The term "critical region" means "a region of the disk drive that is relatively sensitive to vibration and shock accelerations because most shock loadings during handling and transport are focused there." | A region of the disc drive that is relatively sensitive to vibration and shock accelerations. The region is critical based on whether external vibrations or shock delivered to that region are more likely to result in drive failure or damage, than in non-critical regions. |
| "non-critical region" [cls. 1, 6, 10, 15, 19] | The term "non-critical region" means "a region of the disk drive that is relatively insensitive to vibration and shock accelerations because it receives less shock loading during handling mishaps." | A region of the disc drive that is relatively insensitive to vibration and shock during unpredictable events. |

At the heart of the dispute over these terms is whether a region of the disk drive is

"critical" because it is more likely to receive a shock event (probability-based), or because the drive is

more susceptible to damage when the shock event occurs there (effect-based). Seagate, advocating for

the latter, ignores the intrinsic record.

3.

A.   **Because the specification makes clear that "most shock loadings during transport and handling" are focused on the corners, Cornice's construction of "critical region" and "non-critical region are supported by the intrinsic record.**

As explained in Cornice's Opening Brief, the specification clearly indicates that regions are critical because "most" shock events occur there, not because the damage sustained at those locations is greater than elsewhere. As the '054 Patent explains:

> These corner portions . . . are thicker than the side walls and the top and bottom portions so as to absorb larger shock loads, since *most shock loadings that occur during transport and handling of the system are focused on the corner portions* of the body 606. These are the typical critical regions in a disc drive. D.I. 151, Exh. 1 ('054 Patent) at Col. 6:40-47.

To overcome this evidence, Seagate insists that "the applicants performed different tests to identify which regions were critical, more likely to cause damage to the drive after being subjected to shock and/or vibration caused by various rigorous shock testing methods." D.I. 150, Seagate's Opening Brief Regarding Construction of U.S. Patent Nos. 6,324,054, 6,545,845 and 5,596,461 (hereinafter "Seagate Opening '054 CC Brief"), at p. 22.  However the patent itself does not support this contention. Instead, the patent compares the shock sustained *with* the protective jacket to the shock sustained *without* the protective jacket. This has nothing to do with Seagate's proposed construction. Nowhere does the patent reveal testing to compare the damage caused when the shock is delivered to one location versus the damage caused when the shock is delivered to a different location. Seagate's argument is thus misguided and the evidence does not support its position.

Furthermore, Seagate argues that Cornice "ignores the evidence" by "improperly inject[ing] the unclaimed concept" of "transport and handling" into the claims. D.I. 150 at pp. 22-24. Once again, the portion of the specification cited above supports Cornice's construction in this regard, indicating that the "critical regions" (and thus, "non-critical regions") are chosen on the basis of where most shock loadings occur "during transport and handling."

4.

B.   **The doctrine of claim differentiation has no bearing on Cornice's construction.**

   With the specification stacked against it, Seagate next argues that Cornice's construction "cannot stand" because it "would render at least asserted dependent claim 2 superfluous." D.I. 150 at p. 23. Seagate's basis for its claim differentiation argument is that under Cornice's construction "the corners of the disk drive are more liable to hit than the sides of the drive," and claim 2 "specifically recites that the 'critical region . . . comprises a corner of the disc drive." *Id.* However, claim differentiation—which is not a "hard and fast rule of construction" despite Seagate's assertions to the contrary—is only applicable when the limitation in question is *the only meaningful difference* between the two claims. *RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1263-64 (Fed. Cir. 2003) ("Although claim differentiation is not a 'hard and fast rule of construction,' it is applicable where 'there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, and that limitation is the only meaningful difference between the two claims.'") (citations omitted). Here, nothing in claim 1 even requires that the disk drive *have* corners (*e.g.*, does not require the drive be a rectangular solid). By requiring that the drive must first have corners, and then that those corners must be the critical region, claim 2 is thus not identical in scope to claim 1 using Cornice's proposed construction, and therefore Seagate's argument is irrelevant.

II.   **"SHOCK ABSORBING MATERIAL"**

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "shock absorbing material" [cls. 1, 4, 6, 10, 15, 17, 19, 22] | The term "shock absorbing material" means "a material that is suited for widening a shock pulse and reducing its maximum amplitude." | None |

   Seagate offers no construction for this term except its alleged "ordinary meaning," and argues that Cornice's construction improperly reads limitations from the specification into the claims.

5.

D.I. 150 at p. 27. However, Seagate's arguments (1) rely on case law overruled by *Phillips* and (2) ignore the intrinsic record.

### A.  The entirety of Seagate's argument regarding "shock absorbing material" is based on overruled case law.

The legal basis for Seagate's entire argument regarding "shock absorbing material" is that "it is improper for Cornice to attempt to narrow the plain and ordinary meaning of the clam terms, when it has failed to show that the specification or prosecution history evidences a clear and unmistakable intent to redefine the plain meaning of the claims." D.I. 150 at 29 (*citing Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906-906 (Fed. Cir. 2004)). Seagate is relying on overruled case law. The *en banc* court in *Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) outright rejected Seagate's reasoning: "requiring that any definition of claim language in the specification be express, is inconsistent with our rulings that the specification is 'the single best guide to the meaning of a disputed term,' and that the specification 'acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.'" 415 F.3d at 1320-21 (*quoting Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Indeed, *Phillips* completely and unambiguously eviscerates Seagate's whole argument, noting that "a claim term may be clearly redefined without an explicit statement of redefinition." *Id.* at 1321 (*quoting Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.,* 262 F.3d 1258, 1268 (Fed.Cir.2001)). Accordingly, Seagate's entire argument regarding "shock absorbing material" is not based in law, and therefore, is without force.

### B.  Seagate's purported "ordinary meaning" of "shock absorbing material" is based on the dictionary definition of a different term that appears elsewhere in the claims

Curiously, Seagate argues that this Court should determine the "ordinary meaning" of "shock absorbing material" based on the dictionary definition of "shock absorber." D.I. 150 at pp. 26-27. Seagate makes at least two errors: (1) it does not even use a definition for the term in dispute, but rather a

6.

term that appears elsewhere in the claims and (2) it relies on extrinsic evidence, outside the context of the '054 patent.

Seagate asks this Court to base the construction of the term "shock absorbing material" on the dictionary definition of "shock absorber." The claim language itself forbids this. For example, claim 1, in relevant part, reads "A shock absorber apparatus . . . comprising . . . a shock absorbing material." Clearly, the claim language requires that "shock absorber" be a broader term than "shock absorbing material" since the "shock absorber" *itself comprises* "shock absorbing material." The claims *simply do not allow a "shock absorber"* to be the same thing as a "shock absorbing material."

Moreover, this is proof that Seagate is relying on extrinsic evidence without regard to the context of the '054 patent. Indeed, the Federal Circuit's recent *en banc* decision in *Phillips v. AWH Corp.* makes clear that the "ordinary meaning" of "shock absorbing material" *must be ascertained with* reference to the '054 patent. "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips,* 415 F.3d at 1321. As such, Seagate's alleged "ordinary meaning" must be rejected.

### C.    Seagate's alleged "ordinary meaning" improperly reads limitations out of the claims.

Seagate argues that Cornice's requirement that the "shock absorbing material must be suited for widening a shock pulse and reducing its maximum amplitude" contradicts the "plain and ordinary meaning of the term." D.I. 150 at p. 28. Seagate's position is that the claimed "shock absorbing material" need not have "any certain mechanical or material properties." *Id.* Seagate is improperly reading limitations out of the claim.

Under Seagate's construction, which does not require that a "shock absorbing material" have "any certain mechanical or material properties," the limitation "shock absorbing" is eliminated. Indeed, under Seagate's construction, *any material* can be a "shock absorbing material." Seagate seeks to rewrite the claims of the '054 patent, and change "shock absorbing material" to simply "material." The law prohibits this. It is well-established that every limitation in a claim is significant, and thus cannot be

7.

rendered mere surplusage. *Apple Computer v. Articulate Sys., Inc.*, 234 F.3d 14, 25 (Fed. Cir. 2000) ("[We] . . .simply cannot read the qualifier 'help' out of the definition of 'help' access window."); *Lantech v. Keip Mach. Co.*, 32 F.3d 542, 546 (1994) ("All limitations in a claim must be considered meaningful.").

        Seagate further criticizes Cornice's construction as being "overly technical." However, Cornice's "technical" construction is a clear and precise way to describe a simple concept – in order for a material to be shock absorbing, it must provide a cushion against shock events. The hard plastic corners on the accused device provide no cushion, which explains Seagate's motivation to avoid any rigorous definition for the term, and why it wishes to remove the "shock absorbing" limitation from the patent by arguing that any material can qualify regardless of whether it has "any certain mechanical or material properties."

### III.     "FLEXIBLE SHOCK ABSORBING MATERIAL"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "flexible shock absorbing material"<br>[cls. 15, 17, 19, 22] | The term "flexible shock absorbing material" means "a shock absorbing material that is able to bend without breaking." | None |

        Seagate offers no construction for this term except its alleged "ordinary meaning," and argues that Cornice's construction improperly reads limitations from the specification into the claims. D.I. 150 at p. 28-29. However, Seagate argues for an interpretation that impermissibly reads limitations out of the claims.

        Under Seagate's construction, which does not require that a "flexible shock absorbing material" have any particular degree of flexibility, the limitation "flexible" is eliminated. Indeed, under Seagate's construction, *any material* can be "flexible." Seagate seeks to rewrite the claims of the '054 patent, and change "flexible shock absorbing material" to simply "shock absorbing material." As discussed above, the law prohibits this. Moreover, since the '054 patent already uses the phrase "shock

8.

absorbing material" in other claims, it is clear that the inventors intended narrower coverage when they used the phrase "flexible shock absorbing material." Accordingly, Seagate's construction must be rejected.[1]

## IV. "ENCLOSURE" AND "ENCLOSURE SIZED TO RECEIVE A DISC DRIVE THEREIN"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "enclosure" [cls. 1, 5, 6, 10, 11, 12, 15, 18, 19] | The term "enclosure" means "something that encloses, meaning to shut in all around or to surround." | None |
| "enclosure sized to receive a disc drive therein" [cls. 1, 15, 19] | The phrase "enclosure sized to receive a disc drive therein" means "the enclosure must be sized to contain a disk drive." | None |

Seagate offers no construction for this term except its alleged "ordinary meaning," and argues that Cornice's construction improperly reads limitations from the specification into the claims. D.I. 150 at p. 25-26. However, Seagate again argues for a construction that is inconsistent with the '054 patent and impermissibly reads limitations out of the claims.

Under Seagate's construction—the alleged "ordinary meaning"—an "enclosure" merely is "sized to conform to the outer dimensions." *Id.* at 25. This broad, sweeping construction ignores what the '054 patent identifies as an "enclosure." The specification and figures illustrate a disk drive (200) "encapsulated" by shock absorbing jacket (e.g., 300 or 602). The shock absorbing material covers substantially every area of the disk drive, and the only apertures are those necessary to insert the disk drive into the shock absorbing jacket and provide access to the mounting features and connectors. *See* D.I. 150, Exh. 1 at col. 4:47-49; 6:16-19; 6:61-65; and 6:66-7:6. Because Seagate's "ordinary meaning"

---

[1]    Here too, Seagate misstates Cornice's position, saying that Cornice is advocating a construction that the material "will never break under any circumstances." Cornice's construction speaks for itself notwithstanding Seagate's mischaracterization.

9.

is divorced from the '054 patent, it must be rejected. *Phillips*, 415 F.3d at 1321 ("Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent.").

Moreover, Seagate's overly broad construction reads the limitation "enclosure" out of the claims. Under Seagate's construction, anything that is "sized to conform to the outer dimensions" of something else is its "enclosure." D.I. 150 at p. 25. This overly broad construction contradicts the common understanding of "enclosure"—particularly in view of the '054 patent—and rewrites the claim such that anything placed on the external periphery of the device could constitute an "enclosure."[2] As discussed above, the law prohibits a claim construction that eliminates limitations. Thus, Seagate's alleged "ordinary meaning" should be rejected.

## V.    "CORNER [OF THE DISC DRIVE]"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "corner"<br>[cls. 2, 7, 11, 20.] | The term "corner" means "the point or place where lines or surfaces join and form an angle." | None |

Once again, Seagate offers no construction for this term, but instead urges an "ordinary meaning" inconsistent with the intrinsic record. Seagate's proposed "ordinary meaning" is "simply one corner of the disc drive." D.I. 150 at p. 30. Seagate criticizes Cornice's construction because it is

---

[2]    The absurdity of Seagate's "ordinary meaning" is best appreciated with reference to real-life examples. For example, if an "enclosure" is merely something that is "sized to conform to the outer dimensions," then the following is true: (1) a necklace, bracelet, belt, or even a wedding band is an enclosure for your body; (2) gutters are an enclosure for your house; and (3) a rubber band is an enclosure for a stack of mail.

In support of this "ordinary meaning," Seagate cites to the deposition testimony of Cornice's expert    REDACTED    However, Seagate is conflating disparate aspects of Cornice's construction.    REDACTED

REDACTED

10.

relevant only "in the two-dimensional realm and obviously disc drives are three-dimensional objects." *Id.* at 32.

Seagate bases its construction on the "commonly-understood four corners of the disc drive identified through out the intrinsic evidence (e.g., represented by corner portions 644, 644 [sic], 650, and 652 in Figures 9-13 of the '054 patent)." *Id.* Seagate's reliance is misplaced. As the '054 patent makes clear, portions 644, 646, 650, and 652 are the corner portions of the "shock absorber apparatus 602," *not* the disk drive 200. *See, e.g.,* D.I. 150, Exh. 1 at col. 6:26-46. Furthermore, Seagate insists that a "3-d" definition of "corner" be used, but at the same time insists that that there are only four "commonly-understood" corners. This is inconsistent. If we hold true to Seagate's reasoning, a 3-d rectangular solid would have *eight* corners. Indeed, Seagate wishes to call certain edges "corners" and others "not corners," to suit its needs. By contrast, Cornice's construction applies the term in a uniform fashion.

Cornice's construction—aside from being internally consistent—is consistent with the intrinsic record. The only examples of a "corner" in the '054 patent appear in the figures, with reference to the "shock absorber apparatus 602." Although the '054 patent mentions only four corners, "corners" are illustrated in the figures variously as edges, points, and surfaces. *See, e.g.,* D.I 150, Exh. 1 at Figure 10 (identifying surfaces 650 and 652 as "corners" while edges 644 and 646 are identified as "corners"); Figure 13 (identifying edge 650 as a "corner"); Figure 15 (identifying edge 660 as a "corner" and point 646 as a "corner"). Cornice's construction of "corner" is therefore consistent with the intrinsic evidence. *See Johnson Wordwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 991 (Fed. Cir. 1999) ("Varied use of a disputed term in the written description demonstrates the breadth of the term rather than providing a limited definition."). For these reasons, as well as those in its opening brief, Cornice's construction of "corner" should be adopted.

11.

## CONCLUSION

For the foregoing reasons, the Court should adopt Cornice's proposed constructions for the claim limitations of the '054 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Julia Heaney (#3052)
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
  *Attorneys for Defendant and Counterclaim Plaintiff*
  *Cornice, Inc.*

OF COUNSEL:
Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

December 16, 2005
498159

CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on December 16th, 2005, I electronically filed the

foregoing, which will send notification of such filing(s) to the following:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street
Suite 1100
Wilmington, DE 19801
marsden@fr.com

One (1) Electronic Version by Email
and One (1) Hard Copy for Hand Delivery
on Saturday, December 17, 2005

Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC 20005
cordell@fr.com

One (1) Electronic Version by Email
and One (1) Hard Copy by Federal Express
Delivery for Monday, December 19, 2005

/s/ Julia Heaney (#3052)
Julia Heaney (#3052)
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on December 22, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

**BY HAND:**

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

**BY FEDERAL EXPRESS:**
Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC 20005

/s/ Julia Heaney
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL
jheaney@mnat.com
*Attorneys for Defendant and*
*Counterclaim Plaintiff Cornice, Inc.*