IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,            )
                                   )
            Plaintiff,             )
                                   )
     v.                            )        Civil Action No. 04-418-SLR
                                   )
CORNICE, INC.                      )        **REDACTED**
                                   )
            Defendant.             )
                                   )

## CORNICE INC.'S ANSWERING BRIEF IN RESPONSE TO SEAGATE'S OPENING CLAIM CONSTRUCTION BRIEF FOR U.S. PATENT 5,452,159

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
     *Attorneys for Defendant and Counterclaim Plaintiff
     Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000
**Redacted Filing Date:  December 22, 2005**
Original Filing Date:  December 16, 2005

i.

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CITATIONS |  | ii |
| NATURE AND STAGE OF THE PROCEEDING |  | 1 |
| SUMMARY OF ARGUMENT |  | 1 |
| STATEMENT OF FACTS |  | 1 |
| ARGUMENT |  | 1 |
| I. | "PARK" AND "PARKING" | 2 |
| II. | "A MAGNETIC FIELD CONTAINING MEMBER" | 4 |
| III. | "THE CAPTURE MEMBER IS IN A NON-PERMEATED STATE . . . AND THE CAPTURE MEMBER SWITCHES TO A PERMEATED STATE" | 5 |
| IV. | AN ACTUATOR FOR SELECTIVELY POSITIONING THE TRANSDUCER OVER A PATH BETWEEN A FIRST POSITION AND A SECOND POSITION" | 6 |
| CONCLUSION |  | 7 |

ii.

TABLE OF CITATIONS

Page(s)

<u>Cases</u>

*CCS Fitness, Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002)     5

*Nystrom v. Trex Co., Inc.*,
   424 F.3d 1136 (Fed. Cir. 2005)     5

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)     3

1.

## NATURE AND STAGE OF THE PROCEEDING

Seagate Technology LLC ("Seagate") brought this action against Cornice, Inc. ("Cornice") for infringement of seven patents on June 22, 2004. The parties have exchanged opening claim construction briefs. Cornice provides this Response to Seagate's opening brief regarding the construction of claim terms appearing in U.S. Patent No. 5,452,159 ("the '159 patent").[1]

## SUMMARY OF ARGUMENT

The parties have proposed competing constructions for four terms from the '159 patent: (1) "park" and "parking," (2) "an actuator for selectively positioning the transducer over a path between a first position and a second position with respect to the data storage medium," (3) "a magnetic field containing member," and (4) "the capture member is in a non-permeated state ... and the capture member switches to a permeated state." As made clear by its opening brief, Seagate's arguments ignore the intrinsic record, and lack basis in law.

For example, with respect to the "park" and "parking" limitations, Seagate continues to ignore the explicit definition provided in the specification of the '159 patent. Instead, to argue for a broader construction, Seagate improperly relies on extrinsic evidence. Without repeating *in toto* its Opening Brief, Cornice will likewise respond to the other pertinent errors of Seagate's argument as warranted.

## STATEMENT OF FACTS

Relevant facts are included in the Argument section.

## ARGUMENT

At the outset, Seagate attempts to characterize Cornice's constructions as "contrived" and "ill-conceived"                                                    REDACTED

                                   REDACTED

---

[1]     References to Exhibits A-B are to those attached to Cornice's Opening Claim Construction Brief for the '159 Patent (D.I. 170). Exhibits C-D are attached herewith.

2.

REDACTED

REDACTED

REDACTED

Seagate's gamesmanship does not end there. In its "Technology Overview" Brief Seagate purports to provide technical background "to assist the Court in construing the seven patents in suit." D.I. 182 at p. 1. However, in discussing the '159 patent, Seagate uses the disputed claim term "park" in a manner completely inconsistent with the '159 patent specification. Seagate's statement that "park" could mean that the actuator is placed on "a load-unload ramp fixed at the outer edge of the disc" is pure attorney argument, unsupported by any expert testimony, and contradicts the intrinsic record. This suggestion that the phrase "park" describes dynamic head loading technology ("DHL") has been soundly rejected by                      REDACTED

REDACTED                                                      REDACTED

Cornice will now address the disputed claim terms *ad seriatim*.

I.    **"PARK" AND "PARKING"**

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "parking device" [cls. 1-6]<br><br>"parking means" [cls. 1, 3, 5]<br><br>"to park" [cls. 1, 5] | The terms "park" and "parking," as used in the phrases "parking device," "parking means," and "to park," mean "[m]aintain[ing] the position of the head(s) over a selected portion of the disk." | "to park" means "fix the position of the actuator which supports the head(s)." |

---

2

REDACTED                        REDACTED

3.

The first of Cornice's "contrived" constructions is taken directly from the specification of the '159 patent itself, which specifically states it is providing a definition for the terms "park" and "parking" as used in this patent:

> As used in this patent, the terms "park" and "parking" refer to the maintaining the position of the head(s) over a selected portion (usually a "landing zong" at the inside or outside diameter) of the disk (or disks). The heads are supported by an actuator, and parking the heads also means parking the actuator by fixing the position of the actuator which supports the heads.

D.I. 148, Exh. 2, the '159 patent at col. 1, lines 56-63. Cornice's "contrived" construction is lifted directly from this portion of the specification, which unambiguously states that "park" and "parking" require maintaining the position of the head(s) *over a selected portion of the disk*. Seagate's proposed construction eliminates this requirement, and is motivated by the fact that the accused devices do *not* position the heads over a selected portion of the disk. The sentence in the specification following the definition of "park" and "parking" further states that the phrase "parking the heads" can be used interchangeably with "parking the actuator," since the heads are connected to and supported by the actuator and thus one cannot move if the other is fixed.

To overcome the patent's definition which does not suit its purposes, Seagate argues that the second sentence (discussing how the actuator and heads are connected and thus "parking" one means "parking" the other) is actually a completely new definition of the terms "park" and "parking" intended to eviscerate the sentence immediately preceding it. Its logic notwithstanding, and lacking any legal or intrinsic support for the argument,                    REDACTED

              REDACTED                                        Seagate's arguments must fail, because such evidence cannot be used to overcome an explicit definition provided by the patentee. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves,

4.

the written description, and the prosecution history, in other words, with the written record of the patent.'") (*quoting Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed.Cir.1998)).[3]

II.     **"A MAGNETIC FIELD CONTAINING MEMBER"**

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "a magnetic field containing member"<br><br>[cls. 1, 5] | The phrase "a magnetic field containing member" means "a single structure that prevents magnetic fringing (*i.e.*, contains the magnetic field)." | "A member that contains a magnetic field." |

        In its Opening Brief, Seagate first misstates Cornice's position in an attempt to devise a criticism of it, saying that Cornice seeks a construction that would require elimination of "all" magnetic fringing. D.I. 148 at p. 18. In fact however, Cornice's proposed construction does not include such draconian language, and thus Seagate's argument regarding "reading out" the preferred embodiment is moot.[4]

        Under Seagate's proposed construction, any material in the presence of and permeable to a magnetic field would satisfy the "magnetic filed containing member" limitation, regardless of whether that member actually acted to contain or confine the magnetic field. As explained in Cornice's Opening

---

[3]     At the end of its argument, Seagate invites the Court to misapply the doctrine of claim differentiation (without identifying it by name) by pointing to claim 5. Seagate's reluctance to fully embrace this argument is understandable, since (1) claim differentiation only applies if the scope of the claims would otherwise be identical, which does not apply to claim 5, and (2) claim differentiation cannot overcome an explicit definition provided in the specification. *Seachange Intern., Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) ("[T]he doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history . . . .") and *RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1263-64 (Fed. Cir. 2003) ("Although claim differentiation is not a 'hard and fast rule of construction,' it is applicable where 'there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, and that limitation is the only meaningful difference between the two claims.'") (citations omitted).

[4]     Furthermore, Cornice notes that during prosecution Seagate argued that the second embodiment having the so-called "black hole" magnetic effect was "crucial" to the applicant's invention. See D.I. 170, Cornice's Opening Brief at pp. 11-12.

5.

Brief, this is contradicted by both the specification and prosecution history, which repeatedly emphasized the importance of minimizing magnetic fringing (*i.e.*, confinement/containment of the magnetic field).[5]

Finally, with respect to whether "a member" is a single structure or can be comprised of multiple structures, Seagate merely relies upon another patent in another case where "a member" was ostensibly not limited to a single component design. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002), cited in D.I. 148 at p. 19. As observed by Cornice in its Opening Brief, in the context of the '159 patent, the internal consistency of the claim can only be maintained if "a member" is construed as a single element, because the claim itself recites that there must be an air gap "in" that structure (and not "between" different structures).

## III.    "THE CAPTURE MEMBER IS IN A NON-PERMEATED STATE . . . AND THE CAPTURE MEMBER SWITCHES TO A PERMEATED STATE"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "the capture member is in a non-permeated state … and the capture member switches to a permeated state"<br><br>['159 Patent, cls. 1, 5.] | The phrase "the capture member is in a non-permeated state … and the capture member switches to a permeated state" means "[a] rapid change (like a switch) of the capture member from a non-permeated to a permeated state." | "'Switches' should be construed consistent with its ordinary meaning to mean 'changes,' such as the 'capture member is in a non-permeated state … and the capture member "changes" to a permeated state.'" |

Here too, Seagate misstates Cornice's position and argument, stating that "Cornice's sole basis … is reliance upon the definitions of an electric switch." D.I. 148 at p. 20. While it is true that the

---

[5]    Cornice also preemptively addressed Seagate's flawed claim differentiation argument. See D.I. 170 at pp. 13-14. *See also Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005) ("Different terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper.").

common meaning of "switches" supports Cornice's proposed construction, that is by far not the only

evidence supporting Cornice's construction.[6]

     As discussed in Cornice's Opening Brief, the specification discusses "switching" to a

permeated state, and says that the claimed magnetic circuit is "a magnetic switch," which does not affect

the actuator arm until it enters the air gap. D.I. 148, Exh. 2 at col. 8, lines 11-25. Seagate's proposed

construction, which would allow for a gradual transition from a non-permeated to a permeated state as the

capture member approaches the air gap, would thus be inconsistent with the patent's own specification,

since the actuator *would* be affected before entering the air gap. Therefore Seagate's proposed

construction should be rejected.

### IV. AN ACTUATOR FOR SELECTIVELY POSITIONING THE TRANSDUCER OVER A PATH BETWEEN A FIRST POSITION AND A SECOND POSITION"

| Claim Language | Cornice's Proposed Construction | Seagate's Proposed Construction |
|---|---|---|
| "an actuator for selectively positioning the transducer over a path between a first position and a second position with respect to the data storage medium"<br><br>['159 Patent, cl. 1.] | The phrase "an actuator for selectively positioning the transducer over a path between a first position and a second position with respect to the data storage medium" means "[a]n actuator for controllably positioning the transducer at any specific location between the first position and the second position. | The phrase "an actuator for selectively positioning the transducer over a path between a first position and a second position" means "[a]n actuator that performs the function of moving a transducer over a path between a first position and a second position." |

     Here, Cornice has already anticipated and addressed Seagate's arguments in Cornice's

Opening Brief. In short, "positioning" requires both location and the ability to move (i.e., the only way to

"position" something is to know where you want to put it, and have the means of getting it there).

Because the Cornice design differs from the claimed design, it lacks this positioning ability over a

---

[6]    Interestingly, in an attempt to argue that "switches" does not include a temporal component (*i.e.*, that it need not happen rapidly), Seagate quotes from Webster's New World Dictionary (1984): "a shift or transference." In doing so, Seagate truncates Webster's definition, omitting the words that immediately follow in that definition, "*especially if sudden or unexpected.*"

7.

substantial portion of the path of the actuator. Thus Seagate attempts to remove the locational requirement, replacing the specific term "positioning" with the more generic and broader term "moving" (*i.e.*, including only one of the two requirements for positioning). Seagate's position is facially flawed and should be rejected for the reasons discussed in Cornice's Opening Brief (D.I. 170).

## CONCLUSION

For the foregoing reasons, and those stated in Cornice's Opening Brief, the Court should adopt the constructions proposed by Cornice for the '159 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Julia Heaney (#3052)
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Defendant and Counterclaim Plaintiff*
  *Cornice, Inc.*

OF COUNSEL:
Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000

December 16, 2005
498072

C

**THIS EXHIBIT HAS BEEN REDACTED**

D

**THIS EXHIBIT HAS BEEN REDACTED**

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on December 22, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

**BY HAND:**

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE  19801

**BY FEDERAL EXPRESS:**
Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC  20005

/s/ Julia Heaney
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL
jheaney@mnat.com
*Attorneys for Defendant and*
*Counterclaim Plaintiff Cornice, Inc.*