236

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEAGATE TECHNOLOGY LLC, | C.A. No. 04-418 (SLR) |
| Plaintiff, | |
| v. | |
| CORNICE, INC. | REDACTED |
| Defendant. | |

**PLAINTIFF SEAGATE TECHNOLOGY LLC'S RESPONSE BRIEF REGARDING
CONSTRUCTION OF DISPUTED TERMS IN U.S. PATENT NO. 5,452,159**

Date: December 16, 2005

FISH & RICHARDSON P.C.
Timothy Devlin (#4241)
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114
Tel: (302) 652-5070

Roger S. Borovoy
David M. Barkan
500 Arguello Street, Suite 500
Redwood City, CA 94063-1526
Tel: (650) 839-5070

Ruffin B. Cordell
Brian R. Nester
Timothy W. Riffe
Christian A. Chu
1425 K Street NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 783-5070

Edmond R. Bannon
Lewis E. Hudnell, III
Citigroup Center
153 East 53rd Street, 52nd Floor
New York, NY 10022-4611
Tel: (212) 765-5070

Attorneys for Plaintiff
SEAGATE TECHNOLOGY LLC

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................1

II.   SUMMARY OF THE ARGUMENT ..................................................................1

III.  COUNTER-STATEMENT OF FACTS .............................................................1

IV.  ARGUMENT ......................................................................................................2

      A.    The Related Terms "Park" And "Parking" Mean "Fix The
           Position Of The Actuator Which Supports The Head(s)" .........................2

      B.    "A Magnetic Field Containing Member" Means "A Member
           That Contains A Magnetic Field" ..............................................................5

      C.    "The Capture Member Is In A Non-Permeated State . . . And
           The Capture Member Switches To A Permeated State" Should
           Be Construed Consistent With Its Ordinary Meaning .............................7

      D.    "An Actuator For Selectively Positioning The Transducer Over
           A Path Between A First Position And A Second Position"
           Should Be Construed Consistent With Its Ordinary Meaning...................9

V.   CONCLUSION....................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Beachcombers v. Wildewood Creative Prods., Inc.
    31 F.3d 1154 (Fed. Cir. 1994)...................................................................................... 7

CCS Fitness, Inc. v. Brunswick Corp.
    288 F.3d 1359 (Fed. Cir. 2002)..................................................................................... 6

Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.
    257 F.3d 1364 (Fed. Cir. 2001)..................................................................................... 6

Enercon GmbH v. International Trade Com'n,
    151 F.3d 1376 (Fed. Cir.1998)...................................................................................... 3

Free Motion Fitness, Inc. v. Cybex Intern., Inc.
    423 F.3d 1343 (Fed. Cir. 2005)..................................................................................... 6

Johnson Worldwide Assocs., Inc. v. Zebco Corp.
    175 F.3d 985 (Fed. Cir. 1999)....................................................................................... 3

Jones v. Hardy
    727 F.2d 1524 (Fed. Cir. 1984)..................................................................................... 7

Netword, LLC v. Centraal Corp.
    242 F.3d 1347 (Fed. Cir. 2001)..................................................................................... 8

Phillips v. AWH Corp.
    415 F.3d 1303 (Fed. Cir. 2005)..................................................................................... 8

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Pursuant to the Court's Scheduling Order [D.I. 36-1], Plaintiff Seagate Technology LLC ("Seagate") hereby submits this Response Brief regarding construction of disputed terms of U.S. Patent No. 5,452,159 ("the '159 patent," Ex. 1).[1]

## II.    SUMMARY OF THE ARGUMENT

To serve its litigation positions, Cornice uses a number of tactics to propose constructions for various terms beyond what the intrinsic evidence allows.  First, Cornice attempts to manufacture a relevant difference between two types of disc drive technologies: contact start stop and dynamic head load.  Despite the technology construct, nowhere mentioned in the patent, Cornice conveniently fails to disclose the evidence that its and its expert's pre-litigation understanding of these technologies make this distinction meaningless.

Cornice also improperly reads limitations into the claims from the specification.  For example, by focusing only on one use of the related terms "park" and "parking" in the specification to require that the head be parked over the disc surface (i.e., a "landing zone" on the disc), Cornice improperly ignores precedent and the broader teachings of the specification and renders claim 1 inconsistent with other claims that specifically recite that the actuator is parked over a "landing zone" of the disc.

In other instances, Cornice simply rewrites the claims without offering credible supporting intrinsic or extrinsic evidence.  This is apparent, for example, in its proposed construction that the "magnetic field containing member" must "prevent" fringing of the magnetic field, or that the "capture member" must "rapidly" switch between a non-permeated and permeated state.

## III.    COUNTER-STATEMENT OF FACTS

Seagate disagrees with Cornice's alleged "Statement of Facts," and for the sake of brevity, addresses the inaccuracies of Cornice's statements in the following sections.

---

[1] Unless otherwise indicated, citations to Exhibits in this Brief refer to the Exhibits attached to the co-filed Declaration of Timothy Devlin in Support of Plaintiff Seagate Technology

## IV.    ARGUMENT

### A.    The Related Terms "Park" And "Parking" Mean "Fix The Position Of The Actuator Which Supports The Head(s)"

Seagate construes "park" and "parking" to mean "fix the position of the actuator which supports the head(s)." Cornice adds the limitation that the actuator must be parked over the disc arguing that "park" means: "[m]aintain[ing] the position of the head(s) over a selected portion of the disk." [D.I. 170 at 6.] Cornice's proposed narrowing limitation cannot stand when viewed in light of the totality of the intrinsic evidence, not just select portions as Cornice does.

The patent makes clear that "park" is not limited to fixing the position of the actuator/head(s) over the disc as Cornice contends. Claim 1 recites:

> magnetic parking means provided adjacent to the actuator for capturing and magnetically retaining said capture member to park the transducer.

[Ex. 1 at 9:26-28.] Claim 1 simply requires to "park the transducer," not to park it "over the disc." Moreover, the patentee provided an explicit definition for the term "park" in the specification:

> As used in this patent, the terms "park" and "parking" refer to the maintaining the position of the head(s) over a selected portion (usually a "landing zone" at the inside or outside diameter) of the disk (or disks). The heads are supported by an actuator, and parking the heads also means parking the actuator by *fixing the position of the actuator for [sic] which supports the heads*.

[Ex. 1 at 1:55-63.][2]

Cornice ignores the second, broader use of "park" (highlighted above) and seeks to limit it to the narrower use. [D.I. 170 at 6.] Cornice even suggests to the Court that its construction is the only "explicit definition" or use of this term in the '159 patent. [Id. at 7.] Cornice's position contradicts the specification and also contradicts the U.S. Court of Appeals for the Federal Circuit's controlling precedent.

---

LLC's Response Brief Regarding Construction of Disputed Terms In U.S. PATENT NO. 5,452,159.
[2] Unless otherwise indicated, emphasis in this Brief has been added.

2

The Federal Circuit holds that when a patent, such as the '159 patent, uses a term in a variety of ways, and where a broader use of the term subsumes a narrower use of the term, the broader use controls. See, e.g., Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 991 (Fed. Cir. 1999); see also Enercon GmbH v. International Trade Com'n, 151 F.3d 1376, 1385 (Fed. Cir.1998) (refusing to limit a term used "interchangeably" in the written description to only one of the uses of the term). Here the patentee described two uses of the terms "park" and "parking" and Cornice has provided no support to show that the broader use should not control in this case.

Further, when the patentee sought to require parking over the disc he knew how to claim such a limitation and indeed did so in other claims. No one disputes that when the head is parked on the disc, the head can be on a "landing zone." [E.g., D.I. 170 at 6-8; Ex. 2 at ¶¶ 17 and 18.] Claim 5 is specifically directed to the use of parking requiring that the transducer is parked over a "landing zone." Claim 1, however, simply requires to "park the transducer" without reference to a specific location.

Cornice's proposed construction for "park" becomes even more untenable when viewed in light of Cornice's use of this term prior to this litigation. In fact, it is Seagate's construction, which reads on the accused products' use of a loading ramp, that Cornice used to define "park" in patent applications covering the accused products. For example, in International Patent Application (PCT/US02/28987) [Ex. 3], Cornice illustrated and described how its actuator arm is in the parked position when the head is unloaded from the disc and the heads are parked, for example, on a loading ramp:

> Referring to Figures 3 and 6, attention is now directed to a highly advantageous actuator arm position sensor. These figures illustrate actuator arm 344 in the parked position. Consistent with terminology of the art, this position may be referred to as having the "heads unloaded." Conversely, the term having the "heads loaded" may refer to the position when the actuator arm or head/transducer arrangement is positioned for reading magnetic media 340.

[Ex. 3 at ¶ 108.]

3



Cornice attempts to narrow the definition of "park" by manufacturing a distinction between "contact start stop" and "dynamic head loading" disc drive technologies. [D.I. 170 at 3-9.] The '159 patent, however, does not distinguish between the two technologies and Cornice's own patent application is directed to dynamic head loading, which as Cornice described places the actuator in a "parked position" on the load ramp. [Ex. 3 at ¶ 108.] Moreover, Cornice and its expert's use of the term makes clear the distinction is without meaning.

Cornice's own expert, Dr. Morehouse, also defined an actuator fixed on a ramp as "parked." In at least U.S. Patent Nos. 5,379,171 [Ex. 4]; 5,579,189; 5,592,349; 5,760,986; and 5,835,303, Dr. Morehouse explained and illustrated how the read/write head(s) are "parked" when on the load ramp similar to Cornice's accused products. Figure 3A and its accompanying description from U.S. Patent No. 5,379,171 exemplify Dr. Morehouse's understanding and acceptance of the ordinary meaning of "park" prior to his employment by Cornice in the present litigation:

4



FIG. 3A

> In Fig. 3A, load beam 14-1 and its associated read/write transducer is illustrated in a **parked position off the disk** and in its innermost position of travel. In the hard disk drive 1 structure **dynamic head loading is utilized** and therefore when the disk drive is powered down and, i.e., not rotating, load beams 14 and 14-1 and 14-2 (not shown) one (sic) moved to the position illustrated where lift tab 17 is in a **parked position** on cam assembly 18 to prevent the read/write transducer heads from interfering with or damaging the disk surface.

[Ex. 4 at Fig. 3A; col. 52, lines 40-52 (emphasis added).]

Thus, "park" means "fix the position of the actuator which supports the head(s)" and Cornice's motion should be denied.

### B.    "A Magnetic Field Containing Member" Means "A Member That Contains A Magnetic Field"

Seagate construes "a magnetic field containing member" as a member that contains a magnetic field.[3] Cornice seeks to narrow this term by requiring that it (1) must be only a single piece and (2) must eliminate all fringing of the magnetic flux.

_____
[3] Cornice wrongly asserts that Seagate's ordinary meaning construction is not supported by its expert, Dr. Bogy. This is simply inaccurate. As Cornice recognized [D.I. 170 at 13 n. 3], Dr. Bogy opined that this term should receive its ordinary meaning as understood by one of ordinary skill in the art.

5

The claim language does not require that the "a magnetic field containing member" must be a "single structure," i.e., only a single component, as Cornice asserts. The article "a" precedes "magnetic field containing member," not the phrase "single, unitary." The Federal Circuit has routinely construed "a" as one or more. See, e.g., Free Motion Fitness, Inc. v. Cybex Intern., Inc., 423 F.3d 1343, 1350 (Fed. Cir. 2005). Further, the Federal Circuit has routinely found that the ordinary meaning of "member" is not limited to a single piece or component, but instead can be a multi-component design. CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1367 (Fed. Cir. 2002) ("member" is not limited to a structure comprising a single component only).

Cornice's additional attorney argument that because the claims require an "air gap in the magnetic field containing member," the member cannot include multiple components, makes little sense. If a magnetic field containing member includes two or more components, and there is space between the components devoid of any structure, one of ordinary skill in the art would understand that there is an air gap in the member. Any other conclusion would defy logic.

Cornice further asserts that the magnetic field containing member must "prevent magnetic fringing," and "contain the magnetic field." [D.I. 170 at 10.] Cornice is wrong. First, nothing in the claim language itself suggests that the member must "prevent magnetic fringing." Claim 1 merely requires that the magnetic parking means includes "a magnetic field containing member," not "a magnetic field containing member that eliminates all fringing (flux leakage)."

Cornice's construction also improperly reads out the preferred embodiment. Dow Chem. Co. v. Sumitomo Chem. Co., Ltd., 257 F.3d 1364, 1378 (Fed. Cir. 2001). The specification of the '159 patent describes embodiments of the invention that allow for fringing of the magnetic flux. [See, e.g., Ex. 1 at 7:32-41; Figs. 1A, 1B.] Ignoring these embodiments, Cornice points to general statements in the Abstract and the Summary of the

Invention to bolster its construction. [D.I. 170 at 10-11.] However, none of these generalized statements nullify the embodiments where a portion of the magnetic flux is outside the magnetic field containing member.

Moreover, dependent claim 2, which expressly limits claim 1 based on fringing, does not even require *elimination* or *prevention* of fringing. It simply requires that the "magnetic flux are substantially contained in the magnetic field containing member." [Ex. 1, claim 2 (emphasis added).] If Cornice's "prevention" argument were adopted, it would render claim 2 entirely redundant – a presumptively erroneous and unreasonable claim construction. Beachcombers v. Wildewood Creative Prods., Inc., 31 F.3d 1154, 1162 (Fed. Cir. 1994); see also Jones v. Hardy, 727 F.2d 1524, 1528 (Fed. Cir. 1984).

### C.    "The Capture Member Is In A Non-Permeated State . . . And The Capture Member Switches To A Permeated State" Should Be Construed Consistent With Its Ordinary Meaning

The dispute over this claim limitation involves the meaning of the term "switches." Seagate asserts that "switches" should be construed consistent with its ordinary meaning as "changes," such as the "capture member is in a non-permeated state . . . and the capture member 'changes' to a permeated state." [See, e.g., Ex. 5 at 218:24-219:11 ("changing from one state to the other state").][4] Contrary to Cornice's assertions, Seagate is not attempting to read the term "switches" out of the claim, but is proposing a term – changes – which is understood by one of ordinary skill in the art to be synonymous with and consistent with the claim term "switches." Cornice provides no evidence to the contradict the common meaning.

Instead, Cornice proposes narrowing the ordinary meaning of "switches" by requiring a "rapid change (like a switch) of the capture member from a non-permeated to a permeated

---

[4] Cornice wrongly asserts that Seagate's ordinary meaning construction is not supported by its expert, Dr. Bogy. This is simply inaccurate. As Cornice recognized [D.I. 170 at 16 n. 6], Dr. Bogy opined that this term should receive its ordinary meaning as understood by one of ordinary skill in the art.

7

state." Cornice's proposed construction contradicts the claim language and improperly reads the preferred embodiment into the claims.

The claim language nowhere requires a "rapid" switch. Cornice's sole bases for asserting a rapid switch is reliance upon the description of the preferred embodiment's magnetic circuit "black hole" effect, and definitions of an electric "switch." [D.I. 170 at 15-16.]

First, dictionary definitions for electric components have no relevance here as the '159 patent addresses magnetic circuits, not electric circuits. See, e.g., Netword, LLC v. Centraal Corp., 242 F.3d 1347, 1352 (Fed. Cir. 2001) ("The claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose."). Not only is Cornice's reliance on such tenuous definitions improper, but its attempt to read such limitations into the claim are nowhere supported by the specification or prosecution history. If the patentee sought to limit the claim to a rapid switch, he would have claimed "rapidly switches," not just "switches."

Cornice's additional reliance on the '159 patent's preferred "black hole" magnetic effect is also improper. Importing limitations of the preferred embodiment into the claims is incorrect. Phillips v. AWH Corp., 415 F.3d.1303, 1323 (Fed. Cir. 2005) (en banc) Second, the "black hole" effect Cornice relies upon to limit "switches" to a rapid switch says nothing about how quickly the capture member "switches" from a non-permeated state to a permeated state. Instead, the patentee described that the result of the "black hole" effect was that the actuator arm is unaffected by the magnetic latch until the capture member enters the air gap. The patentee said nothing about how fast the capture member "switches" states, and Cornice provides no evidence that the patentee intended to do so.

8

**D.** **"An Actuator For Selectively Positioning The Transducer Over A Path Between A First Position And A Second Position" Should Be Construed Consistent With Its Ordinary Meaning**

Seagate construes the phrase "an actuator for selectively positioning the transducer over a path between a first position and a second position" to require an actuator that performs the function of selectively moving a transducer over a path between a first position and a second position.[5] Cornice, again seeks to improperly limit claim 1 to the so-called contact start stop technology to avoid infringement, by arguing that this limitation requires that that there be <u>servo data</u> on the disc along the path of the first and second positions. [D.I. 170 at 17.]

Contrary to the plain language, Cornice asserts the phrase should be construed to mean that the actuator can "controllably position the transducer at any specific location between the first position and the second position." [D.I. 170 at 17.] Cornice's construction requires, so Cornice's story goes, that there be servo data at every instance along the path between the first and second positions and because there is no servo data off the disc, <u>i.e.,</u> on a ramp, there is no ability to selectively position on the ramp. [<u>Id.</u>]

There is nothing in the claims, specification, or prosecution history that requires servo data per Cornice's construction, or that such information be used to selectively position at every instance along a path as opposed to just "between a first position and a second position." Indeed, servo code is no where mentioned in the '159 patent or its prosecution history, let alone in the claims. The claim language merely requires that an actuator be able to move the transducer between a first position and a second position, and by doing so, will move the transducer "over a path" between the two positions.

---

[5] Cornice wrongly asserts that Seagate's ordinary meaning construction is not supported by its expert, Dr. Bogy. This is simply inaccurate. As Cornice recognized [D.I. 170 at 18 n. 7], Dr. Bogy opined that this term should receive its ordinary meaning as understood by one of ordinary skill in the art.

9

## V.     CONCLUSION

For the foregoing reasons, Seagate respectfully requests that the Court adopt its

proposed constructions in their entirety and reject Cornice's proposals.

Dated:  December 16, 2005          FISH & RICHARDSON P.C.

By:  /s/ Timothy Devlin
      Timothy Devlin (#4241)
      919 N. Market Street, Suite 1100
      Wilmington, DE  19899-1114
      Tel: (302) 652-5070

Attorney for Plaintiff
SEAGATE TECHNOLOGY LLC

10