IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEAGATE TECHNOLOGY LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CORNICE, INC.<br><br>　　　　Defendant. | C.A. No. 04-418 (SLR)<br><br>**REDACTED** |

**PLAINTIFF SEAGATE TECHNOLOGY LLC'S RESPONSE BRIEF REGARDING CONSTRUCTION OF DISPUTED TERMS IN U.S. PATENT NO. 5,596,461**

Date: December 16, 2005

FISH & RICHARDSON P.C.
Timothy Devlin (#4241)
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114
Tel: (302) 652-5070

Roger S. Borovoy
David M. Barkan
500 Arguello Street, Suite 500
Redwood City, CA 94063-1526
Tel: (650) 839-5070

Ruffin B. Cordell
Brian R. Nester
Timothy W. Riffe
Christian A. Chu
1425 K Street NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 783-5070

Edmond R. Bannon
Lewis E. Hudnell, III
Citigroup Center
153 East 53rd Street, 52nd Floor
New York, NY 10022-4611
Tel: (212) 765-5070

Attorneys for Plaintiff
SEAGATE TECHNOLOGY LLC

## TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF THE PROCEEDINGS ..........................................1

II.  SUMMARY OF THE ARGUMENT .................................................................1

III. FACTS .................................................................................................................1

IV.  ARGUMENT.......................................................................................................1

    A.   "Cover Element" And "Base Member" .....................................................1

    B.   "Head Stack Assembly"..............................................................................3

    C.   "Continuous, Single PCB Support Surface"..............................................4

V.   CONCLUSION...................................................................................................7

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

Moba, B.V. v. Diamond Automation, Inc.
    325 F.3d 1306 (Fed. Cir. 2003)......................................................................................... 5

Novartis Pharm. Corp. v. Abbott Labs,
    375 F.3d 1328 (Fed. Cir. 2004)......................................................................................... 4

## I. NATURE AND STAGE OF THE PROCEEDINGS

Pursuant to the Court's Scheduling Order [D.I. 36-1], Plaintiff Seagate Technology LLC ("Seagate") hereby submits this Response Brief regarding construction of disputed terms of U.S. Patent No. 5,596,461 ("the '461 patent," Ex. 1).[1]

## II. SUMMARY OF THE ARGUMENT

Cornice attempts to construe the '461 patent inconsistently with its claim terms, specification, and prosecution history. In an attempt to decrease the number of issues before this Court and after having completed expert discovery, Seagate adopted the claim construction for the disputed terms "cover element" and "base member" as construed by the Administrative Law Judge (ALJ) in the parties' ITC investigation. Cornice, not satisfied with the ALJ's constructions and Seagate's adoption, continues to impose that the "cover element" must always be the "top" portion and the "base member" must always be the "bottom" portion of the housing. These top and bottom limitations were rejected outright by the ALJ and should also be rejected here. Cornice's remaining proposed constructions for (1) "head stack assembly" (HSA) and (2) "continuous, single PCB support surface," are likewise devoid of any support in the intrinsic record.

## III. FACTS

For the sake of brevity, Seagate incorporates herein by reference the Technology Overview of the '461 Patent set forth in its opening brief on claim construction to the disputed terms of the '461 patent. [D.I. 150 at 3-7.]

## IV. ARGUMENT

### A. "Cover Element" And "Base Member"

In an effort to reduce the number of issues before this Court, and after having completed expert discovery, Seagate adopted the ITC's construction of cover and base. [Ex. 2.] Seeking to further narrow the ITC's construction (which Cornice chose not to appeal),

---

[1] Unless otherwise noted, Exhibits in this Brief refer to the Declaration of Timothy Devlin in Support of Plaintiff Seagate Technology LLC'S Response Brief Regarding Construction Of Disputed Terms In U.S. Patent No. 5,596,461, filed concurrently.

1

Cornice espouses that the "cover element" must be the "top" and the "base member" must be the "bottom" of the drive. [D.I. 180 at 8.] Cornice's legal construct is in direct contrast to the intrinsic evidence, and was rejected by the ITC. The ITC correctly held,

> the 'cover element' need not in every instance be uppermost, or on the top side, of the claimed housing . . . .

[Ex. 2 at 14.][2]

Cornice makes a number of meritless arguments in support of its strained construction. First, Cornice asserts that cover means the top portion of the housing because the cover is "'received over the spindle motor and head stack assembly.'" [D.I. 180 at 10.] The claims nowhere recite the limitation that the cover be "received over the spindle motor and head stack assembly." Moreover, being "received over," as Cornice puts it, is irrelevant as both the cover and base, under Cornice's construction, are designed to go over the HSA and spindle. In fact, both the cover element and base member go over the HSA and spindle as their function is to protect these components. [Ex. 1 at 1:66-2:5.]

Second, Cornice argues that because the cover element includes a "top surface" it must be the top housing element. [D.I. 180 at 10.] Regardless of whether the cover constitutes the top or bottom, it will have a top surface. Indeed, the claim also recites that the base member has a "top," but Cornice asserts that it is the bottom. [Ex. 1, claim 1.] Top surface simply distinguishes one surface of the cover from the other opposing surface, such as the side or the bottom surfaces, and orients the cover in relation to other components.

Disc drives have no top or bottom, just different sides, because in different applications drives are oriented differently. The claims do use the terms "top" to describe surfaces so as to indicate how one claimed component is oriented with respect to other

---

[2] Cornice recognizes that its additional limitations were rejected by the ALJ. In its opening brief, Cornice states that the "ALJ agreed with the *pertinent* aspects of Cornice's construction." [D.I. 180 at 13 (emphasis added).] In other words, the ALJ properly rejected Cornice's "top" / "bottom" argument.

2

claimed components, however, there is no restriction that the cover element must be the top or the base member must be the bottom.

Accordingly, the Court should construe "cover element" as "the portion of the housing opposite the base member, which is received over the spindle motor and head stack assembly." The Court should construe "base member" as a "portion of the housing for mounting the components of the drive, e.g., the spindle motor and head stack assembly." This is how the ITC construed these terms. [Ex. 2 at 14-18.]

**B.  "Head Stack Assembly"**

Cornice continues to limit the term "head stack assembly" to the preferred embodiment. Although the '461 patent's preferred embodiment includes multiple arms, the patent defines HSA as the "stack" of components that includes an actuator, its arm, a head mounted to the arm, and its electric coil. [Ex. 1 at 4:20-22, 1:44-49.] In other words, the '461 patent does refer to the arms in the HSA in the plural, but only to describe the preferred embodiment, and the stack is comprised of components such as the arm, spacer and coil element. [Ex. 1 at 4:20-22.]

The plain and ordinary meaning of HSA does not require multiple arms. For instance, prior to this litigation, Cornice described its single-armed, single-head disc drive as including a head stack assembly. For example,

REDACTED

[Ex. 3, COR-ITC044837.] While these prior statements are extrinsic evidence, such evidence supports and is in compliance with the claim language, and therefore may be used by the

3

Court to help understand the disputed limitation. <u>Novartis Pharm. Corp. v. Abbott Labs</u>, 375 F.3d 1328, 1335 (Fed. Cir. 2004).



Accordingly, the Court should define HSA as an assembly, including an actuator, its arm, recording head, and an electric coil, whether including one or more arms.

### C. "Continuous, Single PCB Support Surface"

Each of the asserted claims of the '461 patent requires that the top surface of the cover element provides a "continuous, single PCB support surface." This limitation should be construed as requiring a surface that provides support for one and only one, non-segmented printed circuit board. Cornice requires "[a] single, uninterrupted surface for mounting a PCB, and not discrete mounting locations for a PCB."

Cornice's sole support for its construction are statements made by the inventor in the prosecution history. Cornice's reliance on the prosecution history is unfounded, and its construction is improper because it runs afoul of claim language, reads out the preferred embodiment, and contradicts the teachings of the specification.

The plain and ordinary meaning of "continuous, single PCB support surface" is that the surface provides support for one and only one, non-segmented printed circuit board. The adjectives "continuous, single" precede PCB, not "surface." Therefore, what is continuous and single is the PCB. Claim 1 reads "continuous, single PCB support surface," not "a continuous, single surface for mounting a PCB."

Furthermore, the '461 patent specifies that continuous and single modify PCB, not surface, and that "continuous, single" means one (not several), non-segmented printed circuit board. The specification teaches the benefit of a single, non-segmented PCB:

4

> In one recent proposal, the overall dimensions of the disk drive are reduced by providing several PCB segments and mounting the PCB <u>segments</u> within cutout portions formed in the disk drive housing. The <u>PCB segment approach</u> takes advantage of miniaturization of integrated circuits to implement PCB structures in less than the full length and width of the dimensions of the disk drive. <u>However, this arrangement incurs added power requirements for transmission of signals between PCB boundaries and does not fully realize economic use of available space.</u>

[Ex. 1 at 2:62-3:4 (emphasis added).] The term "continuous, single PCB" distinguishes the claimed invention over the prior art's multiple, segmented PCB approach. The specification provides additional instances making clear that single modifies PCB,

> A <u>single</u> PCB is arranged and configured to <u>generally coincide with the surface area</u> defined by the second raised portion.

[Id. at 3:25-27 (emphasis added).]

Cornice's proposed construction reads the preferred embodiment out of all claims. Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1316 (Fed. Cir. 2003) (holding erroneous a claim construction that did not read on the disclosed preferred embodiment). Below, is the relevant portion of Figure 1 of the '461 patent.



In this figure PCB 52 (highlighted in yellow) is "supported on the surface" of the second raised portion 50. [Id. at 5:37-44.] Openings 62 (highlighted in blue), which are through pin connector 54, align with corresponding openings 60 (highlighted in red) and

5

thread posts 30 (highlighted in green) of cover element 20. [Id. at 5:65-6:9.] "The openings 62 permit the pin connector 54, and <u>the attached PCB to be secured to the disk drive housing 20 via screws received through the openings 62 and the corresponding openings 60</u> and threaded into the corresponding posts 30." [Id. at 5:2-7 (emphasis added).]

In other words, there are two discrete mounting locations for attaching the single PCB to the housing. These discrete mounting locations are the raised portions 60, (highlighted in red) in Figure 1. [Id.] Notably, the PCB of Figure 1 is not attached directly to the surface of the housing, but is instead attached to pin connector 54, which attaches to discrete mounting points 60 (highlighted in red). [Id.] Cornice's construction precluding "discrete locations" cannot stand.

Cornice's additional assertion that this limitation does not allow "multiple uninterrupted surfaces at different levels" also contradicts all intrinsic evidence. Indeed, the claim language requires "remaining portions" thus indicating that the remaining portions, can have multiple, not a single and uninterrupted portion. The remaining portions of the preferred embodiment also have multiple levels, such as 60, 24, and 56, and these are the portion<u>s</u> that "generally coincide with" the PCB. Moreover, claim 2 specifically requires that the claimed remaining portion have multiple levels. It requires:

> The disk drive housing of claim 1 wherein the remaining portion of the top surface include a second raised portion to provide a height dimension...

In the face of this evidence, Cornice argues incorrectly that the prosecution history precludes attaching the PCB to "discrete locations on the housing." [D.I. 180 at 17-18.] As distinguished by the applicant, the Stefansky '335 patent mounts the PCB to mounting brackets on the side <u>opposite</u> the side the patent examiner identified as the <u>top surface</u>—thus failing to satisfy claim 1's requirement that the PCB be mounted to the top surface. In discussing the four "mounting brackets" of Stefansky '335 patent, the patentee observed that the mounting brackets on this prior art are not part of the claimed "top surface of the cover

element," but instead are discrete from this top surface. Simply put, the PCB in the asserted Stefansky '335 patent does not coincide the remaining portions of the top surface.

Still further, the prosecution history also indicates that the PCB can be mounted to mounting brackets. It states that "claim 1 requires more than merely a cover which includes mounting brackets" which indicates that mounting brackets are sufficient if the other limitations of claim 1 are met. [Ex. 5 at 9-10.] Accordingly, the Court should construe "continuous, single PCB support surface" to require a surface for a single, non-segmented printed circuit board.

## V.    CONCLUSION

For the foregoing reasons, Seagate respectfully requests that the Court adopt its proposed constructions in their entirety and reject Cornice's proposals.

Dated: December 16, 2005                    FISH & RICHARDSON P.C.


By:   /s/ Timothy Devlin
      Timothy Devlin (#4241)
      919 N. Market Street, Suite 1100
      Wilmington, DE 19899-1114
      Tel: (302) 652-5070

Attorney for Plaintiff
SEAGATE TECHNOLOGY LLC