# Ex. 3

TO THE DECLARATION OF TIMOTHY DEVLIN
IN SUPPORT OF PLAINTIFF SEAGATE TECHNOLOGY LLC'S
RESPONSE BRIEF REGARDING CONSTRUCTION OF
DISPUTED TERMS IN U.S. PATENT NO. 6,744,606

# The OXFORD Encyclopedic English Dictionary

EDITED BY
JOYCE M. HAWKINS
AND
ROBERT ALLEN

CLARENDON PRESS · OXFORD



*Oxford University Press, Walton Street, Oxford OX2 6DP*

*Oxford New York Toronto*
*Delhi Bombay Calcutta Madras Karachi*
*Petaling Jaya Singapore Hong Kong Tokyo*
*Nairobi Dar es Salaam Cape Town*
*Melbourne Auckland*

*and associated companies in*
*Berlin Ibadan*

*Oxford is a trade mark of Oxford University Press*

*Published in the United States by*
*Oxford University Press, New York*

*© Oxford University Press 1991*

*First published 1991*
*Reprinted 1991*

*All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior permission of Oxford University Press*

*This book is sold subject to the condition that it shall not, by way of trade or otherwise, be lent, re-sold, hired out or otherwise circulated without the publisher's prior consent in any form of binding or cover other than that in which it is published and without a similar condition including this condition being imposed on the subsequent purchaser*

*British Library Cataloguing in Publication Data*
*Data available*

*Library of Congress Cataloging in publication Data*
*Data available*
*ISBN 0-19-861248-6 Plain Edition*
*ISBN 0-19-861266-4 Thumb Index Edition*

*Typeset by Latimer Trend Ltd, Plymouth, England*
*Printed in the United States of America*

Preface
Guide to the Use of

THE OXFORD E

Chronology of Wor

APPENDICES

1. Countries of th
2. The Commonw
3. States of the U America
4. The Soviet Uni Republics
5. The British Isle
6. The British Co
7. The US Constit
8. The United Na
9. The European
10. Kings and Que United Kingdo
11. Prime Ministe
12. Weather
13. The Beaufort S
14. Shapes and Fo
15. Weights, Meas
16. Chemical Elem

MAPS

ou are drunk I will drive ... il, since better designed, ... ntil now or the time being ... ad been healthy ever since; ... any years since). [ME, reduced ... ithen) f. OE siththon]

incerest) 1 free from pr... s in appearance. 2 genuine ... ncerity /-ˈserɪtɪ/ n. [L sincerus]

manner. □ yours sincerely ... ter.

ont of the skul. from the ... tal /-ˈsɪpɪt(ə)l/ adj. [L f. sinci...]

Pakistan, formerly part of ... Britain in 1843; pop. (1981)

the Sailor) hero of one of ... relates his fantastic adven...

dy of the Holy Shroud of ... vas reputedly wrapped. [O... + -LOGY]

ric function that is equal to ... n angle (in a right-angled ... tion of the line drawn from ... to the radius through the ... urve representing periodic ... s given by a sine function ... old of a toga, used in med.l

sition that requires little or ... onour. □□ sinecurism n ... e]

dv. (of business adjourned ... [L = without day]

an indispensable condition ... ı not]

rous tissue uniting muscle ... ; bodily strength: wiriness. ... ength or framework of a ... poet. serve as the sinews ... inews of war money. □□ ... w f. Gmc]

ius. 1 a symphony. 2 (in ... used as an introduction to ... nia: usu. in names) a small ... y]

short or simple symphony. ... ll symphony orchestra. [It.,

ommitting sin, esp. habitu... terized by sin. □□ sinfully ... -FUL)]

ŋ/: past part. sung /sʌŋ/) 1 ... voice, esp. words with a set ... ging (sing another song). 3 ... inarticulate melodious or ... nds. 4 intr. (of the ears) be ... 5 intr. sl. turn informer; ... ry. 7 tr. & (foll. by of) intr. ... ut) usher (esp. the new or ... bring to a specified state ... 1 an act or spell of singing. ... □ sing-along a tune etc. ... ment. singing hinny see ... sing out call out loudly; ... sing up sing more loudly. ... adv. [OE singan f. Gmc]

ʊt uː too ə agə aɪ my



**Singapore** /ˌsɪŋəˈpɔː(r)/ a country in SE Asia, a member State of the Commonwealth, consisting of the island of Singapore and about 54 smaller islands, lying just north of the equator off the southern tip of the Malay Peninsula to which it is linked by a causeway carrying a road and railway; pop. (est. 1988) 2,645,400; official languages, Malay, Chinese, Tamil, and English. Sir Stamford Raffles established a trading post under the East India Company in 1819, and it was incorporated with Penang and Malacca to form the Straits Settlements in 1826; these became a Crown Colony in the following year. Singapore rapidly grew, by virtue of its large protected harbour, to become the most important commercial centre and naval base in SE Asia. It fell to the Japanese in 1942, and after liberation became first a British Crown Colony in 1946 and then a self-governing State in 1959. Federated with Malaysia in 1963, it regained full independence two years later and remains a world trade and financial centre; it also has an important oil-refining industry. □□ **Singaporean** /-ˈpɔːrɪən/ adj. & n.

**singe** /sɪndʒ/ v. & n. —v. (**singeing**) 1 tr. & intr. burn superficially or lightly. 2 tr. burn the bristles or down off (the carcass of a pig or fowl) to prepare it for cooking. 3 tr. burn off the tips of (the hair) in hairdressing. —n. a superficial burn. □ **singe one's wings** suffer some harm esp. in a risky attempt. [OE *sencgan* f. WG]

**Singer**[1] /ˈsɪŋə(r)/, Isaac Bashevis (1904– ), Polish-born American author of short stories and novels, written in Yiddish, whose work portrays with colourful intensity and much realistic detail the lives of Polish Jews of many periods of Poland's history. He was awarded a Nobel Prize for literature in 1978.

**Singer**[2] /ˈsɪŋə(r)/, Isaac Merrit (1811–75), American inventor, who in 1857 designed and built the first commercially successful sewing-machine (see entry).

**Singh** /sɪŋ/ n. 1 a title adopted by the warrior castes of N. India. 2 a surname adopted by male Sikhs. [Hind. *siṅgh* f. Skr. *sinhá* lion]

**Singhalese** var. of SINHALESE.

**single** /ˈsɪŋɡ(ə)l/ adj., n., & v. —adj. 1 one only, not double or multiple. 2 united or undivided. 3 a designed or suitable for one person (*single room*). b used or done by one person etc. or one set or pair. 4 one by itself; not one of several (*a single tree*). 5 regarded separately (*every single thing*). 6 not married. 7 Brit. (of a ticket) valid for an outward journey only, not for the return. 8 (with neg. or interrog.) even one; not to speak of more (*did not see a single person*). 9 (of a flower) having only one circle of petals. 10 lonely, unaided. 11 archaic free from duplicity, sincere, consistent, guileless, ingenuous. —n. 1 a single thing, or item in a series. 2 Brit. a single ticket. 3 a short pop record with one piece of music etc. on each side. 4 Cricket a hit for one run. 5 (usu. in pl.) a game with one player on each side. 6 an unmarried person (*young singles*). 7 sl. US a one-dollar note. —v.tr. (foll. by *out*) choose as an example or as distinguishable or to serve some purpose. □ **single acrostic** see ACROSTIC. **single-acting** (of an engine etc.) having pressure applied only to one side of the piston. **single-breasted** (of a coat etc.) having only one set of buttons and buttonholes, not overlapping. **single combat** a duel. **single cream** thin cream with a relatively low fat-content. **single cut** (of a file) with grooves cut in one direction only, not crossing. **single-decker** esp. Brit. a bus having only one deck. **single entry** a system of bookkeeping in which each transaction is entered in one account only. **Single European Act** the decree approved by the European Council in Dec. 1985, which came into force on 1 July 1987, with provisions whose objective is to make concrete progress towards European unity. **single file** a line of people or things arranged one behind another. **single-handed** adv. 1 without help from another. 2 with one hand. —adj. 1 done etc. single-handed. 2 for one hand. **single-handedly** in a single-handed way. **single-lens reflex** denoting a reflex camera in which a single lens serves the film and the viewfinder. **single-line** with movement of traffic in only one direction at a time. **single parent** a person bringing up a child or children without a partner. **singles bar** a bar for single people seeking company. **single-seater** a vehicle with one seat. **single stick** 1 a basket-hilted stick of about a sword's length. 2 one-handed fencing with this. **single-tree** US = SWINGLETREE. □□ **singleness** n. **singly** adv. [ME f. OF f. L *singulus*, rel. to *simplus* SIMPLE]

**single-minded** /ˌsɪŋɡ(ə)lˈmaɪndɪd/ adj. having or intent on only one purpose. □□ **single-mindedly** adv. **single-mindedness** n.

**singlet** /ˈsɪŋɡlɪt/ n. 1 Brit. a garment worn under or instead of a shirt; a vest. 2 a single unresolvable line in a spectrum. [SINGLE + -ET[1], after *doublet*, the garment being unlined]

**singleton** /ˈsɪŋɡ(ə)lt(ə)n/ n. 1 one card only of a suit, esp. as dealt to a player. 2 a a single person or thing. b an only child. 3 a single child or animal born, not a twin etc. [SINGLE, after *simpleton*]

**Sing Sing** /sɪŋ ˈsɪŋ/ a New York State Prison, built in 1825–8 at Ossining village on the Hudson River and formerly notorious for its severe discipline. It is now called Ossining Correctional Facility.

**singsong** /ˈsɪŋsɒŋ/ adj., n., & v. —adj. uttered with a monotonous rhythm or cadence. —n. 1 a singsong manner. 2 Brit. an informal gathering for singing. —v.intr. & tr. (past and past part. **singsonged**) speak or recite in a singsong manner.

**singular** /ˈsɪŋɡjʊlə(r)/ adj. & n. —adj. 1 unique; much beyond the average; extraordinary. 2 eccentric or strange. 3 Gram. (of a word or form) denoting or referring to a single person or thing. 4 Math. possessing unique properties. 5 single, individual. —n. Gram. 1 a singular word or form. 2 the singular number. □□ **singularly** adv. [ME f. OF *singuler* f. L *singularis* (as SINGLE)]

**singularity** /ˌsɪŋɡjʊˈlærɪtɪ/ n. (pl. **-ies**) 1 the state or condition of being singular. 2 an odd trait or peculiarity. 3 Physics & Math. a point at which a function takes an infinite value, esp. in space-time when matter is infinitely dense. [ME f. OF *singularité* f. LL *singularitas* (as SINGULAR)]

**singularize** /ˈsɪŋɡjʊləˌraɪz/ v.tr. (also **-ise**) 1 distinguish, individualize. 2 make singular. □□ **singularization** /-ˈzeɪʃ(ə)n/ n.

**sinh** /ʃaɪn, saɪˈneɪtʃ/ abbr. Math. hyperbolic sine. [*sine* + *hyperbolic*]

**Sinhalese** /ˌsɪnhəˈliːz, ˌsɪnəˈliːz/ n. & adj. (also **Singhalese** /ˌsɪŋɡ-/) —n. (pl. same) 1 a member of an Aryan people deriving from northern India and forming the majority of the population in Sri Lanka. 2 their language, spoken by 9 million people in Sri Lanka. It is descended from Sanskrit and was brought by settlers from northern India in the 5th c. BC; its alphabet resembles that of the Dravidian languages of southern India. —adj. of or relating to this people or language. [Skr. *siṁhalam* Sri Lanka (Ceylon) + -ESE]

**sinister** /ˈsɪnɪstə(r)/ adj. 1 suggestive of evil; looking malignant or villainous. 2 wicked or criminal (*a sinister motive*). 3 of evil omen. 4 Heraldry of or on the left-hand side of a shield etc. (i.e. to the observer's right). 5 archaic left-hand. □□ **sinisterly** adv. **sinisterness** n. [ME f. OF *sinistre* or L *sinister* left]

**sinistral** /ˈsɪnɪstr(ə)l/ adj. & n. —adj. 1 left-handed. 2 of or on the left. 3 (of a flat-fish) with the left side uppermost. 4 (of a spiral shell) with whorls rising to the left and not (as usually) to the right. □□ **sinistrality** /-ˈtrælɪtɪ/ n. **sinistrally** adv.

**sinistrorse** /ˈsɪnɪˌstrɔːs/ adj. rising towards the left, esp. of the spiral stem of a plant. [L *sinistrorsus* f. *sinister* left + *vorsus* past part. of *vertere* turn]

**sink** /sɪŋk/ v. & n. —v. (past **sank** /sæŋk/ or **sunk** /sʌŋk/; past part. **sunk** or **sunken**) 1 intr. fall or come slowly downwards. 2 intr. disappear below the horizon (*the sun is sinking*). 3 intr. a go or penetrate below the surface esp. of a liquid. b (of a ship) go to the bottom of the sea etc. 4 intr. settle down comfortably (*sank into a chair*). 5 intr. a gradually lose strength or value or quality etc.; decline (*my heart sank*). b (of the voice) descend in pitch or volume. c (of a sick person) approach death. 6 tr. send (a ship) to the bottom of the sea etc. 7 tr. cause or allow to sink or penetrate (*sank its teeth into my leg*). 8 tr. cause the failure of (a plan etc.) or the discomfiture of (a person). 9 tr. dig (a well) or bore (a shaft). 10 tr. engrave (a die) or inlay (a design). 11 tr. a invest (money) (*sunk a large sum into the business*). b lose (money) by investment. 12 tr. a cause (a ball) to enter a pocket in billiards, a hole at golf, etc. b achieve this by (a stroke). 13 tr. overlook or





# Ex. 4

TO THE DECLARATION OF TIMOTHY DEVLIN
IN SUPPORT OF PLAINTIFF SEAGATE TECHNOLOGY LLC'S
RESPONSE BRIEF REGARDING CONSTRUCTION OF
DISPUTED TERMS IN U.S. PATENT NO. 6,744,606

| *Notice of Allowability* | Application No. 10/218,240 | Applicant(s) LAU ET AL. | |
|---|---|---|---|
| | Examiner A. J. HEINZ | Art Unit 2653 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☐ This communication is responsive to _____.
2. ☒ The allowed claim(s) is/are _1-20_.
3. ☒ The drawings filed on _13 August 2002_ are accepted by the Examiner.
4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   a) ☐ All b) ☐ Some* c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____.
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.
6. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
   1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.
   (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

7. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☒ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftperson's Patent Drawing Review (PTO-948)
3. ☒ Information Disclosure Statements (PTO-1449 or PTO/SB/08), Paper No./Mail Date 2
4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
5. ☐ Notice of Informal Patent Application (PTO-152)
6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____.
7. ☒ Examiner's Amendment/Comment
8. ☒ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____.

A. J. HEINZ
Primary Examiner
Art Unit: 2653

EXAMINER'S STATEMENT OF REASONS FOR ALLOWANCE

And

EXAMINER'S AMENDMENT/COMMENT

1. The following is an examiner's statement of reasons for allowance: the prior art does not show or reasonably teach/suggest to one of ordinary skill in the art to which said subject matter pertains to, the combination of structure in an actuator assembly including a single (only one) arm which is either in a configuration of a) having a plane of the arm portion displaced from a plane defined by the coil support, or b)the plane of the arm portion is positioned a different distance from a base of the disc drive than that plane defined by the coil support.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

2. *An examiner's amendment to the record appears below.* Should the changes and/or additions be unacceptable to

applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

3. The Title of the Invention has been changed to --DUAL PLANE ACTUATOR WITH THE PLANE DEFINING THE ARM PORTION OF THE ACTUATOR BEING DISPLACED FROM A PLANE DEFINING THE COIL PORTION --.

4. Any inquiry concerning this communication or earlier communications from the examiner should be directed to A. J. HEINZ whose telephone number is (703) 308-1544. The examiner can normally be reached on M-F 9:30-6:00.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, WILLIAM KORZUCH can be reached on (703) 305-6137. The fax phone number for the organization where this application or proceeding is assigned is (703) 872-9306.

Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the receptionist whose telephone number is (703) 305-3900.

A. J. HEINZ
Primary Examiner
Art Unit 2653

A. J. Heinz

# Ex. 5

TO THE DECLARATION OF TIMOTHY DEVLIN
IN SUPPORT OF PLAINTIFF SEAGATE TECHNOLOGY LLC'S
RESPONSE BRIEF REGARDING CONSTRUCTION OF
DISPUTED TERMS IN U.S. PATENT NO. 6,744,606

# CONFIDENTIAL DOCUMENT

***These pages have been omitted because they contain confidential information subject to the protective order***

***There is no public version of the document that is available.***

# Ex. 6

TO THE DECLARATION OF TIMOTHY DEVLIN
IN SUPPORT OF PLAINTIFF SEAGATE TECHNOLOGY LLC'S
RESPONSE BRIEF REGARDING CONSTRUCTION OF
DISPUTED TERMS IN U.S. PATENT NO. 6,744,606

UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C.

Before Sidney Harris
Administrative Law Judge

| In the Matter of<br><br>CERTAIN DISC DRIVES, COMPONENTS THEREOF, AND PRODUCTS CONTAINING SAME | Investigation No. 337-TA-516 |
|---|---|

**COMMISSION INVESTIGATIVE STAFF'S RESPONSE TO RESPONDENT'S MOTION FOR SUMMARY DETERMINATION OF *INVALIDITY WITH RESPECT TO THE '606 PATENT***

On November 12, 2004, Respondent Cornice, Inc. ("Cornice") moved for summary determination that one of the patents at issue in this investigation, U.S. Patent No., 6,744,606 ("the '606 patent"), is invalid pursuant to 35 U.S.C. §§ 102(b) and 102(e). Motion Docket No. 516-001. For the reasons set forth herein, the Commission Investigative Staff ("Staff") does not support the motion at this time.

## I. LEGAL STANDARDS

### A. Law of Summary Determination

Under Commission Rule 210.18(b), a party is entitled to summary determination in its favor on all or any part of the issues to be determined "if pleadings and any depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary determination as a matter of law." 19 C.F.R. § 210.18(b); *also see Serrano v. Telular Corp.*, 111 F.3d 1578, 1581 (Fed. Cir. 1997); *Lockwood v. American Airlines, Inc.*, 107 F.3d

1565, 1569 (Fed. Cir. 1997). In a motion for summary determination, the moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law. *Vivid Tech. v. American Science and Engineering*, 200 F.3d 795, 806-07 (Fed. Cir. 1999). When disputed questions of material fact underlie the summary judgment the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *EMI Group North America, Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998). The trier of fact should "assure itself that there is no reasonable version of the facts, on the summary judgment record, whereby the nonmovant could prevail, recognizing that the purpose of summary judgment is not to deprive a litigant of a fair hearing, but to avoid an unnecessary trial." *Id.* "In other words, '[s]ummary judgment is authorized when it is quite clear what the truth is,' [citations omitted], and the law requires judgment in favor of the movant based upon facts not in genuine dispute." *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182, 1185 (Fed. Cir. 1993).

**B. Law of Invalidity Pursuant to 35 U.S.C. § 102 (Anticipation)**

A patent claim is invalid for anticipation under 35 U.S.C. § 102 if every element thereof is described in a single piece of prior art such that a person of ordinary skill in the art could practice the invention without undue experimentation. *Advanced Display Systems, Inc. v. Kent State University*, 212 F.3d 1272, 1282 (Fed. Cir. 2000); *Bard v. M3 Systems*, 157 F.3d 1340, 1349 (Fed. Cir. 2000). Because an anticipation analysis requires a determination of whether every claim element is present in the prior art reference, the first step in the analysis is to properly construe the claim. *See Gechter v. Davidson*, 116 F.3d 1454, 1457 ("[T]he claim must first have been correctly construed to define the scope and meaning of each contested

limitiation.").[1] "[T]he exclusion of a claimed element from a prior art reference is enough to negate anticipation by that reference." *Atlas Powder Co. v. E.I. du Pont de Nemours*, 750 F.2d 1569, 1574 (Fed. Cir. 1984). Thus, the dispositive question regarding anticipation is whether one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim element was disclosed in that single reference. *In re Baxter Travenol Labs.*, 952 F.2d 388, 390, (Fed.Cir. 1991). In this regard, an anticipation analysis utilizes essentially the same approach as an infringement analysis. As noted by the Federal Circuit in *Key Pharmaceuticals, Inc. v. Hercon Laboratories Corp.*, 161 F.3d 709:

> . . . not unlike a determination of infringement, a determination of anticipation, as well as obviousness, involves two steps. First is construing the claim, a question of law for the court, followed by, in the case of anticipation or obviousness, a comparison of the construed claim to the prior art. This comparison process involves fact-finding, and is for the fact-finder in the first instance.

161 F.3d at 714.
*See also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (the first step of an anticipation analysis is conceptually no different from that of an infringement analysis). In *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304 (Fed.Cir.2002)

---

[1] Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996) ("*Markman*"). A proper construction of a claim involves a review of the claim, the specification of the patent, and the patent's prosecution history. *Id.* "Courts must construe disputed claim terms, as a matter of law, based on the claims, the specification, and the prosecution history." *Valmet Paper Machinery, Inc. v. Beloit Corp.*, 105 F.3d 1409, 1413 (Fed. Cir.), *amended on rehearing*, 112 F.3d 1169 (Fed. Cir.), *cert. denied*, 522 U.S. 1028 (1997). Extrinsic evidence, including expert testimony, may be used in the court's discretion to assist in the determination of how one skilled in the relevant art would understand certain terms in the claim. *O.I. Corp. v. Tekmar Company, Inc.*, 115 F.3d 1576, 1581 (Fed. Cir. 1997); *Markman*, 52 F.3d at 979. However, such evidence can neither enlarge nor diminish the scope of the claim as determined in light of the claim itself, the specification, and the prosecution history. *Markman*, 52 F.3d at 981.

("*Schumer*"), the Federal Circuit described a typical method by which the construed claim is then compared to the allegedly anticipatory reference:

> Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witness' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.

308 F.3d at 1315.

## II. DISCUSSION

In its motion, Cornice asserts that each of several references anticipates each of the asserted claims of the '606 patent. *See* Motion memorandum at 6-21. However, Cornice does not provide a proper anticipation analysis in support of its motion. Specifically, Cornice does not conduct what the Federal Circuit has described as the necessary first step of an anticipation analysis, construing the asserted claims of the '606 patent. Instead, Cornice relies upon the claim chart in Seagate's complaint to support its assertion that the claims at issue are invalid for anticipation.

The Staff submits that the claim chart attached to Seagate's complaint provides insufficient support for Cornice's assertion of invalidity on the basis of anticipation. While Commission Rule 210.12(a)(9)(vii) states that one of the items that is to be included with a patent-based complaint is a claim chart,[2] nothing in that or any other rule suggests that claim

---

[2] Rule 210.12(a)(9)(vii) provides in relevant part as follows:

> A showing that each person named as violating section 337 of the Tariff Act of 1930 is importing or selling the article covered by, or produced under the involved process covered by, the above specific claims of each involved U.S. letters patent. The complainant shall make such showing by appropriate allegations, and when practicable, by a chart that applies an exemplary claim of

(continued...)

charts accompanying a complaint are to contain a detailed claim construction. Rather, as evident from the plain language of the rule, the claim chart accompanying a complaint is only intended to require a complainant to demonstrate where the elements of an exemplary claim are present in the accused device. As is the case with Seagate's complaint, a claim chart typically serves to demonstrate a complainant's allegations in a general sense and does not serve to construe the claim by analyzing the claim's language in light of the specification, prosecution history, and any relevant extrinsic evidence. *See Markman* at 979. Further, the Staff is unaware of any authority (and Cornice does not cite to any) for the proposition that the claim chart called for in Rule 210.12(a)(9)(vii) is to be considered a complainant's final position on how the claims at issue are to be construed.

The Staff submits that in the absence of proper claim constructions, Cornice has failed to establish that every element of the claims of the '606 patent are present in the references described in its motion. Because the motion does not contain a claim construction, it does not provide a legally sufficient description of the claim elements for purposes of an anticipation analysis. Accordingly, it is not possible to determine from Cornice's motion whether the allegedly anticipatory references in fact contain all of the elements of the claims at issue.

[2] (...continued)
each involved U.S. letters patent to . . . a representative involved article of each person named as violating section 337 of the Tariff Act or to the process under which such article was produced; . . .

## III. CONCLUSION

The Staff submits that Cornice has failed to establish that it is entitled to summary determination that the claims of the '606 patent are invalid for anticipation. The Staff submits that because there is no proper claim construction in Cornice's motion, it cannot be determined whether the elements of those claims are present in the references described in the motion. Accordingly, the Staff is of the view that there remains a genuine issue of material fact regarding the alleged anticipation of the '606 patent's claims, *viz*.. whether each and every claim element is present in the allegedly anticipatory references. The Staff submits that under these circumstances, Cornice's motion should be denied.

Respectfully submitted,

/s/ Thomas S. Fusco

Lynn I. Levine, Director
Jeffrey R. Whieldon, Supervisory Attorney
Thomas S. Fusco, Investigative Attorney

OFFICE OF UNFAIR IMPORT INVESTIGATIONS
U.S. International Trade Commission
500 E Street, S.W., Suite 401
Washington, D.C. 20436
(202) 205-2571
(202) 205-2158 (Facsimile)

December 1, 2004

**Certain Disc Drives, Components Thereof, and Products Containing Same** **Inv. No. 337-TA-516**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 1, 2004 the Commission Investigative Staff caused the foregoing **COMMISSION INVESTIGATIVE STAFF'S RESPONSE TO RESPONDENT'S MOTION FOR SUMMARY DETERMINATION OF INVALIDITY WITH RESPECT TO THE '606 PATENT** to be served upon Administrative Law Judge Sidney Harris and on the following as indicated:

**For Complainant Seagate Technology LLC**

Ruffin B. Cordell, Esq.
Brian R. Nester, Esq.
Timothy W. Riffe, Esq.
**Fish and Richardson P.C.**
1425 K Street, N.W. Suite 1100
Washington, D.C. 20005
(202) 783-5070
fax: (202) 783-2331
**BY FACSIMILE**

**For Respondent Cornice, Inc.**

David A. Hickerson, Esq.
Joanne M. Guerrera, Esq.
Christine P. Hsu, Esq.
Alejandra C. Montenegro, Esq.
**Weil, Gotshal & Manges LLP**
1501 K Street, N.W. Suite 100
Washington, D.C. 20005
(202) 682-7000
fax: (202) 857-0940
**BY FACSIMILE**

/s/ Thomas S. Fusco

Thomas S. Fusco, Investigative Attorney
OFFICE OF UNFAIR IMPORT INVESTIGATIONS
U.S. International Trade Commission
500 E Street, S.W., Suite 401
Washington, D.C. 20436
(202) 205-2571
(202) 205-2158 (Facsimile)

# Ex. 7

TO THE DECLARATION OF TIMOTHY DEVLIN
IN SUPPORT OF PLAINTIFF SEAGATE TECHNOLOGY LLC'S
RESPONSE BRIEF REGARDING CONSTRUCTION OF
DISPUTED TERMS IN U.S. PATENT NO. 6,744,606

**CONFIDENTIAL DOCUMENT**

***These pages have been omitted because they contain confidential information subject to the protective order***

***There is no public version of the document that is available.***