IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,

             Plaintiff,

      v.

CORNICE, INC.

             Defendant.

C.A. No. 04-418 (SLR)

REDACTED

**PLAINTIFF SEAGATE TECHNOLOGY LLC'S RESPONSE BRIEF REGARDING CONSTRUCTION OF DISPUTED TERMS IN U.S. PATENT NO. 6,324,054**

Date: December 16, 2005

FISH & RICHARDSON P.C.
Timothy Devlin (#4241)
919 N. Market Street, Suite 1100
Wilmington, DE  19899-1114
Tel: (302) 652-5070

Roger S. Borovoy
David M. Barkan
500 Arguello Street, Suite 500
Redwood City, CA 94063-1526
Tel: (650) 839-5070

Ruffin B. Cordell
Brian R. Nester
Timothy W. Riffe
Christian A. Chu
1425 K Street NW, Suite 1100
Washington, D.C.  20005
Tel: (202) 783-5070

Edmond R. Bannon
Lewis E. Hudnell, III
Citigroup Center
153 East 53rd Street, 52nd Floor
New York, NY 10022-4611
Tel: (212) 765-5070

Attorneys for Plaintiff
SEAGATE TECHNOLOGY LLC

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ..............................................1

II.   SUMMARY OF THE ARGUMENT ...................................................................1

III.  COUNTER-STATEMENT OF FACTS ...............................................................1

IV.   ARGUMENT .......................................................................................................1

     A.    "Critical Region" ......................................................................................1

          1.    Cornice's construction contravenes the intrinsic record ................2

          2.    Cornice's construction is also unsupported by the
              extrinsic record...........................................................................3

     B.    "Non-Critical Region" ...............................................................................3

     C.    "Enclosure Sized To Receive A Disc Drive Therein".................................4

     D.    "Shock Absorbing Material".......................................................................5

     E.    "Flexible Shock Absorbing Material" ........................................................7

     F.    "Corner Of The Disc Drive".......................................................................8

V.    CONCLUSION....................................................................................................10

i

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

Free Motion Fitness, Inc. v. Cybex Int'l, Inc.
    423 F.3d 1343 (Fed. Cir. 2005)........................................................................ 6

KCJ Corp. v. Kinetic Concepts, Inc.
    223 F.3d 1351 (Fed. Cir. 2000)........................................................................ 6

Liebel-Flarsheim Co. v. Medrad, Inc.
    358 F.3d 898 (Fed. Cir. 2004)........................................................................ 7

Phillips v. AWH Corp.
    415 F.3d 1303 (Fed. Cir. 2005)........................................................................ 5

Wright Med. Tech., Inc. v. Osteonics Corp.
    122 F.3d 1440 (Fed. Cir. 1997)........................................................................ 2

<u>**Other Authorities**</u>

The American Heritage Dictionary
    (2nd Coll. Ed. 1985)........................................................................ 5

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Pursuant to the Court's Scheduling Order [D.I. 36-1], Plaintiff Seagate Technology LLC ("Seagate") hereby submits this Response Brief regarding construction of disputed terms of U.S. Patent No. 6,324,054 ("the '054 patent," Ex. 1).[1]

## II.    SUMMARY OF THE ARGUMENT

Cornice continues to assert a number of unsupported constructions for five '054 patent claim terms. Cornice offers a construction of "critical region" that contradicts the evidence of record, and renders additional claims redundant. Cornice further attempts to improperly limit the "enclosure" limitation to the preferred embodiments and in contradiction to concessions made by its own expert. Cornice then improperly narrows the terms "shock absorbing material" and "flexible shock absorbing material" to specific examples described in the specification. Finally, Cornice goes outside the context of the claimed invention and applies a generalized definition of "corner" devoid of any meaning within the disc drive art.

## III.    COUNTER-STATEMENT OF FACTS

As Cornice has done in a number of its opening briefs on claim construction, it sets forth a host of "fact" arguments in its so-called "Statement of Facts." Since most of Cornice's attorney arguments are irrelevant to claim construction, Seagate disputes but does not address each here.[2] For instance, Cornice argues that the '054 patented invention is not "new," as if arguing invalidity. Cornice of course submitted no motion seeking an invalidity judgment here. Where necessary, Seagate will address Cornice's "fact" arguments in the claim construction sections below.

## IV.    ARGUMENT

### A.    "Critical Region"

The main dispute concerning this term is whether a region of the disc drive is "critical" because external vibrations or shock delivered to that region are more likely to result in drive failure

---

[1] Unless otherwise noted, Exhibits in this Brief refer to the Declaration of Timothy Devlin in Support of Plaintiff Seagate Technology LLC'S Response Brief Regarding Construction Of Disputed Terms In U.S. PATENT NO. 6,324,054, filed concurrently.

[2] The art Cornice references is fully addressed in Seagate's expert, Dr. Gitis' rebuttal expert report concerning validity of the '054 patent [Ex. 6 at 3-16.]

1

or damage, or because the region is more likely to receive a shock event.  Cornice ignores the intrinsic evidence and attempts to limit the interpretation of the "critical region" to a "region of the disk drive that is relatively sensitive to vibration and shock accelerations <u>because most shock loadings during handling and transport are focused there</u>." [D.I. 174 at 6.]  The proper construction is "region of the disc drive that is relatively sensitive to vibration and shock accelerations.  The region is critical based on whether external vibrations or shock delivered to that region <u>are more likely to result in drive failure or damage</u>, than in non-critical regions."

### 1.   Cornice's construction contravenes the intrinsic record

Neither the concept of a "greater probability of receiving an impact" or a limitation that such critical regions are only present "during handling or transport" appear anywhere in the claims of the '054 patent.  Indeed, neither Cornice nor its expert can identify any portion of the claims or specification that limit the claimed critical regions as only being present during handling or transport. [E.g., Ex. 2 at 113:17-122:15.]  The specification recites:

A critical region is a region of the drive that is relatively sensitive to vibration and shock accelerations." [Ex. 1 at 2:48-50.]

The critical regions 304 are more susceptible to being damaged by external vibrations or shocks. [Ex. 1 at 4:51-52.]

Cornice's proposed construction cannot stand for the additional reason that such a construction would render at least asserted dependent claim 2 redundant.  <u>Wright Med. Tech., Inc. v. Osteonics Corp.</u>, 122 F.3d 1440, 1444 (Fed. Cir. 1997) (rejecting claim construction that would make other terms in disputed claims mere "surplusage").  According to Cornice's expert, Dr. Morehouse,

**REDACTED**

] [Ex. 2 at 97:7-15.]  Dependent claim 2, however, specifically recites that the "critical region . . . comprises a corner of the disc drive." [Ex. 1, claim 2.] If Cornice's proposed construction were adopted (i.e., that the corners are always critical regions because they are more probable to hit than the other portions of the disc drive), then claim 2's requirement that the corner of the disc drive is the critical region becomes mere surplusage.  <u>Wright Med. Tech.</u>, 122 F.3d at 1444.  Thus, not only is Cornice's proposed construction legally incorrect, it

directly contradicts the written description, which clearly states that the "location of critical regions and non-critical regions may vary." [Ex. 1 at 9:1-4.]

### 2. Cornice's construction is also unsupported by the extrinsic record

Although secondary to the intrinsic evidence, Cornice's construction also contravenes the extrinsic record. For example, the testimony of Cornice's own engineers contradicts its position that "no particular region of a hard drive is more sensitive to a shock event." As Cornice engineer, David Niss



**REDACTED**

[Ex. 3 at 446:2-447:14.]

Cornice's additional assertion that named inventor, Wai Onn Chee's testimony supports Cornice's construction is false and based on an incomplete analysis of Mr. Chee's testimony. During his deposition, Mr. Chee unambiguously stated that the critical regions are "described in column 2 and 4 [of the '054 patent]." [Ex. 4 at 73.] As the table below illustrates, the portions of the written description Mr. Chee identified fully support Seagate's proposed construction.

| '054 patent, column 2 and 4 support | Seagate's proposed construction |
|---|---|
| "A critical region is a region of the drive that is relatively sensitive to vibration and shock accelerations." [Ex. 1 at 2:48-50.]<br><br>"The critical regions 304 are more susceptible to being damaged by external vibrations or shocks." [Ex. 1 at 4:51-52.] | "A region of the disc drive that is relatively sensitive to vibration and shock accelerations. The region is critical based on whether external vibrations or shock delivered to that region are more likely to result in drive failure or damage, than in non-critical regions." |

Based on the above, it is evident that Seagate's proposed construction is the only construction fully supported by both the intrinsic and extrinsic record.

### B. "Non-Critical Region"

For the reasons discussed above with respect to "critical region," the term "non-critical region" should be construed in accordance with its plain and ordinary meaning, and in light of the intrinsic evidence, to mean "a region of the disc drive that is relatively insensitive to vibration and shock." While Cornice's proposed construction of "non-critical region" is close to Seagate's, Cornice attempts to improperly inject the unclaimed concept of "handling" of the disc drive into the

3

claim term. Again, the claims say nothing about non-critical regions only being present "during handling mishaps," and Cornice has not identified any portion of the claims that require that non-critical regions are only present during the handling of the drive. [See, e.g., Ex. 2 at 113:17-122:15.]

    C.      "Enclosure Sized To Receive A Disc Drive Therein"

Seagate asserts that this claim limitation needs no construction because one of ordinary skill in the art reading the limitation in view of the intrinsic evidence would understand the limitation to simply mean an "enclosure that is sized to receive a disc drive therein." Cornice seeks to narrow the term to "something that encloses, meaning to shut in all around or to surround." [D.I. 174 at 11.]

Cornice bases its construction on the flawed premise that the claim language requires an enclosure "for encapsulating" the disc drive. The fact is that the claims simply require an enclosure sized to receive a disc drive therein. Just because the enclosure is sized to receive the disc drive does not require that all surfaces of the disc drive be "encapsulated" by the enclosure. It simply means that the enclosure is sized to conform to the outer dimensions of the drive. Indeed, Cornice's own expert, Dr. Morehouse testified, in distinct contradiction to Cornice's position here, that under his interpretation of the term, [⸻ **REDACTED** ⸻]Ex. 2 at 125:17-24.]

In addition, the '054 patent itself does not require the enclosure surround or "shut in all around." For example, when describing a preferred embodiment illustrated in Figure 4 (reproduced below), the patent explains that the shock absorbing material 300, which is used for "encapsulating" the disc drive 200 has several openings 302 used for inserting and removing the disc drive. [Ex. 1 at 4:45-49.] While the shock absorbing material provides an enclosure for the disc drive and it is sized to receive the disc drive, it is undeniable that the enclosure does not surround or contain each and every surface of the disc drive as Cornice requires.[3]

_____

[3] Although Cornice asserts in a footnote that its proposed construction does not require complete, 100% coverage on all sides, its statement is in complete contrast with its proposed construction which literally requires that the enclosure "shut all around."



FIG.4

[Ex. 1, Fig. 4; see also alternative embodiment illustrated in Figs. 14 and 15.]

Thus, Cornice once again seeks to import limitations into the claim based on the preferred embodiment set forth in the written description. Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc). But Cornice cannot establish that the patent's description of the best mode for practicing the invention in any way contradicts the plain and ordinary meaning of the terms chosen for the claims. Cornice's effort to import limitations from the specification must be rejected.

**D.     "Shock Absorbing Material"**

Seagate contends this term should be given its ordinary meaning to simply mean "a material used to absorb shock." Cornice, on the other hand, seeks to add limitations from the specification to assert that the material must be suited "for widening a shock pulse and reducing its maximum amplitude." [D.I. 174 at 9-10.]

Asserted claim 1 requires that the enclosure be made of a "shock absorbing material." The plain and ordinary meaning of this term as gleaned from the claims and written description is simply a "shock absorbing material" or a material used to absorb shock. The claim language is consistent with the commonly understood meaning of "shock absorber," which is understood to mean "a material used to absorb mechanical shocks." [See, e.g., The American Heritage Dictionary (2nd Coll. Ed. 1985) at 1132 (providing definition of related term "shock absorber".]

The specification of the '054 patent, consistent with the understanding of a shock absorbing material as being a material used to absorb mechanical shocks, notes that the material may be made

of natural or synthetic rubber (or its compounds) or plastic. [Ex. 1 at 4:65-66.] The specification

further recognizes that several plastics could be employed in the invention, and provides specific

examples, but explicitly does not limit the invention to one particular type of plastic. [Ex. 1 at 5:2-5

("Possible plastic candidates are: acrylonitrile-butadiene-styrene copolymer, polypropylene,

polyethylene, etc. [and] [o]ther plastic alternatives may also be used.").]

 Cornice attempts to limit the plain meaning in two regards. First, Cornice seeks to read the

description of the preferred embodiments into the claims, and more specifically, the specific testing

examples set forth in the specification, to assert that "shock absorbing material" be construed to

mean "a material that is suited for widening a shock pulse and reducing its maximum amplitude."

[D.I. 174 at 9.] Second, Cornice asserts that the material cannot consist of a combination of different

materials to arrive at a shock absorbing material, as Cornice does in its accused products. [Id. at 10-

11.]

 Taking first Cornice's assertion that because the claim recites "a shock absorbing material,"

the material cannot consist of a combination of materials, Cornice provides no support whatsoever

for such a construct. Indeed, it is settled that the use of the term "a" or "an" in patent parlance carries

the meaning of one or more. Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 1350

(Fed. Cir. 2005) (citing KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1356 (Fed. Cir. 2000)).

This convention is overcome only when "the claim is specific as to the number of elements" or

"when the patentee evinces a clear intent to . . . limit the article." Id.

 Cornice argues that the '054 patent consistently uses the phrase "a shock absorbing material"

in the singular, and does not disclose or suggest combining different materials to arrive at a shock

absorber apparatus. [D.I. 174 at 10-11.] Nevertheless, the references to alternative materials in the

specification are set forth to teach one of ordinary skill in the art examples of materials that can be

used as the shock absorbing material in the preferred embodiments of the claimed enclosure. Indeed,

by use of the term "a shock absorbing material" as opposed to "a [single] shock absorbing material,"

the '054 patent does indeed make clear that various materials can be combined, and is contrary to

Cornice's argument.

As for Cornice's further assertion that the shock absorbing material must be suited for "widening a shock pulse and reducing its maximum amplitude," such an overly technical legal construct contradicts the plain and ordinary meaning of the term. As it is inclined to do, Cornice once again attempts to read limitations from specific examples set forth in the specification into the claims. [Ex. 1 at 5:6-11; 5:39-61.] While the '054 patent does describe the shock pulse widening and amplitude reducing characteristics of the materials, the claims do not recite such strict requirements.

Cornice's construction is simply an attempt to remove its infringing plastic shock absorbing corners from the limits of the claims. Despite Cornice's attempts, the claims of the '054 patent simply do not require a particular type of plastic or shock absorbing material. Indeed, the claims, and specifically dependent claim 4 that recites use of "plastic" does not limit the type of plastic to be used, nor does it specifically require the plastic to have any certain mechanical or material properties. [Ex. 1, claims 1 and 4.] In addition, as set forth in detail in the written description, the shock absorbing material can comprise any number of materials, ranging from, for example, natural or synthetic rubber (or its compounds) or plastic. [Id. at 4:65-5:5.] While the inventors provided numerous examples of such rubber and plastic materials, they explicitly noted that "other plastic alternatives may also be used." [Id. at 5:4-5.]

Accordingly, it is improper for Cornice to attempt to narrow the plain and ordinary meaning of the claim terms, when it has failed to show that the specification or the prosecution history evidences a clear and unmistakable intent to redefine the plain meaning of the claims. Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906-908 (Fed. Cir. 2004).

E.     "Flexible Shock Absorbing Material"

Seagate contends this term should be given its ordinary meaning to simply mean "a material that is capable of being bent or flexed and that is used to absorb shock." Cornice, on the other hand, seeks to narrow the term to a material that is "able to bend without breaking." [D.I. 174 at 10-11.]

Asserted claims 15 and 19 require that the "shock absorbing material" of the enclosure be "flexible." As Seagate has consistently argued, such a commonly understood term requires no

7

construction. Indeed, the plain and ordinary meaning of flexible is "capable of being bent or flexed." [Ex. 5 at 513.] The specification of the '054 patent, consistent with the understanding of a flexible shock absorbing material as being a material that is capable of being bent or flexed and that is used to absorb shocks, notes that the material may be made of natural or synthetic rubber (or its compounds) or plastic. [Ex. 1 at 4:65-66.] Nowhere in the specification does the patentee define the *degree* of flexibility that must be exhibited by the shock absorbing material.

Despite this, Cornice attempts to narrow the term to a material that is "able to bend without breaking." [D.I. 174 at 10-11.] Cornice's sole support for its assertion is a dictionary definition removed from the context of the patented invention. Cornice is unable to identify anything in the claims themselves or the specification that requires the material have a degree of flexibility that it will never break under any circumstances. Moreover, the '054 patent explicitly disclosed that a number of various plastics could be employed as the flexible shock absorbing material, and whether or not those plastics are "able to bend without breaking" is simply not a requirement.

F.      "Corner Of The Disc Drive"

Seagate construes this term in accordance with its ordinary meaning to simply mean "one corner of the disc drive." No further construction is required. Despite the lack of ambiguity of this term and its understood meaning to one of ordinary skill in the art in the disc drive industry, Cornice attempts to limit the term to mean "the point or place where lines or surfaces join and form an angle." [D.I. 174 at 13.] Cornice's construction is removed from the disc drive context of the claims, and improperly construes this term in a two-dimensional realm when obviously disc drives are three-dimensional objects.

The specification of the '054 patent supports the plain meaning of "corner." For example, in referring to the embodiments shown in Figure 4 and Figures 9-13 (reproduced below with the "corners" identified with a red circle), the patentees described the corners of the disc drive in the following manner:

> [As illustrated in Figure 4,] [a] typical disc drive 200 has critical regions 304, such as corners, and non-critical regions 306, such as the top surface.

8



**FIG.4**

These corner portions 646, 64[4], 650, and 652 are thicker than the side walls and the top and bottom portions so as to absorb larger shock loads, since most shock loadings that occur during transport and handling of the system are focused on the corner portions of the body 606.  These are the typical critical regions in a disc drive such as drive 200.

[Ex. 1 at 6:41-47.], and

The shock absorber (such as 606) has first portions (such as 644, 646, 650, and 652) of a shock absorbing material having a first thickness adapted to cover each critical region (such as the corners) of the disc drive (such as 200).

[Id. at 8:16-20; see also 4:49-51; 6:28-32; 7:6-8; 8:16-20; 8:46-51.]



Thus, the specification explicitly supports the plain and ordinary meaning of the term, and clearly does not provide sufficient evidence to compel the Court to interpret "corner of the disc drive" in a manner contrary to the plain meaning of the claim language.

Despite the straight-forward ordinary meaning of "corner of the disc drive" compelled by the claim language and the intrinsic evidence, Cornice has advanced a contrived definition of "corner," alone, removed from the disc drive context of the claim language, in a transparent attempt to read various prior art references onto the claims.  [D.I. 174 at 13.]  At bottom, Cornice asks this Court to construe an edge of the disc drive as a corner.  According to Cornice, the Court need only construe

9

the term "corner," removed from the context of the disc drive limitations of the claim, to mean "[t]he point or place where lines or surfaces join and form an angle." [Id.]   The hidden meaning in Cornice's construction, however, is that Cornice construes this term in the two-dimensional realm and obviously disc drives are three-dimensional objects.  Cornice really contorts its dictionary-based definition of corner as follows "the point or place where [two] lines or surfaces join and form an angle."  Under Cornice's construction, not only would the commonly-understood four corners of the disc drive identified throughout the intrinsic evidence (e.g., represented by corner portions 304 in Figure 4 and 644, 644, 650, and 652 in Figures 9-13 of the '054 patent, supra) suffice as the claimed "corners of the disc drive," but so would the edges where the top surface and bottom surfaces meet the sides of the disc drive.  As discussed above, there is nothing in the '054 patent that supports Cornice's out-of-context construction.  [Ex. 1 at 6:41-47; 8:16-20; see also Ex. 1 at 4:49-51; 6:28-32; 7:6-8; 8:16-20; 8:46-51.]

## V.    CONCLUSION

For the foregoing reasons, Seagate respectfully requests that the Court adopt its proposed constructions in their entirety and reject Cornice's proposals.

Dated:  December 16, 2005                    FISH & RICHARDSON P.C.

By:   */s/ Timothy Devlin*
Timothy Devlin (#4241)
919 N. Market Street, Suite 1100
Wilmington, DE  19899-1114
Tel: (302) 652-5070

Attorney for Plaintiff
SEAGATE TECHNOLOGY LLC

10