IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEAGATE TECHNOLOGY LLC,<br><br>    Plaintiff,<br><br>v.<br><br>CORNICE, INC.<br><br>    Defendant. | C.A. No. 04-418 (SLR)<br><br> |

**PLAINTIFF SEAGATE TECHNOLOGY LLC'S BRIEF IN OPPOSITION TO CORNICE'S MOTION FOR SUMMARY JUDGMENT [NO. 3] OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,452,159**

Date: December 16, 2005

FISH & RICHARDSON P.C.
Timothy Devlin (#4241)
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114
Tel: (302) 652-5070

Roger S. Borovoy
David M. Barkan
500 Arguello Street, Suite 500
Redwood City, CA 94063-1526
Tel: (650) 839-5070

Ruffin B. Cordell
Brian R. Nester
Timothy W. Riffe
Christian A. Chu
1425 K Street NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 783-5070

Edmond R. Bannon
Lewis E. Hudnell, III
Citigroup Center
153 East 53rd Street, 52nd Floor
New York, NY 10022-4611
Tel: (212) 765-5070

Attorneys for Plaintiff
SEAGATE TECHNOLOGY LLC

**TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF THE PROCEEDINGS ..................................................1

II. SUMMARY OF THE ARGUMENT ........................................................................1

III. FACTS .......................................................................................................................1

    A. Overview of the '159 Patent ..........................................................................1

    B. The Accused 1.0, 1.5, and 2.0 GB Storage Element Products ......................3

IV. APPLICABLE LEGAL STANDARDS FOR SUMMARY JUDGMENT ..............5

    A. Summary Judgment .......................................................................................5

    B. Literal Infringement .......................................................................................5

    C. Doctrine of Equivalents .................................................................................6

V. ARGUMENT .............................................................................................................6

    A. Cornice is Not Entitled to Summary Judgment of Noninfringement Based on Its Improper Interpretation of the Related Terms "Park" and "Parking" ..........................................................6

        1. "Park" Means "Fix the Position of the Actuator Which Supports the Head(s)" ................................................................7

        2. Even Under Cornice's Proposed Construction of the Term "Park," A Genuine Issue of Material Fact Remains Regarding Infringement Under the Doctrine of Equivalents ....................................................................................11

VI. Seagate concedes Cornice's 3.0 GB Storage Element Does not infringe any asserted claim of the '159 patent .......................................................................14

VII. CONCLUSION .......................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

Anderson v. Liberty Lobby, Inc.,
 477 U.S. 317 (1986) ............................................................................................... 5

Cybor Corp. v. FAS Techs.,
 138 F.3d 1448 (Fed. Cir. 1998) (en banc) ............................................................. 6

Enercon GmbH v. International Trade Com'n,
 151 F.3d 1376 (Fed.Cir.1998) ........................................................................... 6, 8

General Mills, Inc., v. Hunt-Wesson, Inc.,
 103 F.3d 978 (Fed. Cir. 1997) ................................................................................ 5

Jeneric/Pentron, Inc. v. Dillon Co., Inc.,
 205 F.3d 1377 (Fed. Cir. 2000) .............................................................................. 6

Johnson Worldwide Assocs., Inc. v. Zebco Corp.,
 175 F.3d 985 (Fed. Cir. 1999) ................................................................................ 8

Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.
 285 F.3d 1353 (Fed. Cir. 2002) ........................................................................... 5, 6

Novartis Corp. v. Ben Venue Labs., Inc.,
 271 F.3d 1043 (Fed. Cir. 2001) .............................................................................. 5

Optical Disc Corp. v. Del Mar Avionics,
 208 F.3d 1324 (Fed. Cir. 2000) .............................................................................. 6

Read Corp. v. Portec, Inc.,
 970 F.2d 816 (Fed. Cir. 1992) .............................................................................. 11

Sage Prods., Inc. v. Devon Indus., Inc.,
 126 F.3d 1420 (Fed. Cir. 1997) .............................................................................. 6

TechSearch LLC v. Intel Corp.,
 286 F.3d 1360 (Fed. Cir. 2002) .............................................................................. 5

Toro Co. v. White Consol. Indus., Inc.
 266 F.3d 1367 (Fed. Cir. 2001) ........................................................................... 6, 7

Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.,
 212 F.3d 1377 (Fed. Cir. 2000) .............................................................................. 6

Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,
 520 U.S. 17 (1997) .................................................................................................. 6

## I. NATURE AND STAGE OF THE PROCEEDINGS

Defendant Cornice, Inc. ("Cornice") filed a Motion for Summary Judgment [No. 3] of Non-Infringement of U.S. Patent No. 5,452,159 ("the '159 patent") and supporting brief [D.I. 158; D.I. 159] pursuant to Fed. R. Civ. P. 56(c) on November 18, 2005. Seagate Technology LLC ("Seagate") files the present Brief in Opposition to Cornice's Motion for Summary Judgment of Non-Infringement, asserting generally that the undisputed facts (which must be weighed in Seagate's favor) actually show that Cornice infringes claims 1-4 of the '159 patent under 35 U.S.C. § 271 even under Cornice's proposed construction of the relevant claim term, or at least raise genuine issues of material fact not appropriately resolved on summary judgment.

## II. SUMMARY OF THE ARGUMENT

Cornice's motion for summary judgment with respect to Cornice's 1.0, 1.5, and 2.0 GB (gigabyte) Storage Elements rests solely on its misconstruction of "park" and "parking." Cornice essentially construes this term to require that the actuator be parked or fixed directly over the disk, i.e. the "landing zone." Nevertheless, Cornice's proposed construction contravenes the claims, specification, and file history of the '159 patent, and contradicts Cornice's and its expert's pre-litigation understanding of "park" and "parking." Instead, the Court should construe park or parking the actuator as simply requiring that the actuator be fixed, i.e., parked.

Moreover, even were the Court to adopt Cornice's espoused construction, factual issues preclude summary judgment. Cornice's 1.0, 1.5, and 2.0 GB Storage Elements would infringe the park or parking limitation under the doctrine of equivalents.

## III. FACTS

### A. Overview of the '159 Patent

The '159 patent is directed to a magnetic parking device used to "park" or fix the position of an actuator which supports the head(s) employed in a disc drive. [Ex. 1 at 1:55-

1

63.][1] Among the numerous parts in a disc drive is the "actuator," that, by analogy, is similar to an arm of a record turntable. In a turntable, the arm supports a needle at an outward position over a spinning record in order to position the needle to read music. Similarly, in a disc drive, the "actuator arm" portion of the actuator supports a "head/transducer" outwardly over a spinning magnetic disc in order to position the "head/transducer" to read or write data. The "actuator" its "arm" and "head/transducer" are generally illustrated in the following figure, which is Figure 4 from the '159 patent.



[Ex. 1, Fig. 4.]

---

[1] Unless otherwise indicated, citations to Exhibits in this Brief refer to the Exhibits attached to the co-filed Declaration of Timothy Devlin in Support of Seagate's Brief in Opposition to Cornice's Motion for Summary Judgment [No. 3] of Non-Infringement of U.S. Patent No. 5,452,159.

2

The magnetic parking device disclosed in the '159 patent (and illustrated in reproduced Figure 4 above) is used to fix or restrain the actuator in a parked position during severe shock (such as impact from dropping the disk drive or during shipping or installation) so the head does not move onto data tracks and destroy data because of "head slap." When the head slaps the disc, data stored on the disc may be lost and/or the drive may no longer function because of damage to the head and/or the disc. Disc drives in portable computers or consumer electronic devices are particularly subject to shock because of transportation, which increases the likelihood of damage due to head slap. [Ex. 1 at 2:1-15.]

### B. The Accused 1.0, 1.5, and 2.0 GB Storage Element Products

Cornice sells and offers to sell, or has sold or offered for sale, disc drive products known as the Cornice 1.0, 1.5, and 2.0 GB Storage Elements ("the accused products"). There is no dispute concerning the specific aspects of the structure or functionality of the accused products pertinent to Cornice's motion and this opposition.

As shown below, which is an excerpt from Seagate expert Dr. Bogy's expert report, each of the accused products include a disc ("data storage medium"), a transducer/head, and an actuator. [Ex. 2 (Ex. 6 at p. 2.).][2] The actuator moves the head/transducer from a parked position to a position where the head/transducer can read or write data from or to the magnetic disc.

---

[2] The relevant text and exhibits of the Expert Report of David B. Bogy, Ph.D. have been attached as Ex. 2. Portions of the Bogy Report not relevant to this opposition have been removed.



The accused products further include a load ramp located at the outer diameter of the disc and a magnetic latch.³ The magnetic latch is used to park the actuator so that the transducer is suspended from the load ramp. Maintaining the actuator in this position

---

³ Contrary to Cornice's claim, the accused products include a landing zone at the outer region of the disc because when the head is loaded onto the disc from the ramp, it is likely to contact the disc before an air bearing is fully developed between the head and disc. If data were written in the zone it could be destroyed by such contact.

4

minimizes the head slap problems discussed above during periods of inactivity or in response to shock events.

## IV.  APPLICABLE LEGAL STANDARDS FOR SUMMARY JUDGMENT

### A.  Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); TechSearch LLC v. Intel Corp., 286 F.3d 1360, 1369 (Fed. Cir. 2002). A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. General Mills, Inc., v. Hunt-Wesson, Inc., 103 F.3d 978, 980 (Fed. Cir. 1997). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. Id.

In making determinations regarding summary judgment, a court should view the record in a light most favorable to the non-movant. Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1357 (Fed. Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 322 (1986)). Summary judgment of noninfringement is proper "if, after viewing the alleged facts in the light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims." Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001).

### B.  Literal Infringement

Determining infringement is a two-step process: first, the claims are construed, with due deference to the various maxims of claim construction;[4] second, the properly-construed claims are compared to the accused device. Cybor Corp. v. FAS Techs., 138 F.3d 1448,

---

[4] Seagate has set forth its proposed construction for all of the asserted claim terms that are believed to be in dispute in its opening Markman brief filed on November 18, 2005.

5

1454 (Fed. Cir. 1998) (en banc). If every limitation of the claims is present in the accused device, then the accused device literally infringes. Enercon GmbH v. International Trade Com'n, 151 F.3d 1376, 1384 (Fed. Cir. 1998).

### C. Doctrine of Equivalents

The doctrine of equivalents prevents an accused infringer from avoiding infringement by changing insubstantial details of a claimed invention while retaining their essential functionality. Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1424 (Fed. Cir. 1997). Thus, even if the accused device does not meet every claim limitation literally, it nevertheless may infringe if the differences between the claims and the accused device are insubstantial, for example, if it performs substantially the same function in substantially the same way to achieve substantially the same result. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997); Optical Disc Corp. v. Del Mar Avionics, 208 F.3d 1324, 1335 (Fed. Cir. 2000).

Infringement under the doctrine of equivalents requires an intensely factual inquiry. Leggett & Platt, Inc., 285 F.3d at 1357; see also Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc., 212 F.3d 1377, 1381 (Fed. Cir. 2000) (standard "sets a high hurdle this court does not lightly attempt to surmount."). Generally, such a highly factual inquiry "rarely comes clear on a premature record." Jeneric/Pentron, Inc. v. Dillon Co., Inc., 205 F.3d 1377, 1384 (Fed. Cir. 2000). Summary judgment of no infringement under the doctrine of equivalents therefore is appropriate only where the record "leaves no room for a reasonable jury to find equivalence." Toro Co. v. White Consol. Indus., Inc., 266 F.3d 1367, 1370 (Fed. Cir. 2001).

## V. ARGUMENT

### A. Cornice is Not Entitled to Summary Judgment of Noninfringement Based on Its Improper Interpretation of the Related Terms "Park" and "Parking"

Cornice has moved for summary judgment of noninfringement based solely upon its misconception that the related terms "park" and "parking" (collectively referred to hereinafter

6

as "park") require that the actuator and associated head(s)/transducer(s) be positioned *over the disc surface* and that the actuator and associated head/transducer in the Cornice accused products is not "parked" because it is parked on a load ramp at the outside diameter of the disc.[5] Cornice is wrong on both counts.

First, as summarized below and more fully set forth in Seagate's Opening Claim Construction Brief relating to U.S. Patent No. 5,452,159 at 21-15, Cornice's construction of the term "park" is divorced from the intrinsic evidence and flies in the face of longstanding maxims of claim construction. Moreover, Cornice's proposed construction of the term "park" contradicts Cornice's, and its expert's, Dr. James Morehouse, pre-litigation definition of "park." Properly construed, "park" simply means "fix the position of the actuator which supports the head(s)" and does not include the added limitation that the head be over the disc when parked, i.e., on a "landing zone" of the disc.

Second, even under Cornice's flawed construction that "park" should be construed to mean "maintaining the position of the head(s) over a selected portion of the disk," no reasonable fact finder could conclude that there is "no room [to find] equivalence." Toro Co., 266 F.3d at 1370. To the contrary, the evidence is overwhelming that a reasonable fact finder should conclude that the Cornice accused products infringe under the doctrine of equivalents, if not literally. Id.

1. **"Park" Means "Fix the Position of the Actuator Which Supports the Head(s)"**

As explained in detail in Seagate's opening claim construction brief, "park" means "fix the position of the actuator which supports the head(s)." The patent makes clear that

---

[5] Cornice has not denied that its 1.0, 1.5, and 2.0 GB Storage Elements meet any other claim terms, and therefore Seagate only addresses the claim term that Cornice has raised. Seagate believes that Cornice, in fact, does meet all of the limitations of the asserted claims, as set forth in detail, for example, in the report of its infringement expert, Dr. David B. Bogy. [See Ex. 2.] Further, the parties have filed their respective claim construction briefs on November 18, 2005 [D.I. 148, D.I. 170], and will file rebuttal briefs on December 16, 2005, which Seagate urges the Court to review for a complete analysis of its position.

"park" is not limited to fixing the position of the actuator/head(s) over the disc as Cornice contends. Claim 1 recites:

> magnetic parking means provided adjacent to the actuator for capturing and magnetically retaining said capture member to park the transducer.

[Ex. 1 at 9:26-28.] Claim 1 simply requires to "park the transducer," not to park it "over the disc."

Moreover, the patentee provided an explicit definition for the term "park" in the written description:

> As used in this patent, the terms "park" and "parking" refer to the maintaining the position of the head(s) over a selected portion (usually a "landing zone" at the inside or outside diameter) of the disk (or disks). The heads are supported by an actuator, and parking the heads also means parking the actuator by *fixing the position of the actuator for [sic] which supports the heads*.

[Ex. 1 at 1:55-63.][6]

Cornice ignores the second, broader use of "park" (highlighted above) and seeks to improperly limit it to the narrower, first use of the term. [D.I. 159 at 5.] Cornice goes so far as to even suggest to the Court that its construction is the only "explicit definition" of this term in the '159 patent. [Id.] Not only is Cornice's position in direct contrast with the written description but it also contradicts the U.S. Court of Appeals for the Federal Circuit's controlling precedent.

The Federal Circuit holds that when a patent, such as the '159 patent, uses a term in a variety of ways, and where a broader use of the term subsumes a narrower use of the term, the broader use controls. See, e.g., Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 991 (Fed. Cir. 1999) ("varied use of a disputed term in the written description demonstrates the breadth of the term rather than providing a limited definition"); see also Enercon, 151 F.3d at 1385 (Fed.Cir.1998) (refusing to limit a term used "interchangeably" in the written description to only one of the uses of the term). Here the patentee described two

---

[6] Unless otherwise indicated, emphasis in this Brief has been added.

8

uses of the terms "park" and "parking" and Cornice has provided no support to show that the broader use should not control in this case.

Further, when the patentee sought to require parking over the disc he knew how to claim such a limitation and indeed did so in other claims. No one disputes that when the head is parked on the disc, the head is on a "landing zone." [E.g., D.I. 159 at 4; Ex. 3 at ¶¶ 17 and 18.] Claim 5 is specifically directed to the use of parking requiring that the transducer is parked over a "landing zone." Claim 1, however, simply requires to "park the transducer" without reference to a specific location.

Cornice's proposed construction for "park" becomes even more untenable when viewed in light of Cornice's use of this term prior to this litigation. In fact, it is Seagate's construction, which reads on the accused products' use of a loading ramp, that Cornice used to define "park" in patent applications covering the accused products. For example, in International Patent Application (PCT/US02/28987) [Ex. 4], Cornice illustrated and described how its actuator arm is in the parked position when the head is unloaded from the disc and the heads are parked, for example, on a loading ramp:

> Referring to Figures 3 and 6, attention is now directed to a highly advantageous actuator arm position sensor. <u>These figures illustrate actuator arm 344 in the parked position</u>. Consistent with terminology of the art, this position may be referred to as having the "heads unloaded." Conversely, the term having the "heads loaded" may refer to the position when the actuator arm or head/transducer arrangement is positioned for reading magnetic media 340.

[Ex. 4 at ¶ 108.]



Cornice now attempts to narrow the definition of "park" by manufacturing a distinction between "contact start stop" and "dynamic head loading" disc drive technologies. [D.I. 159 at 4.] The '159 patent, however, does not distinguish between the two technologies and Cornice's own patent application is directed to dynamic head loading, which as Cornice described places the actuator in a "parked position" on the load ramp. [Ex. 4 at ¶ 108.] Moreover, Cornice and its expert's use of the term makes clear the distinction is without meaning.

Cornice's own expert, Dr. Morehouse, also defined an actuator fixed on a ramp as "parked." In at least U.S. Patent Nos. 5,379,171 [Ex. 5]; 5,579,189; 5,592,349; 5,760,986; and 5,835,303, which name Dr. Morehouse as an inventor, Dr. Morehouse explained and illustrated how the read/write head(s) are "parked" when on the load ramp, similar to Cornice's accused products. Figure 3A and its accompanying description from U.S. Patent No. 5,379,171 exemplify Dr. Morehouse's understanding and acceptance of the ordinary meaning of "park" prior to his employment by Cornice in the present litigation:



FIG. 3A

In Fig. 3A, load beam 14-1 and its associated read/write transducer is illustrated in a **parked position off the disk** and in its innermost position of travel. In the hard disk drive 1 structure **dynamic head loading is utilized** and therefore when the disk drive is powered down and, i.e., not rotating, load beams 14 and 14-1 and 14-2 (not shown) one (sic) moved to the position illustrated where lift tab 17 is in a **parked position** on cam assembly 18 to prevent the read/write transducer heads from interfering with or damaging the disk surface.

[Ex. 5 at Fig. 3A; col. 52, lines 40-52 (emphasis added).]

Thus, "park" means "fix the position of the actuator which supports the head(s)" and Cornice's motion should be denied.

### 2. Even Under Cornice's Proposed Construction of the Term "Park," A Genuine Issue of Material Fact Remains Regarding Infringement Under the Doctrine of Equivalents

Assuming *arguendo* that "park" were restricted to "[m]aintain[ing] the position of the head(s) over a selected portion of the disk" as Cornice propounds, Cornice would still infringe under the doctrine of equivalents. Indeed, the evidence shows that parking an actuator/head on a ramp performs substantially the same function, in substantially the same way, to achieve substantially the same result as parking the actuator/head over a selected portion of the disc. Read Corp. v. Portec, Inc., 970 F.2d 816, 822 (Fed. Cir. 1992) (A frequently used test for the doctrine of equivalents is called the "function/way/result test;"

11

patentee must show that the accused device "performs substantially the same function, in substantially the same way, to achieve substantially the same result."). Further, contrary to Cornice's assertions, Seagate has always maintained infringement under the doctrine of equivalents. [E.g., Ex. 6; Ex. 7 at 22.]

- **Function**

The function of "parking" the actuator/head(s) is to maintain or fix the position of the actuator/head(s) so that the head(s) does not come into contact with a data portion of the disc when the disc drive is not operating or during shock events, like someone dropping the drive on the floor, or in other words, protect the head(s) and data portion of the disc from damage. [E.g., Ex. 1 at 1:43-4:14; Bogy Decl. at ¶ 5.] For example, the specification discloses:

> Parking the head(s) is particularly important in portable computers, in which the disk drive may be continually subject to large physical shocks during transportation. Non-operational physical shocks, for example, shocks experiences during transportation of portable computers or shipping may cause the heads to 'slap' against the disk, possibly causing a loss of data if the head slaps against a data-carrying portion of the disk.

[Ex. 1 at 2:3-11.]

If the term "park" were construed to mean "maintaining the position of the head(s) over a selected portion of the disk" as Cornice contends, fixing the actuator/head(s) on a load ramp as employed in the Cornice accused products performs the same function as "maintaining the head(s) over a selected portion of the disk." Indeed, the accused products' employment of the load ramp to fix the head(s) maintains the position of the head so that the head does not come into contact with a data portion of the disc when the drive is not operating or during shock events. [E.g., Ex. 1 at 2:3-11; Ex. 8, generally at 212:15-215:17, and specifically at 215:4-6 ("either way, the actuator is in a nonoperational state, and the heads are in a position where they are not over the data"; Bogy Decl. at ¶ 6.] This is the reason both Cornice and its expert refer to the actuator as parked in their pre-litigation patents. Hence, the load ramp of the accused products performs substantially the same function even under Cornice's proposed construction.

12

- **Way**

The "way" that the Cornice accused products "park" the head(s)/transducer(s) is substantially the same as way that the head(s)/tranducer(s) are "parked" in the '159 patent. The actuator is parked away from the data portions of the disc. For instance, the '159 patent teaches that a magnetic latch assembly is used to maintain or fix the position of the actuator/head(s) so that the head(s) cannot contact the data portion of the disc during an inoperative state or during shock events.

> Parking the head(s) is particularly important in portable computers, in which the disk drive may be continually subject to large physical shocks during transportation. Non-operational physical shocks, for example, shocks experiences during transportation of portable computers or shipping may cause the heads to 'slap' against the disk, possibly causing a loss of data if the head slaps against a data-carrying portion of the disk.

[E.g., Ex. 1 at 2:3-11; Bogy Decl. at ¶ 7.] The way the actuator/head(s) are fixed clear from the data portions of the disc protects both the head(s) and the data portions from damage caused by disc slap.

Cornice implements its parking device in substantially the same way in the accused products. The actuator and associated head(s)/transducer(s) are fixed on a ramp which positions the head(s)/transducer(s) off of the data portions of the disc. As such, the head is parked in a position which minimizes the chances of the head coming into contact with a data portion of the disc during inoperable conditions or in response to shock events. Thus, even under Cornice's inaccurate definition of "park," a reasonable fact finder should find that the accused products perform in substantially the same way as the claimed invention and would therefore find at least infringement under the doctrine of equivalents. [E.g., Ex. 8, generally at 212:15-215:17, and specifically at 215:4-6 ("either way, the actuator is in a nonoperational state, and the heads are in a position where they are not over the data."; Bogy Decl. at ¶ 7, 9.]

Further, before this litigation, Cornice and its expert referred to the way the actuator/transducer is maintained or fixed relative to the disc in the accused products as being "parked" or in the "parked position." [See Ex. 4 at ¶ 108, Figs. 3 and 6 (describing and

illustrating the actuator arm in the accused products as being in the "parked position"); see also Ex. 5 at Fig. 3A; col. 52, lines 40-52 (describing and illustrating transducer in "parked position off the disk" in a disc drive utilizing dynamic head loading technology).]

- **Result**

The "result" of parking the actuator/head(s) is a disc drive that experiences less drive failure caused by the head(s) contacting the disc:

> Parking the head(s) is particularly important in portable computers, in which the disk drive may be continually subject to large physical shocks during transportation. Non-operational physical shocks, for example, shocks experiences during transportation of portable computers or shipping may cause the heads to 'slap' against the disk, possibly causing a loss of data if the head slaps against a data-carrying portion of the disk. Parking the head assures that the head . . . will be held in a position over [the non-data storage portion of the disk.]

[E.g., Ex. 1 at 2:3-14; Bogy Decl. at ¶ 8.]

Cornice's load ramp achieves the same result as "parking the transducer" of the asserted claims even under Cornice's flawed construction. Suspending the head(s) from a load ramp results in a disc drive that experiences less drive failure because the chances of the head(s) contacting a data portion of the disc are minimized. [E.g., Ex. 8, generally at 212:15-215:17, and specifically at 215:4-6 ("either way, the actuator is in a nonoperational state, and the heads are in a position where they are not over the data."; Bogy Decl. at ¶ 8.] Therefore, a reasonable fact finder should conclude that the accused products achieve substantially the same result as the claimed invention.

Viewing the totality of the evidence (even under Cornice's erroneous construction of the term "park"), a reasonable fact finder should conclude that fixing the actuator/head(s) on a load ramp is equivalent to fixing the actuator/head(s) over a selected portion of the inner diameter of the disc. Accordingly, the Court should deny Cornice's motion.

## VI. SEAGATE CONCEDES CORNICE'S 3.0 GB STORAGE ELEMENT DOES NOT INFRINGE ANY ASSERTED CLAIM OF THE '159 PATENT

Cornice's additional argument that Seagate continues to allege infringement of its 3.0 GB Storage Element is suspect. First, Seagate did not accuse the 3.0 GB Storage Element

14

of infringing any claim of the '159 patent during the ITC investigation. Second, as Cornice admits, Seagate's expert, Dr. Bogy did not offer an infringement opinion regarding the 3.0 GB, and in fact stated that it does not infringe. [Ex. 7 at 22 n.2.]

For at least these reasons, Cornice understood that Seagate did not accuse its 3.0 GB of infringing the '159 patent and could have raised its misconceptions during any of the various meet and confers with Seagate regarding summary judgment and claim construction. Instead, Cornice chose to waste Seagate's and this Court's valuable resources in having to address its baseless motion. In order to not waste more of this Court's valuable time, Seagate hereby concedes that the Cornice 3.0 GB Storage Element, as it is currently designed, manufactured, and sold, does not infringe the asserted claims of the '159 patent.

## VII. CONCLUSION

For the foregoing reasons, Seagate respectfully requests that Cornice's motion for summary judgment of noninfringement be denied with respect to Cornice's 1.0, 1.5 and 2.0 GB Storage Element products.

Dated: December 16, 2005               FISH & RICHARDSON P.C.

By: /s/ Timothy Devlin
    Timothy Devlin (#4241)
    919 N. Market Street, Suite 1100
    Wilmington, DE 19899-1114
    Tel: (302) 652-5070

Attorney for Plaintiff
SEAGATE TECHNOLOGY LLC