232

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,

Plaintiff,

v.

CORNICE, INC.

Defendant.

C.A. No. 04-418 (SLR)

REDACTED

**PLAINTIFF SEAGATE'S RESPONSE TO DEFENDANT CORNICE'S MOTION FOR SUMMARY JUDGMENT [NO. 5] OF NON-INFRINGEMENT OF U.S. PATENT 5,600,506**

Date: December 16, 2005

Timothy Devlin (#4241)
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114

Roger S. Borovoy
David M. Barkan
Shelley K. Mack
500 Arguello Street
Redwood City, CA 94063-1526

Brian R. Nester (#3581)
Timothy W. Riffe
Christian A. Chu
1425 K Street NW, Suite 1100
Washington, D.C. 20005

Edmond R. Bannon
Lewis Hudnell III
Citigroup Center
153 East 53rd Street, 52nd Floor
New York, NY 10022-4611

Attorneys for Plaintiff
SEAGATE TECHNOLOGY LLC

# TABLE OF CONTENTS


Page

I. NATURE AND STAGE OF PROCEEDINGS ....1

II. SUMMARY OF ARGUMENT ....1

III. FACTS ....3

A. The '506 Patent Relates to the "Servo Pattern" and Related Features of a Disk Drive System ....3

B. Evidence Establishes that Cornice's Accused Products Have the Recited "Quadrature Burst Pattern" ....4

C. Even Under Cornice's Construction, the Accused Products Meet the Quadrature Burst Pattern Limitation ....7

D. Evidence Supports a Finding that Cornice's 3.0 GB Product Infringes Under the Doctrine of Equivalents ....12

E. Cornice's "Facts" Regarding Centering of Bursts Within Data Tracks Are Incorrect and Ignore Cornice's Use of Later-Developed Technology ....16

IV. ARGUMENT ....17

A. Legal Standards for Summary Judgment ....17

B. Evidence Establishes that Cornice's Products Meet the "Quadrature Servo Pattern" Limitation ....18

1. Cornice Has No Argument Under the Ordinary Meaning of "Quadrature Servo Pattern" ....18

2. Factual Evidence Supports a Finding of Infringement Even Under Cornice's Construction ....19

3. No Legal Limitation Precludes a Finding of Equivalents ....21

C. Evidence Establishes that Cornice's 3.0 GB Product Meets the "Ratio" Limitations of the Claims ....24

1. Factual Evidence Supports a Finding of Infringement ....24

2. No Legal Limitation Precludes a Finding of Equivalents ....26

## TABLE OF CONTENTS (cont'd)

**Page**

a. There Is No "Deliberately Narrow" Claim Language that Would Prohibit Equivalents.....26

b. Cornice's "Foreseeability" Argument Is Not Applicable to the Facts Here.....28

c. Cornice's Attempt to Read in Additional Limitations Regarding "Centering" a Burst Are Improper.....29

d. Dr. Messner's Expert Opinions and Testimony Provide Detailed Analyses of Equivalents on an Element by Element Basis.....30

V. CONCLUSION.....32

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Abbott Laboratories v. Dey, L.P.*, 287 F.3d 1097 (Fed. Cir. 2002) ........ 25, 26, 28

*Al-Site Corp. v. VSI International, Inc.*, 174 F.3d 1308 (Fed. Cir. 1999) ........ 19, 24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........ 17

*Asyst Techs. v. Emtrack, Inc.*, 402 F.3d 1188 (Fed. Cir., 2005) ........ 22

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........ 17

*Checkpoint System, Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331 (Fed. Cir. 2005) ........ 31

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005) ........ 31

*Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394 (Fed. Cir. 1994) ........ 22

*Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369 (Fed. Cir. 2003) ........ 19, 20, 22, 23

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) ........ 28

*Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005) ........ 27

*Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed. Cir. 2001) ........ 17

*Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998) ........ 17

*Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377 (Fed. Cir. 2000) ........ 25, 26, 27, 28

*Johnson & Johnston Associates Inc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) ........ 27, 29, 30

*Moore U.S.A, Inc. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir. 2000) ........ 22

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999)....................17

*Salazar v. Procter & Gamble Co.*,
414 F.3d 1342 (Fed. Cir. 2005)....................21, 27

*Searfoss v. Pioneed Consolidated Corp.*,
374 F.3d 1142 (Fed. Cir. 2004)....................22

*Tanabe Seiyaku Co., Ltd. v. United States International Trade Committee*,
109 F.3d 726 (Fed. Cir. 2002)....................27

*Warner-Jenkinson v. Hilton Davis*,
520 U.S. 17 (1997)....................19, 25, 27, 31

*Wilson Sporting Goods Co. v. David Geoffrey & Associate*,
904 F.2d 677 (Fed. Cir. 1990)....................30

*Wright Medical Technology, Inc. v. Osteonics Corp.*,
122 F.3d 1440 (Fed. Cir. 1997)....................20, 22, 23, 24

**STATUTES**

Fed. R. Civ. P. 56(c) ....................17

## I. NATURE AND STAGE OF PROCEEDINGS

In this patent infringement case, Plaintiff Seagate hereby responds to Defendant Cornice's Motion for Summary Judgment [No. 5] of Non-Infringement of U.S. Patent No. 5,600,506 (the "'506 patent") (Ex. 1).

## II. SUMMARY OF ARGUMENT

Since it began producing the accused products, Cornice has used a "servo pattern" that is virtually identical to one of the preferred embodiments taught by the '506 patent. Cornice has taken two different approaches to this basic fact during litigation. The first is to manufacture non-infringement arguments through its proposed claim construction. The second is to attempt a design-around of the '506 patent in Cornice's more recent 3.0 GB product. Neither approach has been successful.

Cornice's Motion regarding the "quadrature servo pattern" limitation is one example of the first approach. Cornice's non-infringement argument, and thus its Motion on the "quadrature" limitation, depends on its own improper claim construction.

REDACTED

If the Court properly rejects Cornice's attempts to read limitations into the claims, Cornice's Motion should be denied.

Even under Cornice's unduly narrow construction of "quadrature servo pattern," Cornice's products meet this limitation at least under the doctrine of equivalents. Cornice asserts that neither Seagate nor its expert Dr. Messner has offered any contention regarding equivalents, but contrary to this assertion, Dr. Messner's report contains detailed opinions regarding equivalents on an element by element basis. These opinions include not only an equivalents opinion regarding the quadrature servo pattern limitation as a whole, but also detailed opinions regarding the presence, both literally or by equivalents, of specific components of the quadrature servo pattern. Cornice's Motion ignores all of this evidence, and there is no legitimate basis to preclude equivalents here.

Cornice's second argument relates to certain numerical ratios in the claims, and is relevant only to its 3.0 GB product. Cornice attempts to take advantage of insubstantial changes made by Cornice since the litigation was initiated, and evidence of these insubstantial differences is provided by Seagate's expert Dr. Messner, who again provided detailed opinions regarding the issue of equivalents in the Cornice 3.0 product. These opinions are set forth on an element by element basis, including the ratio elements at issue in Cornice's Motion.

REDACTED

Rather than confront this evidence, Cornice attempts to shoe-horn the facts of this case into various legal limitations on the doctrine of equivalents. None of these efforts have merit. Case law establishes that numerical limitations are entitled to equivalents like any other limitation, and there is no legal basis to preclude equivalents here. There is no prosecution history estoppel, since the claims were allowed on the first Office Action. Cornice does not assert that its 3.0 GB servo pattern is a described but unclaimed embodiment of the '506 patent. Similarly, Cornice cannot assert that it is practicing the prior art.

REDACTED

There is also no vitiation here. Instead, there is evidence that every claim element is met either literally or by equivalents. Cornice's attempts to avoid this evidence should be rejected, and its Motion should be denied.

## III. FACTS

### A. The '506 Patent Relates to the "Servo Pattern" and Related Features of a Disk Drive System

A full explanation of the '506 patent technology is set forth in Seagate's Technology Overview, [D.I. 182], and Seagate's claim construction brief regarding the '506 patent, [D.I. 185]. Relevant aspects are set forth here.

The '506 patent relates to the "servo pattern" of a disk drive, which is used to define position on the disk. [Ex. 2 at ¶ 54.][1] The servo pattern and logic help to position a transducer over a desired data track on the surface of the spinning disk. [Id. at ¶ 54.] The pattern is arranged within "servo wedges" on the surface of the disk, which extend generally radially like spokes on a wheel. [Id. at ¶ 51.] User data is stored in the larger pie-shaped areas between the servo wedges. [Id. at ¶ 51.] The servo pattern is analogous to a ruler extending radially along the disk surface, crossing each of the data tracks. [Ex. 1 at 11:23-27.] When the disc drive is in operation, the head reads the servo pattern to obtain information regarding the radial position of the transducer over the disk, and the drive uses this information to determine the transducer's position.

The '506 patent provided a new type of servo pattern for use with a hard disk drive, as well as a related system and method. The '506 patent claims were never rejected during prosecution for any reason; all claims were allowed on the first Office Action. [Ex. 3.] Indeed, despite thorough review of the prior art, neither Cornice nor its expert asserts that the '506 patent claims are anticipated. [Ex. 4 at 22:21-25:6.] More specifically, neither Cornice nor its expert has found ***any*** prior art reference that even purportedly anticipates ***any*** claim of the '506 patent. Cornice's expert Mr. Dennison

---

[1] Unless otherwise indicated, citations to Exhibits in this Brief refer to the Exhibits attached to the co-filed Declaration of Timothy Devlin in Support of Seagate's Response to Defendant Cornice's Motion for Summary Judgment [No. 5] of Non-Infringement of U.S. Patent 5,600,506.

testified, "I don't believe there is anything in my experience or the prior art that anticipates the claims of [the '506 patent.]" [Id. at 24:12-24.]

Servo patterns can including a number of different components that help to define position on the surface of the disk. One component provides a "coarse" or "integer" position, and another provides a "fine" or "fractional" position. By way of analogy, the first component works like the "inch" marks on a ruler, while the second component works like the fractional marks – quarter-inch, eighth-inch, etc. The "integer" and "fractional" portions of the servo pattern define radial position on the disc, just as the inch and fraction marks define distance along the ruler. [Ex. 1 at 11:23-27; Ex. 2 at ¶ 58.]

In the '506 patent, the integer position is encoded in a binary format known as a "gray code" or "gray scale." [Ex. 1 at 3:51-57.] Cornice's motion does not relate to the presence of a gray scale or gray code; REDACTED

**B. Evidence Establishes that Cornice's Accused Products Have the Recited "Quadrature Burst Pattern"**

One of the two arguments in Cornice's Motion relates to the servo pattern features that provide fractional position information. The prior art included many different types of patterns to provide this fractional information, and the '506 patent utilizes a "quadrature servo pattern" for this purpose. Each independent claim recites this "quadrature" feature. [Ex. 1 at 20:13, 22:62 and 23:61.]

As well understood in the art, a quadrature pattern includes a series of four bursts in alternating pairs. That is, two bursts (usually designated A and B) form an alternating pair extending along the servo wedge. The other two bursts (usually designated C and D) form a second alternating pair extending along the servo wedge. The two pairs of bursts are staggered, so that the transition between one of the alternating pairs (*e.g.*, the transition between the A burst and B burst) occurs at the center of one burst of the other alternating pair (*e.g.*, at the center of burst D), an arrangement sometimes referred to as

"90 degrees out of phase." Cornice's expert agrees that this is the ordinary meaning of "quadrature servo pattern" in the art. [Ex. 5 at 28:7-29:11; Ex. 4 at 128:9-24.]

Figure 3 of the '506 patent is reproduced below, showing various components of an exemplary servo pattern of the '506 patent (along with other schematic information). The quadrature burst pattern and gray scale extend horizontally. The quadrature pattern is in the region labeled "Servo A" to "Servo D," with the gray scale running below it as viewed on the page. The data tracks labeled Track 0 through Track 6 run vertically through the quadrature burst pattern and gray scale. For clarity, a single red line has been drawn at the transition between an A burst and B burst. It can be seen that this line extends through the center of the D burst, as described above. This staggering between the A-B pair and C-D pair creates the "quadrature" pattern, as shown in Figure 3 of the '506 patent [Ex. 1]:

Cornice asserts in its Motion that it lacks the required quadrature burst pattern, but

REDACTED

REDACTED

In fact, the '506 patent describes a number of possible variations of a quadrature burst pattern, shown in Figures 4A, 4B, 7A and 7B of the patent.

REDACTED

REDACTED

These facts are the genesis of Cornice's proposed construction of the "quadrature servo pattern" limitation, which requires a wholesale reading of the preferred embodiment into the claims. Cornice's Motion – in truth its entire non-infringement position regarding the "quadrature" limitation – depends on this restrictive view of the claims. Specifically, Cornice asserts that the claims must be limited to quadrature pattern that has one of its bursts centered within data track 0, as well as every other data track. [D.I. 165 at 9.] In support of this limitation, Cornice points to nothing in the claims themselves, instead relying exclusively on the preferred embodiments set forth in the '506 patent specification. For the reasons set forth in Seagate's claim construction briefing, Cornice's imported "limitation" should be rejected.

### C. Even Under Cornice's Construction, the Accused Products Meet the Quadrature Burst Pattern Limitation

Even under Cornice's improper construction, however, evidence indicates that Cornice's accused products meet the "quadrature servo pattern" limitation at least under the doctrine of equivalents. Cornice asserts that Seagate's expert "failed to address this

[2] Unless otherwise indicated, emphasis in this Brief has been added.

issue in his expert report" [D.I. 165 at 10], but this is plainly incorrect. Contrary to this assertion, Dr. Messner provided detailed claim charts on an element by element basis, including the quadrature limitation. After outlining evidence of literal infringement, Dr. Messner renders an explicit opinion that, even under an alternate construction, the pattern in Cornice's products is insubstantially different from the quadrature pattern limitation of the '506 patent:

REDACTED

Moreover, Dr. Messner gives a detailed analysis regarding each ***individual burst*** of the recited quadrature pattern, demonstrating that every component of the recited "quadrature servo pattern" finds correspondence within the Cornice servo pattern. Certain dependent claims of the '506 patent, for example claim 2, recite the specific arrangement of bursts that form the quadrature pattern. [Ex. 1 at 20:22-30.]

REDACTED

These opinions again expressly link elements of the '506 patent claims with corresponding elements in the Cornice products. Dr. Messner's opinions regarding equivalents are not simply summary assertions. Instead they flow from the detailed

analyses and citation to literally dozens of documents cited in support of these opinions. [Ex. 9 at 7-12; Ex. 10 at 5-8.]

REDACTED

Dr. Messner's opinions provide more than sufficient evidence to demonstrate infringement of the "quadrature servo pattern" limitation under the doctrine of equivalents, even under Cornice's construction.

Dr. Messner's opinions are further supported by Cornice's documents as well as the deposition testimony of Cornice's own employees and expert. For example, the quadrature pattern of the '506 patent provides "fractional" information relative to the gray scale. [Ex. 1 at 11:23-27, Figs. 3 and 7.]

REDACTED

All of this evidence further demonstrates that the quadrature servo pattern in the Cornice drives is equivalent to the quadrature servo pattern of the '506 patent.






Using the ruler analogy, this is like slightly shifting the ruler to the left or right when measuring an object. The length of the object does not change, nor is it difficult to calculate length regardless of where the object is placed along the ruler. For example, one can measure the length of an object from the ¼ inch mark on the ruler rather than from the edge of the ruler. It is well understood that if the object being measured extends from the ¼ inch mark to the 7 ¼ inch mark, then the object is seven inches long. We subtract the ¼ inch "offset" between the edge of the ruler and the near edge of the object to obtain the correct length.

It is just as simple to do the same calculation measuring from the ½ inch mark or ¾ inch mark, or any other fractional mark on the ruler. In each case the combination of integer and fractional marks will give the correct length. The fractional marks perform the same function even when the ruler is moved slightly left or right when measuring an object.

REDACTED



This makes sense, since the whole purpose of the servo pattern is to provide position information in order to find or follow a selected data track. [Ex. 1 at 1:26-30.] Cornice's current rhetoric that the relationship between the bursts and date tracks is "entirely indeterminate" does not withstand scrutiny.

Cornice also asserts that the "quadrature servo pattern" limitation of the '506 patent is somehow limited by a need to create a "null" at the center of a data track, so that the head can follow that centerline during a track following operation. [D.I. 165 at 3-4.] Cornice's assertion is directly contradicted by the patent specification, which teaches that one advantage of the patent is that it allows track following over the entire width of a data track:

> Another advantage of the present invention is that the position signal may be used during a track following operation such that ***the track following operation may be used over the entire width of a data track.***

[Ex. 1 at 2:25-29.]

In this regard, Cornice also notes that its products utilize a magneto-resistive or "MR" head, and suggests that this somehow distinguishes the accused products from the patent. [D.I. 165 at 4-5.] The '506 patent invention, however, is likewise useful for MR heads. The specification states that the invention has certain advantages with an MR head ("magnetoresistive transducer") is used. [Ex. 1 at 8:41-43.] The use of MR heads with the '506 patent invention was not only conceded, but asserted by Cornice's own expert in one of his reports. [Ex. 13 at 118.] Both Cornice's products and the '506 patent involve MR heads. Cornice's purported "critical distinction" between the heads used with the '506 patent and with Cornice's products does not even exist.

REDACTED

This is the opinion set forth in Dr. Messner's report and to which he will testify at trial; it is supported by numerous documents and testimony from Cornice's own witnesses.

**D. Evidence Supports a Finding that Cornice's 3.0 GB Product Infringes Under the Doctrine of Equivalents**

Cornice also argues that, in its more recent 3.0 GB product, the "ratio" of servo bursts and gray scale areas relative to the data tracks cannot be found infringing under the doctrine of equivalents. Cornice's argument relates to certain limitations in the '506 patent reciting a "3:2" ratio between gray scale areas and data tracks, and a "3:4" ratio between repetitions of the quadrature burst pattern and the data tracks. An example of these limitations appears in claim 22 of the patent:

> a servo band recorded across all said Z data tracks and a gray scale band recorded across all said Z data tracks, said servo band comprising a quadrature servo pattern repeated 0.75*Z times, said gray scale band comprises 1.5*Z consecutively addressed gray scale areas,

As can be seen, claim 22 does not use the phrasing "3:2 ratio" or "3:4 ratio." Instead, claim 22 (as well as claims 1 and 33) uses algebraic equations that describe these two ratios. Specifically, the claims define the number of data tracks on the disk as "Z," and the literally-recited servo pattern includes "1.5*Z" gray scale areas and "0.75*Z" quadrature pattern repetitions. The parties agree that these limitations should be construed according to their ratios, so that they require three gray scale areas for every two data tracks (a 3:2 ratio), and three quadrature pattern repetitions every four data tracks (a 3:4 ratio). [D.I. 143 at 4-5.][3]

REDACTED

Cornice's Motion on this issue is restricted to its later 3.0 GB product. Contrary to Cornice's Motion, however, evidence exists that the 3.0 GB product meets these limitations at least under the doctrine of equivalents.

REDACTED

[3] While there is a dispute regarding this limitation, it does not relate to the ratios. Specifically, Cornice further contends that these constructions should include the narrowing word "precisely," which is not in the claims. The parties agree, however, that the algebraic equations in the claim should be expressed as these ratios. [D.I. 143 at 4-5.]

REDACTED

In analogous terms, these ratios refer to the "density" or "width" of the servo information relative to the data tracks. Using different ratios stretches or shrinks the gray scale areas and quadrature burst patterns relative to the data tracks. Using servo patterns with two different ratios is like measuring an object with the inch marks versus the centimeter marks on a ruler.

REDACTED

Seagate's expert Dr. Messner provided a detailed opinion regarding infringement of these ratios under the doctrine of equivalents. [Ex. 10 at 3.]

REDACTED Cornice quotes this same excerpt of Dr. Messner's report in its Motion. [D.I. 165 at 18-19.] Somehow Cornice refers to this opinion as "conclusory," despite the fact that it spans a three paragraphs, taking up roughly one half of a page using single line spacing.

Cornice also fails to cite other portions of Dr. Messner's opinion preceding and following the quoted text, in which Dr. Messner sets forth the specific elements of the Cornice products that correspond to the recited quadrature and gray scale elements. [Ex. 10 at 3-4.] All of these opinions dovetail with yet additional sections of Dr. Messner's report, in which Dr. Messner described the functioning of the claimed elements of the '506 patent invention. [Ex. 2 at ¶ 55-58.]

While this evidence alone is sufficient to support a finding of equivalents, other evidence further supports equivalents for these limitations. First, as Cornice's own expert states in his report,

REDACTED

REDACTED

REDACTED

REDACTED

As shown below, this is precisely the type of evidence that supports a finding of equivalents, and which tends to overcome legal limitations on equivalents.

# IV. ARGUMENT

## A. Legal Standards for Summary Judgment

A motion for summary judgment shall be granted only where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment of non-infringement can only be granted "if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (stating that summary judgment is only appropriate when no "reasonable jury could return a verdict for the nonmoving party.") To avoid summary judgment, the nonmoving party simply needs to offer specific facts establishing a genuine issue of material fact for resolution at trial. Celotex, 477 U.S. at

324. A genuine dispute of material fact exists if the factual dispute at issue could affect the outcome of the suit and the nonmoving party presents sufficient specific evidence to support a jury verdict in its favor. Anderson, 477 U.S. at 248.

A motion for summary judgment of noninfringement requires as a first step claim construction, an issue of law, and as a second step, comparison with the accused products, as an issue of fact. See Gentry Gallery, Inc. v. Berkline Corp., 134 F.3d 1473, 1476 (Fed. Cir. 1998). An infringement issue is properly decided upon summary judgment only "when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001).

### B. Evidence Establishes that Cornice's Products Meet the "Quadrature Servo Pattern" Limitation

#### 1. Cornice Has No Argument Under the Ordinary Meaning of "Quadrature Servo Pattern"

Cornice's Motion regarding the "quadrature" limitation depends on its own improper claim construction. Cornice's expert admits that Seagate's proposed claim construction is consistent with the term's ordinary meaning,

REDACTED

Accordingly, if the Court properly adopts the ordinary meaning of "quadrature servo pattern," Cornice's Motion should be denied.

**2. Factual Evidence Supports a Finding of Infringement Even Under Cornice's Construction**

Even under Cornice's improperly narrow construction, evidence exists from which a reasonable jury could find that the accused Cornice products meet the "quadrature servo pattern" limitation. Specifically, evidence exists showing that the claimed "quadrature servo pattern" finds correspondence in the Cornice products. The corresponding element is the burst pattern in the Cornice products,

REDACTED

As the Supreme Court explained in Warner-Jenkinson v. Hilton Davis, the "essential inquiry" under the doctrine of equivalents is whether evidence shows insubstantial differences on an element by element basis: "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" Warner-Jenkinson v. Hilton Davis, 520 U.S. 17, 40 (1997). Federal Circuit cases echo this standard. See Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1373 (Fed. Cir. 2003) (the second step of an infringement analysis, "comparison of the claim to the accused device, requires a determination that every claim limitation or its equivalent be found in the accused device"). As the Federal Circuit held in Ericsson, the question of whether each claim limitation has correspondence in the accused device is one of fact. "These determinations are questions of fact." Id. at 1373.

In this case, Seagate's expert Dr. Messner provides substantial evidence of infringement, from which a reasonable jury could find infringement. Dr. Messner offers detailed infringement charts on an element by element basis, including an opinion of equivalents with respect to the quadrature limitation, even under an alternate

construction. [Ex. 9 at 4.] Moreover, Dr. Messner gives a detailed analysis regarding each ***individual burst*** of the recited quadrature pattern, demonstrating that every component of the recited "quadrature servo pattern" finds correspondence within the Cornice servo pattern either literally or by equivalents. [Ex. 9 at 6-12; Ex. 10 at 5-8.] Dr. Messner's opinions provide more than sufficient evidence to demonstrate infringement of the "quadrature servo pattern" limitation under the doctrine of equivalents, even under Cornice's construction. See Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1316 (Fed. Cir. 1999) (expert's testimony regarding equivalents was "sufficient evidence to sustain the jury's verdict" of equivalents.).

Cornice asserts that Dr. Messner did not point to these opinions during his deposition. Cornice's argument ignores that Dr. Messner expressly testified that he would have to consider the issue, and simply could not recall an opinion sitting there at the deposition. [Ex. 16 at 53:10-20.] Even if Cornice's argument is accepted, however, Dr. Messner's deposition statements are the type of credibility evidence that the jury can weigh during trial.

This is precisely the holding of the Federal Circuit in Ericsson. In that case, the plaintiff's expert testified during cross-examination that certain electronic components were part of another claimed component, which conflicted with his direct testimony in support of equivalents. Ericsson v. Harris, 352 F.3d at 1374 n. 2. Rather than ignore the expert's direct testimony, the Federal Circuit held that it would not disturb the jury's evaluation of credibility: "we will not disregard his testimony as Harris would have us do; ***it was up to the jury to evaluate the credibility of his testimony.***" Id. at 1374 n. 2. Similarly, a jury can determine whether Dr. Messner's opinions are credible in light of his deposition testimony.

Moreover, additional evidence supports a finding of equivalents here.

REDACTED

the very advantage of using the entire width of the data track is described in the '506 patent:

> Another advantage of the present invention is that the position signal may be used during a track following operation such that ***the track following operation may be used over the entire width of a data track.***

[Ex. 1 at 2:25-29.] Cornice's use of this advantage is itself evidence of equivalents. See e.g., Wright Medical Technology, Inc. v. Osteonics Corp., 122 F.3d 1440, 1445 (Fed. Cir. 1997) (noting an accused element could "achieve at least some of the functionality" of a claimed element, and that a "fact-finder might conclude that this evidence supports a finding of infringement under the doctrine of equivalents").

In short, multiple sources of evidence provide sufficient support for a finding of equivalents. Cornice's motion should be denied.

**3. No Legal Limitation Precludes a Finding of Equivalents**

Cornice would have this Court limit the application of the doctrine of equivalents, but none of Cornice's cited cases are applicable here. First, it should be noted that several of the typical legal limitations on equivalents are not at issue here. First, the claims of the '506 patent were allowed on the First Office action, so there is no prosecution history estoppel. Cornice fails to even assert estoppel in its Motion.

Although Cornice has earlier pointed to statements made by the Examiner in a Statement of Reasons for Allowance, [Ex. 3], such statements alone cannot preclude infringement under the doctrine of equivalents. See Salazar v. Procter & Gamble Co., 414 F.3d 1342, 1345 (Fed. Cir. 2005) ("[A]n applicant's silence regarding statement made by

the examiner during prosecution, without more, cannot amount to a 'clear and unmistakable' disavowal of claim scope . . . . After all, the applicant has disavowed nothing."). Similarly, Cornice does not assert that the doctrine of equivalents would cover any described but unclaimed embodiment, so this cannot form the basis for any estoppel.

Cornice instead seeks to shoe-horn the present facts into inapplicable case law regarding the "vitiation" of claim elements, but such law is not applicable here. First, Cornice's arguments are premised on its suggestion that the claims recited a "quadrature burst pattern which 'requires' that a burst 'must' be centered in every data track." [D.I. 165 at 10.] None of this language, however, appears in the claims – the claims simply recite a "quadrature burst pattern." [Ex. 1 at 20:13, 22:62, 23:60.] Cornice simply sets up its own straw man, and then proceeds to attack that construct rather than the claims themselves.

Cornice argues that its cited cases are applicable to this false premise, but those cases are not applicable here. See e.g., Asyst Techs. v. Emtrack, Inc., 402 F.3d 1188, 1195 (Fed. Cir. 2005) (finding that "unmounted" objects are not equivalent to "mounted" objects); Searfoss v. Pioneed Consolidated Corp., 374 F.3d 1142, 1151 (Fed. Cir. 2004) (finding that an "indirect connection" was not equivalent to a "direct connection"); Moore U.S.A. Inc. v. Standard Register Co., 229 F.3d 1091, 1106 (Fed. Cir. 2000) (finding that a "majority" was not equivalent to a "minority"); Dolly, Inc. v. Spalding & Evenflo Companies, Inc., 16 F.3d 394, 400 (Fed. Cir. 1994) (finding that equivalents do not embrace structure "specifically excluded" from the claims).

Here the claims to do "specifically exclude" ***anything*** from their scope. As with most other "comprising" claims, they simply recite the limitations that form the basis for infringement. As set forth above, Seagate has offered evidence that demonstrates the presence of the "quadrature" element in the Cornice products under the doctrine of equivalents, even under Cornice's improper construction.

Applicable case law establishes that the doctrine of equivalents would not vitiate any claim element here. See e.g., Ericsson v. Harris, 352 F.3d 1369, 1374-75 (reversing JMOL of no infringement under the doctrine of equivalents); Wright Medical v. Osteonics, 122 F.3d 1440, 1445 (reversing summary judgment of no infringement under the doctrine of equivalents).

In Ericsson, for example, the claim at issue recited that certain components of a telephone power supply "*only* supply power to the telephone set when the receiver is off its cradle." Ericsson, 352 F.3d at 1374 (emphasis in Ericsson). Focusing on the word "only," the district court held that because the accused device supplied some power to the telephone set while in the "on-hook" position, there could be no infringement under the doctrine of equivalents. Id. at 1374. This is similar to Cornice's argument here that a burst "must" be present in the center of a data track.

The Federal Circuit reversed the Ericsson district court, holding that there was no vitiation even though undisputed evidence showed that, when using a caller-ID feature, the accused device supplied some power while the phone was in the on-hook position. Id. at 1375. The Federal Circuit held that the accused device was "very close" to only supplying power in the off-hook position, and the jury could reasonably have found infringement under the doctrine of equivalents. Id. at 1375.

These facts are precisely applicable to the case here.

REDACTED

A jury

could reasonably find infringement on these facts.

Similarly, in Wright Medical, the district court held that application of the doctrine of equivalents would ignore limitations in the claims, but the Federal Circuit reversed. 122 F.3d at 1445. According to the Federal Circuit, both the claimed invention and accused device employ an "intramedularry rod element," and there was evidence in the record showing that the rod in the accused device was equivalent to the claimed rod. Id. at 1445. Thus "summary judgment was not appropriate because Wright's theory of equivalence would not 'entirely vitiate a particular claim element.'" Id. at 1445-46 (citations omitted).

In this case, there is likewise evidence from numerous sources establishing that the quadrature pattern ***admittedly present*** in Cornice's accused products is insubstantially different from the claimed "quadrature servo pattern." Cornice's attempts to preclude any finding of equivalents should be rejected, and its Motion should be denied.

**C. Evidence Establishes that Cornice's 3.0 GB Product Meets the "Ratio" Limitations of the Claims**

**1. Factual Evidence Supports a Finding of Infringement**

Cornice seeks to argue that the servo pattern ratios in its 3.0 GB product are not equivalent to the ratios of the '506 patent.

REDACTED

Cornice somehow suggests that Dr. Messner's opinion of equivalents is "conclusory" [D.I. 165 at 18-19], but this assertion is belied by the detailed claim charts spanning roughly ten full pages that compare the claimed pattern and Cornice's pattern

on an element by element basis. [Ex. 9 at 6-12; Ex. 10 at 5-8.] Dr. Messner cites to numerous documents and to the deposition testimony of numerous experts. The portions of Dr. Messner's report quoted in Cornice's Motion merely summarize this evidence with respect to the particular numerical relationships themselves, although even these limited portions of Dr. Messner's opinion include a detailed analysis of equivalents. [Ex. 10 at 3.] Dr. Messner's expert evidence alone is sufficient to support a finding of equivalents. See Al-Site v. VSI Int'l, 174 F.3d 1308, 1316 (expert's testimony regarding equivalents was "sufficient evidence to sustain the jury's verdict" of equivalents.).

Cornice suggests that because these limitations recite particular numerical relationships, that no equivalents is available, but this argument is contradicted by both Supreme Court and Federal Circuit case law. See Warner-Jenkinson v. Hilton Davis, 520 U.S. 17, 32 (remanding on issue of whether pH of 5 in a chemical process was equivalent to recited pH having a "lower limit of 6.0"); Abbott Laboratories v. Dey, L.P., 287 F.3d 1097, 1107-08 (Fed. Cir. 2002) (vacating summary judgment of no infringement under the doctrine of equivalents and remanding on issue of whether accused phospholipids content of up to 99.99% was equivalent to claimed range of 68.6 to 90.7%); Jeneric/Pentron, Inc. v. Dillon Co., 205 F.3d 1377, 1384 (Fed. Cir. 2000) (holding that question of whether accused lithium oxide content of 0.041% is equivalent to claimed 0.5-3% is an issue "for resolution during trial"). These cases demonstrate that, with sufficient evidence like that provided by Dr. Messner, a reasonable jury could find infringement under the doctrine of equivalents.

As with the "quadrature" limitation, additional evidence beyond expert testimony establishes equivalents.

REDACTED

REDACTED

### 2. No Legal Limitation Precludes a Finding of Equivalents

In an attempt to overcome equivalents, Cornice makes a series of arguments, none of which has merit. As with the quadrature pattern limitation, it should be noted that there is no prosecution history estoppel and no assertion that Cornice's 4:3 pattern is a described but unclaimed embodiment of the '506 patent.

#### a. There Is No "Deliberately Narrow" Claim Language that Would Prohibit Equivalents

Cornice first argues that the numerical ratios recited in the '506 patent claims should not obtain any scope of equivalents. The Federal Circuit, however, has flatly rejected Cornice's suggestion that no equivalents should be available for specific numerical limitations:

> We . . . do not find a basis for precluding Abbott from relying on the doctrine of equivalents simply because the claim recites numeric ranges for the components of the claimed surfactant.

Abbott, 287 F.3d at 1108 (citations omitted).

Cornice asserts that the '506 patent claims are somehow too "narrow" for the doctrine of equivalents, but the Federal Circuit rejected the same argument in Abbott, despite the absence of any "softening" language such as "about" or "approximately" within the recited numerical limitations at issue. Id. at 1100. As with Cornice's argument here, the district court in Abbott based its summary judgment in part on the conclusion that the patentee recited specific percentages, and thereby precluded any equivalents. Id. at 1107. The Federal Circuit rejected this argument and reversed

summary judgment, holding that even specific numerical limitations are entitled to equivalents:

> As a further basis for precluding Abbott from relying on the doctrine of equivalents, ***the district court reasoned that "the patentee chose to include specific percentage ranges for each chemical component*** in the surface active material, and by doing so he created a record that fairly notified the public that he was surrendering the right to exclude material comprised of even the same components in different percentages. . . .
>
> ***The fact that a claim recites numeric ranges does not, by itself, preclude Abbott from relying on the doctrine of equivalents.***

Id. at 1107-08.

Similarly, in Jeneric, the Federal Circuit held that the doctrine of equivalents was applicable to a numerical limitation of 0.5-3%. Jeneric, 205 F.3d 1377, 1384. The numerical limitations at issue in Jeneric also recited no softening language that might broaden the literal scope of the claims beyond each precise endpoint. Id. at 1384. These cases demonstrate that numerical limitations, even those that do not recite modifiers such as "about" or "approximately," are entitled to a scope of equivalents.

Cornice's cited cases are not applicable. As stated in Cornice's own Motion (at 14-15), Tanabe relates to a "genus/species" analysis in a chemical case. Tanabe Seiyaku Co., Ltd. v. United States Int'l Trade Comm., 109 F.3d 726, 732 (Fed. Cir. 2002). Similarly, Freedman expressly relates to "relatively simple" mechanical technology, which cannot be said of the disk drive servo system here. Freedman Seating Co. v. American Seating Co., 420 F.3d 1350, 1362 (Fed. Cir. 2005). Cornice's attempts to rely on these cases should be rejected, particularly in light of the express holdings allowing equivalents for numerical limitations.

Cornice also argues that all embodiments of the '506 patent specification describe the "3:2" ratio, but this fact supports application of the doctrine of equivalents. Case law holds that if an alleged equivalent is described in the patent specification, but not literally

claimed, then the doctrine of equivalents is precluded with respect to that unclaimed embodiment. See, e.g., Johnson & Johnston Associates Inc. v. R.E. Service Co., 285 F.3d 1046, 1054 (Fed. Cir. 2002). Cornice would turn this standard on its head, and essentially preclude the doctrine of equivalents in every case (both where the alleged equivalent is described in the specification and where it is not described). This flat prohibition on equivalents has been rejected by the Supreme Court. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997).

Likewise, Cornice asserts that Examiner noted these ratio limitations in a Statement of Reasons for Allowance [D.I. 165 at 14], but such statements cannot form any basis for estoppel absent statements by the Applicant. See Salazar v. Procter & Gamble Co., 414 F.3d 1342, 1345 ("[A]n applicant's silence regarding statement made by the examiner during prosecution, without more, cannot amount to a 'clear and unmistakable' disavowal of claim scope . . . . After all, the applicant has disavowed nothing."). Because the '506 patent claims were allowed on the first Office Action, [Ex. 3], there can be no estoppel here.

**b. Cornice's "Foreseeability" Argument Is Not Applicable to the Facts Here**

Cornice next argues that equivalents asserted here were foreseeable, but this argument likewise ignores the express case law cited above regarding numerical limitations. In every case involving numerical claims, it can always be asserted that the applicant could have recited a broader numerical scope. The Federal Circuit implicitly rejected this argument when holding that the doctrine of equivalents applies to numerical limitations. Abbott, 287 F.3d at 1107-08; Jeneric, 205 F.3d at 1384.

Cornice also ignores the fact that part of its own purported "evidence" of non-infringement relates to its assertion that it need not have a burst centered in each data track. [D.I. 165 at 17-18.]

REDACTED

REDACTED

The fact that Cornice's argument relies on later-developed technology supports the application of the doctrine of equivalents, and distinguishes the cases cited by Cornice. See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1368-69 (Fed. Cir. 2003) ("if the alleged equivalent represents later-developed technology (*e.g.*, transistors in relation to vacuum tubes, or Vecro® in relation to fasteners) or technology that was not known in the relevant art, then it would not have been foreseeable").

**c. Cornice's Attempt to Read in Additional Limitations Regarding "Centering" a Burst Are Improper**

When discussing the claimed ratios, Cornice again tries to read in a limitation that a burst of the quadrature pattern must be centered in each data track. [D.I. 165 at 17-18.] As set forth above, even assuming Cornice's improperly narrow claim construction, this purported "limitation" does not preclude the doctrine of equivalents with respect to the "quadrature" limitation. For those same reasons, there is no basis to preclude equivalents for the ratio limitations. Cornice's argument does not rely on the claim language, but instead words it seeks to insert into the claims.

Moreover, Cornice's cited portions of the specification describe a preferred embodiment that is used with the position measuring system. [Ex. 1 at 4:11-14 ("The ***position measuring system*** requires that one of the four servo bursts of the quadrature servo pattern used must be centered in data track 0.")] This "requirement" is not a limitation on the quadrature pattern, much less the ratio limitations at issue here. Indeed, the purported "limitation" of having a burst centered in the data track has no relationship to the ratio limitations under ***either parties'*** proposed claim construction. [D.I. 143 at 4-

5.] Reading in such a limitation here should be rejected. See Johnson & Johnston Associates Inc. v. R.E. Service Co., 285 F.3d 1046, 1052 (Fed. Cir. 2002).

Cornice's argument is also contradicted by the patent itself. Cornice asserts that the patent requires a "critical feature" of creating a "null" in the center of a data track, to allow track following in the center of the track. [D.I. 165 at 2.] Cornice suggests that it does not obtain the benefits of the patent because its 3.0 GB product does not have this "null" at the track center. [D.I. 165 at 17-18.] The '506 patent, however, states the exact opposite advantage, namely that "track following operation may be used over the ***entire width of a data track***." [Ex. 1 at 2:28-29.] Cornice's attempt to restrict the doctrine of equivalents based on this false reading of the patent should be rejected.

**d. Dr. Messner's Expert Opinions and Testimony Provide Detailed Analyses of Equivalents on an Element by Element Basis**

Finally, Cornice attempts to cast Dr. Messner's opinions regarding equivalents as "conclusory" [D.I. 165 at 18], but this makes no sense in light of the detailed, element by element analysis provided by Dr. Messner.

Cornice only recites a portion of Dr. Messner's opinions regarding the recited ratios, omitting additional analysis and citation to facts that precede and follow Cornice's quoted sections. [Ex. 10 at 3-4.] Even the limited portion quoted by Cornice provides detailed opinions regarding infringement of the ratio limitations under the doctrine of equivalents. [Id. at 3.] Cornice refers to this opinion as "conclusory," but the quoted text spans roughly one half of a page using single line spacing. Cornice also fails to cite further portions of Dr. Messner's opinion, in which Dr. Messner likewise described the functioning of the claimed elements of the '506 patent invention. [Ex. 2 at ¶ 55-58.] These opinions provide specific linking evidence between the recited ratio limitations and corresponding features in the Cornice 3.0 GB product.

The facts here are nothing like Cornice's cited cases spanning pages 19 and 20 of its Brief. [D.I. 165 at 19-20]. In each of these cases cited by Cornice, either an expert

provided virtually no analysis apart from bare conclusions or failed to address one of the elements of the claim, or the evidence of equivalents was directed to a comparison between the patent claim and accused product as a whole, rather than on an element by element basis. These cases have no bearing on Dr. Messner's thorough, element by element analysis of the doctrine of equivalents.

Cornice makes a vague reference to the "hypothetical claim" analysis of Wilson Sporting Goods Co. v. David Geoffrey & Assoc., 904 F.2d 677, 684 (Fed. Cir. 1990).

REDACTED

The question of obviousness is highly factual, and not generally amenable to summary judgment. See, e.g., Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1319-24 (Fed. Cir. 2005). Cornice apparently recognizes this difficulty, and has failed to move for summary judgment on any issue of obviousness. It should not be permitted to limit the doctrine of equivalents based on this highly factual issue.

Cornice attempts to criticize Dr. Messner for not analyzing equivalents under a "function-way-result" test, but there is no requirement for this particular analysis. Warner-Jenkinson, 520 U.S. 17, 40 ("the particular linguistic framework used is less important than whether the test is probative of the essential inquiry: Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?"). Cornice then attempts to apply its own "function-way-result" test that is inconsistent with Messner's opinion and other facts set forth above. These facts supporting equivalents – not Cornice's speculation – must be taken as true on summary judgment. See Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 412 F.3d 1331, 1338 (Fed. Cir. 2005) ("it is elementary that on summary judgment all evidence and inferences are to be drawn in the non-movant's favor.)

---

REDACTED

## V. CONCLUSION

For the reasons stated above, Cornice's Motion should be denied.

Dated: December 16, 2005

FISH & RICHARDSON P.C.

By: */s/ Timothy Devlin*

Timothy Devlin (#4241)
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114
Tel: (302) 652-5070

Roger S. Borovoy (admitted *pro hac vice*)
David M. Barkan (admitted *pro hac vice*)
Shelley K. Mack (admitted *pro hac vice*)
500 Arguello Street
Redwood City, CA 94063-1526
Tel: (650) 839-5070

Brian R. Nester (#3581)
Timothy W. Riffe (admitted *pro hac vice*)
Christian A. Chu (admitted *pro hac vice*)
1425 K Street NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 783-5070

Edmond R. Bannon (admitted *pro hac vice*)
Lewis Hudnell III (admitted *pro hac vice*)
Citigroup Center
153 East 53rd Street, 52nd Floor
New York, NY 10022-4611
Tel: (212) 765-5070

Attorneys for Plaintiff
SEAGATE TECHNOLOGY LLC