IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,

        Plaintiff,

    v.

CORNICE, INC.

        Defendant.

C.A. No. 04-418 (SLR)

REDACTED

**PLAINTIFF SEAGATE TECHNOLOGY LLC'S RESPONSE BRIEF
OPPOSING PARTIAL SUMMARY JUDGMENT [NO. 6]
<u>REGARDING THE INVALIDITY OF U.S. PATENT NO. 5,600,506</u>**

Date: December 16, 2005

FISH & RICHARDSON P.C.
Timothy Devlin (#4241)
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114

Roger S. Borovoy
David M. Barkan
500 Arguello Street, Suite 500
Redwood City, CA 94063-1526

Ruffin B. Cordell
Brian R. Nester
Timothy W. Riffe
Christian Chu
1425 K Street NW, Suite 1100
Washington, D.C. 20005

Edmond R. Bannon
Citigroup Center
153 East 53rd Street, 52nd Floor
New York, NY 10022-4611

Attorneys for Plaintiff
SEAGATE TECHNOLOGY LLC

## TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF PROCEEDINGS ....................................................1

II.  SUMMARY OF ARGUMENT ...................................................................1

III. FACTS ..............................................................................................2

  A.   The '506 Patent Relates to the "Servo Pattern" and
       Related Features of a Disk Drive System ......................................2

  B.   Claim 22 Recites a Disk Having a Novel Combination
       of Features and Meets the Requirements of Section 112...........................3

  C.   Seagate Provided Substantial Evidence of Commercial
       Success as Early as March, 2005 ...................................................5

IV.  ARGUMENT .......................................................................................6

  A.   Legal Standards............................................................................6

  B.   Federal Circuit Case Law Establishes that Claiming
       Individual Components of an Inventive System Is
       Proper......................................................................................7

  C.   Claim 22 Is Fully Described in the '506 Patent.....................................9

  D.   Claim 22 Is Enabled by the '506 Patent Specification ...........................11

  E.   Claim 22 Satisfies the Definiteness Requirement...................................13

  F.   Seagate Timely Notified Cornice of Its Secondary
       Considerations............................................................................15

       1.   Cornice Improperly Attempted to Bring a
            Daubert Motion in Its Summary Judgment Brief .......................18

V.   CONCLUSION....................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AK Steel Corp. v. Sollac,*
344 F.3d 1234 (Fed. Cir. 2003).................................................................6, 11

*All Dental Prodx, LLC v. Advantage Dental Products, Inc.,*
309 F.3d 774 (Fed. Cir. 2002)...........................................................................13

*Allen Engineering Corp. v. Bartell Industrial, Inc.,*
299 F.3d 1336 (Fed. Cir. 2002).........................................................................13

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
314 F.3d 1313 (Fed. Cir. 2003)....................................................................7, 13

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).............................................................................................6

*Atmel Corp. v. Information Storage Devices, Inc.,*
198 F.3d 1374 (Fed. Cir. 1999)...........................................................................7

*Bendix Corp. v. United States,*
600 F.2d 1364 (Ct. Cl. 1979) ..........................................................................7, 8

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)........................................................................................5, 6

*Chiron Corp.,*
363 F.3d at 1253 ..................................................................................................6

*Crown Ops. International, Ltd. v. Solutia Inc.,*
289 F.3d 1367 (Fed. Cir. 2002)...........................................................................6

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993)...........................................................................................17

*Enzo Biochem,*
323 F.3d 956 ........................................................................................................6

*Intertool, Ltd. v. Texar Corp.,*
369 F.3d 1289 (Fed. Cir. 2004)...........................................................................6

*Invitrogen Corp. v. Clontech Laboratoriess, Inc.,*
No. 04-1039, 04-1040, 2005 WL. 3078495 (Fed. Cir. Nov. 18, 2005)...........12

*Johns Hopkins University v. CellPro, Inc.,*
152 F.3d 1342 (Fed. Cir. 1998)...........................................................................6

*LizardTech, Inc. v. Earth Resource Mapping, Inc.,*
424 F.3d 1336 (Fed. Cir. 2005).............................................................9, 10, 11

ii

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Medeco Security Locks, Inc. v. Lock Tech. Corp.,*
199 U.S.P.Q. 519 (S.D.N.Y. 1976)........................................................8, 13

*Noelle v. Lederman,*
355 F.3d 1343 (Fed. Cir. 2004)..............................................................6

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,*
182 F.3d 1298 (Fed. Cir. 1999)..............................................................6

*Rambus Inc. v. Infineon Technologies AG,*
318 F.3d 1081 (Fed. Cir. 2003)...........................................................8, 13

*Solomon v. Kimberly-Clark Corp.,*
216 F.3d 1372 (Fed. Cir. 2000)......................................................14, 15, 16

*Stiftung v. Renishaw PLC,*
945 F.2d 1173 (Fed. Cir. 1991)..............................................7, 8, 9, 10, 13

*Suntiger, Inc. v. Scientific Research Funding Group,*
189 F.3d 1327 (Fed. Cir. 1999).............................................................10

*In re Wright,*
999 F.2d 1557 (Fed. Cir. 1993).........................................................11, 12

### STATUTES

35 U.S.C. § 112........................................................................ passim

Fed. R. Civ. P. 56(c) ....................................................................5

## I.    NATURE AND STAGE OF PROCEEDINGS

In this patent infringement case, Plaintiff Seagate hereby responds to Defendant Cornice's Motion for Summary Judgment [No. 6] of Invalidity of U.S. Patent No. 5,600,506 (the "'506 patent") (Ex. 1).

## II.    SUMMARY OF ARGUMENT

In its Motion, Cornice improperly asserts that claim 22 of the '506 patent is invalid based on different requirements of 35 U.S.C. § 112. The crux of Cornice's motion on all three issues is its assertion that the '506 patent claims must recite "two major elements" of the system described in the specification, namely a disk having certain features and a position generator that provides a position signal. Claim 22 recites the disk, but not a position generator. While Cornice complains that this claim is too broad, it is undisputed that claim 22 recites a combination of features that neither Cornice nor its expert asserts is anticipated by the prior art.

What Cornice ignores in its Motion are numerous Federal Circuit cases establishing that it is proper to claim an individual component of a described system, if that individual component is itself inventive. Claim 22 is directed to such a component. It recites a disk having a novel combination of features, described in explicit detail in six separate Figures and over several columns of text within the '506 patent specification. Contrary to Cornice's argument, claim 22 is fully described and enabled in the specification, and the text of claim 22 clearly delineates its scope to one of ordinary skill in the art. Cornice has not met its burden on summary judgment, particularly given the burden of clear and convincing evidence. Cornice's motion for summary judgment should be denied.

Seagate has also presented sufficient evidence to support a finding of commercial success. Cornice misrepresents the facts by suggesting that it first received notice of this contention in Dr. Messner's expert report of September 19, 2005. On the contrary, Dr. Messner provided a similar opinion in his expert report in the parallel ITC action in

1

*March, 2005.* Both reports outline evidence of commercial success and a nexus between that success and the '506 patent invention. Cornice also deposed Dr. Messner on two separate occasions, after service of each expert report providing his commercial success contentions. Cornice's Motion on this point is essentially an improper <u>Daubert</u> motion, based on incomplete facts and irrelevant case law. Cornice's Motion should be denied.

## III.    FACTS

### A.    The '506 Patent Relates to the "Servo Pattern" and Related Features of a Disk Drive System

A full explanation of the '506 patent technology is set forth in Seagate's Technology Overview, [D.I. 182], and Seagate's claim construction brief regarding the '506 patent, [D.I. 185.] Relevant aspects are set forth here.

The '506 patent relates to the "servo pattern" of a disk drive, which is used to define position on the disk. [Ex. 2 at ¶ 54.][1] The servo pattern and logic help to position a transducer over a desired data track on the surface of the spinning disk. [*Id.* at ¶ 54.] The pattern is arranged within "servo wedges" on the surface of the disk, which extend generally radially like spokes on a wheel. [<u>Id.</u> at ¶ 51.] User data is stored in the larger pie-shaped areas between the servo wedges. [<u>Id.</u> at ¶ 51.] The servo pattern is analogous to a ruler extending radially along the disk surface, crossing each of the data tracks. [Ex. 1 at 11:23-27.] When the disc drive is in operation, the head reads the servo pattern to obtain information regarding the radial position of the head over the disk, and the drive uses this information to determine the head's position.

The '506 patent provided a new type of servo pattern for use with a hard disk drive, as well as a related system and method. The '506 patent claims were never rejected during prosecution for any reason; all claims were allowed on the first Office

---

[1] Unless otherwise indicated, citations to Exhibits in this Brief refer to the Exhibits attached to the co-filed Declaration of Timothy Devlin in Support of Seagate's Response to Defendant Cornice's Motion for Summary Judgment [No. 5] of Non-Infringement of U.S. Patent 5,600,506.

Action. [Ex. 3.] Indeed, despite thorough review of the prior art, neither Cornice nor its expert asserts that the '506 patent claims are anticipated. [Ex. 4 at 22:21-25:6.] More specifically, neither Cornice nor its expert has found *any* prior art reference that even purportedly anticipates *any* claim of the '506 patent. Mr. Dennison testified, "I don't believe there is anything in my experience or the prior art that anticipates the claims of [the '506 patent.]" [Id. at 24:12-24.]

Servo patterns can including a number of different components that help to define position on the surface of the disk. One component provides a "coarse" or "integer" position, and another provides a "fine" or "fractional" position. By way of analogy, the first component works like the "inch" marks on a ruler, while the second component works like the fractional marks – quarter-inch, eighth-inch, etc. The "integer" and "fractional" portions of the servo pattern define radial position on the disc, just as the inch and fraction marks define distance along the ruler. [Ex. 1 at 11:23-27; Ex. 2 at ¶ 58.]

**B.    Claim 22 Recites a Disk Having a Novel Combination of Features and Meets the Requirements of Section 112**

Cornice's Motion primarily relates to claim 22 of the '506 patent. Claim 22 recites the disk itself with the described servo pattern (subdivided below into paragraphs for clarity):

A magnetic disk for use in a sector servo disk drive system,

said disk having a plurality of sectors located on a surface of said magnetic disk, each sector having Z data tracks located between an inner diameter and an outer diameter on said magnetic disk,

a servo band recorded across all said Z data tracks and a gray scale band recorded across all said Z data tracks, said servo band comprising a quadrature servo pattern repeated 0.75*Z times, said gray scale band comprises 1.5*Z consecutively addressed gray scale areas,

where said servo band and said gray scale band coact to define radial positions on said magnetic disk from a fixed reference point in said gray scale band on the surface of said disk.

[Ex. 1 at 22:55-67.]

3

Evidence establishes that this combination of elements is fully described and enabled within the '506 patent specification, and establishes that the claims are clear to one of ordinary skill in the art.

Regarding the written description and enablement requirements, the '506 patent specification describes each element of claim 22, and describes how the recited servo pattern is made and used. For example, the '506 patent teaches:

> Thus by permanently writing, in the preamble area of each sector on the surface of disk 10, the servo band in the described manner and the gray scale band in the described manner, a disk is established that provides data that uniquely identifies any radial location between the outer diameter OD and the inner diameter ID on disk 10.

[Ex. 1 at 6:24-29.]

Similarly, the '506 patent describes how the combination of gray scale band and quadrature pattern cooperate to define radial position on the disk:

> The combination of the recorded servo band employing one of the quadrature servo patterns and gray scale band of sequentially addressed gray scale areas essentially provides a ruler that can be used to measure the radial position of the transducer from a reference point on the surface of the disk.

[Id. at 11:23-27.]

In his report, Dr. Messner analyzes this and other evidence, and provides detailed opinions regarding the written description and enablement requirements. [Ex. 5 at ¶¶ 97-112.] According to Dr. Messner's expert opinion, one skilled in the art would understand that the inventors had possession of the invention recited in claim 22, and would understand how to make and use the invention without undue experimentation. [Id. at ¶¶ 100, 111.]

Similarly, regarding the definiteness requirement, Dr. Messner provides an opinion that one of ordinary skill in the art would understand the boundaries of the claims. [Id. at ¶¶ 113-16.] In particular, Dr. Messner provides evidence that one of ordinary skill in the art would understand that the '506 patent describes a number of

4

inventive aspects or components, and that claim 22 covers one of those components. [Id. at ¶¶ 113-16.]

Additional evidence further establishes that claim 22 satisfies the requirements of Section 112. For example, the patent Examiner was in possession of the '506 patent specification and claims. Rather than rejecting the application under Section 112, the Examiner allowed all the claims, including claim 22, on the first Office Action. [Ex. 3.] Cornice virtually ignores all this evidence. Its arguments regarding invalidity are based on its disregard of applicable case law, and an improper reading of non-relevant cases.

C.     **Seagate Provided Substantial Evidence of Commercial Success as Early as March, 2005**

Cornice's assertion that Seagate failed to provide timely evidence of commercial success is flatly contradicted by the facts. As early as March, 2005, Seagate's expert Dr. Messner provided opinions regarding commercial success in the parallel International Trade Commission investigation involving these same patents and products.

REDACTED

To assert that Cornice was unaware of these ITC opinions for purposes of this litigation is ludicrous. In his original report in the Delaware litigation, Cornice's expert includes rebuttal arguments to Dr. Messner's earlier commercial success opinions from the ITC. [Ex. 12 at 112.] The commercial success opinions in Dr. Messner's rebuttal report in this case provided opinions similar to those from his ITC report. [Ex. 5 at

¶¶ 83-88.] Cornice again had an opportunity to depose Dr. Messner in the Delaware action.

## IV.    ARGUMENT

### A.    Legal Standards

A motion for summary judgment shall be granted only where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment of non-infringement can only be granted "if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (stating that summary judgment is only appropriate when no "reasonable jury could return a verdict for the nonmoving party.") To avoid summary judgment, the nonmoving party simply needs to offer specific facts establishing a genuine issue of material fact for resolution at trial. Celotex, 477 U.S. at 324. A genuine dispute of material fact exists if the factual dispute at issue could affect the outcome of the suit and the nonmoving party presents sufficient specific evidence to support a jury verdict in its favor. Anderson, 477 U.S. at 248.

A patent specification must contain "a written description of the invention." 35 U.S.C. § 112, ¶ 1; see also, e.g., Enzo Biochem, 323 F.3d 956. Whether a patent complies with the written description requirement is a *question of fact*, and must be decided on a case-by-case basis. See, e.g., Noelle v. Lederman, 355 F.3d 1343, 1348-49 (Fed. Cir. 2004); Crown Ops. Int'l, Ltd. v. Solutia Inc., 289 F.3d 1367, 1376 (Fed. Cir. 2002). One seeking to invalidate a claim for failure to satisfy the written description requirement has the burden of establishing by clear and convincing evidence that the requirement was not met. Intertool, Ltd. v. Texar Corp., 369 F.3d 1289, 1294 (Fed. Cir. 2004).

The patent specification must also "enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. § 112, ¶ 1.   The enablement requirement is satisfied if after reading the patent disclosure, one skilled in the art "could practice the invention claimed in the [] patent without undue experimentation." Chiron Corp., 363 F.3d at 1253.  While enablement is a question of law, it is based on underlying factual questions.  See, e.g., Chiron Corp., 363 F.3d at 1253;.  In particular, the question of whether undue experimentation is required to enable the claims is a *factually intensive inquiry.*"  AK Steel, 344 F.3d at 1245.  The party seeking to invalidate a patent based on enablement has the burden of proving by clear and convincing evidence that the patent is invalid.  See Johns Hopkins Univ. v. CellPro, Inc., 152 F.3d 1342, 1359 (Fed. Cir. 1998).

A patent must include claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. Whether the claims of a patent are indefinite is a question of law. Atmel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1378 (Fed. Cir. 1999).  As with other issues of validity, indefiniteness must be proven by clear and convincing evidence. Indeed, the Federal Circuit has noted the difficulty of proving indefiniteness. *"The standard of indefiniteness is somewhat high*; a claim is not indefinite merely because its scope is not ascertainable from the face of the claims." Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1342 (Fed. Cir. 2003).

**B.      Federal Circuit Case Law Establishes that Claiming Individual Components of an Inventive System Is Proper**

Cornice argues that claim 22 of the '506 patent is not enabled or described in the patent, and that claim 22 is indefinite, based on the misguided premise that the every claim the '506 patent must recite "two major elements" required to practice the invention. [Cornice Brief at 4-7.]

Contrary to Cornice's suggestion, the law is well-established that an individual component of an inventive system can be claimed apart from the overall system, if the component itself is inventive. As the Federal Circuit has held:

> It has long been held, and we today reaffirm, that *it is entirely consistent with the claim definiteness requirement of the second paragraph of section 112, to present "subcombination" claims drawn to only one aspect or combination of elements of an invention* that has utility separate and apart from other aspects of the invention. As one of our predecessor courts stated, "it is not necessary that a claim recite each and every element needed for the practical utilization of the claimed subject matter," as it is "entirely appropriate, and consistent with § 112, to present claims to only [one] aspect."

Stiftung v. Renishaw PLC, 945 F.2d 1173, 1181 (Fed. Cir. 1991) (quoting Bendix Corp. v. United States, 600 F.2d 1364, 1369 (Ct. Cl. 1979)).

The facts here are directly on point with the holding in Stiftung. Claim 1 of the '506 patent recites a broader system: "system for measuring the distance of a transducer from a reference point on a disk in a sector servo disk drive system." [Ex. 1 at 20:8-10.] Claim 22 recites an individual, inventive component of the system: "a magnetic disk *for use in a sector servo disk drive system*." [Id. at 22:55-56.] Accordingly, claim 22 recites one component of the overall system described in the '506 patent, specifically a magnetic disk for use in a sector servo disk drive. Stiftung establishes that this type of claim is proper under Section 112. Stiftung, 945 F.2d at 1181.

Other cases similarly hold that claims to components or subparts of a system are proper. See, e.g., Rambus Inc. v. Infineon Technologies AG, 318 F.3d 1081, 1093 (Fed. Cir. 2003) ("the claims need not recite every component necessary to enable operation of a working device"); Bendix Corp. v. United States, 600 F.2d 1364, 1369 (Ct. Cl. 1979) ("it is not necessary that a claim recite each and every element needed for the practical utilization of the claimed subject matter"); Medeco Security Locks, Inc. v. Lock Tech. Corp., 199 U.S.P.Q. 519, 523 (S.D.N.Y. 1976) ("If . . . the novelty should inhere in one

of the component parts of the combination, as well as in the whole, then that individual part of the combination may itself be the subject of a separate patent . . . .").

This case law contradicts the fundamental premise of Cornice's arguments regarding claim 22, that claiming an individual component of the described disk drive system is somehow improper. Claim 22 recites a disk with novel features, while other independent claims recite the system as a whole as well as a related method. [Ex.1 at 20:8-21; 22:55-67; 23:52-24:8.] This is perfectly consistent with Federal Circuit case law. "In one piece of apparatus disclosed as an embodiment of an invention, there may be several inventions." Stiftung, 945 F.2d at 1187. Cornice suggests that claim 22 is somehow too broad, but neither Cornice nor its expert identifies any prior art that would purportedly anticipate claim 22. On the contrary, Cornice's expert admits that there is no anticipatory prior art to claim 22. [Ex. 4 at 23:14-25:6.]

Cornice's disregard for this case law impacts each of Cornice's arguments on claim 22. As set forth below, Cornice's cited cases on each issue are distinguishable, and fail to provide support for summary judgment here.

**C.    Claim 22 Is Fully Described in the '506 Patent**

Cornice improperly contends that the specification does not describe the invention of claim 22 because the claim does not recite a transducer or position generator. [Cornice Brief at 6, 11, 12-18.] Cornice's arguments should be rejected.

There is no dispute that every single element of claim 22 is described in the patent specification. [Ex. 7 at 102:13-103:5.] Claim 22 recites a magnetic disk that can be used in a sector servo disk drive system. The claimed magnetic disk has a novel servo pattern comprising "a servo band recorded across all said Z data tracks and a gray scale band recorded across all said Z data tracks, said servo band comprising a quadrature servo pattern repeated $0.75*Z$ times, said gray scale band comprises $1.5*Z$ consecutively addressed gray scale areas." [Ex. 1 at 22:59-64.] The elements of claim 22 are described

9

in preferred embodiments throughout the specification. [See id. at 3:38-5:10; 11:62-14:34.]

Cornice attacks the language within claim 22 reciting that the servo band and gray scale band "coact to define radial positions" on the disk, relying primarily on the Federal Circuit case of LizardTech, Inc. v. Earth Resource Mapping, Inc., 424 F.3d 1336 (Fed. Cir. 2005). [Cornice Brief at 13-17.] Cornice's reliance is misplaced.

First, the language "coact to define radial positions" on the disk is described separate and apart from the position generator. The specification specifically teaches that the features of the disk create a "ruler" that can by used by other components to measure position:

> The combination of the recorded servo band employing one of the quadrature servo patterns and gray scale band of sequentially addressed gray scale areas essentially provides a ruler that can be used to measure the radial position of the transducer from a reference point on the surface of the disk.

[Ex. 1 at 11:23-27.] As stated in the specification, the disk of claim 22 *"can be used"* in a system that measures the radial position of the transducer from a reference point on the disk's surface. The claimed disk need not perform the function of measuring position by itself. Rather, the claim recites features that can be used for that purpose in an overall system.

Second, LizardTech did not involve a claim to a component of a system, but instead involved a method claim with scope beyond the method described in the specification. LizardTech, 424 F.3d at 1344. A claim at issue in LizardTech was found invalid because the specification only provided one method for creating a product, while the claims recited two separate methods, one commensurate with the specification and the other not. LizardTech, 424 F.3d at 1344.

In this case, there is no method claim broader than the disclosed method. Here the three independent claims recite different categories of inventions: a system, a component, and a method. [Ex.1 at 20:8-21; 22:55-67; 23:52-24:8.] Evidence

10

establishes that the magnetic disk covered by claim 22 is described in the specification, and one of ordinary skill in the art would understand that the inventors of the '506 patent had possession of the recited disk. [Ex. 5 at ¶¶ 111.]   These facts are distinguishable from a broad method claim not supported by the specification.  Claim 22 is proper. Stiftung, 945 F.2d at 1187.

Indeed, LizardTech actually supports Seagate's position.  The Federal Circuit held in that case that the specification need not include examples of every possible use.  "A claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language."  LizardTech, 424 F.3d at 1345.  The specification does not need to spell out every detail of the invention.  Instead, "only enough must be included to convince a person of skill in the art that the inventor possessed the invention."  Id. at 1345 (citations omitted).

Summary judgment regarding written description may be denied where the issue would benefit from a full hearing, or where conflicting evidence and/or expert testimony have been submitted.  See Suntiger, Inc. v. Scientific Research Funding Group, 189 F.3d 1327, 1333-34 (Fed. Cir. 1999).  Cornice has not met its burden of showing that no reasonable jury could find claim 22 valid under the written description requirement, and Cornice's summary judgment motion should be denied.

**D.     Claim 22 Is Enabled by the '506 Patent Specification**

Cornice improperly contends that the specification does not enable one of ordinary skill in the art to practice the invention of claim 22, again because the claim does not recite a transducer or position generator.  [Cornice Brief at 6, 11, 12-18.] Cornice notes that the enablement and written description generally "rise and fall together."  LizardTech, 424 F.3d 1345.  Because claim 22 is fully described in the specification as set forth above, this connection between the two standards establishes

11

that claim 22 is also enabled. Independent evidence regarding enablement confirms this point, and Cornice's summary judgment motion must be denied.

As set forth above, the '506 patent specification describes the manner of making and using the recited disk. [Ex. 1 at 6:24-29; 11:23-27.] Seagate's expert Dr. Messner analyzes this and other evidence, and provides a detailed opinion regarding the enablement requirement. [Ex. 5 at ¶¶ 97-105.] In Dr. Messner's opinion, one skilled in the art would understand how to make and use the invention without undue experimentation. [Id. at ¶ 100.] Based on this evidence, a reasonable jury could find that claim 22 satisfies the enablement requirement.

Cornice relies on cases that are readily distinguishable from the facts here. The LizardTech case has already been distinguished in the previous section. Cornice also seeks to rely on AK Steel Corp. v. Sollac, 344 F.3d 1234 (Fed. Cir. 2003). [Cornice Brief at 16.] In that case, a claim was found invalid because the specification expressly taught away from the claim at issue. Id. at 1244 ("Worse than being silent as to that aspect of the invention, the specification clearly and strongly warns that such an embodiment would not wet well.") Here, there is no "teaching away" from the claimed invention. The '506 patent specification describes how to make and use the recited disk within a servo disk drive system.

Cornice also refers to In re Wright, 999 F.2d 1557 (Fed. Cir. 1993), a case that is inapplicable here. The claims at issue in Wright were directed to a biological vaccines. They attempted to cover vaccines that not only could not be produced at the time of the application's filing, but also vaccines that could not be successfully produced years later, such as an AIDS vaccine. Id. at 1562-64. These facts stand in direct contrast to the present case. Claim 22 recites a magnetic disk that can be used in a system that measures the radial position of the transducer from a reference point on the disk's surface. The inventors described how to achieve this result, and in fact both Seagate and Cornice have practiced the invention. The enablement issue found in In re Wright is not present here.

Cornice's argument is based on the mistaken notion that a patent specification must describe every means of practicing an invention, but this is incorrect. As the Federal Circuit ruled:

> ***Enablement does not require the inventor to foresee every means of implementing an invention*** at pains of losing his patent franchise. Were it otherwise, claimed inventions would not include improved modes of practicing those inventions. Such narrow patent rights would rapidly become worthless as new modes of practicing the invention developed, and the inventor would lose the benefit of the patent bargain.

Invitrogen Corp. v. Clontech Labs., Inc., No. 04-1039, 04-1040, 2005 WL 3078495 (Fed. Cir. Nov. 18, 2005). Thus public policy mandates that the inventor is not required to foresee every manner of implementing his invention. This holding is applicable here. Claim 22 is not invalid because a manner of implementing the magnetic drive of claim 22 is found in the specification; there is no need to foresee every possible implementation as Cornice suggests.

Cornice has not met its burden of showing that no reasonable jury could find claim 22 valid. Cornice's Motion should be denied.

### E.    Claim 22 Satisfies the Definiteness Requirement

Cornice's indefiniteness argument is also without merit. Cornice again attempts to argue that claim 22 is somehow invalid simply because it recites only one of the components of the described disk drive system. Cornice's argument is incorrect, and claim 22 is definite as applicable case law establishes. "It has long been held, and we today reaffirm, that it is entirely consistent with the claim definiteness requirement of the second paragraph of section 112, to present 'subcombination' claims drawn to only one aspect or combination of elements of an invention . . . ." Stiftung v. Renishaw, 945 F.2d 1173, 1181.

Cornice's cited case law does not support summary judgment. The Federal Circuit has repeatedly noted the difficulty of proving a claim invalid for indefiniteness. "***The standard of indefiniteness is somewhat high***; a claim is not indefinite merely

because its scope is not ascertainable from the face of the claims." Amgen Inc. v.
Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1342 (Fed. Cir. 2003); also see All Dental
Prodx, LLC v. Advantage Dental Prods., Inc., 309 F.3d 774, 780 (Fed. Cir. 2002) ("Only
after a thorough attempt to understand the meaning of a claim has failed to resolve
material ambiguities can one conclude that the claim is invalid for indefiniteness.").

　　　　Cornice has put forth a nonsensical argument that the magnetic disk of claim 22
"is not what the named inventors 'regarded as their invention'" simply because the
specification discloses both a magnetic disk and a position generator. [Cornice Brief at
19.] In other words, Cornice argues that because the specification of the '506 patent
discloses two elements, claim 22 is indefinite because it claims only one. As discussed
above, courts have consistently ruled that claiming one element of a larger system is
entirely appropriate. See, e.g., Rambus Inc. v. Infineon Technologies AG, 318 F.3d
1081, 1093 (Fed. Cir. 2003); Stiftung v. Renishaw PLC, 945 F.2d 1173, 1181 (Fed. Cir.
1991); Medeco Security Locks, Inc. v. Lock Tech. Corp., 199 U.S.P.Q. 519, 523
(S.D.N.Y. 1976).

　　　　It is further clear from the '506 patent specification that the invention set forth in
claim 22 is what the patentees regarded as their invention, as the recited disk is fully
disclosed in the specification. [Ex. 1 at at 3:38-5:10; 11:62-14:34.] Evidence establishes
that the information provided in the specification leaves no doubt that one of ordinary
skill would be able to understand what is covered by the claims. [Ex. 5 at ¶¶ 113-16.]
This evidence must be taken as true on summary judgment. See Checkpoint Sys., Inc. v.
All-Tag Sec. S.A., 412 F.3d 1331, 1338 (Fed. Cir. 2005) ("it is elementary that on
summary judgment all evidence and inferences are to be drawn in the non-movant's
favor.)

　　　　Cornice likewise misapplies Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d
1336, 1349 (Fed. Cir. 2002). [Cornice Brief at 19.] As with AK Steel above, the holding
in Allen was based on the fact that the claims contained a limitation directly contradicted

14

by the specification. <u>Allen</u> at 1349. This proposition has no relevance here. Claim 22 does not contain any features contradicted in the specification and one skilled in the art would understand the scope of the claim by reading the claim and the specification. [Ex. 5 at ¶¶ 113-16.]

Furthermore, Cornice's attempt to rely on the deposition testimony of inventor Michael Baum is improper. [Cornice Motion at 19.] The definiteness inquiry is an objective test that focuses on whether the claims adequately notify the public of the patentee's right to exclude. <u>Solomon v. Kimberly-Clark Corp.</u>, 216 F.3d 1372, 1379 (Fed. Cir. 2000). The Federal Circuit has expressly held that it is unacceptable to consider inventor testimony when deciding the issue of indefiniteness. "It is *particularly inappropriate* to consider inventor testimony obtained in the context of litigation in assessing validity under section 112, paragraph 2, in view of the absence of probative value of such testimony." <u>Id.</u> at 1379.

Cornice not has met its burden to show that no reasonable jury could find claim 22 valid. Its Motion should be denied.

### F.    Cornice Received Timely Notification of Seagate's Expert's Commercial Success Opinions

Cornice disingenuously misleads the Court when alleging that Seagate provided no timely disclosure of information regarding objective indicia of non-obviousness such as commercial success.

Contrary to Cornice's assertion, Seagate's expert Dr. Messner provided opinions regarding commercial success of the '506 patent as early as *March, 2005.*


REDACTED


15

REDACTED

83-88.] Cornice deposed

Dr. Messner after each of these reports.

Cornice alleges that it did not have the ability to question any fact witness regarding the documents cited in Dr. Messner's report. [Cornice Brief at 21.] Again, Cornice provides a misleading view of the facts. First, Cornice deposed each of the inventors, who confirmed that the commercially successful products at issue practice the '506 patent, as set forth below. Second, Cornice's complaints regarding a 30(b)(6) witness ignore resolution of a broader discovery dispute between the parties during that time period. During discovery, Cornice offered no one qualified to testify on most topics requested by Seagate regarding the '506 patent issues. Seagate, in an effort to move discovery along, offered a Rule 30(b)(6) witness if Cornice would produce someone qualified to answer the Seagate topics. [See Ex. 8.] Cornice decided not to do so, and now seeks to capitalize on its decision not to provide a qualified witness.

Even without a Rule 30(b)(6) deposition, Cornice possesses the evidence of commercial success cited in Dr. Messner's report. For example, Dr. Messner's report relied on documents of record, including, but not limited to, STX 014842-844, STX 014845-848, and deposition testimony of Seagate witnesses. [Ex. 6 at ¶ 54] Dr. Messner also clearly lays out the basis for his opinion regarding the nexus between the '506 patent invention and the commercial success. [Id. at ¶ 57.] As a result, Cornice had every opportunity to question Dr. Messner on these facts.

In an effort to support its position, Cornice seeks to attack the evidence itself, but its efforts are misplaced on summary judgment. Cornice first argues that the inventors could not confirm whether the products listed in Dr. Messner's report practiced the '506 patent invention, but this assertion is not correct. The first-named inventor Mr. Baum, for example, testified that these product families did utilize the servo pattern described and

16

claimed in the '506 patent. After identifying a number of product families listed in Seagate's ITC Complaint, Mr. Baum testified that they each used the servo pattern described and claimed in the '506 patent (termed the "3/2 quadrature" pattern during Mr. Baum's deposition):

> Q.   Do you know whether they all implement the 3/2 quadrature and the 1 1/2 gray scale?
>
> A.   Yeah, I believe we've got the 3/2 quad pattern in each one of these that are listed here.

[Ex. 9 at 205:11-16, see generally 203:11-205:16.]

While Mr. Baum could not recall exactly which embodiment of the '506 pattern or its position measuring system was used in each product [id. at 205:17-206:3], this does nothing to discount the basic fact that the products do utilize the '506 patent invention.

Similarly, the second named inventor Mr. Touchton also testified that these products use the inventive pattern of the '506 patent:

> Q.   Could you confirm that, for each of those product families, they each used the 3/2 quad pattern?
>
> A.   Aspen does. Durango does. As I recall, the U4 also does. . . . Hilo does. Barracuda 4LP does. Taos does. And I'm pretty certain U4 does . . . .

[Ex. 10 at 246:5-13.] There is simply no basis for Cornice's assertion that Dr. Messner cannot rely on this testimony.

Cornice likewise cites Dr. Messner's own testimony to attack the standard he relied on for his opinion regarding nexus. Again, Cornice mischaracterizes evidence. The particular question cited in Cornice's brief regarding the "standard" used by Dr. Messner related to Dr. Messner's overall opinion on whether the products were commercially successful, and Dr. Messner responded accordingly. [See Ex. 11 at 218:16-219:1.] The question made no mention of the specific "nexus" factor.

17

Moreover, the fact that Cornice even raises these issues demonstrates that its Motion should be denied. These factual disputes are for the jury to decide, based on its review of the evidence and credibility of witnesses. Cornice's attempt to decide these issues on its own should be rejected.

**1.    Cornice Improperly Attempted to Bring a <u>Daubert</u> Motion in Its Summary Judgment Brief**

Cornice even attempts to bring a <u>Daubert</u> motion in the middle of its summary judgment motion. [Cornice Brief at 23-24.] This embedded <u>Daubert</u> motion is improper on summary judgment, and should be rejected.

Even if such a Motion were presented properly, Dr. Messner's report and anticipated testimony meet applicable standards for expert testimony. Federal Rule of Evidence 702 provides the following:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court in <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 580 (1993) addressed Federal Rule of Evidence 702 and provided that "[f]aced with a proffer of expert scientific testimony under Rule 702, the trial judge, pursuant to Rule 104(a), must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue."

There is no legitimate dispute here that Dr. Messner's opinions meet this standard.

REDACTED

18

REDACTED

Cornice's efforts to characterize this as "conclusory" have no merit, and its cited case law is not applicable. The jury should be entitled to weigh the evidence of commercial success, including the evidence of a nexus between the '506 patent invention and that commercial success. Cornice's improper <u>Daubert</u> motion should be denied.

## V.     CONCLUSION

For the reasons stated above, Cornice's motion for partial summary judgment regarding the invalidity of the '506 patent should be denied.

Dated:  December 16, 2005                    FISH & RICHARDSON P.C.


                                        By:   */s/ Timothy Devlin*
                                              Timothy Devlin (#4241)
                                              919 N. Market Street, Suite 1100
                                              Wilmington, DE  19899-1114
                                              Tel: (302) 652-5070

                                              Roger S. Borovoy (admitted *pro hac vice*)
                                              David M. Barkan (admitted *pro hac vice*)
                                              Shelley K. Mack (admitted *pro hac vice*)
                                              500 Arguello Street
                                              Redwood City, CA 94063-1526
                                              Tel: (650) 839-5070

                                              Brian R. Nester (#3581)
                                              Timothy W. Riffe (admitted *pro hac vice*)
                                              Christian A. Chu (admitted *pro hac vice*)
                                              1425 K Street NW, Suite 1100
                                              Washington, D.C.  20005
                                              Tel: (202) 783-5070

                                              Edmond R. Bannon (admitted *pro hac vice*)
                                              Lewis Hudnell III (admitted *pro hac vice*)
                                              Citigroup Center
                                              153 East 53rd Street, 52nd Floor
                                              New York, NY 10022-4611
                                              Tel: (212) 765-5070

                                        Attorneys for Plaintiff
                                        SEAGATE TECHNOLOGY LLC