SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

reportable segment. See Note 10, Sale of Xiotech Corporation. The operating results for Xiotech are included in the Company's consolidated results of operations through the date that Xiotech was sold to New SAC in November 2002 and are included in the "other" category below for fiscal year 2003. The Company has identified its Chief Executive Officer, or CEO, as the Chief Operating Decision Maker. Gross profit from operations is defined as revenue less cost of revenue.

In each of fiscal years 2005, 2004 and 2003, Hewlett-Packard accounted for 18%, 19% and 18% of consolidated revenue, respectively. In fiscal year 2005, Dell accounted for 12% of consolidated revenue. No other customer accounted for more than 10% of consolidated revenues in any year presented.

Long-lived assets consist of property, equipment and leasehold improvements, capital leases, equity investments, goodwill and other intangibles, and other non-current assets as recorded by the Company's operations in each area.

The following tables summarize the Company's operations by business segment:

| | Fiscal Years Ended | | |
| --- | --- | --- | --- |
| | July 1, 2005 | July 2, 2004 | June 27, 2003 |
| | (in millions) | | |
| **Revenue and Gross Profit** | | | |
| Revenue: | | | |
| Disc Drives | $7,553 | $6,224 | $6,464 |
| Other | — | — | 24 |
| Eliminations | | | (2) |
| Consolidated | $7,553 | $6,224 | $6,486 |
| | | | |
| Gross Profit: | | | |
| Disc Drives | $1,673 | $1,459 | $1,715 |
| Other | — | — | 12 |
| Consolidated | $1,673 | $1,459 | $1,727 |
| | | | |
| **Total Assets** | | | |
| Disc Drives | $5,244 | $3,942 | |
| Eliminations | | | |
| Consolidated | $5,244 | $3,942 | |

On a separate basis, in conformity with accounting principles generally accepted in the United States, Xiotech had a net loss of $9 million in fiscal year 2003.

87

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

The following table summarizes the Company's operations by geographic area:

| | Fiscal Years Ended | | |
| | July 1, 2005 | July 2, 2004 | June 27, 2003 |
|---|---|---|---|
| | (in millions) | | |
| Revenue from external customers (1): | | | |
| United States | $2,324 | $1,866 | $2,151 |
| The Netherlands | 1,767 | 1,558 | 1,562 |
| Singapore | 2,976 | 2,319 | 2,137 |
| Other | 486 | 481 | 636 |
| Consolidated | $7,553 | $6,224 | $6,486 |
| Long-lived assets: | | | |
| United States | $ 553 | $ 574 | $ 504 |
| Singapore | 588 | 438 | 287 |
| Thailand | 243 | 142 | 121 |
| Other | 358 | 327 | 323 |
| Consolidated | $1,742 | $1,481 | $1,235 |

(1)   Revenue is attributed to countries based on the shipping location.

## 7. Equity

### Share Capital

The Company's authorized share capital is $13,500 and consists of 1,250,000,000 common shares, par value $0.00001, of which 476,765,764 shares were outstanding as of July 1, 2005 and 100,000,000 preferred shares, par value $0.00001, of which none were issued or outstanding as of July 1, 2005.

*Common shares* —Holders of common shares are entitled to receive dividends when and as declared by the Company's board of directors (the "Board of Directors"). Upon any liquidation, dissolution, or winding up of the Company, after required payments are made to holders of preferred shares, any remaining assets of the Company will be distributed ratably to holders of the preferred and common shares. Holders of shares are entitled to one vote per share on all matters upon which the common shares are entitled to vote, including the election of directors.

*Preferred shares* —The Company is authorized to issue up to a total of 100,000,000 shares of preferred stock in one or more series, without stockholder approval. The Board of Directors is authorized to establish from time to time the number of shares to be included in each series, and to fix the rights, preferences and privileges of the shares of each wholly unissued series and any of its qualifications, limitations or restrictions. The Board of Directors can also increase or decrease the number of shares of a series, but not below the number of shares of that series then outstanding, without any further vote or action by the stockholders.

The Board of Directors may authorize the issuance of preferred stock with voting or conversion rights that could harm the voting power or other rights of the holders of the common stock. The issuance of preferred stock, while providing flexibility in connection with possible acquisitions and other corporate purposes, could, among other things, have the effect of delaying, deferring or preventing a change in control of the Company and might harm the market price of its common stock and the voting and other rights of the holders of common stock. As of July 1, 2005, there were no shares of preferred stock outstanding.

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

## 8. Commitments

*Leases* —The Company leases certain property, facilities and equipment under non-cancelable lease agreements. Land and facility leases expire at various dates through 2027 and contain various provisions for rental adjustments including, in certain cases, a provision based on increases in the Consumer Price Index. All of the leases require the Company to pay property taxes, insurance and normal maintenance costs.

Future minimum lease payments for operating leases with initial or remaining terms of one year or more were as follows at July 1, 2005 (lease payments are shown net of sublease income):

|  | Operating Leases |
| --- | --- |
|  | (in millions) |
| 2006 | $    23 |
| 2007 | 7 |
| 2008 | 7 |
| 2009 | 5 |
| 2010 | 3 |
| Thereafter | 99 |
|  | $    144 |

Total rent expense for all land, facility and equipment operating leases was approximately $19 million, $23 million, and $24 million for fiscal years 2005, 2004 and 2003, respectively. Total sublease rental income for fiscal years 2005, 2004 and 2003 was $6 million, $6 million, and $8 million, respectively. The Company subleases a portion of its facilities that it considers to be in excess of current requirements. Total future lease income to be recognized for the Company's existing subleases is approximately $12 million.

*Capital Expenditures* —The Company's commitments for construction of manufacturing facilities and equipment approximated $267 million at July 1, 2005.

## 9. Legal, Environmental, and Other Contingencies

### Intellectual Property Litigation

*Convolve, Inc. and Massachusetts Institute of Technology ("MIT") v. Seagate Technology LLC, et al.*   Between 1998 and 1999, Convolve, Inc., a small privately held technology consulting firm founded by an MIT Ph.D., engaged in discussions with Seagate Technology, Inc. with respect to the potential license of technology that Convolve claimed to own. During that period, the parties entered into non-disclosure agreements. We declined Convolve's offer of a license in late 1999. On July 13, 2000, Convolve and MIT filed suit against Compaq Computer Corporation and us in the U.S. District Court for the Southern District of New York, alleging patent infringement, misappropriation of trade secrets, breach of contract, tortious interference with contract and fraud relating to Convolve and MIT's Input Shaping ® and Convolve's Quick and Quiet ™ technology. The plaintiffs claim their technology is incorporated in our sound barrier technology, which was publicly announced on June 6, 2000. The complaint seeks injunctive relief, $800 million in compensatory damages and unspecified punitive damages. We answered the complaint on August 2, 2000 and filed counterclaims for declaratory judgment that two Convolve/MIT patents are invalid and not infringed and that we own any intellectual property based on the information that we disclosed to Convolve. The court denied plaintiffs' motion for expedited discovery and ordered plaintiffs to identify their trade secrets to defendants before discovery could begin. Convolve served a trade secrets disclosure on August 4, 2000, and we filed a motion challenging the disclosure statement. On May 3, 2001, the court appointed a special master to review the trade secret issues. The special

89

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

master resigned on June 5, 2001, and the court appointed another special master on July 26, 2001. After a hearing on our motion challenging the trade secrets disclosure on September 21, 2001, the special master issued a report and recommendation to the court that the trade secret list was insufficient. Convolve revised the trade secret list, and the court entered an order on January 1, 2002, accepting the special master's recommendation that this trade secret list was adequate. On November 6, 2001, the USPTO issued US Patent No. 6,314,473 to Convolve. Convolve filed an amended complaint on January 16, 2002, alleging defendants' infringement of this patent, and we answered and filed counterclaims on February 8, 2002. Discovery is in process. On July 26, 2002, we filed a Rule 11 motion challenging the adequacy of plaintiffs' pre-filing investigation on the first two patents alleged in the complaint and seeking dismissal of plaintiffs' claims related to these patents and reimbursement of attorney's fees. The court denied our motion on May 23, 2003. Briefing on claims construction issues has been completed and a claims construction (Markman) hearing has been requested. No trial date has been set. We believe that the claims are without merit, and we intend to defend against them vigorously. On May 6, 2003, the USPTO issued to Convolve U.S. Patent No. 6,560,658 B2, entitled "Data Storage Device with Quick and Quiet Modes." Convolve has indicated that it will seek leave of the court to add this patent to the lawsuit. This latest patent is a continuation of a patent currently in the lawsuit (U.S. Patent No. 6,314,473). We similarly believe any claims that may relate to this continuation patent would be without merit, regardless of whether such claims were added to the ongoing litigation or asserted against us in a separate lawsuit. Judge John Martin, who was assigned this case, announced his retirement from the federal bench. The case was reassigned to Judge George B. Daniels. On October 14, 2003, the Special Master resigned from the case due to Convolve's claim that he had a conflict of interest. Magistrate Judge James C. Francis IV was appointed to handle all discovery matters. Plaintiffs have indicated that they will dismiss claims regarding U.S. Patent No. 5,638,267 from the case. The claims construction hearing on U.S. Patent Nos. 4,916,635 and 6,314,473 was held on March 30 and 31, 2004. We await the court's order.

*Shao Tong, et al. v. Seagate International (Wuxi) Co., Ltd .*   In July 2002, we were sued in the People's Court of Nanjing City, China, by an individual, Shao Tong, and a private Chinese company, Nanjing Yisike Network Safety Technique Co., Ltd. The complaint alleged that two of our personal storage disc drive products infringe Chinese patent number ZL941111461.9, which prevents the corruption of systems data stored on disc drives. The suit, which sought to stop us from manufacturing the two products and claimed immaterial monetary damages, was dismissed by the court on procedural grounds on November 29, 2002. On December 3, 2002, the plaintiffs served us with notice that they had refiled the lawsuit. The new complaint contains identical infringement claims against the same disc drive products, claims immaterial monetary damages and attorney's fees and requests injunctive relief and a recall of the products from the Chinese market. Manufacture of the accused products ceased in May 2003. At a hearing on March 10, 2003, the court referred the matter to an independent technical advisory board for a report on the application of the patent claims to the two products. On June 10, 2003, we presented our non-infringement case to the technical panel. The panel issued a technical advisory report in September 2003, issued an order that our products do not infringe the patent and rejected plaintiffs' lawsuit. Plaintiffs filed an appeal with the Jiangsu High Court, and we filed our opposition brief on January 21, 2004. The PRC Patent Reexamination Board declared patent ZL94111461.9 invalid on March 28, 2004. The patentee has three months to appeal the PRB's decision. The Jiangsu High Court stayed the appeal on the infringement case pending a final judgment on patent invalidity. On June 22, 2004, Shao Tong filed a lawsuit in the Beijing Intermediate People's Court against the PRC PRB challenging its patent invalidity decision. On November 29, 2004, the court affirmed the decision of patent invalidity. In December 2004, Shao Tong appealed the decision to the Beijing High People's court, the highest appellate court. On November 29, 2004, the court affirmed the decision of patent invalidity. In December 2004, Shao Tong appealed the decision to the Beijing High People's court, the highest appellate court, and a hearing was held June 22, 2005. We await the court's order. We believe the claims are without merit, and we intend to defend against them vigorously.

90

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

*Read-Rite Corporation* —In order to clarify our rights under a Patent Cross-License Agreement between Seagate Technology, Inc. and Read-Rite Corporation, we filed a declaratory judgment action on May 7, 2003 in the Superior Court of California, County of Santa Clara, seeking a declaration that we are entitled to a cross-license, effective as of November 22, 2000, under terms substantially identical to those contained in the Patent Cross License Agreement. On June 11, 2003, Read-Rite Corporation answered the complaint putting forward a general denial and asserting various affirmative defenses. On June 17, 2003, Read-Rite Corporation filed a voluntary petition for bankruptcy under Chapter 7 of the U.S. Bankruptcy Code. Upon notice, our declaratory judgment action has been stayed. On July 23, 2003, the U.S. Bankruptcy Court approved Western Digital Corporation's bid to acquire the assets of Read-Rite Corporation, including intellectual property that was the subject of Read-Rite's dispute with us, in a transaction that closed on July 31, 2003.

In the Bankruptcy Court, we objected to the Chapter 7 Trustee's assumption and assignment to Western Digital of the Patent Cross-License Agreement, and the Trustee ultimately rejected the Agreement. On November 14, 2003, the Bankruptcy Trustee made a motion, continued from time to time, to assume or reject certain Read-Rite executory contracts, rejecting the Patent Cross-License Agreement. On November 12, 2004, we filed our election to retain the benefits of the Patent Cross-License Agreement to the extent permitted by Section 365 (n) of the U.S. Bankruptcy Code. The Chapter 7 Trustee and Western Digital opposed our election to retain the benefits of the license. We have since reached agreement with the Bankruptcy Trustee, subject to Bankruptcy Court approval, to allow us to retain the benefits of the Patent Cross-License in exchange for us withdrawing our proof of claim against the bankruptcy estate. Western Digital objected to the settlement. On July 7, 2005, the Bankruptcy Trustee filed a motion to approve settlement of all bankruptcy disputes with Western Digital and indicated that he no longer supports the agreement we reached with him. Pursuant to this motion, the Bankruptcy Trustee seeks approval to appoint Western Digital as the estate's attorney in fact involving our election to retain the benefits of the Patent Cross-License Agreement. The Bankruptcy trustee withdrew his motion to approve the Seagate settlement. At a hearing on July 27, 2005, the Bankruptcy Court approved the Western Digital settlement and set a hearing for September 28, 2005 on our 365(n) election to retain the benefits of the Patent Cross-License Agreement.

## Securities and Exchange Commission's Request for Information

In October 2003, we received from the Securities and Exchange Commission a request for all third-party research analyst reports regarding Seagate Technology published during the period commencing January 1, 2000 through August 30, 2003. By early December 2003 we had provided all information requested by the SEC. We believe their request was made as a result of allegations of a former employee who claimed that we terminated him in violation of the Minnesota Whistleblower Act for challenging certain financial disclosures. We, and the former employee entered into a court-mediated settlement of the employee claims. The financial terms of the settlement are confidential but were not material to us. Nothing has come to our attention during this process that leads us to believe that our financial disclosures were not complete and appropriate.

## Environmental Matters

The Company's operations inside and outside the United States are subject to laws and regulations relating to protection of the environment, including those governing the discharge of pollutants into the air, soil and water, the management and disposal of hazardous substances and wastes and clean-up of contaminated sites. Contaminants have been detected at some of the Company's former sites, principally in connection with historical operations. In addition, the Company has been named as a potentially responsible party at several superfund sites. Investigative activities have taken place at all sites of known contamination. One former site is under a Consent Order by the U.S. Environmental Protection Agency. The extent of the contamination at this site has been investigated and defined and remediation is underway. The Company is indemnified by a third party for

91

Table of Contents

## SEAGATE TECHNOLOGY
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

a portion of the costs it may incur in the clean-up of contamination at most sites. In the opinion of management, including internal counsel, the probability is remote that the losses to the Company arising from these environmental matters would be material to the Company's financial position, cash flows or results of operations.

**Other Matters**

We are involved in a number of other judicial and administrative proceedings incidental to our business, and we may be involved in various legal proceedings arising in the normal course of our business in the future. Although occasional adverse decisions or settlements may occur, we believe that the final disposition of such matters will not have a material adverse effect on our financial position or results of operations.

## 10. Sale of Xiotech Corporation

On November 4, 2002, the Company sold Xiotech Corporation, the wholly-owned indirect subsidiary that operated the Company's storage area networks business, to New SAC. New SAC in turn sold 51% of Xiotech to a third party in a transaction in which Xiotech sold newly issued shares to this third party. As a result, New SAC has retained an interest of less than 20% of Xiotech.

In consideration of the Company's sale of Xiotech to New SAC, the Company received a $32 million promissory note from New SAC. The amount of this promissory note was equal to the estimated fair value of Xiotech as of the date of the sale, net of intercompany indebtedness. Immediately after the sale of Xiotech to New SAC, the Company made an in-kind pro rata distribution of the entire promissory note to the holders of its then-outstanding shares, including New SAC, which at the time owned approximately 99.4% of its outstanding shares. That portion of the note distributed back to New SAC was cancelled, and New SAC immediately paid off the remaining 0.6% of the promissory note held by the Company's minority shareholders. As a result of the sale of Xiotech, the Company no longer consolidates Xiotech's operations with its operations.

## 11. Guarantees

**Indemnifications to Officers and Directors**

We have entered into indemnification agreement, a form of which is incorporated by reference in the exhibits of this report, with the members of our Board of Directors to indemnify them to the extent permitted by law against any and all liabilities, costs, expenses, amounts paid in settlement and damages incurred by the directors as a result of any lawsuit, or any judicial, administrative or investigative proceeding in which the directors are sued as a result of their service as members of our Board of Directors.

**Intellectual Property Indemnification Obligations**

The Company has entered into agreements with customers and suppliers that include limited intellectual property indemnification obligations that are customary in the industry. These guarantees generally require the Company to compensate the other party for certain damages and costs incurred as a result of third party intellectual property claims arising from these transactions. The nature of the intellectual property indemnification obligations prevents the Company from making a reasonable estimate of the maximum potential amount it could be required to pay to its customers and suppliers. Historically, the Company has not made any significant indemnification payments under such agreements and no amount has been accrued in the accompanying consolidated financial statements with respect to these indemnification obligations.

**Product Warranty**

The Company estimates probable product warranty costs at the time revenue is recognized. The Company generally warrants its products for a period of one to five years. Effective June 1, 2004, we extended our standard

92

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

warranty from one year to five years on all internal desktop and notebook disc drives shipped through the distribution and retail channels. The Company uses estimated repair or replacement costs and uses statistical modeling to estimate product return rates in order to determine its warranty obligation. Changes in the Company's product warranty liability during the fiscal years ended July 1, 2005 and July 2, 2004 were as follows:

|  | Fiscal Year Ended July 1, 2005 | Fiscal Year Ended July 2, 2004 |
|---|---|---|
|  | (In millions) | |
| Balance, beginning of period | $ 125 | $ 134 |
| Warranties issued | 147 | 69 |
| Repairs and replacements | (113) | (143) |
| Changes in liability for pre-existing warranties, including expirations | 84 | 65 |
| Balance, end of period | $ 243 | $ 125 |

The Company offers extended warranties on certain of its products. Deferred revenue in relation to extended warranties has not been material to date.

## 12. Related Party Transactions

### Affiliate Transactions

Historically, the Company has provided substantial services to other affiliated companies. Upon the closing of the stock purchase agreement by New SAC, these services continued to be provided by the Company through New SAC. The services provided generally include general management, treasury, tax, financial reporting, benefits administration, insurance, information technology, legal, accounts payable and receivable and credit functions, among others. The Company charged for these services through corporate expense allocations. The amount of corporate expense allocations depended upon the total amount of allocable costs incurred by the Company on behalf of the affiliated company less amounts charged as specified cost or expense rather than by allocation. Such costs have been proportionately allocated to the affiliated companies based on detailed inquiries and estimates of time incurred by the Company's corporate marketing and general administrative departmental managers. Management believes that the allocations charged to other affiliated companies were reasonable. Allocations charged to other affiliated companies' marketing and administrative expenses for fiscal year 2005 were not material. Allocations charged to other affiliated companies' marketing and administrative expenses for fiscal years 2004 and 2003 were approximately $2 million and $4 million, respectively. Xiotech Corporation and Certance were affiliates of Seagate Technology. The Company recorded revenue from Xiotech of $7 million in fiscal year 2005 and recorded revenue from Certance of $2 million for the period from July 3, 2004 through January 2005, at which time it was sold to a third party. The Company recorded revenue from Xiotech and Certance of $8 million and $3 million in fiscal year 2004 and $23 million and $5 million in fiscal year 2003, respectively. There were no amounts receivable from affiliated companies at July 1, 2005. The amounts receivable from Xiotech and Certance were $1 million from each at July 2, 2004. Purchases and sales to other affiliated companies were not material for any of the periods presented.

Certain members of our board of directors are also on the boards of directors of Microsoft Corporation, Flextronics International Ltd. and United Parcel Service, Inc. The Company sells disc drives to Microsoft, certain subcontractors to Microsoft and Flextronics for use in their products. The Company recorded net revenue of $181 million, $150 million and $146 million in fiscal years 2005, 2004 and 2003, respectively, for sales to Microsoft

93

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

and Microsoft subcontractors, including Flextronics. With respect to such sales, at July 1, 2005 and July 2, 2004, the Company had accounts receivable of $37 million and $26 million, respectively and accounts payable of $8 million and $7 million, respectively. The Company made payments for freight services to United Parcel Service of $115 million, $114 million and $120 million in fiscal years 2005, 2004 and 2003, respectively. At July 1, 2005 and July 2, 2004, the Company had accounts payable to United Parcel Service of $18 million and $10 million, respectively.

Another member of our board of directors was also a director of E2open, Inc. through August 10, 2004. The Company made payments totaling $2 million from E2open for the period from July 3, 2004 to August 10, 2004 and $2 million and $1 million for fiscal years 2004 and 2003, respectively. At both July 1, 2005 and July 2, 2004, the Company had no outstanding accounts payable to E2open, Inc. In addition, the Company increased its strategic investment in E2open, Inc. by $7 million in fiscal year 2005.

A former member of our board of directors who became Chairman and Chief Executive Officer of Motorola, Inc. on January 5, 2004, resigned from the Company's board of directors on October 28, 2004. The Company recorded revenue of $16 million from sales to Motorola, Inc. for the period from January 5, 2004 to July 2, 2004 and $26 million for the period from July 3, 2004 to October 28, 2004. The Company had accounts receivable of $4 million from Motorola at July 2, 2004.

Another individual who has been a member of our board of directors since April 29, 2004 is also a director of LSI Logic Corp. The Company recorded revenue of $36 million and $3 million from sales to LSI Logic for fiscal year 2005 and the period from April 29, 2004 to July 2, 2004, respectively. The Company had accounts receivable of $3 million and $5 million from LSI Logic at July 1, 2005 and July 2, 2004, respectively. The Company also made payments to LSI Logic of $148 million and $18 million in fiscal years 2005 and 2004, respectively, related to purchases of various components. At July 1, 2005 and July 2, 2004, the Company had accounts payable to LSI Logic of $46 million and $17 million, respectively.

Another member of our board of directors became a director of Lenovo Group Limited on May 17, 2005. The Company recorded revenue of $29 million from sales to Lenovo Group Limited and its subcontractors for the period from May 17, 2005 to July 1, 2005. At July 1, 2005, the Company had accounts receivable of $33 million from Lenovo Group Limited and its subcontractors.

### Executive Officer Receivables

At July 1, 2005, amounts receivable from one executive officer totaled $0.3 million. This loan was made during fiscal year 2001 and bears interest at 8% per year and is due in lump sum payments, including unpaid interest, in fiscal year 2006. Under the terms of this loan, certain principal amounts and all accrued and unpaid interest will be forgiven if this executive officer remains employed for a specified period of time. In the periods in which this executive officer fulfills his employment obligations, the amount of principal and interest, which is forgiven ratably over his required employment term, is charged to compensation expense. At July 2, 2004, amounts receivable from two officers totaled $0.7 million.

### Dividends to New SAC

During fiscal year 2005, pursuant to its quarterly dividend policy, the Company paid dividends to its shareholders aggregating approximately $122 million, or $0.26 per share. Of the $122 million paid, New SAC received approximately $60 million. New SAC in turn distributed the $60 million it received to its ordinary shareholders, including approximately $10 million paid to officers and employees of the Company who held ordinary shares of New SAC.

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

During fiscal year 2004, pursuant to its quarterly dividend policy, the Company paid dividends to its shareholders aggregating approximately $90 million. Of the $90 million paid, New SAC received approximately $57 million. New SAC in turn distributed the $57 million it received to its ordinary shareholders, including approximately $11 million paid to officers and employees of the Company who held ordinary shares of New SAC.

In February 2003 and May 2003, pursuant to its quarterly dividend policy, the Company paid dividends to its shareholders aggregating approximately $26 million. Of the $26 million paid, New SAC received approximately $21 million. New SAC in turn distributed the $21 million it received to its ordinary shareholders, including approximately $5 million paid to officers and employees of the Company who held ordinary shares of New SAC.

## 13. Condensed Consolidating Financial Information

On May 13, 2002, Seagate Technology HDD Holdings, or HDD, issued $400 million in aggregate principal amount of 8% senior notes due 2009. HDD is the Company's wholly-owned direct subsidiary, and the Company has guaranteed HDD's obligations under the 8% senior notes, on a joint and several, full and unconditional basis. The following tables present parent guarantor, subsidiary issuer and combined non-guarantors condensed consolidating balance sheets of the Company and its subsidiaries at July 1, 2005 and July 2, 2004 and the condensed consolidating results of operations and cash flows for the fiscal years ended July 1, 2005, July 2, 2004 and June 27, 2003. The information classifies the Company's subsidiaries into Seagate Technology-parent company guarantor, HDD-subsidiary issuer, and the combined non-guarantors based upon the classification of those subsidiaries under the terms of the 8% senior notes. The Company is restricted in its ability to obtain funds from its subsidiaries by dividend or loan under both the indenture governing the 8% senior notes and the credit agreement governing the senior secured credit facilities. Under each of these instruments, dividends paid by HDD or its restricted subsidiaries would constitute restricted payments, and loans between the Company and HDD or its restricted subsidiaries would constitute affiliate transactions.

95

Table of Contents

**SEAGATE TECHNOLOGY**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)**

**Consolidating Balance Sheet**

**July 1, 2005**
**(in millions)**

| | Seagate Technology Parent Company Guarantor | HDD Subsidiary Issuer | Combined Non-Guarantors | Eliminations | Seagate Technology Consolidated |
|---|---|---|---|---|---|
| Cash and cash equivalents | $ 9 | $ — | $ 737 | $ — | $ 746 |
| Short-term investments | — | — | 1,090 | — | 1,090 |
| Accounts receivable, net | — | — | 1,094 | — | 1,094 |
| Inventories | — | — | 431 | — | 431 |
| Intercompany loan receivable | — | 224 | — | (224) | — |
| Other current assets | — | — | 141 | — | 141 |
| Total Current Assets | 9 | 224 | 3,493 | (224) | 3,502 |
| Property, equipment and leasehold improvements, net | — | — | 1,529 | — | 1,529 |
| Equity investment in HDD | 2,536 | — | — | (2,536) | — |
| Equity investments in Non-Guarantors | — | 2,952 | — | (2,952) | — |
| Other assets | — | 7 | 206 | — | 213 |
| Total Assets | $ 2,545 | $ 3,183 | $ 5,228 | $ (5,712) | $ 5,244 |
| Accounts payable | $ — | $ — | $ 1,108 | $ — | $ 1,108 |
| Accrued employee compensation | — | — | 266 | — | 266 |
| Accrued expenses | — | 4 | 352 | — | 356 |
| Accrued income taxes | — | — | 46 | — | 46 |
| Intercompany loan payable | — | — | 224 | (224) | — |
| Current portion of long-term debt | — | 3 | 1 | — | 4 |
| Total Current Liabilities | — | 7 | 1,997 | (224) | 1,780 |
| Other liabilities | 4 | — | 183 | — | 187 |
| Long-term debt, less current portion | — | 640 | 96 | — | 736 |
| Total Liabilities | 4 | 647 | 2,276 | (224) | 2,703 |
| Shareholders' Equity | 2,541 | 2,536 | 2,952 | (5,488) | 2,541 |
| Total Liabilities and Shareholders' Equity | $ 2,545 | $ 3,183 | $ 5,228 | $ (5,712) | $ 5,244 |

96

Table of Contents

## SEAGATE TECHNOLOGY
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)
#### Consolidating Balance Sheet
July 2, 2004
(in millions)

| | Seagate Technology Parent Company Guarantor | HDD Subsidiary Issuer | Combined Non-Guarantors | Eliminations | Seagate Technology Consolidated |
|---|---|---|---|---|---|
| Cash and cash equivalents | $ 14 | $ — | $ 408 | $ — | $ 422 |
| Short-term investments | — | — | 761 | — | 761 |
| Accounts receivable, net | — | — | 690 | — | 690 |
| Affiliate accounts receivable | — | — | 1 | — | 1 |
| Intercompany receivable | — | — | 4 | (4) | — |
| Inventories | — | — | 449 | — | 449 |
| Intercompany loan receivable | — | 292 | — | (292) | — |
| Other current assets | — | — | 138 | — | 138 |
| **Total Current Assets** | 14 | 292 | 2,451 | (296) | 2,461 |
| Property, equipment and leasehold improvements, net | — | — | 1,301 | — | 1,301 |
| Equity investment in HDD | 1,842 | — | — | (1,842) | — |
| Equity investments in Non-Guarantors | — | 2,195 | — | (2,195) | — |
| Other assets | — | 9 | 171 | — | 180 |
| **Total Assets** | $ 1,856 | $ 2,496 | $ 3,923 | $ (4,333) | $ 3,942 |
| Accounts payable | $ — | $ — | $ 740 | $ — | $ 740 |
| Intercompany payable | — | 4 | — | (4) | — |
| Accrued employee compensation | — | — | 141 | — | 141 |
| Accrued expenses | — | 6 | 309 | — | 315 |
| Accrued income taxes | — | — | 48 | — | 48 |
| Intercompany loan payable | — | — | 292 | (292) | — |
| Current portion of long-term debt | — | 2 | 2 | — | 4 |
| **Total Current Liabilities** | — | 12 | 1,532 | (296) | 1,248 |
| Other liabilities | 1 | — | 99 | — | 100 |
| Long-term debt, less current portion | — | 642 | 97 | — | 739 |
| **Total Liabilities** | 1 | 654 | 1,728 | (296) | 2,087 |
| Shareholders' Equity | 1,855 | 1,842 | 2,195 | (4,037) | 1,855 |
| **Total Liabilities and Shareholders' Equity** | $ 1,856 | $ 2,496 | $ 3,923 | $ (4,333) | $ 3,942 |

97

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

### Consolidating Statement of Operations
### Fiscal Year Ended July 1, 2005
### (in millions)

| | Seagate Technology Parent Company Guarantor | HDD Subsidiary Issuer | Combined Non-Guarantors | Eliminations | Seagate Technology Consolidated |
|---|---|---|---|---|---|
| Revenue | $ — | $ — | $ 7,553 | $ — | $ 7,553 |
| Cost of revenue | — | — | 5,880 | — | 5,880 |
| Product development | — | — | 645 | — | 645 |
| Marketing and administrative | — | — | 306 | — | 306 |
| Restructuring | — | — | — | — | — |
| Total operating expenses | — | — | 6,831 | — | 6,831 |
| Income from operations | — | — | 722 | — | 722 |
| Interest income | — | 8 | 36 | (8) | 36 |
| Interest expense | — | (42) | (14) | 8 | (48) |
| Equity in income of HDD | 707 | — | — | (707) | — |
| Equity in income of Non-Guarantors | — | 741 | — | (741) | — |
| Other, net | — | — | 22 | — | 22 |
| Other income (expense), net | 707 | 707 | 44 | (1,448) | 10 |
| Income before income taxes | 707 | 707 | 766 | (1,448) | 732 |
| Provision for income taxes | — | — | 25 | — | 25 |
| Net income | $ 707 | $ 707 | $ 741 | $ (1,448) | $ 707 |

98

Table of Contents

# SEAGATE TECHNOLOGY
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

### Consolidating Statement of Cash Flows
### Fiscal Year Ended July 1, 2005
### (in millions)

| | Seagate Technology Parent Company Guarantor | HDD Subsidiary Issuer | Combined Non-Guarantors | Eliminations | Seagate Technology Consolidated |
|---|---|---|---|---|---|
| Ne Net Income | $ 707 | $ 707 | $ 741 | $ (1,448) | $ 707 |
| Adjustments to reconcile net income to net cash from operating activities: | | | | | |
| Depreciation and amortization | — | — | 466 | — | 466 |
| Equity in income of HDD | (707) | — | — | 707 | — |
| Equity in income of Non-Guarantors | — | (741) | — | 741 | — |
| Other non-cash operating activities, net | — | — | 19 | — | 19 |
| Changes in operating assets and liabilities, net | — | (7) | 243 | — | 236 |
| Net cash provided by (used in) operating activities | — | (41) | 1,469 | — | 1,428 |
| **Investing Activities** | | | | | |
| Acquisition of property, equipment and leasehold improvements | — | — | (691) | — | (691) |
| Purchase of short-term investments | — | — | (4,796) | — | (4,796) |
| Maturities and sales of short-term investments | — | — | 4,465 | — | 4,465 |
| Other investing activities, net | — | 2 | (49) | — | (47) |
| Net cash provided by ( used in) investing activities | — | 2 | (1,071) | — | (1,069) |
| **Financing Activities** | | | | | |
| Repayment of long-term debt | — | (2) | (1) | — | (3) |
| Issuance of common shares for employee stock plans | 90 | — | — | — | 90 |
| Loan from HDD to Non-Guarantor | — | (1) | 1 | — | — |
| Loan repayment from Non-Guarantor to HDD | — | 70 | (70) | — | — |
| Distribution from HDD to Parent | 37 | (37) | — | — | — |
| Investment by Parent in HDD | (10) | 10 | — | — | — |
| Dividends to shareholders | (122) | — | — | — | (122) |
| Net cash provided by (used in) financing activities | (5) | 40 | (70) | — | (35) |
| Increase (decrease) in cash and cash equivalents | (5) | — | 329 | — | 324 |
| Cash and cash equivalents at the beginning of the period | 14 | — | 408 | — | 422 |
| Cash and cash equivalents at the end of the Period | $ 9 | $ — | $ 737 | $ — | $ 746 |

99

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

Consolidating Statement of Operations

Fiscal Year Ended July 2, 2004

(in millions)

| | Seagate Technology Parent Company Guarantor | HDD Subsidiary Issuer | Combined Non-Guarantors | Eliminations | Seagate Technology Consolidated |
|---|---|---|---|---|---|
| Revenue | $ — | $ — | $ 6,224 | $ — | $ 6,224 |
| Cost of revenue | — | — | 4,765 | — | 4,765 |
| Product development | 2 | — | 666 | — | 666 |
| Marketing and administrative | 2 | — | 288 | — | 290 |
| Restructuring | — | — | 59 | — | 59 |
| Total operating expenses | 2 | — | 5,778 | — | 5,780 |
| Income (loss) from operations | (2) | — | 446 | — | 444 |
| Interest income | — | 4 | 17 | (4) | 17 |
| Interest expense | — | (41) | (8) | 4 | (45) |
| Equity in income of HDD | 531 | — | — | (531) | — |
| Equity in income of Non-Guarantors | — | 568 | — | (568) | — |
| Other, net | — | — | 12 | — | 12 |
| Other income (expense), net | 531 | 531 | 21 | (1,099) | (16) |
| Income before income taxes | 529 | 531 | 467 | (1,099) | 428 |
| Benefit from income taxes | — | — | (101) | — | (101) |
| Net income | $ 529 | $ 531 | $ 568 | $ (1,099) | $ 529 |

100

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

Consolidating Statement of Cash Flows

Fiscal Year Ended July 2, 2004
(in millions)

| | Seagate Technology Parent Company Guarantor | HDD Subsidiary Issuer | Combined Non-Guarantors | Eliminations | Seagate Technology Consolidated |
|---|---|---|---|---|---|
| Net Income | $ 529 | $ 531 | $ 568 | $ (1,099) | $ 529 |
| Adjustments to reconcile net income to net cash from operating activities: | | | | | |
| Depreciation and amortization | — | — | 422 | — | 422 |
| VERITAS tax indemnification | — | — | (125) | — | (125) |
| Equity in income of HDD | (531) | — | — | 531 | — |
| Equity in income (loss) of Non-Guarantors | — | (568) | — | 568 | — |
| Other non-cash operating activities, net | — | — | 17 | — | 17 |
| Changes in operating assets and liabilities, net | (14) | (1) | (193) | — | (208) |
| Net cash provided by (used in) operating activities | (16) | (38) | 689 | — | 635 |
| Investing Activities | | | | | |
| Acquisition of property, equipment and leasehold improvements | — | — | (605) | — | (605) |
| Purchase of short-term investments | — | — | (4,143) | — | (4,143) |
| Maturities and sales of short-term investments | — | — | 3,822 | — | 3,822 |
| Other investing activities, net | — | 3 | (39) | — | (36) |
| Net cash used in investing activities | — | 3 | (965) | — | (962) |
| Financing Activities | | | | | |
| Repayment of long-term debt | — | (4) | (2) | — | (6) |
| Issuance of common shares for employee stock plans | 96 | — | — | — | 96 |
| Loan from HDD to Non-Guarantor | — | (13) | 13 | — | — |
| Loan repayment from Non-Guarantor to HDD | — | 31 | (31) | — | — |
| Investment by Parent in HDD | (21) | 21 | — | — | — |
| Distribution to shareholders | (90) | — | — | — | (90) |
| Net cash provided by (used in) financing activities | (15) | 35 | (20) | — | — |
| Decrease in cash and cash equivalents | (31) | — | (296) | — | (327) |
| Cash and cash equivalents at the beginning of the period | 45 | — | 704 | — | 749 |
| Cash and cash equivalents at the end of the Period | $ 14 | $ — | $ 408 | $ — | $ 422 |

101

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

Consolidating Statement of Operations

Fiscal Year Ended June 27, 2003
(in millions)

| | Seagate Technology Parent Company Guarantor | HDD Subsidiary Issuer | Combined Non-Guarantors | Eliminations | Seagate Technology Consolidated |
|---|---|---|---|---|---|
| Revenue | $ — | $ — | $ 6,486 | $ — | $ 6,486 |
| Cost of revenue | — | — | 4,759 | — | 4,759 |
| Product development | — | — | 670 | — | 670 |
| Marketing and administrative | 1 | 3 | 353 | — | 357 |
| Restructuring | — | — | 9 | — | 9 |
| Total operating expenses | 1 | 3 | 5,791 | — | 5,795 |
| Income (loss) from operations | (1) | (3) | 695 | — | 691 |
| Interest income | — | 24 | 15 | (23) | 16 |
| Interest expense | — | (43) | (27) | 23 | (47) |
| Equity in income of HDD | 651 | — | — | (651) | — |
| Equity in income (loss) of Non-Guarantors | (9) | 673 | — | (664) | — |
| Other, net | — | — | — | — | — |
| Other income (expense), net | 642 | 654 | (12) | (1,315) | (31) |
| Income before income taxes | 641 | 651 | 683 | (1,315) | 660 |
| Provision for income taxes | — | — | 19 | — | 19 |
| Net income | $ 641 | $ 651 | $ 664 | $ (1,315) | $ 641 |

102

Table of Contents

# SEAGATE TECHNOLOGY
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

### Consolidating Statement of Cash Flows
### Fiscal Year Ended June 27, 2003
### (in millions)

| | Seagate Technology Parent Company Guarantor | HDD Subsidiary Issuer | Combined Non-Guarantors | Eliminations | Seagate Technology Consolidated |
|---|---|---|---|---|---|
| Net Income | $ 641 | $ 651 | $ 664 | $ (1,315) | $ 641 |
| Adjustments to reconcile net income to net cash from operating activities: | | | | | |
| Depreciation and amortization | — | — | 443 | — | 443 |
| Equity in income of HDD | (651) | — | — | 651 | — |
| Equity in income (loss) of Non-Guarantors | 9 | (673) | — | 664 | — |
| Other non-cash operating activities, net | — | — | 19 | — | 19 |
| Changes in operating assets and liabilities, net | 18 | (148) | (91) | — | (221) |
| Net cash provided by (used in) operating activities | 17 | (170) | 1,035 | — | 882 |
| Investing Activities | | | | | |
| Acquisition of property, equipment and leasehold improvements | — | — | (516) | — | (516) |
| Purchase of short-term investments | — | — | (3,408) | — | (3,408) |
| Maturities and sales of short-term investments | — | — | 3,194 | — | 3,194 |
| Sale of Xiotech, net of repayment of intercompany debt | — | — | 8 | — | 8 |
| Sale of Reynosa facility | — | — | 28 | — | 28 |
| Other investing activities, net | — | — | (60) | — | (60) |
| Net cash used in investing activities | — | — | (754) | — | (754) |
| Financing Activities | | | | | |
| Repayment of long-term debt | — | (1) | (1) | — | (2) |
| Issuance of common shares (includes employee stock plans) | 299 | — | — | — | 299 |
| Loan from HDD to Non-Guarantor | — | (310) | 310 | — | — |
| Loan repayment from Non-Guarantor to HDD | — | 452 | (452) | — | — |
| Distribution from HDD to Parent | 360 | (360) | — | — | — |
| Investment by Parent in HDD | (343) | 343 | — | — | — |
| Distribution to shareholders | (288) | — | — | — | (288) |
| Net cash provided by (used in) financing activities | 28 | 124 | (143) | — | 9 |
| Increase (decrease) in cash and cash equivalents | 45 | (46) | 138 | — | 137 |
| Cash and cash equivalents at the beginning of the period | — | 46 | 566 | — | 612 |
| Cash and cash equivalents at the end of the Period | $ 45 | $ — | $ 704 | $ — | $ 749 |

103

Table of Contents

SEAGATE TECHNOLOGY

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

## 14. Supplementary Financial Data (Unaudited)

### Quarterly Data

| Fiscal Year 2005<br>Unaudited, in millions except per share data | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Revenue | $1,558 | $1,847 | $1,969 | $2,179 |
| Gross margin | 275 | 380 | 477 | 540 |
| Income from operations | 57 | 147 | 237 | 281 |
| Net income | 54 | 144 | 229 | 280 |
| Net income per share: | | | | |
|    Basic | $ 0.12 | $ 0.31 | $ 0.49 | $ 0.59 |
|    Diluted | 0.11 | 0.29 | 0.45 | 0.55 |

The results for the first quarter of fiscal year 2005 include a $14 million reduction in operating expenses related to the reduction in accrued benefit obligations associated with the Company's post-retirement medical plan. The results for the fourth quarter include approximately $10 million in income from the settlement of a litigation matter.

| Fiscal Year 2004<br>Unaudited, in millions except per share data | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Revenue | $1,740 | $1,760 | $1,388 | $1,336 |
| Gross margin | 468 | 461 | 301 | 229 |
| Income (loss) from operations | 210 | 218 | 53 | (37) |
| Net income (loss) | 198 | 205 | 159 | (33) |
| Net income (loss) per share: | | | | |
|    Basic | $ 0.44 | $ 0.46 | $ 0.35 | $ (0.07) |
|    Diluted | 0.40 | 0.41 | 0.32 | (0.07) |

The results for the first quarter of fiscal year 2004 include an $11 million restructuring charge. The results for the second quarter include a $4 million restructuring charge. The results for the third quarter include a $125 million income tax benefit and a $6 million restructuring charge. The results for the fourth quarter include a $39 million restructuring charge and a $2 million write-down of an investment in a private company.

104

Table of Contents

## REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

The Board of Directors and Shareholders
Seagate Technology

We have audited the accompanying consolidated balance sheets of Seagate Technology as of July 1, 2005 and July 2, 2004, and the related consolidated statements of operations, shareholders' equity and cash flows of Seagate Technology for the fiscal years ended July 1, 2005, July 2, 2004, and June 27, 2003. These consolidated financial statements are the responsibility of Seagate Technology's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the consolidated financial position of Seagate Technology at July 1, 2005 and July 2, 2004 and the consolidated results of its operations and cash flows for the fiscal years ended July 1, 2005, July 2, 2004 and June 27, 2003, in conformity with U.S. generally accepted accounting principles.

We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the effectiveness of Seagate Technology's internal control over financial reporting as of July 1, 2005, based on criteria established in Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission and our report dated August 1, 2005 expressed an unqualified opinion thereon.

/s/   E RNST & Y OUNG LLP

Palo Alto, California
August 1, 2005

105

Table of Contents

REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

The Board of Directors and Shareholders
Seagate Technology

We have audited management's assessment, included in the accompanying Management's Annual Report on Internal Control Over Financial Reporting, that Seagate Technology maintained effective internal control over financial reporting as of July 1, 2005, based on criteria established in Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (the COSO criteria). Seagate Technology's management is responsible for maintaining effective internal control over financial reporting and for its assessment of the effectiveness of internal control over financial reporting. Our responsibility is to express an opinion on management's assessment and an opinion on the effectiveness of the Company's internal control over financial reporting based on our audit.

We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects. Our audit included obtaining an understanding of internal control over financial reporting, evaluating management's assessment, testing and evaluating the design and operating effectiveness of internal control, and performing such other procedures as we considered necessary in the circumstances. We believe that our audit provides a reasonable basis for our opinion.

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

In our opinion, management's assessment that Seagate Technology maintained effective internal control over financial reporting as of July 1, 2005, is fairly stated, in all material respects, based on the COSO criteria. Also, in our opinion, Seagate Technology maintained, in all material respects, effective internal control over financial reporting as of July 1, 2005, based on the COSO criteria .

We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the consolidated balance sheets of Seagate Technology as of July 1, 2005 and July 2, 2004, and the related consolidated statements of operations, shareholders' equity and cash flows for the fiscal years ended July 1, 2005, July 2, 2004 and June 24, 2003 and our report dated August 1, 2005 expressed an unqualified opinion thereon.

/s/   E RNST & Y OUNG LLP

Palo Alto, California
August 1, 2005

106

Table of Contents

ITEM 9.    CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS ON ACCOUNTING AND FINANCIAL
DISCLOSURE

None.

## ITEM 9A.    CONTROLS AND PROCEDURES

### Conclusions Regarding Disclosure Controls and Procedures

The Securities and Exchange Commission, or SEC, defines the term "disclosure controls and procedures" to mean a company's controls and other procedures that are designed to ensure that information required to be disclosed in the reports that it files or submits under the Securities Exchange Act of 1934, as amended, is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms. Our chief executive officer and our chief financial officer have concluded, based on the evaluation of the effectiveness of our disclosure controls and procedures by our management, with the participation of our chief executive officer and our chief financial officer, as of the end of the period covered by this report, that our disclosure controls and procedures were effective for this purpose.

### Management's Report on Internal Control over Financial Reporting

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934, as amended). Under the supervision and with the participation of our management, including our chief executive officer and chief financial officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in *Internal Control—Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission, or COSO. Based on our evaluation under the framework in *Internal Control—Integrated Framework* , our management has concluded that our internal control over financial reporting was effective as of July 1, 2005. Our management's assessment of the effectiveness of our internal control over financial reporting as of July 1, 2005 has been audited by Ernst & Young LLP, an independent registered public accounting firm, as stated in their report that is included herein.

### Changes in Internal Control over Financial Reporting

There were no changes in our internal control over financial reporting during our fourth fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

Our management, including our chief executive officer and chief financial officer, does not expect that our disclosure controls and procedures or our internal controls will prevent all errors and all fraud. A control system, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the control system are met. Further, the design of a control system must reflect the fact that there are resource constraints, and the benefits of controls must be considered relative to their costs. Because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of fraud, if any, within Seagate have been detected. An evaluation was performed under the supervision and with the participation of our management, including our chief executive officer and chief financial officer, of the effectiveness of the design and operation of our disclosure controls and procedures as of July 1, 2005. Based on that evaluation, our management, including our chief executive officer and chief financial officer, concluded that our disclosure controls and procedures were effective.

## ITEM 9B.    OTHER INFORMATION

On July 28, 2005, our board of directors authorized the payment of annual bonus awards to the chairman of our board of directors and each of our executive officers for the year ended July 1, 2005 under our executive

107

Table of Contents

bonus plan. The plan is intended to ensure the tax deductibility of the bonus for Seagate. The annual incentive awards for our named executive officers, shown on the table below, were based on our board of directors' assessment of our performance and the performance of each named executive officer measured against previously set financial and strategic objectives. This assessment included a review of significant accomplishments and strong business performance in a challenging and dynamic environment, as well as stock price performance during fiscal year 2005.

The following table sets forth the cash bonus amounts for fiscal year 2005 for the executive officers William D. Watkins, Charles C. Pope, David A. Wickersham, Brian S. Dexheimer and William L. Hudson, who will be included as the named executive officers in our 2005 annual proxy statement.

| Executive and Position | Bonus |
|---|---|
| William D. Watkins, President and Chief Executive Officer | $ 3,000,000 |
| Charles C. Pope, Executive Vice President and Chief Financial Officer | $ 1,750,000 |
| David A. Wickersham, Executive Vice President and Chief Operating Officer | $ 2,000,000 |
| Brian S. Dexheimer, Executive Vice President, Worldwide Sales, Marketing and Customer Service | $ 1,250,000 |
| William L. Hudson, Executive Vice President, General Counsel and Corporate Secretary | $ 850,000 |

We intend to provide additional information regarding the compensation awarded to the named executive officers in respect of and during the year ended July 1, 2005, in the proxy statement for our 2005 annual meeting of shareholders, which is expected to be filed with the Securities and Exchange Commission on or about October 7, 2005.

In addition, on July 28, 2005, our board of directors approved a bonus in the amount of $250,000 to be paid to the chairman of our board of directors, Stephen J. Luczo.

108

Table of Contents

*PART III*

## ITEM 10.  DIRECTORS  AND EXECUTIVE OFFICERS OF THE REGISTRANT

Information regarding our directors and compliance with Section 16(a) of the Securities Exchange Act of 1934, as amended, are hereby incorporated herein by reference to the sections entitled "Proposal 1—Election of Directors," "The Board of Directors and its Committees" and "Section 16(a) Beneficial Ownership Reporting Compliance," respectively, in our Proxy Statement to be filed with the Commission within 120 days of the end of our fiscal year pursuant to General Instruction G(3) to Form 10-K. The information required by this Item 10 concerning our executive officers and directors is set forth in Part I of this report under "Item 1. Business—Executive Officers and Directors"

## ITEM 11.  EXECUTIVE  COMPENSATION

The information required by this Item 11 is incorporated by reference to the section entitled "Compensation of Executive Officers" in our Proxy Statement to be filed with the Commission within 120 days of the end of our fiscal year pursuant to General Instruction G(3) to Form 10-K.

## ITEM 12.  SECURITY  OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The information required by this Item 12 is incorporated by reference to the section entitled "Security Ownership of Directors, Executive Officers and Certain Beneficial Owners" in our Proxy Statement to be filed with the Commission within 120 days of the end of our fiscal year pursuant to General Instruction G(3) to Form 10-K.

## ITEM 13.  CERTAIN  RELATIONSHIPS AND RELATED TRANSACTIONS

The information required by this Item 13 is incorporated by reference to the section entitled "Certain Relationships and Related Transactions" in our Proxy Statement to be filed with the Commission within 120 days of the end of our fiscal year pursuant to General Instruction G(3) to Form 10-K.

## ITEM 14.  PRINCIPAL  ACCOUNTANT FEES AND SERVICES

The information required by this Item 14 is incorporated by reference to the section entitled "Information about the Independent Auditors" in our Proxy Statement to be filed with the Commission within 120 days of the end of our fiscal year pursuant to General Instruction G(3) to Form 10-K.

Table of Contents

*PART IV*

## ITEM 15.   EXHIBITS,  FINANCIAL STATEMENT SCHEDULES, AND REPORTS ON FORM 8-K

   (a)   The following documents are included as part of this Report:

       1.    Financial Statements. The following Consolidated Financial Statements of Seagate Technology and Report of Independent Auditors are included in Item 8:

| | Page No. |
|---|---|
| Consolidated Balance Sheets—July 1, 2005 and July 2, 2004 | 63 |
| Consolidated Statements of Operations—Fiscal Years Ended July 1, 2005, July 2, 2004 and June 27, 2003 | 64 |
| Consolidated Statements of Cash Flows—Fiscal Years Ended July 1, 2005, July 2, 2004 and June 27, 2003 | 65 |
| Consolidated Statements of Shareholders' Equity—Fiscal Years Ended July 1, 2005, July 2, 2004, June 27, 2003 | 66 |
| Notes to Consolidated Financial Statements | 67 |
| Reports of Independent Registered Public Accounting Firm | 105 |

       2.    Financial Statement Schedules. All schedules are omitted because they are not applicable or the required information is shown in the Financial Statements or in the notes thereto.

       3.    Exhibits:

| Exhibit Number | Description |
|---|---|
| 2.1 | Stock Purchase Agreement, dated as of March 29, 2000, by and among Suez Acquisition Company (Cayman) Limited, Seagate Technology, Inc. and Seagate Software Holdings, Inc. (incorporated by reference to Exhibit 2.1 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 2.2 | Agreement and Plan of Merger and Reorganization, dated as of March 29, 2000, by and among VERITAS Software Corporation, Victory Merger Sub, Inc. and Seagate Technology, Inc. (incorporated by reference to Exhibit 2.2 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 2.3 | Indemnification Agreement, dated as of March 29, 2000, by and among VERITAS Software Corporation, Seagate Technology, Inc. and Suez Acquisition Company (Cayman) Limited (incorporated by reference to Exhibit 2.3 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 2.4 | Joinder Agreement to the Indemnification Agreement, dated as of November 22, 2000, by and among VERITAS Software Corporation, Seagate Technology, Inc. and the SAC Indemnitors listed therein (incorporated by reference to Exhibit 2.4 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 2.5 | Consolidated Amendment to Stock Purchase Agreement, Agreement and Plan of Merger and Reorganization, and Indemnification Agreement, and Consent, dated as of August 29, 2000, by and among Suez Acquisition Company (Cayman) Limited, Seagate Technology, Inc., Seagate Software Holdings, Inc., VERITAS Software Corporation and Victory Merger Sub, Inc. (incorporated by reference to Exhibit 2.5 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |

Table of Contents

| Exhibit Number | Description |
|---|---|
| 2.6 | Consolidated Amendment No. 2 to Stock Purchase Agreement, Agreement and Plan of Merger and Reorganization, and Indemnification Agreement, and Consent, dated as of October 18, 2000, by and among Suez Acquisition Company (Cayman) Limited, Seagate Technology, Inc., Seagate Software Holdings, Inc., VERITAS Software Corporation and Victory Merger Sub, Inc. (incorporated by reference to Exhibit 2.6 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 2.7 | Letter Agreement, dated as of March 29, 2000, by and between VERITAS Software Corporation and Suez Acquisition Company (Cayman) Limited (incorporated by reference to Exhibit 2.7 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 2.8 | Stock Purchase Agreement, dated as of October 28, 2002, by and among Oak Investment Partners X, Limited Partnership, Oak X Affiliates Fund, L.P., Oak Investment Partners IX, Limited Partnership, Oak IX Affiliates Fund, L.P., Oak IX Affiliates Fund-A, L.P., Seagate Technology Holdings, Seagate Technology SAN Holdings and Xiotech Corporation (incorporated by reference to Exhibit 2.8 to amendment no. 6 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on November 8, 2002) |
| 2.9 | Amendment No. 1, dated as of October 31, 2002, to the Stock Purchase Agreement, dated as of October 28, 2002, by and among Oak Investment Partners X, Limited Partnership, Oak Investment Partners IX, Limited Partnership, Oak IX Affiliates Fund, L.P., Oak IX Affiliates Fund-A, L.P., Seagate Technology Holdings, Seagate Technology SAN Holdings and Xiotech Corporation (incorporated by reference to Exhibit 2.9 to amendment no. 6 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on November 8, 2002) |
| 3.1 | Third Amended and Restated Memorandum of Association of Seagate Technology (formerly known as Seagate Technology Holdings) (incorporated by reference to Exhibit 3.1 to the registrant's quarterly report on Form 10-Q (file no. 001-31560) filed with the SEC on October 29, 2004) |
| 3.2 | Third Amended and Restated Articles of Association of Seagate Technology (formerly known as Seagate Technology Holdings) (incorporated by reference to Exhibit 3.2 to the registrant's quarterly report on Form 10-Q (file no. 001-31560) filed with the SEC on October 29, 2004) |
| 4.1 | Form of 8% Senior Notes due 2009 (incorporated by reference to Exhibit 4.1 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 4.2 | Indenture, dated as of May 13, 2002, by and among Seagate Technology HDD Holdings, Seagate Technology Holdings and U.S. Bank, N.A. (incorporated by reference to Exhibit 4.2 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 4.3 | Registration Rights Agreement, dated as of May 13, 2002, by and among Seagate Technology HDD Holdings, Seagate Technology Holdings, Morgan Stanley & Co. Incorporated, J.P. Morgan Securities Inc., Credit Suisse First Boston Corporation, Merrill Lynch, Pierce, Fenner & Smith Incorporated and Salomon Smith Barney Inc. (incorporated by reference to Exhibit 4.3 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 4.4 | Specimen Common Share Certificate (incorporated by reference to Exhibit 4.4 to amendment no. 1 to the registrant's registration statement on Form S-1 (reg. no. 333-100513) filed with the SEC on November 8, 2002) |

111

Table of Contents

| Exhibit Number | Description |
| --- | --- |

4.5    Shareholders Agreement by and among Seagate Technology Holdings, New SAC, Silver Lake Technology Investors Cayman, L.P., Silver Lake Investors Cayman, L.P., Silver Lake Partners Cayman, L.P., SAC Investments, L.P., August Capital III, L.P., J.P. Morgan Partners, L.L.C., GS Capital Partners III, L.P., GS Capital Partners III Offshore, L.P., Goldman Sachs & Co. Verwaltungs GmbH, Stone Street Fund 2000 L.P., Bridge Street Special Opportunities Fund 2000, L.P., Staenberg Venture Partners II, L.P., Staenberg Seagate Partners, LLC, Integral Capital Partners V, L.P., Integral Capital Partners V Side Fund, L.P. and the Shareholders listed on the signature pages thereto (incorporated by reference to Exhibit 4.5 to the registrant's quarterly report on Form 10-Q (file no. 001-13560) filed with the SEC on February 10, 2003)

4.6    Amendment, dated as of April 23, 2004, to the Shareholders Agreement dated as of December 6, 2002, among Seagate Technology, New SAC, Silver Lake Technology Investors Cayman, L.P., Silver Lake Investors Cayman, L.P., Silver Lake Partners Cayman, L.P., SAC Investments, L.P., August Capital III, L.P., J.P. Morgan Partners (BHCA), L.P., GS Capital Partners III, L.P., GS Capital Partners III Offshore, L.P., Goldman, Sachs & Co. Verwaltungs GmbH, Stone Street Fund 2000 L.P., Bridge Street Special Opportunities Fund 2000, L.P., Staenberg Venture Partners II, L.P., Staenberg Seagate Partners, LLC, Integral Capital Partners V, L.P., Integral Capital Partners V Side Fund, L.P. and the individuals listed on the signature pages thereto (incorporated by reference to Exhibit 4.6 to the registrant's registration statement on Form S-3 (file no. 333-117517) filed with the SEC on July 20, 2004)

4.7    Second Amendment, dated as of September 2, 2004, to the Shareholders Agreement dated as of December 6, 2002, as amended by the first Amendment to the Shareholders Agreement dated as of April 23, 2004, among Seagate Technology, New SAC, Silver Lake Technology Investors Cayman, L.P., Silver Lake Investors Cayman, L.P., Silver Lake Partners Cayman, L.P., SAC Investments, L.P., August Capital III, L.P., J.P. Morgan Partners (BHCA), L.P., GS Capital Partners III, L.P., GS Capital Partners III Offshore, L.P., Goldman, Sachs & Co. Verwaltungs GmBH, Stone Street Fund 2000 L.P., Bridge Street Special Opportunities Fund 2000, L.P., Staenberg Venture Partners II, L.P., Staenberg Seagate Partners, LLC, Integral Capital Partners V, L.P., Integral Capital Partners V Side Fund, L.P. and the individuals listed on the signature pages thereto (incorporated by reference to Exhibit 4.7 to the registrant's annual report on Form 10-K/A (file no. 001-31560) filed with the SEC on September 3, 2004)

10.1    Credit Agreement, dated as of May 13, 2002, by and among Seagate Technology Holdings, Seagate Technology HDD Holdings, Seagate Technology (US) Holdings, Inc., the Lenders party thereto, JPMorgan Chase Bank, as administrative agent, J.P. Morgan Securities Inc., as joint bookrunner and co-lead arranger, Morgan Stanley Senior Funding, Inc., as syndication agent, joint bookrunner and co-lead arranger, Citicorp USA, Inc., as documentation agent, Merrill Lynch Capital Corporation, as documentation agent, and Credit Suisse First Boston, as documentation agent (incorporated by reference to Exhibit 10.1 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002)

10.2(a)    Form of Employment Agreement by and between Seagate Technology (US) Holdings, Inc. and the Executive listed therein (incorporated by reference to Exhibit 10.2(a) to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002)

10.2(b)    Amended and Restated Employment Agreement, dated as of July 3, 2004, by and between Seagate Technology (US) Holdings, Inc. and Stephen J. Luczo (incorporated by reference to Exhibit 10.2(b) to the registrant's annual report on Form 10-K (file no. 001-31560) filed with the SEC on August 10, 2004)

10.2(c)    Employment Agreement, dated as of February 2, 2001, by and between Seagate Technology (US) Holdings, Inc. and William D. Watkins (incorporated by reference to Exhibit 10.2(c) to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002)

112

Table of Contents

| Exhibit Number | Description |
|---|---|
| 10.3(a) | Form of Management Retention Agreement by and between the Employee listed therein and Seagate Technology, Inc. (incorporated by reference to Exhibit 10.3(a) to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.3(b) | Management Retention Agreement, dated November 1998, by and between Seagate Technology, Inc. and Stephen J. Luczo (incorporated by reference to Exhibit 10.3(b) to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.4 | Management Participation Agreement, dated as of March 29, 2000, by and among Seagate Technology, Inc., Suez Acquisition Company (Cayman) Limited and the Senior Managers party thereto (incorporated by reference to Exhibit 10.4 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.5 | Form of Rollover Agreement, dated as of November 13, 2000, by and among New SAC, Seagate Technology HDD Holdings and the Senior Manager listed therein (incorporated by reference to Exhibit 10.5 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.6 | Seagate Technology HDD Holdings Deferred Compensation Plan (incorporated by reference to Exhibit 10.6 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.7(a) | New SAC 2000 Restricted Share Plan (incorporated by reference to Exhibit 10.7(a) to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.7(b) | Form of New SAC 2000 Restricted Share Agreement (incorporated by reference to Exhibit 10.7(b) to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.8(a) | New SAC 2001 Restricted Share Plan (incorporated by reference to Exhibit 10.8(a) to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.8(b) | Form of New SAC 2001 Restricted Share Agreement (Tier 1 Senior Managers) (incorporated by reference to Exhibit 10.8(b) to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.8(c) | Form of New SAC 2001 Restricted Share Agreement (Other Employees) (incorporated by reference to Exhibit 10.8(c) to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.9 | Seagate Technology Holdings 2001 Share Option Plan (incorporated by reference to Exhibit 10.9 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.10 | Shareholders Agreement, dated as of November 22, 2000, by and among New SAC, Silver Lake Technology Investors Cayman, L.P., Silver Lake Investors Cayman, L.P., Silver Lake Partners Cayman, L.P., SAC Investments, L.P., August Capital III, L.P., Chase Equity Associates, L.P., GS Capital Partners III, L.P., GS Capital Partners III Offshore, L.P., Goldman, Sachs & Co. Verwaltungs GmbH, Stone Street Fund 2000 L.P., Bridge Street Special Opportunities Fund 2000, L.P., Staenberg Venture Partners II, L.P., Staenberg Seagate Partners, LLC, Integral Capital Partners V, L.P., Integral Capital Partners V Side Fund, L.P. and the individuals listed therein (incorporated by reference to Exhibit 10.10 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |

113

Table of Contents

| Exhibit Number | Description |
|---|---|
| 10.11 | Management Shareholders Agreement, dated as of November 22, 2000, by and among New SAC and the Management Shareholders listed therein (incorporated by reference to Exhibit 10.11 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.12 | Disc Drive Research and Development Cost Sharing Agreement, dated as of June 29, 1996, by and among Seagate Technology, Inc., Seagate Technology International, Seagate Technology (Ireland), Seagate Technology (Clonmel), Seagate Technology International (Wuxi) Co., Ltd., Seagate Microelectronics Limited and Seagate Peripherals, Inc. (incorporated by reference to Exhibit 10.12 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.13 | World-Wide Services Agreement, dated as of July 1, 1993, by and among Seagate Technology, Inc. and Seagate Technology International (incorporated by reference to Exhibit 10.13 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.14 | Promissory Note, dated as of May 8, 1998, by and between Seagate Technology, Inc., as lender, and David Wickersham, as borrower (incorporated by reference to Exhibit 10.14 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.15 | Promissory Note, dated as of October 10, 2000, by and between Seagate Technology LLC, as lender, and Brian Dexheimer, as borrower (incorporated by reference to Exhibit 10.15 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.16 | Promissory Note, dated as of February 16, 2001, by and between Seagate Technology LLC, as lender, and Jeremy Tennenbaum, as borrower (incorporated by reference to Exhibit 10.16 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.17 | Purchase Agreement, dated as of May 3, 2002, by and among Seagate Technology HDD Holdings, Seagate Technology Holdings and Morgan Stanley & Co. Incorporated and J.P. Morgan Securities Inc. and the other initial purchasers named therein (incorporated by reference to Exhibit 1.1 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on May 16, 2002) |
| 10.18 | Form of Indemnification Agreement between Seagate Technology Holdings and the director or officer named therein (incorporated by reference to Exhibit 10.17 to amendment no. 1 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on July 5, 2002) |
| 10.19 | Reimbursement Agreement, dated as of July 1, 2002, by and among New SAC and its subsidiaries party thereto (incorporated by reference to Exhibit 10.19 to the registrant's registration statement on Form S-1 (reg. no. 333-100513) filed with the SEC on October 11, 2002) |
| 10.20 | Promissory Note, dated as of October 10, 2000, by and between Seagate Technology LLC, as lender, and Patrick J. O'Malley III and Patricia A. O'Malley, as borrowers (incorporated by reference to Exhibit 10.19 to amendment no. 7 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on November 18, 2002) |
| 10.21 | Amendment No. 1, dated December 5, 2002, to the Credit Agreement, dated as of May 13, 2002, by and among Seagate Technology Holdings, Seagate Technology HDD Holdings, Seagate Technology (US) Holdings, Inc., the Lenders party thereto, JPMorgan Chase Bank, as administrative agent, J.P. Morgan Securities Inc., as joint bookrunner and co-lead arranger, Morgan Stanley Senior Funding, Inc., as syndication agent, joint bookrunner and co-lead arranger, Citicorp USA, Inc., as documentation agent, Merrill Lynch Capital Corporation, as documentation agent, and Credit Suisse First Boston, as documentation agent (incorporated by reference to Exhibit 10.20 to amendment no. 9 to the registrant's registration statement on Form S-4 (reg. no. 333-88388) filed with the SEC on December 6, 2002) |

114

Table of Contents

| Exhibit Number | Description |
|---|---|
| 10.22 | Amendment No. 2, dated January 28, 2004, to the Credit Agreement, dated as of May 13, 2002, by and among Seagate Technology Holdings, Seagate Technology HDD Holdings, Seagate Technology (US) Holdings, Inc., the Lenders party thereto, JPMorgan Chase Bank, as administrative agent, J.P. Morgan Securities Inc., as joint bookrunner and co-lead arranger, Morgan Stanley Senior Funding, Inc., as syndication agent, joint bookrunner and co-lead arranger, Citicorp USA, Inc., as documentation agent, Merrill Lynch Capital Corporation, as documentation agent, and Credit Suisse First Boston, as documentation agent (incorporated by reference to Exhibit 10.22 to the registrant's quarterly report on Form 10-Q (reg. no. 001-31560) filed with the SEC on February 3, 2004) |
| 10.23 | Seagate Technology Annual Incentive Bonus Plan (incorporated by reference to Exhibit 10.23 to the registrant's quarterly report on Form 10-Q (reg. no. 001-31560) filed with the SEC on May 3, 2004) |
| 10.24 | Seagate Technology 2004 Stock Compensation Plan (incorporated by reference to Exhibit 10.24 to the registrant's current report on Form 8-K (reg. no. 001-31560) filed with the SEC on October 29, 2004) |
| 10.25 | Seagate Technology 2004 Stock Compensation Plan Form of Option Agreement (For Outside Directors) (incorporated by reference to Exhibit 10.25 to the registrant's quarterly report on Form 10-Q (reg. no. 001-31560) filed with the SEC on October 29, 2004) |
| 10.26 | Seagate Technology 2004 Stock Compensation Plan Form of Option Agreement (For Officers) (incorporated by reference to Exhibit 10.26 to the registrant's quarterly report on Form 10-Q (reg. no. 001-31560) filed with the SEC on October 29, 2004) |
| 10.27 | Seagate Technology 2004 Stock Compensation Plan Form of Option Agreement (For Non-Officer Employees) (incorporated by reference to Exhibit 10.27 to the registrant's quarterly report on Form 10-Q (reg. no. 001-31560) filed with the SEC on October 29, 2004) |
| 10.28 | Summary description of Seagate Technology's compensation policy for independent members of the board of directors (incorporated by reference to Exhibit 10.28 to the registrant's quarterly report on Form 10-Q (reg. no. 001-31560) filed with the SEC on April 29, 2005) |
| 14.1 | Code of Business Conduct and Ethics (incorporated by reference to Exhibit 14.1 to the registrant's annual report on Form 10-K (reg. no. 001-31560) filed with the SEC on August 21, 2003) |
| 21.1* | List of Subsidiaries |
| 23.1* | Consent of Independent Registered Public Accounting Firm |
| 24.1* | Powers of Attorney (included on the signature pages hereto) |
| 31.1* | Certification of the Chief Executive Officer pursuant to rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 31.2* | Certification of the Chief Financial Officer pursuant to rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 32.1* | Certification of the Chief Executive Officer and Chief Financial Officer pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |

* Filed herewith.

(b) Reports on Form 8-K

On April 19, 2005, the registrant furnished a Current Report on Form 8-K with regard to the announcement of its financial results for the third fiscal quarter ended April 1, 2005. On May 17, 2005, the registrant furnished a Current Report on Form 8-K with regard to its in-quarter business update for the fourth fiscal quarter ended July 1, 2005. On June 8, 2005, the registrant furnished a Current Report on Form 8-K with regard to its update of previously provided results of operations guidance for the fourth fiscal quarter ended July 1, 2005.

(c) See Item 15(a)(3) above.

(d) See Item 15(a)(2) above.

115

Table of Contents

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

SEAGATE TECHNOLOGY

/s/   WILLIAM D. WATKINS
_____
(William D. Watkins, Chief Executive Officer)

Dated: August 1, 2005

## POWER OF ATTORNEY

KNOW ALL PERSONS BY THESE PRESENTS, that each person whose signature appears below hereby constitutes and appoints William D. Watkins, Charles C. Pope, and William L. Hudson, and each of them, as his true and lawful attorneys-in-fact and agents, with power to act with or without the others and with full power of substitution and resubstitution, to do any and all acts and things and to execute any and all instruments which said attorneys and agents and each of them may deem necessary or desirable to enable the registrant to comply with the U.S. Securities Exchange Act of 1934, as amended, and any rules, regulations and requirements of the U.S. Securities and Exchange Commission thereunder in connection with the registrant's Annual Report on Form 10-K for the fiscal year ended July 1, 2005 (the "Annual Report"), including specifically, but without limiting the generality of the foregoing, power and authority to sign the name of the registrant and the name of the undersigned, individually and in his capacity as a director or officer of the registrant, to the Annual Report as filed with the U.S. Securities and Exchange Commission, to any and all amendments thereto, and to any and all instruments or documents filed as part thereof or in connection therewith; and each of the undersigned hereby ratifies and confirms all that said attorneys and agents and each of them shall do or cause to be done by virtue hereof.

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/   WILLIAM D. WATKINS<br><br>(William D. Watkins) | Chief Executive Officer, President and Director (Principal Executive Officer) | August 1, 2005 |
| /s/   CHARLES C. POPE<br><br>(Charles C. Pope) | Executive Vice President, Finance and Chief Financial Officer (Principal Financial Officer) | August 1, 2005 |
| /s/   KAREN M. ROGGE<br><br>(Karen M. Rogge) | Vice President, Corporate Finance and Treasurer (Principal Accounting Officer) | August 1, 2005 |
| /s/   STEPHEN J. LUCZO<br><br>(Stephen J. Luczo) | Chairman of the Board of Directors | August 1, 2005 |
| /s/   WILLIAM W. BRADLEY<br><br>(William W. Bradley) | Director | August 1, 2005 |

116

Table of Contents

| Signature | Title | Date |
|---|---|---|
| /s/ JAMES G. COULTER<br>(James G. Coulter) | Director | August 1, 2005 |
| /s/ JAMES A. DAVIDSON<br>(James A. Davidson) | Director | August 1, 2005 |
| /s/ GLENN H. HUTCHINS<br>(Glenn H. Hutchins) | Director | August 1, 2005 |
| /s/ DONALD E. KIERNAN<br>(Donald E. Kiernan) | Director | August 1, 2005 |
| /s/ DAVID F. MARQUARDT<br>(David F. Marquardt) | Director | August 1, 2005 |
| /s/ LYDIA MARSHALL<br>(Lydia Marshall) | Director | August 1, 2005 |
| /s/ GREGORIO REYES<br>(Gregorio Reyes) | Director | August 1, 2005 |
| /s/ JOHN W. THOMPSON<br>(John W. Thompson) | Director | August 1, 2005 |

117

EXHIBIT 21.1

## LIST OF SUBSIDIARIES

| | |
|---|---|
| Seagate Technology | Cayman |
|   Seagate Technology HDD Holdings | Cayman |
|     Quinta Corporation | California |
|     Seagate Technology (US) Holdings, Inc. | Delaware |
|       Seagate Technology LLC | Delaware |
|         Seagate Air, LLC | Delaware |
|       Redwood Acquisition Corporation | Delaware |
|       Seagate Technology AB | Sweden |
|       Seagate Technology Australia Pty Limited | Australia |
|       Seagate Technology GmbH | Germany |
|       Seagate Technology (Hong Kong) Limited | Hong Kong |
|         Beijing Representative Office | China |
|         Shanghai Representative Office | China |
|         Shenzhen Representative Office | China |
|       Seagate Technology SAS | France |
|       Seagate Technology Taiwan Ltd. | Taiwan |
|       Seagate US LLC | Delaware |
|   Seagate Technology International | Cayman |
|     Seagate Technology International (Netherlands Branch) | Netherlands |
|     Seagate Technology International (Singapore Branch) | Singapore |
|     Penang Seagate Industries (M) Sdn. Bhd. | Malaysia |
|     Perai Seagate Storage Products Sdn. Bhd. | Malaysia |
|     Seagate Singapore International Headquarters Pte. Ltd. | Singapore |
|       New Delhi Representative Office | India |
|     Seagate Technology Asia Holdings | Cayman |

| | |
|---|---|
| Seagate Technology China Holding Company | Cayman |
| Seagate Technology (Netherlands) B.V. | Netherlands |
| Nippon Seagate Inc. | Japan |
| Seagate Technology International (Wuxi) Co. Ltd. | China |
| Seagate Technology (Ireland) | Cayman |
| Northern Ireland Branch (Springtown, Londonderry) | Ireland |
| Seagate Technology (Malaysia) Holding Company | Cayman |
| Senai Seagate Industries (M) Sdn. Bhd. | Malaysia |
| Seagate Technology (Marlow) Limited | England |
| Cork Branch | Ireland |
| Seagate Technology Media (Ireland) | Cayman |
| Limavady Northern Ireland Branch | Ireland |
| Seagate Technology (Thailand) Limited | Thailand |

**EXHIBIT 23.1**

### Consent of Independent Registered Public Accounting Firm

We consent to the incorporation by reference in the Registration Statements (Form S-8's No. 333-101848 and 333-101789 and Form S-3 No. 333-122149) of Seagate Technology and in the related Prospectus, as amended, of our reports dated August 1, 2005, with respect to the consolidated financial statements of Seagate Technology, Seagate Technology management's assessment of the effectiveness of internal control over financial reporting, and the effectiveness of internal control over financial reporting of Seagate Technology, included in this Annual Report (Form 10-K) for the year ended July 1, 2005.

/s/  ERNST & YOUNG LLP

Palo Alto, California
August 1, 2005

**EXHIBIT 31.1**

### CERTIFICATION

I, William D. Watkins, Chief Executive Officer of Seagate Technology, certify that:

1. I have reviewed this annual report on Form 10-K of Seagate Technology;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) designed such internal control over financing reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: August 1, 2005

/s/  WILLIAM D. WATKINS

Name:   William D. Watkins
Title:    Chief Executive Officer

EXHIBIT 31.2

## CERTIFICATION

I, Charles C. Pope, Chief Financial Officer of Seagate Technology, certify that:

1. I have reviewed this annual report on Form 10-K of Seagate Technology;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) designed such internal control over financing reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: August 1, 2005

/s/  CHARLES C. POPE

Name:  Charles C. Pope
Title:  Chief Financial Officer

EXHIBIT 32.1

## CERTIFICATION PURSUANT TO
## 18 U.S.C. SECTION 1350,
## AS ADOPTED PURSUANT TO
## SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

This certification is not to be deemed "filed" for purposes of Section 18 of the Securities Exchange Act of 1934, as amended, and does not constitute a part of the Annual Report of Seagate Technology (the "Company") on Form 10-K for the fiscal year ended July 1, 2005, as filed with the Securities and Exchange Commission on the date hereof (the "Report").

In connection with the Report we, William D. Watkins, Chief Executive Officer of the Company, and Charles C. Pope, Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that:

(1)   The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)   The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: August 1, 2005

/s/   WILLIAM D. WATKINS

William D. Watkins
Chief Executive Officer

Date: August 1, 2005

/s/   CHARLES C. POPE

Charles C. Pope
Chief Financial Officer

**End of Filing**

Powered By EDGAR Online

© 2005 | EDGAR Online, Inc.