IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEAGATE TECHNOLOGY LLC, | ) | |
| | ) | **REDACTED** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-418-SLR |
| | ) | |
| CORNICE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CORNICE, INC.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT [NO. 3] OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,452,159**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
*Attorneys for Defendant and Counterclaim
Plaintiff Cornice, Inc.*

OF COUNSEL:
Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000
Original filing date: January 17, 2006
Redacted filing date:  January 23, 2006

i.

TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CITATIONS | | ii |
| NATURE AND STAGE OF THE PROCEEDING | | 1 |
| SUMMARY OF ARGUMENT | | 1 |
| ARGUMENT | | 2 |
| I. | THE ACCUSED PRODUCTS DO NOT SATISFY THE "PARK" OR "PARKING" LIMITATIONS OF ALL ASSERTED CLAIMS | 2 |
| II. | THE ACCUSED PRODUCTS CANNOT INFRINGE UNDER THE DOCTRINE OF EQUIVALENTS | 4 |
| III. | SEAGATE CONCEDES THAT ITS ALLEGATIONS RELATE ONLY TO OBSOLETE PRODUCTS, AND THAT SUMMARY JUDGMENT OF NONINFRINGEMENT FOR THE 3.0 PRODUCTS IS APPROPRIATE. | 6 |
| CONCLUSION | | 6 |

ii.

## TABLE OF CITATIONS

| | Page(s) |
|---|---|

Cases

*Bell & Howell Document Management Products Co. v. Altek Systems,*
132 F.3d 701 (Fed. Cir. 1997) — 4

*Hoechst Celanese Corp. v. BP Chemicals Ltd.,*
78 F.3d 1575 (Fed. Cir. 1996) — 4

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.,*
302 F.3d 1352 (Fed. Cir. 2002) — 4

*Moore U.S.A., Inc. v. Standard Register Co.,*
229 F.3d 1091 (Fed. Cir. 2000) — 6

*Nike Inc. v. Wolverine World Wide, Inc.,*
43 F.3d 644 (Fed. Cir. 1994) — 2

*Praxair, Inc. v. ATMI, Inc. et al.,*
Civ. No. 03-1158-SLR (D. Del. 2003) — 6

*Renishaw PLC v. Marposs Societa' Per Azioni,*
158 F.3d 1243 (Fed. Cir. 1998) — 5

*Speedplay, Inc. v. Bebop, Inc.,*
211 F.3d 1245 (Fed. Cir. 2000) — 4

*Tronzo v. Biomet, Inc.,*
156 F.3d 1154 (Fed. Cir. 1998) — 6

*Vitronics Corp. v. Conceptronic, Inc.,*
90 F.3d 1576 (Fed. Cir. 1996) — 3

1.

**NATURE AND STAGE OF THE PROCEEDING**

Seagate Technology LLC ("Seagate") brought this action against Cornice, Inc.

("Cornice") alleging infringement of seven patents on June 22, 2004. This motion relates only to

U.S. Patent No. 5,452,159 ("the '159 patent"),

**REDACTED**

**SUMMARY OF ARGUMENT**

Every asserted claim of the '159 patent includes the limitations "park" and

"parking," which are explicitly defined in the specification as fixing the read/write heads "over a

selected portion of the disk." Seagate argues this definition should be ignored, and that the

read/write heads can be fixed at *any* location whatsoever.

**REDACTED**

To support its broader construction, Seagate points to extrinsic evidence in

the form of inventor testimony, expert testimony, and documentation unrelated to the '159 patent,

none of which can overcome the patent's explicit definition as a matter of law. Finally, Seagate

concedes that it cannot support the infringement allegations contained in its interrogatory

---

[1]                      **REDACTED**

[2]    Seagate concedes the lack of a factual dispute regarding the accused devices at page 3 of
       its Opposition (D.I. 250) ("There is no dispute concerning the specific aspects of the
       structure or functionality of the accused products pertinent to Cornice's motion and this
       opposition.").

2.

response relating to Cornice's current 3.0 gigabyte product, and thus acquiesces to summary judgment in Cornice's favor with respect to that product.

## ARGUMENT

**I.    THE ACCUSED PRODUCTS DO NOT SATISFY THE "PARK" OR "PARKING" LIMITATIONS OF ALL ASSERTED CLAIMS**

The specification of the '159 patent provides an explicit definition of both "park" and "parking" which necessitates summary judgment of noninfringement. Cornice's proposed construction is taken directly from this definition, and thus should be adopted and applied here:

> **As used in this patent**, the terms "park" and "parking" refer to the **maintaining the position of the head(s) over a selected portion** (usually a "landing zone" at the inside or outside diameter) **of the disk** (or disks). The heads are supported by an actuator, and parking the heads also means parking the actuator by fixing the position of the actuator which supports the heads.

'159 Patent, column 1, lines 55-63 (emphasis added). For its part, Seagate urges the Court to ignore the explicit definition provided above, arguing that the second sentence was intended to nullify and render meaningless the explicit definition appearing in the first sentence.

At the outset, a simple reading of the quoted passage demonstrates that the patentee did not provide two definitions as argued by Seagate. Indeed, the only definition provided ("...over a selected portion of the disk") is specifically identified as the sole definition for this patent ("*As used in this patent...*"). Rather than eviscerating the first sentence as argued by Seagate, the second sentence instead informs the reader that "parking the heads also means parking the actuator," since the two are physically attached and you cannot fix the position of one without fixing the position of the other. Seagate's attempt to carve out the second half of the second sentence and offer it as an alternative construction ignores the context of the statement itself, which reveals the fallacy of Seagate's position. *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644 (Fed. Cir. 1994) (A patentee "cannot ... rewrite its patent claims to suit its needs in ... litigation.").

3.

Because Cornice's construction is taken verbatim from the specification, it is the only construction consistent with the remaining written description of the '159 patent. For example, the following passages indicate that the patentee indeed intended the construction urged by Cornice (over a selected portion of the disk), and that Seagate's broader construction (at any location) is in fact contradicted and incorrect:

> The present invention relates to parking devices for disk drives; more particularly, to devices which position and retain the head(s) of a disk drive _over a selected portion of a hard (or fixed) disk_ when the disk drive is not in use. '159 patent, col. 1, lines 37-41 (emphasis added).
>
> * * *
>
> _Parking_ the head _assures_ that the head _will land on a landing zone – i.e., a non-data storage portion of the disk_ – and will be held in a position over the landing zone during the power-down period. _Id._, col. 2, lines 11-15 (emphasis added).

Thus, the remainder of the description of the invention is consistent with Cornice's construction, and inconsistent with the position advanced by Seagate. This is logical, since the patent itself says that "_as used in this patent_," the terms "park" and "parking" have the meanings urged by Cornice.

Lacking any support for its construction (and ignoring the evidence contradicting its construction, cited above), Seagate turns to expert testimony, inventor testimony, and documents unrelated to the '159 patent in an attempt to manufacture support for its position. However, the opinions of Seagate's expert cannot overcome an explicit definition appearing in the patent specification. _Vitronics Corp. v. Conceptronic, Inc._, 90 F.3d 1576 (Fed. Cir. 1996) ("[E]xpert testimony ... may not be used to vary or contradict the claim language ... nor may it contradict the import of other parts of the specification. Indeed, where the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight"). Likewise, the testimony of Mr. Stefansky, the named inventor of the '159 patent, is given little or no weight when determining the proper construction of a claim term. _Speedplay, Inc. v. Bebop, Inc._, 211 F.3d 1245 (Fed. Cir. 2000) ("The trial court ... was entitled to accord little weight to the

4.

'litigation-induced pronouncements of the inventor,' which were contrary to clear statements in the written description and reissue application."); *Bell & Howell Document Management Products Co. v. Altek Systems*, 132 F.3d 701 (Fed. Cir. 1997) ("The testimony of an inventor often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application."); *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575 (Fed. Cir. 1996) ("*Markman* requires us to give no deference to the testimony of the inventor about the meaning of the claims..."). Finally, extrinsic documentation completely unrelated to the patent-in-suit, such as that relied upon by Seagate (Seagate's Answering Brief in Opposition to Cornice's Motion for Summary Judgment [No. 3] for Non-Infringement for U.S. Patent No. 5,452,159, D.I. 250, pgs. 9-11), likewise cannot overcome the construction chosen by the patentee when he has elected to be his own lexicographer. *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352 (Fed. Cir. 2002) ("It is black letter law that a patentee can 'choose to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term that could differ in scope from that which would be afforded by its ordinary meaning.'"). Simply put, when "a patent applicant has elected to be a lexicographer by providing an explicit definition in the specification for a claim term," "the definition selected by the patent applicant controls." *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998). Because the explicit definition provided in the specification controls, and because Seagate concedes that **REDACTED** products fail to satisfy those limitations, the accused products cannot infringe and the Court should enter summary judgment to that effect.

## II.    THE ACCUSED PRODUCTS CANNOT INFRINGE UNDER THE DOCTRINE OF EQUIVALENTS

Prior to its Opposition brief, Seagate offered no argument or evidence that the accused products infringed the '159 patent under the doctrine of equivalents. Instead, Seagate merely provided conclusory allegations in the form of a single sentence in an interrogatory response and two sentences in its expert report (D.I. 250, Exh. 6 pg. 5, and Exh. 7, pg. 22).

Relying on these sparse references, Seagate now argues that it "has always maintained infringement under the doctrine of equivalents." However, apparently recognizing the absence of argument and evidence to support its contentions, Seagate now for the first time submits new opinions from its expert Dr. Bogy in the form of a two-page declaration, in which he opines that the accused devices infringe under the doctrine of equivalents using Cornice's proposed construction.[3] Because (1) these opinions were not included in Seagate's expert reports, (2) they were delivered after the close of expert discovery and after the deadline for filing summary judgment motions, (3) there is no justification for the untimely disclosure, and (4) Cornice did not have the opportunity to cross-examine Dr. Bogy on these new opinions, they should be ignored and stricken.[4] See, *e.g.*, *Praxair, Inc. v. ATMI, Inc. et al.*, Civ. No. 03-1158-SLR (D. Del. 2003) (Memorandum Opinion dated November 8, 2003).

Regardless, Seagate's attempt to ensnare the accused products under the doctrine of equivalents fails as a matter of law. First,

**REDACTED**

*Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) ("to allow what is undisputedly a *minority* to be equivalent to a *majority* would vitiate the [claim] requirement"; also "[t]he *presence* of a feature in an accused device (here, adhesive) cannot possibly be equivalent to the claimed *absence* of that feature, and no reasonable factfinder could conclude otherwise.") (emphasis added). Second, removal of the requirement that the heads be

---

[3]   In fact, Dr. Bogy submitted two separate declarations in support of Seagate's Opposition brief, with his new opinions on the doctrine of equivalents confined within one of the two. One must assume that Seagate, recognizing the impropriety of the new opinions, wanted to keep them separated so that if and when those opinions were stricken, the remainder of Bogy's statements would not likewise be lost.

[4]   Notwithstanding the impropriety of attempting to inject new opinions at this stage of the litigation, even this new declaration fails to offer anything of substance regarding the equivalents analysis, and even if not stricken the declaration fails to raise a genuine issue of material fact sufficient to preclude summary judgment.

6.

positioned "over a selected portion of the disk" under the guise of the doctrine of equivalents would violate the all-limitations rule, and thus is also legally impermissible. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998) (a "hemispherical" shape cannot be equivalent to a "conical" limitation, because such a finding would vitiate the "conical" limitation). Because Seagate's infringement allegations require elimination of the "over a selected portion of the disk" limitation, and because the removal of any limitation via the doctrine of equivalents is impermissible, Seagate's arguments relating to infringement under the doctrine of equivalents fail as a matter of law.

**III.     SEAGATE CONCEDES THAT ITS ALLEGATIONS RELATE ONLY TO OBSOLETE PRODUCTS, AND THAT SUMMARY JUDGMENT OF NONINFRINGEMENT FOR THE 3.0 PRODUCTS IS APPROPRIATE.**

Seagate abandons the allegations contained in its interrogatory responses by explicitly conceding that Cornice's 3.0 gigabyte device does not and cannot infringe the '159 patent. Thus summary judgment of noninfringement with respect to this product should also be entered.

## CONCLUSION

Cornice's former products (1.0, 1.5, and 2.0 gigabyte), the only products now accused of infringing the '159 patent, do not infringe for at least the reason that they fail to satisfy the "park" and "parking" limitations present in all asserted claims. The patentee acted as his own lexicographer, and provided an explicit definition for "park" and "parking" "*as used in this patent.*" As such, that definition controls, notwithstanding the litigation-inspired testimony from Seagate's inventor or expert, or extrinsic documentation unrelated to the '159 patent. Similarly, these former products cannot infringe under the doctrine of equivalents because positioning the heads *off* the disk cannot as a matter of law be the equivalent of a claim requirement that they be *on* the disk, and because the all-limitations rule prevents Seagate from vitiating the "over a

7.

selected portion of the disk" limitation via the doctrine of equivalents. Finally, Seagate has now

admitted that the only other product in this litigation, the 3.0 gigabyte Cornice SE, does not

infringe. For the foregoing reasons, Cornice's motion should be granted in its entirety.

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

January 17, 2006
502303

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Julia Heaney
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mant.com
jheaney@mnat.com
*Attorneys for Defendant and Counterclaim
Plaintiff Cornice, Inc.*

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on January 17th, 2006, I electronically filed the

foregoing, which will send notification of such filing(s) to the following:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

| | |
|---|---|
| William J. Marsden, Jr., Esquire<br>Fish & Richardson, P.C.<br>919 N. Market Street<br>Suite 1100<br>Wilmington, DE 19801<br>marsden@fr.com | One (1) Electronic Version by Email<br>and One (1) Hard Copy for Hand Delivery<br>on Wednesday, January 18, 2006 |
| Ruffin B. Cordell, Esquire<br>Fish & Richardson, P.C.<br>1425 K Street, NW, Suite 1100<br>Washington, DC 20005<br>cordell@fr.com | One (1) Electronic Version by Email<br>and One (1) Hard Copy by Federal Express<br>Delivery for Wednesday, January 18, 2006 |

/s/ Julia Heaney (#3052)
Julia Heaney (#3052)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on January 23, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr., Esquire
> Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

**BY HAND:**

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

**BY FEDERAL EXPRESS:**

Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC 20005

/s/ Julia Heaney
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
jheaney@mnat.com
*Attorneys for Defendant and*
*Counterclaim Plaintiff Cornice, Inc.*