IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,                )
                                       )
                    Plaintiff,         )        **<u>REDACTED</u>**
                                       )
              v.                       )        Civil Action No. 04-418 (SLR)
                                       )
CORNICE, INC.                          )
                                       )
                    Defendant.         )


**DEFENDANT CORNICE, INC.'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT [NO. 5] OF
<u>NONINFRINGEMENT OF U.S. PATENT NO. 5,600,506</u>**

                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                    Jack B. Blumenfeld (#1014)
                    Julia Heaney (#3052)
                    1201 N. Market Street
                    Wilmington, DE  19899-1347
                    (302) 658-9200
                        *Attorneys for Defendant and Counterclaim
                        Plaintiff Cornice, Inc.*


OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
(212) 310-8000
Original filing date:  January 17, 2006
Redacted filing date:  January 23, 2006

i.

## TABLE OF CONTENTS

|  |  | Page(s) |
|---|---|---|
| SUMMARY OF ARGUMENT | | 1 |
| I. | THERE ARE NO MATERIAL CONTESTED FACTS THAT PRECLUDE SUMMARY JUDGMENT | 2 |
| II. | SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ALL PRODUCTS FOLLOWS FROM THE PROPER CONSTRUCTION OF "QUADRATURE SERVO PATTERN" | 3 |
| | A. Cornice Is Not Improperly Importing Limitations From The "Preferred Embodiment" Into The Claims. | 3 |
| | B. The Intrinsic Evidence Seagate Cites Does Not Support Its Proposed Construction Of "Quadrature Servo Pattern." | 6 |
| | C. Seagate Improperly Asks The Court To Construe "Quadrature Servo Pattern" In Isolation, Divorced From The Context Of The Claim And Its Usage In The Specification. | 9 |
| | D. Cornice's Proposed Construction Is Not Inconsistent With Any "Advantages" Of The Purported Invention Of The '506 Patent. | 11 |
| III. | ALL OF THE ACCUSED PRODUCTS LACK A "QUADRATURE SERVO PATTERN" | 12 |
| | A. There Is No Dispute That The Accused Products Do Not Literally Include A "Quadrature Servo Pattern," Properly Construed. | 12 |
| | B. Seagate Offers No Evidence To Create A Genuine Issue Of Material Fact That The Accused Products Meet The "Quadrature Servo Pattern" Limitation Under The Doctrine Of Equivalents. | 13 |
| | C. Seagate's Allegation Of Infringement Under The Doctrine Of Equivalents Is Barred By Vitiation. | 16 |
| IV. | THE ACCUSED 3.0 GB SE DOES NOT INFRINGE THE '506 PATENT LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS FOR THE ADDITIONAL REASON THAT IT LACKS THE PRECISE NUMERICAL RELATIONSHIPS REQUIRED BY ALL CLAIMS | 17 |
| | A. There Is No Dispute That The 3.0 GB SE Does Not Literally Infringe The '506 Patent. | 17 |
| | B. Seagate Establishes No Genuine Issues Of Material Fact To Avoid Summary Judgment On The Doctrine Of Equivalents. | 17 |
| CONCLUSION | | 20 |

ii.

## TABLE OF AUTHORITIES

Page(s)

Cases

*Abbott Labs. v. Dey L.P.*,
    287 F.3d 1097 (Fed. Cir. 2002)      19, 20

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970)      2

*Alloc, Inc. v. Int'l Trade Comm'n*,
    342 F.3d 1361 (Fed. Cir. 2003)      9

*Bickling v. Kent General Hosp., Inc.*,
    872 F. Supp. 1299 (D. Del. 1994)      2

*Boston Scientific Scimed, Inc. v. Cordis Corp.*,
    No. Civ.-03-283-SLR, 2005 WL 2614785
    (D. Del. Oct. 14, 2005)      5

*Ericsson v. Harris*,
    352 F.3d 1369 (Fed. Cir. 2003)      17

*Fowle v. C & C Cola*,
    868 F.2d 59 (3d Cir. 1994)      2

*Gaus v. Conair Corp.*,
    363 F.3d 1284 (Fed. Cir. 2004)      9

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*,
    45 F.3d 1550 (Fed. Cir. 1995)      2, 12, 15

*Glaxo Wellcome, Inc. v. Andrx Pharmas., Inc.*,
    344 F.3d 1226 (Fed. Cir. 2003)      18

*Graver Tank & Mfg. Co v. Linde Air Prods. Co.*,
    339 U.S. 605 (1950)      15

*Jeneric/Pentron, Inc. v. Dillon Co.*,
    205 F.3d 1377 (Fed. Cir. 2000)      19

*Johnson & Johnston Assocs. Inc. v. R.E. Service Co.*,
    285 F.3d 1046 (Fed. Cir. 2002)      20

*JVW Enters., Inc. v. Interact Accessories, Inc.*,
    424 F.3d 1324 (Fed. Cir. 2005)      6

*Mextel, Inc. v. Air-Shields, Inc.*,
    No. 01-CV-7308, 2005 WL 226112 (E.D. Pa. January 31, 2005)      2

*Overhead Door Corp. v. Chamberlain Group, Inc.*,
    194 F.3d 1261 (Fed. Cir. 1999)         20

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)         3, 4, 5, 10

*Praxair, Inc. v. ATMI, Inc.*,
    Civ. No. 03-1158-SLR, 2005 WL 2989767
    (D. Del. Nov. 8, 2005)         4, 5

*RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*,
    326 F.3d 1255 (Fed. Cir. 2003)         8

*Schoell v. Regal Marine Industries, Inc.*,
    247 F.3d 1202 (Fed. Cir. 2001)         2

*Snow v. Lake Shore & M.S. Ry. Co.*,
    121 U.S. 617 (1887)         4

*Tanabe Seiyaku Co., Ltd. v. United States Int'l Trade Comm.*,
    109 F.3d 726 (Fed. Cir. 1997)         19

*Vivid Tech., Inc. v. Am. Science & Eng'g, Inc.*,
    200 F.3d 795 (Fed. Cir. 1999)         11

*Wang Labs, Inc. v. America Online, Inc.*,
    197 F.3d 1377 (Fed. Cir. 1999)         4, 9

*Watts v. XL Systems, Inc.*,
    232 F.3d 877 (Fed. Cir. 2000)         9

*Wright Medical v. Osteonics*,
    122 F.3d 1440 (Fed. Cir 1997)         17

1.

Defendant Cornice, Inc. ("Cornice") submits this Reply Brief in Support of Its Motion for Summary Judgment of Noninfringement of U.S. Patent No. 5,600,506 (the "'506 patent").[1]

## SUMMARY OF ARGUMENT

In its attempt to avoid summary judgment of non-infringement of the '506 patent, Seagate embarks on a wayward journey to convey the impression that disputed issues of fact stand in the way of granting Cornice's motion.  However, removing the thin patina from the rhetoric, attorney argument, and straw men in Seagate's Response to Defendant Cornice's Motion for Summary Judgment [No. 5] of Non-infringement of U.S. Patent No. 5,600,506 ("Seagate's Opposition") (D.I. 252) reveals nothing in the way of substance sufficient to meet its burden in opposing Cornice's motion.  In particular, there is no genuine issue of material fact that all of the accused products           **REDACTED**

and thus fail to meet the "quadrature servo pattern" limitation in each claim of the '506 patent, as properly construed.  Seagate's Opposition is based primarily on the legal issue of claim interpretation, and is devoid of evidence or expert opinion on the issue of doctrine of equivalents.

Similarly, with regard to the independent basis for non-infringement of Cornice's 3.0 GB product, which utilizes a different relationship between the data tracks and servo pattern than the other accused products, Seagate concedes no literal infringement, and relies on inapposite legal authority in seeking to avoid summary judgment under the doctrine of equivalents.  Moreover, even a cursory review of the expert opinions it relies on in connection with its doctrine of equivalents argument reveals that they are entirely conclusory, notwithstanding Seagate's contention that the text spans "roughly one half of a page." *See* D.I. 252 at 14.

---

[1] References to Exhibits A-H are to those attached to Cornice's Opening Brief in Support of Its Motion for Summary Judgment [No. 5] of Noninfringement of U.S. Patent No. 5,600,506 (D.I. 165). Exhibits I-M are attached herewith.

I.    THERE ARE NO MATERIAL CONTESTED FACTS THAT
      PRECLUDE SUMMARY JUDGMENT

         As the party opposing summary judgment on the issue of infringement, for which it bears

the burden of proof, Seagate must demonstrate "factual support for the conclusion that each and every

limitation in the germane claims of the [asserted patent] reads on the accused devices." *Mextel, Inc. v.

Air-Shields, Inc.*, No. 01-CV-7308, 2005 WL 226112, *45 (E.D. Pa. January 31, 2005); *see also Schoell

v. Regal Marine Industries, Inc.*, 247 F.3d 1202, 1207 (Fed. Cir. 2001) ("Summary judgment must be

entered against a party 'who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial.'") (*quoting

Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

         Seagate's Opposition falls far short of meeting this standard.   As an initial matter,

Seagate's Opposition is improperly based solely on attorney argument and its unsworn expert report,

which are inadequate to defeat summary judgment.  It is black letter law that Seagate may rely only on the

kinds of evidence set forth in F.R.C.P. 56(c) in demonstrating specific genuine issues of material fact

requiring trial on Seagate's claim of infringement of the '506 patent. *Bickling v. Kent General Hosp.,

Inc.*, 872 F. Supp. 1299, 1305 (D. Del. 1994) (*citing Celotex*, 477 U.S. at 324).  Unsworn statements, like

those in an expert report, do not meet the requirements of F.R.C.P. 56, and are therefore inadequate to

defeat a motion for summary judgment.   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970);

*Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1994) (unsworn expert report "not competent to be

considered on a motion for summary judgment").  Attorney argument is similarly inadequate.  *Glaverbel

Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995) ("There

must be sufficient substance, other than attorney argument, to show that the issue requires trial.") (*citing

Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).  Moreover, nowhere in Seagate's Opposition

does it demonstrate how "each and every limitation" of the asserted claims read on the accused devices.

In sum, Seagate's Opposition points to no admissible evidence in alleging material disputed facts to

withstand summary judgment, and for this reason alone cannot defeat Cornice's motion.

         Even if Seagate's unsworn expert report is fully considered, Seagate's Opposition does

not raise any *genuine* issue of *material* fact.  In particular:.

- Seagate does not dispute that the accused products       **REDACTED**
  literally lack a "quadrature servo pattern"
  under Cornice's construction.  *See* D.I. 252 at 11.

- Seagate does not dispute that the 3.0 GB SE does not literally infringe the '506
  patent.  *See* D.I. 252 at 24.

- Seagate does not dispute that a "4:3 pattern," such as the one used in the 3.0 GB
  SE, precludes       **REDACTED**       D.I. 252 at
  29-30.

## II.   SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ALL PRODUCTS FOLLOWS FROM THE PROPER CONSTRUCTION OF "QUADRATURE SERVO PATTERN"

Seagate's Opposition to Cornice's motion for summary judgment of non-infringement as

it relates to all accused products is primarily based on the construction of the term "quadrature servo

pattern," which appears in all claims.  Cornice has already provided a detailed explication of the intrinsic

evidence that supports its proposed construction in its Opening Claim Construction Brief (D.I. 183), and

responded to Seagate's overbroad construction in its Answering Brief In Response to Seagate's Opening

Claim Construction Brief (D.I. 263).  Thus, Cornice limits its responses below to the additional arguments

raised in connection with Seagate's Opposition Brief.[2]

### A.   Cornice Is Not Improperly Importing Limitations From The "Preferred Embodiment" Into The Claims.

Seagate mischaracterizes Cornice's arguments regarding construction of "quadrature

servo pattern" as an attempt to limit the claims to the "preferred embodiment" of the '506 patent.

However, Cornice's claim construction briefs provide a thorough and detailed analysis of the intrinsic

record of the patent specification under the principles of the recent *en banc* decision in *Phillips v. AWH*

*Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) in explaining why the '506 patent is properly limited to the use of

servo burst patterns where a burst is centered in each data track.  D.I. 183 at 12-21; D.I. 263 at 3-7.

---

[2]     Seagate's Opposition also incorporates its arguments in its Responsive Brief to Defendant
Cornice's Opening Claim Construction Brief ("CC Opposition") (D.I. 230).  D.I. 252 at 7.

Seagate's heavy reliance on the alleged "ordinary meaning" of the term fails in view of *Phillips*, which makes clear that "ordinary meaning" must be ascertained with reference to the patent specification. *See id.* at 1321.

In this regard, Seagate does not reasonably dispute the teachings of the disclosure of the patent specification to one of ordinary skill in the art, *i.e.*, the mandate that a burst be centered in each data track, but rather seeks to avoid them by hiding behind the mantra that Cornice is improperly limiting the claims to the "preferred embodiment." In so doing, Seagate relies on a single sentence from a prior decision of this Court in *Praxair, Inc. v. ATML, Inc.*, No. Civ-03-1158-SLR, 2005 WL 2989767, at *2 (D. Del. Nov. 8, 2005) ("Claims of a patent may only be limited to preferred embodiment by the express declaration of the patentee."). D.I. 230 at p. 9. As an initial matter, however, the term "preferred embodiment" does not even appear in the '506 patent. Moreover, Seagate's "analysis" is entirely superficial, and ignores the guidance of the Federal Circuit that the issue of whether a patent is properly limited to the only disclosed embodiment is a fact-specific inquiry that requires careful consideration of the disclosure of the patent at issue:

> Although precedent offers assorted quotations in support of differing conclusions concerning the scope of the specification, these cases must be viewed in the factual context in which they arose. Whether an invention is fairly claimed more broadly than the "preferred embodiment" in the specification is a question specific to the content of the specification, the context in which the embodiment is described, the prosecution history, and if appropriate the prior art, for claims should be construed, when feasible, to sustain their validity. The usage "preferred" does not of itself broaden the claims beyond their support in the specification.

*Wang Labs, Inc. v. America Online, Inc.*, 197 F.3d 1377, 1384 (Fed. Cir. 1999).

In *Phillips*, the Federal Circuit reiterated that:

> The manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent. *See Snow v. Lake Shore & M.S. Ry. Co.*, 121 U.S. 617, 630 (1887) (it was clear from the specification that there was 'nothing in the context to indicate that the patentee contemplated any alternative' embodiment to the one presented).

415 F.3d at 1323.

5.

The *Phillips* Court explicitly rejected the notion that "bright line" rules are appropriate in

this context:

> In the end, there will still remain some cases in which it will be hard to
> determine whether a person of skill in the art would understand the
> embodiments to define the outer limits of the claim term or merely to be
> exemplary in nature. While that task may present difficulties in some
> cases, we nonetheless believe that attempting to resolve that problem in
> the context of the particular patent is likely to capture the scope of the
> actual invention more accurately than either strictly limiting the scope of
> the claims to the embodiments disclosed in the specification or divorcing
> the claim language from the specification.

*Id.* at 1323-24.

Seagate's incantation of the "rule" that claims should not be limited to the preferred

embodiment is thus not helpful to the Court. Indeed, in a recent case far more apposite than *Praxair*, this

Court held that the claims *were* limited by the disclosed embodiment. *Boston Scientific Scimed, Inc. v.

Cordis Corp.*, No. Civ.-03-283-SLR, 03-1138-SLR, 2005 WL 2614785 (D. Del. Oct. 14, 2005). The

issue in *Boston Scientific* was whether the claim term "level of TGF-beta" was properly construed to

mean the "level of *active* TGF-beta." *Id.* at *1. This Court held in the affirmative, basing its construction

on statements in the specification such as: "To be rendered active and, therefore, capable of inhibiting

vascular smooth muscle cell proliferation, the polypeptide form of TGF-beta *must* be cleaved to yield

active TGF-beta"; and "Latent TGF-beta *must* be cleaved ... in order to become capable of inhibiting the

proliferation of vascular smooth muscle cells." *Id.* at *1 n.6 (emphasis added). This Court reasoned that

"it is clear from the specification that the therapeutic agent must produce an increase in the amount of

active TGF-beta since only the active form of TGF-beta has biological activity." *Id.* at *1. As Cornice

pointed out in its claim construction briefing, the '506 patent includes similar, definitive language

describing the burst pattern, specifically that the invention "requires" a quadrature servo pattern in which

a servo burst "must" be centered in each and every data track. *E.g.*, D. I. 165, Exh. A, '506 Patent at col.

4:11-14; 12:26-30.

Seagate's reliance on *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324 (Fed.

Cir. 2005) is also misplaced. *See* D.I. 230 at 8-9. Again, Seagate merely quotes language prohibiting the

wholesale incorporation of limitations from the preferred embodiment into the claims, and stops there. There is good reason for this—unlike the '506 patent, there is no disclosure in the patent-at-issue in *JVW* comparable to the definitive limiting statements in the '506 patent. In sum, Seagate's reliance on sound bites does not withstand scrutiny. In view of the unambiguous statements in the patent itself, Cornice's proposed construction properly restricts the claims to the disclosed invention.

B.    The Intrinsic Evidence Seagate Cites Does Not Support Its Proposed Construction Of "Quadrature Servo Pattern."

As Cornice pointed out in its claim construction briefing, each and every one of the "quadrature servo patterns" disclosed in the '506 patent requires a burst centered in each data track, and the specification makes clear that the '506 patent "requires" this feature. *E.g.*, D.I. 183 at 12-21. For example, the "Detailed Description of the Invention" discloses two "families" of embodiments of the claimed quadrature servo pattern, each including eight different burst patterns for a total of 16 different patterns. Each and every one "requires" that a burst "must" be centered in each data track. *See* D. I. 165, Exh. A, '506 Patent at col. 4:11-31; col. 12:26-46 ("The positioning measuring system *requires* that a burst *must* be centered in data track 0.") (emphasis added).

In a failed attempt to counter this definitive language, Seagate cites to preceding text in the specification discussing other characteristics of the quadrature servo patterns that are not at issue, specifically, the relationships between the four bursts. D.I. 230 at 4 (*citing* '506 Patent at cols. 3:58-4:10). Seagate argues that because this description "correspond[s] precisely with the undisputed meaning of 'quadrature servo pattern'," the Court should ignore the language Cornice points to, even though it appears in the immediately following paragraph as a further description of the "quadrature servo pattern" *in the context of the '506 patent*:

> The positioning measuring system[3] requires that one of the four servo bursts of the quadrature servo pattern used must be centered in data track

---

[3]    On page 4 of its CC Opposition (D.I. 230), Seagate misstates this phrase as the "positioning *generating* system." This is misleading. As described in Cornice's Opening Brief in Support of Its Motion for Partial Summary Judgment (D.I. 168), the alleged invention of the '506 patent is a
(continued . . .)

> zero.  Thus *for the first set of quadrature servo patterns, quadrature servo pattern I* has servo burst A centered in track 0, *quadrature servo pattern II* has servo burst B centered in track 0, *quadrature servo pattern III* has servo burst C centered in track 0 and *quadrature servo pattern IV* has servo burst D centered in track 0.  In like manner, *for the second set of quadrature servo patterns, quadrature servo pattern V* has servo burst A centered in track 0, *quadrature servo pattern VI* has servo burst B centered in track 0, *quadrature servo pattern VII* has servo burst C centered in track 0 and *quadrature servo pattern VIII* has servo burst D centered in track 0.

D.I. 165, Exh. A, '506 Patent at col. 4:11-31; col. 12:26-46 (emphasis added).

Seagate's argument is illogical.  Claim construction obviously may not be based on only a partial description of the claimed limitation.  Moreover, in no way does Cornice's proposed construction "contradict" the specification as Seagate inexplicably contends.   The above paragraph describes in detail how each and every quadrature servo pattern of the '506 patent includes a burst centered in data track 0.

Seagate's attempt to dismiss the language from the "Summary of the Invention" is also unconvincing.                                        **REDACTED**

Rather,
**REDACTED**

As an initial matter, Seagate's contention is based purely on unsupported attorney argument.  Moreover, even if true, Seagate's reliance on claim differentiation is misplaced because the servo bursts being "2/3 * W" is not the only difference between claim 1 and claim 4.  For example, claim 4, in addition to incorporating the additional limitations of claims 2 and 3, also requires that each "gray scale area" have a width of 2/3 * W.  This precludes

---

(. . . continued)
"position *measuring* system" which includes two "major elements," one of which is the "position generator."  D.I. 168 at 4-5.

[4]     "Each data track *will have* a boundary defined by two servo bursts located at 1/6*W, 1/2*W, and 5/6*W positions in a data track."  D.I. 165, Exh. A, '506 Patent, col. 2:16-19 (emphasis added).  Notably, this language is not directed to any alleged "preferred embodiment," but rather is describing "the positioning system of *the present invention*."  D.I. 165, Exh. A, '506 patent at col. 1:66-67 (emphasis added).

application of claim differentiation. *RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1263 (Fed. Cir. 2003) ("Although claim differentiation is not a 'hard and fast rule of construction,' it is applicable where 'there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, *and that limitation is the only meaningful difference between the two claims*.'") (citations omitted).

Seagate's response to the language in the patent describing the illustrated patterns as "the eight quadrature servo patterns of the invention" ('506 Patent, col. 2:56-58 and col. 3:7-9) is also unavailing. In particular, Seagate cites to the canned language in the introduction of the "Brief Description of Drawings" section of the patent, which states, like most other patents, that "the invention will be described with respect to particular embodiments thereof and reference will be made to the drawings." D.I. 165, Exh. A, '506 Patent at col. 2:39-42. Based on this, Seagate

**REDACTED**

However, boiler plate language aside, the patent unambiguously *twice* describes the illustrated patterns as "*the* eight quadrature servo patterns of *the invention*," not "eight exemplary patterns" or "eight patterns of a preferred/exemplary embodiment." D.I. 165, Exh. A, '506 Patent at cols. 2:56-58, 3:7-9. And the applicants were certainly cognizant of distinguishing between "the invention" and an "embodiment of the invention" where appropriate in the '506 patent. *See* D.I. 165, Exh. A, '506 Patent at col. 7:41-42 ("In this embodiment. . . ."); col. 11:62-63 ("second embodiment of the invention"); col. 14:34-35 (same); col. 19:22 ("another embodiment of the invention"); col. 19:25-26 ("The first and second embodiments discussed above . . . ."). The description of the illustrated patterns as "the eight quadrature servo patterns of the invention" was deliberate, and is fully consistent with the entirety of the patent.

Equally misguided is Seagate's attempt to distinguish the case law cited by Cornice. With regard to *Gaus v. Conair Corp.*, 363 F.3d 1284 (Fed. Cir. 2004) and *Watts v. XL Systems, Inc.*, 232 F.3d 877 (Fed. Cir. 2000), Seagate argues that the former case relied on language in the patent which read "according to the invention" while the latter relied on language which read "the present invention

utilizes." D.I. 230 at 12-13. Seagate provides no basis to distinguish the language in those cases from the language in the '506 patent. *See* D. I. 165, Exh. A, '506 Patent at col. 2:16-18 ("Each data track will have a boundary defined by two servo bursts located at 1/6 * W, 1/2 * W, and 5/6 *W"); cols. 2:56-58, 3:7-9 ("the eight quadrature servo patterns of the invention"); cols. 4:12-14, 12:26-30 ("requires that one of the four bursts of the quadrature servo pattern must be centered in data track zero). Seeking to distinguish *Wang Labs, Inc. v. America Online, Inc.*, 197 F.3d 1377 (Fed. Cir. 1999), Seagate argues that, unlike that

case, the                                **REDACTED**

                                    D.I. 230 at 13. As discussed above, this is simply not true – the only "quadrature servo pattern" described in the '506 patent includes a burst centered in each and every data track. As to *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361 (Fed. Cir. 2003), Seagate points out that there the holding was based in part on the fact that the "specification indicates that the invention is indeed exclusively directed toward flooring products including play." D.I. 230 at 13. It then inexplicably seeks to distinguish the '506 patent, claiming that

                            **REDACTED**

     [5] Seagate appears to be in denial.

C.     Seagate Improperly Asks The Court To Construe "Quadrature
       Servo Pattern" In Isolation, Divorced From The Context Of The
       Claim And Its Usage In The Specification.

     Most of Seagate's remaining arguments concerning the construction of "quadrature servo pattern" are based on the contention that the claimed "quadrature servo pattern" is somehow a stand-alone, independent feature of the claimed combination, independent of both the data tracks and the "position generator." Seagate's premise is belied by the claim language itself, the entirety of the specification, and even its own admissions.

     First, Seagate contends that Cornice's construction of "quadrature servo pattern" "makes

---

[5]     It is worth noting that the patent-at-issue in *Alloc* did not even include explicit limiting language
like that present in the '506 patent. The court's construction was based entirely on the implicit
teachings of the patent *See Alloc*, 342 F.3d at 1368-69.

no sense" because "a disk could never have a quadrature servo pattern unless the disk also had data tracks recorded on it." D.I. 230 at 7. This is a red herring, and mischaracterizes Cornice's position.

**REDACTED**

D.I. 230 at 1-2; D.I. 185 at 11-14.
**REDACTED**

D.I. 230 at 2. Thus, the reference in Cornice's proposed construction of "quadrature servo pattern" to the relationship of the bursts to the data tracks not only "makes sense," but derives directly from the claim language itself. *Phillips*, 415 F.3d at 1314 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms . . . . the context in which a term is used in the asserted claim can be highly instructive"). Of course, the servo bursts themselves can be placed on the disk surface independently of the data tracks, but what each and every claim requires is that when the data tracks are recorded on the disk, they are located in a very specific relationship to the servo bursts, *i.e.*, with a burst centered in each data track. Cornice's proposed construction follows from the principles of *Phillips*, which mandates that the term 'quadrature servo pattern" be construed in the context of both the claims and specification of the '506 patent. 415 F.3d at 1315 (the specification "is the single best guide to the meaning of a disputed term").

Unable to point to any evidence from the intrinsic record in support of its claim construction, on pp. 6-7 of its CC Opposition (D.I. 230), Seagate resorts to citing the testimony of a Cornice engineer concerning **REDACTED**

*the accused products*. This is completely inappropriate, and blatantly violates the bedrock principle that claim construction is performed without reference to the accused products. *E.g., Vivid Tech., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("claims are construed objectively and without reference to the accused device,"). Indeed, rather than supporting Seagate's claim construction, the cited testimony **REDACTED**

11.

In a further attempt to avoid the damning evidence in the specification, Seagate argues that the limiting language in the Summary of the Invention[6] and Detailed Description[7] is directed

**REDACTED**                                                    D.I. 230

at 10-11.  As an initial matter, Seagate contradicts these positions in its own brief,

**REDACTED**

D.I. 230 at 4.

Second, this is just another example of Seagate's attempt to improperly construe terms in isolation, divorced from the context of the patent.  As Cornice pointed out in its Opening Brief in Support of its Motion for Partial Summary Judgment [No. 6] Regarding the Invalidity of U.S. Patent No. 5,600,506 (D.I. 168), the purported invention of the '506 patent is a combination of two interdependent "major elements," the disk with the specific relationship between the servo pattern and data tracks, and the "position generator."  D.I. 168 at 4-5.  These elements together provide the "positioning system of the invention."  D. I. 165, Exh. A, '506 Patent, col. 1:66.  Regardless, the distinctions Seagate attempts to draw are purely semantic.  Whether the requirement for centering a burst in every data track is considered a limitation of the "quadrature servo pattern" itself, as Cornice contends, or a limitation of the claimed disk as a whole, is a distinction without a difference.

     D.    Cornice's Proposed Construction Is Not Inconsistent With Any
           "Advantages" Of The Purported Invention Of The '506 Patent.

At various points in its briefing,

**REDACTED**

---

[6]    "Each data track *will have* a boundary defined by two servo bursts located at 1/6 * W, 1/2 * W and 5/6 * W positions in a data track where W is the width of the data track."  D.I. 165, Exh. A, '506 Patent at col. 2:16-19 (emphasis added).

[7]    "The positioning measuring system *requires* that one of the four servo bursts of the quadrature servo pattern used *must be centered* in data track 0."  D.I. 165, Exh. A, '506 Patent at cols. 4:11-15; 12:26-30 (emphasis added).

*E.g.,* D.I. 230 at 5, D.I. 252 at 11-12.  As an initial matter, this argument is again based entirely on unsupported attorney argument, and for that reason alone should be accorded no weight.  *Glaverbel Societe Anonyme,* 45 F.3d at 1562.  Moreover, Cornice's proposed construction is entirely consistent with this purported advantage.  It is undisputed that having a servo burst centered in each data track improves performance when track following along the center of a data track.

REDACTED

And track following along the center of a data track is optimal for at least certain types of heads covered by the '506 patent.

REDACTED

That track following "may be used" along other portions of the track does not change the fact that it is still optimal to track follow along track center, ergo the centering of bursts in the data tracks.  There is simply no inconsistency here—in fact, the '506 patent explicitly states that track following along data track center is a feature of "all embodiments."  D. I. 165, Exh. A, '506 Patent at col. 19:42-46:  "For all embodiments, the position signal for the transducer may be subtracted from the data track center position value, which indicat[es] the center of the addressed data track, to obtain an error signal that can be used in a track following operation."  In other words, the error signal is used to move the head back to the track center for track following.

III.    ALL OF THE ACCUSED PRODUCTS LACK A "QUADRATURE SERVO PATTERN"

A.    There Is No Dispute That The Accused Products Do Not Literally Include A "Quadrature Servo Pattern," Properly Construed.

REDACTED

*See* D.I. 252 at 19.  Indeed, Seagate's expert, Dr. Messner,

REDACTED

13.

Accordingly, there is no dispute that a "quadrature servo pattern" is literally absent from the accused products. Summary judgment of no literal infringement of each asserted claim is thus proper *E.g., Novartis Corp. v. Ben Venue*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

     **B.**    Seagate Offers No Evidence To Create A Genuine Issue Of Material Fact That The Accused Products Meet The "Quadrature Servo Pattern" Limitation Under The Doctrine Of Equivalents.

Seagate relies heavily on the declaration of its expert to contend that the accused products meet the "quadrature servo pattern" limitation under Cornice's proposed construction. However, at his

**REDACTED**

deposition,

D.I. 165, Exh. B, Messner Tr. at 53 (emphasis added).

Contrary to Seagate's characterization, this is not a mere inability to "recall an opinion sitting there at his deposition," but rather an unequivocal statement by Dr. Messner **REDACTED**

Nor, as Seagate asserts, is this a case where there is contradictory testimony, in which a jury could make a credibility determination. *See* D.I. 252 at 20.

**REDACTED**

Even if his report is considered on the issue, the sum total of Dr. Messner's opinion regarding the presence of the "quadrature servo pattern" under the doctrine of equivalents is as follows:

**REDACTED**

Exh. K, Messner Report, Exh. 6A at 4, *see also* Exh. 6B, at 2-3.

Despite Seagate's assertion that these three sentences "provide[] specific linking analysis" of Cornice's construction to the accused products,

**REDACTED**

*See* D.I. 252 at 8, 19-20.

Desperate to avoid summary judgment, and create the impression that Dr. Messner's expert report actually provides an opinion on the issue,

**REDACTED**

*See* D.I. 252 at 20.

However, these portions have nothing to do with the issue of whether a pattern that does not center bursts on data tracks is equivalent to one that does. Instead.

**REDACTED**

Seagate's reliance on these passages is misguided. For purposes of this motion, the issue is not whether the A/B/C/D bursts are present in the accused products, but their lack of alignment to the data tracks. These portions are of no moment to the issue of equivalency and do not create a genuine issue of material fact. In sum, Seagate's "evidence" does not withstand scrutiny. Seagate points to nothing in the record even pertinent to the issue of equivalents under Cornice's proposed construction, much less sufficient to sustain a jury verdict in its favor.

Apparently aware of the fatal shortcomings in its expert report, Seagate again seeks to fill the gap with unsupported attorney argument, which of course does not advance its cause. *Glaverbel Societe Anonyme*, 45 F.3d at 1562. Regardless, Seagate's attorney argument falls short in substance as well, and is largely an exercise in misdirection.

**REDACTED**

D.I. 252 at 9. Seagate's argument proves too much—under this logic, *any quadrature burst pattern* would be equivalent, including a 1:1 pattern Seagate acknowledges is in the prior art. *See* D.I. 185 at 11. Indeed, the object of any quadrature burst pattern is to provide "fine"

position information.  D.I. 252 at 4.  Seagate's argument avoids the relevant issue, *i.e.*, the optimized

track following achieved using bursts centered in data tracks.  *See Graver Tank & Mfg. Co v. Linde Air*

*Prods. Co.*, 339 U.S. 605, 609 (1950) (stating in reference to the doctrine of equivalents that

consideration "must be given to the purpose for which an ingredient is used in a patent, the qualities it has

when combined with the other ingredients, and the function which it is intended to perform").

      Seagate also argues, again with no support, that

**REDACTED**

      D.I. 252 at 10-11, 19.  Seagate's argument is pure fantasy.

**REDACTED**

To suggest otherwise, Seagate relies on a document.

**REDACTED**

      However, this has nothing to do with any

alignment or "coordination" *between* the data tracks and servo bursts, for which there is no evidence.

Again, this contrived argument creates no genuine issue of material fact.

      In another effort to obfuscate,

**REDACTED**

      D.I. 252 at 16-17.  Seagate, however, is

---

8    Seagate's use of the term "offset" is curious.  Cornice does not use the term in this context, so it is unclear why Seagate is putting it in quotes.

16.

comparing apples to oranges. The relevant inquiry is whether the accused products utilize an equivalent of the claimed "quadrature servo pattern," not whether Cornice's demodulation algorithm is equivalent to the demodulation algorithm described in the '506 patent.

Seagate's final confusing and unsupported argument is that
**REDACTED**

Here, both the factual premise and the conclusion are faulty. The "offset" Seagate cites to is the offset between the read and write elements of an MR head (D.I. 165 at 4), not "between the quadrature bursts and the data tracks." And Seagate offers no evidence of any connection between this offset and track following "over the entire width of the data track," Seagate's attorney argument to the contrary notwithstanding.

C.    Seagate's Allegation Of Infringement Under The Doctrine Of Equivalents Is Barred By Vitiation.

Seagate mischaracterizes the case law in arguing that a servo pattern which "requires" that a burst "must" be centered in every data track is not vitiated by a pattern in which no bursts are centered in the data tracks, and there is no alignment whatsoever between the bursts and the data tracks. First, Seagate relies on *Ericsson v. Harris*, 352 F.3d 1369 (Fed. Cir. 2003). The claim at issue in *Ericsson* required that a telephone power supply "only supply power to the telephone set when the receiver is off its cradle," and was alleged to be infringed under the doctrine of equivalents by a power supply that supplied some power while in the on-hook position. As Seagate acknowledges, the accused device was "very close" to only supplying power in the off-hook position. D.I. 252 at 23. Indeed, Seagate omitted a crucial fact: the accused product provided power in the on-hook position "less than 0.1% of the time." *Ericsson,* 352 F.3d at 1375. In other words, the limitation was literally met 99.9% of the time. *Ericsson* would perhaps be relevant if, for example, the accused products included centered bursts across 99.9% of the data tracks, which is not the case. In the accused products, there is no evidence that a burst is centered in even *one* of the thousands of data tracks on the disks.

Seagate also relies on *Wright Medical v. Osteonics*, 122 F.3d 1440 (Fed. Cir 1997). D.I. 252 at 24. But Seagate offers no explanation how this case is even pertinent to the case at hand. It is not - in *Wright*, a significant reason the court found no vitiation was because it rejected the claim construction relied upon by the district court. 122 F.3d at 1445.

IV.    THE ACCUSED 3.0 GB SE DOES NOT INFRINGE THE '506 PATENT LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS FOR THE ADDITIONAL REASON THAT IT LACKS THE PRECISE NUMERICAL RELATIONSHIPS REQUIRED BY ALL CLAIMS

    A.    There Is No Dispute That The 3.0 GB SE Does Not Literally Infringe The '506 Patent.

**REDACTED**

*See* D.I. 252 at 24; Exh. K, Messner Report at pp. 7-8, Exh. 6B. Therefore, at a minimum, the Court should grant summary judgment that the 3.0 GB Storage Element does not literally infringe the '506 patent. *E.g.*, *Novartis Corp.*, 271 F.3d at 1046.

    B.    Seagate Establishes No Genuine Issues Of Material Fact To Avoid Summary Judgment On The Doctrine Of Equivalents.

Again relying on its unsworn expert report, Seagate asserts that Dr. Messner's opinions cannot possibly be conclusory because his "detailed opinion" included claim charts "spanning roughly ten full pages." D.I. 252 at 12, 24. **REDACTED**

*See* D.I. 252 at 24, 30. **REDACTED**

D.I. 252 at 30 (*citing* Messner Report at ¶¶ 55-58). Seagate asserts that Cornice "only recites a portion of Dr. Messner's opinions regarding the recited ratios" citing other portions of his report. D.I. 252 at 30. But Seagate's failure to quote from any of these other portions is telling. **REDACTED**

Even then, the "analysis" is entirely superficial, and would apply equally to the prior art. Seagate offers no evidence to dispute this.

Seagate's reliance on attorney argument to avoid summary judgment is equally unavailing. First, Seagate argues that

**REDACTED**

The relevant inquiry is the substantiality of the *differences* between the accused product and what is claimed, not how the change from one version of accused product to another was achieved.

**REDACTED**

*See Glaxo Wellcome, Inc. v. Andrx Pharmas., Inc.*, 344 F.3d 1226, 1233 (Fed. Cir. 2003) (noting that whether the accused product is patented "may be weighed by the district court, particularly if there is an issue of 'insubstantial' change with respect to equivalency"). Moreover, under Seagate's logic, *any* ratio would be equivalent

**REDACTED**

Significantly, however, *every* case cited by Seagate pertains to numerical *ranges*—not single values as in the case of the '506 patent. *See* D.I. 252 at 25-28. Ranges of values are infinitely broader than single values, *i.e.*, within any given range there are an infinite number of specific numeric values literally within the scope of the range covered by the limitation. By definition, no single, precise value is critical. This is common in cases involving "recipe" patents, such as those cited by Seagate, which often claim the inclusion of an ingredient or process step within a range of values. *E.g.*, *Abbott Labs. v. Dey L.P.*, 287

F.3d 1097, 1099 (Fed. Cir. 2002) ("the phospholipid content is 75.0-95.5%"); *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1379 (Fed. Cir. 2000) ("a maturing temperature of from about 750° to about 1050° C, and a coefficient of thermal expansion of from about 12 x 10$^{-6}$ /°C. to about 17.5 x 10$^{-6}$ /°C"). The equivalents analysis for a claim that *literally* covers a multitude of numeric values is far different than the analysis of a claim that covers only a single, precise value. *See, e.g., Tanabe Seiyaku Co., Ltd. v. United States Int'l Trade Comm.*, 109 F.3d 726, 732 (Fed. Cir. 1997) ("The strictly restricted nature of the claims has much to do with the scope we accord to the doctrine of equivalents.").

As discussed in Cornice's Opening Brief in Support of its Motion for Summary Judgment [No. 5] of Noninfringement (D.I. 165) and its Opening Claim Construction Brief (D.I. 183), the claims of the '506 patent all include one and only one precise numeric value for each of the relationships between the burst pattern and data tracks, and the gray code areas/servo tracks and data tracks. D.I. 165 at 2-3, 12-14; D.I. 183 at 9-11. Cornice also demonstrated why this is the case, *i.e.*, only these precise values allow for maintenance of the characteristic that bursts are centered in each data track. D.I. 165 at 17-18. Seagate does not dispute that even a slight deviation from these values precludes this feature. Stated another way, there is a fundamental difference between the '506 patent and the patents at issue in the cases relied upon by Seagate: the specific precise values claimed in the '506 patent derive from exact mathematical relationships, not chemical recipes or processes that inherently allow for at least some variation in the relative amounts of ingredients or process parameters.

For similar reasons,                    **REDACTED**

D.I. 252 at 26. The *Abbott* case Seagate relies on claimed a wide numeric range, which the court held did not by itself preclude infringement under the doctrine of equivalents. 287 F.3d at 1107-08. However, it is undeniable that the '506 patent, directed to only precise numeric values, is deliberately narrow for the reasons discussed above. It is also beyond reasonable dispute that the consequences of such narrow claiming were entirely foreseeable. Indeed, because even slight deviations preclude the bursts from being centered in the data tracks, it would not have been appropriate even to include the modifier "about" or "approximately" in front of each claimed value.

Seagate also misstates the law in its discussion of *Johnson & Johnston Assocs. Inc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) by contending that the *absence* of disclosure in the specification of other disclosed ratios "supports application of the doctrine of equivalents." D.I. 252 at 27-28. Seagate is turning the standard in *Johnson & Johnston* on its head—that case established only a negative rule and stands for the proposition that equivalents is *precluded* for disclosed but unclaimed subject matter; it does not "support" equivalents for undisclosed subject matter.

Finally, Seagate chooses to ignore Cornice's "function/way/result" analysis, asserting that it is not required and that Dr. Messner's opinion is sufficient to withstand summary judgment. D.I. 252 at 31. Although other tests for equivalency are found in the law, it is well-established that the tripartite test is particularly suited to the subject matter of the '506 patent. *See Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1269-70 (Fed. Cir. 1999) ("the 'function-way-result' test may help detect an equivalent, particularly for mechanical elements"). Seagate's refusal to respond to Cornice's analysis is a tacit admission of its validity.

## CONCLUSION

For all the foregoing reasons, the Court should rule as a matter of law that none of the accused products infringes any claim of the '506 patent, either literally or under the doctrine of equivalents. Alternatively, the Court should grant partial summary judgment that the 3.0 GB product does not infringe any claim of the '506 patent, either literally or under the doctrine of equivalents. Finally, at a minimum, the Court should grant partial summary judgment that the 3.0 GB product does not literally infringe any claim of the '506 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Julia Heaney
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
    *Attorneys for Defendant and Counterclaim Plaintiff
    Cornice, Inc.*

OF COUNSEL:

Vernon Winters
Steven Carlson
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Russell Wheatley
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77001
(713) 546-5000

Alan J. Weinschel
David C. Radulescu
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

January 17, 2006

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on January 23, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.

and that I caused copies to be served upon the following in the manner indicated:

**BY HAND:**

William J. Marsden, Jr., Esquire
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

**BY FEDERAL EXPRESS:**
Ruffin B. Cordell, Esquire
Fish & Richardson, P.C.
1425 K Street, NW, Suite 1100
Washington, DC 20005

/s/ *Julia Heaney*
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
jheaney@mnat.com
   *Attorneys for Defendant and*
   *Counterclaim Plaintiff Cornice, Inc.*