IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,

               Plaintiff,

      v.

CORNICE, INC.

              Defendant.

C.A. No. 04-418 (SLR)

REDACTED

**PLAINTIFF SEAGATE TECHNOLOGY LLC'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT ON CORNICE'S LICENSING-RELATED
DEFENSES (CORNICE'S NINTH, TENTH AND TWELFTH AFFIRMATIVE
DEFENSES) AND ON CORNICE'S BREACH OF CONTRACT COUNTERCLAIM**

Date: January 17, 2006

Timothy Devlin (#4241)
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114

Roger S. Borovoy
David M. Barkan
Shelley K. Mack
500 Arguello Street
Redwood City, CA 94063-1526

Brian R. Nester (#3581)
Timothy W. Riffe
Christian A. Chu
1425 K Street NW, Suite 1100
Washington, D.C.  20005

Edmond R. Bannon
Lewis Hudnell III
Citigroup Center
153 East 53rd Street, 52nd Floor
New York, NY 10022-4611

Attorneys for Plaintiff
SEAGATE TECHNOLOGY LLC

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................... 1

I.    Summary Judgment Should Be Entered Against Cornice As To Any   Licensing Defense Relating to the '606, '159, '054, '461 and '845 Patents ................................... 1

II.   Summary Judgment Should Be Entered Against Cornice On Its Licensing Defenses Relating to the '506 and '754 Patents ........................................................... 2

   A.  Cornice Cannot Establish The Existence Of Any ███████████ ........... 3

      1.  Cornice and Seagate Agree On The Operative Facts Regarding ████████ ████████████████ ...................... 3

      2.  ██████████████████████████████████ To Cornice .......................................................................... 5

      3.  Cornice's Argument Regarding ███████████ Is A Red Herring ...... 8

   B.  ██████████████████████ Exists As To The '506 Patent Because ███ ██████████████████████████ .......................... 8

   C.  Cornice Is Not Immune From Suit Even If █████████████████ ██████████████████ ............................ 9

   D.  As A Matter Of Law, ███████████████████ Under The Agreement ..... 11

   E.  Cornice Has Not Established Entitlement To Any Implied License Under The Agreement ....................................................................... 13

   F.  Cornice Presents No Cognizable Evidence To Avoid Summary Judgment On Its Breach Of Contract Counterclaim ........................................... 15

      1.  Cornice Has Failed To Establish That It Qualifies As A Third Party Beneficiary Of The Agreement Under California Law ........................ 15

      2.  Cornice Fails To Establish Facts Sufficient To Prove The Necessary Claim Element Of Damages ...................................................... 17

CONCLUSION ............................................................................ 19

**TABLE OF CONTENTS (cont'd)**

**Page**

### TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aguilera v. Pirelli Armstrong Tire Corp.,*
  223 F.3d 1010 (9th Cir. 2000) .........................................................................18

*American Science & Engineering v. United States,*
  663 F.2d 82 (Ct. Cl. 1981) .......................................................................12, 13

*Bancomer, S.A. v. Superior Court,*
  44 Cal. App. 4th 1450 (1996) ......................................................................17

*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,*
  750 F.2d 903 (Fed. Cir. 1984).................................................................14, 15

*Berclain America Latina, S.A. v. Baan Co. N.V.,*
  74 Cal. App. 4th 401 (1999) ........................................................................17

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.,*
  72 F.3d 872 (Fed. Cir. 1995).......................................................................15

*Careau & Co. v. Security Pacific Bus. Credit, Inc.,*
  222 Cal. App. 3d 1371 (1990) ......................................................................18

*Conti v. United States,*
  291 F.3d 1334 (Fed. Cir. 2002).....................................................................6

*Cook Inc. v. Boston Scientific Corp.,*
  208 F. Supp. 2d 874 (N.D. Ill. 2002) ....................................................7, 8, 15

*Glass Equipment Development Inc. v. Besten, Inc.,*
  174 F.3d 1337 (Fed. Cir. 1999).....................................................................15

*Hess v. Ford Motor Co.,*
  27 Cal. 4th 516 (2002) ...............................................................................17

*Hodosh v. Block Drug Co., Inc.,*
  833 F.2d 1575 (Fed. Cir. 1987)....................................................................10

*Intel Corp. v. Broadcom Corp.,*
  173 F. Supp. 2d 201 (D. Del. 2001)...........................................5, 7, 14, 15, 17

*Intel Corp. v. U.S. International Trade Commission ("Intel"),*
  946 F.2d 821 (Fed. Cir. 1991)............................................................5, 7, 8, 9

## TABLE OF AUTHORITIES (cont'd)

Page(s)

*Intel v. ULSI,*
    995 F.2d 1566 (Fed. Cir. 1993).........................................................................8

*Landmark Development Corp. v. Chambers Corp.,*
    752 F.2d 369 (9th Cir. 1985) ...................................................................18, 19

*In re Lau,*
    321 B.R. at 205 ........................................................................................12, 18

*Mahurkar v. C.R. Bard, Inc.,*
    2004 WL. 1982531 (N.D. Ill. Sept. 7, 2004) ...................................................13

*In re Marriage of McTiernan,*
    133 Cal. App. 4th 1090 (2005) ........................................................................6

*Martinez v. Socoma Cos.,*
    11 Cal. 3d 394 (1974) ............................................................................16, 17

*Mears v. Nationwide Mutual Insurance Co.,*
    91 F.3d 1118 (8th Cir. 1996) .........................................................................18

*Members of the Peanut Quota Holders Association, Inc. v. United States,*
    421 F.3d 1323 (Fed. Cir. 2005)........................................................................6

## STATUTES

Cal. Civ. Code § 1559...........................................................................................17

iv

## INTRODUCTION

Cornice's Ninth, Tenth, Eleventh and Twelfth affirmative defenses, all based on its licensing defense, must be rejected as a matter of law. By not opposing Seagate's motion with respect to the '606, '159, '054, '461 and '845 patents, Cornice essentially concedes it has no licensing defense or counterclaim based on these patents.

In addition, Cornice's licensing defense relating to the '754 and '506 patents also fails as a matter of law because ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ – thereby precluding any protection for Cornice under the ███████████████████. In addition, Cornice fails to submit any evidence that ███████████████████████████████.

Cornice's breach of contract counterclaim, predicated on its licensing defense, must also be rejected. Cornice fails to present evidence that it was an intended third party beneficiary of the Agreement. Cornice also fails to forward admissible evidence of damages and fails to "reasonably approximate" the amount of those damages to which it might be entitled. Without such evidence, its breach of contract counterclaim fails as a matter of law.

## DISCUSSION

### I.  Summary Judgment Should Be Entered Against Cornice As To Any Licensing Defense Relating to the '606, '159, '054, '461 and '845 Patents

There is no dispute among the parties that the Court should grant summary judgment that Cornice is not licensed under any of the '606, '159, '054, '461 and '845 asserted patents. Seagate moved for summary judgment with respect to the licensing issue on these five patents, and Cornice essentially concedes summary judgment is appropriate by choosing to present no evidence or argument to the contrary. [D.I. 265 at 4.] As discussed in Seagate's opening brief, these patents fall outside the license. In lieu of identifying a factual dispute on this subject to survive summary judgment, Cornice simply notes in a footnote that it asserts other non-licensing

1

defenses related to these patents—but nowhere disputes that these patents are not covered by the Agreement.  [Id. at 4, n.1; D.I. 153, Ex. H,§ 1.7.]  As Cornice states in its opposition, "Cornice's licensing-based defenses address two of the patents in suit – the '754 and '506 patents."  [D.I. 265 at 4.]  Accordingly, the Court should grant summary judgment on any claim of license to these five patents.

## II.    Summary Judgment Should Be Entered Against Cornice On Its Licensing Defenses Relating to the '506 and '754 Patents

As discussed in Seagate's opening summary judgment brief and its opposition to Cornice's motion for summary judgment, the ████████████████████████████████ ████████████████████████████. [D.I. 152, § III; D.I. 234, § III.]  In its opposition, Cornice concedes as much: Cornice has never contended that ████████████████████████████ ███████████. [D.I. 265 at 4.]

To summarize, Cornice must show, *inter alia*, that ████████████████████ ████████ to claim benefit to the Agreement. ██████████████████████████████ ████████████████████████████████████████████████. To this end, and as Cornice concedes,[1] the Agreement narrowly tailors the definition of ████████████████ requiring, *inter alia*, that Cornice establish each and every condition below:

1)  ████████████████████████████████████;
2)  ████████████████████████████████████;

---

[1] D.I. 156 at 11.

3) 

; and

4) ██████████████████████████████████

[D.I. 153, Ex. H, § 1.10.] The undisputed record in this case shows that, as a matter of law, Cornice cannot establish either of the first two requirements because:

- ██████████████████████████████████████; and

- ████████████████████████████████████████.

In addition, the Court can summarily rule that Cornice is not licensed under the Agreement's immunity from suit provision.[2]

Finally, the Court should grant summary judgment in favor of Seagate that, prior to ██████████ ████████████████████████████████.[3] Other than an inadmissible letter, which on its face makes clear that ████████████████████████████████, Cornice offers no evidence to substantiate its assertion of sublicense – as the law requires when opposing summary judgment.

### A.    Cornice Cannot Establish The Existence Of Any ████████████

#### 1.    Cornice and Seagate Agree On The Operative Facts Regarding Cornice's ████████████ Argument

Cornice does not dispute that, in order for the accused products to be licensed, ████████████████████████████████████████████████████████. [D.I. 265 at 7-9; D.I. 153, Ex. H, §§ 1.8, 2.3.] Indeed, this slender reed is the sole basis on which Cornice asserts that ████████████████████████████████████. As shown below,

---

[2] As to the remaining requirements, there is at least a genuine factual issue in dispute for the reasons detailed in Seagate's opposition to Cornice's motion for summary judgment. [D.I. 234, § IV(C).]

[3] Again, Seagate disputes ████████████████████████ as detailed in its opposition to Cornice's motion for summary judgment. [D.I.234, § IV(E).]

██████████████████████████████████████████████████████ and therefore

Cornice's license defense can be easily extinguished as a matter of law.

    Although the parties dispute the construction of ████████████████ which is a matter of

law, the parties essentially agree on the operative facts:

- ████████████████████████████████████████████ [D.I. 156 at 2, 6; D.I. 265 at 2];[4]

- ██████████████████████████████████████████ [D.I. 156 at 6; D.I. 265 at 5-6];[5]

- ████████████████████████████████████████ [D.I. 156 at 2, 6; D.I. 265 at 2];

- ████████████████████████ [D.I. 156 at 12; D.I. 265 at 8; D.I. 235, Ex. 4 at 11];

- █████████████████████████████████████████████████. [D.I. 156 at 1-3, 5-6; D.I. 265 at 1-2, 5, 7-8].

    These undisputed facts conclusively establish that █████████████████████ ████████████ under any reasonable interpretation of that phrase in the Agreement.

---

[4] ███████████████████████████████████████████████████████ ████████████████████████████████ ██████████████████████ [D.I. 235, Ex. 5 at 41:17-42:2.]

[5] Cornice makes the half-hearted statement in a footnote that because Seagate did not subpoena ███████ ██████████████████████, Seagate somehow has some evidentiary shortfall with respect to proof as to ██████████. [D.I. 265 at 5 n.2.] The fact remains, however, ██████████████. Moreover, whether Seagate issued a subpoena █████████ is wholly irrelevant. [Id.] At summary judgment, the burden remains on *Cornice* to provide some evidence that █████████ to support its affirmative defense – but instead Cornice chose not to challenge the indisputable fact that ████████████████████████. See, e.g., Intel Corp. v. U.S. Int'l Trade Comm'n ("Intel"), 946 F.2d 821, 828 (Fed. Cir. 1991); Intel Corp. v. Broadcom Corp., 173 F. Supp. 2d 201, 206 (D. Del. 2001) (applying California law).

[6] Even had █████████████████████████████████████████████ would not confer licensed status to *Cornice*. ██████████████████████████████████ ██████████████████████████████████████████████

2.     ████████████████████████████████

**To Cornice**

Cornice nowhere disputes that ███████████████████████ [D.I. 156 at 6;
D.I. 265 at 5-6] Governing law requires exactly such ██████████████████, and
Cornice fails even to address these authorities in its Answering Brief. See, e.g., Members of the
Peanut Quota Holders Ass'n, Inc. v. United States, 421 F.3d 1323, 1330-31 (Fed. Cir. 2005);
Conti v. United States, 291 F.3d 1334, 1341 (Fed. Cir. 2002); In re Marriage of McTiernan, 133
Cal. App. 4th 1090, 1100 (2005). [D.I. 265 at 5.]  In the context of a patent license agreement,
including the Agreement at issue, to ██████████████████████ requires a gift or
some other consideration-free transfer of title.  [D.I. 153, Ex. K at 11; Ex. L at 92:5-22.]  This
interpretation is consistent with that offered by ███████████████████████████

████████████████████████████████████████████

███ [D.I. 235, Ex. 22 at 174:3-13.] ████████████████████████

████████████████████████████████████  [Id.]

Like the controlling California authorities on this subject, the definition of "transfer"
offered by Blacks' Law Dictionary similarly requires a transfer of title, even under the excerpt
plucked out of its context by Cornice.  [D.I. 265 at 5.]  Cornice omits key portions of the Blacks'
Law definition, which actually requires exchange of title to effectuate transfer of an item and
defines a "transfer" as "[a]n act of the parties, or of the law, by which the title to property is
conveyed from one person to another." [D.I. 235, Ex. 21.]  The definition of "transfer" cited by
Cornice is in accord, defining "transfer" as "[t]o convey or remove from one place, person, etc.,
to another; pass or hand over from one to another; specifically, to change over the possession or
control of (*as, to transfer a title* to land).  To sell or give."[7]  [Id.]

Still further, Cornice's interpretation of ████████████████ is untenable
because it vitiates ███████████████████ contained in the very same sentence in which the

---

[7] Unless otherwise noted, all emphasis in this brief has been added.



is found. [Id. at 5-6; D.I. 153, Ex. H, § 2.3.]

███████, reveals the intent and only reasonable construction of the clause. [D.I. 153, Ex. K at 11.] See, e.g., Broadcom, 173 F. Supp. 2d at 208 (each contractual provision to be given effect and one contractual clause informs interpretation of another). The ████████████ is an important focal point of the Agreement because it illustrates the absurdity of Cornice's position. If the ████████████ were read as Cornice suggests, an unlicensed party would be easily capable of laundering products through mere possession by a licensed party without the latter ever having to acquire title to them.[8] [D.I. 153, Ex. K at 11; Ex. L at 139:2-6.] See Intel v. ITC, 946 F.2d 821, 827 (Fed. Cir. 1991) ("Intel").

Indeed, Cornice does not dispute that its construction vitiates this ██████████ of the Agreement, but instead argues that intent must be ignored when interpreting the license. That argument is contrary to the law. The Agreement must be construed in its context and in its entirety to produce a harmonious interpretation in which no provision is effectively read out of the contract. See, e.g., Cook Inc. v. Boston Scientific Corp., 208 F. Supp. 2d 874, 881, 883 (N.D. Ill. 2002); Broadcom, 173 F. Supp. 2d at 211. Here, the Agreement is unambiguous and clearly reflects the intent of the parties with respect to the ████████████ when entering into the contract. Seagate does not ask the Court to stray from the four corners of the Agreement as Cornice suggests [D.I. 265 at 6], but rather demonstrates that the express language within the four corners of the Agreement reflects an intent precluding the untenable and

---

[8] Cornice's assertion that products could still be laundered even if title was transferred are similarly in error [D.I. 265 at 6 n.3], as the law is clear that such transactions are invalid "shams" constructed to evade legitimate licensing limitations. See, e.g., Cook, 208 F. Supp. 2d at 880-81.

internally inconsistent interpretation Cornice seeks to foist upon ███████ .

Cornice's assertion that Intel is no longer good law or is limited to its facts [D.I. 265 at 6-7] in light of Intel v. ULSI, 995 F.2d 1566 (Fed. Cir. 1993) ("ULSI"), strains credibility. Intel remains good law applicable to license agreements that do not confer unlimited foundry rights; neither the ULSI opinion nor any case citing Intel or ULSI states that Intel has been limited to its facts or is no longer good law. Where a license does not confer unlimited foundry rights, ULSI is inapposite and Intel governs. See Cook Inc. v. Boston Scientific Corp., 208 F. Supp. 2d 874, 883 (N.D. Ill. 2002). In ULSI, the Court interpreted a license agreement between Intel and HP to determine whether the patent exhaustion doctrine applied to shield ULSI from infringement of Intel's patents relating to math coprocessor wafers used in semiconductor devices. 995 F.2d at 1567-68. HP entered into a separate agreement with ULSI to manufacture coprocessor wafers covered by Intel's patents for sale as ULSI products. Id. at 1567. Nothing in the Intel/HP agreement specified that coprocessors manufactured pursuant to license had to be designed by HP. Id. at 1567, 1569. The ULSI court expressly recognized that a different case would be presented if the HP/Intel license had been limited in some relevant way, by which Intel might "have retained its right to proceed against those who entered into foundry agreements such as the present one." Id. at 1569.

In Intel, by contrast, the court interpreted a license governed by California law between Intel and Sanyo permitting Sanyo to sell its own products reading on Intel patents. 946 F.2d at 826. The Intel/Sanyo contract restricted Sanyo's "have made" rights ███████ ███████ . Id. at 827. As in this case, no evidence existed that Intel knew Sanyo might act as a foundry for other unlicensed companies without first requiring those third parties to obtain their own licenses to Intel patents. Id. at 827. In the absence of such evidence, the court found that the more natural reading of the Intel/Sanyo cross-license was that the parties intended to license each other to make, use and sell their own parts without the constraints imposed by the patent rights of the other party. Id. at 827.

Like the express limitations incorporated in the Intel/Sanyo license, the Agreement here



**█████████████████████████████████**, and further **███████** **███████████**, just as in the Intel/Sanyo license, **██████████████████████**. [D.I. 153, Ex. H, §§ 2.5, 2.3.1.] Far from the wholly unlimited license construed by the <u>ULSI</u> court, **████████████████████████████**. See <u>Intel</u>, 946 F.2d at 828. Indeed, **█████████████████████████████ ██████████████████████████████████ ████████████████████████████████████** just as Intel and HP defined math coprocessor wafers as Licensed Products in the license at issue in <u>ULSI</u>. The fact **██████████████████████████████ ██████████████████████████** further underscores the parties' intent not to convey unlimited foundry rights under the Agreement.

    3.    **Cornice's Argument Regarding █████████████ Is A Red Herring**

**███████████████████████████** does not render the accused products licensed. Cornice previously claimed that by **██████████████████████ ████████████**. As discussed in Seagate's summary judgment motion, however, **█████████████████████████**, and Cornice now appears to have abandoned this argument. [D.I. 152, § IV(D)(2); D.I. 265 at 7.] As detailed in that same motion, incorporated by reference, **█████████████████████████████ ██████████████████████████████**. [D.I. 152, § IV(D).]

    B.    **█████████████████████ As To The '506 Patent Because The ██████████████████████████████**

8

Cornice's licensing defense relating to the '506 patent also fails as a matter of law because ███████████████████████████████████████████████████████. No one disputes that the '506 patent claims particular servo patterns. [D.I. 153, Ex. C at 1:66-2:3; Ex. U at ¶¶ 53-57.]

Under the Agreement, ██████████████████████████████████████████████████████████████. [Id., Ex. H, § 1.10.] ██████████████████████████████████████████████████████. [Id.]

In this case, Seagate's focus on the ████████████████████████ is proper, since ██████████████████████████████████████████████████████████████.[9] [Id.]

Cornice does not and cannot dispute that ██████████████████████████████████████████████████████████████. [D.I. 153, Ex. BB at 56:22-58:25.]  In other words, ██████████████████████████████████████. [Id., Ex. K at 20.]

### C.     Cornice Is Not Immune From Suit Even If ███████████████████████████████████████████████



---

[9] Cornice's reliance on Hodosh v. Block Drug Co., Inc., 833 F.2d 1575 (Fed. Cir. 1987) is misplaced and actually supports Seagate's argument.  The Hodosh court considered whether the proper focal point for purposes of a patent misuse analysis was the product actually sold or an infringing ingredient of that product, and concluded that the proper focus for purposes of patent misuse and contributory infringement analysis is on the product actually sold, not any component thereof.  833 F.2d at 1577-78.  To the extent that the proper focal point of the Court's analysis is on the product actually sold to Cornice, ████████████████████████████████████████ ████████  [D.I. 265 at 8; D.I. 153, Ex. O at 105:23-106:5.]



does not apply to Cornice as a matter of law.
[D.I. 153, Ex. H, § 2.5; D.I. 265 at 9.]  First, even if the immunity analysis properly focused

solely on ████████████████████ as Cornice argues [D.I. 265 at 9],

████████ as discussed above.  Moreover, █████

[D.I. 153, Ex. H, § 2.5.]  No immunity therefore

extends to ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████.

Second, as explained in Seagate's opening brief, for ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

identified by Cornice.  [D.I. 152 at 2, 18-19; D.I. 153, Ex. H §§ 1.10, 2.5, 2.7; Ex. O at 105:23-
106:5; D.I. 234 at 16-17.]   As discussed above, the accused products are not ████████

████████ and Cornice therefore has no immunity claim.

Finally, Cornice argues in its opposition that it is ████████████████

████████████████████████████████████████████

████████████████████████████████████████████.  [D.I. 153, Ex. H, § 2.5.]  As a

result, the Agreement extends no immunity to Cornice.

**D.    As A Matter Of Law, ███████████████████ Under The Agreement**

Seagate is also entitled to summary judgment on every Cornice licensing defense

predicated on actions ██████████████████████████████████████████████████████████

████████████████████████████████████ according to the undisputed evidence of record.

First, Cornice submits no admissible evidence of sublicense.  Instead, Cornice relies on

the inadmissible, self-serving hearsay statements made in ████████████████████.  Because

████████ is inadmissible, Cornice proffers no evidence to show the existence of a sublicense.

On this basis alone, Cornice's defenses should be summarily dismissed.

Moreover, ████████████████████ actually confirms no sublicense could have existed

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

█████████████████████:

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

[Id., Ex. H, § 3.1; Ex. K at 7; Ex. L at 8:10-9:3.]  Cornice has presented no admissible evidence

that a sublicense offer was extended to or accepted ██████████████████████████████████

██████████████████████████████████████████████████████.  [Id.,

Ex. I, Ex. K at 7-8; Ex. L at 9:4-14, 9:22-10:13, 10:20-11:12, 12:19-13:8, 18:1-7, 18:21-19:5,

19:14-22, 29:4-11, 145:1-21, 150:9-11; D.I. 265 at 9-10.]  Cornice has presented no evidence of

any effective verbal offer and acceptance of a sublicense ██████████████, such as evidence of

the date and place of such a sublicense, its terms, or the persons involved in verbally offering and

accepting such a license.[10]  See, e.g., American Science & Eng'g v. United States, 663 F.2d 82,

---

[10] The testimony offered by ███████████████ and cited by Cornice in its Answering Brief [D.I. 265 at 10] is not cognizable evidence of the existence of any ████████ sublicense under the Agreement and should be disregarded, as ██████████████████████████████.  [D.I. 235, Ex. 19 at 9:7-25, 14:4-17:25, 26:24-32:14, 32:18-33:23, 34:17-39:2.]  See, e.g., In re Lau, 321 B.R. at 296-97.

86 (Ct. Cl. 1981); <u>Mahurkar v. C.R. Bard, Inc.</u>, 2004 WL 1982531, at *18 (N.D. Ill. Sept. 7, 2004).  [D.I. 265 at 9-10; D.I. 153, Ex. I, Ex. J, Ex. K at 8, Ex. L at 22:11-23:6, 37:11-38:8, 147:1-148:2; D.I. 235, Ex. 5 at 124:6-125:13, 126:9-15.]  Cornice also fails to offer evidence substantiating many of the other factual predicates required to establish a sublicense.  Cornice offers no admissible evidence that



; offers no evidence that

and supplies no showing that

Still further, the                       purports to express

that, if implemented, would not be effective to confer a sublicense under California law (whether committed to writing or not), which requires offer and acceptance to create a binding contract.  D.I. 153, Ex. J; Ex. K at 8, Ex. L at 22:11-23:6, 37:11-38:8, 147:1-148:2; D.I. 235, Ex. 5 at 124:5-125:13, 126:9-15]  <u>See</u>, <u>e.g.</u>, <u>American Science & Eng'g</u>, 663 F.2d at 86.

Finally, Cornice's reliance on the testimony of

is inapposite.

.  [D.I. 234 at 20; D.I. 153, Ex. L at 51:1-56:8.]

.  [D.I. 153, Ex. L at 51:1-56:8.]

"  [<u>Id.</u>, Ex. H, § 7.1.]

As                        , and as is axiomatic in the nature of a warranty,

, but is

rather a mere representation from  of possession of a right [D.I. 153, Ex. H, § 7.1; Ex. L at 51:1-56:8]. That warranty is not itself proof of its own veracity, and if violated, would simply give rise to claim for liability by ███████████. [Id., Ex. L at 26:6-11, 35:19-37:6.] Cornice's unsupportable interpretation of ███████████ is entirely at odds with the plain language ███████████ of the Agreement and effectively obviates the latter provision. [D.I. 265 at 10; D.I. 153, Ex. H, §§ 3.1, 7.1; Ex. K at 7.] Such a strained and unnatural reading of a contract is impermissible under California law. See, e.g., Broadcom, 173 F. Supp. 2d at 211.

### E.    Cornice Has Not Established Entitlement To Any Implied License Under The Agreement

In its claim of entitlement to an implied license under the Agreement, Cornice shifts its focus from ███████████████████ to a license directly between Seagate and Cornice. [D.I. 265 at 11-12.] As with an express license, the burden of establishing the existence of an implied license asserted in affirmative defense of a claim rests with the alleged infringer, even at the summary judgment stage. See, e.g., Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 924 (Fed. Cir. 1984).

In its Answering Brief, Cornice contends that an implied license extends to "downstream commercial actors ███████████████ to put the products to their intended use. [D.I. 265 at 11] Cornice presents no evidence at all that an implied license extends to it under the facts presented here. Indeed, while it acknowledges the governing legal authorities requiring a party claiming implied license to show that (a) the product alleged to be subject to implied license has no substantial non-infringing use and (b) the circumstances of the sale plainly indicate that a license must be inferred [id. at 11], Cornice makes no attempt to show that the circumstances under which ███████████████ "plainly indicate" the grant of an implied license from Seagate to Cornice [id. at 11-12].

Cornice cannot credibly maintain, as required for an implied license to attach, that the "circumstances of the sale plainly indicate that the grant of a license should be inferred." [D.I. 265 at 11-12.] See, e.g., Carborundum Co. v. Molten Metal Equip. Innovations, Inc., 72 F.3d 872, 878 (Fed. Cir. 1995);[11] Glass Equipment Dev. Inc. v. Besten, Inc., 174 F.3d 1337, 1342 n.2 (Fed. Cir. 1999). Here, there are no facts of record indicating that, under the circumstances of ████████████████████████████████████████████████████. Bandag, 750 F.2d at 925. Cornice also offers no evidence of ████████████████████████████████████████████ ████. [Id.]

Cornice's second basis for asserting an implied license – ████████████████ ████████████████████████████████ -- is nothing more than a restatement of its construction of the express license Agreement ████████████████████. Cornice cannot legitimately argue that the express limitations, such as ████████████████████████, should be ignored through an implied license, particularly where Cornice has no factual support. See, e.g., Broadcom, 173 F. Supp. 2d at 213; Cook, 208 F. Supp. 2d at 879. [D.I. 153, Ex. H, § 2.3 (████████████████████████████████), § 3.1 (███████████████████████ ████████), and thus precludes the possibility of an implied license concerning the same subject. Had the parties intended such an implied license to apply, ████████████████████████████ ████████.

Accordingly, the Court should grant summary judgment that there is no implied license between Seagate and Cornice.

---

[11] Cornice's attempt to rely on Carborundum to support its own implied license argument is unavailing, as the circumstances in Carborundum under which a implied license was extended (not disputed by either of the parties) are distinguishable. In Carborundum, the patentee itself sold an apparatus designed for use with its patent without placing any restrictions on customer use of the product, and an implied license extended to the patentee's customers for use of the product as intended. 72 F.3d at 875-76, 878-79. Here, by contrast, Cornice claims an implied license ████████████████████████████████.

**F.     Cornice Presents No Cognizable Evidence To Avoid Summary Judgment On Its Breach Of Contract Counterclaim**

As discussed above, Cornice has no viable licensing defense.  Therefore, this Court should not only dismiss Cornice's licensing related affirmative defenses, but also its licensing-based breach of contract counterclaim.

In addition, even were Cornice licensed, the Court should grant summary judgment that Cornice cannot sue Seagate for breach of a contract between Seagate and TDK.  Cornice has no viable claim that it is a third-party beneficiary.  To place Cornice's claim in perspective (and noting the fact that Cornice is not a party to the contract for which it claims breach), Cornice essentially asks this Court to rule that any party asserting a patent licensing defense is entitled to recoup damages associated with such a suit based on breach of contract.  Such a result cannot be correct, and violates all notions that a party is responsible for its own legal fees and costs except in rare instances.

Further, Cornice presents no evidence of damages, an element required to sustain a breach of contract claim.  This is another basis for the Court to summarily dismiss Cornice's breach of contract counterclaim.

**1.     Cornice Has Failed To Establish That It Qualifies As A Third Party Beneficiary Of The Agreement Under California Law**

Cornice has failed to establish its status under California law as a third party beneficiary of the Agreement ███████████████████.  Indeed, Cornice has submitted no evidence at all to support its theory that it was an intended third-party beneficiary of that Agreement.

Cornice essentially argues that ████████████████████████ somehow gives it a right to sue for breach of contract.  As an incidental beneficiary, however, Cornice lacks standing to enforce the terms of the Agreement.  See, e.g., Martinez v. Socoma Cos., 11 Cal.3d 394, 400 (1974).  The mere fact that the Agreement could potentially result in a benefit to Cornice, ██████████████████████████████████, is not

15

enough to confer third party beneficiary status. See, e.g., Hess v. Ford Motor Co., 27 Cal. 4th

516, 524 (2002).  As with its other licensing affirmative defenses, Cornice bears the burden of

proof to establish its third party beneficiary status, even on a motion for summary judgment.

See, e.g., Broadcom, 173 F. Supp. 2d at 206.

California Civil Code Section 1559 defines a third party beneficiary as one for whose

express benefit a contract is made, and case law requires that the contract manifest an express

intent to benefit a putative third party beneficiary at the time the contract was made.  See Cal.

Civ. Code § 1559; Hess, 27 Cal. 4th at 524; Bancomer, S.A. v. Superior Court, 44 Cal. App. 4th

1450, 1458 (1996).  Under California law, third party beneficiaries are either creditor or donee

beneficiaries.  See Martinez, 11 Cal. 3d at 400.  As discussed in Seagate's motion [D.I. 152 at

23-24], Cornice is neither a creditor or donee beneficiary, and Cornice concedes as much by not

arguing otherwise in its Answering brief.

Indeed, Cornice studiously fails to rebut the law cited in Seagate's opening brief that

makes clear that Cornice is not a third party beneficiary.  For instance, the fact that 

are both strong indications that Cornice is not, in fact, a third party beneficiary of that

Agreement.  See Berclain America Latina, S.A. v. Baan Co. N.V., 74 Cal. App. 4th 401, 403, 408

(1999).  Cornice                                                       , and

                                    .  Because Cornice

                          , Cornice cannot truly contend that the contract manifests an

express intent to benefit Cornice as a third party beneficiary at the time the Agreement was

entered.  See Cal. Civ. Code § 1559; Hess, 27 Cal. 4th at 524; Bancomer, 44 Cal. App. 4th at

1458.  In short, Cornice presents no evidence to show an express intent of the parties, at the time

of contracting, to confer third party beneficiary status on Cornice.  Moreover, intended customers

do not have the right to sue under the Agreement for breach of contract.  [D.I. 153, Ex. H, § 4.1.]

Having researched all state and federal case law,  Seagate was unable to find a single case

extending third-party beneficiary status to a customer of a patent licensee, and Cornice of course

cites none.   Indeed, under Cornice's theory, a breach of contract action would arise in every
instance in which a defendant argues a licensing affirmative defense, which obviously is not the
law.   Accordingly, the Court should summarily rule that Cornice is not a third-party beneficiary,
and dismiss Cornice's breach of contract counterclaim.

### 2.    Cornice Fails To Establish Facts Sufficient To Prove The Necessary Claim Element Of Damages

Cornice fails to present any evidence of damages.   Under California law, establishment of
damages is a necessary element of any breach of contract claim.   See, e.g., Careau & Co. v.
Security Pacific Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990); In re Lau, 321 B.R. at
296.   It is beyond dispute that a party seeking damages must present evidence *sufficient to
reasonably approximate an amount of damages in dollars and cents.*   See, e.g., Mears v.
Nationwide Mutual Ins. Co., 91 F.3d 1118, 1123 (8th Cir. 1996).   Damages for breach of contract
must be "clearly ascertainable" in both nature and origin to be awarded; the fact of damages must
be certain and the amount "reasonably approximate" to permit recovery.   See, e.g., In re Lau, 321
B.R. at 205.   Cornice's assertion that lack of damages cannot be resolved on a motion for
summary judgment is without basis in law.   [D.I. 265 at 14.]   See, e.g., Cable & Comp. Tech.
Inc. v. Lockheed Sanders Inc., 52 Fed. Appx. 20, 22 (9th Cir. 2002); Aguilera v. Pirelli
Armstrong Tire Corp., 223 F.3d 1010, 1015 (9th Cir. 2000); Landmark Dev. Corp. v. Chambers
Corp., 752 F.2d 369, 373 (9th Cir. 1985).

In its Answering Brief, Cornice wholly fails to carry its burden of presenting specific
facts to show damages with any specificity.
. [D.I. 153 Ex. CC.]  Nothing in Cornice's
Answering Brief or its interrogatory responses attempts to quantify damages purportedly

suffered in any way, much less a "reasonable approximation." Cornice further provides no explanation as to how damages should be apportioned since it admits that, at best, its licensing defense only potentially applies to two of the seven patents-in-suit. [D.I. 265 at 4, 13-14.]

Likewise, Cornice has presented no disclosure regarding the qualitative nature of its alleged breach of contract damages. [D.I. 153, Ex. AA (Resp. to Rogs. 16-17); Declaration of Timothy Devlin in Support of Plaintiff Seagate Technology LLC's Reply in Support of Its Motion for Summary Judgment on Cornice's Licensing-Related Defenses and on Cornice's Breach of Contract Counterclaim ("Devlin Decl."), Ex. 1 (Resp. to Rog. 20).] Cornice offers no admissible evidence to substantiate ███████████████; rather, all of the evidence submitted in this regard constitutes inadmissible hearsay not subject to any exception, and Cornice has refused to produce any additional evidence to substantiate its claims ████████ ████████. [D.I. 265 at 13-14; Ex. 11 at 59:3-69:4.] See Cable & Comp. Tech., 52 Fed. Appx. at 22; Landmark Dev., 752 F.2d at 373. Cornice offers no admissible evidence ███████████████████████████████ as a result of Seagate's purported breach of contract, and presents no admissible evidence ████████████████████ ████████████ as a result of the alleged breach. Cornice similarly fails to offer any specificity as to any alleged injury to ██████████████████████████ ████████. Cornice's claim to have suffered damages as the result of an alleged breach of the Agreement between Seagate and TDK is purely speculative, not stated with "reasonable approximation."

Cornice bears the burden to come forward with evidence of damages at summary judgment, which it failed to do. The Court should therefore dismiss Cornice's breach of contract counterclaim.

## CONCLUSION

For the reasons set forth above, the Court should grant Seagate's Motion for Summary Judgment of Defendant's Licensing-Related Affirmative Defenses and Breach of Contract Counterclaim.

Dated:  January 17, 2006                FISH & RICHARDSON P.C.


By:  /s/ Timothy Devlin
     Timothy Devlin (#4241)
     919 N. Market Street, Suite 1100
     Wilmington, DE  19899-1114
     Tel: (302) 652-5070

     Roger S. Borovoy (admitted *pro hac vice*)
     David M. Barkan (admitted *pro hac vice*)
     Shelley K. Mack (admitted *pro hac vice*)
     500 Arguello Street
     Redwood City, CA 94063-1526
     Tel: (650) 839-5070

     Edmond R. Bannon (admitted *pro hac vice*)
     Lewis Hudnell III (admitted *pro hac vice*)
     Citigroup Center
     153 East 53rd Street, 52nd Floor
     New York, NY 10022-4611
     Tel: (212) 765-5070

     Brian R. Nester (#3581)
     Timothy W. Riffe (admitted *pro hac vice*)
     Christian A. Chu (admitted *pro hac vice*)
     1425 K Street NW, Suite 1100
     Washington, D.C.  20005
     Tel: (202) 783-5070

     Attorneys for Plaintiff
     SEAGATE TECHNOLOGY LLC

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2006, I electronically filed with the Clerk of

Court the foregoing document using CM/ECF which will send electronic notification of

such filing(s) to the following Delaware counsel.  In addition the filing will also be sent

via hand delivery:

Jack B. Blumenfeld, Esquire                Attorneys for Defendant
MORRIS NICHOLS ARSHT &                     Cornice, Inc.
TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

I hereby certify that on January 24, 2006, I have mailed by Federal Express

Service, the document(s) to the following non-registered participants:

Matthew D. Powers                          Attorneys for Defendant
Jason D. Kipnis                            Cornice, Inc.
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065

Russell Wheatley                           Attorneys for Defendant
WEIL, GOTSHAL & MANGES LLP                 Cornice, Inc.
700 Louisiana, Suite 1600
Houston, TX  77002

Alan J. Weinschel                          Attorneys for Defendant
David C. Radulescu                         Cornice, Inc.
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153

_____
      */s/ Timothy Devlin*
        Timothy Devlin

1