IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY LLC,

                    Plaintiff,

          v.

CORNICE, INC.

                    Defendant.

C.A. No. 04-418 (SLR)

REDACTED

**PLAINTIFF SEAGATE TECHNOLOGY LLC'S REPLY
TO DEFENDANT CORNICE, INC.'S OPPOSITION TO SEAGATE'S MOTION
FOR SUMMARY JUDGMENT ON CORNICE'S THIRD, FIFTH, AND
SEVENTH AFFIRMATIVE DEFENSES**

Date: January 17, 2006

FISH & RICHARDSON P.C.
Timothy Devlin (#4241)
919 N. Market Street, Suite 1100
Wilmington, DE 19899-1114
Tel: (302) 652-5070

Roger S. Borovoy
David M. Barkan
500 Arguello Street, Suite 500
Redwood City, CA 94063-1526
Tel: (650) 839-5070

Ruffin B. Cordell
Brian R. Nester
Timothy W. Riffe
Christian A. Chu
1425 K Street NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 783-5070

Edmond R. Bannon
Lewis E. Hudnell, III
Citigroup Center
153 East 53rd Street, 52nd Floor
New York, NY 10022-4611
Tel: (212) 765-5070

Attorneys for Plaintiff
SEAGATE TECHNOLOGY LLC

# TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF PROCEEDINGS ...................................................1

II.    SUMMARY OF ARGUMENT ..........................................................................1

III.   ARGUMENT ...................................................................................................2

A.  Summary Judgment Should Be Granted on the Equitable
     Estoppel and Laches Defenses Because Cornice Failed to Offer
     the Requisite Evidence of Material Prejudice...........................................2

     1.  To establish "material prejudice," the economic losses
         must result from a change in position caused by the
         unreasonable delay or reliance.......................................................2

     2.  Cornice failed to offer evidence showing that the alleged
         economic losses resulted from any delay or reliance....................4

B.  Cornice Cannot Meet The First Element of Laches Because It
     Cannot Show that Seagate Unreasonably or Inexcusably
     Delayed Its Suit.......................................................................................7

     1.  There is no genuine dispute of material fact related to
         the industry's alleged "fast-pace" ................................................8

     2.  Seagate could not have sued a non-existent defendant in
         2001.................................................................................................9

     3.  Seagate did not know of Cornice's actual infringement
         during the parties' negotiations.....................................................9

C.  Cornice Cannot Meet The Other Elements of Equitable
     Estoppel..................................................................................................11

     1.  Cornice failed to establish the required misleading
         communication or conduct for equitable estoppel ......................11

     2.  Cornice cannot show "reliance" for equitable estoppel ...............13

D.  Cornice Failed To Offer Admissible Evidence To Support Its
     Misuse Affirmative Defense ..................................................................14

     1.  Seagate's pre-suit infringement warnings cannot be
         evidence of misuse because Cornice failed to show bad
         faith ...............................................................................................15

     2.  Cornice's litigation-related evidence cannot establish
         misuse ...........................................................................................16

i

## TABLE OF CONTENTS (cont'd)

Page

a.   Section 271(d) precludes a finding of patent misuse based on Seagate's enforcement of this action ............................................................................ 16

b.   Cornice's litigation-related issues do not constitute misuse ............................................................. 18

IV.   CONCLUSION ............................................................................ 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,
    960 F.2d 1020 (Fed. Cir. 1992) (en banc)........................................ 2, 3, 7, 9, 11, 13

B. Braun Medical, Inc. v. Abbott Laboratories,
    124 F.3d 1419 (Fed. Cir. 1997)........................................................................... 18

Depuy Inc. v. Zimmer Holdings, Inc.,
    343 F.Supp.2d 675 (N.D. Ill. 2004) ................................................................... 17

Ecolab, Inc. v. Envirochem, Inc.,
    264 F.3d 1358 (Fed. Cir. 2001)...................................................................... 2, 4, 6

Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.,
    60 F.3d 770 (Fed. Cir. 1995)......................................................................... 3, 5, 6

Glaverbel Societe Anonyme, Fosbel Inc. v. Northlake Mktg. & Supply,
    45 F.3d 1550 (Fed. Cir. 1995)............................................................................ 16

Globetrotter Software, Inc. v. Elan Computer Group, Inc.,
    362 F.3d 1367 (Fed. Cir. 2004)........................................................................... 15

Hall v. Aqua Queen Mfg., Inc.,
    93 F.3d 1548 (Fed. Cir. 1996)............................................................................. 14

Helmstreet v. Computer Entry Sys. Corp.,
    972 F.2d 1290 (Fed. Cir. 1992)........................................................................... 13

Meyers v. Asics,
    974 F.2d 1304 (Fed. Cir. 1992)........................................................................... 10

Mikohn Gaming Corp. v. Acres Gaming, Inc.,
    165 F.3d 891 (Fed. Cir. 1998)............................................................................. 15

Orson, Inc. v. Miramax Film Corp.,
    79 F.3d 1358 (3d Cir. 1996).................................................................................. 8

Paradise Creations, Inc. v. UV Sales, Inc.,
    315 F.3d 1304 (Fed. Cir. 2003)............................................................................. 9

Philbin v. Trans Union Corp.,
    101 F.3d 957 n. 1 (3d Cir. 1996)........................................................................... 5

Philips Elecs. N. Am. Corp. v. Contec Corp.,
    312 F.Supp.2d 639 (D. Del. 2004)....................................................................... 13

State Contracting & Eng'g Corp. v. Condotte Am. Inc.,
    346 F.3d 1057 (Fed. Cir. 2003)...................................................................... 3, 5, 6

Tenneco Auto. Operating Co., Inc. v. Visteon Corp.,
  375 F. Supp. 2d 375 (D. Del. 2005) ................................................................ 12

U.S. Philips Corp. v. ITC,
  424 F.3d 1179 (Fed. Cir. 2005) ............................................................... 17, 20

Virginia Panel Corp. v. MAC Panel Co.,
  133 F.3d 860 (Fed. Cir. 1997) ........................................................................ 20

Winbond Elecs. Corp. v. ITC,
  262 F.3d 1363 (Fed. Cir. 2001) ...................................................................... 12

Zenith Radio Corp. v. Hazeltine Research, Inc.,
  395 U.S. 100 (1969) ........................................................................................ 17

**Statutes**

35 U.S.C. § 271(d) (2000) ..................................................................................... 16

**Rules**

Fed. R. Civ. P. 17(b) .............................................................................................. 9

Fed. R. Evid. 801, 805 ............................................................................................ 5

## I.    NATURE AND STAGE OF PROCEEDINGS

On November 18, 2005, Plaintiff Seagate Technology LLC ("Seagate") filed a motion for summary judgment on Defendant Cornice, Inc. ("Cornice")'s Third, Fifth, and Seventh Affirmative Defenses. [D.I. 144.]  On December 16, 2005, Cornice filed its opposition to Seagate's motion [D.I. 264], with the correct exhibits supporting this opposition filed soon afterwards.  [D.I. 268.]  Pursuant to the Court's Scheduling Order [D.I. 36-1], Seagate respectfully submits this reply to Cornice's opposition.

## II.    SUMMARY OF ARGUMENT

Cornice's opposition brief is replete with hyperboles, conclusory assertions, attorney arguments, and wild accusations.  But its brief lacks what ultimately matters: evidence that meets the requirements of Fed. R. Civ. P. 56 and that establishes each element of each equitable defense at issue in this motion.

Thus, the Court can summarily dispose of the laches and equitable estoppel defenses, because Cornice failed to offer appropriate evidence of material prejudice. Indeed, Cornice's alleged economic losses could only flow from the filing and pendency of this action, not from any alleged unreasonable delay or reliance as precedent requires.

Cornice also failed to establish the other elements of laches and equitable estoppel. Specifically, it cannot establish that Seagate unreasonably and inexcusably delayed the filing of this suit, especially when Cornice did not launch its first commercial product until June 2003 – an alleged "delay" of barely a year (during which Seagate was performing its pre-suit due diligence) from Cornice's first public sale to the filing of this lawsuit.  Nor can Cornice show that Seagate misled it into believing that it would not be sued for patent infringement.  And there is no evidence of reliance related to the alleged misconduct or material prejudice; in fact, Cornice's corporate designee could not identify any.

On the misuse/unclean hand defense, Cornice's arguments notably ignore key issues necessary to meet its burden at trial.  Cornice does not dispute the applicable law, choosing to ignore it and to gloss over the evidence Cornice must present.  Because of this

1

gloss, Cornice only offers attorney argument without showing the required bad faith to base misuse on pre-suit communications, or providing any reason to ignore 35 U.S.C. § 271(d)(3)'s exemption from misuse for patent enforcement.

At bottom, Cornice's efforts to preserve these defenses do not relate to their merits (they have none), but from its desire to inject into the trial the allegations underlying its objectively baseless counterclaims in order to distract the jury from the ultimate issue of infringement, to prejudice Seagate, and to circumvent the Court's bifurcation order. This improper tactic should not be condoned, especially since Cornice failed to offer admissible evidence to support its defenses. Summary judgment should thus be entered.

## III.    ARGUMENT

### A.    Summary Judgment Should Be Granted on the Equitable Estoppel and Laches Defenses Because Cornice Failed to Offer the Requisite Evidence of Material Prejudice

Although it recites a litany of alleged injuries in its opposition brief, Cornice failed to offer any admissible evidence to establish the "material prejudice" element common to both laches and equitable estoppel. [D.I. 264 at 7-9, 15-17.] Cornice's failure to do so mandates summary judgment for Seagate. See Ecolab, Inc. v. Envirochem, Inc., 264 F.3d 1358, 1371-72 (Fed. Cir. 2001) (affirming summary judgment "because prejudice is an element that must be proved in equitable estoppel and laches" and the defendant's failure to offer evidence of material prejudice means that it "could not prevail on either defense.").

#### 1.    To establish "material prejudice," the economic losses must result from a change in position caused by the unreasonable delay or reliance

When invoking laches or equitable estoppel, an infringer must establish that it suffered material prejudice.[1] A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc) (holding that "material prejudice" is a requirement for both laches and equitable estoppel affirmative defenses). Mere economic losses are not

---

[1] Cornice has not asserted that it suffered any evidentiary prejudice, limiting its claims solely to economic prejudice.

2

enough to constitute material prejudice, because "[s]uch damages or monetary losses are not merely those attributable to a finding of liability for infringement." Id. at 1033. Otherwise, "[e]conomic prejudice would then arise in every suit." Id. More is required, and this "something more" is a "nexus" or a causal connection to the delay or reliance.

For laches, the economic losses must result from a change in economic position made during the period of delay. See State Contracting & Eng'g Corp. v. Condotte Am. Inc., 346 F.3d 1057, 1066 (Fed. Cir. 2003). The defense falters without this change in economic position and the requisite causal connection to the delay:

> First, the contractors have failed to show that they changed their economic position during the period of delay by making the types of expenditures that are recognized as giving rise to material prejudice. "Such damages or monetary losses are not merely those attributable to a finding of liability for infringement. Economic prejudice would then arise in every suit. The courts must look for a change in the economic position of the alleged infringer during the period of delay." Aukerman, 960 F.2d at 1033 (internal citations omitted). The economic prejudice asserted by the contractors is limited to the amount of their infringement liability and thus is not sufficient to support the laches defense.
> Second, the contractors have failed to establish a nexus between the delay in filing suit and their asserted economic injury. . . . The contractors also have failed to show that they would not have entered into the contracts with [a third-party] to construct the sound barrier walls if suit had been brought earlier.

Id. (emphases added). This strict requirement ensures that the alleged "material prejudice [is] attributable to the delay." Aukerman, 960 F.2d at 1028.

Likewise, the material prejudice required to establish equitable estoppel must also result from a change in economic position caused by the alleged reliance. Aukerman, 960 F.2d at 1028 ("Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." (emphasis added)). Given this "nexus" requirement, the infringer must establish that it "would have acted differently under other circumstances." Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp., 60 F.3d 770, 776-77 (Fed. Cir. 1995) (reversing finding of estoppel because infringer "totally fail[ed] to show that he acted in reliance on supposed actions of Gasser rather than a business judgment.").

3

Because of the common requirements for "material prejudice," both defenses fall if the infringer cannot offer evidence connecting the prejudice to a change in economic position caused by the delay or reliance. Ecolab, 264 F.3d at 1371-72 (affirming summary judgment of no laches or estoppel because infringer "could not demonstrate that it would be materially prejudiced if [patentee] were permitted to pursue its infringement action.").

### 2. Cornice failed to offer evidence showing that the alleged economic losses resulted from any delay or reliance

To establish material prejudice for both laches and equitable estoppel, Cornice advances the same excerpts of Mr. Magenis (its founder)'s deposition testimony to show that (i) Cornice allegedly suffered substantial economic losses, and (ii) it could have redesigned its infringing products had there been no alleged delay or reliance. [D.I. 264 at 7-8 & 16-17.] Not only is this testimony full of inadmissible hearsay, it is also inherently suspect since it came from an interested person and lacked any documentary or testimonial corroboration. Nevertheless, even if – for the sake of argument and for the sole purpose of this motion (Seagate disputes these allegations and does not concede that Cornice suffered any injuries) – it were credited with veracity, this testimony still fails to proffer a genuine dispute of material facts because none of the alleged injuries could have resulted from a change in position caused by any supposed delay or reliance.

First, none of the alleged economic injuries recited by Mr. Magenis, and cited by Cornice in its brief, could have resulted from Seagate's supposed delay in bringing suit or Cornice's supposed reliance. To the contrary, Mr. Magenis's testimony linked these alleged injuries to the filing of this current lawsuit, rather than to any act Cornice may have taken before the litigation based on Seagate's alleged delay or misconduct:

- **REDACTED**

[D.I. 268 Ex. 9 at 60:5-12 & 77:13-79:25.]

**REDACTED**

4

- **REDACTED**

   [Ex. A (July 12, 2005 Ltr. fr. Mr. Riffe to Mr. Radulescu).][2]

- 
   **REDACTED**

   ("                                   **REDACTED**

[3] [E.g., id. at 60:1-4

   ."); id. at 73:20-77:12.]

- **REDACTED**

   . [Id. at 61:7-67.]                         **REDACTED**

   [Id. at 61:17-19.]

- 
   **REDACTED**

   [D.I. 145 Ex. 18.]                    **REDACTED**

   [D.I. 268 Ex. 9 at 212-13.]

[D.I. 264 at 7-8 & 16-17.]  Hence, Cornice's economic injuries – if any – suffer from the

same flaw as those in Gasser Chair and State Contracting: there is no evidence that the

alleged injuries were caused by any action Cornice took as a result of Seagate's supposed

delay or conduct.  To the contrary, Mr. Magenis's testimony only indicated a link between

---

[2] The lettered exhibits cited in this brief refer to the exhibits attached to the Declaration of Timothy Devlin in support of this reply brief, filed concurrently on January 17, 2006.

[3] Not only is Mr. Magenis's testimony irrelevant to the "material prejudice" element, it is inadmissible at trial and thus at this summary judgment stage because it is hearsay (or hearsay within hearsay).  Fed. R. Evid. 801, 805.  His testimony recounts **REDACTED**  Because these ' out-of-court statements are offered for the truth of the matter asserted (the alleged injury caused by the litigation), the statements are inadmissible hearsay at trial.  And these statements are not usable at this stage unless the anonymous declarants will testify at trial – a condition that Cornice does not plan to meet as shown by its failure to list these declarants on its list of fact witnesses.  See Philbin v. Trans Union Corp., 101 F.3d 957, 961 n. 1 (3d Cir. 1996) (ruling that hearsay statements of unidentified

5

the alleged injuries and the pendency of this action, rather than a link to any alleged delay or reliance necessary to establish a defense of laches or equitable estoppel.

Second, Cornice failed to offer any evidence to support its assertion that it would have changed its design and would have taken steps to avoid infringement but for the alleged delay or reliance. [D.I. 264 at 16-17.] Laches precedent requires that Cornice demonstrates that "an earlier filing would have led [it] to adopt a non-infringing alternative, and . . . that an earlier filing would have led [it] to alter [its] behavior or avoid incurring certain expenditures," State Contracting, 346 F.3d at 1067, while equitable estoppel law demands that Cornice establishes that it "would have acted differently under other circumstances." Gasser Chair, 60 F.3d at 776-77. Cornice does not meet either requirement. Instead, it only offers conclusory attorney arguments on this subject [D.I. 264 at 7-8 & 16-17], unsupported even by the testimony cited to buttress these arguments. This cited testimony – again from Mr. Magenis's deposition – can only establish that

**REDACTED**                     . Specifically, Mr. Magenis offered the following reasons for the changes identified by Cornice [D.I. 264 at 8 n.2-4]:

- **REDACTED**
  [D.I. 268 Ex. 9 at 95:3-7];

- **REDACTED**
  [id. at 97:7-12];

- **REDACTED**
  [Id. at 91:14-19.]

**REDACTED**                     these changes were – supposedly – "merely business decisions to capitalize on a market opportunity." Ecolab, Inc. v. Envirochem, Inc., 264 F.3d 1358, 1372 (Fed. Cir. 2001). Consequently, Cornice has "failed to establish a nexus between the delay in filing suit and [its] asserted economic injury." Id. at 1066.

---

individuals cannot be considered on summary judgment if incapable of being admissible at trial). [Ex. E (Nov. 21, 2005 Cornice's List of Fact Witnesses).]

6

Therefore, because Cornice has not offered any admissible evidence to establish a vital element of its affirmative defense at trial, summary judgment in Seagate's favor on Cornice's Third and Seventh Affirmative Defenses is therefore appropriate.

### B.    Cornice Cannot Meet The First Element of Laches Because It Cannot Show that Seagate Unreasonably or Inexcusably Delayed Its Suit

Not only has Cornice failed to meet the "material prejudice" element of laches, but the defendant has not even offered admissible evidence to show that Seagate "delayed filing suit for an unreasonable and inexcusable length of time." Aukerman, 960 F.2d at 1032. Cornice does not even dispute the following facts from Seagate's motion:

- Cornice was not incorporated until August 1, 2002 – less than 2 years before Seagate filed this action. [D.I. 145 Ex. 3 at 1.]

- Cornice did not have a commercial product until it launched its 1.5 GB Cornice drive in June of 2003 – just 1 year before this lawsuit's filing. [D.I. 145 Ex. 7.]

- As soon as Seagate obtained a commercial Cornice drive, it performed extensive pre-suit testing to ascertain infringement. [D.I. 144 at 10; D.I. 145 Exs. 14-15.]

- Once Seagate confirmed infringement of its patents-in-suit, it promptly filed this action in June of 2004. [D.I. 1].

- Despite extensive discovery, litigation, and motion practice in the ITC, Cornice abandoned its laches defense during the ITC investigation. [D.I. 144 at 11; D.I. 145 Exs. 16-17.]

- Mr. Magenis admitted that          **REDACTED**
  . [D.I. 145 Ex. 12 at 35:24-36:8.]

[See D.I. 264 at 14-16 (failing to rebut, or even address, these facts).]  These undisputed facts establish that there is no unreasonable or inexcusable delay between the time Cornice launched its commercial product in mid-2003 and the filing of this action.

In response, Cornice only offers three arguments: (1) given the fast pace of the industry, any delay is unreasonable or at least a question of fact; (2) even if Cornice did not exist until August 2002, Seagate could have sued earlier because it allegedly had full access to Cornice's design information during the parties' negotiations between November 2001 and early 2003; and (3) Seagate knew or should have known about Cornice's infringement from the parties' negotiations between November 2001 and early 2003, and

7

thus should have acted sooner than June 2004. [D.I. 264 at 14-15.] All three arguments are specious.

      **1.**     **There is <u>no</u> genuine dispute of material fact related to the industry's alleged "fast-pace"**

Even if this industry were arguably "fast paced," this point is irrelevant without proof of another – unsubstantiated in this case – premise: that any delay in bringing suit in a "fast paced industry" must be unreasonable and inexcusable because product lifetimes are short and any delay is harmful to the financial health of a start-up company.[4]

But Cornice has offered no evidence to justify this premise. Instead of supporting this premise with evidence (such as an expert's declaration), Cornice only offers inadmissible attorney arguments. See Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1372 (3d Cir. 1996) ("Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion.").

Not only is there no evidence, but the facts of record contradict this implicit premise. If product lifetimes were truly that short, the 1.5 GB drive Cornice launched in June 2003 would have become obsolete by the time Seagate commenced this action in June 2004. [Ex. B (May 2, 2005 Joint Press Release); D.I. 145 Ex. 7 (Cornice timeline).] Contrary to this assumed premise, Cornice continued to sell its infringing 1.5 GB disc drives until the parties' May 2005 ITC settlement forced it to discontinue manufacturing the product. [Ex. B.] But for the settlement, Cornice might still be selling that drive today.

---

[4] To the extent Cornice insinuates that a "shortened" presumption should apply for a "fast-paced" industry, it failed to offer any basis in fact or law for such a sharp departure from precedent. The Federal Circuit clearly set six years as the minimum period before the presumption of laches can attach (irrespective of the industry at issue), basing the six-year rule on precedent and the restriction on damages recovery embodied in section 286 of the Patent Statute. Aukerman, 960 F.2d at 1034-35 ("In sum, we conclude that the presumption of laches based on the relevant six-year period, previously adopted in our precedent, should be maintained.").

  **2.**  **Seagate could not have sued a non-existent defendant in 2001**

   Even if Seagate had actual knowledge of Cornice's infringement since late 2001 (yet another unsubstantiated argument), Seagate could not perform the impossible by suing a corporation that did not yet exist under state law and that was not amenable to suit in any court. See Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1307-09 (Fed. Cir. 2003) (applying state law to determine whether a corporation administratively dissolved for failing to file an annual report had the capacity to sue and be sued); Fed. R. Civ. P. 17(b) ("The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."). Had Seagate sued Mr. Magenis or any his co-founders for patent infringement, they may conceivably argue that the laches clock started in late 2001.[5] The defendant in this case is not Mr. Magenis or any his co-founders; it is Cornice, Inc., a corporation incorporated on August 1, 2002. [D.I. 145 Ex. 3 at 1 (showing Cornice's incorporation date as August 1, 2002).] And until its incorporation, Cornice did not exist and could not be materially prejudiced (the second element of laches) in any way. Any knowledge Seagate had before Cornice's incorporation is thus irrelevant to laches.[6]

  **3.**  **Seagate did not know of Cornice's actual infringement during the parties' negotiations**

   Cornice does not assert constructive knowledge of infringement between 2001 and 2003; it simply argues that Seagate had actual knowledge about Cornice's infringement thanks to information made available during the negotiations at the time. [D.I. 264 at 15.] This contention is without merit for at least three reasons.

---

 [5] It is inconceivable that Cornice can claim the potential laches benefit – and concomitant liability – of its founders, unless it expressly draws aside the corporate veil and concedes that it is a mere alter ego of its founders.

 [6] Even assuming Cornice could have been sued before it existed and Seagate had knowledge of infringement at the time, Cornice cannot show that the delay period was "inexcusable." This period involved negotiations, which are per se justifiable and which toll the laches clock until the negotiations concluded in early 2003. See Aukerman, 960 F.2d at 1033 (stating that "negotiations with the accused" is a recognized excuse to laches).

First, there is no evidence that there was a completed product or finalized components that Seagate could have examined during this period to determine infringement. And Cornice did not present any evidence to that effect.

Second, any knowledge Seagate may have discerned from the negotiations was not actionable, because a strict reciprocal non-disclosure agreement covered all information – including the limited technical information provided to a small group of Seagate employees during the negotiations – shared between Mr. Magenis's group and Seagate. [D.I. 144 at 8; D.I. 145 Exs. 10-11.] Once the negotiations ended and upon Cornice's request, Seagate returned Cornice's confidential information without ever using it for purpose of this lawsuit. [Ex. C (June 24, 2003 Ltr. fr. Ms. Durham to Mr. Magenis).] The laches doctrine penalizes a patentee's unreasonable delays; it does not compel breaches of contractual duties or a blind race to the courthouse. Otherwise, patentees would refuse to negotiate before filing a lawsuit, leading to the obsolescence of alternative dispute resolutions and licensing talks. Thankfully, that is not the current law.[7] See Meyers v. Asics, 974 F.2d 1304, 1307 (Fed. Cir. 1992) (reversing finding of laches where patentee's period of delay was due to negotiations, including licensing negotiations).

Third, for some of the technologies in suit, infringement cannot be assessed from the naked eye or the high-level technical information available during the negotiations. For instance, to determine infringement of Cornice's recording media and servo pattern, Seagate had to perform extensive and time-intensive testing and reverse-engineering of Cornice's components. [D.I. 144 at 10; D.I. 145 Exs. 14-15 (ITC Complaint exhibits showing testing results establishing infringement).] In fact, in 2001-02,

REDACTED

. [Ex. D (Tr. of Dec. 7, 2004 M. McNeil

---

[7] Cornice has never alleged that Seagate relied on technical information shared during the negotiations as a basis of the action. In fact, there is no breach of contract claim associated with the negotiations' non-disclosure agreement.

Depo.) at 12:15-14:19; 117:8-117:14; 125:3-126:3.] Accordingly, because there is no dispute of material fact on the first element of laches, summary judgment is appropriate.

### C.   Cornice Cannot Meet The Other Elements of Equitable Estoppel

In addition to material prejudice, the defendant must also offer admissible evidence on the other two elements of equitable estoppel: misleading conduct and reliance. Given Cornice's abandonment of this defense in the ITC investigation [D.I. 144 at 23-24; D.I. 145 Ex. 17], it is not surprising that this last-ditch effort to prove these two estoppel elements leads to self-contradictory, and ultimately unpersuasive, arguments.

#### 1.   Cornice failed to establish the required misleading communication or conduct for equitable estoppel

The first element of equitable estoppel requires proof that "[t]he patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer." Aukerman, 960 F.2d at 1028. "'Conduct' may include specific statements, action, inaction, or silence where there was an obligation to speak." Id. Cornice has not offered any such evidence.

The undisputed facts show that Seagate notified Cornice of its intent to enforce its patent rights. Although the defendant discusses at length its version of the negotiations between November 2001 and early 2003 [D.I. 264 at 4-6], Cornice's opposition brief ignores – and thus does not dispute – that Seagate expressly gave notice of possible patent infringement in the April 10, 2003 letter from its General Counsel to Cornice's CEO. [D.I. 145 Ex. 6.] This letter clearly described Seagate's large patent portfolio, Cornice's risks in disregarding its duty of due care, and Seagate's intent to " not permit any company to freely use its intellectual property." [Id. at 2.] Rather than causing Cornice to "reasonably infer that the patentee does not intend to enforce its patent," id., this unambiguous cease and desist letter put Cornice on notice that Seagate would enforce its intellectual properties. This undisputed fact alone undermines the allegation that Seagate would not file suit. See Tenneco Auto. Operating Co., Inc. v. Visteon Corp., 375 F. Supp. 2d 375,

11

383 (D. Del. 2005) (granting summary judgment of no equitable estoppel because "[a] cease and desist letter would not lead an alleged infringer to reasonably infer that the patentee does not intend to enforce its patents against the alleged infringer.").

As to the facts offered to create an alleged factual dispute, Cornice cannot decide which way it should twist these facts. To establish this element of equitable estoppel, Cornice disputes that the Patent Minefield presentation was ever a threat of lawsuit, being instead a promise of cooperation from which Cornice inferred an intent not to sue. [D.I. 264 at 4-6.] But just a few pages later in the same brief, Cornice does an about-face for purpose of its misuse defense and now characterizes the Patent Minefield as a direct threat of patent litigation [Id. at 9-11], going so far as to state that "[p]articularly ominous in that presentation was the statement that '[e]ven minor nuisance litigation' could be fatal." [Id. at 10.] The presentation is either a promise not to sue or a direct threat of suit, but it cannot be both depending on which defense Cornice is presenting on a particular page of its brief. Cornice's inconsistency is a clear sign that there is no merit to this defense and no evidence on which a reasonable fact finder could find in its favor.

Even if Cornice's re-characterization of the Patent Minefield were accepted arguendo for this motion, its revisionist approach to the evidence actually compels summary judgment in Seagate's favor. Indeed, the Federal Circuit requires that, "for this form of [equitable] estoppel, the alleged infringer must have knowledge of the patentee and its patent and must reasonably infer that the patentee acquiesced to the allegedly infringing activity for some time." Winbond Elecs. Corp. v. ITC, 262 F.3d 1363, 1374 (Fed. Cir. 2001) (emphasis added) (rejecting equitable estoppel claim because the defendant was not aware of patent-in-suit). According to Cornice's own admissions and statements in its brief, (1) Seagate never threatened Cornice with patent litigation during the negotiations [D.I. 264 at 4-6]; (2) even the Patent Minefield presentation in 2002 was not a threat, being instead an offer of protection against third-party patentees since Seagate "had no intention of putting Cornice on notice of violation of Seagate's own patent portfolio" [id. at 5]; and

12

(3) there was an "absence of a threat, and the continued promises of goodwill." [Id. at 6.]
According to Cornice's versions of the facts, Seagate never threatened Cornice with its
patent portfolio, and Cornice was allegedly unaware of the patents-in-suit or any possible
infringement during the negotiation period. Consequently, Cornice lacked the requisite
knowledge of the patents-in-suit and any reason to "reasonably infer that the patentee
acquiesced to the allegedly infringing activity for some time." Id. Under these facts,
summary judgment in Seagate's favor is appropriate.[8] See Philips Elecs. N. Am. Corp. v.
Contec Corp., 312 F.Supp.2d 639 (D. Del. 2004) (granting summary judgment of no
equitable estoppel in part because "CMT [infringer]could not have been misled about
Philips [patentee]'s intentions to enforce or not enforce Philips' patent rights, since CMT
has no idea those rights existed.").

### 2.    Cornice cannot show "reliance" for equitable estoppel

Cornice attempts to establish the "reliance" element by pointing to its renewal of
the non-disclosure agreement in October 2002 and by stating that it continued to develop
its infringing disc drives. [D.I. 264 at 7.] But that is not enough to meet this burden.

On the first point, the renewal of the NDA in October 2002 is irrelevant to this
inquiry. Not all actions related in time to the alleged conduct amounts to reliance;
precedent requires an actual connection between the reliance and both the resulting
material prejudice and the alleged conduct. Aukerman, 960 F.2d at 1028. Here, there is no
evidence establishing that the renewal of the NDA resulted from Seagate's alleged
misconduct or caused any of the material prejudice Cornice cites in its brief. [D.I. 264 at
7-8.] Further highlighting the irrelevance of the NDA is the fact that Cornice never

---

[8] To the extent Cornice attempts to rely on Seagate's alleged silence about its large patent
portfolio as the basis for equitable estoppel, that is not enough. "Silence alone will not
create an estoppel unless there was a clear duty to speak," Aukerman, 960 F.2d at 1043,
and Cornice failed to establish here that Seagate had a duty to warn about its patents or to
immediately enforce its rights. See Helmstreet v. Computer Entry Sys. Corp., 972 F.2d
1290, 1295 (Fed. Cir. 1992) ("[M]ere silence must be accompanied by some other factor
which indicates that the silence was sufficiently misleading as to amount to bad faith.").

13

claimed that Seagate used any technical information shared during the negotiations as a basis of this action.

On the second point, Cornice's development of infringing devices to meet market demands does not amount to reliance for estoppel purposes. To avoid summary judgment, Cornice had to offer contemporaneous evidence demonstrating such reliance. See Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1558 (Fed. Cir. 1996) (faulting district court for relying on post-hoc conclusory statements rather than contemporaneous evidence of reliance). But Cornice only offers attorney arguments and a quote from Mr. Magenis's deposition about his post-hoc belief regarding what Seagate told him. [D.I. 264 at 7.] At best, the quotation may support the first element of conduct, but it shed no light on the reliance element. It is not surprising that Cornice could not find a better quote from Mr. Magenis, given that

**REDACTED**

. [D.I. 265 Ex. 9 at 51:4-24.] Accordingly, summary judgment in Seagate's favor is appropriate.

### D.     Cornice Failed To Offer Admissible Evidence To Support Its Misuse Affirmative Defense

Consistently with its tactics throughout the ITC investigation and this action, Cornice's positions remain a moving target. In its opposition brief, Cornice abandoned most of the bases for misuse that it had listed in its Interrogatory responses. Specifically, Cornice no longer cites as evidence of misuse either the filing of this action and the ITC investigation, or Seagate's continued assertion in this action of all seven patents-in-suit. [Compare D.I. 264 at 9-14 with D.I. 145 Ex. 10 at 33.]

Instead, Cornice presents hyperboles and conclusory assertions without supporting evidence. [D.I. 264 at 9-14.] Stripped of rhetoric, Cornice's "evidence" falls into two categories: pre-suit events and litigation-related issues. As to the first category, Cornice relies solely on the Patent Minefield presentation in light of Mr. Hudson's April 2003 warning letter to imply that Seagate had a nefarious intent to force a licensing deal or buy-

14

out. [D.I. 264 at 9-11.] As to the litigation-related issues, Cornice characterizes this lawsuit as a nuisance litigation based on (1) infringement assertions related to the '159 patent, (2) Seagate's continued assertion that the 4.0 GB drive infringes the patents-in-suit, and (3) Seagate's continued prosecution of the suit despite Cornice's alleged protection under the TDK cross-license. [Id. at 11-13.] Seagate responds to each issue in turn.

### 1.   Seagate's pre-suit infringement warnings cannot be evidence of misuse because Cornice failed to show bad faith

Before the courts may inquire into a claim of misuse related to pre-suit communications, the infringer must meet "a threshold showing of incorrectness or falsity, or disregard for either." Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 897 (Fed. Cir. 1998). The Federal Circuit adopted this rule, because "a competitive commercial purpose is not of itself improper, and bad faith is not supported when the information is objectively accurate." Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1377 (Fed. Cir. 2004). Cornice does not dispute the law on this point, preferring to ignore it. [Id. at 9-11.]

Cornice does not even try to establish that the Patent Minefield presentation or Mr. Hudson's April 2003 letter contained any "incorrectness or falsity, or disregard for either." [Id. at 9-11.] Had Cornice tried, its efforts would have been in vain, because neither document evinces any "bad faith," as required by precedent and as extensively discussed in Seagate's opening brief on this issue. [D.I. 144 at 17-19.]

Rather than offering evidence of bad faith, Cornice levies unsupported accusations to create a modicum basis for its misuse defense. For instance, Cornice claims that Seagate prepared the Patent Minefield presentation to improperly "lure" the start-up company into a licensing or buy-out deal. [Id. at 9-10.] It also contends that Seagate intended then – and now – to assert "minor nuisance litigation" that would be fatal to Cornice if the defendant refused Seagate's demands. [Id.] The end-goal, according to Cornice, was to force the defendant "to cede 'majority control of start-up' to Seagate, and

to extend a cross-license to Cornice's own technology." [Id. at 11.] But there is no evidence – such as deposition testimony, declarations, admissions, answers to interrogatories, etc. – to support any of these assertions. All that Cornice offers is unsupported attorney arguments. See Glaverbel Societe Anonyme, Fosbel Inc. v. Northlake Mktg. & Supply, 45 F.3d 1550, 1562 (Fed. Cir. 1995) (requiring party to offer "evidentiary support for its assertion," not simply "attorney argument").

The dearth of evidence is not surprising, given Cornice's inconsistent theory regarding the Patent Minefield presentation. On one hand, in the context of misuse, the presentation was a threat of nuisance litigation to coerce a license or a cheap acquisition. [Id. at 9-11.] On the other hand, for purposes of equitable estoppel, Cornice asserts that the presentation was never a threat of lawsuit, being instead a promise of cooperation. [Id. at 4-6.] The presentation is either a promise not to sue or a direct threat of litigation, but it cannot have such diametrically opposed meanings at the same time. At bottom, Cornice's inconsistent approach to the presentation shows that its misuse defense, like its equitable estoppel contention, remains a theory in search of supporting evidence.

### 2.    Cornice's litigation-related evidence cannot establish misuse

#### a.    Section 271(d) precludes a finding of patent misuse based on Seagate's enforcement of this action

Reaching for support, Cornice jettisons its previous bases for misuse and raises three new allegations that supposedly show patent misuse. [D.I. 264 at 11-14.] But it has not – and cannot – overcome the statutory immunity provided by § 271(d)(3):

> (d) No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following:
>             * * *
>     (3) sought to enforce his patent rights against infringement or contributory infringement;

35 U.S.C. § 271(d) (2000) (emphasis added). The statute's plain language is clear and expressly excludes, as bases for a charge of misuse, any evidence related to Seagate's

16

filing and prosecution of its patent rights in this action. Without this provision, defendants could easily sidetrack a patent case into extensive ancillary litigation of patent misuse based on what occurred during the action. For this reason, courts faced with Cornice's present attempt to assert misuse have summarily dismissed such efforts. See, e.g., Depuy Inc. v. Zimmer Holdings, Inc., 343 F.Supp.2d 675, 684-85 (N.D. Ill. 2004) (granting summary judgment for patentee on misuse issue, because in light of § 271(d)(3), "I decline to infer any patent misuse from DePuy's litigation history").

To overcome this clear statutory proscription, Cornice only advances two unpersuasive arguments. [D.I. 264 at 13-14.] It first asserts that the Patent Minefield and Mr. Hudson's 2003 warning letter somehow justifies a disregard of the statute. [Id. at 13.] Like its other misuse contentions, this assertion lacks the force or support of precedent and evidence; it is nothing but attorney argument improperly urging this Court to ignore Congress's intent.

As an alternative argument, Cornice also contends that Seagate's alleged attempt to force Cornice to license Seagate's entire portfolio negates § 271(d)(3) under the doctrine of Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 135 (1969). [Id. at 14.] Seagate never demanded (and Cornice has proffered no evidence to the contrary) that Cornice take a license to the entire Seagate portfolio. More importantly, Cornice's argument is legally specious because it is again mixing legal apples with legal oranges. Although Zenith prohibits tying arrangements in which the patentee conditioned the grant of a license on the purchase of unpatented goods, the Federal Circuit clearly held that conditioning the grant of certain patents on the licensing of other patents cannot constitute illegal patent misuse per se or under the rule of reason. U.S. Philips Corp. v. ITC, 424 F.3d 1179, 1187-91 & 1197-98 (Fed. Cir. 2005) (reversing ITC's determination that package license is misuse per se or under the rule of reason).

        **b.**      **Cornice's litigation-related issues do not constitute misuse**

Even if § 271(d)(3) did not apply here, none of the litigation-related practices cited by Cornice can constitute "the impermissibl[e] broaden[ing of] the 'physical or temporal scope' of the patent grant with anticompetitive effect" that is the cornerstone of patent misuse. <u>B. Braun Medical, Inc. v. Abbott Laboratories,</u> 124 F.3d 1419, 1426 (Fed. Cir. 1997) (citations omitted). Because each one of these issues are the subject of extensive briefing and arguments, Seagate only provides a brief summary of its response from the relevant brief, along with a record citation for the Court's convenience.

    (1) *Infringement assertions related to the '159 patent* – Cornice asserts that Seagate improperly maintains that the 3.0 GB and 4.0 GB drives still infringe the '159 patent. [D.I. 264 at 11-12; <u>see also</u> D.I. 158.] As Seagate stated in its responsive brief on this issue,

>     Cornice's additional argument that Seagate continues to allege infringement of its 3.0 GB Storage Element is suspect. First, Seagate did not accuse the 3.0 GB Storage Element of infringing any claim of the '159 patent during the ITC investigation. Second, as Cornice admits,        **REDACTED**
>
>  . [Ex. 7 at 22 n.2.]
>     For at least these reasons, Cornice understood that Seagate did not accuse its 3.0 GB of infringing the '159 patent and could have raised its misconceptions during any of the various meet and confers with Seagate regarding summary judgment and claim construction. Instead, Cornice chose to waste Seagate's and this Court's valuable resources in having to address its baseless motion. In order to not waste more of this Court's valuable time, Seagate hereby concedes that the Cornice 3.0 GB Storage Element, as it is currently designed, manufactured, and sold, does not infringe the asserted claims of the '159 patent.

[D.I. 250 at 14-15.] As it did with the motion for summary judgment on the '159 patent, Cornice is again wasting the Court's time by raising this issue despite its previous knowledge and its ample opportunity to clarify any confusion it may have had.

    (2) *Seagate's continued assertion that the 4.0 GB drive infringes the patents-in-suit* – Cornice contends that the Court already ruled as a matter of law that the 4.0 GB drive is not part of the case and does not infringe the patents in suit. [D.I. 264 at 12; <u>see also</u> D.I.

157 (Cornice's Mtn.).]  Seagate's opposition brief on this issue, which contains a detailed

discussion of the evidence on this issue [D.I. 246], notes the following:

> First, the evidence of record – including Cornice's own admissions –
> indicates

**REDACTED**

should

> be litigated on the merits. . . .  Beyond judicial economy, fundamental fairness
> counsels against granting Cornice's motion, because such a grant would give the
> defendant

**REDACTED**

> Second, as subsequent events have shown,

**REDACTED**

> Cornice issued a press release announcing not only
> the existence of the 4.0 GB drive, but also that Cornice would be shipping the
> product in July 2005 in volumes of 10,000 units at $65 per drive.

**REDACTED**

[D.I. 246 at 1-2.]  Moreover, Seagate cannot be found to have committed misuse simply by

filing an opposition to Cornice summary judgment motion, particularly when the motion

seeks relief far beyond anything the record in this case could support.

(3) *Seagate's continued prosecution of the suit despite Cornice's alleged protection*

*under the TDK cross-license* — Cornice asserts that Seagate should not have asserted the

'754 and '506 patents in light of the Seagate-TDK cross-license.  [D.I. 264 at 12-13.]

Cornice puts a simplistic gloss on this issue, without ever noting that both parties have

filed summary judgment motions on this issue [D.I. 152 & 155 (parties' respective opening

briefs on this issue)], submitted their opposition briefs in response to the other party's

motion [D.I. 234 & 265], and are filing reply briefs concurrently.  As Seagate's briefs

demonstrate, Cornice's licensing defense has no legal or factual support, and should

therefore be dismissed on summary judgment.

All of the practices that Cornice alleges to be improper cannot constitute patent

misuse as a matter of law, because they are "reasonably within the patent grant, i.e., that it

19

relates to subject matter within the scope of the patent claims." Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 868 (Fed. Cir. 1997); see also U.S. Philips, 424 F.3d at 1197. In other words, these activities stem from the basic property rights granted by the Patent Statute, and are consistent with an innovator's right to protect its investment from unfair use by others. See Va. Panel, 133 F.3d at 868-71. These activities are certainly within the scope of legal and factual issues that patentees are entitled to raise in this Court.

At bottom, Cornice's desire to preserve this misuse/unclean hands defense has little to do with its merits. But it has much to do with the defense as a way for Cornice to inject into this case the allegations underlying its objectively baseless counterclaims. Even though the Court already bifurcated the tort-based counterclaims and deferred their adjudication until after the trial on the patent issues [D.I. 40], this defense would give Cornice a way to circumvent the Court's previous ruling and thus improperly bring before the jury prejudicial accusations that have no support in fact or law.[9]

Therefore, summary judgment dismissing Cornice's affirmative defense of unclean hands/patent misuse should be granted.

## IV.    CONCLUSION

For the reasons stated above, Seagate's motion for summary judgment as to Cornice's Third, Fifth, and Seventh Affirmative Defenses should be granted.

Dated: January 17, 2006                    FISH & RICHARDSON P.C.

                                By:  /s/ Timothy Devlin
                                     Timothy Devlin (#4241)
                                     919 N. Market Street, Suite 1100
                                     Wilmington, DE 19899-1114
                                     Tel: (302) 652-5070

                                     Attorney for Plaintiff
                                     SEAGATE TECHNOLOGY LLC

---

[9] Should the Court decline to enter summary judgment on any of these equitable defenses, Seagate respectfully requests a bifurcation of these defenses, since the factual disputes – if any – regarding these defenses do not relate to the patent issues to be tried in May 2006.

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2006, I electronically filed with the Clerk of

Court the foregoing document using CM/ECF which will send electronic notification of

such filing(s) to the following Delaware counsel.  In addition the filing will also be sent

via hand delivery:

Jack B. Blumenfeld, Esquire          Attorneys for Defendant
MORRIS NICHOLS ARSHT &               Cornice, Inc.
TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

I hereby certify that on January 24, 2006, I have mailed by Federal Express

Service, the document(s) to the following non-registered participants:

Matthew D. Powers                    Attorneys for Defendant
Jason D. Kipnis                      Cornice, Inc.
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065

Russell Wheatley                     Attorneys for Defendant
WEIL, GOTSHAL & MANGES LLP           Cornice, Inc.
700 Louisiana, Suite 1600
Houston, TX  77002

Alan J. Weinschel                    Attorneys for Defendant
David C. Radulescu                   Cornice, Inc.
Arlene Hahn
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153

_/s/ Timothy Devlin_
Timothy Devlin

1